**ALSTON & BIRD LLP**
Jeffrey A. Rosenfeld (#136896)
jeffrey.rosenfeld@alston.com
Jesse Steinbach (#278923)
jesse.steinbach@alston.com
Brooke Bolender (#340689)
brooke.bolender@alston.com
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 576-1143

**WILLIAMS & CONNOLLY LLP**
Kenneth J. Brown*
kbrown@wc.com
William P. Ashworth*
washworth@wc.com
R. Kennon Poteat III*
kpoteat@wc.com
Kathryn E. Hoover*
khoover@wc.com
Brianna Moreno*
bmoreno@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000

**KLEINBARD LLC**
Steven J. Engelmyer*
sengelmyer@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-2000

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T-MOBILE US, INC., CLEARWIRE SPECTRUM HOLDINGS LLC, CLEARWIRE SPECTRUM HOLDINGS II LLC, CLEARWIRE SPECTRUM HOLDINGS III LLC, FIXED WIRELESS HOLDINGS LLC, NSAC LLC, TDI ACQUISITION SUB LLC, AND WBSY LICENSING LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WCO SPECTRUM LLC, SCH LLC, ACADEMIA SPECTRUM LLC, GARY WINNICK, CARL KATERNDAHL, ASHOK VASUDEVAN, ANDREAS BITZARAKIS, AND TYLER KRATZ,<br><br>Defendants. | Case No. 2:23-CV-4347-DMG-E<br><br>Judge Dolly M. Gee<br><br>**JOINT RULE 26(f) REPORT** |

Pursuant to the Court's Order dated June 15, 2023, Plaintiffs T-Mobile US, Inc., Clearwire Spectrum Holdings LLC, Clearwire Spectrum Holdings II LLC, Clearwire Spectrum Holdings III LLC, Fixed Wireless Holdings LLC, NSAC LLC, TDI Acquisition Sub LLC, and WBSY Licensing LLC (together, "Plaintiffs" or "T-Mobile"), and Defendants WCO Spectrum LLC, Academia Spectrum LLC, Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz (together, "Defendants") (together with Plaintiffs, the "Parties"), met and conferred through undersigned counsel via Microsoft Teams on August 9, 2023, and subsequently via e-mail, regarding the topics set forth in Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26-1.  Gerard McCabe, counsel for Defendants SCH LLC and Ashok Vasudevan, participated in the August 9, 2023 conference as an observer on the belief that his appearance in this matter would be entered shortly.  His appearance has not yet been entered, and he has provided no input into this report. The Parties report as follows:

## I.      SHORT SYNOPSIS OF THE CASE

*Plaintiffs' Position:*

T-Mobile brings this action to seek redress for Defendants' nationwide scheme to defraud T-Mobile out of an amount believed to be more than $10 million. T-Mobile leases the right to use certain wireless spectrum from educational institutions that hold Federal Communications Commission licenses for that spectrum.  T-Mobile's leases typically include a Right of First Refusal ("ROFR") provision, which provides that, if a third party makes a bona fide offer to purchase a spectrum license and the licensee intends to accept that offer, then T-Mobile typically has 30 days to match the third party's terms and acquire the license itself. Beginning as early as June 2020, Gary Winnick and his company WCO Spectrum LLC ("WCO") formed an illegal enterprise with their co-conspirators, including the other Defendants here, in which they make sham offers to educational institutions to purchase spectrum licenses that are intended to be conveyed to T-Mobile and to induce it to exercise its ROFR.  Simultaneously, WCO enters into secret side

agreements with these institutions whereby WCO pockets a kickback—in the form of a percentage cut of the purchase price—in the likely event T-Mobile exercises its ROFR and acquires the license.  Through this scheme, Defendants already have siphoned an amount believed to be more than $10 million from T-Mobile to themselves, and their illegal conduct continues unabated.  T-Mobile fortuitously learned of Defendants' fraud only when a whistleblower (a former insider at WCO) came forward to alert T-Mobile's counsel to this scheme.  Defendants' fraudulent and unfair conduct violates the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968, California Penal Code section 496, the California Unfair Competition Law ("UCL"), California Business and Professions Code sections 17200, *et seq.*, and constitutes fraud, aiding and abetting fraud, conspiracy to commit fraud, conversion, tortious interference with contract, tortious interference with economic relations, unjust enrichment, and negligent misrepresentation.  It also has resulted in Defendants being unjustly enriched at T-Mobile's expense.  Plaintiffs seek compensatory damages, treble damages, and attorneys' fees, costs, and expenses, among other forms of relief.

