1   **BUCHALTER**
    A Professional Corporation
2   Joshua M. Robbins (SBN: 270553)
      jrobbins@buchalter.com
3   Mark T. Cramer (SBN: 198952)
      mcramer@buchalter.com
4   1000 Wilshire Boulevard, Suite 1500
    Los Angeles, CA 90017
5   (949) 224-6284

6   **MITTS LAW, LLC**
    Maurice R. Mitts (admitted *pro hac vice*)
7     mmitts@mittslaw.com
    1822 Spruce Street
8   Philadelphia, PA 19103
    (215) 866-0112
9
    *Attorneys for Defendants*
10  *WCO Spectrum LLC, Academia Spectrum LLC,*
    *Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz*
11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14

15  T-MOBILE US, INC. *et al.*,          Civil Action No. 2:23-4347-DMG-E
                                          (Hon. Dolly M. Gee)
16          Plaintiffs,

16      vs.                              **REPLY MEMORANDUM IN**
                                          **SUPPORT OF DEFENDANTS'**
17  WCO SPECTRUM LLC *et al.*,           **MOTION FOR PROTECTIVE**
                                          **ORDER STAYING DISCOVERY**
18          Defendants.

19
                                          Complaint Filed: June 2, 2023
20                                        Hearing Date: November 17, 2023
                                          Time: 9:30 a.m.
21                                        Courtroom: 8C

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................ 1

II. ARGUMENT ................................................................................ 3

    A.  WCO Need Only Show "Good Cause" For a Stay of Discovery, and May Enter a Stay So Long as the Possibility of Dismissal Exists ........ 4

    B.  The Nature of T-Mobile's Claims Weighs In Favor of a Stay ............. 7

    C.  T-Mobile Does Not Prevail Under the Five Factor Balancing Test ... 11

        1.  T-Mobile Will Not Suffer Prejudice from a Stay .................... 12

        2.  T-Mobile's Trivialization of Its Abusive and Harassing Litigation Conduct Does Not Obviate the Burden of Discovery Before T-Mobile's Claims Have Been Reviewed .. 14

        3.  T-Mobile's Conclusory Assertion that the Motion to Dismiss is Unlikely to Result in Dismissal of the Claims Is Meritless .. 15

        4.  T-Mobile's Past Conduct Augurs That It Will Use Discovery to Burden Third Parties, Which In Turn Harms the Public Interest. ................................................................................ 17

III. CONCLUSION ........................................................................... 18

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 79350507v1

i

**DEFENDANTS' REPLY ISP MOTION FOR PO STAYING DISCOVERY**

**CASE NO. 2:23-CV-4347-DMG (Ex)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apothio, LLC v. Kern County*,
    No. 1:20-cv-00522-NONE-JLT, 2021 WL 75243 (E.D. Cal. Jan. 28,
    2021) ................................................................................................................6, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................9

*Atabekova-Michaelidis v. City of Los Angeles*,
    2023 WL 5444328 (C.D. Cal. Feb. 28, 2023) ............................................13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 ........................................................................................................9

*Bermudez v. Colgate-Palmolive Co.*,
    No. 1:21-cv-10988 (JLR), 2023 WL 2751044 (S.D.N.Y. Mar. 31,
    2023) ..................................................................................................................10

*Blankenship v. Trump*,
    No. 2:19-cv-00549, 2020 WL 748874 (S.D. W. Va. Feb. 13, 2020) ................16

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ............................................................................8

*CGC Holding Co., LLC v. Hutchens*,
    No. 11-cv-0102, 2011 WL 2636847 (D. Colo. July 6, 2011) ...........................15

*Chavous v. District of Columbia Financial Responsibility and
    Management Assistance Authority*,
    201 F.R.D. 1 (D.D.C. 2001) ..............................................................................15

*Coastal States Gas Corp. v. Dept. of Energy*,
    84 F.R.D. 278 (D. Del. 1979) ...........................................................................15

*Duran v. Henkel of Am.*,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020) ...............................................................11

*F.D.I.C. v. Renda*,
    1987 WL 348365 (D. Kan. Aug. 6, 1987) .........................................................16

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 79350507v1

ii

**DEFENDANTS' REPLY ISP MOTION FOR PO**
**STAYING DISCOVERY**

**CASE NO. 2:23-CV-4347-DMG (Ex)**

*Fed. Sav. & Loan Ins. Corp. v. Molinaro*,
    889 F.2d 899 (9th Cir. 1989) .................................................................. 16

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) ................................................................ 7

*Greene v. Emersons, Ltd.*,
    86 F.R.D. 66 (S.D.N.Y. 1980), *aff'd*, 736 F.2d 29 (2d Cir. 1984) ...................... 3

*Limbu v. UST Global Inc.*,
    No. CV 16-8499 (DMG), 2017 WL 8186674 (C.D. Cal. 2017) (Gee,
    J.) ..................................................................................................... 4

*Mays v. Peoples Bank*,
    Civil Action No. 2:22-cv-00418, 2022 WL 17490083 (S.D. W. Va.
    Dec. 7, 2022) ..................................................................................... 15

*PopSockets LLC v. Online King LLC*,
    No. 19-cv-01277-CMA-NYW, 2019 WL 5101399 (D. Colo. Oct. 11,
    2019) ................................................................................................. 16

*Pro-Com Prods. Inc. v. Kings Express LA, Inc.*,
    Case No. CV 18-6035-DMG, 2019 WL 1771652 (C.D. Cal. Feb. 21,
    2019) (Gee, J.) ...................................................................... 8, 9, 10, 11

