**BUCHALTER APC**
Joshua M. Robbins (SBN 270553)
  jrobbins@buchalter.com
Mark T. Cramer (SBN 198952)
  mcramer@buchalter.com
Thomas J. Speiss, III (SBN 200949)
  tspeiss@buchalter.com
S. Ross Garrett (SBN 330285)
  rgarrett@buchalter.com
18400 Von Karman, Suite 800
Irvine, CA 92612-0514
949.760.1121

**MITTS LAW LLC**
Maurice R. Mitts (admitted *pro hac vice*)
  mmitts@mittslaw.com
1822 Spruce Street
Philadelphia, PA 19103
215.866.0112

Attorneys for Defendants WCO Spectrum LLC,
Academia Spectrum LLC, Carl Katerndahl,
Andreas Bitzarakis, Tyler Kratz, and Karen
Winnick, as Trustee of the GKW Trust and Special
Administrator of the Estate of Gary Winnick

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **T-Mobile US Inc.**, *et al.*, | Civil Action No. 2:23-4347-DMG-E (Hon. Dolly M. Gee) |
| Plaintiffs, | |
| vs. | **Request For Judicial Notice In Support Of Defendants WCO Spectrum LLC,  Academia Spectrum, LLC, Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, And Tyler Kratz's Motion To Dismiss** |
| **WCO Spectrum LLC**, *et al.*, | |
| Defendants. | |
| | Hearing Date: April 26, 2024 Time: 9:30 a.m. Courtroom: 8C |
| | Complaint Filed: June 2, 2023 |

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Evidence 201 and the doctrinal authority cited herein, Defendants WCO Spectrum, LLLC, Academia Spectrum, LLC, Gary Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz (collectively, the "WCO Defendants"), request that the Court take judicial notice of the following exhibits, made in support of Defendants Motion to Dismiss filed concurrently herewith.

1.     **Exhibit A** is a true and correct copy of the Commitment Cost Agreement ("CCA") between WCO Spectrum, LLC and Albright College. On a motion to dismiss, the Court may consider the contents of "the complaint, materials incorporated into the complaint by reference, and matters of which the [C]ourt may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Where a Complaint selectively quotes from a document, the Court may review the document's full text. *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997); *see also Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014) ("Courts are instructed, in deciding Rule 12(b)(6) motions, to read the allegations of a complaint in the context of the full documents and, where appropriate, to accept the documents, rather than a characterization of the documents, as the true account."). The Court may also consider "evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 456 F.3d 445, 448 (9th Cir. 2006).

Here, Complaint refers to it as the CCA at least twenty-five times, and describes it as a "secret side deal" or arrangement for a "kickback" several more. The CC is thus both incorporated into the Complaint by reference and is evidence on which the Complaint necessarily relies.

2.     **Exhibit B** is a true and correct copy of the Complaint, captioned *TDI Acquisition Sub LLC v. Albright College*, filed by Plaintiff TDI Acquisition Sub LLC against Albright College in the Court of Common Pleas, Berks County Pennsylvania

on or around May 27, 2021. As this Court has noted previously, "[c]ourt filings and orders issued in related litigation are [] proper subjects of judicial notice." *Vampire Family Brands, LLC v. MPL Brands, Inc.*, No. CV 20-9482-DMG (ASX), 2021 WL 4134841, at *1 (C.D. Cal. Aug 6, 2021) (Gee, J.) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006)).

2.    **Exhibits C and D** are true and correct copies of articles from the New York Times and Wall Street Journal discussing a breakup fee paid by AT&T to T-Mobile in an amount between $4 billion and $6 billion in an aborted transaction by AT&T to acquire T-Mobile for $39 billion—more than 10% of the value of the transaction. Defendants submit that the accuracy of the facts stated in the articles are "not subject to reasonable dispute and capable of accurate and ready determination by sources whose accuracy cannot reasonably be questioned." *Rueda Vidal v. U.S. Dept. of Homeland Security*, 536 F. Supp. 3d 604, 612-13 (C.D. Cal. 2021) (Gee, J.) (quoting *Campbell v. Pricewaterhouse Coopers, LLP*, 642 F.3d 820, 824 n.3 (9th Cir. 2011). That said, even if the court declines to take judicial notice of the matters contained in these articles as factually true, the Court may still take judicial notice that the articles "indicate what was in the public realm at the time, [without considering] whether the contents of [the] articles [are] in fact true." *Rueda Vidal*, 536 F. Supp. 3d at 613 (taking judicial notice of certain Tweets and news articles as reflecting what was in the public realm at the time); *see also Grill v. Lincoln Nat'l Life Ins. Co.*, No. EDCV 140051JGBSPX, 2014 WL 12588652, at *3 (C.D. Cal. June 3, 2014) (taking judicial notice of news articles from, *inter alia*, the Wall Street Journal and New York Times as indicating what was in the public realm at the time).

As the above-referenced document are properly the subject of judicial notice pursuant to Fed. R. Evid. 201 and the authority cited herein, Defendants respectfully request that the Court take judicial notice of them and consider them in ruling on Defendants' Motion to Dismiss filed concurrently herewith.

