UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 23-4347-DMG (Ex)** | Date | October 22, 2024 |
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 1 of 15 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| DEREK DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:** [IN CHAMBERS] ORDER DENYING DEFENDANTS' MOTION TO DISMISS [92], GRANTING IN PART AND DENYING IN PART DEFENDANT WINNICK'S MOTION TO DISMISS [93], AND DENYING REQUEST FOR RULING AS MOOT [116]

Wireless network provider Plaintiff T-Mobile U.S., Inc., and various subsidiaries (collectively, "T-Mobile")[1] bring claims against Defendants Karen Winnick,[2] WCO Spectrum LLC ("WCO"), SCH LLC ("SCH"), Academia Spectrum LLC ("Academia"), Carl Katerndahl, Tyler Kratz, Ashok Vasudevan, and Andreas Bitzarakis.

T-Mobile leases the right to use certain wireless spectrum (radio frequencies over which wireless signals travel) from third parties with licenses for that spectrum—licenses that T-Mobile became able to acquire itself in April 2020. Defendants allegedly conspired to take advantage of right-of-first-refusal ("ROFR") provisions in the third parties' leases, driving up the price for T-Mobile to acquire the licenses and defrauding T-Mobile out of more than $10 million, in return for kickbacks from the third parties. T-Mobile brings suit against Defendants for fraud.

Defendants move collectively and, in the case of Defendant Winnick, individually to dismiss the complaint. [Doc. ## 92, 93.] For the reasons set forth in this Order, the Court **DENIES** Defendants' collective MTD [Doc. # 92] and **GRANTS IN PART** and **DENIES IN PART** Defendant Winnick's MTD. [Doc. # 93.]

---

[1] Plaintiffs are T-Mobile US, Inc. and seven subsidiaries: Clearwire Spectrum Holdings LLC; Clearwire Spectrum Holdings II LLC; Clearwire Spectrum Holdings III LLC; Fixed Wireless Holdings LLC; NSAC LLC; TDI Acquisition Sub LLC ("TDI"); and WSBY Licensing LLC.

[2] Karen Winnick is named as a defendant in her dual capacities as the Trustee of the KJW Trust and executor of the estate of Gary Winnick.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 2 of 15 |

# I.
# BACKGROUND

### A.  Allegations of the Complaint[3]

#### 1.  T-Mobile Leases from Educational Broadband Services Licensees

The Federal Communications Commission ("FCC") issued Educational Broadband Service ("EBS") licenses for certain radio frequencies in the "2.5 GHz" band of spectrum. Complaint ¶ 2 [Doc. # 1]. Until an April 2020 FCC rule change, these licenses could be held only by educational institutions and not by commercial entities (in order to reserve spectrum for educational programming). *Id.* ¶¶ 2, 34. The licensees could, however, lease all but five percent of the spectrum authorized by their licenses to commercial entities. *Id.* ¶ 35.

T-Mobile, which has a nationwide cellular and data network, leased much of that wireless spectrum from the educational institutions that held the EBS licenses. *Id.* ¶ 2. Indeed, prior to the rule change, T-Mobile primarily accessed this wireless spectrum through such leases and at the time of the rule change, held leases on 1,722 licenses for 2.5 GHz spectrum. *Id.* ¶ 37. Even now, T-Mobile alleges it holds leases on more than 1,500 licenses for 2.5 GHz spectrum. *Id.* ¶ 38.

T-Mobile's leases typically included an ROFR provision, which provides that if a third party makes a *bona fide* offer to purchase a license and the licensee intends to accept the offer, T-Mobile has 30 days to match the third party's terms and acquire the license itself. *Id.* ¶¶ 1–2. To trigger the ROFR provision, the licensee must, *inter alia*, receive a *bona fide* offer, intend to accept the offer, send T-Mobile an ROFR notice (which gives T-Mobile 30 days to decide whether to match the offer and acquire the license), and establish that the offer is *bona fide* because the offeror has the financial ability and intent to consummate the purchase and otherwise satisfies all of the requirements set forth in the lease. *Id.* ¶ 39.

#### 2.  Defendants Allegedly Form a Scheme to Defraud T-Mobile

The April 2020 rule change allowed commercial entities to hold the licenses, so that educational licensees could sell their licenses to commercial entities. *Id.* ¶ 36. According to T-Mobile, Defendants conspired to take advantage of the ROFR provisions and this rule change.