*Defendants' Position:*

This action is the latest in a parade of strategic litigation instituted by T-Mobile to interfere with Defendants' lawful efforts to purchase EBS spectrum licenses from non-profit educational institutions and abuse the discovery process to probe Defendants for competitively sensitive information. This business conflict is not new—it has been ongoing for nearly two years. T-Mobile's latest escalation transforms a thoughtful investment strategy—which happens to threaten T-Mobile's virtual monopoly on the 2.5 GHz band of EBS spectrum—into a Machiavellian RICO conspiracy. T-Mobile's theories—apparently supplied to it by an anonymous, self-described "whistleblower" who allegedly came forward almost two years ago and remains unidentified—are baseless, salacious, and unfounded.

T-Mobile's allegations are histrionic at best. What T-Mobile calls "secret side agreements" are commitment cost arrangements designed to compensate Defendants

in the event they invest time and energy into trying to close a deal for an EBS license which ultimately goes to another bidder—a possibility made all the more likely by T-Mobile's rights of first refusal on the overwhelming majority of these licenses. What T-Mobile calls a "kickback" is simply a commitment fee, again designed to compensate Defendants for the time and resources invested in a potential EBS license purchase. Defendants' offers to purchase spectrum are genuine, and T-Mobile knows that. Otherwise, T-Mobile would simply decline to exercise its right of first refusal and allow the "sham" offers to fall through. That T-Mobile has—almost every single time—exercised its right of first refusal or sought to kill Defendants' deals through litigation belies its understanding that these offers are genuine. Moreover, if defendant WCO's offer were consummated with a non-profit educational institution, WCO would be the one paying the commitment fee – a fact that T-Mobile conveniently fails to mention.

## II.    SUBJECT MATTER JURISDICTION

The Parties agree that this Court has subject matter jurisdiction over T-Mobile's federal law claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) and supplemental subject matter jurisdiction over T-Mobile's state law claims pursuant to 28 U.S.C. § 1367(a).  The Parties also agree that this Court has subject matter jurisdiction over T-Mobile's claims pursuant to 28 U.S.C. § 1332.

## III.    DISCOVERY PLAN

### A.    Initial Disclosures

The Parties agree that the exchange of Rule 26(a) initial disclosures will take place by August 25, 2023.

### B.    Subjects for Discovery

*Plaintiffs' Position:*

Plaintiffs seek discovery on all matters pertinent to the merits of the case. Plaintiffs have already propounded, and will propound more, written discovery related to, *inter alia*, Defendants' purported offers to purchase EBS licenses,

solicitations to purchase EBS licenses, communications relating to and in exchange with EBS licensees, payment received pursuant to Commitment Cost Agreements, and supposed financing of offers to purchase EBS licenses. This discovery will focus on the claims and defenses, and any relevant evidence in support thereof, raised in the Parties' pleadings. Plaintiffs also intend to depose Defendants about these topics. Additional percipient witness and/or expert depositions may be scheduled. Plaintiffs do not believe discovery should be conducted in phases.

To proceed in a timely and efficient fashion, Plaintiffs have propounded requests for production and interrogatories on Defendants, which is consistent with Judge Gee's June 15, 2023 Standing Order. As Judge Gee has stated: "unless there is a likelihood that upon motion by a party the Court would order that any or all discovery is premature, it is advisable for counsel to begin to conduct discovery actively before the Scheduling Conference. At the very least, the parties shall comply fully with the letter and spirit of FRCP 26(a) and thereby obtain and produce most of what would be produced in the early stage of discovery . . . ." ECF 19. The Central District of California also encourages beginning discovery now rather than waiting on the litigation of any forthcoming motion to dismiss, which could take months and months. *See S.P. v. County of San Bernadino*, 2020 WL 4335375 at *1, *4 (C.D. Cal. May 13, 2020). Further, to the extent a party wants to try to postpone discovery, Ninth Circuit case law provides that parties resisting discovery have the burden to show that discovery at this juncture should not be allowed. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Faced with discovery requests, Defendants have indicated that they will try to resist discovery until this Court decides Defendants' forthcoming motions to dismiss. Blanket motions to stay discovery, however, are routinely denied where parties have yet to file their forthcoming motions to dismiss and have failed to show particular and specific needs to stay discovery. *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990); *see also Mlejnecky v. Olympus Imaging America,*

*Inc.*, 2011 WL 489743 at *6 (E.D. Cal February 7, 2011) ("[D]istrict courts look unfavorably upon such blanket stays of discovery."). Here, there is no reason to stay discovery on Plaintiffs' eleven claims for relief against Defendants. Plaintiffs pleaded each of their claims in great detail, and no motion to dismiss will reach each and every claim. Plaintiffs want this case to move forward in a timely and efficient manner, and waiting for Defendants' forthcoming motions to dismiss (which Defendants have already sought multiple extensions to file) will serve no purpose, other than unnecessary delay. As a result, on the schedule they propose, Plaintiffs anticipate completing fact discovery by May 3, 2024, and expert discovery by August 9, 2024.