*Rusty115 Corp. v. Bank of am., N.A.*,
    CASE NO. 22-CV-225141 BER, 2023 WL 6064518 (S.D. Fl. Sep.
    18, 2023) ........................................................................................... 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987) ................................................................... 3

*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 (C.D. Cal. 1995) ........................................................... 7, 8

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
    No. 11-cv-01468-WJM-BNB, 2011 WL 4018207 (D. Col. 2011) .................... 13

*Sonneveldt v. Mazda Motor of Am., Inc.*,
    No. 819CV01298JLSKES, 2021 WL 4814990 (C.D. Cal. May 4,
    2021) .......................................................................................... 5, 6, 7

*String Cheese Incident, LLC v. Stylus Shows, Inc.*,
    2006 WL 894955 (D. Colo. Mar. 30, 2006) ............................................... 13

*Top Rank, Inc. v. Hayman*,
　Case No. 2:15-cv-04961-JFW, 2015 WL 99528867 (C.D. Cal. Sep.
　17, 2015) .................................................................................................. 11

*Top Rank, Inc. v. Haymon*,
　Case No. 2:15-cv-04961-JFW, 2015 WL 9952887 (C.D. Cal. Sep.
　17, 2015) ............................................................................................... 6, 7

*Wade Park Land Holdings, LLC v. Kalikow*,
　589 F. Supp. 3d 335 (S.D.N.Y. 2022) ................................................... 10

*Wagh v. Metris Direct, Inc.*,
　363 F.3d 821 (9th Cir. 2003), *overruled on other grounds*, *Odom v.
　Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc) ..................... 3

*Wenger v. Monroe*,
　282 F.3d 1068 (9th Cir. 2002) ................................................................ 5

*Wood v. McEwen*,
　644 F.2d 797 (9th Cir. 1981) .................................................................. 5

*In re ZF-TRW Airbag Control Units Prods. Liability Litig.*,
　No. CV 10-ML-2905-JAK, 2022 WL 19425936 (C.D. Cal. Jul. 13,
　2022) ....................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(a)(4)(A) ............................................................................ 4

Rule 8 .............................................................................................................. 9

Rule 9(b) ................................................................................................ 7, 8, 12

Rule 12 ............................................................................................................ 4

Rule 12(b) ....................................................................................................... 3

Rule 26(f) ........................................................................................................ 3

Defendants WCO Spectrum, LLC, Academia Spectrum, LLC, Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz,[1] by and through undersigned counsel, submit the following Reply Memorandum in further support of their Motion to Stay Discovery in this matter until the Court rules on their pending Motion to Dismiss.

## I.      INTRODUCTION

For years now, T-Mobile[2] has engaged in a strategic litigation campaign designed to hamstring WCO's legitimate efforts to purchase certain electromagnetic spectrum licenses from nonprofit schools and colleges desperate for cash infusions. Now, armed with the supposed account of an anonymous "whistleblower,"[3] T-Mobile has brought the overzealous defense of its spectrum monopoly to this Court. Having tired of T-Mobile's incessant, aggressive, and intrusive efforts to discover its confidential business strategies and plans through discovery, WCO filed the instant motion requesting a protective order staying discovery until this Court rules on its motion to dismiss.

While having the temerity to accuse WCO of procedural gamesmanship, T-Mobile advances a series of specious arguments in opposition to a request which—while not automatic—is eminently reasonable under the circumstances. This Court has broad discretion to stay discovery until it disposes of WCO's motion to dismiss. Indeed, neither party has cited a single case in which a district court was reversed for

---

[1] Defendants WCO Spectrum LLC and Academia Spectrum LLC are referred to in this memorandum as "WCO" and "Academia," respectively. Defendants Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz are referred to collectively as the "Individual Defendants."

[2] Plaintiffs T-Mobile US, Inc., Clearwire Spectrum Holdings LLC, Clearwire Spectrum Holdings II LLC, Clearwire Spectrum Holdings III LLC, Fixed Wireless Holdings LLC, NSAC LLC, TDI Acquisition Sub LLC, and WBSY Licensing LLC are all affiliated entities, and thus are referred to collectively as "T-Mobile" or "Plaintiffs."

[3] In its memorandum in opposition to this Motion, T-Mobile claims for the first time that it has identified the supposed "whistleblower," and asserts that he is a former insider at WCO. T-Mobile, unsurprisingly, refuses to identify this individual for purported fear of "retaliation." Given that this person is supposedly a *former* employee of WCO, it is unclear what "retaliation" T-Mobile believes he would face.

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

BN 79350507v1

1

**DEFENDANTS' REPLY ISP MOTION FOR PO**
**STAYING DISCOVERY**

**CASE NO. 2:23-CV-4347-DMG (Ex)**

staying discovery while a fully dispositive motion was pending. Yet T-Mobile appears to argue that "the governing standard" for a motion to dismiss in the Ninth Circuit is that such a stay <u>cannot</u> be granted unless the Court is "convinced" that T-Mobile "will be unable to state a claim for relief." Not so. WCO need only make a showing of good cause for a stay, and WCO has done so in spades.

As illustrated more fully in WCO's motion to dismiss, T-Mobile's fraud theory is *inherently* implausible. It rests on allegations of rational business conduct cloaked in "labels and conclusions" like "sham," "side deal," and "kickback" which the U.S. Supreme Court found insufficient to satisfy the federal pleading standards over fifteen years ago. It asserts two entirely speculative harms: (1) past "damages" of $10 million based on the theory that WCO made competitive offers that were above what spectrum license holders "were willing to accept" and that T-Mobile was somehow "forced" to exercise an  anticompetitive right of first refusal ("ROFR") that T-Mobile *negotiated for itself*; and (2) the possibility that it will be "forced" to pay a "king's ransom" far in the future if WCO is permitted to acquire even one of the more than one thousand EBS licenses T-Mobile leases. Further, T-Mobile's showing of justifiable reliance hinges on the Court accepting that T-Mobile was "forced" to exercise its ROFRs when its status quo would remain entirely unchanged even if it allowed WCO's purchases to proceed.