Respectfully submitted,

DATED:  March 6, 2024

**BUCHALTER**
A Professional Corporation


By: */s/Joshua M. Robbins*

Joshua M. Robbins
Mark T. Cramer
Thomas J. Speiss, III
S. Ross Garrett

**MITTS LAW LLC**
Maurice R. Mitts (admitted *pro hac vice*)

Attorneys for Defendants WCO Spectrum LLC, Academia Spectrum LLC, Carl Katerndahl, Andreas Bitzarakis, Tyler Kratz, and Karen Winnick, as Trustee of the GKW Trust and Special Administrator of the Estate of Gary Winnick

# Exhibit A

## COMMITMENT COSTS AGREEMENT

This Commitment Costs Agreement is made as of April 30, 2021 ("Agreement") by and between Albright College ("Licensee") and WCO Spectrum, LLC or an entity affiliated with WCO ("WCO"). **For the absence of doubt, no commitment costs or other fees are due if WCO purchases the License from Licensee.**

WHEREAS, concurrent with and contingent on the execution of this Agreement, WCO is submitting a non-binding offer letter dated as of the date hereof (the "Offer") to the Licensee to purchase certain Educational Broadband Service ("EBS") license(s) issued to the Licensee by the Federal Communications Commission, as more fully described in the Offer (the "License");

WHEREAS, the License is subject to a certain lease agreement and that lease agreement contains certain rights of first refusal or other license sale-related contractual rights in favor of the existing lessee of the License (collectively, the "ROFR Provisions");

WHEREAS, prior to the date hereof, WCO expended significant time, effort and resources, and, subject to receiving a favorable response to the Offer, plans to expend significant additional time, effort and resources, toward the evaluation, negotiation and documentation of the transaction outlined in the Offer;

WHEREAS, the Offer is valuable to the Licensee and will give the Licensee an opportunity to sell the License at an attractive price either to WCO or pursuant to ROFR Provisions;

WHEREAS, as a condition of WCO preparing and submitting the Offer to the Licensee, the Licensee agrees to execute this Agreement;

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Licensee and WCO agree as follows:

1.  *Offer.* As a condition to WCO's preparation and submission of the Offer and WCO's willingness to continue to commit additional time, effort and resources toward the evaluation, negotiation and/or documentation of the transaction outlined in the Offer (the "Transaction"), WCO has requested that the Licensee agree to exclusivity and associated cost arrangements described herein in consideration of and as an inducement to the willingness of WCO to prepare and submit the Offer and continue such efforts, and the Licensee has agreed to such arrangements. In the event that the lessee fails to exercise its rights under the License's ROFR Provisions, Licensee and WCO shall negotiate in good faith an asset purchase agreement ("APA") covering the License that reflects the principal terms set forth in the Offer and contains other terms that are industry-standard for APAs of such nature. Nothing in this Agreement, however, shall be construed as an obligation of any of the parties hereto to ultimately execute such an APA or proceed with the Transaction. Each party shall be free, for any good faith reason, to withdraw from Transaction discussions and not proceed with a Transaction without obligation or liability to the other or to any other person, provided that any such withdrawal by a party from discussions shall not affect such party's obligations under this Agreement.

1

CONFIDENTIAL                                                                                     TDI0006

2.  *Exclusivity.* The Licensee agrees that from the date hereof until the six month anniversary of the date hereof (the "Exclusivity Period"), it shall not, and shall cause its Affiliates and any of its or their respective directors, officers, employees, representatives or agents, including without limitation investment bankers, lawyers and other advisors (collectively, the 'Representatives") not to, do any of the following, or cause any of the following to be done, directly or indirectly during the Exclusivity Period: (i) negotiate, authorize, propose or enter into a definitive agreement or an agreement in principle with respect to any transaction, including options or forwards, that involve a direct or indirect sale, transfer or lease of any License to any third party (any of the foregoing, an "Acquisition Transaction"), (ii) solicit, conduct any discussions or negotiations with respect to or otherwise knowingly encourage or facilitate any submissions of proposals or offers in respect of, an Acquisition Transaction, or (iii) furnish or cause to be furnished to any person other than its Representatives any information in connection with an Acquisition Transaction or any information about the Offer (including the identity of WCO) or the terms of this Agreement. The Licensee further agrees to immediately suspend, and to instruct its Representatives to immediately suspend, any activities that would be prohibited by this paragraph. In the event any third party provides a proposal or offer to Licensee, in each case in connection with an Acquisition Transaction, the Licensee or its Representatives shall notify WCO immediately in writing and shall provide WCO with the proposed terms and a copy of any materials received in connection therewith.

3.  *ROFR Provisions.* Notwithstanding anything contained in Section 2 to the contrary, nothing in this Agreement shall prohibit the Licensee from complying with its obligations under the ROFR Provisions, including but not limited to entering into an agreement for an Acquisition Transaction pursuant to the ROFR Provisions with the existing lessee of the License or a party designated by the existing lessee, should the ROFR Provisions permit, or closing such transaction, subject to compliance with Section 3 hereto if applicable. Unless prohibited by a ROFR Provision, the Licensee shall, within 48 hours, provide notice to WCO of the receipt and substance of any communications indicating that lessee intends to exercise or decline to exercise the applicable ROFR Provision, or any correspondence related to instigating litigation or threat of litigation resulting in any notice or other communication the Licensee receives from the lessee during the Exclusivity Period. The Licensee shall be deemed to fulfill the obligation to provide such notice if sent electronically, with the appropriate correspondence attached, to the following email: ckaterndahl@winnickco.com.