---

[3] The Court assumes the truth of the factual allegations in the Complaint solely for the purpose of deciding the motion to dismiss. Citations to the record are to the CM/ECF pagination, except as noted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-4347-DMG (Ex)** | Date | October 22, 2024 |
|---|---|---|---|
| Title | **T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.** | Page | 3 of 15 |

WCO[4] (formed in June 2020 allegedly for this scheme (*id.* ¶ 41)) or a related entity made public records requests to obtain spectrum lease agreements with ROFR provisions between T-Mobile and educational institutions. *Id.* ¶¶ 3, 43. Armed with this information, and through Defendants Katerndahl, Academia, and Bitzarakis, WCO would negotiate a potential purchase price to purchase the license and would make a sham, non-binding written "offer" to purchase the license. *Id.* ¶ 3.

Defendant WCO simultaneously executed a secret side contract—the "Commitment Costs Agreement" ("CCA")—that required the licensee to pay WCO a material portion (usually 10 %) of the purchase price if T-Mobile exercised its ROFR—essentially, according to T-Mobile, a kickback. *Id.* WCO required the licensee to sign a non-disclosure agreement as to the CCA. *Id.* T-Mobile thus believed it would have to either exercise its ROFR or risk the possibility that WCO would purchase the licenses and charge T-Mobile "a king's ransom" when its current lease agreements expired. *Id.* ¶ 6.

As part of this scheme, Defendants have allegedly targeted 167 T-Mobile licenses, proposing offers that, when totaled, exceed $1.6 billion. *Id.* ¶ 55. They have allegedly coerced T-Mobile to exercise ROFRs in leases covering 68 EBS licenses, resulting in more than $10 million in kickbacks to Defendants and costing T-Mobile hundreds of thousands of dollars in legal fees that it must cover when it negotiates the deals. *Id.* ¶ 64.

T-Mobile alleges that WCO lacks the capacity to honor the "purchase" offer and in fact seeks to profit only by deceiving T-Mobile to exercise the ROFR in its lease agreements. *Id.* ¶ 3. WCO allegedly relies on SCH to create the illusion that WCO's offers have legitimate financial backing. *Id.* ¶ 4. SCH, purportedly run out of Defendant Vasudevan's apartment, pretends to offer $2 billion in credit and receives 8% of WCO's kickbacks in exchange for its participation. *Id.*

As an example, T-Mobile alleges that in 2020, WCO targeted the EBS license owned by La Roche University, with whom T-Mobile had a lease agreement with an ROFR provision since 2007. *Id.* ¶¶ 58, 59. On October 27, 2020, Defendant Katerndahl, on behalf of WCO, emailed a $13 million offer letter to La Roche that falsely identified the offer as "*bona fide*." *Id.* ¶ 60. On November 13, La Roche issued a ROFR notice to T-Mobile that identified the offer as *bona fide*

---

[4] With regard to Defendants' roles in the scheme, T-Mobile alleges that Gary Winnick (now represented by Defendant Karen Winnick) was WCO's founder, Defendant Katerndahl an executive, and Defendant Kratz a consultant WCO hired to assist with the scheme. *Id.* ¶¶ 20–22. SCH is WCO's "supposed financier" but is in fact a shell company and a sham controlled by Defendant Vasudevan. *Id.* ¶¶ 23–25. Academia is a broker that aids WCO in targeting specific transactions for the scheme and communicating with licensees on behalf of WCO. *Id.* ¶ 26. Defendant Bitzarakis is Academia's principal. *Id.* ¶ 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al. | Page | 4 of 15 |

but did not advise T-Mobile of the CCA that had been executed between WCO and Roche. *Id.* ¶ 61. T-Mobile sought additional information from La Roche but instead received Gary Winnick's and Katerndahl's (allegedly false) assurances, including that WCO sought to invest over $1 billion into spectrum and to buy and hold the spectrum to generate returns as the leases came due for renewal. *Id.* ¶ 62. La Roche's counsel refused to provide requested information, such as communications between La Roche and WCO. *Id.* T-Mobile claims that it thus had no choice but to exercise the ROFR and purchase the license for $13 million, which resulted in a $1.3 million kickback for Defendants. *Id.* ¶ 63.