Plaintiffs' Proposed Schedule of Pretrial and Trial Dates is attached hereto as **Exhibit A**.

*Defendants' Position:*

Plaintiffs' insistence on accelerating discovery in this matter before the sufficiency of their serious allegations is tested by Defendants' motion to dismiss is not surprising. Indeed, T-Mobile's *immediate* reaction to every effort by Defendants to purchase the EBS Spectrum T-Mobile currently leases has been to seek intrusive and burdensome information about Defendants' business strategies. After trying and failing to pry this information from its current landlord, T-Mobile has instituted litigation after litigation in courts around the country (at least seven, counting this one), served broad, burdensome, and over-reaching discovery on Defendants as third parties or, in one case, even asked the Court to grant *pre-complaint* discovery.

This is not simply a case where a defendant files a motion to dismiss and turns to the judge and says a blanket stay is appropriate. Defendants' Motion to Stay is based on T-Mobile's conduct in other related litigations, the credible threat of Plaintiffs abusing this litigation to rush to collect improper highly proprietary and burdensome discovery, and, in particular, the nature of Plaintiffs' claims. Plaintiffs' claims sound in fraud and make serious accusations that federal courts carefully

scrutinize, including at the pleading stage under the heightened pleading standards set forth in Fed. R. Civ. P. 9(b). Plaintiffs' claim that "no motion to dismiss will reach each and every claim" is also misguided. Six of Plaintiff's eleven claims arise from the same defective fraud theories. The others suffer from other legal deficiencies—e.g. elements which cannot be met by the allegations on their face. Defendants are confident that Plaintiff's complaint can and will be dismissed in its entirety. Finally, Defendants note that their motion to dismiss will be filed on September 18, 2023—more than a month before the Court is due to rule on Defendants' pending Motion to Stay, and before Plaintiffs' opposition memorandum to the Motion to Stay will be due. Given the heavy pleading burden Plaintiffs must meet, their tactics to date in seeking to probe Defendants for strategic information, the fact that Defendants motion to dismiss will be before the Court in short order, and the potential complexity of the case and risk of needless discovery even if some of the eleven claims are partially dismissed, Defendants believe some circumspection before rushing to discovery is appropriate.

## C.    ESI

The parties agree to confer in good faith on an appropriate and reasonable ESI protocol proportionate to the needs of the case.  The parties have confirmed that, as to their respective clients, ESI and other documents potentially relevant to this case are being preserved.

## D.    Privilege

The parties agree to follow the Federal Rules of Civil Procedure with regard to claims of privilege.  The parties do not anticipate submitting a separate order under Federal Rule of Evidence 502.

## E.    Discovery Limitations

The parties agree that the following changes should be made regarding the limitations on discovery in this case:

(a) Plaintiffs shall be permitted to serve up to twenty-five (25) interrogatories on Defendants WCO, Winnick, Katerndahl, Academia, Bitzerakis, and Kratz, collectively, and another twenty-five (25) interrogatories on Defendants SCH and Vasudevan, collectively. For the avoidance of doubt, interrogatories that require separate responses by each Defendant within each group will only be counted as one interrogatory against these limits.

(b) Defendants WCO, Winnick, Katerndahl, Academia, Bitzarakis, and Kratz, collectively, will be allowed to serve up to twenty-five (25) interrogatories on Plaintiffs, collectively, and Defendants SCH and Vasudevan, collectively, also will be allowed to serve up to twenty-five (25) interrogatories on Plaintiffs, collectively.

(c) Fact depositions are presumptively limited to ten (10) for each side, including Fed. R. Civ. P. 30(b)(6) depositions. This limitation may be exceeded only upon a showing of good cause, and the parties agree to negotiate in good faith any requests to exceed this limitation as the case progresses.

The parties reserve their rights to seek to further amend the limitations on discovery for good cause, including if Defendants bring counterclaims.

## F.    Other Orders

The parties expect to separately submit a confidentiality agreement to be entered by the Court.