These are just a *few* of the many arguments presented in WCO's comprehensive motion to dismiss, which attacks all of T-Mobile's legally defective claims. WCO's Motion to Dismiss will dispose of this matter entirely, and nothing in the Ninth Circuit's jurisprudence (or that of any other Court of Appeals) precludes this Court from staying discovery until that motion is decided. Certainly, nothing *compels* the Court to permit discovery unless it is "convinced" that T-Mobile will be unable to state a claim for relief. Indeed, at the time of the currently scheduled hearing date[4] for this

---

[4] Given the nature of the stay and that it is inextricably linked to the Motion to Dismiss, WCO asked T-Mobile to consent to reschedule the hearing on the motion to stay until December 8, 2023, such that both motions might be heard

motion, the Court will have only <u>one</u> of the three potential memoranda of law that will be filed on WCO's motion to dismiss: it is unclear how the Court could be "convinced" of anything at that stage.

The potential that WCO's motion to dismiss disposes of this action entirely, the serious nature of T-Mobile's claims—which assert (defective) fraud and RICO theories—and T-Mobile's established and admitted track record of disrupting WCO's lawful business transactions via litigation and using that litigation as a pretext to seek discovery from WCO, taken together, comprise good cause for a stay of discovery until this Court concludes that any of T-Mobile's claims will survive WCO's motion to dismiss. WCO's Motion for a Stay of Discovery should be granted.

## II.     ARGUMENT[5]

WCO's requested motion to stay discovery should be granted. The Ninth Circuit has held that "[t]he purpose of [Rule] 12(b)(6) is to **enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery.**" *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (emphasis added); *see also Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 73 (S.D.N.Y. 1980), *aff'd*, 736 F.2d 29 (2d Cir. 1984). And at least one Ninth Circuit panel has noted that "discovery at the pleading stage is **only** appropriate where factual issues are raised by a Rule 12(b) motion, and **a pending Rule 12(b) motion dismiss is sufficient cause for granting a protective order**. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 829 (9th Cir. 2003), *overruled on other grounds*, *Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007) (en banc) (emphasis added).

This is doubtless why "[i]t is this Court's practice to issue a Scheduling Order to set the Scheduling Conference and require the filing of a Joint Rule 26(f) report *after*

---

simultaneously. T-Mobile refused. Early next week, WCO intends to file an ex parte request that the Court combine the hearings.

[5] In the interests of brevity, Defendants incorporate by reference the factual background sections in its opening memoranda on its Motions to Dismiss and Stay.

Defendant has filed an answer." *Limbu v. UST Global Inc.*, No. CV 16-8499 (DMG) (JPRx), 2017 WL 8186674 at *7 n.4 (C.D. Cal. 2017) (Gee, J.); *see also* Fed. R. Civ. P. 12(a)(4)(A) (an answer is due 14 days after the court *denies* a motion pursuant to Rule 12).

T-Mobile argues, nevertheless, that a stay is wholly inappropriate. In doing so, T-Mobile: (1) argues that this court is somehow forbidden from staying discovery unless it is "convinced" that T-Mobile will be "unable to state a claim for relief," even though the actual standard for a stay is a showing of "good cause;" (2) argues that WCO's motion is doomed to fail because <u>one</u> of the several arguments WCO advanced simply advances an "alternative explanation" for the facts alleged (while ignoring the remaining arguments); (3) morphs its claims to now allege that only *some* of WCO's offers are "shams," but T-Mobile does not know which ones so it must continue to exercise ROFRs in perpetuity even though it can defeat any purported "fraud" by simply standing pat; (4) disingenuously portrays its track record of burdensome, invasive, and harassing litigation to protect its monopoly on EBS spectrum as benign enforcement of its rights; (5) submits that judicial economy favors racing to discovery because T-Mobile will inevitably prevail on the motion to dismiss; (6) argues that any potential burden on third parties is speculative, even though T-Mobile has shown many times over that it is willing to abuse the nation's courts and intimidate nonprofit schools and colleges with expensive litigation; and (7) asserts that the public interest favors T-Mobile being able to conduct discovery on a case that might be entirely dismissed. Each of these arguments fails, and discovery in this proceeding should be stayed until this Court decides WCO's motion to dismiss.

## A.    WCO Need Only Show "Good Cause" For a Stay of Discovery, and May Enter a Stay So Long as the Possibility of Dismissal Exists.

As an initial matter, it is necessary to clarify the standard governing the court's decision on this motion. T-Mobile claims in its opposition that the Ninth Circuit somehow <u>bars</u> this Court from granting a motion to stay pending discovery <u>unless</u> it is

"convinced that the plaintiff will be unable to state a claim for relief." Pl's Mem. in Opp. to Mot. for Prot. Order Staying Disc. at 9. That is not the law.

The Ninth Circuit cases cited by T-Mobile affirm a district court's grant of a stay pending discovery and state that it is appropriate for a district court to stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief, but neither opinion holds that a stay is **only** proper under those circumstances. *See Wenger v. Monroe*, 282 F.3d 1068, 1078 (9th Cir. 2002) (finding no error in grant of protective order because the Court of Appeals had previously held that a district court "may stay discovery when it is convinced that the Plaintiff will be unable to state a claim for relief"); *Wood v. McEwen*, 644 F.2d 797, 901 (9th Cir. 1981)(holding that a court may limit discovery for "good cause," and that a court may continue to stay discovery when it is convinced the plaintiff will be unable to state a claim for relief.") The standard of appellate review is abuse of discretion. *See Wood*, 644 F.2d at 802. T-Mobile cites no case in which a lower court was reversed for staying discovery under circumstances where it was not "convinced" that the Plaintiff would be unable to state a claim for relief.