4.  *Commitment Costs.* In addition, and without limiting the foregoing, if, at any time from the date hereof and for a period of 18 months the existing lessee or an affiliate enters into an agreement for an Acquisition Transaction and it is consummated thereafter, then the Licensee agrees to pay commitment costs in the amount as set forth in Exhibit A to an account designated by WCO, with such payment to be made no later than the tenth (10th) business day following the closing of such Acquisition Transaction regardless of when such closing occurs.   In the event that the lessee does not exercise or otherwise waives their right of first refusal and declines to purchase the license, and WCO purchases the license, then the Commitment Costs are deemed waived by WCO. The Commitment Costs include fees and costs assessed and/or incurred by WCO in pursuing the transaction

2

CONFIDENTIAL                                                                                      TDI0007

including a termination/non-consummation fee, and third party brokerage, administration, due diligence, legal, accounting and financial commitment costs.

5. *Confidentiality.* This Agreement is confidential information pursuant to the Non-Disclosure Agreement executed on February 17th, 2021 between the parties.

6. *Definitions.* The term "Affiliate" means with respect to a party, any other Person that, directly or through one or more intermediaries, is controlled by, controls, is under common control or has common material beneficial ownership with such party. The term "Person" means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, governmental authority, cooperative, association, other entity, or individual, and the heirs, executors, administrators, legal representatives, successors, and assigns of such person as the context may require.

7. *Governing Law and Venue.* This Agreement shall be governed by, and the rights and duties of the parties hereunder shall be construed in accordance with, the laws of the State of Pennsylvania. The parties hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of the courts of the State of Pennsylvania, and of the United States of America located in Berks County for any actions, suits or proceedings arising out of or relating to this Agreement (and agree not to commence any action, suit or proceeding relating thereto except in such courts, and further agree that service of any process, summons, notice or document by U.S. registered mail to their respective addresses set forth above shall be effective service of process for any action, suit or proceeding brought against either party in any such court). The parties hereby irrevocably and unconditionally waive any objection that either party may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of or relating to this Agreement in the courts of the State of Pennsylvania or the United States of America located in Berks County, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum. THE PARTIES FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS LETTER AGREEMENT. In the event of litigation relating to this Agreement, the non-prevailing party as determined by a court of competent jurisdiction will be liable for, and will pay to the prevailing party, the reasonable cost of such litigation, including, without limitation, outside legal fees incurred by the prevailing party in connection with such litigation (including any appeal relating thereto).

8. *Specific Performance.* The parties hereto agree that irreparable damage would occur in the event any provision of this Agreement was not performed in accordance with the terms hereof, that the parties hereto shall be entitled to specific performance of the terms hereof, in addition to any other remedy at law or equity, and that any requirement for the proving of actual damages or the securing or posting of any bond in connection with such remedy is waived. This Agreement may be executed by facsimile signature and in counterparts.

CONFIDENTIAL                                                                            TDI0008

9.   *Miscellaneous.* This Agreement may not be assigned by operation of law or otherwise without the express prior written consent of the other parties hereto. This Agreement may not be amended or modified except by an instrument in writing signed by each of the parties to this Agreement. This Agreement is the complete and exclusive statement of the parties' agreement with respect to the subject matter and supersedes all other oral and written agreements or communications between the parties prior to the execution of this Agreement relating to this subject matter. Nothing in this Section is intended to limit or exclude any liability for fraud by either party prior to the execution of this Agreement. Sections 2-5, 7-8 and 9 of this Agreement shall survive any termination of the Agreement until the third anniversary of the date of such termination.

*[Signatures on next page.]*

CONFIDENTIAL                                                                                                    TDI0009

*[Signature page for Commitment Costs Agreement]*

In order to confirm our mutual agreement as set forth in this Agreement, please sign this Agreement in the space provided below and return it to us, whereupon it shall constitute our binding agreement with respect to the subject matter hereof.

WCO SPECTRUM LLC

By: _____

Name: Carl Katerndahl
Title: Managing Partner

Albright College

By: _____

Name:   Jacquelyn S. Fetrow
Title:   President, Albright College

5

## EXHIBIT A

### COMMITMENT COSTS

| Call Sign | Market | Commitment Costs |
|-----------|--------|------------------|
| WND475 | Reading, PA | $1,620,000 |
| Total | | $1,620,000 |

**NO COMMITMENT COSTS ARE DUE IF WCO PURCHASES THE LICENSE**

6

CONFIDENTIAL                                                                    TDI0011

# Exhibit B

KLEINBARD LLC
By: Steven J. Engelmyer
PA ID No. 42840
sengelmyer@kleinbard.com
Paul G. Gagne, PA ID No. 42009
pgagne@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB·LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**NOTICE TO DEFEND**

RECEIVED

2021 MAY 28  AM 8:15

SHERIFF'S OFFICE
COUNTY OF BERKS

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

## NOTICE TO DEFEND
## NOTIFICACIÓN PARA DEFENDERSE

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

Lawyers' Referral Service of the
Berks County Bar Association
544 Court Street
Reading, Pennsylvania 19601
Telephone (610)375-4591
www.BerksBar.org

### AVISO

Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.

SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.