### 3. T-Mobile Learns of the Scheme

T-Mobile alleges that it learned of the scheme in 2021, when Defendants targeted a license owned by Albright College and that had been leased to Plaintiff TDI for years. *Id.* ¶ 44. On February 22, 2021, Gary Winnick and Defendants Katerndahl, Kratz, and Bitzarakis allegedly received a "deal memo" for Albright that considered whether the lease had an ROFR provision and assessed "the potential TMO Strategy," including whether T-Mobile would likely exercise the ROFR. *Id.* ¶ 46. On April 30, 2021, WCO emailed a non-binding term sheet to Albright in which it proposed to purchase the license for $16.2 million. *Id.* ¶ 47. Albright then emailed TDI a purported ROFR notice. *Id.* TDI subsequently sued Albright in Pennsylvania state court to enforce TDI's contractual rights and alleged Albright failed to establish the offer was *bona fide*. *Id.*

In October 2021, during the *Albright* case, an unknown whistleblower who claimed to be a former WCO insider informed TDI's counsel of the scheme. *Id.* ¶ 48. T-Mobile alleges it obtained a four-page narrative and various corroborating documents from the whistleblower, as well as corroborating discovery documents during the *Albright* litigation. *Id.* ¶¶ 51–52. T-Mobile further alleges that WCO and Academia obstructed discovery in the *Albright* case to avoid T-Mobile learning of the conspiracy. *Id.* ¶ 66.

### 4. T-Mobile Brings this Suit

Based on these allegations, T-Mobile brings claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C. § 1962(c)), conspiracy to violate RICO, fraud, conspiracy to commit fraud, violation of California Penal Code § 496(c), conversion, violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200), tortious interference with business expectancy and contractual relationship, unjust enrichment, and negligent misrepresentation against all Defendants. T-Mobile also brings a claim of aiding and abetting fraud against Defendants Winnick, Katerndahl, Kratz, Academia, Bitzarakis, SCH, and Vasudevan. Complaint ¶ 119.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-4347-DMG (Ex)** | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 5 of 15 |

    T-Mobile filed this lawsuit on June 2, 2023. *Id.* As noted above, Defendants brought their MTDs, T-Mobile filed its oppositions, and Defendants filed their reply briefs in support of their MTDs.[5] For brevity, the remainder of this Order will refer to the briefing in this action as follows: "MTD 1" [Doc. # 85], "MTD 2" [Doc. # 86], "Opp. 1" [Doc. # 101], "Opp. 2" [Doc. # 102], "Reply 1" [Doc. # 106], and "Reply 2" [Doc. # 107].

## II.
## DISCUSSION

### A.    Legal Standard

    A defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal is appropriate if the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

    To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

    In addition, Federal Rule of Civil Procedure 9(b) mandates a heightened pleading standard for cases sounding in fraud, including UCL and RICO claims that are based on fraud. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Rule 9(b)'s heightened pleading standard, "a party must state the particularity of the circumstances constituting fraud," meaning that the "pleading must identify the who, what, when, where, and how of the misconduct charged." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th

---

[5] Defendants also request judicial notice of a copy of the CCA, the complaint from the *Albright* action, and copies of certain newspaper articles. [Doc. # 88.] T-Mobile opposes the request inasmuch as it seeks to have the Court consider facts set forth in the newspaper articles. The request to judicially notice the CCA and *Albright* complaint is **GRANTED** to the extent it is unopposed and **DENIED** as to the articles. The purpose for which Defendants seek to have the articles judicially noticed is inappropriate in the context of a Rule 12(b)(6) motion. *See* MTD 1 at 22–23 ("Indeed, T-Mobile is quite familiar with commitment or 'break-up' fees[.]").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 6 of 15 |

Cir. 2011) (internal citations and quotation marks omitted). But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

**B.   Defense MTD**

   **1.   RICO Claims**

      **a.   Overview**

As set forth in RICO—

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "Racketeering activity" means acts that are indictable as, relevant here, mail fraud (18 U.S.C. § 1341) or wire fraud (18 U.S.C. § 1343).

A civil suit for treble damages may be brought by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The first prong requires allegations of "concrete financial loss" and "harm to specific business or property interest." *Id.* at 975 (internal citations and quotation marks omitted).