## IV.    DISPOSITIVE MOTIONS

*Plaintiffs' Position:*

Plaintiffs expect to file a Rule 56 motion for summary judgment on the issues of whether Defendants have violated RICO, conspired to violate RICO, committed fraud, conspired to commit fraud, violated section 496 of the California Penal Code, violated the UCL, and violated the law pursuant to Plaintiffs' common law claims.

As reflected in **Exhibit A**, Plaintiffs propose that the filing of all dispositive motions should occur thirty (30) days after completion of expert discovery.

*Defendants' Position:*

Defendants intend to bring a Motion to Dismiss which will seek full disposition of this matter. Defendants expect to bring a Rule 56 motion for summary judgment so far as any of Plaintiffs' claims survive their 12(b)(6) motion. Defendants do not agree with the timetable set forth in Plaintiffs' Exhibit A, but do not object to the limited proposition that all dispositive motions should occur thirty (30) days after the completion of expert discovery.

**V.    SETTLEMENT EFFORTS**

The parties are amenable to ADR in the form of private mediation scheduled the appropriate juncture in this case.

**VI.    TIMETABLE FOR TRIAL**

Plaintiffs request a jury trial.  The Parties estimate the length of trial needed for the claims contained in their Complaint to be approximately fifteen (15) Court days.

**VII.    OTHER PARTIES OR AMENDMENTS**

*Plaintiffs' Position:*

Plaintiffs do not presently intend to add any parties or amend the pleadings, but reserve the right to do so in the event of learning new information in discovery.

*Defendants' Position:*

Defendants do not presently intend to add any parties or amend the pleadings, but reserve the right to do so in the event Plaintiffs' complaint survives Defendants' forthcoming Motion to Dismiss and Defendants assert counterclaims.

**VIII.    OTHER ISSUES AFFECTING THE STATUS OR MANAGEMENT OF THE CASE**

The parties are presently unaware of any other matters that have not already been mentioned in this joint report that would affect the status or management of

the case. Plaintiffs do not believe that the complexity of the case merits application of the procedures of the Manual for Complex Litigation (current edition). As to their RICO claims, Plaintiffs do not allege separate enterprises or a multitude of differing predicate acts, but rather a single enterprise and defendants who engaged repeatedly in a straightforward fraud. Further, Plaintiffs bring several non-RICO claims—all of which will involve the same discovery as the RICO claims. Defendants believe, given Plaintiffs' eleven claims, the multiple parties, and Plaintiffs' sweeping allegation of a RICO conspiracy, that application of the procedures of the Manual for Complex Litigation (current edition), are appropriate—including especially the procedures recommending staying discovery until the pleadings are fully tested.

## IX.    CONSENT TO MAGISTRATE JUDGE

The Parties decline to proceed before a Magistrate Judge.


Dated:  August 23, 2023                    Respectfully submitted,


By: /s/ Jeffrey A. Rosenfeld
ALSTON & BIRD LLP
Jeffrey A. Rosenfeld (#136896)
jeffrey.rosenfeld@alston.com
Jesse Steinbach (#278923)
jesse.steinbach@alston.com
Brooke Bolender (#340689)
brooke.bolender@alston.com
333 South Hope Street
Los Angeles, CA 90071
Telephone: (213) 576-1143

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
kbrown@wc.com
R. Kennon Poteat III*
kpoteat@wc.com
William P. Ashworth*

JOINT RULE 26(f) REPORT

9

washworth@wc.com
Kathryn E. Hoover*
khoover@wc.com
Brianna Moreno*
bmoreno@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

KLEINBARD LLC
Steven J. Engelmyer*
sengelmyer@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000

* admitted *pro hac vice*

*Attorneys for Plaintiffs*


By: /s/ Mark T. Cramer
BUCHALTER, A Professional Corporation
Mark T. Cramer (198952)
mcramer@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017
Telephone: 213-896-0400

MITTS LAW LLC
Maurice R. Mitts*
mmitts@mittslaw.com
1822 Spruce Street
Philadelphia, PA 19103
Telephone: 215-866-0112

* admitted *pro hac vice*

*Attorneys for Defendants WCO Spectrum LLC, Academia Spectrum LLC, Gary*

*Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz*

# **L.R. 5-4.3.4 ATTESTATION**

The filer, pursuant to L.R. 5-4.3.4(a)(2), hereby certifies that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


DATED:  August 23, 2023            **ALSTON & BIRD LLP**

                                   By:    /s/ Jeffrey A. Rosenfeld
                                         Jeffrey A. Rosenfeld
                                         Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2023, a true and correct copy of the foregoing **JOINT RULE 26(f) REPORT** was served via ECF to all counsel of record.

/s/ Jeffrey A. Rosenfeld
Jeffrey A. Rosenfeld