T-Mobile also appears to suggest that it is improper for a Court to grant a stay for discovery <u>unless</u> the Complaint is frivolous, or there is a challenge to jurisdiction, venue, or based on some sort of immunity. Again, while these all may be sufficient conditions for staying discovery pending a motion to dismiss, none is *necessary*. The <u>only</u> thing the Court needs to determine is whether good cause exists. *See, e.g.*, *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 819CV01298JLSKES, 2021 WL 4814990, at *1 (C.D. Cal. May 4, 2021) ("[A] district [court] may, for *good cause*, issue an order staying discovery in order to protect a party from annoyance, embarrassment, *oppression*, or *undue burden or expense*.") (emphasis added). And, again, T-Mobile does not cite any case in which an appellate court reversed a district court for staying discovery pending a dispositive motion which turned on matters other than frivolity, jurisdiction, venue, or immunity.

District courts in the Ninth Circuit have applied a variety of frameworks to guide their analysis—but there is no <u>binding</u> test stated by the Court of Appeals. *See Apothio, LLC v. Kern County*, No. 1:20-cv-00522-NONE-JLT, 2021 WL 75243, at *2 (E.D. Cal. Jan. 28, 2021) (observing that "the Ninth Circuit has not provided a clear standard for evaluating a motion to stay discovery pending resolution of a potentially dispositive motion…."). Indeed, T-Mobile cites at least two cases[6] applying a more lenient standard than the one WCO cited in its opening memorandum. *See* Pl's Mem. in Opp. at 10 (citing *Sonneveldt*, 2021 WL 4814990 at *1; *In re ZF-TRW Airbag Control Units Prods. Liability Litig.*, No. CV 10-ML-2905-JAK (PLAx), 2022 WL 19425936 at *3 (C.D. Cal. Jul. 13, 2022)). This test grants a stay "if both of the following are satisfied: (1) the pending motion is potentially dispositive of the entire case, or at least dispositive of the issue at which discovery is aimed, and (2) the pending, potentially dispositive motion can be decided absent additional discovery." *In re ZF-TRW Airbag Control Units Prods. Liability Litig.*, 2022 WL 19425936 at *3. Both are true of WCO's Motion to Dismiss.

Nevertheless, in its effort to make a specific and particularized showing supporting its motion for stay and to show the Court that this is <u>not</u> simply a case of a party requesting an automatic discovery stay and supporting the request with conclusory statements about undue burden and expense, WCO cited *Haymon,* which employed a more comprehensive, five-factor test applied around the country to stays of litigation proceedings to guide its analysis.[7] *See* Defs' Mem. In Supp. of Mot. for

---

[6] Notably, although both *Sonneveldt* and *ZF-TRW Airbag* denied motions for a stay, both are distinguishable. In *Sonneveldt*, the Court concluded that additional discovery was needed before deciding the pending motions to dismiss—here, WCO's motion to dismiss attacks T-Mobile's convoluted fraud theory on logical grounds which are incurable by discovery, including that T-Mobile cannot prove justifiable reliance or harm because the "scheme" it alleges can be defeated simply by allowing WCO's transactions to proceed and that its damages are speculative as a matter of law. In *ZF-TRW Airbag*, the motion to dismiss had not yet been filed, and the defendants would still be subject to third party discovery due to their connection to claims against other defendants. Here, the WCO Defendants' motion to dismiss is filed, and would dispose of <u>all</u> active claims.

[7] T-Mobile contends that the five-factor balancing test is somehow inapplicable because it has also been employed in the context of motions to stay all civil litigation pending a parallel criminal proceeding. T-Mobile does not address, of course, that *Haymon* applied this five-factor test with nary a criminal proceeding in sight. More importantly, T-Mobile

Prot. Order Staying Disc. at 12 (hereinafter "Defs' Mem. In. Supp.") (citing *Top Rank, Inc. v. Haymon*, Case No. 2:15-cv-04961-JFW (MRWx), 2015 WL 9952887, at *1 (C.D. Cal. Sep. 17, 2015)).

WCO offered specific arguments on each of the factors comprising the test, each of which favors a stay here. Nevertheless, if the Court is inclined to employ the two-factor test from *Sonneveldt*, the inquiry is even simpler. Defendants' Motion to Dismiss attacks all of T-Mobile's claims and, if granted, would dispose of the entire action. And further discovery is not required to decide the motion to dismiss, because it highlights several deficiencies in T-Mobile's theory itself, rather than merely the sufficiency of its allegations. Either way, WCO has carried its burden of showing the Court that there is ample good cause to stay discovery here.

## B.   The Nature of T-Mobile's Claims Weighs In Favor of a Stay

T-Mobile argues that, in support of this motion to stay "the WCO Defendants do nothing more than contend that 'it is appropriate to stay discovery in fraud cases that are, as here, subject to the heightened pleading standard of Rule 9(b), and state in conclusory fashion that T-Mobile cannot craft and plead a plausible RICO Complaint, Mot. 12." Pl's Opp. to Defs' Mot. to Stay. Disc. at 10. T-Mobile goes on to argue that "staying discovery anytime a plaintiff brings claims that are subject to heightened pleading standards would 'undercut the Federal Rules' liberal discovery provisions' and be "directly at odds with the need for expeditious resolution of litigation. *Id.* (citing *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 601 (C.D. Cal. 1995); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)). T-Mobile misunderstands WCO's argument.