Servicio de Recomendación para Contratar Abogados
del Colegio de Abogados del Condado Berks
544 Court Street
Reading, Pennsylvania 19601
Teléfono (610) 375-4591
www.BerksBar.org

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

KLEINBARD LLC
By: Steven J. Engelmyer
PA. ID No. 42840
sengelmyer@kleinbard.com
Paul G. Gagne, PA ID No. 42009
pgagne@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : | |
| v. | : | CIVIL ACTION/DECLARATORY JUDGMENT |
| ALBRIGHT COLLEGE, | : | NO. |
| Defendant. | : | |
| | : | JURY TRIAL DEMANDED |

## COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiff TDI Acquisition Sub, LLC, by its undersigned counsel, hereby alleges the following for its complaint against Defendant Albright College:

## NATURE OF THE ACTION

1. In this action, Plaintiff TDI Acquisition Sub LLC ("TDI") seeks to prevent Defendant Albright College ("Albright") from selling—in breach of the parties' contract—a Federal Communications Commission ("FCC") license to use certain radio frequency spectrum in the Reading, Pennsylvania area (the "License"). Section 3(a) of the contract is an exclusivity

1

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

provision that prohibits Albright from selling or assigning the License unless ▆▆▆▆▆▆ ▆▆▆▆▆ set forth in subsection 10(c) applies. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ as that term is defined in subsection 10(c). Because Albright is the party seeking to invoke this ▆▆▆▆▆▆▆▆▆, it bears the burden of establishing that ▆▆▆▆▆ applies. Albright has not carried that burden. Although both it and the proposed assignee of the License—an entity called WCO Spectrum LLC ("WCO"), which provided Albright with a non-binding offer to buy the License—have offered purely conclusory statements to the effect that WCO is not ▆▆▆▆▆▆ both Albright and WCO have refused to provide any information that would substantiate (or disprove) those statements. And the little information WCO has disclosed provides reason to believe ▆▆▆▆▆ does not apply.

2.      Accordingly, unless and until Albright establishes that the ▆▆▆▆▆▆▆ applies—including, most significantly, that WCO is not ▆▆▆▆▆▆▆—it should not be permitted to sell or assign the License to WCO, or should be required to unwind any such transaction to the extent Albright already has purported to effect it.

3.      In addition, Section 3(b) of the contract grants TDI a ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Under that provision, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

## PARTIES

4.      Plaintiff TDI is a Delaware limited liability company.  Its ultimate parent company is T-Mobile US, Inc, 12920 SE 38th St., Bellevue, Washington 98006.

5.      Defendant Albright College is a Pennsylvania non-profit corporation headquartered in Reading, Pennsylvania, with its main address at 1621 N. 13th St., Reading, Pennsylvania 19604.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 42 Pa. C.S.A. § 931 and 42 Pa. C.S.A. § 7532.

7.      This Court has general personal jurisdiction over Albright because it is incorporated in Pennsylvania and its principal place of business is in Pennsylvania.  This Court has specific personal jurisdiction over Albright because Albright's conduct relative to this dispute occurred in this forum.

8.      Pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(1)-(3), venue is proper because Berks County is the county where (1) Albright's principal place of business is located; (2) Albright regularly conducts business; and (3) the transaction or occurrence took place out of which TDI's causes of action arose.

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

## BACKGROUND

**A.    The License.**

9.    Albright has long held an FCC license to use four unique channels of radio-frequency spectrum in the Reading, Pennsylvania area.  The channels are designated D1, D2, D3, and D4, and the FCC "call sign" for the license is WND475.

10.    The licensed channels are part of the Educational Broadband Service ("EBS"), which is a range of spectrum that the FCC historically has licensed to educational organizations. There are 20 EBS channels in any particular geographic area.  They fall within the band of spectrum from 2496 to 2690 MHz, commonly referred to as the "2.5 GHz" spectrum band.

11.    On March 2, 2007, Albright entered into a lease agreement for the four channels with Nextel Spectrum Acquisition Corporation (the "Lease Agreement").[1]  Nextel Spectrum Acquisition Corporation subsequently changed its name to "NSAC LLC," and on November 5, 2019, NSAC LLC assigned all of its rights and obligations under the Lease Agreement to TDI. *See* Ex. B.

12.    Following the Sprint–T-Mobile merger in April 2020, TDI is now an indirect subsidiary of T-Mobile US, Inc.  Its business is to acquire and hold spectrum rights for use by other T-Mobile affiliates.

**B.    Relevant Lease Agreement Terms**

13.    The Lease Agreement contains several terms that are relevant in the event that Albright—referred to in the Lease Agreement as "Licensee"—receives an offer to purchase the

---

[1] A copy of the Lease Agreement is attached hereto as Exhibit A.  TDI has filed the Lease Agreement and another EBS lease agreement (Exhibit F) under seal because the parties to those contracts agreed to keep their terms confidential.  TDI has also filed certain exhibits with redactions where those exhibits disclose confidential pricing information.

4

License.   First, Section 3(a) provides in relevant part that, ▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

14.   Subsection 10(c), in turn, provides:



15.   Subsection 10(c) defines ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[2] EBS and BRS, which is short for Broadband Radio Service spectrum, occupy different parts of the 2.5 GHz spectrum band.

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

16.   Under the ▮▮▮ provision of subsection 3(b), TDI has the right to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ To effectuate this right, the provision requires that, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ Once all of those conditions (as well as the other conditions precedent in the Lease Agreement) are satisfied—▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮—TDI has the right to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮

17.   Finally, subsection 3(f) of the Lease Agreement grants TDI a ▮▮▮▮▮



Like the provisions of subsections 3(a), 3(b), and 10(c), subsection 3(f) constitutes a condition precedent that Albright must satisfy before selling the License.

## C.   The FCC Changes the Rules for Holding EBS Licenses

18.     Prior to April 2020, FCC regulations allowed only educational entities to hold EBS spectrum licenses.  The FCC, however, permitted EBS licensees such as Albright—most of which lacked the technical knowledge, expertise, and infrastructure to operate a commercial telecommunications network—to lease all but five percent of their spectrum to non-educational entities such as TDI.  Nearly all of the 1,300 EBS licensees nationwide did so.  That includes Albright, which entered into the Lease Agreement with TDI's predecessor.  These leases took spectrum that otherwise would have gone unused and used it to support modern high-speed broadband telecommunications services.