      **b.   Injury to T-Mobile's Business or Property**

T-Mobile alleges the following injuries as part of its RICO claim: "millions of dollars in overcharges in purchase prices and fees; legal fees associated with the negotiation of the license

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-4347-DMG (Ex)** | Date | October 22, 2024 |
|---|---|---|---|
| Title | ***T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.*** | Page | 7 of 15 |

purchases; lost opportunities; and attorneys' fees and costs, including the attorneys' fees and costs associated with exposing and prosecuting Defendants' fraudulent activities." Complaint ¶ 102. Defendants argue that these allegations are inadequate to confer standing under RICO. MTD 1 at 18.

A claim that one was overcharged in a transaction, however, is sufficient to show injury to property. *See Canyon Cnty.*, 519 F.3d at 976. T-Mobile clearly alleges such a claim: according to T-Mobile, Defendants made non-serious offers 10% above the price they knew licensees were willing to accept and entered into secret agreements with the licensees for payment of that 10% excess back to Defendants—the "kickback" that made the scheme profitable to Defendants. By way of example, T-Mobile alleges that the offer for the Albright College license exceeded both the potential purchase price indicated in an internal email that Defendants had previously circulated and Albright's own internal valuation. Complaint ¶¶ 52(d)–(e). In another example, T-Mobile alleges that Defendants raised an offer from $6,975,000 to $7,555,000 even though the licensee had already shown a willingness to accept the lower offer. *Id.* ¶ 67.

Defendants fault the Complaint because it "neither alleges nor attempts to determine what an objective 'market' price for the licenses would be." MTD 1 at 19. There is no such requirement (nor do Defendants cite to case law in support of their argument). T-Mobile alleges that but for the scheme it would have simply continued to lease the licenses. Moreover, T-Mobile plausibly alleges that Defendants artificially inflated the offers by 10% above what the license holders were willing to pay, forcing T-Mobile to match and overpay. Such allegations are adequate to survive a motion to dismiss.[6]

        **c.**      **Predicate Acts**

As noted above, to establish a RICO claim, T-Mobile must prove certain predicate acts, which in this case are alleged to be mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. "The mail and wire fraud statutes are identical except for the particular method used to disseminate the fraud, and contain three elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic*

---

[6] The Court therefore does not need to address whether T-Mobile's request for compensation for legal fees for, *inter alia*, negotiating the sales with the licensees and litigating against Defendants in other fora is sufficient, on its own, to confer standing. Defendants fail to cite to any binding precedent that holds such fees cannot be compensable injuries in a RICO action. *See* MTD 1 at 18–19. The unpublished Ninth Circuit decision that Defendants cite does not state that the Ninth Circuit disallows attorney's fees as a RICO injury but states that the court "has not" yet done so and "decline[d] to do so" in that opinion. *Thomas v. Baca*, 308 F. App'x 87, 88 (9th Cir. 2009). At least one circuit court of appeals holds that prior legal expenses can qualify as injuries in a RICO action. *Handeen v. Lemaire*, 112 F.3d 1339, 1354 (8th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 8 of 15 |

*Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). In addition, "materiality of falsehood is an element of the federal mail fraud [and] wire fraud" statutes. *Neder v. United States*, 527 U.S. 1, 25 (1999).

### i.  Intent to Defraud

Defendants argue that the alleged facts "are entirely consistent with what a genuine purchaser of spectrum would do in the ordinary course"—not a scheme to defraud. MTD 1 at 22. They assert that, at best, the allegations establish that WCO did not "target" T-Mobile, but focused on EBS licenses, most of which are leased by T-Mobile. *Id.* at 23. The CCAs protected Defendant WCO from the risk of outbidding and from the potential to reveal aspects of WCO's bidding strategy. The 10% fee compensated WCO for the risk of losing the deal or lack of FCC approval. *Id.* at 22. WCO increased offers by the "commitment fee term" in order to discourage T-Mobile from using the ROFR. *Id.* at 24.