WCO does not argue for an automatic stay of discovery *every* time a plaintiff asserts a fraud claim—the existence of a fraud claim or a RICO claim *standing alone*

---

does not offer any cases disfavoring the test, nor does it advance any logical reason that the presence or absence of a parallel criminal proceeding merits a less stringent test. Indeed, the existence of a parallel criminal proceeding would— if anything—lend more credence to the viability of a civil plaintiff's claim than otherwise might exist. That would vitiate *against* staying discovery.

would not merit a stay of discovery. But that these claims are subject to higher pleading standards weighs in favor of a stay when considering the full factual context of this case. *See Skellerup*, 163 F.R.D. at 601 ("In considering whether a stay of all discovery pending the outcome of a dispositive motion is warranted, **a case-by case analysis is required**.") (emphasis added). Heightened pleading standards exist for fraud claims not only to "give notice to defendants of the specific fraudulent conduct against which they must defend" and "to deter the filing of complaints as a pretext for the discovery of unknown wrongs," but also to "protect defendants from the harm that comes from being subject to [meritless] fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). The fact that T-Mobile's claims sound in fraud and assert a (defective) RICO conspiracy vitiate in favor of caution when *combined* with T-Mobile's litigation conduct, its oppression of its non-profit school landlords, and the internal inconsistency and inherent implausibility of its theory.

T-Mobile next argues that discovery should not be stayed because it has satisfied the applicable pleading standards for fraud, and because WCO's motion to dismiss attacks T-Mobile's fraud theory substantively, rather than formally under Rule 9(b). Pl's Mem. in Opp. at 11-12. WCO focused its arguments on the logical weaknesses of T-Mobile's theory, because those weaknesses cannot be cured by amendment (whereas pleading with particularity theoretically can). The inherently implausible and self-contradictory nature of T-Mobile's claim—as explained more fully in WCO's motion to dismiss—requires dismissal of the claims as a matter of law.

T-Mobile's next tactic is to cast WCO's motion to dismiss as an attempt merely to offer an "alternative explanation" which it "ask[s] the Court to endorse" over T-Mobile's allegations. Pl's Mem. In Opp. at 12 (citing *Pro-Com Prods. Inc. v. Kings Express LA, Inc.*, Case No. CV 18-6035-DMG (SKx), 2019 WL 1771652 at *2 (C.D. Cal. Feb. 21, 2019) (Gee, J.). T-Mobile's argument mischaracterizes <u>one</u> of several

arguments in WCO's motion to dismiss: that T-Mobile has not properly alleged that Defendants made any false statements or acted with intent to defraud. *See* Defs' Mem. in Supp. of Mot. to Dismiss at 12-16.

WCO's plausibility argument does not merely offer an "alternative explanation" for unusual or suspicious conduct. WCO's argument that T-Mobile cannot plausibly show fraudulent intent is that T-Mobile's allegations of fraud consist of statements of *rational business conduct*, obscured by "labels" like "secret side agreement" and "kickback" and coupled with a "conclusory allegation" of fraudulent intent (i.e., that WCO has "no intention" of consummating its transactions and its offers are "shams"). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (holding plausibility standard requires more than "labels and conclusions").

T-Mobile's effort to show fraudulent intent employs the exact approach that the U.S. Supreme Court rejected for stating an antitrust[8] claim in *Twombly*. *Id.* at 569. There, the plaintiffs tried to state an antitrust claim by pairing allegations of parallel conduct between competing telecommunications providers with a conclusory assertion of conspiracy. *Id.* at 549-52. The U.S. Supreme Court rejected this approach as insufficient to state a claim because the facts alleged, while "consistent with conspiracy," were "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554. Put another way, the *Twombly* plaintiffs attempted to do precisely what T-Mobile does here: sue the defendants for operating their business in the ordinary course by re-framing rational business conduct with sinister labels and adding conclusory allegations of wrongdoing.

By contrast, *Pro-Com Prods.* (on which T-Mobile relies) concerned allegations

---

[8] Even though *Twombly* is an antitrust case, the logic underlying it is equally applicable here. The U.S. Supreme Court later confirmed that *Twombly*'s reading of Rule 8 was not particular to antitrust cases. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Though *Twombly* determined the sufficiency of a complaint sounding in antitrust, **the decision was based on our interpretation and application of Rule 8.** That Rule, in turn, governs the pleading standard in 'all civil actions and proceedings in the United States district courts.") (emphasis added).

BUCHALTER
A PROFESSIONAL CORPORATION
LOS ANGELES

that the named defendants "misrepresented themselves as insured motor carriers capable of transporting Plaintiff's goods throughout California, which caused Plaintiffs to pay Defendants money for services that never actually happened." *Pro-Com Prods.*, 2019 WL 1771652, at *2. The *Pro-Com Prods.* plaintiffs were thus alleging suspicious and unusual conduct, not rational business conduct like T-Mobile does here. No insured motor carrier would, in the ordinary course, take money in exchange for services and then fail to provide the services for which it was paid. Thus, the *Pro-Com Prods.* defendants' motion to dismiss offered "alternative explanations" for *inherently unusual or suspicious conduct.* Here, T-Mobile paid money to the EBS license holders—not WCO—and rests its claim on its characterizations of rational business conduct, *i.e.* things that any sophisticated party engaging in a complex transaction would do: offer a competitive price, protect its transaction with non-disclosure agreements, and incorporate a breakup fee to hedge against the risk of the deal falling through. Additionally, while T-Mobile suggests WCO's offers are "shams" because it has not purchased spectrum, T-Mobile admits that it has *prevented* WCO from consummating its offers by repeatedly exercising its ROFRs.