19.     Effective April 27, 2020, the educational-use requirement for EBS licenses was eliminated.  According to the FCC, this change was enacted because "technological changes over the last 30 years enable any educator with a broadband connection to access a myriad of educational resources."  Transforming the 2.5 GHz Band, 86 Fed. Reg. 10839, 10840 (2021).  Hence, "[o]nly a handful of EBS licensees ha[d] deployed their own networks or use[d] their EBS licenses in a way that require[d] dedicated spectrum.  Instead, most licensees rel[ied] on lessees [such as TDI] to deploy and operate broadband networks and use[d] the leases as a source for revenues or devices."  *Id.*

20.     With EBS licenses now available to non-educational actors—and with 2.5 GHz spectrum being one of the most important components of the emerging 5G telecommunications technology—several new entities have entered the market for spectrum licenses, seeking to acquire such licenses for commercial gain.  One such entity is Winnick & Company, which operates

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

through a number of affiliates, including WCO. Prior to its dealings relative to this case, WCO has attempted to acquire dozens of EBS licenses. And Winnick & Company touts on its website that it has played an instrumental role in founding and operating multiple telecommunications providers, including Global Crossing and MetroPCS. *See* Selected Transactions, www.winnickco.com/transactions.html (last visited May 13, 2021). WCO's letters to La Roche University, another Pennsylvania college which received a WCO offer, and Albright both state that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations." Exs. C at 1, D at 1. Although it has refused to disclose its plans for any licenses it acquires, it is clear that WCO is trying to assemble a large block of EBS spectrum as would be used in a telecommunications network.

**D.      WCO's Earlier Offer to La Roche University**

21.      This is not the first time TDI has been forced to vindicate its rights under an EBS lease agreement under the threat of a purported sale of the license to WCO. In October 2020, WCO offered to purchase an EBS license leased by TDI and held by La Roche University ("La Roche") in Pittsburgh, Pennsylvania. *See* Ex. C. La Roche received a term sheet from WCO that was substantially similar to the one it presented to Albright. *See* Ex. C at 3–5. The cover letter to that term sheet states that (a) WCO is a "specialist in financing ***and operating telecommunications assets and companies***"; (b) WCO "has previously been active in the telecom industry"; and (c) Gary Winnick's companies "have consistently received FCC transfer approvals." Ex. C at 1 (emphasis added).

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

22.     After it learned of the La Roche term sheet, TDI asserted its rights under its EBS lease agreement with La Roche.  On November 25, 2020, Heather Brown, in-house counsel for T-Mobile, sent a letter to Mary Beth Fetchko, Esq., General Counsel at La Roche.  Ex. E.  The letter requested the information and assurances due to TDI under the La Roche lease agreement.[3]  The La Roche lease agreement provided TDI with substantially similar rights as the Lease Agreement at issue here, including but not limited to:  (i) ███████████████████████████████ ███████████████████████████████████████ ; (ii) ███████████ ██████████████████████████████ (iii) ███████████████████████ ██████████████ (iv) ████████████████████████████ █████████████ (v) ███████████████████████████████ ███████████████████████████████████████████ ████████████   *See* Ex. F.

23.     In response, on December 8, 2020, WCO sent TDI a letter purporting to assure it that WCO was not a ████████████ "  Ex. G.  But the letter merely parroted the definition of ██████████████ from the lease agreement and summarily denied that WCO meets any of that definition's criteria.  WCO provided no facts to support these conclusory assertions.

24.     The next day, TDI and La Roche executed a standstill agreement to give themselves more time to fulfill TDI's rights.  As part of that effort, on December 15, 2020, TDI had a call with Winnick & Co. Chairman Gary Winnick.  The call was unproductive, as Mr. Winnick did not address any of the contractual rights or concerns raised in Ms. Brown's November 25 letter.  He did, however, make clear that WCO's efforts to acquire EBS licenses would not stop with La Roche.

---

[3] The letter referenced NSAC rather than TDI, but as stated NSAC had assigned its rights to TDI.

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

25.     WCO and La Roche also requested written questions from TDI regarding the specific information to which TDI was entitled.  TDI complied, and on December 17 and 18, 2020, sent similar sets of questions to La Roche and WCO, respectively.  *See* Exs. H, I.  These included a series of questions under the heading "Whether WCO Is a ███████████████ which were designed to probe the veracity of WCO's conclusory assertions that it does not meet the ███ ████████████████████  On December 23 and 24, 2020, WCO and La Roche responded.  *See* Exs. J, K.  WCO again recited the Lease Agreement's definition of ████████████ stated that it does not meet any of the three criteria, and provided no supporting information or explanation for the assertion.  WCO refused to respond to any of the other questions—including those about the statements in its cover letter—which it claimed "are outside the bounds of any legal obligation WCO has to [TDI]."  Ex. J.  La Roche's response was similarly unilluminating on the question.  *See* Ex. K.

26.     TDI avoided litigation with La Roche only by exercising its ROFR and purchasing the La Roche license.

**E.     WCO's Non-Binding Term Sheet to Albright**

27.     On April 30, 2021, WCO sent Albright a two-page, non-binding term sheet, which proposed a sale of the License for ████████ .  *See* Ex. D.