Defendants' potential defenses to the allegations of the complaint are not reasons to dismiss it under Rule 12(b)(6). The Court need not credit, of course, allegations of behavior for which there is an "obvious alternative explanation" that would not lead to liability. *Iqbal*, 556 U.S. at 682. But Defendants' alternative explanation falls short of being "so convincing that plaintiff's explanation is *implausible*." *Eclectic Props. E.,* 751 F.3d at 996. The Complaint includes allegations such as that on one occasion, "WCO abandoned a deal rather than having to produce documents that would have revealed its fraud." Complaint ¶ 66. On another occasion, WCO allegedly made an offer to an EBS license holder, then after the license holder communicated the offer to T-Mobile, made a second offer that was 110% the original offer. WCO subsequently withdrew its offer after T-Mobile sued for information needed to verify its legitimacy. *Id.* Such actions are not consistent with Defendants' having a good-faith intention to buy up EBS licenses. In fact, Defendants' arguments largely ignore that according to the Complaint, they purchased only *one* EBS license subject to a T-Mobile lease. *See id.* ¶ 68.

Defendants' anodyne version of events is also contrary to the whistleblower allegations in the Complaint. *See id.* ¶ 48 ("In a series of phone calls, the whistleblower described how WCO, in conjunction with numerous co-conspirators and EBS licensees, is perpetrating a fraudulent scheme against T-Mobile by which it uses sham offers to purchase EBS licenses to siphon money from T-Mobile to itself."), ¶ 49 (allegations of how the scheme worked, according to the whistleblower). Defendants argue that the Court should not assume the truth of such allegations. MTD 1 at 24. They cite a securities fraud case in which the Ninth Circuit affirmed dismissal of a Private Securities Litigation Reform Act ("PSLRA") case where the complaint "failed to allege scienter with the requisite particularity . . . under the PSLRA's heightened pleading standard"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 9 of 15 |

because, *inter alia*, the complaint relied on statements from confidential witnesses. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 987, 995 (9th Cir. 2009). *Zucco Partners* is not a RICO case, however, and the PSLRA has a higher pleading standard than Rule 9(b). *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007). The Court takes the whistleblower allegations as true for purposes of deciding the motions to dismiss and for this additional reason finds the allegations of intent to defraud are sufficient to survive the motions.

### ii.     Materiality[7]

Defendants argue that the claimed misrepresentations were not material based on *United States v. Milheiser* and because T-Mobile continued to exercise ROFRs and purchase licenses even after it claims it learned the offers were not *bona fide*. MTD 1 at 25–26.

As relevant to Defendants' first argument, *Milheiser* is a criminal case in which the Ninth Circuit addressed the evidence necessary to sustain mail fraud convictions. *See* 98 F.4th 935 (9th Cir. 2024). *Milheiser* holds that in this context, a misrepresentation must go to the nature of the bargain: "price or quality, or otherwise . . . essential aspects of the transaction." *Id.* at 944. The theory of fraud on which the Government secured convictions in *Milheiser* was overly broad because the Government "argued that a conviction for mail fraud requires only that a defendant make a false statement that would be expected to and did cause someone to turn over money—not that the false statement went to the nature of the bargain." *Id.* at 945.

To the extent *Milheiser* applies here, however, the Complaint alleges that the misrepresentations went to the nature of the bargain. T-Mobile claims the purchase prices were artificially inflated—and indeed, that it otherwise would never have purchased the licenses at all—because Defendants misrepresented that their offers were *bona fide* offers that triggered lease ROFR provisions. This is not similar to *Milheiser*, in which the Government "made clear that its theory of fraud did not require above-market prices." *See id.* at 945 n.7 ("A deception about the market value of a commodity that was intended to cause the victim to pay an inflated price would go to the nature of the bargain and therefore could be a basis for a fraud conviction.").

---

[7] Because Defendants incorporate the same arguments regarding injury, intent to defraud, and materiality as reasons to dismiss the state law claims (MTD 1 at 29–35), the Court rejects those arguments without the need for further analysis. The Court need not address Defendants' arguments relating to whether the Complaint adequately alleges unfair or fraudulent acts in support of the Unfair Competition Law ("UCL") claim, because the Complaint adequately alleges unlawful acts, as noted above. *See* Cal. Bus. & Prof. Code § 17200 ("unfair competition" means acts that are unlawful, unfair, *or* fraudulent).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 10 of 15 |