The *Pro-Com Prods.* plaintiffs also cited "no authority for the proposition that a fraud claim fails at the pleading stage if a defendant can come up with a theory it believes is more likely than the plaintiff's." WCO, by contrast, cites several cases in which allegations of ordinary business conduct paired with conclusory allegations of fraud did not show a plausible entitlement to relief at the pleading stage. *See, e.g., Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 367-68 (S.D.N.Y. 2022) (conclusory allegations of fraud without allegations of conduct by defendants that was "unusual, suspicious, or inconsistent with what would be expected from a contracting party who had been acting in good faith" did not plausibly assert a fraud claim); *Bermudez v. Colgate-Palmolive Co.*, No. 1:21-cv-10988 (JLR), 2023 WL 2751044 at *12 (S.D.N.Y. Mar. 31, 2023) (allegations that toothpaste manufacturer advertised certain health benefits paired with conclusory allegation that it "knew or

should have known" that its products did not possess the promised benefits and safety features and presented a risk of harm were insufficient to plausibly give rise to fraudulent intent); *Duran v. Henkel of Am.*, 450 F. Supp. 3d 337, 42-354 (S.D.N.Y. 2020) (conclusory allegations that defendant "falsely advertised" its hair gel as "no flakes" coupled with allegations that product in fact produced flakes, product incorporated ingredient which had been revealed to produce flakes, and defendants employed cosmetic scientists who were aware of the ingredient's "flaking properties" were insufficient to plausibly give rise to fraudulent intent); *Rusty115 Corp. v. Bank of am., N.A.*, CASE NO. 22-CV-225141 BER, 2023 WL 6064518, at *5 (S.D. Fl. Sep. 18, 2023) (allegations that bank issued letters containing inaccurate information regarding average balances held in a trust account insufficient to defeat motion to dismiss because it was "equally plausible" that those inaccuracies were simply erroneous miscalculations).

Additionally, even if the Court were to credit T-Mobile's "alternative explanation" argument, WCO only asserted that argument in attacking T-Mobile's allegations of a single element: fraudulent intent. WCO's arguments concerning materiality, injury to business or property, and the lack of a pattern of racketeering activity—to name just a few—do not rely on "alternative explanations." These arguments focus instead on the logical contradictions embedded in T-Mobile's allegations and on T-Mobile's failure to satisfy the requirements for a RICO pattern in the Ninth Circuit. They would apply even if every word of T-Mobile's claims were true, and do not require the Court to make factual determinations. *Pro-Com Prods.* is wholly inapposite, and T-Mobile's effort to reduce WCO's numerous arguments for dismissal to a mere proffer of "alternative explanations" fails.

### C.   T-Mobile Does Not Prevail Under the Five Factor Balancing Test

In its opening memorandum, WCO submitted for the Court's consideration a five-factor test employed by at least one other court in this district. *See* Defs' Mem. In Supp. at 12 (citing *Top Rank, Inc. v. Hayman*, Case No. 2:15-cv-04961-JFW (MRWx),

2015 WL 99528867, at *1 (C.D. Cal. Sep. 17, 2015)). Even considering T-Mobile's counterarguments, all five factors favor staying discovery.

### 1.     T-Mobile Will Not Suffer Prejudice from a Stay

WCO argued in its opening brief that T-Mobile cannot be prejudiced by a stay of discovery because it can defeat the supposed "fraud" simply by declining to exercise its anticompetitive ROFRs and permit WCO's transactions to proceed, rather than making the cynical, monopolistic choice to continually, aggressively, and intentionally thwart *every* purchase for spectrum WCO attempts to make. Defs' Mem. in Supp. at 13. Incredibly, T-Mobile doubles down on its "Hobson's Choice" argument by claiming that, going forward, only "some" of WCO's offers will be fraudulent, so T-Mobile must continue to assume that *all* of the offers are fraudulent and thus must continue to exercise its ROFRs in perpetuity. *Id.* T-Mobile even emphasizes its request that the Court abet T-Mobile's efforts to monopolize the EBS spectrum by enjoining WCO from making *any* offer to purchase spectrum in the future *Id.* T-Mobile's shifted narrative—besides raising Rule 9(b) particularity issues—still does not show that it would suffer ongoing harm.

All of WCO's offers are genuine, but even if only some were, there would still be no ongoing harm to T-Mobile if it simply declined to exercise its ROFRs. Transactions which were not consummated, whether prompted by "sham" offers or by bureaucratic red tape,[9] would leave T-Mobile in precisely the same position it began: making submarket lease payments to captive nonprofit schools and colleges.[10] And those transactions which are consummated present no harm to redress for two reasons: (1) completing a transaction proves that the initial offer was not fraudulent, meaning there can be no harm to redress and (2) T-Mobile's position will remain *exactly the*

---

[9] T-Mobile concludes that because WCO's transaction with an Oklahoma School District was abandoned, that is further evidence that "WCO is not actually interested in owning spectrum licenses." Not so: that transaction was abandoned because of a many months' long delay from the Federal Communications Commission in signing off on the license transfer.

[10] Indeed, under at least the Albright College lease, T-Mobile would even retain its ROFR.

*same* even if WCO becomes its new landlord by purchasing an EBS spectrum lease. T-Mobile's speculative complaint that it will be forced to "pay a king's ransom later when its current lease agreements expire" omits that these leases will not expire for many years, in some cases as many as fifteen years. In the interim, all that will happen if WCO purchases a spectrum license is that it would become T-Mobile's new spectrum landlord, and T-Mobile would make lease payments to WCO instead of to a non-profit EBS license holder on the exact same economic terms. T-Mobile's effort to show a threat of ongoing harm is unavailing.