28.     The term sheet purports to "summarize[] the basic terms and conditions pursuant to which WCO Spectrum, LLC (the 'Buyer') proposes to acquire a certain [EBS] license from Albright College."  It makes clear, however, that

> The terms and conditions summarized herein are provided FOR DISCUSSION
> PURPOSES ONLY.  They do not represent a binding offer, agreement, or
> commitment from the Buyer to acquire the EBS license or any other assets, nor are
> they all-inclusive.  Closing of the proposed transaction is subject to completion of
> due diligence by the Buyer, the satisfaction of customary conditions precedent and
> execution of definitive agreements mutually acceptable to the parties (the

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

'Definitive Agreements'), the provisions of which shall be materially consistent with, though supersede, this Term Sheet and all other understandings between the parties.

Ex. D at 3.

29.     The accompanying cover letter similarly provides that it "is not, and should not be, considered a legally binding indication or agreement in any manner, and the failure to execute definitive documentation or consummate the proposed acquisition shall impose no liability on WCO or Licensee." Ex. D at 2.

**F.      TDI Unsuccessfully Seeks Information to Which It Is Entitled**

30.     Following its receipt of the Albright term sheet on May 4, 2021, TDI sought the various types of information and assurances to which it is entitled under the Lease Agreement— just as it did with La Roche.

31.     To that end, on May 11, 2021, Ms. Brown sent a letter to Jeffrey L. Strader, Vice President for Finance and Strategic Partnerships at Albright. *See* Ex. L. Ms. Brown requested the information and assurances to which TDI is entitled under Section 10(c)(iv), concerning whether WCO is a Competing Entity; under Section 10(c)(i), to ensure that WCO will ███████████ ████████████████████████ under the Lease Agreement and ███████████ ████████████████████████████████████; under Section 10(c)(ii), ████████████████████████████████████████ ████████████████; under Section 3(b), which ████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████ These rights are critical not only because the requested information is important in its own right, but because it bears directly on whether TDI will ████████████. TDI's letter

also included a list of questions intended to facilitate the exchange of information required by the Lease Agreement.

32.     Ms. Brown sent a similar letter to WCO on the same day. Ex. M. In that letter, Ms. Brown requested substantially the same information, consistent with TDI's rights under the Lease Agreement. The letter included a similar series of questions, including several under the heading ▨▨▨▨▨▨▨▨▨▨▨▨ which were designed to probe the veracity of WCO's conclusory assertions that it does not meet the Lease Agreement's ▨▨▨▨▨ ▨▨▨▨▨▨▨▨ Ex M. TDI also asked the basis of WCO's statement in its cover letter to Albright that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations." Ex. M at 2. And TDI asked—again—for the basis of WCO's statements that (a) it is a "specialist in financing *and operating telecommunications assets and companies*"; (b) WCO "has previously been active in the telecom industry"; and (c) Mr. Winnick's companies "have consistently received FCC transfer approvals." Ex. M at 2 (emphasis added).

33.     WCO responded in a letter dated May 13, 2021, which was evasive and uninformative. Ex. N. With respect to whether it is a Competing Entity, WCO again parroted the Lease Agreement's definition of ▨▨▨▨▨▨▨▨ verbatim and stated that it does not meet any of that definition's three criteria. Ex. N at 1. Again, WCO provided no supporting information or explanation of any kind. Ex. N at 1. And it refused to respond to TDI's questions seeking to elicit that information—including those about the statements in WCO's letters to Albright and La Roche—which it claimed "are outside the bounds of any legal obligation WCO has to [TDI]." Ex N at 2. In addition, although WCO acknowledged that, "[i]f the assignment of the license

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

WND475, from Albright to WCO is consummated, WCO hereby confirms that it will assume all of Albright's obligations and acknowledge NSAC's rights under the Lease Agreement," Ex N at 2, it offered no confirmation with respect to TDI's contractual rights.

34.     Albright responded to TDI in a letter dated May 14, 2021.  Ex. O.  Albright's response, while slightly more fulsome than WCO's, provided no additional information concerning WCO's status as a ▮▮▮▮▮▮▮▮.  Ex. O.  To the contrary, it stated that, except for referring TDI to the conclusory statements made by WCO, it "has no other information" about the ▮▮▮▮▮▮▮▮ issue or about the various questions that TDI posed in an effort to elucidate it. Ex. O at 5.  Albright declined to provide any information regarding its communications with WCO—which undoubtedly addressed the ▮▮▮▮▮▮▮▮ issue—claiming that "the Lease Agreement does not provide TDI with any right to receive this information." Ex. O at 4.  Nor did Albright provide any additional information with respect to WCO's agreement in writing to assume all of Albright's obligations and acknowledge all of the TDI's rights; Albright again merely referred TDI to WCO's letters, which say nothing about TDI.  Ex. O at 3.

35.     Albright's letter then interpreted TDI's ▮▮▮▮▮▮▮▮



▮▮▮▮▮▮▮▮ in a way that sabotages TDI's ability to verify that any third party buyer of the License is not, in fact, a ▮▮▮▮▮▮▮▮  Specifically, Albright contended that the phrase ▮▮▮▮▮▮▮▮ in Section 3(b) applies only to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮"—and that TDI's ▮▮▮▮▮▮▮▮ is merely a "non-discrimination provision," which similarly does not entitle TDI to receive the information it requested. Ex. O at 2.  Albright's position, that TDI is entitled to the terms of the offer and nothing more, gives TDI no means with which to vindicate its right to prevent a sale of

the License to a Competing Entity, and would force TDI to rely on nothing more than WCO's conclusory assertions to that effect.