As for T-Mobile's continued purchases of licenses even after it allegedly learned of the scheme, T-Mobile disclaims any fraud claims based on offers that post-dated the whistleblower's disclosure. Opp. 1 at 26. It is a reasonable inference from the Complaint that T-Mobile did not learn of the scheme until October 25, 2021 (when the whistleblower allegedly came forward), the end of the period on which T-Mobile premises its RICO claim. *See* Complaint ¶ 95 ("This scheme played out in separate and independent transactions related to each and every EBS license with a ROFR exercise date predating October 25, 2021."). Defendants may certainly rely on T-Mobile's later actions to call into question the materiality of their alleged misrepresentations at a later stage in these proceedings. But Defendants fail to show that T-Mobile's allegations are implausible. *See Eclectic Props. E.,* 751 F.3d at 996; *see also* Opp. 1 at 24 (T-Mobile's argument that it continues to have "no way of knowing which of the non-binding offers Defendants might now choose to pursue—and which remain shams.").

        **d.**        **Pattern of Racketeering Activity**

Defendants argue the allegations are simply of one scheme perpetrated against one victim, which falls short of a "pattern" of racketeering activity. MTD 1 at 26.

In 1989, the Supreme Court provided guidance as to how one establishes a "pattern of racketeering activity," describing the concept in terms of "closed-ended" or "open-ended" continuity. *H.J. Inc. v. NW. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition . . . .
>
>       \*      \*      \*
>
> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. . . . Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.

*Id.* at 241–42.

Before *H.J. Inc.*, the Ninth Circuit had held that allegations of one scheme perpetuated against one victim could amount to a pattern of racketeering activity. In *Sun Savings and Loan Association v. Dierdoff*, allegations of racketeering activity were adequate where the complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 11 of 15 |

asserted that a bank president wrote four letters to various entities to cover up a scheme in which he received kickbacks from loan customers. 825 F.2d 187, 189 (9th Cir. 1987). So long as there are multiple predicate acts that are not isolated and that pose a threat of continuing activity, the Ninth Circuit held that allegations of one scheme could suffice. *Id.* at 192–94. While the bank president's acts "could be said to be a part of a single scheme" to defraud his employer, the continuity requirement was met because the acts "occurred separately over time, and . . . [were] not isolated or sporadic events because they posed a threat of continuous criminal activity." *Id.* at 194; *see also Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1362 (9th Cir. 1987) (applying *Sun Savings* and holding that continuity was not established where the allegations did not show a threat of continuing activity; all the alleged misrepresentations were part of a single effort to induce the victim to form a joint venture to obtain broadcast rights for a singular event). *Sun Savings* remains good law following *H.J. Inc.* and illustrates an example of open-ended continuity. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 n.2 (9th Cir. 1995).

Applying these principles, T-Mobile has adequately alleged both closed- and open-ended continuity. As an example of closed-ended continuity, T-Mobile alleges sham offers as early as July 29, 2020, which repeated through a period of approximately 15 months before the whistleblower revealed the fraud.[8] The Ninth Circuit has explained predicate acts that extend "as much as thirteen months" span a "substantial period of time" and satisfy the continuity requirement. *Allwaste, Inc.*, 65 F.3d at 1528.

Defendants argue that a closed-ended pattern of racketeering cannot involve a single alleged fraud on a single victim. MTD 1 at 28. Multiple schemes and multiple victims need not be alleged to demonstrate continuity, whether closed-ended or open-ended. *See H.J. Inc.*, 492 U.S. at 240–41; *Sun Sav. and Loan Ass'n*, 825 F.2d at 193–94; *Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 759 (9th Cir. 2015). As discussed, one scheme is sufficient so long as the predicate acts involved are not "isolated or sporadic." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing *Sun Sav. & Loan Ass'n*, 825 F.2d at 193, 194); *compare Medallion Television Enterprises, Inc.*, 833 F.2d at 1363–64 ("All of SelecTV's assertions about the number of licensing agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights [for the event]."); *McGowan v. Weinstein*, 505 F. Supp. 3d 1000,

---

[8] Defendants claim that the appropriate end point is December 2020 (when "T-Mobile was already questioning whether the offers were 'bona fide'" (MTD 1 at 27) or May 2021 (when T-Mobile "filed a lawsuit based in part on that skepticism). *Id.* at 28. But when viewed in the light most favorable to T-Mobile, the Complaint does not allege it actually learned of the fraud at these times. *See* Complaint ¶ 62 (alleging that in December 2020, T-Mobile questioned whether the La Roche offer was *bona fide* but was stonewalled and ultimately purchased the license), ¶ 47 (alleging that T-Mobile filed the *Albright* lawsuit because Albright failed to establish the offer was *bona fide*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 12 of 15 |

1006 (C.D. Cal. 2020) (multiple efforts to prevent an actress from disclosing in a memoir that she had been assaulted did not establish continuity because they comprised a single alleged fraud against a single alleged victim). In this case, the allegations of the Complaint go beyond mere isolated and sporadic acts, even if it is one underlying scheme against one victim.