T-Mobile also asserts a "general interest" in rushing to discovery. *See* Defs' Mem. at 13-14 (citing *String Cheese Incident, LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). T-Mobile cites *String Cheese Incident* for the proposition that delaying discovery "would significantly impact and prejudice [T-Mobile's] right to pursue its case and vindicate its claim[s] expeditiously." *String Cheese Incident*, *LLC* at *2. That court also observed, however, that defendants "also would undoubtedly be prejudiced if they were forced to engage in discovery if the court eventually granted their motion to dismiss." *Id.*

It is also noteworthy that this is hardly a "bet the company" litigation for T-Mobile. *Cf. SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2011 WL 4018207 (D. Col. 2011) (declining to stay discovery because plaintiff argued persuasively that it was "a small company that cannot survive a substantial delay.") T-Mobile's size and sophistication are beyond dispute, and its voracious appetite for inflicting discovery on WCO and the EBS licenses holders is well documented.

T-Mobile also averred generally that it is in its interest "to conduct discovery now, before memories fade and evidence becomes stale." *See* Defs' Mem. in Opp. at 13-14 (citing *Atabekova-Michaelidis v. City of Los Angeles*, 2023 WL 5444328, at *3 (C.D. Cal. Feb. 28, 2023)). The *Atabekova-Michaelidis* case T-Mobile cites did not concern a stay pending a motion to dismiss, but rather was sought *three months* into

the discovery period. *Atabekova-Michaelidis*, 2023 WL 5444328, at \*3. That Court observed that the delay had "already deprived Plaintiffs of an opportunity to take meaningful discovery," while by contrast, T-Mobile has already had 12,000 pages of discovery produced to it during its strategic litigation campaign against the EBS license holders.

And as far as T-Mobile is worried about "memories fading," it took two years to allegedly, locate and identify its supposed "whistleblower," who it still refuses to make known to WCO. Ostensibly, if a stay is not granted, T-Mobile will continue to withhold the identity of the "whistleblower" while seeking additional invasive discovery of WCO. This is not unlike the situation in *Atabekova-Michaelidis*, where the Defendant argued for an asymmetric discovery obligation: discovery against him would be stayed, but he would be free to propound discovery as he pleased. By withholding the identity of the "whistleblower," T-Mobile can do the same. T-Mobile would be able to shield him from deposition. It would doubtless withhold documents referencing him or documents he has provided which might identify him. A one-sided discovery period under cover of claims *which the Court may entirely dismiss* would be unfairly prejudicial to WCO.

In summary, the prejudice to WCO of permitting discovery while its motion to dismiss is pending far outweighs any "prejudice" to T-Mobile that would result from a stay of discovery. This factor favors WCO.

**2.      T-Mobile's Trivialization of Its Abusive and Harassing Litigation Conduct Does Not Obviate the Burden of Discovery Before T-Mobile's Claims Have Been Reviewed**

T-Mobile argues that WCO has failed to "show specific facts demonstrating that the challenged discovery will result in a clearly defined and serious injury," and then proceeds to rebut the "specific facts demonstrating" injury by insisting that its strategic litigation campaign is a benign effort to "ensure that [the nonprofit schools and colleges it sued as pretext for seeking discovery against WCO] uphold their end of the bargain."

T-Mobile's claim that it "has been successful in every case" is wildly disingenuous: no court has dismissed any of the cases because the cash-strapped schools and colleges did not have the appetite to litigate against T-Mobile and voluntarily dismissed those suits. Then again, by T-Mobile's definition of success, it has succeeded: it has prevented WCO from purchasing EBS licenses, ensured the non-profit schools stay under its thumb, obtained 12,000 pages of documents revealing WCO's business plans and strategies, and maintained its monopoly on the EBS spectrum. T-Mobile's acknowledged history of aggressive litigation weighs in favor of a stay.

### 3.    T-Mobile's Conclusory Assertion that the Motion to Dismiss is Unlikely to Result in Dismissal of the Claims Is Meritless

T-Mobile next argues that because WCO's motion to dismiss is "unlikely to result in the dismissal of any of the claims in this action with prejudice," the Court would be inconvenienced by a stay of discovery pending the motion to dismiss. As already noted, T-Mobile addressed just one of WCO's numerous arguments for dismissal in its motion to dismiss. That is hardly sufficient basis to assume WCO's motion to dismiss is "unlikely to result in the dismissal of the claims with prejudice." Ultimately, whether T-Mobile or WCO is "likely to prevail" will be for the Court to decide after it hears the arguments on that motion from both sides.

In the meantime, myriad federal courts have found that staying discovery until it is clear a litigation will proceed _enhances_ judicial efficiency. _See, e.g._, _CGC Holding Co., LLC v. Hutchens_, No. 11-cv-0102, 2011 WL 2636847, at *2 (D. Colo. July 6, 2011) ("[I]t is certainly more convenient for the Court to stay discovery until it is clear that the case will proceed"); _Chavous v. District of Columbia Financial Responsibility and Management Assistance Authority_, 201 F.R.D. 1, 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion is 'an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources") (citing _Coastal States Gas Corp. v. Dept. of Energy_, 84 F.R.D. 278, 282 (D. Del. 1979)); _Mays v. Peoples Bank_, Civil Action No. 2:22-cv-