36.    To be clear, the ██████████ has never started running because Albright: (i) did not carry its burden of establishing that WCO is not ██████████████, and thus that its term sheet was a ████████████ that Albright could validly accept; (ii) has not fulfilled its obligations under Section 3(f) regarding TDI's ██████████████ because it refuses to share with TDI all of the information to which TDI is entitled under that provision; and (iii) has not ensured that WCO has given ████████████████████████████████████████████ ████████

37.    TDI has done everything in its power to obtain the information to which it is entitled without resorting to litigation.  *See* Exs. L (TDI letter to Albright), M (TDI letter to WCO), N (WCO response), O (Albright response).  Those efforts uniformly have been unsuccessful.  Now, as a last resort, TDI brings this action based on Albright's breaches of ██████████████ ████████████████████████, and for a declaration that Albright has failed to ████████████████████████████ ████████

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract – Exclusivity)

38.    Paragraphs 1–37 above are incorporated as if fully set forth herein.

39.    The Lease Agreement constitutes a valid and enforceable contract between TDI and Albright.

40.    TDI complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

14

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

41.     Albright breached Section 3(a) of the Lease Agreement.  That section provides that,



Subsection 10(c), in turn,

Notably, that provision

42.     As a matter of law, because subsection 10(c) ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ of Section 3(a), Albright bears the burden of demonstrating that the requirements of Section 10(c) are met.

43.     Albright has not carried that burden with respect to showing that ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The only information that it or WCO has provided concerning the ▮▮▮▮▮▮▮▮▮ is WCO's unsupported statements that it does meet any of the three criteria for qualifying as such an entity.  Albright has informed TDI that it has no information about these issues beyond WCO's assertions; WCO has flatly refused to provide any additional information that would substantiate (or disprove) them; and both Albright and WCO have refused to provide any information about their discussions, which unquestionably addressed the ▮▮▮▮▮▮▮ issue.  These failures are especially concerning given that TDI has good reason to suspect that WCO is, in fact, ▮▮▮▮▮▮▮▮▮.  WCO made a point of touting to Albright that "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."

15

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Ex. D at 1.  And in making its offer to La Roche, WCO stated that (a) it is a "specialist in financing *and operating telecommunications assets and companies*"; (b) it "has previously been active in the telecom industry"; and (c) Mr. Winnick's companies "have consistently received FCC transfer approvals." Ex. C at 1 (emphasis added).  Compounding these troubling statements is Winnick & Company's history of operating competing telecommunications providers like Global Crossing and Metro PCS, as well as Mr. Winnick's assertion during the December 15 telephone conversation regarding the La Roche offer that WCO's efforts to acquire EBS licenses would be ongoing.  And when TDI has inquired as to the basis for WCO's statements, it has been stonewalled by WCO, La Roche, and now Albright.  That is notable because (a) Albright has had discussions with WCO about the non-binding term sheet, and it is inconceivable that the ▓▓▓▓▓▓▓▓▓▓▓ issue was not addressed during those discussions; (b) WCO clearly is attempting to put together a substantial block of EBS spectrum; and (c) an entity seeking to build a 5G network naturally would focus on acquiring 2.5 GHz spectrum.  All of this raises legitimate concerns that WCO is in fact a ▓▓▓▓▓▓▓.  Against this background, Albright has not carried its burden of establishing that WCO is *not* a ▓▓▓▓▓▓.

44.    Albright also has not carried its burden with respect to subsection 10(c)(i).  Under Section 10(c), ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓  As discussed above, WCO has not assured TDI, the current Licensor under the Lease Agreement, in writing that it will "assume all of Licensee's obligations hereunder

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

and acknowledges all of [TDI's] rights hereunder."  WCO has only offered such assurances to NSAC—TDI's predecessor in interest.

45.     Because Albright seeks to assign the License without having carried its burden to show that the ███████████████ in Section 10(c) applies, it is in breach of Section 3(a).

46.     Consequently, the Court should enjoin Albright from proceeding with any sale, assignment, or other transfer of the License or its rights thereunder to WCO, or should unwind any such transaction that Albright and WCO already have purported to consummate.

WHEREFORE, TDI respectfully asks the Court to:

a.     Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing Albright from selling, transferring, or assigning the License to WCO or any of its affiliates, or unwinding any such transaction to the extent Albright already has purported to effect it;

b.     Award TDI compensatory damages in an amount exceeding $50,000;

c.     Award TDI all costs and interest allowed by law;

d.     Pursuant to Section 21(f) of the Lease Agreement, ████████████████

████████████████████████████████████████████

████ ; and

e.     Award TDI such other relief as the Court deems just and reasonable.

f.     Award TDI such other relief as is just and reasonable; and

g.     Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

## COUNT II
### (Breach of Contract – Right to Participate)

47.     Paragraphs 1–46 above are incorporated as if fully set forth herein.

48.     The Lease Agreement constitutes a valid and enforceable contract between TDI and Albright.

49.     TDI complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

50.     Albright breached Section 3(f) of the Lease Agreement.  That section provides that,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ TDI, in addition to TDI's ████████████

████████████████ under subsection 3(f)(v).

51.     Upon information and belief, Albright solicited bids, proposals, and offers from WCO for the sale or assignment of the License and those solicitations occurred both before and after WCO sent the non-binding term sheet to Albright.

52.     Albright has refused to share extensive information concerning WCO's non-binding term sheet, including, without limitation, its refusal to share any information about its communications with WCO, which obviously centered around the term sheet.  Albright thus has failed to provide TDI with the same opportunity as WCO to receive information with respect to WCO's bid and to discuss that information with Albright.

53.     TDI is entitled to all legal and equitable remedies available under the law, including specific performance of Albright's obligations under Section 3(f) of the Lease Agreement.

WHEREFORE, TDI respectfully asks the Court to:

a.      Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing Albright from selling, transferring, or assigning the License to WCO or any of its affiliates, or unwinding any such transaction to the extent Albright already has purported to effect it;

b.      Order specific performance by Albright of Section 3(f) of the Lease Agreement, ▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

c.      Award TDI compensatory damages in an amount exceeding $50,000;

d.      Award TDI all costs and interest allowed by law;

e.      Pursuant to Section 21(f) of the Lease Agreement, ▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇; and

f.      Award TDI such other relief as the Court deems just and reasonable.

g.      Award TDI such other relief as is just and reasonable; and

h.      Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

## COUNT III
### (Declaratory Judgment – ROFR)

54.     Paragraphs 1–53 above are incorporated as if fully set forth herein.

55.     Under Section 3(b) of the Lease Agreement, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇   Because

Section 10(c) of the Lease Agreement ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

19

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881



56.     As a matter of law and equity, the time period during which TDI must ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not begin running until Albright has established that the third party offer is *bona fide* and can be accepted.  Otherwise, Albright could obtain an invalid offer—the invalidity of which is concealed—and compel TDI to match it or risk losing its right to do so.  If TDI chose to match it, then Albright would have coerced a significant sum of money ▮▮▮▮ ▮▮▮▮ in this case) that TDI never was required to pay.  Such a result is precluded by the Lease Agreement and governing equitable principles.

WHEREFORE, TDI respectfully asks the Court to:

a.      Issue a declaratory judgment that the time period during which TDI must decide whether to exercise its ROFR will not start running, if at all, until Albright has established that WCO is not a Competing Entity;

b.      Award TDI all costs and interest allowed by law;

c.      Pursuant to Section 21(f) of the Lease Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ;

d.      Award TDI such other relief as is just and reasonable; and

e.      Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

20

Received County of Berks Prothonotary's Office on 05/27/2021 1:39 PM Prothonotary Docket No. 21-04881

Dated: May 27, 2021

Respectfully submitted,


By: __/s/_Steven J. Engelmeyer_____

KLEINBARD, LLC
Steven J. Engelmyer, PA ID No.
42840 Paul G. Gagne, PA ID No.
42009 Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-20007230
sengelmyer@kleinbard.com
pgagne@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
Christopher J. Mandernach*
Thomas White*
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
cmandernach@wc.com
twhite@wc.com
dhurley@wc.com
* application for admission *pro hac vice*
forthcoming

*Attorneys for TDI Acquisition Sub LLC*

Exhibit C

# The New York Times

# T-Mobile and AT&T: What's $2 Billion Among Friends?

**By Michael J. de la Merced**     December 20, 2011 9:22 am

You say "po-TAY-to," I say "po-TAH-to." But in the case of the T-Mobile USA deal's breakup fee, it's a very big root vegetable.

In announcing on Monday that it was ending the $39 billion takeover attempt, AT&T said it would pay T-Mobile's parent, Deutsche Telekom, a $4 billion breakup fee. But on Tuesday morning, Deutsche Telekom officials placed the value of the fee at a significantly higher $6 billion.

**Related Links**

As Deutsche Telekom Ponders Options, a New Deal Is Expected

AT&T, in Major Setback, Drops Its Bid for T-Mobile (Dec. 19, 2011)

Interactive Timeline: AT&T's Merger With T-Mobile

What's behind the wide gap between the two numbers? As it turns out, it's a matter of accounting.

The fee comprises both $3 billion in cash and cellular airwaves, known in the industry as spectrum. It is the latter that accounts for the divergence. AT&T is using the book value of the spectrum, which is about $1 billion, people briefed on the matter told DealBook. But Deutsche Telekom is citing the market value of the spectrum, which it calculates at about $3 billion.

AT&T and T-Mobile have also agreed to a seven-year roaming agreement, improving T-Mobile's coverage in 128 cities. Deutsche Telekom has assigned some financial value to that pact, while AT&T contends that it nets out to about zero, these people said.

For what it's worth, AT&T has already said that it would take a $4 billion accounting charge in the fourth quarter to reflect the breakup fee. And in some small

solace for the company's investors, the after-tax impact will be about $1.5 billion, or two months' worth of the company's cash flow.

Still, that is not quite the same as having completed what would have been the biggest deal of the year, nor does it erase the ignominy of paying one of the biggest breakup fees on record. But when one is in AT&T's position, it is reasonable to take what one can get.

© 2017 The New York Times Company

Exhibit D

# AT&T Is Paying the Biggest Breakup Fee Ever

WSJ **wsj.com**/articles/BL-DLB-35948

December 19, 2011

ILLUSTRATION: Universal/Everett Collection

AT&T had scored the biggest corporate merger of 2011. Now, it has another record for its mantle.

AT&T will be paying ex-merger partner T-Mobile USA $4 billion in cash and assets for <u>walking away from their proposed $39 billion marriage</u>. The fee, at 10.2% of the total purchase price, ranks among the largest-ever penalties for killing a corporate deal, according to Dealogic.

Dealogic indicates that, while the fee amount is smaller than the $4.4 billion that AOL agreed in 2000 to pay if it had walked away from the acquisition of Time Warner, that fee only represented 3.9% of the $112 billion total value of the transaction. (That deal, of course, passed regulatory muster and went on to be perhaps the worst corporate marriage in history. It has been unwound now.)

For those deals that didn't close, AT&T's payment is closest to the terms of MCI Worldcom's proposed takeover of Sprint in 1999. In that $111 billion failed merger, MCI agreed to pay $2.5 billion.

1/1