The Complaint also plausibly alleges open-ended continuity. This case is similar to *Sun Savings*, in which the plaintiff alleged multiple criminal acts in support of one fraudulent scheme, which posed a threat of continuing activity. *See H.J. Inc.*, 492 U.S. at 242 ("The threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business."). Defendants argue that there is no danger of the fraud continuing, now that T-Mobile has "filed a federal lawsuit that the offers were bogus" (MTD 1 at 27). Contrary to that argument, the "fortuitous interruption of criminal acts does not preclude a finding of open-ended continuity." *Allwaste, Inc.*, 65 F.3d at 1529 (citing with approval *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991)).

The Court accordingly **DENIES** Defendants' collective motion to dismiss.

### C.      MTD 2

#### 1.      Punitive Damages under California Law

Defendant Winnick argues that T-Mobile cannot obtain punitive damages against her, as Gary Winnick's successor, under California law. MTD 2 at 8. T-Mobile acknowledges that California Code of Civil Procedure section 377.42 bars such damages but states that a motion to dismiss is not the proper avenue for dismissal of "remedies, not claims." Opp. 2 at 12–13.

Section 377.42 states that punitive or exemplary damages may not be recovered from a decedent's personal representative or successor in interest on a cause of action against the decedent. Courts (including this one) regularly dismiss punitive damages claims on Rule 12(b)(6) motions, when appropriate. *See, e.g.*, *Cal. Spine & Neurosurgery Inst. v. Aetna Life Ins., Co.*, No. CV 18-6829-DMG (KSX), 2019 WL 960205, at *3 (C.D. Cal. Jan. 8, 2019). When this Court construes the Federal Rules of Civil Procedure, it is tasked to do so in the manner that best secures the "just, speedy, and inexpensive determination" of the issues before it. Fed. R. Civ. P. 1. Waiting to dismiss the request for punitive damages serves none of these objectives. The Court will therefore **GRANT** Defendant Winnick's motion to dismiss as to punitive damages against her under California law.

#### 2.      Treble Damages under California Penal Code Section 496(c)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-4347-DMG (Ex)** | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 13 of 15 |

Defendant Winnick further argues that to the extent T-Mobile seeks treble damages under California Penal Code section 496(c), those damages are truly punitive and should also be dismissed under section 377.42. MTD 2 at 8. The Court disagrees.

Section 496(c) criminalizes the receipt of stolen property and allows a person to recover treble their actual damages. *See* Cal. Penal Code § 496(a), (c); *see also Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013) (section 496(a) extends to property "that has been obtained in any manner constituting theft.").

The Court is not aware of any authority, nor have the parties cited any,[9] that addresses whether treble damages under section 496(c) are punitive within the meaning of section 377.42. In *Hill v. Superior Court*, however, the California Court of Appeal addressed whether a double damages provision in California Probate Code section 859 was punitive within the meaning of section 377.42. 244 Cal. App. 4th 1281 (2016). Section 859, which concerns wrongful takings of property, allows for double damages upon findings of bad faith or that the taking was accomplished through the commission of elder or dependent adult financial abuse.

The *Hill* court concluded these double damages were not punitive within the meaning of section 377.42, comparing the requirements in that statute with the requirements of California's punitive damages statute, Cal. Civ. Code § 3294 and punitive damages generally.[10] First, punitive damages require proof of oppression, fraud, or actual malice and of the defendant's net worth. Neither was required under section 859. Section 859 allowed for double damages without any bad faith at all, and to the extent it required bad faith, "bad faith" is something less than "malice" as defined in section 3294. *Hill*, 244 Cal. App. 4th at 1287.

Although not cited by the parties, as the sole authority interpreting "punitive damages" in section 377.42, *Hill*'s analysis controls. The treble damages provision in section 496(c) does not require any showing of oppression, fraud, or malice or of the defendant's net worth before imposing the damages. Under *Hill*'s reasoning, section 496(c) does not impose "punitive damages" within the meaning of section 377.42.

---

[9] The parties fail to rely on authority that interprets the relevant portion of section 377.42. Cases concerning the meaning of "punitive damages" in other contexts are not persuasive. *Cf. Los Angeles Unified Sch. Dist. v. Superior Ct.*, 14 Cal. 5th 758, 787 (2023) (distinguishing *Hill v. Superior Court*, 244 Cal. App. 4th 1281 (2016), a case interpreting the meaning of "punitive damages" in section 377.42, on the basis that *Hill* involved an "altogether different" statute).

[10] Section 3294 allows such damages upon proof of oppression, fraud, or malice.

| CV-90 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk DD |
|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 14 of 15 |

Even if the Court considers "punitive damages" as a more generalized concept, the Court agrees with T-Mobile that the treble damages under section 496(c) are not a form of punitive damages. Punitive damages in California are imposed "to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future." They cannot be awarded absent a finding of "malice, oppression, or fraud." *See* Cal. Civ. Jury Instr. 3940 (2024 ed.). They must be imposed with an individualized focus: "[p]unitive damages may not be used to punish [a defendant] for the impact of [the defendant's] alleged misconduct on persons other than [the plaintiff]. *Id.* The language allowing recovery of treble damages in section 496(c), in contrast, "was introduced . . . with the goal of eliminating markets for stolen property, in order to substantially reduce the incentive to hijack cargo from common carriers." *Bell*, 212 Cal. App. 4th at 1048. This public policy goal extends well beyond punishing individuals on an individually tailored basis for malicious, oppressive, or fraudulent behavior.

### 3. RICO Treble Damages under Federal Law

Defendant Winnick similarly argues that because under federal law, "federal claims typically survive a decedent's death if they are remedial in nature *and not penal*," the claims for treble damages under RICO must be dismissed. MTD 2 at 9 (citing *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1057 (9th Cir. 2018) (emphasis added)).

There is a division of authority as to whether RICO damages are punitive damages. As T-Mobile observes, the Supreme Court has characterized RICO damages as remedial. *See PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 405 (2003) (the Court has "repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature."). *PacifiCare* arose in a different context, however, and does not clearly and unambiguously hold that RICO damages have no punitive characteristics. *See Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 413 (5th Cir. 2015) ("[N]othing in *PacifiCare* contravenes the Court's earlier holdings that treble-damages provisions serve both compensatory and punitive functions.").

The Court finds persuasive the analysis of courts which hold that notwithstanding the dual functions of RICO treble damages, their remedial characteristics allow them to survive a decedent's death. The Court agrees with the reasoning of the Fourth Circuit:

> [C]ivil RICO is a square peg, and squeeze it as we may, it will never comfortably fit in the round holes of the remedy/penalty dichotomy. Nonetheless, we must fit it as best we can. Construing it liberally, as Congress directed, we think that civil

Case 2:23-cv-04347-DMG-E  Document 117  Filed 10/22/24  Page 15 of 15  Page ID #:1398

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-4347-DMG (Ex) | Date | October 22, 2024 |
|---|---|---|---|
| Title | *T Mobile US, Inc., et al. v. WCO Spectrum LLC, et al.* | Page | 15 of 15 |

RICO claims should survive. Certainly, the primary purpose of the private right of action created by RICO is remedial. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 240–242 . . . (1987) (Collecting legislative history that "emphasis" of RICO treble damages is "remedial.")

*Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991).

The Court therefore **DENIES** Defendant Winnick's motion to dismiss, except that the Court dismisses state law claims for punitive damages against Defendant Winnick.

## IV.
## CONCLUSION

In light of the foregoing, Defendants' collective motion to dismiss is **DENIED**. [Doc. # 92.] Defendant Winnick's motion to dismiss is **GRANTED** as to the state law claims for punitive damages and is otherwise **DENIED.** [Doc. # 93.] The Court declines to grant leave to amend as to the dismissed claims for punitive damages because they are dismissed as a matter of law. Defendants shall file their answer by **November 12, 2024**. The request for ruling is **DENIED AS MOOT**. [Doc. # 116.]

**IT IS SO ORDERED**.