00418, 2022 WL 17490083 at *1 (S.D. W. Va. Dec. 7, 2022) (holding that judicial economy weighed in favor of staying discovery pending a dispositive motion where the case likely involved complex factual and legal issues and where the motion to dismiss, if granted, would obviate the need for discovery); *Blankenship v. Trump*, No. 2:19-cv-00549, 2020 WL 748874 at *4 (S.D. W. Va. Feb. 13, 2020) ("[T]he interests of judicial economy favor reducing the burden of discovery on parties when the motion to dismiss raises potentially dispositive legal issues and [sic] 'the resolution of which may obviate the need for or limit discovery in this case.'"); *PopSockets LLC v. Online King LLC*, No. 19-cv-01277-CMA-NYW, 2019 WL 5101399 at *4 (D. Colo. Oct. 11, 2019) ("[A] temporary stay of discovery will better promote judicial economy. If the motion to dismiss is granted, the case against the defendant will be fully resolved; thus, staying the matter temporarily furthers the interests of judicial economy and efficiency."); *see also Apothio, LLC v. Kern County*, 2021 WL 75243, at *2 (E.D. Cal. Jan. 8, 2021) ("[D]istrict courts inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and *entirely eliminate the need for such discovery*.") (emphasis added).

In arguing otherwise, T-Mobile offers *Renda* and *Molinaro* for the proposition that staying discovery hampers judicial economy by "clogging the court's docket." Pl's Mem. in Opp. at 18 (citing *F.D.I.C. v. Renda*, 1987 WL 348365, at *5 (D. Kan. Aug. 6, 1987); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 903 (9th Cir. 1989)). Both are inapposite. In *Renda*, several defendants had already answered when a motion to stay was requested; here, granting WCO's motion would obviate the need for any discovery. *See Renda*, 1987 WL 348365 at *1 (noting that several motions by defendants for leave to file amended answers were pending). *Molinaro* similarly involved no potentially dispositive motion. *See generally Molinaro*, 889 F.2d at 902-03. Obviously, the benefits to judicial economy from staying discovery are lessened where the case is <u>certain</u> to continue if a motion to stay discovery is granted. That is not the case here. This factor favors a stay.

### 4. T-Mobile's Past Conduct Augurs That It Will Use Discovery to Burden Third Parties, Which In Turn Harms the Public Interest.

T-Mobile dismisses as "rank speculation" WCO's concern that it will use this litigation as a pretext to impose the burdens and expense of discovery on the nonprofit EBS license holders. Pl's Mem. in Opp. at 19. Yet T-Mobile admits two sentences later that discovery "may be sought" from third parties. *Id.* T-Mobile also notes that it has not yet served subpoenas and has no plans to take "frenzied discovery." *Id.* All of these claims are belied by T-Mobile's well-established litigation history. T-Mobile used several breach of contract litigations against the schools as a pretext to take third- party discovery of WCO and could easily employ the same tactic in reverse. T-Mobile is also well-aware that these non-party schools and colleges have no appetite or resources for litigating with T-Mobile and cannot afford the burden and expense of participating in discovery. Denying a stay would allow T-Mobile to engage in limitless third party discovery based on claims that should be entirely dismissed.

Additionally, the potential to be roped into T-Mobile's crusade against WCO would harm the public interest by chilling the market for sale of EBS leases—precisely the outcome T-Mobile is hoping for in pressing its nonsensical fraud claims. Any EBS license holder who entered a transaction with WCO would become a potential subpoena target. This is even more likely given the license holders' limited finances and general hesitance and lack of resources to litigate with T-Mobile.

T-Mobile contends that permitting discovery before its claims are tested will further a public interest in rooting out fraud. That public interest is outweighed by the public's interest in ensuring the social and financial burden and expense of civil discovery are not imposed on companies and third parties on the basis of spurious, untested claims. Any countervailing interest in "rooting out fraud" will not be defeated by T-Mobile waiting until this Court confirms that its theory would even legally *constitute* fraud before propounding discovery. T-Mobile's argument that the public

1  has an interest in T-Mobile "retaining the benefit of its bargain for EBS spectrum

2  leases" rings particularly hollow. T-Mobile does not lose the benefits of its bargain by

3  purchasing EBS spectrum leases—it simply converts a rental right into an ownership

4  right. The potential harm to third parties and the public interest both favor a stay.

5  **III.    CONCLUSION**

6        For these reasons, the Court should issue a Protective Order Staying Discovery

7  in this matter until it rules on Defendants' Motion to Dismiss.

8

9                                                          Respectfully submitted,

10  DATED:  November 3, 2023                  BUCHALTER
                                                          A Professional Corporation

11

12

                                                          By: */s/ Mark T. Cramer*
13                                                             Joshua M. Robbins

14                                                             Mark T. Cramer

15                                                          **MITTS LAW, LLC**
                                                          Maurice R. Mitts (admitted *pro hac vice*)
16                                                             mmitts@mittslaw.com
                                                          1822 Spruce Street
17                                                          Philadelphia, PA 19103
                                                          (215) 866-0112

18
                                                          *Attorneys for Defendants WCO Spectrum,*
19                                                          *LLC, Academia Spectrum, LLC, Gary*
                                                          *Winnick, Carl Katerndahl, Andreas Bitzarakis,*
20                                                          *and Tyler Kratz*

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

## CERTIFICATE OF WORD COUNT COMPLIANCE

The undersigned, counsel of record for Defendants WCO Spectrum LLC, Academia Spectrum LLC, Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz, certifies that this brief contains 6,896 words, which complies with the word limit of Local Civil Rule 11-6.1.

DATED: November 3, 2023

BUCHALTER
A Professional Corporation

By:*/s/ Mark T. Cramer*
    Joshua M. Robbins
    Mark T. Cramer

**MITTS LAW, LLC**
Maurice R. Mitts (admitted *pro hac vice*)
  mmitts@mittslaw.com
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112

*Attorneys for Defendants WCO Spectrum, LLC, Academia Spectrum, LLC, Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz*