1   **ALSTON & BIRD LLP**
    Jeffrey A. Rosenfeld (#136896)
2   jeffrey.rosenfeld@alston.com
    Jesse Steinbach (#278923)
3   jesse.steinbach@alston.com
    Brooke Bolender (#340689)
4   brooke.bolender@alston.com
    350 South Grand Avenue, 51st Floor
5   Los Angeles, CA 90071
    Telephone: (213) 576-1143
6
7   **WILLIAMS & CONNOLLY LLP**
    Kenneth J. Brown*
8   kbrown@wc.com                          **KLEINBARD LLC**
    Jonathan B. Pitt**                     Steven J. Engelmyer*
9   jpitt@wc.com                           sengelmyer@kleinbard.com
    William P. Ashworth*                   Three Logan Square
10  washworth@wc.com                       1717 Arch Street, 5th Floor
    R. Kennon Poteat III*                  Philadelphia, PA 19103
11  kpoteat@wc.com                         Telephone: (215) 568-2000
    Kathryn E. Hoover*
12  khoover@wc.com                         *admitted *pro hac vice*
    680 Maine Avenue, SW                   ***pro hac vice* application pending
13  Washington, DC 20024
    Telephone: (202) 434-5000
14  *Attorneys for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
16
17  T-MOBILE US, INC., CLEARWIRE        Case No. 2:23-CV-4347-AH(Ex)
    SPECTRUM HOLDINGS LLC,
18  CLEARWIRE SPECTRUM                  Hon. Anne Hwang, Ctrm 7D
    HOLDINGS II LLC, CLEARWIRE
    SPECTRUM                            **DECLARATION OF R. KENNON**
19  HOLDINGS III LLC,                   **POTEAT III IN SUPPORT OF**
    FIXED WIRELESS HOLDINGS LLC,        **PLAINTIFFS' REQUEST FOR**
20  NSAC LLC, TDI ACQUISITION SUB       **JUDICIAL NOTICE**
    LLC, AND WBSY LICENSING LLC,
21              Plaintiffs,
22  vs.
                                        Complaint Filed: June 2, 2023
23  WCO SPECTRUM LLC, SCH LLC,          Counterclaims Filed: March 31, 2025
    ACADEMIA SPECTRUM LLC,              Hearing Date: September 17, 2025
24  KAREN WINNICK AS TRUSTEE OF         Time: 1:30 p.m.
    GKW TRUST, EXECUTOR OF THE          Courtroom: 7D
25  ESTATE OF GARY WINNICK AND
    GARY WINNICK'S SUCCESSOR-IN-
26  INTEREST, CARL KATERNDAHL,          REDACTED VERSION OF DOCUMENT
    ASHOK VASUDEVAN, ANDREAS            PROPOSED TO BE FILED UNDER
27  BITZARAKIS, AND TYLER KRATZ,        SEAL
28              Defendants.

---

I, R. Kennon Poteat III, hereby state and declare as follows:

1. I am an attorney admitted to practice *pro hac vice* before this Court and am a partner at Williams & Connolly LLP, counsel of record for Plaintiffs T-Mobile US, Inc., Clearwire Spectrum Holdings LLC, Clearwire Spectrum Holdings II LLC, Clearwire Spectrum Holdings III LLC, Fixed Wireless Holdings LLC, NSAC LLC, TDI Acquisition Sub LLC ("TDI"), and WBSY Licensing LLC (collectively "Plaintiffs"). I submit this declaration in connection with Plaintiffs' Request for Judicial Notice.

2. I have personal knowledge of the facts stated in this Declaration, and, if called to testify as a witness, could and would testify competently under oath to these facts.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the publicly available, redacted version of TDI's First Amended Complaint for Breach of Contract and Declaratory Judgment against Albright College filed on July 7, 2021 in the Court of Common Pleas of Berks County, Pennsylvania, Civil Action No. 21-04881 ("Albright Lawsuit").

4. Attached hereto as **Exhibit 2** is a true and correct copy of the publicly available, redacted version of Exhibit A to TDI's First Amended Complaint in the Albright Lawsuit, which is the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement with Albright College, dated March 2, 2007 ("Albright Lease").

5. Attached hereto as **Exhibit 3** is a true and correct copy of TDI's Opposition to Academia Spectrum LLC's Motion to Quash and Objection to Foreign Subpoena *Duces Tecum*, filed on January 7, 2022 in the Circuit Court of Virginia Beach, No. CL21-3972.

6. Attached hereto as **Exhibit 4** is a true and correct copy of an Order filed on March 22, 2022, entered by Judge Nevius under seal in the Albright Lawsuit.

---

1

7.    Attached hereto as **Exhibit 5** is a true and correct copy of an Order dated April 29, 2022, entered by Judge West in the Circuit Court of Virginia Beach, No. CL21-3972.

8.    Attached hereto as **Exhibit 6** is a true and correct copy of TDI's Motion to Compel Production of Documents against Academia Spectrum LLC filed on May 20, 2022, in the Circuit Court of Virginia Beach, No. CL21-3972.

9.    Attached hereto as **Exhibit 7** is a true and correct copy of an Order dated August 23, 2022, entered by Judge West in the Circuit Court of Virginia Beach, No. CL21-3972.

10.    Attached hereto as **Exhibit 8** is a true and correct copy of TDI's Motion to Compel Production of Documents from WCO Spectrum LLC, filed on May 20, 2022 in the Superior Court of the State of Delaware, No. K21M-08-007 (JJC).

11.    Attached hereto as **Exhibit 9** is a true and correct copy of a letter from counsel for WCO Spectrum to Judge Clark and Commissioner Freud filed on August 11, 2022, in the Superior Court for the State of Delaware, No. K21M-08-007 (JJC).

12.    Attached hereto as **Exhibit 10** is a true and correct copy of the Praecipe to Discontinue Without Prejudice filed by TDI under seal on August 26, 2022, in the Albright Lawsuit.

13.    Attached hereto as **Exhibit 11** is a true and correct copy of the Complaint filed against The School Board of St. Lucie County, Florida on March 25, 2022, in the U.S. District Court for the Southern District of Florida, No. 2:22-cv-14107.

14.    Attached hereto as **Exhibit 12** is a true and correct copy of an Order dated September 30, 2022, entered by Judge Cannon in the U.S. District Court for the Southern District of Florida, No. 2:22-cv-14106.

15.    Attached hereto as **Exhibit 13** is a true and correct copy of a Writ of Summons filed on May 6, 2022, in the Court of Common Pleas of Philadelphia County, No. 000629, May Term 2022.

DECLARATION OF R. KENNON POTEAT III IN SUPPORT OF
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

16.     Attached hereto as **Exhibit 14** is a true and correct copy of a Motion to Compel Defendants to Produce Documents in Response to Plaintiffs' First Set of Requests for Production of Documents, filed on September 2, 2022, in the Court of Common Pleas of Philadelphia County, No. 000629, May Term 2022.

17.     Attached hereto as **Exhibit 15** is a true and correct copy of an excerpt of the transcript of a hearing held on November 10, 2022, in the Court of Common Pleas of Philadelphia County before Judge Patrick.

18.     Attached hereto as **Exhibit 16** is a true and correct copy of the Complaint against Lorain County Community College filed on April 14, 2023, in the U.S. District Court for the Northern District of Ohio, Case No. 1:23-cv-00752-JG.

19.     Attached hereto as **Exhibit 17** is a true and correct copy of an Order entered on June 26, 2023, approving a Stipulation of Dismissal Without Prejudice in the U.S. District Court for the Northern District of Ohio, Case No. 1:23-cv-00752-JG.


I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct.

Executed on this 30th day of May, 2025 at Washington, DC.

/s/ _____
R. Kennon Poteat III

DECLARATION OF R. KENNON POTEAT III IN SUPPORT OF
PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

# Exhibit 1

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
|     Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. 21-04881 |
|     Defendant. | : | |
| | : | |
| | : | |
| | : | |

**<u>NOTICE TO DEFEND</u>**

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

# NOTICE TO DEFEND
## NOTIFICACIÓN PARA DEFENDERSE

### NOTICE

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**Lawyers' Referral Service of the
Berks County Bar Association
544 Court Street
Reading, Pennsylvania 19601
Telephone (610)375-4591
www.BerksBar.org**

### AVISO

**Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

**USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.**

**SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.**

**Servicio de Recomendación para Contratar Abogados
del Colegio de Abogados del Condado Berks
544 Court Street
Reading, Pennsylvania 19601
Teléfono (610) 375-4591
www.BerksBar.org**

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

KLEINBARD LLC
By: Steven J. Engelmyer, PA. ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | |
|---|---|
| TDI ACQUISITION SUB LLC, | IN THE COURT OF COMMON PLEAS OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | |
| v. | CIVIL ACTION/DECLARATORY JUDGMENT |
| ALBRIGHT COLLEGE, | NO. 21-04881 |
| Defendant. | |
| | JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiff TDI Acquisition Sub LLC, by its undersigned counsel, hereby alleges the

following for its complaint against Defendant Albright College:

### NATURE OF THE ACTION

1.    In this action, Plaintiff TDI Acquisition Sub LLC ("TDI") seeks to prevent

Defendant Albright College ("Albright") from selling—in breach of the parties' contract—a

Federal Communications Commission ("FCC") license to use certain radio frequency spectrum in

the Reading, Pennsylvania area (the "License").

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

2.      Section 3(a) of the contract is an exclusivity provision that prohibits Albright from selling or assigning the License unless the exception to exclusivity set forth in subsection 10(c) applies.  That exception cannot apply if, among other things, the proposed buyer or assignee is a "Competing Entity," as that term is defined in subsection 10(c).

3.      Albright is the party seeking to invoke this exception to exclusivity, so it bears the burden of establishing that the exception applies.

4.      Albright has not carried that burden.

5.      Although both it and the proposed assignee of the License—an entity called WCO Spectrum LLC ("WCO"), which provided Albright with a non-binding offer to buy the License— have offered purely conclusory statements to the effect that WCO is not a "Competing Entity," both Albright and WCO have refused to provide any information that would substantiate (or disprove) those statements.  And the little information WCO has disclosed provides reason to believe the exception does not apply.

6.      Accordingly, unless and until Albright establishes that the exception to exclusivity applies—including, most significantly, that WCO is not a "Competing Entity"—it should not be permitted to sell or assign the License to WCO, or should be required to unwind any such transaction to the extent Albright already has purported to effect it.

7.      In addition, Section 3(b) of the contract grants TDI a Right of First Refusal ("ROFR") in the event a third party offers to purchase the License from Albright.  Under that provision, once Albright has established that there is a *bona fide* offer that it has validly elected to accept, TDI has 30 days to decide whether to match the offer.

8.      It is critically important that the 30 days does not start running until Albright has established that the third-party offer is *bona fide* and capable of being accepted.  Otherwise,

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Albright could coerce TDI into matching an invalid offer and obtaining funds to which it was never entitled.

9.      In this case, because Albright has not established that WCO's non-binding offer is *bona fide* and capable of being accepted—including most significantly because it has not established that WCO is not a Competing Entity—TDI also seeks a declaration that the 30-day period in which it may exercise its ROFR has not yet begun to run.

## PARTIES

10.      Plaintiff TDI is a Delaware limited liability company with its main address at 12920 SE 38th St., Bellevue, Washington 98006.  Its ultimate parent is T-Mobile, US, Inc.

11.      Defendant Albright College is a Pennsylvania non-profit corporation headquartered in Reading, Pennsylvania, with its main address at 1621 N. 13th St., Reading, Pennsylvania 19604.

## JURISDICTION AND VENUE

12.      This Court has jurisdiction over this action pursuant to 42 Pa. C.S.A. § 931 and 42 Pa. C.S.A. § 7532.

13.      This Court has general personal jurisdiction over Albright because it is incorporated in Pennsylvania and its principal place of business is in Pennsylvania.  This Court has specific personal jurisdiction over Albright because Albright's conduct relative to this dispute occurred in this forum.

14.      Pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(1)-(3), venue is proper because Berks County is the county where (1) Albright's principal place of business is located; (2) Albright regularly conducts business; and (3) the transaction or occurrence took place out of which TDI's causes of action arose.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

## BACKGROUND

**A.    The License.**

15.    Albright has long held an FCC license to use four unique channels of radio-frequency spectrum in the Reading, Pennsylvania area.  The channels are designated D1, D2, D3, and D4, and the FCC "call sign" for the license is WND475.

16.    The licensed channels are part of the Educational Broadband Service ("EBS"), which is a range of spectrum that the FCC historically has licensed to educational organizations.

17.    There are 20 EBS channels in any particular geographic area.  They fall within the band of spectrum from 2496 to 2690 MHz, commonly referred to as the "2.5 GHz" spectrum band.

18.    On March 2, 2007, Albright entered into a lease agreement for the four channels with Nextel Spectrum Acquisition Corporation (the "Lease Agreement").[1]

19.    Nextel Spectrum Acquisition Corporation subsequently changed its name to "NSAC LLC," and on November 5, 2019, NSAC LLC executed an assignment all of its rights and obligations under the Lease Agreement to TDI.  *See* Ex. B.  The assignment was *pro forma* until deemed effective, in accordance with FCC rules, when TDI filed a new lease agreement with the FCC on September 15, 2020.  *See* Ex. C.

20.    Following the Sprint–T-Mobile merger in April 2020, TDI is now an indirect subsidiary of T-Mobile US, Inc.  Its business is to acquire and hold spectrum rights for use by other T-Mobile affiliates.

---

[1] A copy of the Lease Agreement is attached hereto as Exhibit A.  TDI has filed the Lease Agreement with minor redactions and has filed a motion to seal the redacted information concurrently with this Amended Complaint.  As further set out in that motion, these redactions prevent the disclosure of TDI's confidential trade secret information contained in its EBS lease agreements.  TDI has also filed another EBS lease agreement (Exhibit G) entirely under seal for reasons set forth in its motion to seal.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

**B.      Relevant Lease Agreement Terms**

21.      The Lease Agreement contains several terms that are relevant in the event that Albright—referred to in the Lease Agreement as "Licensee"—receives an offer to purchase the License.

22.      First, Section 3(a) provides in relevant part that, "[e]xcept as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels . . . ."

23.      Subsection 10(c), in turn, provides:

Subject to [TDI's] ROFR [i.e., Right of First Refusal], and FCC Rules, Licensee may negotiate and enter into any contract to assign the License to a third party provided that:

(i)      Licensee agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Licensee's obligations hereunder and acknowledges all of [TDI's] rights hereunder . . . ;

(ii)     the assignment and assumption agreement is in a form reasonably acceptable to [TDI];

(iii)    Licensee provides [TDI] at least thirty (30) days advance notice of such proposed assignment, and upon closing of such assignment, provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to [TDI]; and

(iv)     the assignee is not a Competing Entity (defined below).

24.      Subsection 10(c) defines a Competing Entity as "any party that (1) offers, provides or delivers a commercially available telecommunications service using EBS or BRS spectrum[2] within the United States of America (a 'Competing Service'), (2) owns (except a less than one

---

[2] EBS and BRS, which is short for Broadband Radio Service spectrum, occupy different parts of the 2.5 GHz spectrum band.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

percent (1%) interest in a publicly traded company) any interest in any entity which provides a Competing Service, [or] (3) has granted, or is affiliated with a party that has granted, to any provider of a Competing Service a global or overarching agreement for the right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires."

25.    Under the ROFR provision of subsection 3(b), TDI has the right to "match[] any acceptable *bona fide* offer received by Licensee from a third party."

26.    To effectuate this right, the provision requires that, "[w]ithin thirty (30) days following Licensee's determination to accept a *bona fide* third party offer (the 'Third Party Offer'), Licensee will notify [TDI] of any Third Party Offer, including (i) the identity of the offeror, (ii) the terms of the offer, and (iii) a true and correct copy of the operative agreement, letter of intent, term sheet or other similar definitive then-existing documentation relating to the offer."

27.    Once all of those conditions (as well as the other conditions precedent in the Lease Agreement) are satisfied—including that Albright establishes that the offer is *bona fide* and capable of being accepted—TDI has the right to "notify Licensee within thirty (30) days following receipt of such notification if [it] is exercising its ROFR."

28.    Finally, subsection 3(f) of the Lease Agreement grants TDI a "Right to Participate":

> If Licensee decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part or the whole of the Channels . . . , then Licensee will provide [TDI] with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity:
>
> > (i)    to submit bids, proposals and offers for the Channels;
> >
> > (ii)    to receive information with respect to such bids, proposals, offers and counters thereto;
> >
> > (iii)    to discuss such information with Licensee;
> >
> > (iv)    to counter any such bids, proposals or offers; and

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

> (v)    to be provided with copies of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by Licensee.

This right to participate does not limit in any manner, and is in addition to, the ROFR set forth in Subsection 3(b).

29.    Like the provisions of subsections 3(a), 3(b), and 10(c), subsection 3(f) constitutes a condition precedent that Albright must satisfy before selling the License.

## C.    The FCC Changes the Rules for Holding EBS Licenses

30.    Prior to April 2020, FCC regulations allowed only educational entities to hold EBS spectrum licenses.

31.    The FCC, however, permitted EBS licensees, such as Albright—most of which lacked the technical knowledge, expertise, and infrastructure to operate a commercial telecommunications network—to lease all but five percent of their spectrum to non-educational entities such as TDI.

32.    Nearly all of the 1,300 EBS licensees nationwide did so.  That includes Albright, which entered into the Lease Agreement with TDI's predecessor.

33.    These leases took spectrum that otherwise would have gone unused and used it to support modern high-speed broadband telecommunications services.

34.    Effective April 27, 2020, the educational-use requirement for EBS licenses was eliminated.

35.    According to the FCC, this change was enacted because "technological changes over the last 30 years enable any educator with a broadband connection to access a myriad of educational resources."  Transforming the 2.5 GHz Band, 86 Fed. Reg. 10839, 10840 (2021).

36.    Hence, "[o]nly a handful of EBS licensees ha[d] deployed their own networks or use[d] their EBS licenses in a way that require[d] dedicated spectrum." *Id.*

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

37.    Instead, most licensees "rel[ied] on lessees [such as TDI] to deploy and operate broadband networks and use[d] the leases as a source for revenues or devices." *Id.*

38.    With EBS licenses now available to non-educational actors—and with 2.5 GHz spectrum being one of the most important components of the emerging 5G telecommunications technology—several new entities have entered the market for spectrum licenses, seeking to acquire such licenses for commercial gain.

39.    One such entity is Winnick & Company, which operates through a number of affiliates, including WCO.

40.    Prior to its dealings relative to this case, WCO had attempted to acquire dozens of EBS licenses.

41.    Winnick & Company touts on its website that it has played an instrumental role in founding and operating multiple telecommunications providers, including Global Crossing and MetroPCS. *See* Selected Transactions, www.winnickco.com/transactions.html (last visited June 29, 2021).

42.    WCO's letters to La Roche University ("La Roche"), another Pennsylvania college which received a WCO offer, and Albright both state that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations." Exs. D at 1, E at 1.

43.    Although it has refused to disclose its plans for any licenses it acquires, it is clear that WCO is trying to assemble a large block of EBS spectrum as would be used in a telecommunications network.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

**D.    WCO's Earlier Offer to La Roche University**

44.    This is not the first time TDI has been forced to vindicate its rights under an EBS lease agreement under the threat of a purported sale of the license to WCO.

45.    In October 2020, WCO offered to purchase an EBS license leased by TDI and held by La Roche.  *See* Ex. D.

46.    La Roche received a term sheet from WCO that was substantially similar to the one it presented to Albright.  *See* Ex. D at 3–5.  The cover letter to that term sheet states that (a) WCO is a "specialist in financing ***and operating telecommunications assets and companies***"; (b) WCO "has previously been active in the telecom industry"; and (c) Gary Winnick's companies "have consistently received FCC transfer approvals."  Ex. D at 1 (emphasis added).

47.    After it learned of the La Roche term sheet, TDI asserted its rights under its EBS lease agreement with La Roche.

48.    On November 25, 2020, Heather Brown, in-house counsel for T-Mobile, sent a letter to Mary Beth Fetchko, Esq., General Counsel at La Roche.  Ex. F.  The letter requested the information and assurances due to TDI under the La Roche lease agreement.[3]

49.    The La Roche lease agreement provided TDI with substantially similar rights as the Lease Agreement at issue here, including but not limited to:  (i) ██████████████████████████████████████████████████████; (ii) █████ ████████████████████████████████████████████; (iii) ██████████ ██████████████████; (iv) ██████████████████; and (v) ██████████████████.

---

[3] The letter referenced NSAC rather than TDI, but, as stated, NSAC had assigned its rights to TDI.

███████████████████████████████████████████████████████

████████████████████████. *See* Ex. G.

50.    In response, on December 8, 2020, WCO sent TDI a letter purporting to assure it that WCO was not a ██████████████; but the letter merely parroted the definition of ██████████████ from the lease agreement and summarily denied that WCO meets any of that definition's criteria. Ex. H. WCO provided no facts to support these conclusory assertions.

51.    The next day, TDI and La Roche executed a standstill agreement to give themselves more time to fulfill TDI's rights.

52.    As part of that effort, on December 15, 2020, TDI had a call with Winnick & Co. Chairman Gary Winnick. The call was unproductive, as Mr. Winnick did not address any of the contractual rights or concerns raised in Ms. Brown's November 25 letter. He did, however, make clear that WCO's efforts to acquire EBS licenses would not stop with La Roche.

53.    WCO and La Roche also requested written questions from TDI regarding the specific information to which TDI was entitled.

54.    TDI complied, and on December 17 and 18, 2020, sent similar sets of questions to La Roche and WCO, respectively. *See* Exs. I, J. These included a series of questions under the heading "Whether WCO Is a ██████████████" which was designed to probe the veracity of WCO's conclusory assertions that it does not meet the ██████████████████.

55.    On December 23 and 24, 2020, WCO and La Roche responded. *See* Exs. K, L.

56.    WCO again recited the Lease Agreement's definition of ██████████████ stated that it does not meet any of the three criteria, and provided no supporting information or explanation for that assertion. WCO refused to respond to any of the other questions—including

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

those about the statements in its cover letter—which it claimed "are outside the bounds of any legal obligation WCO has to [TDI]." Ex. K.

57.    La Roche's response was similarly unilluminating on the question of whether WCO is a ███████████  *See* Ex. L.

58.    TDI avoided litigation with La Roche only by exercising its ROFR and purchasing the La Roche license.

**E.    WCO's Non-Binding Term Sheet to Albright**

59.    On April 30, 2021, WCO sent Albright a two-page, non-binding term sheet, which proposed a sale of the License for $16.2 million. *See* Ex. E.

60.    The term sheet purports to "summarize[] the basic terms and conditions pursuant to which WCO Spectrum, LLC (the 'Buyer') proposes to acquire a certain [EBS] license from Albright College."

61.    It makes clear, however, that

The terms and conditions summarized herein are provided FOR DISCUSSION PURPOSES ONLY.  They do not represent a binding offer, agreement, or commitment from the Buyer to acquire the EBS license or any other assets, nor are they all-inclusive.  Closing of the proposed transaction is subject to completion of due diligence by the Buyer, the satisfaction of customary conditions precedent and execution of definitive agreements mutually acceptable to the parties (the 'Definitive Agreements'), the provisions of which shall be materially consistent with, though supersede, this Term Sheet and all other understandings between the parties.

Ex. E at 3.

62.    The accompanying cover letter similarly provides that it "is not, and should not be, considered a legally binding indication or agreement in any manner, and the failure to execute definitive documentation or consummate the proposed acquisition shall impose no liability on WCO or Licensee." Ex. E at 2.

13

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

**F.**      **TDI Unsuccessfully Seeks Information to Which It Is Entitled**

63.      Following its receipt of the Albright term sheet on May 4, 2021, TDI sought the various types of information and assurances to which it is entitled under the Lease Agreement—just as it did with La Roche.

64.      To that end, on May 11, 2021, Ms. Brown sent a letter to Jeffrey L. Strader, Vice President for Finance and Strategic Partnerships at Albright. *See* Ex. M.

65.      In this May 11, 2021 letter, Ms. Brown requested the information and assurances to which TDI is entitled:

    a.  under Section 10(c)(iv), concerning whether WCO is a Competing Entity;

    b.  under Section 10(c)(i), to ensure that WCO will "agree[] in writing to assume all of [Albright's] obligations" under the Lease Agreement and "acknowledge[] all of" NSAC's rights thereunder, which, to reiterate, have been assigned to TDI;

    c.  under Section 10(c)(ii), to determine whether any proposed agreement—which the April 30, 2021 term sheet explicitly is not—is "in a form reasonably acceptable" to TDI;

    d.  under Section 3(b), which requires Albright to provide TDI with a true and correct copy of the "definitive then-existing documentation related to" WCO's offer; and

    e.  under the "Right to Participate" set forth in Section 3(f), which grants TDI the right to, *inter alia*, receive "information with respect" to any "bids, proposals, offers, and counters thereto."

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

66.     These rights are critical not only because the requested information is important in its own right, but because it bears directly on whether TDI will exercise its ROFR.

67.     TDI's letter also included a list of questions intended to facilitate the exchange of information required by the Lease Agreement.  *See* Ex. M.

68.     Ms. Brown sent a similar letter to WCO on the same day.  Ex. N.

69.     In that letter, Ms. Brown requested substantially the same information, consistent with TDI's rights under the Lease Agreement.  *See* Ex. N.

70.     Specifically, the letter included a similar series of questions, including several under the heading "Whether WCO Is a 'Competing Entity,'" which were designed to probe the veracity of WCO's conclusory assertions that it does not meet the Lease Agreement's definition of "Competing Entity."  Ex N.

71.     TDI also asked the basis of WCO's statement in its cover letter to Albright that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."  Ex. N at 2.

72.     TDI further asked—again—for the basis of WCO's statements in the La Roche offer letter that (a) it is a "specialist in financing ***and operating telecommunications assets and companies***"; (b) WCO "has previously been active in the telecom industry"; and (c) Mr. Winnick's companies "have consistently received FCC transfer approvals."  Ex. N at 2 (emphasis added).

73.     WCO responded in a letter dated May 13, 2021, which was evasive and uninformative.  Ex. O.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

74.    With respect to whether it is a Competing Entity, WCO again parroted the Lease
Agreement's definition of "Competing Entity" verbatim and stated that it does not meet any of
that definition's three criteria.  Ex. O at 1.

75.    Again, WCO provided no supporting information or explanation of any kind.  Ex.
O at 1.

76.    WCO also refused to respond to TDI's questions seeking to elicit this
information—including those about the statements in WCO's letters to Albright and La Roche—
which it claimed "are outside the bounds of any legal obligation WCO has to [TDI]."  Ex O at 2.

77.    In addition, although WCO acknowledged that, "[i]f the assignment of the license
WND475, from Albright to WCO is consummated, WCO hereby confirms that it will assume all
of Albright's obligations and acknowledge NSAC's rights under the Lease Agreement," Ex O at
2, it offered no confirmation with respect to TDI's contractual rights.

78.    Albright responded to TDI in a letter dated May 14, 2021.  Ex. P.

79.    Albright's response, while slightly more fulsome than WCO's, provided no
additional information concerning WCO's status as a Competing Entity.  Ex. P.

80.    To the contrary, it stated that, except for referring TDI to the conclusory statements
made by WCO, it "has no other information" about the "Competing Entity" issue or about the
various questions that TDI posed in an effort to elucidate it.  Ex. P at 5.

81.    Albright declined to provide any information regarding its communications with
WCO—which undoubtedly addressed the "Competing Entity" issue—claiming that "the Lease
Agreement does not provide TDI with any right to receive this information."  Ex. P at 4.

82.    Nor did Albright provide any additional information with respect to WCO's
agreement in writing to assume all of Albright's obligations and acknowledge all of the TDI's

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

rights; Albright again merely referred TDI to WCO's letters, which say nothing about TDI.  Ex. P at 3.

83.     Albright's letter then interpreted TDI's informational rights under Sections 3(b) (ROFR) and 3(f) (Right to Participate) in a way that sabotages TDI's ability to verify that any third party buyer of the License is not, in fact, a "Competing Entity."  Ex. P.

84.     Specifically, Albright contended that the phrase "definitive then-existing documentation relating to the offer" in Section 3(b) applies only to "documentation [that] accurately defines the material terms"—i.e., the offer itself, and not any documentation "relating to the offer"—and that TDI's Right to Participate under Section 3(f) is merely a "non-discrimination provision," which similarly does not entitle TDI to receive the information it requested.  Ex. P at 2.

85.     Albright's position, that TDI is entitled to the terms of the offer and nothing more, gives TDI no means with which to vindicate its right to prevent a sale of the License to a Competing Entity and would force TDI to rely on nothing more than WCO's conclusory assertions to that effect.

86.     To be clear, the ROFR period never started running because Albright: (i) did not carry its burden of establishing that WCO is not a Competing Entity, and thus that its term sheet was a "*bona fide* offer" that Albright could validly accept; (ii) has not fulfilled its obligations under Section 3(f) regarding TDI's Right to Participate because it refuses to share with TDI all of the information to which TDI is entitled under that provision; and (iii) has not ensured that WCO has given the required assurances, in writing, acknowledging all of TDI's rights under the Lease Agreement.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

87.    TDI has done everything in its power to obtain the information to which it is entitled without resorting to litigation. *See* Exs. M (TDI letter to Albright), N (TDI letter to WCO), O (WCO response), P (Albright response). Those efforts uniformly have been unsuccessful.

88.    Now, as a last resort, TDI brings this action based on Albright's breaches of the exclusivity provision in Section 3(a) and the "Right to Participate" in Section 3(f), and for a declaration that Albright has failed to provide the information needed to start the time period during which TDI may exercise its ROFR.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract – Exclusivity)

89.    Paragraphs 1–88 above are incorporated as if fully set forth herein.

90.    The Lease Agreement constitutes a valid and enforceable contract between TDI and Albright.

91.    TDI complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

92.    Albright breached Section 3(a) of the Lease Agreement.

93.    That section provides that, "[e]xcept as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels . . . ."

94.    Subsection 10(c), in turn, allows Albright to assign the License only to a third party that "is not a Competing Entity."

95.    Notably, that provision does not provide that Albright may assign the License to a third party that *represents or states* that it is not a "Competing Entity"; the provision bars assignment to any third party that *is in fact* a "Competing Entity."

18

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

96.     As a matter of law, because Section 10(c) is an exception to the exclusivity requirement of Section 3(a), Albright bears the burden of demonstrating that the requirements of Section 10(c) are met.

97.     Albright has not carried that burden with respect to showing that WCO is not a Competing Entity under Section 10(c).

98.     The only information that it or WCO has provided concerning the Competing Entity issue is WCO's unsupported statements that it does meet any of the three criteria for qualifying as such an entity.

99.     Albright has informed TDI that it has no information about these issues beyond WCO's assertions; WCO has flatly refused to provide any additional information that would substantiate (or disprove) them; and both Albright and WCO have refused to provide any information about their discussions, which unquestionably addressed the Competing Entity issue.

100.     These failures are especially concerning given that TDI has good reason to suspect that WCO is, in fact, a Competing Entity.

101.     WCO made a point of touting to Albright that "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."  Ex. E at 1.

102.     In addition, in making its offer to La Roche, WCO stated that (a) it is a "specialist in financing *and operating telecommunications assets and companies*"; (b) it "has previously been active in the telecom industry"; and (c) Mr. Winnick's companies "have consistently received FCC transfer approvals."  Ex. D at 1 (emphasis added).

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

103.    Compounding these troubling statements is Winnick & Company's history of operating competing telecommunications providers like Global Crossing and Metro PCS, as well as Mr. Winnick's assertion during the December 15 telephone conversation regarding the La Roche offer that WCO's efforts to acquire EBS licenses would be ongoing.

104.    When TDI has inquired as to the basis for WCO's statements, it has been stonewalled by WCO, La Roche, and now Albright.

105.    That is notable because (a) Albright has had discussions with WCO about the non-binding term sheet, and it is inconceivable that the "Competing Entity" issue was not addressed during those discussions; (b) WCO clearly is attempting to put together a substantial block of EBS spectrum; and (c) an entity seeking to build a 5G network naturally would focus on acquiring 2.5 GHz spectrum.

106.    All of this raises legitimate concerns that WCO is in fact a Competing Entity.

107.    Against this background, Albright has not carried its burden of establishing that WCO is *not* a Competing Entity.

108.    Albright also has not carried its burden with respect to subsection 10(c)(i).

109.    Under Section 10(c), "[s]ubject to [TDI's] ROFR [i.e., Right of First Refusal] . . . Licensee may negotiate and enter into any contract to assign the License to a third party provided that: (i) Licensee agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Licensee's obligations hereunder and acknowledges all of Sprint Nextel's rights hereunder."

110.    As discussed above, WCO has not assured TDI, the current Licensor under the Lease Agreement, in writing that it will "assume all of Licensee's obligations hereunder and acknowledge[] all of [TDI's] rights hereunder."

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

111.    WCO has only offered such assurances to NSAC—TDI's predecessor in interest.

112.    Because Albright seeks to assign the License without having carried its burden to show that the exclusivity exception in Section 10(c) applies, it is in breach of Section 3(a).

113.    Consequently, the Court should enjoin Albright from proceeding with any sale, assignment, or other transfer of the License or its rights thereunder to WCO, or should unwind any such transaction that Albright and WCO already have purported to consummate.

WHEREFORE, TDI respectfully asks the Court to:

a.    Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing Albright from selling, transferring, or assigning the License to WCO or any of its affiliates, or unwinding any such transaction to the extent Albright already has purported to effect it;

b.    Award TDI compensatory damages in an amount exceeding $50,000;

c.    Award TDI all costs and interest allowed by law;

d.    Pursuant to Section 21(f) of the Lease Agreement, award TDI all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with Albright and WCO;

e.    Award TDI such other relief as the Court deems just and reasonable; and

f.    Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

**COUNT II**
**(Breach of Contract – Right to Participate)**

114.    Paragraphs 1–113 above are incorporated as if fully set forth herein.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

115.    The Lease Agreement constitutes a valid and enforceable contract between TDI and Albright.

116.    TDI complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

117.    Albright breached Section 3(f) of the Lease Agreement.

118.    That section provides that, "[i]f Licensee decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part or the whole of the Channels . . . , then Licensee will provide [TDI] with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity . . . (ii) to receive information with respect to such bids, proposals, offers and counters thereto; [and] (iii) to discuss such information with" TDI, in addition to TDI's right to be provided with copies of bids, proposals, and the like under subsection 3(f)(v).

119.    Upon information and belief, Albright solicited bids, proposals, and offers from WCO for the sale or assignment of the License and those solicitations occurred both before and after WCO sent the non-binding term sheet to Albright.

120.    Albright has refused to share extensive information concerning WCO's non-binding term sheet including, without limitation, its refusal to share any information about its communications with WCO, which obviously centered around the term sheet.

121.    Albright thus has failed to provide TDI with the same opportunity as WCO to receive information with respect to WCO's bid and to discuss that information with Albright.

122.    TDI is entitled to all legal and equitable remedies available under the law, including specific performance of Albright's obligations under Section 3(f) of the Lease Agreement.

WHEREFORE, TDI respectfully asks the Court to:

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

a.      Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing Albright from selling, transferring, or assigning the License to WCO or any of its affiliates, or unwinding any such transaction to the extent Albright already has purported to effect it;

b.      Order specific performance by Albright of Section 3(f) of the Lease Agreement, by mandating that Albright share all information requested by TDI concerning, inter alia, WCO's non-binding term sheet and all circumstances surrounding it;

c.      Award TDI compensatory damages in an amount exceeding $50,000;

d.      Award TDI all costs and interest allowed by law;

e.      Pursuant to Section 21(f) of the Lease Agreement, award TDI all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with Albright and WCO;

f.      Award TDI such other relief as the Court deems just and reasonable; and

g.      Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

## COUNT III
### (Declaratory Judgment – ROFR)

123.    Paragraphs 1–122 above are incorporated as if fully set forth herein.

124.    Under Section 3(b) of the Lease Agreement, TDI's time for exercising the ROFR is triggered by Albright's "determination to accept a *bona fide* third party offer."

125.    Because Section 10(c) of the Lease Agreement prohibits the assignment of the License to a Competing Entity, an offer from a Competing Entity is not a *bona fide* offer for purposes of Section 3(b).  Nor is it an offer that is capable of being "accept[ed]."

126.    As a matter of law and equity, the time period during which TDI must decide whether to exercise its ROFR does not begin running until Albright has established that the third party offer is *bona fide* and can be accepted.

127.    Otherwise, Albright could obtain an invalid offer—the invalidity of which is concealed—and compel TDI to match it or risk losing its right to do so.  If TDI chose to match it, then Albright would have coerced a significant sum of money ($16.2 million in this case) that TDI never was required to pay.

128.    Such a result is precluded by the Lease Agreement and governing equitable principles.

WHEREFORE, TDI respectfully asks the Court to:

a.    Issue a declaratory judgment that the time period during which TDI must decide whether to exercise its ROFR will not start running, if at all, until Albright has established that WCO is not a Competing Entity;

b.    Award TDI all costs and interest allowed by law;

c.    Pursuant to Section 21(f) of the Lease Agreement, award TDI all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with Albright and WCO;

d.    Award TDI such other relief as is just and reasonable; and

e.    Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Dated:  July 7, 2021

Respectfully submitted,


By: _____

KLEINBARD, LLC
Steven J. Engelmyer, PA ID No. 42840
Eric J. Schreiner, PA ID No. 76721
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-20007230
sengelmyer@kleinbard.com
eschreiner@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
Christopher J. Mandernach*
William I Stewart
Thomas K. White*
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
cmandernach@wc.com
wstewart@wc.com
twhite@wc.com
dhurley@wc.com
* application for admission *pro hac vice*
forthcoming

*Attorneys for TDI Acquisition Sub LLC*

## VERIFICATION OF PLEADING

I, John Robertson, hereby verify that I am a Senior Business Analysis Manager at T-Mobile US, Inc., the parent entity of Plaintiff TDI Acquisition Sub LLC in this action; that, as such, I am authorized to make this Verification; and that the facts set forth in the foregoing Amended Complaint are true and correct to the best of my knowledge, information and belief. I hereby acknowledge that this verification is made subject to the penalties of Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: 7-2-2021

John Robertson
John Robertson

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

## CERTIFICATION OF COMPLIANCE WITH PENNSYLVANIA'S
## CASE RECORDS PUBLIC ACCESS POLICY

I certify that this filing, which include portions of Exhibits A and G preliminarily filed under seal pursuant to a concurrently filed motion to seal, complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

_____
Eric J. Schreiner

Dated:  July 7, 2021

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

# Exhibit 2

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

# Exhibit 1

First Amended Complaint
Exhibit A

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

# EDUCATIONAL BROADBAND SERVICE
## LONG-TERM DE FACTO TRANSFER LEASE AGREEMENT

THIS Educational Broadband Service ("EBS") Long Term De Facto Transfer Lease Agreement (the "Agreement") is entered into as of March 2, 2007 (the "Effective Date"), by and between Albright College, a Pennsylvania nonprofit educational institution (the "Licensee"), and Nextel Spectrum Acquisition Corp., a wholly owned indirect subsidiary of Sprint Nextel Corporation, a Kansas corporation ("Sprint Nextel") (each sometimes referred to as "Party" and collectively as "Parties").

WHEREAS, the Federal Communications Commission ("FCC") has authorized EBS channels D1, D2, D3 and D4 under call sign WND475 (the "License") to Licensee in the Reading, Pennsylvania area (the "Area") as more particularly described on Schedule A;

WHEREAS, Licensee's station was not constructed on a timely basis but Licensee has filed an application to reinstate and extend the construction period and request a waiver from the FCC relating to such filing (the "Waiver Application");

WHEREAS, any and all spectrum rights now or hereafter authorized pursuant to the License with respect to Channels D1, D2, D3, and D4, and associated J and K channels, are referred to herein collectively as the "Channels" and individually as a Channel;

WHEREAS, the Parties have agreed to enter into this Agreement for Licensee to lease Sprint Nextel excess capacity on the Channels in accordance with the terms and conditions below ("Leasing Arrangement").

THEN, in consideration of the premises and covenants set forth in this Agreement, and for good and valuable consideration, the sufficiency of which is acknowledged by the Parties' signatures, the Parties agree as follows:

1.    **LEASE TERM AND RENEWAL**

(a)    **Initial Term**.  This Agreement is a long term de facto transfer lease pursuant to provisions of Title 47 of the U.S. Code of Federal Regulations and the policies of the FCC (as each may be amended from time to time, the "FCC Rules").  Subject to Subsection 1(c) or the earlier termination of this Agreement under Section 11, the initial term of this Agreement begins on the Effective Date and ends on the date that is fifteen (15) years from the Effective Date (the "Initial Term").

(b)    **Renewal**.  Subject to Subsection 1(c) or the earlier termination under Section 11, on the date that is fifteen (15) years following the Effective Date, this Agreement will automatically renew for an additional term of fifteen (15) years (the "Renewal Term"), for a maximum Agreement duration of thirty (30) years, unless Sprint Nextel notifies Licensee in writing at least one (1) year prior to the end of the Initial Term that it declines to renew this Agreement.  The terms and conditions of this Agreement apply to the Renewal Term.  The Initial Term and the Renewal Term (if the Renewal Term goes into effect) may be referred to collectively under this Agreement as the "Term."

(c)    **Renewal of License and Extension of Agreement**.  This Agreement will expire simultaneously with the License unless applications seeking renewal of the License and extension of the FCC authorization for the long term de facto transfer lease of the Channels are filed by the applicable deadlines (or pursuant to appropriate waivers).  This Agreement will then continue according to its terms, and use by Sprint Nextel of the Channels will not be interrupted, unless the FCC denies by Final Order, the applications for renewal of the License or the continued long term de facto transfer lease of the Channels.  Licensee will file any renewal

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

application(s) for the License and Licensee and Sprint Nextel shall cooperate to jointly file any additional appropriate application(s) to obtain any required FCC approval(s) for the continuation of this Agreement during and until the expiration of the Term not less than forty-five (45) days prior to the latest date that such application may be filed. The failure to complete filings by the forty-five day deadline listed above will not constitute a material breach under this Agreement if the filings are filed as soon as practicable, and under all circumstances by no later than the latest date that would allow this agreement to continue without interruption. In the event of any filing submitted by one of the Parties, that Party will contemporaneously provide the other Party with a complete copy of such filing. "Final Order" means an order issued by the FCC that is in effect and can no longer be appealed.

2.  **PAYMENTS**

    (a)    **Lump Sum Payments**. Sprint Nextel will pay Licensee a non-refundable one-time upfront fee of ███████████████ upon execution of this Agreement by both parties. Sprint Nextel will also pay Licensee a separate, one-time upfront payment of ██████████████████████ ("Upfront Payment"), no later than thirty (30) days following the Consent Date or the Waiver Consent Date, whichever is later. The "Consent Date" is the date on which the FCC's grant of the De Facto Lease Application (as defined in Subsection 9(a)) becomes a Final Order. The date on which the FCC's grant of the Waiver Application becomes a Final Order is the "Waiver Consent Date." The ███████████ ██████████ Upfront Payment will be refundable to Sprint Nextel on a pro rata basis if this Agreement is terminated as a result of a material breach by the Licensee during the first five years of the Initial Term.

    (b)    **Monthly Payment**. Commencing with the first full calendar month following the Consent Date or the Waiver Consent Date, whichever is later, and continuing throughout the Term, Sprint Nextel will pay Licensee a monthly fee as specified in Schedule B attached hereto (the "Monthly Payment"). The Monthly Payment will be paid no later than thirty (30) days following the end of each calendar month for which the payment is due. If the Term expires on a date other than the last day of a calendar month, the Monthly Payment for that month will be adjusted on a pro rata basis. Notwithstanding anything to the contrary contained in this Agreement, Sprint Nextel's obligation to commence making payments under this Agreement is subject to Licensee completing and delivering to Sprint Nextel the Licensee and Electronic Filing Information Form, attached hereto as Exhibit A, and the Payee Setup Form attached hereto as Exhibit B, following the Effective Date. The Monthly Payment will be reduced on a pro rata basis (based on MHz, or population, as further provided below) during the Initial Term or any Renewal Term of this Agreement if, with respect to any Channel, (i) the bandwidth of the Sprint Nextel Capacity (in MHz) as contemplated by this Agreement on the Effective Date decreases or (ii) there is a decrease in population resulting from a reduction in the size of the geographic service area (in square miles) ("GSA") of any Channel, as compared to the GSA contemplated by this Agreement on the Effective Date. Notwithstanding anything in the foregoing to the contrary, the reduction in size of EBS lower or upper band

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

2

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

segment channels from 6 MHz to 5.5 MHz mandated by the FCC Rules as of the Effective Date concerning the Transition (as defined below) shall not be considered a decrease in Sprint Nextel Capacity. Furthermore, Sprint Nextel may not use as a basis for a reduction in the Monthly Payment a change in the characteristics of the capacity under the J or K band channels associated with the Channels or the mid-band segment ("MBS") channel if that change is a result of the Transition.

(c)   **Payment Receipt Address.** Monthly payments due under this Agreement from Sprint Nextel to Licensee shall be sent to the address below. Licensee may change the payment receipt address at any time by providing written notice to Sprint Nextel pursuant to the notice provisions of this Agreement.

> Albright College
> P.O. Box 15234
> 1621 North 13th Street
> Reading, PA 19612-5234
> Attention: Vice President for Administration and Finance

3.    **EXCLUSIVITY AND RIGHT OF FIRST REFUSAL**

(a)   **Exclusivity.** Except as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels; provided, however, that Licensee has the ability during the last year of the Term, and during the last year of the Initial Term if Sprint Nextel has elected not to renew the Agreement in accordance with Subsection 1(b), to negotiate with and contract or agree with any third party with respect to any period following the end of this Agreement, so long as Licensee complies with the ROFR set forth in Subsection 3(b).

(b)   **Right of First Refusal.** Unless this Agreement is terminated by Licensee as a result of Sprint Nextel's material breach or pursuant to Section 11(f), and except with respect to any use of Licensee's Capacity consistent with Subsections 13(b)(ii) and (iii), or any permitted assignment or transfer of control transaction pursuant to Section 10 where the assignee or transferee is also a public institution or agency, a bona fide local private educational institution with students actually enrolled in local classroom instruction (except for any such public or private educational institution that is affiliated with a national EBS licensee), or a public broadcasting station, Sprint Nextel, or an entity designated by Sprint Nextel ("Designee"), will have the right to use, lease or purchase (if Sprint Nextel or the Designee is then eligible to hold an EBS license) some or all of the Channels by matching any acceptable *bona fide* offer received by Licensee from a third party (the "ROFR") during the Term and for a period of three (3) years after the Term (the "ROFR Term"). If Sprint Nextel declines to renew this Agreement pursuant to Section 1(b) above, the ROFR Term provided for in this Section will remain in effect through the Term and for only one (1) year following the end of the Term. Within thirty (30) days following Licensee's determination to accept a *bona fide* third party offer (the "Third Party Offer"), Licensee will notify Sprint Nextel of any Third Party Offer, including (i) the identity of the offeror, (ii) the terms of the offer, and (iii) a true and correct copy of the operative agreement, letter of intent,

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

3

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

term sheet or other similar definitive then-existing documentation relating to the offer. Licensee's notice to Sprint Nextel of the Third Party Offer will constitute an offer by Licensee to Sprint Nextel (or a Sprint Nextel Designee) for the lease, use or purchase of the rights to the Channel(s) impacted by the Third Party Offer on substantially the same terms and conditions set forth in the Third Party Offer. Sprint Nextel will notify Licensee within thirty (30) days following receipt of such notification if Sprint Nextel is exercising its ROFR. If Sprint Nextel fails to exercise its ROFR, Licensee will have sixty (60) days from the expiration of Sprint Nextel's thirty (30) day response period to enter into an agreement with the third party offeror on substantially the same terms and conditions as were offered to Sprint Nextel and supply Sprint Nextel with a fully-executed copy of that agreement. If, within the sixty (60) day period, Licensee does not enter into a binding agreement with the third party offeror on the same terms and conditions as were offered to Sprint Nextel, then Sprint Nextel's ROFR will remain in effect pursuant to the terms stated in this Subsection. If, within the sixty (60) day period, Licensee enters into a binding agreement with the third party offeror on the same terms and conditions as were offered to Sprint Nextel, supplies Sprint Nextel with a fully-executed copy of that agreement, and such transaction is thereafter ultimately consummated, then Sprint Nextel's ROFR will terminate with respect to such transaction; however, the ROFR will remain in full force and effect with respect to any subsequent Third Party Offer with respect to the lease, use or purchase of the rights to the Channels received during the Term and for a period of three (3) years thereafter (one (1) year if Sprint Nextel declines to renew the Agreement pursuant to 1(b)). The terms of any agreement between the Parties (or between Licensee and a Designee) resulting from the exercise of Sprint Nextel's ROFR will be ratified in a separate contract. All materials and information exchanged under the ROFR are subject to the non-disclosure provisions of this Agreement.

(c)    **Bifurcation of Bundled Offer**. If a Third Party Offer bundles or encompasses assets other than Licensee's rights to any of the Channels, the Parties will use good faith efforts to bifurcate the offer into a portion applicable solely to Licensee's rights in any of the Channels, and a remaining portion applicable to the other assets, such that the Parties can ascertain the consideration offered and the terms and conditions applicable to rights related specifically to the Channels. If the Parties agree upon the consideration, terms and conditions of the bifurcated offer, Sprint Nextel (or its Designee) will have the option to exercise its ROFR with respect to the portion of the bifurcated offer applicable to Licensee's rights in any of the Channels. If such third party offer cannot, after using good faith efforts, be bifurcated by the Parties as provided above or if the Parties do not agree upon the consideration, terms and conditions of such bifurcated offer, then Licensee will reject such third party's entire offer.

(d)    **Form of Consideration and Determination of Value**. Subject to Sprint Nextel's rights described in Subsection 3(b), if the whole or any part of the consideration of the Third Party Offer is in a form other than cash, then Sprint Nextel may meet the consideration using cash, comparable consideration, or both, in its acceptance notice. If Licensee does not accept Sprint Nextel's offer of a cash substitute for the non-cash consideration, then Licensee will notify Sprint Nextel in writing of

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

4

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

Licensee's estimate of a fair cash substitute within fifteen (15) days after Licensee's receipt of Sprint Nextel's acceptance notice. Licensee's failure to notify Sprint Nextel of its estimate of a fair cash substitute within the prescribed fifteen (15) day period will be deemed an acceptance of Sprint Nextel's cash-substitute offer. If Licensee rejects Sprint Nextel's cash-substitute offer, then Sprint Nextel will have ten (10) days following receipt of Licensee's rejection to notify Licensee of its election to (i) adopt Licensee's stated cash value, or (ii) submit the valuation of a fair cash substitute for determination by binding arbitration. In the event of arbitration pursuant to this Section 3, the Parties will instruct the arbitrator(s) to assign a reasonable monetary value to any non-cash consideration provided in any Third Party Offer despite any determination that such non-cash consideration is not readily available in the marketplace to Sprint Nextel, except where the non-cash consideration is the services or participation of a person(s), where the value will be the amount Licensee would reasonably pay such person(s) in the then-current market for the work the person would be performing. In any case where arbitration is invoked, Sprint Nextel's ROFR will remain in effect with respect to the third party offer until thirty (30) days after Sprint Nextel is notified of the arbitrators' decision, during which time Sprint Nextel may revise its notice of exercise of its ROFR to adopt the arbitrators' findings or waive its ROFR with respect to the Third Party Offer. If, within sixty (60) days after the end of Sprint Nextel's thirty (30) day time period to consider the arbitrator's decision, Licensee does not enter into a binding agreement with the third party offeror on the same terms and conditions as contained in the Third Party Offer, then Sprint Nextel's ROFR will remain in effect pursuant to the terms stated in Section 3(b). If, within the sixty (60) day period, Licensee enters into a binding agreement with the third party offeror on the same terms and conditions contained in the Third Party Offer (a fully-executed copy of which will be supplied to Sprint Nextel), then Sprint Nextel's ROFR will terminate with respect to such transaction, but the ROFR will remain in full force and effect with respect to any subsequent Third Party Offer with respect to the lease, use or purchase of the rights to the Channels received during the Term and for the applicable ROFR Term as provided in Section 3(b).

(e)     **Arbitration**. Any arbitration pursuant to this Section will be brought in the city of Reading Pennsylvania before the American Arbitration Association (the "AAA") under the AAA's Commercial Arbitration Rules (the "AAA Rules"). Arbitration will be conducted by three (3) arbitrators appointed in accordance with the AAA Rules. Each Party will pay its own attorneys' fees and costs in connection with the arbitration and the Parties will divide equally the fees and costs of the arbitrators, provided, however, that in their award, the arbitrators may reapportion the fees and costs of the arbitrators as the arbitrators deem appropriate.

(f)     **Right to Participate**. If Licensee decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part or the whole of the Channels at any time before the third (3rd) anniversary of the end of the Term, then Licensee will provide Sprint Nextel with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity:

(i)     to submit bids, proposals and offers for the Channels;

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(ii)   to receive information with respect to such bids, proposals, offers and counters thereto;

(iii)   to discuss such information with Licensee;

(iv)   to counter any such bids, proposals or offers; and

(v)   to be provided with copies of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by Licensee.

This right to participate does not limit in any manner, and is in addition to, the ROFR set forth in Subsection 3(b).

## 4.   FREQUENCY BAND TRANSITION

The Parties acknowledge that the Channels are subject to relocation to different frequencies as a result of the Transition Plan adopted by the FCC in WT Docket No. 03-66 (the "Transition"). Sprint Nextel and Licensee will cooperate in the Transition in accordance with FCC Rules to facilitate Sprint Nextel's use of the Sprint Nextel Capacity and Licensee's use of Licensee's Capacity. If Licensee is not the entity initiating or overseeing the Transition of the Channels to alternative frequencies (the "Proponent"), then Licensee will designate and reasonably promote Sprint Nextel or its designee as Proponent, and otherwise support Sprint Nextel's interests in the means and outcome of the Transition to the extent permitted by FCC Rules and consistent with Licensee's Transition rights thereunder. Licensee will consult with Sprint Nextel before adopting, consenting to, or otherwise agreeing to any change of frequencies or characteristics of the Channels other than those changes required by FCC Rules, and will fully involve Sprint Nextel in all of its interactions with any third parties concerning transitions to channel plans allowed as an outcome of the FCC's Transition proceedings. Furthermore, Licensee will not adopt, consent to, agree to, or support any change of frequencies or characteristics of the Channels, except as required FCC Rules, that would impair Sprint Nextel's full and flexible use of the Sprint Nextel Capacity throughout the entirety of the GSA for the Channels. Notwithstanding the foregoing, however, in the event that neither Sprint Nextel nor any third party initiates and/or completes the Transition of the Channels within the time frames specified by the FCC, Licensee may, at its sole option, avail itself of any "self-transition" rights made available pursuant to FCC Rules with respect to the Channels, and Sprint Nextel will reimburse Licensee's reasonable costs thereof.

## 5.   CAPACITY REQUIREMENTS AND USES

(a)   **Licensee's Capacity**. The FCC requires EBS licensees to reserve certain channel capacity for their own use in any spectrum leasing arrangement ("Reservation"). In this Agreement, the capacity of Licensee is referred to as "Licensee's Capacity." When the Channels are being operated in analog mode, Licensee's Capacity is six (6) MHz of spectrum. When the Channels are operated in digital mode, then Licensee's Capacity will be five percent (5%) of the capacity of the Channels. If the FCC reduces the Reservation, Sprint Nextel, at its sole discretion, may elect to decrease Licensee's Capacity in any increment selected by Sprint Nextel and will adjust the Monthly Payment on a *pro rata* basis to account for the resulting increase in bandwidth (measured in MHz) of the Sprint Nextel Capacity. Unless otherwise agreed by the Parties, Sprint Nextel may, at its sole discretion, designate as Licensee's Capacity the equivalent of five percent (5%) of the

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

6

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

bandwidth (measured in MHz) of the Channels on any BRS or EBS spectrum licensed to or leased by Sprint Nextel, or any of its affiliates, in the Area.

(b)  **Use of Licensee's Capacity**.  Licensee will use Licensee's Capacity to help satisfy its minimum educational use requirements pursuant to FCC Rules ("Minimum Use Requirements"), provided, however, Licensee is not precluded from using other methods to meet the Minimum Use Requirements, including the products and services set forth in Subsection 7(c) and any video or audio transmission capacity made available to it by Nextel, to the extent they allow Licensee to meet such requirements.  Licensee will not use Licensee's Capacity in any manner that would interfere with Sprint Nextel's use or planned use of the Sprint Nextel Capacity or any other BRS or EBS spectrum, or violate FCC Rules, including rules relating to the prevention of interference to adjacent channels and markets.  Licensee will provide Sprint Nextel at least one hundred eighty (180) days advance notice prior to deployment of any facilities which use Licensee's Capacity.  Licensee will promptly provide Sprint Nextel with all engineering and other information requested by Sprint Nextel concerning Licensee's planned use of Licensee's Capacity.

(c)  **Sprint Nextel Capacity**. From and after the Consent Date, Sprint Nextel will have the exclusive right to operate and use all the capacity of the Channels except for Licensee's Capacity ("Sprint Nextel Capacity").   Notwithstanding the foregoing, however, Sprint Nextel agrees that Licensee may continue to program the Channels to continue its educational video transmissions until the earlier of (i) the end of the Transition; or (ii) a date specified by Sprint Nextel that is no earlier than fifteen (15) days following notice to Licensee by Sprint Nextel of its intent to use the Channels (except for Licensee's Capacity) prior to the end of the Transition ("Licensee's Interim Use").  Licensee will bear all responsibility, all costs and expenses for all repairs, maintenance and replacement of all equipment used in the operation of the Channels in connection with Licensee's Interim Use.

(d)  **Use of Sprint Nextel Capacity**.  Sprint Nextel may use Sprint Nextel Capacity in any manner or format that is in compliance with applicable laws and regulations and for any lawful purpose, including those that may be authorized in the future by the FCC.  Sprint Nextel may maximize the use and amount of Sprint Nextel Capacity by employing techniques allowed by the FCC, including but not limited to: digitization, subchannelization and superchannelization or by channel loading and/or channel shifting of Licensee's Capacity as those terms are defined by FCC Rules. Sprint Nextel may also change the medium used for Licensee's Capacity, if allowed by the FCC (such as Internet delivery, or any other delivery system, including the use of spectrum other than BRS or EBS spectrum, that may be authorized in the future by the FCC), provided that Sprint Nextel bears all associated reasonable costs and expenses. Notwithstanding the foregoing, and except as required by Section 6(a), nothing herein will require Sprint Nextel to construct, operate or continue to operate any commercial service utilizing the Channels.

(e)  **Content and Operation**.  Sprint Nextel will not be restricted in providing Internet, data, video streaming or voice services over Sprint Nextel Capacity, but will comply with any applicable legal requirements relating to the provision of any

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

such services.  Sprint Nextel will not be liable to Licensee for the content, communications, transmissions or postings initiated or made by third parties over the Internet or other computer, data networking or voice systems.

(f)    **Review of Educational Reservation and Use**.  During the fifteenth (15th) year of the Term and during each fifth year of the Term thereafter, Licensee will have an opportunity to review  its internal educational use requirements in light of changes in educational needs, technology, and other relevant factors (each a "Review" and collectively the "Reviews") and obtain access to such additional services, support and/or equipment as the parties may agree upon to advance Licensee's educational mission.  If at any Review Licensee determines that it has additional needs to meet an increase in its internal educational use requirements, Licensee will provide Sprint Nextel with (i) written notice of such determination, and (ii) reasonable supporting documentation or other proof showing the increase in Licensee's internal educational use requirements and that the increase is not temporary in nature.  The Parties will then cooperate to determine the equipment and services necessary to meet increases in Licensee's internal educational use requirements that can be supported by reasonable proof, except that (a) Sprint Nextel will not be required to relinquish any part of the Sprint Nextel Capacity, (b) Sprint Nextel will not be required to provide any products or services not generally offered by Sprint Nextel in the Area, and (c) Licensee will pay for any associated costs and expenses that exceed fifteen (15) percent of the monthly Account Credit (as the term was defined on the Effective Date).

6.    **EQUIPMENT**

(a)    **Operation and Maintenance of Equipment**.  Sprint Nextel will, at its expense, operate and maintain the transmission equipment used to operate the Sprint Nextel Capacity ("Sprint Nextel Equipment") and will ensure that operation and maintenance of the Sprint Nextel Equipment complies in all material respects with applicable FCC Rules.  Licensee will, at its expense, operate and maintain the transmission equipment, if any, used to operate Licensee's Capacity, but Licensee will be under no obligation to provide or operate such equipment.  Sprint Nextel will be obligated to either construct and maintain facilities that satisfy the FCC Rules concerning "substantial service" ("Substantial Service Requirements") for the Channels or provide Licensee with the notice described under Subsection 11(f)(2).  Licensee will reasonably cooperate with any Sprint Nextel proposal to implement video transmission capabilities, including supply Sprint Nextel with educational programming and make use of any video transmissions of educational programming, provided Licensee does not incur, or is otherwise reimbursed for, any expense associated with the construction and operation of the transmission facilities.

(b)    **Option to Purchase Equipment**.  Upon termination of this Agreement for any reason other than breach by Licensee, to the extent required by the FCC Rules in effect at such time, Licensee will have the option to purchase, at fair market value, one (1) base station for use by Licensee on the Channels, provided, however, licensee shall have no right to any portion of Sprint Nextel's network or any proprietary software or information, or intellectual property.  To exercise such option, Licensee must notify Sprint Nextel in writing  within fifteen (15) days of

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

8

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

the termination of this Agreement and the Parties will use commercially reasonable efforts to consummate the transaction as soon as practicable.

7.    **BROADBAND AND OTHER SERVICES**

    (a)    **Preparation for Commercial Services**.  Sprint Nextel may, from time to time and as permitted by FCC Rules, and subject to the requirements of Section 6(a), cease all operation of the Channels.

    (b)    Reserved.

    (c)    **Sprint Nextel Products and Services**:  Sprint Nextel will provide Licensee with a monthly Account Credit (as defined below) to be used to purchase Sprint Nextel communication products and services:

        (i)    Account Credit.    The account credit will be ▮▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮ ▮▮▮▮▮▮ beginning the first full month following the later of (A) the Consent Date, (B) the Waiver Consent Date (C) the date Licensee has established a Sprint Nextel customer account through the appropriate commercial channels and, (D) the date Licensee has delivered to Sprint Nextel a completed and executed copy of the Licensee and Electronic Filing Information Form attached as Exhibit A and the Payee Setup Form attached hereto as Exhibit B, and continuing until the end of the Term [the "Account Credit"). The Account Credit will be credited to Licensee's Sprint Nextel customer account by Sprint Nextel no later than thirty (30) days following the end of each calendar month during the Term. The Account Credit for the final month will be adjusted on a *pro rata* basis if the Term expires on a day other than the last day of a calendar month. Licensee may use the Account Credit to purchase commercial communication products and services of Sprint Nextel that are generally offered in the Area, in such type and amount as Licensee shall determine, at Sprint Nextel's then commercially available rates for similarly situated entities for such products or services provided that the rates provided to Licensee will not be at a level that will cause the rates under any agreement with the U.S. General Services Administration, or any similar agreement with any governmental or other entity to be altered. The Account Credit will be applied to any charges and fees incurred in connection with Licensee's account on a monthly basis.  If during any month, Licensee incurs charges and fees on its Sprint Nextel customer account in an amount less than the Account Credit, the unused Account Credit may not be transferred, credited to a subsequent month or redeemed for cash, and will revert to Sprint Nextel.

8.    **CHANNEL SWAPS AND INTERFERENCE CONSENTS**

    (a)    **Interference Consents**.  Sprint Nextel may, at its expense, enter into any Interference Consents (defined below) with respect to the Channels.  The effectiveness of any such Interference Consent entered into by Sprint Nextel, by its

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

terms, may not extend beyond the Term. Licensee will, within thirty (30) days of written request by Sprint Nextel, enter into any Interference Consent with respect to the Channels which is commercially reasonable in the context of the commercial use and development of the Channels and which provides for fair and reciprocal rights and limitations on the use of the Channels and such other spectrum subject to such Interference Consent. Any such Interference Consent executed by Licensee at the request of Sprint may survive indefinitely. Upon the request of Sprint Nextel, Licensee will use reasonable efforts to terminate any then existing Interference Consent to which it is a party, but Licensee will not be required to offer any consideration in connection with those efforts unless such consideration is to be paid for by Sprint Nextel. Sprint Nextel will negotiate and draft the Interference Consents and make any consideration payments due to third parties under the Interference Consents. "Interference Consents" means any agreements or arrangements affecting the use or operation of the Channels, including any agreement or arrangement concerning:

    (i)     acceptance of interference or signal strength from a third party's transmitters in excess of the interference or signal strength such third party is entitled to transmit under FCC Rules, or limiting interference or signal strength from transmitters operating on any of the Channels below what is allowed under FCC Rules;

    (ii)    the alteration of operating parameters authorized under the license for any Channel or third party channel;

    (iii)   the coordination of adjacent market channel use or other matters concerned with the operation of adjacent markets;

    (iv)    emission mask and/or emission type; or

    (v)     restricting station operations, licensing or location.

(b)    **Channel Swaps**.  Licensee will complete, submit to the FCC on such date as requested by Sprint Nextel, and prosecute such applications as Sprint Nextel may request to effectuate an exchange of all or a portion of the Channels for the same amount (determined in MHz) of other EBS or BRS spectrum other than guard band spectrum (a "Channel Swap") licensed in the same general geographic area as the Channels ("Swapped Channels"), and thereafter cause such exchange to be consummated, provided that the population residing within the GSA for the Swapped Channels is at least 96.0% of the population residing within the GSA for the Channels as of the date of such exchange and thereafter Licensee is, or would be after giving effect to the Transition, licensed for at least one block of 16.5 MHz of contiguous spectrum in either of the Lower Band Segment or the Upper Band Segment.  Effective upon the consummation of a Channel Swap, such Swapped Channels will be considered "Channels" for purposes of this Agreement and any spectrum transferred on behalf of Licensee pursuant to such Channel Swap will no longer be considered "Channels" for purposes of this Agreement. Sprint Nextel will not reduce Monthly Payments based on a reduction in GSA as a result of a Channel Swap pursuant to this Subsection.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

9.    **APPLICATIONS, AUCTIONS AND FEES**

(a)    **Application**.  Sprint Nextel and Licensee will cooperate to prepare and file the application for the FCC's approval of the long term de facto transfer lease of the Channels (the "De Facto Lease Application") within fourteen (14) days following the Effective Date.  If the FCC denies the De Facto Lease Application or grants it with conditions materially adverse to Sprint Nextel or to Licensee, upon Sprint Nextel's request, and the Parties' agreement on the payment of expenses, Licensee will use its best efforts to secure reversal of the FCC's action .

(b)    **Waiver Application.**  Licensee has prepared and filed the Waiver Application.  If the FCC denies the Waiver Application or grants it with conditions materially adverse to Sprint Nextel in its sole discretion, upon Sprint Nextel's request and the Parties' agreement on the payment of expenses, Licensee will use its best efforts to secure reversal of the FCC's action.

(c)    **Application Preparation**.  Other than the Waiver Application and those other applications required to be filed by Licensee in accordance with the terms of this Agreement, Sprint Nextel will prepare and submit all applications, amendments, petitions, requests for waivers, and other documents necessary for the operation of Sprint Nextel Capacity and permitted to be submitted by Sprint Nextel under the FCC Rules.  Promptly, but no later than thirty (30) days following written request by Sprint Nextel, Licensee will submit to the FCC and thereafter prosecute any lawful application, amendment, petition, request for waiver, or any other documents with respect to the Channels required by or is consistent with this Agreement that is requested by Sprint Nextel.  Not less than forty five (45) days prior to the date that any such filing is due, Licensee will prepare and submit all applications, amendments, petitions, requests for waivers, and other documents necessary for the maintenance and renewal of the License or required of Licensee to remain eligible under FCC Rules to provide Sprint Nextel Capacity to Sprint Nextel.  The failure to complete filings by the forty-five day deadline listed above will not constitute a material breach under this Agreement if the filings are filed as soon as practicable, and under all circumstances by no later than the latest date that would allow this agreement to continue without interruption.  Licensee will provide Sprint Nextel with copies of documents submitted pursuant to the preceding sentence at the same time it submits such documents to the appropriate agency.  The Parties will cooperate in good faith in the preparation, submission and prosecution of all applications, amendments, petitions, requests for waivers, and other documents necessary to secure any FCC approval, consent or other action required to effectuate the Leasing Arrangement without conditions that are materially adverse to either Party.

(d)    **Application Costs**.  Other than the Waiver Application and those other applications required to be filed by Licensee in accordance with the terms of this Agreement, Sprint Nextel will, at its own expense, prepare all applications, notices, certificates, exhibits, consent agreements, approvals or authorizations that Sprint Nextel submits to the FCC or requests Licensee to submit pursuant to this Agreement.  Sprint Nextel will pay FCC filing fees associated with seeking consent of the Leasing Arrangement and will promptly pay or reimburse Licensee

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

11

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

for its reasonable expenses (including legal and/or engineering fees) associated with the evaluation of and activities undertaken by Licensee in response to any request by Sprint Nextel for action by Licensee. Licensee will pay its own costs associated with the renewal of the License and with any other filings to the FCC requested or customarily required of Licensee to remain eligible under FCC Rules to provide Sprint Nextel Capacity to Sprint Nextel (except as such costs relate to Sprint Nextel's status as lessee under this Agreement).

(e)    **Regulatory Fees**.  Sprint Nextel will pay any regulatory fees imposed by the FCC on Sprint Nextel's use of the Sprint Nextel Capacity under this Agreement upon receipt of notice from the FCC that such fees are due, or upon receipt of at least thirty (30) days advance written notice from Licensee that such fees are due if notice is sent to Licensee.

(f)    **Auction Participation**.

(i)    If the FCC auctions EBS spectrum (other than the Channels), upon Sprint Nextel's request made at least 120 days in advance of any such auction (or shorter in the event that FCC notice of the auction occurs within 120 days of the auction), Licensee will negotiate in good faith with Sprint Nextel for 60 days to reach an agreement pursuant to which Licensee will participate in the EBS spectrum auction and Sprint Nextel will serve as Licensee's agent and attorney-in-fact to bid for Licensee. Any such agreement will provide that Sprint Nextel will indemnify and hold Licensee harmless from any requirement to pay the U.S. Treasury any amount bid by Sprint Nextel on Licensee's behalf, as well as any liability incurred by Licensee as a result of Sprint Nextel's activities as agent and attorney-in-fact. In the event that Sprint Nextel does not request that Licensee participate in an EBS auction, or the Parties do not reach an agreement on Licensee's participation in the auction, Licensee shall be entitled to participate in any such auction in its own right, at its own expense, without obligation to Sprint Nextel with respect to any such capacity acquired thereby.

(ii)    In the event that the FCC permits but does not mandate Licensee to auction any of the Channels, Licensee will decline such invitation to auction unless Sprint Nextel and Licensee mutually agree on the parameters and limitations of Licensee's participation and its effect on this Agreement. In the event that the FCC requires Licensee to auction any of the Channels, the Parties will use best efforts, including participate in the auction, to ensure that the rights of the Parties under this Agreement continue in full force and effect provided, however, that such participation by Licensee will be at Sprint Nextel's expense.

10.    **TRANSFERS AND ASSIGNMENTS**

(a)    **Limited Transfers and Assignments by Sprint Nextel**. Subject to Subsection 16(f), Sprint Nextel may do any of the following, but Sprint Nextel will remain

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

primarily and directly responsible to Licensee for compliance with all its obligations under this Agreement:

    (i)    sublease any or all of the Sprint Nextel Capacity;

    (ii)    permit any direct or indirect affiliate of Sprint Nextel to use any portion of the Sprint Nextel Capacity; and

    (iii)    delegate any or all of its obligations under this Agreement.

(b)    **Full Transfers and Assignments by Sprint Nextel.** Subject to Subsection 16(f), Sprint Nextel may assign this Agreement to any third party capable of fully performing the obligations of Sprint Nextel hereunder, provided that:

    (i)    Sprint Nextel agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Sprint Nextel's obligations hereunder and acknowledges all of Licensee's rights hereunder;

    (ii)    the assignment and assumption agreement is in a form reasonably acceptable to Licensee;

    (iii)    Sprint Nextel provides Licensee at least thirty (30) days advance notice of such proposed assignment, and upon closing of such assignment, provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to Licensee.

(c)    **By Licensee.** Subject to Sprint Nextel's ROFR, and FCC Rules, Licensee may negotiate and enter into any contract to assign the License to a third party provided that:

    (i)    Licensee agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Licensee's obligations hereunder and acknowledges all of Sprint Nextel's rights hereunder, including Sprint Nextel's ROFR (as it applies to any subsequent transfer);

    (ii)    The assignment and assumption agreement is in a form reasonably acceptable to Sprint Nextel;

    (iii)    Licensee provides Sprint Nextel at least thirty (30) days advance notice of such proposed assignment, and upon closing of such assignment, provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to Sprint Nextel; and

    (iv)    the assignee is not a Competing Entity (defined below).

A "Competing Entity" is any party that (1) offers, provides or delivers a commercially available telecommunications service using EBS or BRS spectrum within the United States of America (a "Competing Service"), (2) owns (except a less than one percent (1%) interest in a publicly traded company) any interest in any entity which provides a Competing Service, (3) has granted, or is affiliated with a party that has granted, to any provider of a Competing Service a global or overarching agreement for the right,

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires.

11.   **TERMINATION OF AGREEMENT**

    (a)    This Agreement will automatically terminate with respect to the License or affected Channel(s) upon the earlier of:

        (i)    an FCC Final Order denying the application for the long term de facto transfer lease of the Channels or the extension of the Term or an FCC Final Order denying the Waiver Application;

        (ii)    the loss or expiration without renewal of the License;

        (iii)    an FCC Final Order revoking, terminating or canceling the License; or

        (iv)    Sprint Nextel's acquisition of the License or some of the Channels respectively.

    In such event, the Monthly Payments will be reduced on a *pro rata* basis to account for those Channels or portions thereof which are the subject of such termination.

    (b)    This Agreement may be terminated by either Party upon material breach of the other Party, if the breaching Party is provided with written notice by the non-breaching Party of the alleged grounds for the breach and allowed a thirty (30) day period for cure following such notice. If any such material breach is not reasonably capable of being cured within such thirty (30) day period, and the breaching party clearly demonstrates ongoing good-faith efforts to cure the breach, then the cure period will be extended an additional one hundred eighty (180) days and this Agreement may not be terminated so long as the breaching Party commences action to cure such breach within the initial thirty (30) day period and thereafter diligently pursues such cure to completion within the additional one hundred eighty (180) days. The Parties agree that the loss of the License will not be deemed a material breach by Licensee if (i) Licensee has met all of its obligations under this Agreement, or any obligations that Licensee has not met have no material causal relationship to the loss; (ii) the loss is not due to the fault of Licensee; and (iii) the Licensee used best efforts to keep in force and renew the License. The Parties also agree that the denial of the DeFacto Transfer Application because the Waiver Application is denied and/or of the Waiver Application will not e deemed a material breach by Licensee.

    (c)    Sprint Nextel may terminate this Agreement if, for any reason other than a breach of this Agreement by Sprint Nextel, the Sprint Nextel Capacity falls below 16.5 MHz.

    (d)    Sprint Nextel may terminate this Agreement on thirty (30) days' written notice to Licensee if:

        (i)    the FCC has not granted the application for the long term de facto transfer lease of the Channels and such grant has not become a Final Order within one (1) year of the Waiver Consent Date or the FCC grants the application for the lease or any extension but places conditions that are materially adverse to Sprint Nextel;

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(ii)    the FCC Rules are amended subsequent to the Effective Date in a manner that, in Sprint Nextel's sole discretion, materially impairs Sprint Nextel's ability to develop and launch a commercial wireless telecommunications system using BRS or EBS spectrum, or that places additional material obligations on Sprint Nextel as conditions of its use of the Channels in such a system; provided, however, that any such termination shall be exercised no later than 180 days following the date on which the amended FCC Rules become a Final Order; or

(iii)   the FCC has not granted the application for the Waiver and such grant has not become a Final Order within one (1) year of the Effective Date, the FCC denies the application for the Waiver or the FCC grants the application for the Waiver but places conditions that are materially adverse to Sprint Nextel.

(e)    Licensee may terminate this Agreement if:

(i)    Licensee advises and certifies ("Notice and Certification") to Sprint Nextel in writing that Licensee desires to permanently cease all EBS operations in the Area and Licensee assigns without any consideration its rights under the License and Channels to a qualified entity designated by Sprint Nextel during the period that is six (6) months following receipt by Sprint Nextel of the Notice and Certification ("Six Months Period"). If Sprint Nextel does not designate a replacement entity for Licensee during the Six Months Period, Licensee will seek the cancellation of the licenses for all of the Channels with the FCC and this Agreement will automatically terminate upon the cancellation by the FCC of such licenses; or

(ii)    Sprint Nextel fails to comply with the Communications Act or the FCC Rules (collectively, the "Governing Rules") governing its use of the Channels; provided that, Licensee's right to terminate under this Sub-section (ii) may be exercised only if (A) Licensee becomes aware of an on-going violation or repeated violations by Sprint Nextel of the Governing Rules, or any other violation of the Governing Rules that might adversely affect Licensee's rights in the License or impose liability on Licensee as licensee of the Channels, and (B) after giving notice to Sprint Nextel of such violation(s), Sprint Nextel does not immediately, in the case of an on-going violation, begin to cure such violation and fully effect such cure within thirty (30) days or such lesser period that the FCC may specifically impose, and in the case of repeated violations, take steps to prevent such violations in the future and fully effect such steps within thirty (30) days or such lesser period that the FCC may specifically impose, such that the violation does not re-occur. If any such failure to comply with the Governing Rules, as provided in (A) or (B) above, is not reasonably capable of being cured within a thirty (30) day period, Sprint Nextel clearly demonstrates ongoing good-faith efforts to cure the breach, and the FCC does not create an

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

15

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

earlier deadline, then the cure period will be extended an additional one hundred eighty (180) days and this Agreement may not be terminated so long as Sprint Nextel commences action to cure such breach within the initial thirty (30) day period and thereafter diligently pursues such cure to completion within the additional one hundred eighty (180) days.

(f)    If the FCC alters the Substantial Service Requirements applicable to the Channels in a manner that materially increases the burden on Sprint Nextel to satisfy such requirements, then Sprint Nextel no later than ninety (90) days following the change in such Substantial Service Requirements, may notify Licensee that Sprint Nextel is not assuming any obligations to meet such Substantial Service Requirements.  Within forty-five (45) days following such notice, Licensee may elect:

(i)    to terminate this Agreement by providing notice thereof, in which case the Agreement will terminate forty-five (45) days after Licensee's notice; or

(ii)   to continue this Agreement in which case neither Party will have liability to the other for the failure to meet such Substantial Service Requirements.  If Licensee does not elect to terminate this Agreement pursuant to this Subsection, this Agreement will continue except that neither Party will have liability to the other for the failure to meet such Substantial Service Requirements.

If Sprint Nextel does not provide notice of its intent to not assume the Substantial Service Requirements, Sprint Nextel will take all necessary steps to ensure that such Substantial Service Requirements are satisfied by the deadline established by the FCC.

(g)    The Parties will notify the FCC of the termination or expiration of this Agreement with respect to the License or any of the Channels within ten (10) calendar days following the termination or expiration.

(h)    Except as expressly set forth in this Agreement, upon the expiration or termination of this Agreement, the Parties will have no further obligations to each other.  Any termination or expiration of this Agreement, regardless of cause, will not release either Licensee or Sprint Nextel from any liability arising from any breach or violation by that Party of the terms of this Agreement prior to the expiration or termination.  The general and procedural provisions of this Agreement, which may be relevant to enforcing the obligations or duties of the Parties, will survive the expiration or termination of this Agreement until the obligations or duties are performed or discharged in full.

## 12.    EXPENSES

Except as expressly provided in this Agreement, each Party will pay its own expenses incident to the preparation and performance of this Agreement, and any amendment or modification to this Agreement, including, but not limited to, all fees and expenses of their respective legal counsel and any engineering, accounting and brokerage expenses in connection with this Agreement.  Sprint Nextel is entitled to one hundred percent (100%) of the revenue generated from the use of the Sprint Nextel

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

16

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

Capacity. Sprint Nextel also retains all right, title and interest in all of the assets operating on, or used in the operation of the Sprint Nextel Capacity, including without limitation all equipment, customers, and proprietary information such as customer or technical information, and Licensee will have no right or interest in or to such assets.

13. **COVENANT NOT TO COMPETE**

During the Term, Licensee will not directly or indirectly use Licensee's Capacity to compete with Sprint Nextel or its affiliates in any business activity or business or service offerings, or provide a Competing Service in the Area. Nothing in this Section prohibits Licensee from

(a)    subject to Sprint Nextel's ROFR, leasing the capacity of the Channels to a third party for any period after the termination or expiration of this Agreement, or

(b)    at any time:

(i)    leasing EBS channels or any spectrum held by Licensee to any party for any purpose other than the Channels,

(ii)    providing educational services (including but not limited to video and/or data services) to itself or to other schools, colleges, universities or other governmental or nonprofit entities, or

(iii)    providing educational teleconferencing or other noncommercial activities advancing its educational purposes.

14. **CONFIDENTIALITY AND NON-DISCLOSURE**

(a)    **Non-Disclosure of Information**. From the Effective Date until the three (3) year anniversary of the expiration or termination of this Agreement, the Parties and their Agents (as defined below) will:

(i)    treat all Information (as defined below) as confidential and proprietary;

(i)    hold all Information in strict confidence;

(ii)    not disclose any Information to any entity or person (or the fact that the Information has been made available to it); and

(iii)    not use any Information for any purpose other than implementing the terms of this Agreement.

For purposes of this Agreement, "Information" means all non-public information disclosed hereunder or in connection herewith, whether written or oral, that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential, including, without limitation, the terms of this Agreement, all negotiations and discussions relating to this Agreement and the matters subject to this Agreement, and all other information the Parties may supply and/or disclose to each other in conjunction with this Agreement relating to the business of the disclosing Party or its affiliates, whether supplied or disclosed during negotiations with respect to this Agreement, during the Initial Term or any Renewal Term of this Agreement.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

17

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(b)  **Certain Exceptions**.  Notwithstanding anything to the contrary in Subsection (a) above:

  (i)  The term "Information" will not include information that:

   (A)  is information customarily required to be disclosed in an FCC application seeking consent for or renewal of the Leasing Arrangement.

   (B)  is required to be disclosed to the FCC in support of the lease applications or notices submitted to the FCC; provided, however, that the Parties will submit a confidentiality request to the FCC if the FCC seeks from the Parties a copy of this Agreement or any information regarding its terms (other than those terms referred to in (A), above);

   (C)  has been or becomes published or is now, or in the future, in the public domain without breach of this Agreement or breach of a similar agreement by a third party;

   (D)  prior to disclosure hereunder, is property within the legitimate possession of the receiving Party which can be verified by independent evidence;

   (E)  subsequent to disclosure hereunder, is lawfully received from a third party having rights therein without restriction of the third party's or the receiving Party's rights to disseminate the information and without notice of any restriction against its further disclosure; or

   (F)  is independently developed by the receiving Party through persons who have not had, either directly or indirectly, access to or knowledge of such Information which can be verified by independent evidence.

  (ii)  The Parties may disclose Information to their respective affiliates, employees, shareholders, agents, representatives, attorneys and accountants (collectively, "Agents") as required to perform obligations under this Agreement; provided, however, that prior to disclosing any Information to any Agent, the Party disclosing such Information to the Agent will advise the Agent of the Information's confidential nature and the terms of this Section 14 and cause the Agent to abide by the terms of this Section 14.

  (iii)  The Parties may disclose Information as required by applicable law, regulation or regulatory or legal process; provided, however, that if any Party or any of its Agents becomes legally compelled or required to disclose any of the Information, the Party so compelled will, if permitted by applicable law, regulation or regulatory or legal process, provide the other Party with prompt, prior, written notice of such requirement so that such other Party may seek a protective

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

18

order or other appropriate remedy; provided, further, that if such a protective order or other remedy is not obtained or available, each Party will, and will cause their Agents to, disclose only that portion of the Information that is legally required to be disclosed and to otherwise take all reasonable steps to preserve the confidential nature of the Information.

(iv)    Sprint Nextel may disclose Information to any third parties which are subject to the terms of a confidentiality agreement prohibiting the further dissemination of such Information beyond that which would otherwise be permitted if such third parties were a party to this Section 14.

**15.    ASSUMPTION OF LIABILITIES**

Neither Party is assuming or will be responsible for any of the other's liabilities or obligations (including but not limited to customer obligations) except as required by the FCC or as otherwise specifically set forth in this Agreement.

**16.    FCC-MANDATED LEASING ARRANGEMENT OBLIGATIONS**

(a)    Licensee and Sprint Nextel are familiar with the FCC Rules, the Communications Act of 1934, as amended ("Communications Act"), the Code of Federal Regulations, and will materially comply at all times with all such laws and regulations as they pertain to the use of the Channels.

(b)    This Agreement may be revoked, cancelled or terminated by the FCC, or Licensee pursuant to the terms of Subsection 11(e)(ii), if Sprint Nextel fails to comply with applicable FCC Rules.

(c)    Except as set forth in Subsection 9(e), neither Licensee nor Sprint Nextel will represent itself as the legal representative of the other before the FCC or any party, but will cooperate with each other with respect to FCC matters concerning the Licenses and the Channels.

(d)    If the License is revoked, cancelled, terminated or otherwise ceases to be in effect, Sprint Nextel has no continuing authority or right to use the Channels unless otherwise authorized by the FCC.

(e)    This Agreement is not an assignment, sale or transfer of the License itself.

(f)    This Agreement may only be assigned in compliance with its terms and the FCC Rules and will not be assigned to any entity that is ineligible or unqualified to enter into a spectrum leasing arrangement under the FCC Rules. Licensee will not consent to an assignment unless such assignment complies with applicable FCC Rules.

(g)    Licensee and Sprint Nextel will each retain a copy of this Agreement and make it available upon request by the FCC, in accordance with the confidentiality provisions in Section 14.

**17.    REPRESENTATIONS AND WARRANTIES**

(a)    **Mutual Representations and Warranties**. Each Party represents and warrants to the other that:

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

19

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(i)   it is duly organized, validly existing and in good standing under the laws of the state of its formation, and has full power and authority to carry out all the transactions contemplated by this Agreement;

(ii)   it has taken all requisite organizational action to approve the execution, delivery and performance of this Agreement;

(iii)   this Agreement constitutes a legal, valid and binding obligation enforceable against such Party in accordance with its terms, subject only to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or in equity; and

(iv)   neither the execution nor the delivery of this Agreement nor the performance of the transactions contemplated by it will conflict with, or result in any violation or default under, any term of the articles or certificate of incorporation, organizational documents, or by-laws of such Party, or any agreement, mortgage, indenture, license, permit, lease or other instrument, judgment, decree, order, law or regulation by which the Party or its assets are bound.

(b)   **Sprint Nextel's Representations and Warranties**.  Sprint Nextel hereby represents and  warrants that it has the requisite capabilities and financial resources to satisfy its   obligations set forth in this Agreement.

(c)   **Licensee's Representations and Warranties**.  Licensee represents and warrants, except to the extent altered by the facts and circumstances surrounding the Waiver Application, that:

(i)   Licensee has obtained, and is in material compliance with all rules that apply to the License and operation of the Channels, and the License is in full force and effect,

(ii)   to the best of Licensee's knowledge, there are no facts that may warrant the revocation or cancellation of the License,

(iii)   Licensee is the lawful and exclusive licensee under the License

(iv)   to the best of Licensee's knowledge, the Channels are not subject to any authorizations other than those listed on Schedule A.

(v)   Except as reflected in the public records of the FCC and listed on Exhibit C, there are no applications pending before the FCC or any other governmental authority that relate in any way to the Channels or the License;

(vi)   As of the Effective Date, there are no ongoing Interference Consents or other agreements or undertakings that limit or transfer the whole or any part of the GSA of the License or any of the Channels;

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

20

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(vii)    there is no complaint, inquiry, investigation or proceeding pending before the FCC, or any other governmental authority or regulatory body, or, to the best knowledge of Licensee, threatened which could result in the revocation, modification, restriction, cancellation, termination or non-renewal of, or other action adversely affecting the License or the Channels, and knows of no facts that, if brought to the attention of the FCC, a governmental authority or regulatory body, could result in the revocation, modification, restriction, cancellation, termination or non-renewal of, or other action adversely affecting, the License or any of the Channels; and

(viii)    there is no pending or threatened litigation that relates in any way to the Channels or License or that would otherwise prevent, impede, or have the effect of preventing or impeding Licensee from satisfying its obligations under this Agreement.

(ix)    Licensee is satisfying the FCC Rules to fulfill its obligations under this Agreement, to maintain the License, and remain an eligible EBS licensee of the License and Channels.

(x)    Prior to the Effective Date, Licensee has terminated any prior leases involving the Channels or the License.

## 18.   COVENANTS

(a)    **Sprint Nextel's Covenants**.  Throughout the Term, Sprint Nextel will:

(i)    not take any action prohibited by this Agreement or fail to take any action that it is required to take pursuant to this Agreement which could reasonably be expected to cause the impairment of, or the revocation, cancellation, or suspension by the FCC of, or the FCC's refusal to renew Licensee's License or any portion thereof;

(ii)    not take any action or fail to take any action that it is required to take that would cause any of its representations and warranties under this Agreement to become untrue or incorrect in any respect;

(iii)    promptly notify Licensee of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Sprint Nextel's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranty been made at such time; and

(iv)    promptly notify Licensee of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Sprint Nextel's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranty been made at such time.

(b)    **Licensee's Covenants**.  Throughout the Term, Licensee will:

SPRINT NEXTEL
**CONFIDENTIAL AND PROPRIETARY**

21

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(i)     use best efforts to obtain and maintain all lawful licenses, permits and authorizations required or desired by Sprint Nextel for the use of the Channels;

(ii)    take all necessary action required pursuant to this Agreement to be able to meet its obligations to Sprint Nextel under this Agreement and remain eligible under the FCC Rules to hold the License with respect to all of the Channels, including meeting any educational use requirements;

(iii)   take all necessary steps to renew each License, as required under this Agreement, and not commit any act, engage in any activity prohibited by this Agreement, or fail to take any action that it is required to under this Agreement that could reasonably be expected to cause the impairment of, or the revocation, cancellation, or suspension by the FCC of, or the FCC's refusal to renew any License or any portion thereof;

(iv)    not take any action or fail to take any action that it is required to take that would cause any of its representations and warranties under this Agreement to become untrue or incorrect in any respect;

(v)     promptly notify Sprint Nextel of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Licensee's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranties been made at such time; and

(vi)    promptly notify Sprint Nextel of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Licensee's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranties been made at such time.

19.     **INDEMNIFICATION**

(a)     **Sprint Nextel's Duty to Indemnify**.  Sprint Nextel will defend, indemnify and hold Licensee and each of its affiliates and their respective partners, members, officers, directors, employees, agents, representatives, successors and assigns harmless from and against any and all liabilities, losses, damages and costs, including reasonable attorney's fees, to the extent resulting from, arising out of, or in any way connected with claims by a third party directly resulting from:  (i) any breach by Sprint Nextel of any warranty, representation, agreement or obligation contained in this Agreement, including any breach of the obligation to comply with any legal requirements that apply to Sprint Nextel in conjunction with the provision of services on the Channels; (ii) the installation, maintenance, testing, repair, or physical operation of the facilities utilizing the Channels; or (iii) a breach by Sprint Nextel of an agreement with that third party.

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

22

(b)    **Licensee's Duty to Indemnify**.  Licensee will defend, indemnify and hold Sprint Nextel and each of its affiliates and their respective partners, members, officers, directors, employees, agents, representatives, successors and assigns harmless from and against any and all liabilities, losses, damages and costs, including reasonable attorney's fees, to the extent resulting from, arising out of, or in any way connected with claims by a third party directly resulting from any breach by Licensee of any warranty, representation, agreement or obligation contained in this Agreement.

(c)    **Claims**.  In any circumstance in which a Party ("Indemnifying Party") is required by the provisions of this Agreement to indemnify the other Party ("Indemnified Party") with respect to any claim by a third party:

    (i)    the Indemnified Party will give prompt and reasonably detailed written notice of the circumstances to the Indemnifying Party (including, without limitation, the amount of such claim, or if the amount is not yet liquidated or otherwise determinable, the Indemnified Party's reasonable, good faith estimate thereof); provided, however, that no delay in giving notice will relieve the Indemnifying Party of its obligations unless the delay results in actual prejudice and then only to the extent of the actual prejudice;

    (ii)    the Indemnified Party will not make any admission or make or accept any offer of settlement or compromise or consent to entry of any judgment (other than a dismissal on the merits with prejudice without costs) or findings of fact without the prior written consent of the Indemnifying Party, which consent will not be unreasonably withheld, delayed or conditioned;

    (iii)    unless the counsel selected is reasonably objected to by the Indemnified Party, the Indemnifying Party will be entitled to direct and may assume the defense of any action and select counsel or additional co-counsel for such purpose, at its cost and expense;

    (iv)    after the Indemnifying Party assumes the defense of any action pursuant to clause (iii) of this Subsection, the Indemnifying Party will have no liability for any attorney's fees that are incurred by the Indemnified Party unless the employment of counsel by the Indemnified Party and that counsel's fees have been authorized by the Indemnifying Party;

    (v)    the Indemnified Party will reasonably cooperate with the Indemnifying Party and counsel in the defense of any action, and will provide documents and information and access to witnesses upon reasonable request; and

    (vi)    the Indemnifying Party will not settle any such action without the written consent of the Indemnified Party (which consent shall not be unreasonably withheld), or consent to the entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

23

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

the Indemnified Party a release from all liability with respect to the claim.

(d)   **Survival**.  This indemnification Section will survive for one (1) year following the expiration or termination of this Agreement and Sprint Nextel's ROFR (the "Indemnification Period"); provided, however, that this Section will not terminate with respect to any *bona fide* claim as to which the Party to be indemnified has, before the expiration of the Indemnification Period, delivered proper notice in accordance with this Section.

20.   **NOTICES**

(a)   Any notice required to be given by one Party to the other under this Agreement will be delivered using a reliable national express overnight delivery service and will be effective upon receipt.  All notices will be delivered to the Parties at the following addresses:

If to Sprint Nextel:

Sprint Nextel Corporation
Legal Department
Attention: Spectrum Management
2001 Edmund Halley Drive
Reston, VA  20191
Phone: 703.433.4000

With a copy to:

Sprint Nextel Corporation
Vice President Spectrum Management
2001 Edmund Halley Drive
Reston, VA  20191
Phone: (703) 433-4471

If to Licensee:

Albright College
Attention:  Vice President for Administration and Finance
P.O. Box 15234
1621 North 13th Street
Reading, PA  19612-5234
Phone:  (610) 525-2443

With a copy to:

Todd D. Gray
Dow Lohnes PLLC
1200 New Hampshire Avenue, NW
Suite 800

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

24

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

Washington, D. C. 20036-6802
Phone: (202)776-2571

(b)    Either Party may change its addresses for receipt of notice or payment by giving notice of such change to the other Party as provided in this Section.

21.    **MISCELLANEOUS**

(a)    **Force Majeure**.  Neither Party will be liable for any nonperformance under this Agreement due to causes beyond its reasonable control that could not have been reasonably anticipated by the non-performing Party and that cannot be reasonably avoided or overcome (each such cause being a "Force Majeure Event"); if:

(i)    the non-performing party gives the other Party prompt written notice of such cause, and in any event, within fifteen (15) calendar days of its discovery; and

(ii)    such nonperformance will be excused only during the period when the Force Majeure Event occurs, continues to exist and cannot be reasonably overcome.

(b)    **Independent Parties**.  None of the provisions of this Agreement will be deemed to constitute a partnership, joint venture, or any other similar relationship between the Parties, and neither Party will have any authority to bind the other in any manner except as specifically indicated in this Agreement.  Neither Party will have or hold itself out as having any right, authority or agency to act on behalf of the other Party in any capacity or in any manner, except as may be specifically authorized in this Agreement.

(c)    **Specific Performance**.

(i)    **Licensee:**  Licensee acknowledges that the License and Channels are unique and that Licensee's failure to perform this Agreement will cause Sprint Nextel irreparable damage and injury which cannot be reasonably or adequately compensated for in damages in an action at law.  Therefore, Sprint Nextel will be entitled, as a matter of right, to require of Licensee specific performance of all of Licensee's obligations under this Agreement, without a showing of irreparable harm beyond the concession of Licensee in this Subsection, or proof of specific monetary or other damages, but without waiving any right to money or other damages, and to obtain injunctive and other equitable relief in any court of competent jurisdiction to prevent the violation or threatened violation of any of the provisions of this Agreement.  Licensee acknowledges that the provisions of this Subsection constitute an essential element of this Agreement, without which this Agreement would not have been executed by Sprint Nextel.

(ii)    **Sprint Nextel:**  Sprint Nextel acknowledges that the License and Channels are unique and that Sprint Nextel's failure to perform certain obligations under this Agreement will cause Licensee irreparable damage and injury which cannot be reasonably or

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

25

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

adequately compensated for in damages in an action at law. Therefore, Licensee will be entitled, as a matter of right, to require of Sprint Nextel specific performance of any obligation of Sprint Nextel under this Agreement, which if not performed by Sprint Nextel would result in the loss of the License, and which Licensee cannot have reasonably performed through alternative means, without a showing of irreparable harm beyond the concession of Licensee in this Subsection, or proof of specific monetary or other damages, but without waiving any right to money or other damages, and to obtain injunctive and other equitable relief in any court of competent jurisdiction to prevent the violation or threatened violation of such a Sprint Nextel obligation under this Agreement. Sprint Nextel acknowledges that the provisions of this Subsection constitute an essential element of this Agreement, without which this Agreement would not have been executed by Licensee.

(d)     **Applicable Law**.  The validity, construction and performance of this Agreement will be governed by and construed in accordance with the laws of the Commonwealth of **Pennsylvania**, without regard to the principles of conflict of laws.

(e)     **Waiver of Jury Trial**.  The Parties hereby irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any right that they may have to trial by jury of any claim or cause of action, or in any legal proceeding, directly or indirectly based upon or arising out of this Agreement or the transactions contemplated by this Agreement (whether based on contract, tort, or any other theory).  Each Party acknowledges that the provisions of this Subsection constitute an essential element of this Agreement, without which this Agreement would not have been executed by either Party.

(f)     **Attorneys' Fees**.  Except as may otherwise be specifically set forth in this Agreement, if any action is brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorneys' fees and costs, as determined by the court hearing the action.

(g)     **Severability**.  If any provision of this Agreement is found to be illegal, invalid or unenforceable, that provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired, unless continued enforcement of the provisions frustrates the intent of the Parties ("Frustration").  If the Parties, after negotiating in good faith, are unable to negotiate a modification of this Agreement to remedy a Frustration, this Agreement may be terminated by the Party that would suffer a materially adverse effect by the Frustration, by giving thirty (30) days prior written notice of such intent to terminate to the other Party.  The Parties will continue to negotiate in good faith during such thirty (30) day notice period to attempt to remedy the Frustration and if the Parties negotiate a remedy to the Frustration during such period, the notice provided to initiate such period will no longer be effective to terminate the Agreement.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

(h)    **No Waiver**.  No delay or failure by either Party in exercising any right under this Agreement, and no partial or single exercise of that right, will constitute a waiver of that or any other right.  Failure to enforce any right under this Agreement will not be deemed a waiver of future enforcement of that or any other right.

(i)    **No Third Party Beneficiaries**.  This Agreement is for the sole benefit of the Parties and their successors and permitted assigns and nothing herein expressed or implied will give or be constructed to give to any other person or entity any legal or equitable rights hereunder.

(j)    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but which collectively will constitute one and the same instrument. Original signatures transmitted by facsimile will be effective to create counterparts.

(k)    **Headings**.  The headings and captions used in this Agreement are for convenience only and are not to be considered in construing or interpreting this Agreement.

(l)    **Construction**.  Each Party has had the opportunity to engage legal counsel to review and negotiate the terms and provisions of this Agreement.  This Agreement will be interpreted in accordance with its terms and without any strict construction in favor of or against either Party based on draftsmanship of this Agreement or otherwise.

(m)    **Complete Agreement**.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter addressed, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, between the Parties or any of their affiliates regarding this subject matter  No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Parties.

(n)    **Cooperation**.  The Parties will take such further action and execute such further assurances, documents and certificates as either Party may reasonably request to effectuate the purposes of this Agreement.  From time to time, Licensee will execute and deliver to Sprint Nextel an estoppel certificate in a form reasonably requested by Sprint Nextel.  Upon the request of Sprint Nextel, Licensee will use reasonable efforts to obtain from the FCC such evidence as Sprint Nextel deems reasonably acceptable to establish that the License will not be subject to impairment, cancellation, revocation or suspension as a result of the Waiver.  Nothing contained in this Section shall be deemed to alter the termination right set forth in Section 11(d).  Furthermore, Sprint Nextel shall assume no liability whatsoever in connection with the Waiver Application.

22.    **INCLUDED SCHEDULES AND EXHIBITS**

The following schedules and exhibits are part of this Agreement:

(a)    Schedule A:  License and Channel Information; and

(b)    Schedule B:  Monthly Payment Schedule; and

(c)    Exhibit A:  Licensee and Electronic Filing Information Form.

(d)    Exhibit B:  Payee Setup Form

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

27

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

AGREED TO:

**Nextel Spectrum Acquisition Corp.**                    **Albright College**

By: _____                    By: _____

Name: **Robert Finch, VP**                        Name: Paul Gazzerro Jr.

Title: **Authorized Signatory**                    Title: _Vice President, Administration and  Finance_

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

SCHEDULE A

LICENSE(S)

| Call Sign | Channel(s) | Licensee | Location | # of Channels | Service Type | Grant Date | Expiration Date |
|-----------|-----------|----------|----------|---------------|--------------|------------|-----------------|
| WND475 | D1, D2, D3, D4, (including the associated guard band channels) | Albright College | Reading, Pennsylvania | 4 | ED | 8/24/1998 | 8/24/2008 |

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

SCHEDULE B

MONTHLY PAYMENT SCHEDULE

WND475  READING, PENNSYLVANIA

| Year | Monthly Payment |
|------|-----------------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

Received County of Berks Prothonotary's Office on 07/07/2021 3:45 PM Prothonotary Docket No. 21-04881

# Exhibit 3



HUNTON ANDREWS KURTH LLP
500 EAST MAIN STREET
SUITE 1301
NORFOLK, VIRGINIA 23510

TEL   757 • 640 • 5300
FAX   757 • 625 • 7720

ROBERT M. TATA
DIRECT DIAL: 757 • 640 • 5328
EMAIL: btata@HuntonAK.com

FILE NO.: 125071.1

January 7, 2022

**_Via Hand Delivery_**

Honorable Tina E. Sinnen
Clerk of Court
Virginia Beach Circuit Court
2425 Nimmo Parkway
Building 10 & 10B
Virginia Beach, VA  23456-9017

**TDI Acquisition Sub, LLC v. Albright College**
No. CL21-3972
Foreign Subpoena in a Civil Action
Pending in Berks County, Pennsylvania at C.A. No. 21-04481

Dear Ms. Sinnen:

Enclosed for filing is TDI Acquisition Sub LLC's Opposition to Academia Spectrum LLC's Motion to Quash and Objection to Foreign Subpoena *Duces Tecum*.  This matter is on the Court's Docket to be heard on January 24 at 4:00 p.m.   We have enclosed an extra copy of the materials that we would ask you to deliver to the judge hearing this matter.

Thank you for your assistance.

Sincerely,

Robert M. Tata

RMT:bjs
Enclosures

cc:     Wyatt B. Durette, Jr., Esq. *(via email and U.S. Mail)*

## IN THE CIRCUIT COURT OF VIRGINIA BEACH
## CIVIL DIVISION

| | |
|---|---|
| TDI ACQUISITION SUB, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>ALBRIGHT COLLEGE,<br><br>          Defendant. | **FOREIGN SUBPOENA IN A CIVIL ACTION**<br><br>No. CL21-3972<br><br>C.A. No. 21-04481<br>(pending in Berks County, Pennsylvania) |

### TDI ACQUISITION SUB LLC'S OPPOSITION TO ACADEMIA SPECTRUM LLC'S MOTION TO QUASH AND OBJECTION TO FOREIGN SUBPOENA *DUCES TECUM*

The motion to quash filed by Academia Spectrum LLC ("Academia") is an attempt by a Virginia LLC to avoid responding to a subpoena duces tecum (the "Subpoena") in Virginia, based principally on the extraordinary argument that this Court lacks the power to enforce the subpoena because Academia has chosen to keep its documents outside Virginia. Academia, however, has waived this argument—and all of the others it now asserts—by (i) failing to serve legally cognizable objections to TDI Acquisition Sub LLC ("TDI")'s subpoena; and (ii) failing to timely file its motion to quash. Even setting aside this waiver, Academia's challenge fails on its merits. This Court unquestionably can enforce a subpoena served on a Virginia resident regardless of the location of its documents. Indeed, Academia's counsel lost this precise argument just weeks ago in Delaware on behalf of another third party that was subpoenaed in the underlying lawsuit. *See* Ex. 1 (Tr.) at 19-21. Virginia law compels the same result here. Accordingly, the motion to quash should be denied and Academia should be ordered to produce documents in fourteen days, consistent with the attached proposed Order.

1.    Initially, Academia waived all of its current arguments by serving only untimely, boilerplate objections and failing to timely move to quash the Subpoena. TDI served the Subpoena on Academia on September 8, 2021, in the course of discovery in *TDI Acquisition Sub LLC v. Albright College*, C.A. No. 21-04481 (Ct. Common Pleas, Berks Cty.) ("the Pennsylvania action"). In response, one day after the subpoena's return date, Academia served purely boilerplate objections that could have been pulled from a drawer and served in any case about any subject matter in any court in the United States. Those objections are legally insufficient as a matter of law. To date, Academia has ***never*** served legally cognizable objections to the Subpoena. Academia then refused to engage in a meaningful meet and confer, and eventually, two and a half months after the Subpoena was served, filed the instant motion to quash. This course of conduct constitutes a clear waiver of each of the arguments in its motion. *See* Va. R. Sup. Ct. 4:9A (motion to quash must be "promptly made"); *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 442 (E.D. Va. 2018) (motion to quash filed more than one month after return date was untimely).

2.    Even setting aside its waiver, Academia's arguments fail on their merits. Academia principally argues that this Court cannot enforce the Subpoena because, although Academia is a Virginia LLC, it keeps its documents outside Virginia. That is absurd. A Virginia court can enforce a subpoena served on a Virginia LLC for all documents in that LLC's "possession, custody, or control," regardless of their location. Va. Sup Ct. R. 4:9A; Va. Code § 8.01-412.9; *see also* Fed. R. Civ. P. 45. As set forth below, any contrary result would not only contravene clear Virginia law, but would be dangerous and practically infeasible. Academia cites nothing to the contrary. Instead, it cites caselaw addressing only ***nonresident*** LLCs, which is inapplicable here.

3.    A Delaware court recently rejected this exact argument from Academia's counsel with respect to a subpoena served by TDI in the underlying litigation on WCO Spectrum LLC

("WCO"). WCO, a Delaware LLC, argued that the Delaware court could not enforce that subpoena because WCO's documents were not located in Delaware. Ex. 2 ¶¶ 29-36 (WCO Mot. to Quash, excluding exhibits). The court disagreed and held that, as a Delaware resident, WCO was subject to the Delaware court's subpoena power, regardless of the location of its documents. *See* Ex. 1 (Tr.) at 19-20 ("I do think that [] TDI has the authority to subpoena WCO in Delaware for these documents."); Ex. 3 (Order).

4.       Academia also re-hashes a variety of WCO's other arguments, including that there is no case or controversy in the Pennsylvania action; that TDI is using discovery to seek ***WCO's*** confidential information; and that the Subpoena is unduly burdensome. The Delaware court rejected each of these arguments as well, and they have not improved with repetition. The Delaware court instead ordered WCO to participate in a substantive meet and confer with TDI regarding any burden or scope objections, observing that the "information concerning WCO and whether it is, in fact, a [C]ompeting [E]ntity in the underlying case is important." Ex. 1 (Tr.) at 20.

5.       For these reasons, Academia's motion to quash should be denied, and Academia should be required to comply with TDI's subpoena.

## BACKGROUND

**A.    The Underlying Litigation[1]**

6.       Albright College ("Albright"), the defendant in the Pennsylvania action, has long owned a Federal Communications Commission ("FCC") license to use four channels of radio frequency spectrum in the Reading, Pennsylvania area ("the License"). The channels are part of the Educational Broadband Service ("EBS") spectrum band, which the FCC historically has

---

[1] TDI's First Amended Complaint for Breach of Contract and Declaratory Judgment, attached as Exhibit B to Academia's motion, includes a more fulsome description of the License and the Lease Agreement. *See* Mot. to Quash Ex. B ¶¶ 15-29.

licensed only to educational institutions, though EBS license holders were permitted to lease the right to use the channels covered by their licenses to commercial entities. As of an April 2020 FCC rule change, however, EBS license holders may now sell their licenses directly to non-educational entities.

7.     On March 2, 2007, Albright leased the right to use the channels covered by the License to TDI's predecessor in interest ("the Lease Agreement"). *See* Ex. 4.[2] TDI's predecessor later assigned all rights and obligations under the Lease Agreement to TDI. *See* Ex. 5. TDI's parent company, T-Mobile US, Inc., uses the channels as part of its nationwide communications and data network.

8.     The Lease Agreement affords TDI certain rights in the event Albright receives an offer to purchase the License from a third party. This includes—most importantly for present purposes—a prohibition on Albright selling the License to a "Competing Entity," which is defined in the Lease Agreement as any of the following:

> [A]ny party that (1) offers, provides or delivers a commercially available telecommunications service using EBS or BRS spectrum within the United States of America (a "Competing Service"), (2) owns (except a less than one percent (1%) interest in a publicly traded company) and interest in any entity which provides a Competing Service, [or] (3) has granted, or is affiliated with a party that has granted, to any provider of a Competing Service a global or overarching agreement for the right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires.

Ex. 4 § 10(c). These provisions protect TDI in the event that any third party makes an offer to purchase the License.

---

[2]     Small portions of the Lease Agreement that include trade secret information are redacted pursuant to a sealing order entered by the Pennsylvania court.

9.      On April 30, 2021, WCO sent Albright a non-binding term sheet in which WCO proposed to purchase the License.  Albright then sent TDI a Right of First Refusal ("ROFR") notice, which is to be sent under the Lease Agreement only if Albright has "determin[ed] to accept a *bona fide* third party offer." *Id.* § 3(b).  After Albright sent the ROFR notice, TDI sought certain information from Albright and WCO to which TDI is entitled under the Lease Agreement, including information related to whether WCO qualifies as a "Competing Entity."  Neither Albright nor WCO provided the required information, which required TDI to bring the Pennsylvania action to ensure that its contractual rights were protected.

**B.      Procedural History of the Academia Subpoena**

10.      After filing its First Amended Complaint, and pursuant to Pennsylvania law authorizing pre-answer discovery, TDI served a small number of third-party subpoenas—including the one at issue here—seeking documents concerning the "Competing Entity" issue and other contractual requirements for the proposed sale of the License.  *See* Mot. to Quash, Ex A.  TDI served one of these subpoenas on Academia because it provided consulting services to WCO in connection with the offer to purchase the License from Albright.  *See id.* ¶¶ 25-32 (conceding Academia possesses documents responsive to TDI's subpoena).  Because WCO is the entity that offered to purchase the License, the subpoenas sought information relevant to TDI's contractual rights as they pertain to WCO.  *See id.* Ex. A.  Thus, for example, the Subpoena requests documents and communications concerning WCO's "offering, provision, or delivery of any telecommunications service in the United States," as well as WCO's "actual, proposed, planned, or contemplated acquisition of any EBS Spectrum License or BRS Spectrum License."  *Id.* (Request Nos. 9, 12).

5

11.     TDI meticulously followed each and every legal requirement for issuance of the Subpoena.  On July 22, 2021, TDI served Albright with a Notice of Intent to Serve Subpoena to Produce Documents or Things for Discovery Pursuant to Pennsylvania Rule 4009.22, which attached a copy of the Subpoena.  *See* Ex. 6.  That notice triggered a 20-day period during which Albright had the opportunity to lodge any procedural or substantive objection to the subpoena.  *See* 231 Pa. Code § 4009.21.  Albright did not do so, and, on August 13, 2021, TDI filed the necessary Certificate of Prerequisite to Service of Subpoena to Produce Documents or Things for Discovery Pursuant to Pennsylvania Rule 4009.22.  *See* Ex. 7.  TDI then domesticated the Subpoena in Virginia, in accordance with Virginia's version of the Uniform Interstate Discovery and Deposition Act.  *See* Va. Code § 8.01-412.08 *et seq.*  This Court issued the Subpoena on August 23, 2021.  *See* Mot. to Quash, Ex. A.

12.     On September, 8, 2021, pursuant to Virginia law authorizing service on a Virginia limited liability company through its registered agent, TDI served the subpoena on Academia via its registered in-state agent, Registered Agents, Inc., of Virginia Beach, Virginia.  *See* Ex. 8.

13.     Under Virginia law, objections to a subpoena or a motion to quash must be made "promptly," Va. R. Sup. Ct. 4:9A, i.e., within a "reasonable" period of time.  *Prince v. Ponderosa Steakhouse, Inc.*, 40 Va. Cir. 466, 1996 WL 33469721, at *4 (1996).  On September 30, 2021, Academia sent TDI a list of general, boilerplate objections.  *See* Ex. 9.  These objections did not address a single one of TDI's specific requests and, except for the case caption, literally could have been pulled from a drawer and served in any litigation about any subject matter anywhere in the United States.  As discussed *infra*, such boilerplate objections have no legal effect or significance.  *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-CV-00023, 2013 WL 3660562, at *2 (W.D.

Va. July 11, 2013) (boilerplate objections generally result in waiver). To date, Academia has ***never*** filed legally cognizable objections to the subpoena.

14.     TDI scheduled a meet and confer call with Academia and WCO—which are represented by the same counsel—for October 5, 2021. When that discussion occurred, however, WCO and Academia responded to TDI's good faith efforts to discuss the substance of the subpoena with stonewalling. *See* Ex. 10 (Hurley Decl.) ¶ 5. They baselessly accused TDI of litigating in bad faith and abusing the discovery process; refused to answer whether WCO or Academia possessed responsive documents; refused to answer whether WCO or Academia intended to produce any documents; and refused otherwise to engage in a good faith meet and confer. *See id.* ¶¶ 5-7.

15.     On October 8, 2021, Academia and WCO sent a follow-up letter to TDI which repeated many of the assertions from the meet and confer call and previewed many of the arguments in Academia's motion to quash. *See* Ex. 11. The letter did not include any objections to TDI's specific document requests. *See id.*

16.     On October 14, 2021, TDI responded by re-asserting that Academia had waived its objections to the Subpoena through its ongoing failure to provide meaningful written objections. *See* Ex. 12. TDI nonetheless offered to participate in a meaningful meet and confer process with respect to the contours and timing of Academia's production. *See id.*

17.     On October 21, 2021, counsel for WCO and Academia communicated to TDI that further meet and confer efforts would not be productive. *See* Ex. 13.

18.     Also on October 21, 2021, WCO filed a motion to quash TDI's subpoena in Delaware Superior Court. *See* Ex. 2.

7

19.    On October 27, 2021, TDI followed up with counsel for Academia to confirm that Academia was taking the same position as WCO. *See* Ex. 14. Academia then repeated the same objections as WCO and wrote that it did not wish to pursue further meet and confer efforts. *See id.* Academia then filed its motion to quash on November 29, 2021. Its motion largely mirrors WCO's now-rejected arguments before the Delaware court. *Compare* Ex. 2 *with* Mot. to Quash.

20.    On December 16, 2021, the Delaware Superior Court held a hearing on WCO's motion to quash. *See* Docket, Case No. K21M-08-007. The court denied the motion from the bench.[3] It rejected WCO's argument that the Delaware court lacked the power to enforce a subpoena issued to a Delaware resident (WCO is a Delaware LLC) because the requested documents were located elsewhere. *See* Ex. 1 (Tr.) at 19-20. The court also emphasized that the documents TDI requested in its subpoena "concerning WCO and whether it is, in fact, a [C]ompeting [E]ntity in the underlying case [are] important" in the Pennsylvania action. *See id.* at 20. Against that background, the court ordered the parties to meet and confer with respect to TDI's subpoena. *See id.* at 21; Ex. 3.[4]

## ARGUMENT

### A.    Academia Waived Its Objections.

21.    Academia has waived its current arguments because (i) it has ***never*** served any specific, legally sufficient objections; and (ii) it waited until almost three months following service of the Subpoena to file its motion to quash.

---

[3] Although WCO also served boilerplate objections, the Delaware court did not find a waiver because WCO's registered agent failed to successfully forward the subpoena to WCO. *See* Ex. 1 at 18-19. Here, in contrast, nothing impeded Academia from timely responding.

[4] On January 3, 2022, WCO moved for reconsideration of the Delaware court's order. The motion re-hashes WCO's original arguments and includes no new cited authorities.

22.    In Virginia, a party resisting a subpoena has the burden of objecting to the specific

requests with particularity. *See Goodwyn v. Bowden*, 1994 WL 16035234 (Va. Cir. Ct. 1994)

("[T]he burden is on the person objecting to discovery to show that discovery should not be

allowed." (citing *Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992)); *Hager v. Graham*, 267

F.R.D. 486, 492 (N.D. W.Va. Apr. 28, 2010) (it is "the burden of the responding party . . . to

justify objections to discovery"). Serving "[g]eneralized, boilerplate objections . . . often results

in the waiver of all specific objections." *Hanwha Azdel*, 2013 WL 3660562, at *2 (enforcing

waiver where "there [wa]s no indication that [subpoena recipient] took any steps to identify

specific objections to the production of particular documents in its possession") (citing *Paulino v.

Dollar Gen. Corp.,* 3:12–CV–75, 2013 WL 1773892, at *12 (N.D. W.Va. Apr. 25, 2013)

(collecting cases)). This is the rule because general objections "reach so broadly that the requesting

party cannot determine what is being answered or responded to and what is not" and "the generality

obscures what the general objection is foreclosing from discovery." *Spendlove v. RapidCourt,

LLC*, No. 3:18-CV-856, 2019 WL 7143664, at *3 (E.D. Va. Dec. 23, 2019) (striking so-called

"common specific objections" as "general objections . . . that are all improper").[5]

23.    Here, Academia served (one day late) only general, boilerplate objections, which

did not reference any of TDI's document requests, and certainly could not form the basis for a

meaningful meet and confer. *See* Ex. 9. Academia even treated its own objections as boilerplate.

---

[5] *See also, e.g., Steed v. EverHome Mortg. Co.*, 308 Fed. Appx. 364, 371 (11th Cir. 2009)
("[B]oilerplate objections may border on a frivolous response to discovery requests."); *Leibovitz
v. City of New York*, No. 15CIV546LGSHBP, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017)
("General boilerplate objections are inappropriate and unpersuasive."); *Keycorp v. Holland*, No.
3:16-cv-1948-D, 2016 WL 6277813 at *11 (N.D. Tex. Oct. 26, 2016) ("[B]oilerplate objections
are improper and result in waiver of the unsupported objections."); *Adelman v. Boy Scouts of Am.*,
276 F.R.D. 681, 688 (S.D. Fla. 2011) ("[B]oilerplate objections [are] legally inadequate or
meaningless."); *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 159 (S.D. Tex.
2009) ("Boilerplate objections are not acceptable.").

As noted, counsel for Academia also represents WCO. Academia's and WCO's objections are verbatim identical except for substituting Academia's name for WCO's. *Compare* Ex. 9 *with* Ex. 15.

24.     Moreover, any motion to quash must be "promptly made." Va. R. Sup. Ct. 4:9A. Virginia courts have construed this to mean the motion must be filed within a "reasonable" period of time. *See Prince*, 1996 WL 33469721, at *4 (applying identical language in prior version of Rule 4:9 and noting that 21 days is a reasonable period in which to respond); *Retractable Techs., Inc. v. Int'l Healthcare Worker Safety Ctr.,* 2011 WL 3555848 at *4 (W.D. Va. Aug. 11, 2011) ("Although the term 'timely' [in what is now Federal Rule of Civil Procedure 45(d)(3)(A)] is not defined, four and a half months after the return date of the subpoena is clearly not timely."). Here, TDI served the Subpoena on September 8, 2021. Academia did not file the motion to quash until November 29, 2021, nearly three months after service, two months after serving its boilerplate objections, and six weeks after refusing to substantively meet and confer with TDI. By any measure, that motion was untimely. *See Big Picture Loans*, 303 F. Supp. 3d at 442 (motion to quash filed more than one month after return date denied as untimely).

25.     Academia's failure to serve legally cognizable objections to the Subpoena and to file a timely motion to quash constitute a waiver of any objections. Nonetheless—and without waiving any of its rights—TDI was willing to meet and confer in an effort to try to avoid litigation. Indeed, Academia was ***required*** to meet and confer in good faith and provide the Court with a certification to that effect. *See* Va. R. Sup. Ct. 4:9A(c)(4) ("A motion under this Rule must be accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."). Academia preferred to litigate. And it never submitted the required certification.

10

26.     All of the arguments below are in addition to, and without relinquishing, the fact

that Academia has waived all of its current objections, both substantive and procedural.

**B.     This Court Is Clearly Empowered to Enforce the Subpoena Against Academia, a
Virginia Resident.**

27.     Setting aside its waiver, Academia asserts an extraordinary argument—that "the

courts of Virginia lack any power to enforce the Subpoena" against Academia, a Virginia LLC,

because it has chosen to locate its documents outside of Virginia.  Mot. to Quash ¶ 13.  That

argument is directly contrary to Virginia law.

28.     Academia is a Virginia resident, as it is organized and exists under Virginia law.

Ex. 16.  Accordingly, the only thing that matters is whether Academia is in "possession, custody,

or control" of its own documents.  *See* Va. Sup. Ct. R. 4:9A(b) ("[A] subpoena duces tecum will

command the person to whom it is directed . . . to produce the documents [or] electronically stored

information . . . which are in the ***possession, custody, or control*** of such person.") (emphasis

added); Va. Code § 8.01-412.9 (same); *Wilson v. Norfolk & Portsmouth Belt Line R. Co.*, 69 Va.

Cir. 153, 2005 WL 2650931, at *19 (2005) (noting same standard); *Prince*, 1996 WL 33469721,

at *6 (same); *In re Flag Telecom Holdings, Ltd. Sec.s Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006)

("The test for the production of documents is control, not location." (quoting *Marc Rich & Co.,*

*A.G. v. United States,* 707 F.2d 663, 667 (2d Cir. 1983))).  Here, Academia clearly controls its own

corporate documents; it does not suggest otherwise.  *See* Mot. to Quash, Ex. C.[6]

---

[6]  A corporation is presumed to have control of its own documents.  *See NML Capital Ltd. v.
Republic of Argentina*, 2014 WL 3898021, *10 (D. Nev. 2014); *Tiffany (NJ) LLC v. Qi Andrew*,
276 F.R.D. 143, 148 (S.D.N.Y. 2011); *Flannigan v. Vulcan Power Grp., LLC*, No. 09-CV-8473
(LAP), 2019 WL 3242531, at *10 (S.D.N.Y. July 3, 2019) ("The documents and records that
a corporation requires in the normal course of its business are presumed to be in its control . . . .
Any other rule would allow corporations to improperly evade discovery." (quoting *Cooper Indus.,
Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 n.2 (S.D.N.Y. 1984)).

29.    The Delaware court rejected WCO's identical argument under Delaware law. That court held that a Delaware LLC is subject to the subpoena power of the Delaware courts, regardless of the location of the documents within the Delaware LLC's possession, custody, or control. *See* Ex. 1 (Tr.) at 19-20. The court ruled that it did not "think [WCO's] arguments hold water." *Id.* at 19. It specifically noted that WCO cited no Delaware authority for its position, and the fact that "there is nothing from the Court of Chancery, or the Superior Court, or anywhere else in Delaware that holds what [WCO] is arguing . . . screams to me that [WCO's position] is not the case." *Id.* at 19-20. The Delaware court concluded that "TDI has the authority to subpoena WCO in Delaware for these documents." *Id.* at 19.

30.    Similarly, here, none of the cases cited by Academia support its argument. Indeed, not a single one holds that a Virginia LLC is not subject to the subpoena power of Virginia courts. Academia principally relies on *Yelp, Inc. v. Hadeed Carpet Cleaning, Inc.*, 770 S.E.2d 440 (Va. 2015). But that case concerns a subpoena issued to a ***nonresident***. In that decision, the Virginia Supreme Court ruled that Virginia law did "not expressly authorize[] Virginia courts to compel ***nonresident*** non-parties to produce documents located outside of Virginia." *Id.* at 446 (emphasis added). The Court thus held that a subpoena served on Yelp's registered agent in Virginia was invalid because Yelp was a foreign corporation incorporated in Delaware and headquartered in California. *See id.* at 430, 445-46. That decision only addresses Virginia courts' powers over ***foreign*** corporations, not ***domestic*** ones like Academia. *See id.* at 432-33.

31.    The other cases cited in Academia's brief likewise concern nonresident corporations and apply other states' laws, and thus do not support Academia. *See In re Nat'l Contract Poultry Growers' Ass'n*, 771 So. 2d 466, 469 (Ala. 2000) (Alabama court lacked authority to issue a subpoena to an Arkansas corporation with a principal place of business in

12

Louisiana); *Phillips Petroleum Co. v. OKC Ltd. P'ship*, 634 So. 2d 1186, 1187 (La. 1994) (subpoena invalid where issued by a Louisiana court and served on the Louisiana registered agent of a Texas corporation with its principal place of business in Texas); *Ulloa v. CMI, Inc.*, 133 So. 3d 914, 916, 920 (Fla. 2013) (subpoena served on the Florida registered agent of a Kentucky corporation with its principal place of business in Kentucky was invalid). To the contrary, *Phillips Petroleum* acknowledges that a third-party "*is* subject to the subpoena power of the state of its domicile or residence." 634 So. 2d at 1189 n.7 (emphasis added).

32.    Academia's position also would create both dangerous and impractical results. There undoubtedly are large numbers of documents that, for a variety of reasons, Virginia business entities would prefer never to be subject to subpoena. If Virginia courts could only order the production of documents located in Virginia, then Virginia LLCs and corporations would simply park their documents in other states—or, more likely, in an overseas jurisdiction that is not amenable to service of process from the United States—to render their documents effectively immune from subpoena, even though the companies would retain possession, custody, and control of the documents. Moreover, from a practical perspective, it is hardly uncommon for a subpoena to seek documents that are dispersed among offices or locations in multiple states. By Academia's rationale, in that situation the party seeking those documents would be required to issue as many subpoenas as there were states hosting the responsive documents (assuming such information somehow could be divined). That is not and cannot be the law. Instead, there must be a place that a litigant can come to subpoena all of a third party's documents, and that is the state in which the third party is formed and organized. Commenting on these very points, the Delaware court noted that TDI "had some very good reasons as to how [WCO's position] would be entirely impractical

13

in a number of different circumstances." Ex. 1 (Tr.) at 19; *see also id.* at 10-14 (counsel for TDI presenting same arguments set forth in this paragraph).

33.    Simply put, Academia has taken advantage of the benefits and privileges of the Virginia Limited Liability Company Act and the myriad protections it affords.    It cannot simultaneously avoid the relatively minimal obligations that Virginia law imposes.

34.    This Court clearly is empowered to order Academia to produce the requested documents, and it should reject Academia's argument to the contrary, just as the Delaware court did in rejecting WCO's identical argument.

## C.    Academia's Merits Arguments About the Pennsylvania Action Are Improper.

35.    Academia also claims the Subpoena should be quashed because there is no "[u]nderlying [c]ase in [c]ontroversy" in the Pennsylvania action.    It asserts that, accepting as true TDI's argument in Pennsylvania that WCO never made a "*bona fide* offer" to Albright due to WCO's status as a "Competing Entity," then there is no active controversy. Mot. to Quash ¶¶ 21-24. Initially, this is a strongly disputed argument about the merits of the Pennsylvania action—to which Academia is not a party—and as such could only be properly raised in that action.    It is beyond the remit of this Court to adjudicate contested aspects of a case pending in another court.

36.    In any event, this argument is silly.    The question of whether WCO is a "Competing Entity" *is* the issue in controversy in the Pennsylvania action.    Although Academia cites TDI's position that Albright College has not carried its burden of establishing that WCO is not a Competing Entity, it neglects to mention that Albright takes the opposite position.    After WCO sent its offer to Albright, Albright sent TDI a notice claiming that WCO's offer had triggered TDI's ROFR under the Lease Agreement.    Under that agreement, this ROFR notice would be valid only

14

if WCO's offer *was bona fide*. *See* Ex. 4 § 3(b) (ROFR triggered by "Licensee's determination to accept a *bona fide* third party offer").

37.    Notably, Albright did file preliminary objections (Pennsylvania's version of a demurrer) in response to TDI's initial complaint. But those objections merely asserted a variety of technical pleading issues under Pennsylvania law; they did *not* assert that the case was moot. Although WCO made the same "mootness" argument in Delaware, it never asserted that it was not pursuing its offer to Albright. And Academia's papers in this case studiously avoid making any such argument.

**D.    Academia Lacks Standing to Assert WCO's Interests, and the Subpoena Is a Proper and Routine Method of Discovery.**

38.    Academia next complains that the "Subpoena seeks highly sensitive confidential business information of Non-Party *WCO* through Non-Party Academia, intended to provide TDI with an unfair business advantage." Mot. to Quash ¶ 25 (emphasis added). This argument fails for multiple reasons.

39.    First, Academia does not have standing to object to the Subpoena based on any alleged confidentiality interest of WCO. "Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 239 (E.D. Va. 2012) (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)). Academia therefore cannot assert *WCO's* business interests as a reason to quash the Subpoena because it has "no personal right or privilege in the information sought." *Id.* at 239.

40.    Even if Academia did have standing to make such an argument, WCO has already made it before the Delaware court, which ordered the parties to meet and confer about TDI's specific requests. *See* Ex. 3. Academia's renewal of this argument here is an improper collateral

15

attack on the Delaware court's order. Nor does Academia even direct this objection to any particular document request. It would be absurd to credit an objection to the ***entire subpoena*** based on the alleged sensitivity of the materials requested (even assuming that mere sensitivity was a basis for withholding discovery, which it is not). For example, Academia does not begin to suggest how its communications with Albright College (Request No. 1) or "All Documents and Communications concerning the Albright License" (Request No. 3) constitute WCO's sensitive business information. Nonetheless, to the extent Academia remains concerned about the alleged confidentiality of any of the materials sought by the Subpoena, TDI is willing to discuss the possibility of entering into an appropriate confidentiality order.

41.    Finally, TDI is not seeking "an unfair business advantage." Mot. to Quash ¶ 25. TDI's rights under the "Competing Entity" provision of the Lease Agreement apply to ***any*** entity that makes an offer to purchase the License. Here, it was WCO that chose to make such an offer, so TDI's subpoenas seek the information needed to assess whether WCO is a "Competing Entity." *See* Mot. to Quash, Ex. A; Ex. 1 (Tr.) at 20 (Delaware court recognizing that a key aspect of the case is whether WCO is a Competing Entity). It is not as if TDI was litigating some unrelated case and took the opportunity to subpoena a business competitor. Academia's implications to the contrary are simply incorrect.

**E.    Academia's Other Arguments Are Meritless.**

42.    Academia makes a number of additional arguments, each of which is meritless.

43.    Academia alleges—without support—that TDI "should at least be required to first seek the documents from Albright or another more convenient source before burdening Non-Party Academia." Mot. to Quash ¶ 34. In fact, TDI served comprehensive document requests on Albright, *see* Ex. 17, and Albright responded that it had provided TDI with all of the responsive

16

documents in its possession, of which there were few, *see* Ex. 10 (Hurley Decl.) ¶ 8. And TDI's requests to Academia seek documents that likely would not be in the possession of Albright. *See* Mot. to Quash, Ex. A.

44.     Academia also complains that the Subpoena's requests do not "contain any temporal limitation." Mot. to Quash ¶ 35b.[7] But it does not identify any specific request that is overly broad in temporal scope, nor does it make any effort to quantify the burden posed by any request. *Hanwha Azdel*, 2013 WL 3660562, at *2 (lack of "specific objections to the production of particular documents" results in waiver). In any event, claims of overbreadth and undue burden are precisely why the meet and confer process exists. If Academia believes there are reasonable ways to narrow the scope of certain requests, TDI is willing—again, without waiving any of its rights—to discuss those issues. To date, however, Academia has refused to have that conversation. *See* Ex. 10 (Hurley Decl.) ¶¶ 5-7.

45.     Academia then alleges that some unspecified requests in the Subpoena "require legal conclusions, such as interpreting the terms of" the Lease Agreement. *See* Mot. to Quash ¶ 35d. That is wrong. Academia does not make this assertion about any particular request, and a cursory review of the requests show they all concern factual matters that do not depend on any supposed "legal conclusions." As an example, WCO's "actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications services in the United States"—which bears directly on whether WCO qualifies as a "Competing Entity" under the Lease Agreement—requires no legal analysis. *See* Mot. to Quash, Ex. A (Request No. 9). Another

---

[7] Academia also asserts that the requests "seek extensive documents that are subject to attorney-client" or work product privilege. Mot. to Quash ¶ 35(c). If it had not waived its objections, Academia could withhold any privileged documents and provide TDI with a privilege log identifying them, consistent with routine civil discovery practice. TDI then would have been free to challenge any privilege assertions as appropriate.

request seeks all documents and communications concerning WCO's "actual, proposed, planned, or contemplated acquisition of . . . any interest in any entity which offers, provides, or delivers any telecommunications service within the United States." *See id.* (Request No. 10). These likewise are purely factual matters that require no interpretation of the Lease Agreement.

46.     Next, Academia's suggestion that Pennsylvania does not permit discovery at this stage of the proceedings, *see* Mot. to Quash ¶ 15, is simply false. *See* Pa. R. Civ. P. 4009.11 (authorizing document requests after service of complaint); *Pyeritz v. Com.*, 32 A.3d 687, 694 (Pa. 2011) ("[P]arties to suits have an avenue to obtain physical evidence from non-parties, even pre-complaint, under the [Pennsylvania] Rules of Civil Procedure."). The Delaware court recognized as much. *See* Ex. 1 (Tr.) at 20 ("Pennsylvania has pretty early discovery" and TDI "should be entitled to get that matter, that information, at this point in time.").

47.     Finally, Academia's allegation that it "made a good faith effort to resolve this discovery through engaging in a meet-and-confer dialogue" is—at best—disingenuous. Mot. to Quash ¶ 6. At the single "meet and confer," Academia refused to engage with any of the particular document requests. *See* Ex. 10 (Hurley Decl.) ¶ 5. Instead, it baselessly accused TDI of discovery misconduct and made sweeping statements about the merits of the underlying case. *See* Ex. *id.* ¶ 6. Its refusal to engage with TDI regarding the discovery requests directed to Academia was a clear violation of the Virginia rules governing subpoena compliance, which explicitly require a good faith meet and confer "in an effort to resolve the discovery" requests before filing a motion to quash. *See* Va. Sup. Ct. R. 9:A(c)(4). It is now more than three months from the date of service and Academia ***still*** has not served any legally cognizable objections and has refused to meaningfully meet and confer about the Subpoena. It is difficult to credit Academia's claim to be acting in good faith under these circumstances.

18

## CONCLUSION

48.    For all of these reasons, the Court should enter the attached proposed order

denying Academia's Motion to Quash and Objection to Foreign Subpoena *Duces Tecum*.


Respectfully Submitted,

By: _____

HUNTON ANDREWS KURTH LLP
Robert M. Tata (VA Bar No. 30101)
500 East Main St., Suite 1301
Norfolk, Virginia 23510
Telephone: (757) 640-5328
Facsimile: (757) 625-7720
btata@huntonak.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown (VA Bar No. 48134)
R. Kennon Poteat, III (VA Bar No. 73324)
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

* application for admission *pro hac vice*
forthcoming

*Attorneys for TDI Acquisition Sub LLC*

Dated:  January 7, 2022

## CERTIFICATE OF SERVICE

I, Robert M. Tata, hereby certify that on January 7, 2021, I caused a true and correct copy of the foregoing Plaintiff TDI Acquisition Sub LLC's Opposition to Academia Spectrum's Motion to Quash and Objection to Foreign Subpoena to be served upon the following parties via email and first class mail:

Wyatt B, Durette, Jr.
Durrette, Arkema, Gerson & Gill PC
Bank of America Center
1111 E. Main Street, 16th Floor
Richmond, VA 23219

Robert M. Tata

Dated:  January 7, 2021

**IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH**

TDI ACQUISITION SUB LLC,

          Plaintiff,

   vs.

ALBRIGHT COLLEGE,

          Defendant.

Case No. CL21-3972

## ORDER DENYING NON-PARTY ACADEMIA SPECTRUM, LLC'S MOTION TO QUASH

This matter is before the Court on non-party Academia Spectrum LLC's ("Academia") Motion to Quash and Objection to Foreign Subpoena *Duces Tecum*. Having considered the Motion to Quash, the opposition of TDI Acquisition Sub LLC ("TDI"), briefs submitted by the parties to this motion, and oral argument, the Court hereby DENIES the Motion to Quash.

    Academia shall comply with the subpoena within fourteen days of the date of this Order. *See* Mot. to Quash, Ex. A. The award of attorneys' fees and costs is reserved.

    IT IS SO ORDERED ADJUDGED AND DECREED.

_____
Judge

Dated: _____

**WE ASK FOR THIS:**

Robert M. Tata (VSB #30101)
**HUNTON ANDREWS KURTH LLP**
500 E. Main Street, Suite 1301
Norfolk, VA  23510
Telephone:  (757) 640-5328
btata@huntonAK.com

Kenneth J. Brown (VSB #48134)
R. Kennon Poteat (VSB #73324)
Denis R. Hurley
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*Counsel for Plaintiff TDI Acquisition Sub LLC*

**SEEN AND OBJECTED TO:**


_____

Wyatt B. Durrette, Jr. (VSB #04719)
**DURRETTE, ARKEMA, GERSON & GILL, PC**
1111 E. Main Street, 16th Floor
Richmond, VA   23219
Telephone:  (804) 775-6900
Facsimile:  (804) 775-6911
wdurrette@dagglaw.com

Maurice R. Mitts
Michael J. Duffy
**Mitts Law, LLC**
1822 Spruce Street
Philadelphia, PA   19103
Telephone:  (215) 866-0110
Facsimile:  (215) 866-0111
mmitts@mittslaw.com
mduffy@mittslaw.com

*Counsel for Academia Spectrum, LLC*

# Exhibit 1

1     IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

2

3  TDI ACQUISITION SUB, LLC,    )
                             )

4          Plaintiff,    ) K21M-08-007 (JJC)
       v.               )

5                       ) C.A. No. 21-04481
  ALBRIGHT COLLEGE,        )

6                       )
          Defendant.    )

7

8                * * * * *

9  BEFORE:  HON. ANDREA M. FREUD, Commissioner

10              * * * * *

11    **Motion to Quash or Modify Out-of-State Subpoena**
              **December 16, 2021**

12  APPEARANCES:

13           PETER B. LADIG, ESQUIRE
           KENNETH J. BROWN, ESQUIRE, pro hac vice

14           DENIS R. HURLEY, ESQUIRE, pro hac vice
           on behalf of the Plaintiff

15

16           RYAN M. ERNST, ESQUIRE
           MICHAEL J. DUFFY, ESQUIRE, pro hac vice

17           on behalf of Third-Party WCO Spectrum LLC

18

19           Michelle D. Webb, RPR
             Court Reporter

20

21

22

23

1    12-16-2021
     2:00 p.m.
2    Chambers via Zoom

3         THE COURT:  Good afternoon, Mr. Ernst. And the

4    other two people on the call are the clerk and my bailiff

5    who are recording this.  Is there anyone else in this that

6    we need to have on?

7         MR. ERNST:  Not from our side, Your Honor.

8         MR. BROWN:  Not for us.

9         THE COURT:  Then whoever wants to go and start

10   with the motion to quash can proceed.

11        MR. ERNST:  Good afternoon, Your Honor.  For this

12   current introduction, I'm Ryan Ernst from Bielli & Klauder

13   on behalf of the movant, WCO Spectrum, LLC.  Also, in the

14   hearing today is Michael Duffy from the Mitts Law, LLC, law

15   firm, and he was admitted pro hac vice and will be

16   addressing the Court today.

17        THE COURT:  Thank you, Mr. Ernst.

18        All right.  Mr. Duffy, if you want to get started.

19        MR. DUFFY:  Sure.  Thank you, Your Honor.  So as

20   stated in our motion, the primary defect in this subpoena,

21   and there are many, but I won't get into everything that's

22   said in the papers, it speaks for itself.  The primary

23   defect is the lack of subpoena power by this Court because

1    there is no documents in Delaware, and there are no

2    personnel in Delaware WCO.  And we provide authoritative

3    case law on this point, and that is the Hallamore case that

4    it's -- directly what's happening here, WCO, is a company

5    that is registered here in Delaware, but it has no

6    personnel, it has no documents, and there is nothing for a

7    Delaware Court to be able to enforce its subpoena power to

8    order it to be produced or to go get something to produce.

9    And their opposition, TDI, which is -- it's T Mobile

10   effectively.  It stated that there is no distinction made

11   between personal and subject matter jurisdiction, and that's

12   because that's not what's at issue here at all.

13           And in some of the cases that are cited in our

14   motion and which TDI tries to ignore, but they do state this

15   distinction, I think, thoroughly enough that it would be

16   useful.  So, for example, in the Phillips Petroleum Company

17   v. OKC case -- and that's a Louisiana Supreme Court case

18   from 1994, and it's fully cited in our motion -- that Court

19   states the concepts and/or underlying purposes of personal

20   jurisdiction and subpoena power are simply different.

21   Personal jurisdiction is based on conduct which subjects the

22   non-resident to the power of the Louisiana Court to

23   adjudicate its rights and obligations in a legal dispute

1    sometimes arising out of that very conduct.

2            On the other hand, the subpoena power of a

3    Louisiana Court over a person which is not a party in a

4    lawsuit is based on power and authority of the Court to

5    compel the attendance at a deposition of that person in a

6    legal dispute between other parties.  And it goes on,

7    whereas the Long Arm Statute extend's Louisiana's personal

8    jurisdiction over personal persons and legal entities beyond

9    Louisiana's borders, there is no civil authority for

10   extending the subpoena power of a Louisiana Court beyond

11   state lines that command instate dependence of nonresident,

12   nonparty witnesses.

13           So that is what the Hallamore case discusses, and

14   it is exactly what is happening here.  It is a business

15   that's registered in Delaware and has a registered agent in

16   Delaware, but otherwise, has no business contacts, personnel

17   or documents in Delaware, and that's what's reflected in the

18   declaration that's appended to the motion.  And it goes on

19   in the declaration to explain where the business of WCO is,

20   it's in Connecticut and it has that information.  So if TDI

21   wanted, they could, and to my knowledge, have not yet, go to

22   Connecticut where that power exists with the Connecticut

23   Court.  So there is no ability for the Court to order any

1   compliance with this subpoena, given the lack of subpoena

2   power, and directly in line with the cases cited in the

3   motion.  And beyond that, TDI is left to rely on allegations

4   of technicalities saying that it wasn't a full enough or

5   prompt enough response for objections.

6           The objections were served as timely.  It was

7   really as soon as possible.  The registered agent had the

8   prior law firm on file and sent the subpoena.  And this was

9   only discovered after we had received this subpoena directly

10  from TDI's counsel.  Then after an investigation, that's

11  what happened, it was sent to another law firm.  As soon as

12  WCO learned about it, action was taken, there were

13  objections that were served, the objections were detailed.

14  But it was an objection ultimately to the totality of the

15  subpoena given the central issue of the lack of power to

16  enforce it.

17          And there was a meet-and-confer process that

18  occurred, a four-page letter that is attached as an exhibit

19  to the motion, as well, that goes into all these issues

20  before anything was filed.  And yes, that meet-and-confer

21  process took time.  TDI clearly wanted it to take more time,

22  often complaining that WCO waited too long to take action.

23  But every effort was made to do that, and ultimately, there

1    was not an agreement and this motion was promptly filed.  So

2    there's no basis to deprive WCO of its rights.  As a

3    nonparty to this action, this is not a matter that directly

4    concerns WCO.  This is a third-party subpoena going to

5    another state, and it needs to be, at least, served in a

6    state that has power to enforce it, and then the merits of

7    the subpoena itself can be addressed which, as stated in the

8    motion, there are deep -- beyond that, but those shouldn't

9    be reached at this time.  Thank you.

10           THE COURT:  I have a question, Mr. Duffy.  Given

11   Delaware's status as a corporate case and many corporations

12   being located in this, I'm surprised that if your argument

13   that we lacked jurisdiction was, in fact, a strong argument,

14   that you wouldn't have something from the Chancery Court

15   that would back that up.  And I don't see any Chancery Court

16   cases or any Delaware Supreme Court cases that says under

17   these facts that we wouldn't have jurisdiction, because I

18   would imagine that this very issue comes up, would come up

19   quite frequently in those courts.

20           MR. DUFFY:  Yes, Your Honor.  And likewise, if it

21   was something that there was ordered compliance with it,

22   historically, one would expect to see decisions to that

23   effect as well, but there's not.  It's not necessarily

1    something that has been litigated to any previous stand, but

2    the Courts that have, these are the decisions that they have

3    made, including the Hallamore Court which says that it does

4    not exist.  To my experience, many of the larger

5    corporations do specify procedures, and they make them

6    public to serve subpoenas on their custodians of records at

7    the location where the records and the personnel are.

8            So my experiences from many of the corporations

9    that are registered in Delaware, but not operating here,

10   that they take steps so that it can be facilitated without

11   that type of litigation or may handle it otherwise.  But the

12   fact is, that the case law that exists, both in other states

13   and as it concerns Delaware law, is clear.  And I think it's

14   consistent with what Delaware would want as a state that

15   does have this capacity for registration in the state, but

16   not necessarily operation there, that it's not necessarily

17   the Delaware Courts' concern if there's no documents, no

18   personnel, nothing to enforce the subpoena power over these

19   nonparties in these cases.

20           THE COURT:  Thank you.  And counsel for TDI,

21   whoever wants to respond.

22           MR. LADIG:  Your Honor, before, let me just

23   introduce Mr. Brown and Mr. Hurley.  This is Peter Ladig

1    from Bayard on behalf of TDI, and with me on the line are

2    Ken Brown and Dennis Hurley from Williams & Connolly, and

3    Mr. Brown has been admitted pro hac vice and will be making

4    the argument today.

5              THE COURT:  Thank you.

6              MR. BROWN:  Thank you, Your Honor, and may it

7    please the Court, I am Ken Brown from Williams & Connolly

8    for TDI.  Let me start by getting to the threshold issue of

9    waiver, and then I'm happy to dive right into the

10   jurisdictional issue that Mr. Duffy raises.  So as a

11   threshold matter, WCO failed to timely object to the

12   subpoena.  And when it did file objections, almost a month

13   later, those objections were purely boilerplate.  They

14   literally could have been filed in any case about any

15   subject matter anywhere in the United States.  I believe

16   there are others on the call who have been practicing longer

17   than I, I've been doing this for 20 years, I have never seen

18   such boilerplate objections in my practice.  Those

19   objections say nothing about the subject matter of this

20   case.  They say nothing about any of TDI's documents

21   requests, and they say nothing about any of the issue raises

22   in the motion to quash.  Even if they had been timely, they

23   would be of no legal effect, so the question of, was there a

1    good reason why TDI couldn't respond within the time period

2    allotted by the rules is completely besides the point,

3    because it's undisputed that after they did have notice of

4    the subpoena, they served boilerplate objections that are of

5    no legal effect as a matter of law.  Then for reasons that I

6    must say are unclear to us, we tried to meet and confer with

7    them about the subpoena.  They refused to subsequently

8    participate.  And there was nominally a meet-and-confer

9    process, but they wouldn't engage with us on any particular

10    request.  They told us that no further discussions would be

11    useful and they filed a motion to quash.  That motion, in

12    our view, deceptively consists of a sort of "throw

13    everything at the wall" program in an effort to avoid the

14    DCO's waiver, but none of those arguments are effective.

15          It seems to me that the Court can go in one of two

16    different directions here.  Either it can simply apply the

17    law under which WCO's objections, including all of their

18    objections and including all of the arguments that we just

19    heard from Mr. Duffy and have been waived, and I'd simply

20    ask to comply with our subpoena in full, or the Court can

21    order us to have a real meet-and-confer or we try to work

22    these issues out.  We would have expected that process to

23    have occurred before now, but it hasn't.  And again, we

```
 1    tried it, but to no effect.  We're happy to try again if WCO
 2    is willing to seriously participate.  But we're fine with
 3    the former approach, too.  And to that, let me address the
 4    argument, the principal argument that Mr. Duffy made.
 5    Mr. Duffy said evidently -- I just want to make sure I wrote
 6    it down correctly -- that our observations about subject
 7    matter jurisdiction and personal jurisdiction are -- because
 8    jurisdiction is not at all -- I'm sorry -- is not at issue
 9    here at all.  That's what I wrote down, and we agree with
10    that.  The point in talking about subject matter
11    jurisdiction and personal jurisdiction was simply to note
12    that this argument that WCO is making is not jurisdictional
13    in nature, and the Court, obviously, has jurisdiction here,
14    is subject matter to situation over a subpoena issued in
15    this, personal jurisdiction over WCO, it's the Delaware LLC.
16    And WCO, obviously, is subject to subpoena in Delaware
17    having been registered here, having a registered agent here.
18    That's relevant because, as in non-jurisdictional argument,
19    it's been waived, that's the point.
20            So let me address the merits of the point now.
21    And I have sort of three points to make here.  First, the
22    whole arguments have been silly.  The documents we're
23    talking about are electronic, and they can be accessed from
```

1    Delaware just as easily as from Connecticut or anywhere

2    else.  That's No. 1.  No. 2, WCO resides in Delaware because

3    it's formed under Delaware law.  You can always subpoena a

4    Delaware resident in Delaware for its own documents even if

5    it happens to have locations elsewhere.  And third, the

6    argument is flat wrong.  It's overly practical and it's

7    quite dangerous, especially in the context of the kind of

8    complex commercial litigation that's so ubiquitous in

9    Delaware.

10              First of all, it's in-practical.  But if you're in

11   the position that we are in this case where we're litigating

12   in Pennsylvania, we need to subpoena a third party, we have

13   no earthly idea where that third party happens to keep its

14   documents.  So, you know, what do you do in that situation?

15   You look to whether the entity is incorporated or where it's

16   formed, which in this case is Delaware, and you issue the

17   subpoena through that court.  And there are good practical

18   reasons for that, right.  It is hardly uncommon for Delaware

19   entities to have multiple locations around the United

20   States, I'll give you a hypothetical, and naturally subpoena

21   a Delaware LLC for documents that it keeps at its local

22   branch offices in 30 different states.  And by WCO's

23   rationale, I would have to issue 30 different subpoenas.

1    That's silly.  It doesn't work that way.  There has to be a

2    place where you can subpoena, and its need to get all of

3    these documents, and that is the state or states where that

4    entity resides.

5           And also -- and this is really, an important

6    point, I think -- there are lots of documents that maybe

7    Delaware would prefer never to have to be subpoenaed at all,

8    right.  And so you can really miss the case that a Delaware

9    entity could avoid having its documents be subject to

10   subpoena just by locating elsewhere.  Delaware business

11   entities would start parking their documents not in

12   Connecticut, but in the Caymans, and in China, and in

13   Madagascar, and take whatever jurisdiction you want that's

14   the least amenable to serve as a process.  Right, the

15   Delaware entity would still maintain control over the

16   documents, and it could recall them at any time as it needed

17   them, but it would be functionally, a need for a subpoena,

18   and that totally is not the law.

19          So Mr. Duffy talked about the Hallamore case.  A

20   couple of distinctions and a couple of similarities.  First,

21   the entity received the subpoena in Hallamore timely

22   objected.  All right.  So there was no waiver in Halimore,

23   that's No. 1.  No. 2, Hallamore says the test is control,

1   right.  We agree with that, right.  WCO doesn't claim it

2   lacks control over its own documents, nor could it possibly.

3   Third, I would also note that Hallamore is based on an

4   outdated version of Rule 45.  They're citing the version

5   that was in place prior to the 2013 amendments.  It cites

6   specifically, Rule 45(a)(2)(c) all over their pleadings, but

7   that rule doesn't even exist anymore.  The rule now is clear

8   that the key is control over the documents, not their

9   location, which makes perfect sense.

10          But the one aspect of Hallamore that doesn't quite

11  make sense, and that I must say has to be, is the fact that

12  it purports to focus on whether the registered agent has

13  control.  So in this case, currently, the registered agent

14  for WCO is CT Corporation.  As Your Honor may know, at the

15  time of the subpoena, it was the -- CT's competitors, but

16  now it's CT Corporation.  As Your Honor may know, CT

17  Corporation and its competitors represent millions of

18  business entities both in Delaware and around the country.

19          Everybody on this call knows that CT Corporation

20  has one function only; it receives subpoenas and it sends

21  them to the entity that was subpoenaed.  It doesn't control

22  the documents of any of the entities, it just forwards

23  documents for a nominal fee, right.  So the question cannot

1    possibly be, does CT Corporation have control over the

2    documents?  Everybody knows it doesn't.  All right.  That's

3    true for every entity.

4             The question is, does the entity in Delaware have

5    control over the documents subpoenaed in Delaware?  And the

6    answer in this case is, of course, it does, because WCO, as

7    a Delaware LLC, is a resident of Delaware, right.  WCO, in

8    sum and substance, it is formed under Delaware law is

9    irrelevant because the Court should only look to where the

10   documents are kept.

11            But the standard form under Delaware law is hardly

12   irrelevant.  WCO is taking full advantage of all of the

13   benefits, and there are many, of the Delaware LLC Act,

14   right.  It's subject to the burdens of that Act, too, which

15   there are few; one of which, though, is if you were subject

16   to subpoena in Delaware, right, no matter where you might

17   choose to keep your documents or move them to, the bottom

18   line is that you can only subpoena a Delaware resident for

19   its own documents in Delaware -- correction, I should

20   probably say that a slightly different way -- you can only

21   subpoena a Delaware resident in Delaware for its own

22   documents.

23            I'm happy to -- so there are a couple of other

1    issues that were raised in their papers having to do with

2    over-broad and unduly burdened, and does Pennsylvania permit

3    free-answer discovery and things like that.  I think we

4    covered those issues in our papers.  They are just flat

5    wrong on all of those issues, and they have never met and

6    conferred with us, you know, in a way that would enable the

7    parties to flesh out these sort of these issues.  These

8    should be sort of request specific, right.  If they want to

9    claim that a particular request is overly broad and unduly

10   burdensome, they would need to have a meet-and-confer, they

11   need to tell us the request they're talking about, they need

12   to tell us why it's overly broad or unduly burdensome, and

13   then we can try and work that out, but they have done not

14   nothing like that here.

15           So I'm happy to answer any questions the Court

16   has, but if there aren't any, then the argument is that the

17   motion to quash should be denied, and they should be

18   required to comply with their subpoena.

19           THE COURT:  Thank you, Mr. Brown.

20           Mr. Duffy, do you have anything to add?

21           MR. DUFFY:  Yes, thank you, Your Honor.  Just

22   addressing a few items.  With respect to the

23   meet-and-confer, if there is no basis to enforce a subpoena

1    in the first place because there is no documents that are

2    responsive to a subpoena that could be a subject, there is

3    nothing further to go into details about what documents are

4    and aren't appropriate for each request when the answer is

5    there are no documents that are subject to that subpoena.

6    It was an extensive meet-and-confer process again.  The one

7    letter out of it is attached to the motion, but there were

8    conferences, and it was a real effort that was made, but the

9    bottom line was there was not the power behind it to get

10   into those details.

11          With respect to the Hallamore case,

12   Mr. Brown, he misconstrues it.  The Court did do a

13   thoughtful and thorough analysis of the applicable

14   law, and the issue is not just where the documents

15   live, the issue -- and Mr. Brown did also state

16   this -- is whether the recipient of the subpoena has

17   the power, the degree of control over the documents.

18   And that's what the Hallamore case says it's citing, a

19   case out of Colorado.  It makes clear that these

20   are -- this is a well-reasoned issue that other Courts

21   have considered, and it states, when dealing with a

22   corporation located in multiple states, the proper

23   inquiry is whether the agent possesses the degree of

1    control over the documents to enforce the subpoena.

2    And it was yes, registered agents generally would not

3    have that degree of control.  The party that wishes to

4    subpoena the non-party can go to an agent that does

5    have that degree of control and get the documents

6    wherever they're located on earth.  And that's exactly

7    what the Hallamore Court says.

8           And it goes on to state that, although the

9    party is registered as an agent in Delaware, the

10   subpoenaing party has not alleged that the agent

11   possesses the degree of control over the documents,

12   which would allow this district to issue a subpoena

13   for production of documents located in the Eastern

14   District of Pennsylvania foreign jurisdiction where

15   they were, but the acquisition, the subpoena, as

16   issued, is denied with respect to the document

17   production.  And that Court goes on to state

18   jurisdictional defects from a subpoena issued in the

19   wrong Court cannot be waived.

20          So it is akin to a jurisdictional defect when a

21   Court lacks the subpoena power over nonparties to produce

22   documents that are not in Delaware without anyone that

23   possesses the degree of control to have them produced in

1    Delaware, and that objection, among others, was raised in

2    the objections that we served on TDI initially.  They're

3    also attached to the motion, and that's Objection No. 2.

4    With respect to this jurisdictional issue, the respondent

5    objects to Plaintiff's subpoena because the issuing Court

6    lacks jurisdiction over the matter, and other objections

7    also apply, but they were asserted at the outset, they were

8    stated during the course of meet-and-confer.  And they're

9    about maintained here.  And otherwise, WCO should not be

10   deprived of this basic right to not be subjected to a

11   subpoena where there's no power to do so.  Thank you, Your

12   Honor.

13           THE COURT:  Thank you.  Do you have any response?

14           MR. BROWN:  I'll just respond by saying, as a

15   Delaware LLC, WCO has no basic right not to be subpoenaed in

16   Delaware, it's the exact opposite under the law.  And then

17   the Court has our position.

18           THE COURT:  Right.  First, as a punitory matter

19   concerning the waiver of any defenses, when I read through

20   the motions and everything, it appears to me that there was,

21   unfortunately, against the registered agent, the original

22   one sent the original subpoena to an attorney that was no

23   longer representing WCO, and I guess that was the reason why

1    WCO didn't respond initially.  And I guess what happened was

2    they reached out to WCO's -- somebody there, and then they

3    responded.  Interestingly, they had also changed their

4    registered agent that same day, which I found interesting.

5    In any event, I guess I'm going to say that they haven't --

6    that they can make their arguments, and it's not just cut

7    and dry for -- because they didn't respond in time.  I think

8    there, obviously, was some confusion that was out of the

9    control of WCO, initially.  So for that respect, I'm going

10   to allow them to make their arguments.

11           Turning to their arguments, however, I don't think

12   that the arguments hold water.  I think that the arguments

13   from Mr. Brown and the papers that were submitted by TDI, I

14   do think Delaware has the authority to issue a subpoena.

15   And to the extent that Hallamore is different, I don't think

16   that that is -- as either Mr. Brown said, inapplicable, or I

17   would not agree with it if it says that we cannot do it.  I

18   think Delaware does have the power to do it.  I think for

19   the reasons Mr. Brown stated, he had some very good reasons

20   as to how this would be entirely impractical in a number of

21   different circumstances, and the fact, to me, that there is

22   nothing from the Court of Chancery, or the Superior Court,

23   or anywhere else in Delaware that holds what Mr. Duffy is

1    arguing, it screams to me that that is not the case.  So for

2    that reason, I do think that the TDI has the authority to

3    subpoena WCO in Delaware for these documents.  And I think

4    that Mr. Brown's suggestion of having, at this point in

5    time, now that I have made that initial ruling, that there

6    should be a meet-and-confer on this.  We, obviously, can't

7    go through all the requests today because there has been

8    nothing presented to me as far as all that.

9            I did read the complaint in the underlying matter,

10   I am familiar with the case, and I can let all the parties

11   know that, it seems to me that, under the facts of this

12   particular case, it seems to me that information concerning

13   WCO and whether it is, in fact, a competing entity in the

14   underlying case is important.  I agree with Mr. Brown that

15   Pennsylvania has pretty early discovery, that they should be

16   entitled to get that matter, that information, at this point

17   in time.  Whether or not the requests are overbroad, taking

18   too much -- covering a larger amount of time than is

19   necessary, and it may not be specific enough, the request,

20   that's something that you guys can discuss in a

21   meet-and-confer now that you know where I stand on it.  Of

22   course, the parties are free to appeal my decision to Judge

23   Clark as a threshold matter if they wish to, and that's up

```
 1   to you.  I do note that if you are planning on appealing it,

 2   you do need to get a transcript of this, and we do not

 3   have -- our bailiff is recording this in the courtroom, and

 4   it's a big recording, but you have to go through a court

 5   reporter to get it done.  So just to let you know that up

 6   front, we don't have an actual reporter on the call today.

 7           So I'm going to deny the motion to quash today,

 8   but without prejudice for a subsequent motion after a

 9   meet-and-confer.  Okay.  Any questions?  Anything I need to

10   address that I didn't address?

11           MR. BROWN:  Not from our perspective, Your Honor.

12           MR. DUFFY:  Thank you, Your Honor.

13           THE COURT:  Thank you, gentleman.  Have a

14   wonderful holiday season.  Court is in recess.

15           (Whereupon the Court recessed.)

16                       */*/*

17

18

19

20

21

22

23
```

1              CERTIFICATION OF REPORTER

2

3         I, Michelle D. Webb, RPR, Official Reporter of the

4    Superior Court, Kent County, State of Delaware, do hereby

5    certify that the foregoing is an accurate transcript of the

6    testimony adduced and proceedings had, as reported by me, in

7    the Superior Court of the State of Delaware in and for Kent

8    County in the case herein stated, as the same remains of

9    record in the Office of the Prothonotary of Kent County at

10   Dover,  Delaware.

11        The certification shall be considered null and void

12   if this transcript is disassembled in any manner by any

13   party without authorization of the signatory below.

14        WITNESS, my hand, this 28th day of December, A.D.,

15   2021.

16

17

18

19                        /s/ Michelle D. Webb
                          Michelle D. Webb, RPR
20                        Official Reporter

21

22

23

# Exhibit 2

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TDI ACQUISITION SUB, LLC, | : | **OUT OF STATE** |
| | : | **SUBPOENA IN A** |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | K21M-08-007 (JJC) |
| | : | |
| ALBRIGHT COLLEGE, | : | |
| | : | C.A. No. 21-04481 |
| Defendant. | : | (pending in Berks County, PA) |

## NOTICE OF MOTION

TO: Eric J. Schreiner, Esq.
KLEINBARD LLC
Three Logan Square
1717 Arch Street
5th Floor
Philadelphia, PA 19103

**PLEASE TAKE NOTICE** that the undersigned will present the attached *Third-Party WCO Spectrum, LLC's Motion to Quash or Modify Out-of-State Subpoena* on November 18, 2021, at 2:00 p.m., or as soon thereafter as may be heard.

Dated: October 21, 2021

**OF COUNSEL:**

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire
Michael J. Duffy, Esquire
1822 Spruce Street

**BIELLI & KLAUDER, LLC**

/s/ *Ryan M. Ernst, Esquire*
Ryan M. Ernst, Esquire (No. 4788)
1204 N. King Street
Wilmington, DE 19801
Main: (302) 803-4600
Direct: (302) 321-5411
Fax: (302) 397-2557

Philadelphia, PA 19103                   rernst@bk-legal.com
215-866-0110 (telephone)
215-866-0111 (facsimile)
mmitts@mittslaw.com

*Attorneys For Third-Party WCO Spectrum, LLC*

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TDI ACQUISITION SUB, LLC, | : | **OUT OF STATE** |
| | : | **SUBPOENA IN A** |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | K21M-08-007 (JJC) |
| | : | |
| ALBRIGHT COLLEGE, | : | |
| | : | C.A. No. 21-04481 |
| Defendant. | : | (pending in Berks County, PA) |

## THIRD-PARTY WCO SPECTRUM, LLC'S
## <u>MOTION TO QUASH OR MODIFY OUT-OF-STATE SUBPOENA</u>

COMES NOW, pursuant to Delaware Superior Court Civil Rule 45(c)(3), third-party WCO Spectrum, LLC ("<u>Third-Party WCO</u>"), respectfully moves this Honorable Court for an order quashing an out-of-state subpoena to produce documents or things (the "<u>Subpoena</u>") (attached hereto as <u>Exhibit A</u>) purportedly served upon Third-Party WCO's Delaware registered agent by Plaintiff TDI Acquisition Sub, LLC, a subsidiary of T-Mobile ("<u>TDI</u>"), and/or modify it by precluding or limiting the discovery sought by the Subpoena (this "<u>Motion</u>").  As grounds for this Motion, Third-Party WCO states as follows:[1]

---

[1] In submitting this Motion, Third-Party WCO (1) does not submit to the subpoena enforcement jurisdiction of this Court, but enters an appearance only for the limited purpose of objecting to the Court's jurisdiction to enforce a subpoena against Third-Party WCO; (2) does not concede that the Delaware Superior Court Civil Rules apply; (3) reserves its right to contest the Subpoena in the courts of Pennsylvania and/or any other appropriate forum; and (4) does not waive, and instead expressly

## I.  **SUMMARY**

1.     Both Third-Party WCO and TDI seek to acquire certain licenses for Educational Broadband Service ("EBS") radio spectrum bands from educational institutions.  TDI also leases such licenses from educational institutions while WCO does not.

2.     In the underlying litigation, TDI is attempting to exploit an anti-competitive clause in its lease that purportedly restricts Albright College from selling EBS spectrum licenses to telecommunication competitors of TDI – even though Third-Party WCO does not engage in the business of telecommunications and is not a competitor of TDI in that business arena and, by TDI's assertion, Third-Party WCO never even made a *bona fide* offer to Albright for an EBS spectrum license.  *See*  ¶¶ 11-12 of the Declaration of Carl Katerndahl (attached as Exhibit B).

3.     On that basis, through the Subpoena, TDI is seeking an exceedingly broad scope of highly sensitive documents from Third-Party WCO related to Third-Party WCO's pursuit and acquisition of EBS spectrum licenses, which would provide TDI with a monumentally unfair business advantage over Third-Party WCO, stifling competition from Third-Party WCO and others like it for acquisition of EBS licenses,

---

reserves, its right to object to specific requests and instructions if required to respond to the Subpoena.

to allow TDI to acquire EBS licenses from schools at lower prices and ultimately provide less funds to the schools and students.  The Court should quash the Subpoena because:

4.      The Delaware Superior Court lacks jurisdiction to enforce the Subpoena because there are no documents of Third-Party WCO within the State of Delaware over which the Superior Court of Delaware possesses jurisdiction to enforce the Subpoena.

5.      There is no actual controversy in the underlying case because the predicate acts, upon which the allegations of breach of contract are based, never occurred.

6.      The Subpoena is a transparent attempt by TDI to improperly use third-party discovery to obtain an all-encompassing scope of confidential, highly sensitive business documents of Third-Party WCO regarding acquisition of EBS spectrum licenses, and for TDI to receive an unfair business advantage as a result.

7.      The Subpoena is otherwise grossly overbroad on its face and far exceeds the bounds of fair discovery.

8.      Third-Party WCO properly asserted its objections to the WCO Subpoena, which were not waived, which fundamental objections cannot be waived and which issues are properly and timely raised in this Motion.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    TDI's Contrived Complaint Against Albright College to Obtain Documents and Information About Third-Party WCO.

9.    The Subpoena originates from a Berks County, Pennsylvania lawsuit (the "Berks County Action") in which, by complaint filed on May 27, 2021, TDI sued Defendant Albright College ("Albright") for an alleged breach of a March 2, 2007 lease agreement between TDI and Albright regarding an EBS spectrum license owned by Albright, which license Third-Party WCO sought to acquire from Albright, subject to the rights of TDI under the lease agreement.[2]  On July 7, 2021, TDI filed a First Amended TDI Complaint for Breach of Contract and Declaratory Judgment (the "TDI Complaint"), which is attached hereto as Exhibit **C**.

10.    TDI generally alleges that, under its lease with Albright, (1) TDI has certain rights to receive information about Third-Party WCO from Albright because Third-Party WCO made an offer for an EBS spectrum license, and (2) TDI has a period of time to exercise a right of first refusal for any binding offer made to acquire the EBS spectrum license, which TDI never exercised.

---

[2] Any references to TDI's allegations in its pleadings are solely for illustrative purposes, and while TDI's averments constitute judicial admissions with respect to TDI, binding TDI, and are referenced herein as such, WCO does not admit, accept or otherwise endorse any allegation of fact or conclusion of law in TDI's TDI Complaint.  WCO reserves all rights with respect to asserting, and opposing, factual allegations and legal arguments with respect to TDI's pleadings or otherwise.

11.    Critically, although TDI's right of first refusal time period would have elapsed based on the date of offer, according to TDI, Third-Party WCO never actually made a *bona fide* binding offer to Albright that would trigger TDI's right of first refusal, so the period for TDI to exercise its right has not expired – but then neither would it trigger TDI's entitlement, if any, to documents or information regarding an offer.

12.    Third-Party WCO never entered into a contract with Albright, and never acquired the EBS spectrum license.  *See* ¶¶ 13-14 of the Declaration of Carl Katerndahl (attached as <u>Exhibit B</u>).

13.    Albright has not yet filed an answer in the Berks County Action and can seek to dismiss the TDI Complaint on the basis of a demurrer or otherwise at any time.

14.    Third-Party WCO anticipates the TDI Complaint will be dismissed in whole, or at least in part, on the basis of a demurrer, resulting in the dismissal of the Berks County Action in its entirety, or winnow the issues that require resolution, and thus eliminate or substantially narrow the scope of permissible discovery.

**B.    TDI's Out-of-State Subpoena, Third-Party WCO's Proper Service of <u>Objections Thereto and Good Faith Meet-and-Confer Efforts.</u>**

15.    With pleadings still open, TDI caused the Berks County, Pennsylvania Prothonotary to issue the Subpoena to Third-Party WCO on July 12, 2021.  Counsel for TDI ("<u>TDI Counsel</u>") subsequently filed the Subpoena in this Court on August

6, 2021.

16.    *Attachment A* to the Subpoena sets forth fifteen exceedingly broad categories of documents[3] (the "Document Requests") that TDI demanded Third-Party WCO produce.  *Attachment A* also included a set of definitions meant to inform and control the interpretation of the Document Requests, which applies Pennsylvania law to the Subpoena.

17.    TDI states that it served the Subpoena on or about August 19, 2021 (affidavit of service is attached hereto as Exhibit D), on Cogency Global, Inc., Third-Party WCO's then-registered agent in Delaware (the "Registered Agent").

18.    Third-Party WCO never received notice from the Registered Agent regarding the Subpoena.  *See* ¶¶ 8-9 of the Declaration of Carl Katerndahl (attached as Exhibit B).

19.    Third-Party WCO learned of the Subpoena for the first time through an e-mail from TDI's Counsel to Carl Katerndahl of Third-Party WCO, on September 16, 2021, asserting responses were late, objections were waived and demanding a production. *Id.,* ¶ 10 (attached as Exhibit B).

20.    Upon further inquiry, Third-Party WCO was informed by the Registered Agent that:

---

[3] References to specific Document Requests herein shall be identified as follows: "RFP #___."

a. The Registered Agent e-mailed a copy of the notice to Third-Party WCO's prior counsel, DLA Piper, which firm was no longer employed by Third-Party WCO, and which e-mail was never opened by the recipient DLA Piper, according to the Registered Agent (a copy of the October 15, 2021 e-mail from the Registered Agent is attached hereto as Exhibit E); and

b. The Registered Agent sent a copy to DLA Piper by FedEx which, presumably, was also never opened, particularly if the Registered Agent's e-mail was never opened, and in any event was never provided to WCO.

*See* ¶¶ 8-10 of the Declaration of Carl Katerndahl (Exhibits B, E).

21.    In any event, Third-Party WCO **never** received a copy, or any notice, of the Subpoena from DLA Piper, the Registered Agent or anyone else prior to Thursday, September 16, 2021.

22.    Promptly upon learning of the Subpoena for the first time, WCO forwarded the subpoena to its counsel, and on September 21, 2021, counsel for Third-Party WCO ("WCO Counsel") e-mailed TDI Counsel, to request an agreement for the timeline to respond to the Subpoena, but did not receive a response from TDI Counsel.

23.    On September 24, 2021, WCO Counsel again e-mailed TDI Counsel, but again did not receive a response from TDI Counsel.

24.    On September 29, 2021, WCO Counsel again e-mailed TDI Counsel, to request a meet and confer discussion regarding the Subpoena.

25.    TDI Counsel finally responded later that day, again erroneously

7

asserting that a response was untimely and that Third-Party WCO waived its objections, but agreeing to discuss the Subpoena with WCO Counsel, without waiver or admission.

26.    On September 30, 2021, without admission or waiver, WCO Counsel submitted thirteen specific objections to the Subpoena (the "WCO Objections") (attached as Exhibit F).  The WCO Objections are incorporated herein as if set forth at length.

27.    WCO Counsel was thereafter in communication with TDI Counsel, telephonically and in writing, in an effort to resolve the issues regarding the WCO Objections, including, in good faith, and at TDI Counsel's request, without waiver or admission, on further detailing detailed WCO's positions, and demanded the subpoena be withdrawn, in a letter dated October 8, 2021 (attached as Exhibit G and incorporated herein as if set forth at length).

28.    Despite Third-Party WCO's request, TDI has refused to withdraw the Subpoena and Third-Party WCO has therefore been obligated to file this Motion.

III.    **ARGUMENT**

   A.    **The Out-of-State Subpoena Cannot Be Enforced in Delaware Because There Are No Documents of Third-Party WCO in Delaware.**

29.    As a threshold matter, this Court lacks jurisdiction to enforce the Subpoena.

30.    Typically, a subpoena for production of documents must issue from the jurisdiction where the documents are located.  *See* Fed. R. Civ. P. 45(a)(2)(C).

31.    The geographic limitation in Federal Rule 45(a)(2)(C), and in Delaware Rule 45 (a)(2), relates principally to the "location" of the documents to be produced, rather than the specified location on the subpoena.

32.    When dealing with corporations located in multiple states, the proper inquiry for determining the validity of a subpoena for the production of documents is "whether the agent for service of process possesses the degree of control over the documents which would make it appropriate to enforce a subpoena over a corporation from a court in one state, when the corporation's documents are located in another state." *Hallamore Corp. v. Capco Steel Corp.*, 259 F.R.D. 76, 79–80 (D. Del. 2009) (citing *City of St. Petersburg v. Total Containment, Inc.,* 2008 WL 1995298, at *3 (E.D. Pa. May 5, 2008)); *see also AARP v. Am. Family Prepaid Legal Corp., Inc.*, 06 CVS 10216, 2007 WL 2570841, at *3–4 (N.C. Super. Feb. 23, 2007); *Phillips Petroleum Co. v. OKC Ltd. P'ship,* 634 So. 2d 1186 (La. 1994) (state courts had no statutory or other authority to compel a non-party corporation to attend or produce documents at a deposition to be held in the state).

33.    Other than its registration, Third-Party WCO has no contacts with the State of Delaware.

34.    Third-Party WCO maintains no records or documents and has no

personnel within the State of Delaware over which this Court could exercise jurisdiction.  *See* ¶¶ 5-7 of <u>Exhibit B</u>.

35.    A registered agent alone does not provide the Court with the power to enforce a subpoena when there are no documents in Delaware.  Even if a subpoenaed party "is registered and has an agent in Delaware, [if] the agent [does not] possess[] the degree of control over the documents which would allow this district to issue a subpoena for production of documents located in the Eastern District of Pennsylvania .... the subpoena as issued is invalid with respect to the document production command." *Hallamore Corp.*, 259 F.R.D. at 80.

36.    Accordingly, where there are no documents of Third-Party WCO in Delaware, *see* ¶¶ 5-6 of <u>Exhibit B</u>, this Court is without jurisdiction to enforce the Subpoena and must therefore quash the Subpoena.

**B.    There Is No Actual Underlying Case in Controversy Upon Which Third-Party Discovery May Be Properly Based.**

37.    TDI bases its complaint, and entitlement to information about Third-Party WCO, on allegations that Albright breached terms in its lease with TDI that are triggered by a binding offer, agreement to purchase and/or acquisition of an EBS spectrum license, but none of these things has taken place.

38.    According the TDI Complaint, Third-Party WCO never actually made a binding, *bona fide* offer to Albright to purchase an EBS spectrum license.

39.    There was never a contract entered into between Third-Party WCO and Albright, for the purchase of an EBS spectrum license or otherwise, and Third-Party WCO never acquired the EBS spectrum license from Albright.  *See* Exhibit B ¶¶ 12-13.

40.    Lacking any binding offer (according to TDI), contract or acquisition of the subject EBS spectrum license, each of which are prerequisites for the contractual terms upon which TDI relies in the TDI Complaint, there is no basis for TDI's claims, and no basis whatsoever to obtain third-party discovery thereupon.

C.    **The Subpoena Is an Improper Attempt to Obtain Highly Confidential Business Records of Third-Party WCO.**

41.    When a subpoena seeks the discovery of confidential commercial information, as TDI's does, TDI must demonstrate, pursuant to Super. Ct. Civ. R. 45(c)(3)(B), a "substantial need" for such confidential commercial information.

42.    Particularly in light of the lack of an underlying case in controversy that would provide a legitimate basis for any discovery, there is no need whatsoever for Third-Party WCO's confidential commercial information.

43.    The Document Requests are really a calculated effort by TDI to invade Third-Party WCO's most sensitive, highly confidential and commercially sensitive business practices regarding the acquisition and/or use of any EBS spectrum license. *See, e.g.,* RFPs nos. 11-15.

44.    In fact, TDI's claims in the Berks County Action appear so contrived as to suggest that the real purpose of TDI's prosecution of the Berks County Action against Albright is (1) to obtain, through the overly broad scope of the Subpoena, highly confidential information of Third-Party WCO, and, (2) to deter Third-Party WCO and other spectrum buyers and other educational institutions from engaging in future transactions for such licenses, so TDI can acquire and utilize them more cheaply and easily to the detriment of educational institutions and students.

45.    TDI, by judicial admission, seeks to acquire, and has acquired, the same EBS spectrum licenses as Third-Party WCO, as it avers in the TDI Complaint and, while Third-Party WCO does not operate as a telecommunication company or compete in that marketplace with TDI, both TDI and Third-Party WCO compete to acquire the same EBS spectrum licenses.  *See* <u>Exhibit B</u>, at ¶¶'s 38-58.

46.    Through the Subpoena, TDI is seeking every document of Third-Party WCO related to those same EBS spectrum license transactions, and countless other documents, representing hundreds of thousands of documents (and related ESI), imposing an expensive and undue burden upon Third-Party WCO in a case where it is not even a party.

47.    Specifically, by example and without limitation, the Document Requests seek:

a.  RFP #11 – all documents concerning Third-Party WCO's actual,

12

proposed, planned or contemplated acquisition or use of any EBS and BRS spectrum license;

b. RFPs #12-15 – all documents concerning various statements made by Third-Party WCO in communications with Albright which are not limited in scope and which could result in the required production of all documents and records in the possession of Third-Party WCO.

48.     Courts, both those applying the Delaware Rules, as well as those applying the analogous Federal Rules, protect third parties in similar situations by quashing, or substantially limiting, subpoenas seeking to force a non-party to produce operationally sensitive information to another business in the same marketplace, such as TDI and Third-Party WCO as it concerns the acquisition of EBS spectrum licenses. *See Anaqua, Inc. v. Bullard*, 2015 WL 2208978 (Del. Super. May 11, 2015) (quashing in part and modifying in part an out-of-state subpoena directed to a third-party that sought the production of confidential information); *Atlantech, Inc. v. American Panel Corp.*, 2011 WL 2078222 (E.D. Mich. 2011) (quashing third-party subpoena seeking the production of confidential commercial information to a party who operated in the same marketplace); *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533 (M.D. Fla. 2003) (granting motion to quash on grounds that a party's subpoena to a third-party sought irrelevant confidential and proprietary information that, if disclosed, would give the party an unfair advantage).

49.    Indeed, courts have acknowledged that disclosure of confidential information to another business in the same marketplace is presumed to be harmful to the disclosing entity.  *See American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) and cases cited therein.

### D.    The Subpoena Is Unduly Burdensome, Without Limitation, Unlimited in Scope, Overbroad and Otherwise Improper.

50.    The party propounding a subpoena has an affirmative obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." Super. Ct. Civ. R. 45(c)(1).

51.    "When a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense.'" *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, at *4 (N.D. Ill. May 13, 2002).

52.    Likewise, a third-party should not be burdened by producing documents when the subpoenaed information can be secured from a party to the underlying litigation.  *See, e.g.*, *Gemalto, Inc. v Merchant Customer Exchanges LLC*, 2015 WL 5168261, at *2 (Del. Super. Sept. 3, 2015) ("[recipient of subpoena] should not be placed in a position of providing discovery that is duplicative, cumulative or could more conveniently and reasonably be located in the possession of [a party litigant]"); *LVI Group Invs. LLC v. NCM Grp Holdings, LLC,* C.A. No. 12067-VCG (Del. Ch.

June 23, 2017) *(transcript)* ("...any burden on Alcoa of producing these documents, in light of the fact that they are all communications with a party and that that party should have them all, leads me to find that that burden would be unreasonable.").

53.    The documents TDI seeks are more conveniently in the possession of Albright, and TDI should at least be required to first seek the documents from Albright or another more convenient source before burdening Third-Party WCO.

54.    The Subpoena is further riddled with infirmities that militate in favor of quashing the Subpoena.

> a.  Even as averred in TDI's complaint, the Document Requests have little relevance to the actual claims being asserted in the Berks County Action, as set forth above, are instead crafted to invade the most sensitive business information of a competing participant in the market for EBS spectrum licenses.

> b.  None of the Document Requests contain any temporal limitation and seek, for example, related to Gary Winnick's companies (RFP #15), which necessarily span decades.

> c.  The Document Requests also seek extensive documents that are subject to the attorney-client privilege and/or the work product doctrine, such as requests seeking everything related to legal documents, including contracts, offers and licenses.

> d.  The Document Requests require legal conclusions, such as interpreting the terms of TDI's agreement with Albright.

55.    In fact, because the Berks County Action is still in the pleading stage, Third-Party WCO is not even reasonably able to discern the full, final claims and defenses in the Berks County Action, which establish the bounds of what discovery

is appropriate.

E.    **Third-Party WCO Has Not Waived Its Objections, and Its Objections Are Not Waivable, Which Compel This Court to Quash the Subpoena.**

56.    TDI cannot trample the rights of Third-Party WCO on a procedural basis by insisting that the WCO Objections have been waived, particularly given the fundamental failures surrounding the Subpoena, through no fault of its own.

57.    Third-Party WCO **never** received notice of the Subpoena from the Registered Agent or anyone else prior to September 16, 2021, and at all times acted promptly and in good faith, and the WCO Objections should be heard on an equitable basis. *See* Ex. C §§ 8-9.

58.    The WCO Objections further cannot be waived, and are not waived, because this Court lacks jurisdiction over the Subpoena and, further, the circumstances here are unusual and Third-Party WCO has acted at all times in good faith.

59.    Jurisdictional defects emanating from a subpoena issued in the wrong court, is the case here, cannot be waived. *See Doe I. v. Pauliewalnuts,* 2008 WL 4326473, at *3 (W.D. Va. Sept. 19, 2008); *Kupritz v. Savannah Coll. of Art and Design,* 155 F.R.D. 84, 88 (E.D. Pa. 1994) ("The subpoena issued from the wrong court and, although a timely motion to quash would have been the preferable procedure, this court lacks jurisdiction to enforce it.").

60.    Even if there is not compliance with the timeline for service of objections to a Rule 45 subpoena *duces tecum*, "[i]n unusual circumstances and for good cause, ... the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena]." *McCoy v. Southwest Airlines Co., Inc.,* 211 F.R.D. 381, 385 (C.D. Cal. 2002) (citations and internal quotation marks omitted);

61.    Courts have found unusual circumstances where, for instance, (i) the subpoena is overbroad on its face and exceeds the bounds of fair discovery and (ii) the subpoenaed witness is a non-party acting in good faith**.** *See McCoy,* 211 F.R.D. at 385; *American Elec. Power Co. v. United States,* 191 F.R.D. 132, 136 (S.D. Oh. 1999); *In re Motorsports Merchandise Antitrust Lit.,* 186 F.R.D. 344, 349 (W.D. Va. 1999); *Alexander v. Federal Bureau of Invest.,* 186 F.R.D. 21, 34 (D. D.C. 1998); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y. 1996).

62.    As set forth above, such unusual circumstances exist in this case not only because this Court lacks jurisdiction to enforce the Subpoena, and there is no actual case in controversy in the underlying action, but also because the Subpoena improperly seeks confidential business information, is grossly overbroad on its face, far exceeds the bounds of fair discovery and the burdens that can properly be imposed upon a third-party to litigation, all of which was set forth in the WCO Objections and elsewhere.

63.    Third-Party WCO has acted in good faith at all times.

64.    Through no fault of its own, neither the Registered Agent, nor anyone else, notified, informed or provided a copy to Third-Party WCO of the Subpoena, until September 16, 2021, and Third-Party WCO then proceeded promptly, expeditiously and in good faith since that time, including engaging in meet and confer communications with TDI.  *See* Ex. C §§ 8-9.

65.    This Motion is properly and timely filed (particularly where the Subpoena did not provide a response or production date), the WCO Objections were properly asserted, cannot be waived and are before this Court, and the Subpoena must be quashed accordingly.

WHEREFORE, based on the foregoing, Third-Party WCO respectfully requests that this Court GRANT its Motion to Quash or Modify the Subpoena and enter an order in the form proposed.

Dated: October 21, 2021

**OF COUNSEL:**

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire
Michael J. Duffy, Esquire
1822 Spruce Street
Philadelphia, PA 19103
215-866-0110 (telephone)
215-866-0111 (facsimile)
mmitts@mittslaw.com

**BIELLI & KLAUDER, LLC**

/s/ *Ryan M. Ernst, Esquire*
Ryan M. Ernst, Esquire (No. 4788)
1204 N. King Street
Wilmington, DE 19801
Main: (302) 803-4600
Direct: (302) 321-5411
Fax: (302) 397-2557
rernst@bk-legal.com

Words: 3,881

*Attorneys For Third-Party WCO Spectrum, LLC*

# Exhibit 3

EFiled:  Dec 16 2021 04:12PM EST
Transaction ID 67174202
Case No. K21M-08-007 JJC

EFiled: Oct 29 2021 08:00PM EDT
Transaction ID 67056032
Case No. K21M-08-007 JJC

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| TDI ACQUISITION SUB, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ALBRIGHT COLLEGE, <br><br> Defendant. | **OUT-OF-STATE SUBPOENA IN A CIVIL ACTION** <br><br> K21M-08-007 (JJC) <br><br> C.A. No. 21-04481 <br> (pending in Berks County, Pennsylvania) |

## [PROPOSED] ORDER

AND NOW, this 16th day of December, 2021, upon

consideration of WCO Spectrum, LLC's Motion to Quash or Modify Out-of-State

Subpoena, it is hereby ORDERED and DECREED that the Motion is DENIED. The

parties are ordered to meet + confer.

Clark, J.

Frenc. C.

# Exhibit 4

**EDUCATIONAL BROADBAND SERVICE**
**LONG-TERM DE FACTO TRANSFER LEASE AGREEMENT**

THIS Educational Broadband Service ("EBS") Long Term De Facto Transfer Lease Agreement (the "Agreement") is entered into as of *March 2*, 2007 (the "Effective Date"), by and between Albright College, a Pennsylvania nonprofit educational institution (the "Licensee"), and Nextel Spectrum Acquisition Corp., a wholly owned indirect subsidiary of Sprint Nextel Corporation, a Kansas corporation ("Sprint Nextel") (each sometimes referred to as "Party" and collectively as "Parties").

WHEREAS, the Federal Communications Commission ("FCC") has authorized EBS channels D1, D2, D3 and D4 under call sign WND475 (the "License") to Licensee in the Reading, Pennsylvania area (the "Area") as more particularly described on Schedule A;

WHEREAS, Licensee's station was not constructed on a timely basis but Licensee has filed an application to reinstate and extend the construction period and request a waiver from the FCC relating to such filing (the "Waiver Application");

WHEREAS, any and all spectrum rights now or hereafter authorized pursuant to the License with respect to Channels D1, D2, D3, and D4, and associated J and K channels, are referred to herein collectively as the "Channels" and individually as a Channel;

WHEREAS, the Parties have agreed to enter into this Agreement for Licensee to lease Sprint Nextel excess capacity on the Channels in accordance with the terms and conditions below ("Leasing Arrangement").

THEN, in consideration of the premises and covenants set forth in this Agreement, and for good and valuable consideration, the sufficiency of which is acknowledged by the Parties' signatures, the Parties agree as follows:

1. **LEASE TERM AND RENEWAL**

    (a) **Initial Term**. This Agreement is a long term de facto transfer lease pursuant to provisions of Title 47 of the U.S. Code of Federal Regulations and the policies of the FCC (as each may be amended from time to time, the "FCC Rules"). Subject to Subsection 1(c) or the earlier termination of this Agreement under Section 11, the initial term of this Agreement begins on the Effective Date and ends on the date that is fifteen (15) years from the Effective Date (the "Initial Term").

    (b) **Renewal**. Subject to Subsection 1(c) or the earlier termination under Section 11, on the date that is fifteen (15) years following the Effective Date, this Agreement will automatically renew for an additional term of fifteen (15) years (the "Renewal Term"), for a maximum Agreement duration of thirty (30) years, unless Sprint Nextel notifies Licensee in writing at least one (1) year prior to the end of the Initial Term that it declines to renew this Agreement. The terms and conditions of this Agreement apply to the Renewal Term. The Initial Term and the Renewal Term (if the Renewal Term goes into effect) may be referred to collectively under this Agreement as the "Term."

    (c) **Renewal of License and Extension of Agreement**. This Agreement will expire simultaneously with the License unless applications seeking renewal of the License and extension of the FCC authorization for the long term de facto transfer lease of the Channels are filed by the applicable deadlines (or pursuant to appropriate waivers). This Agreement will then continue according to its terms, and use by Sprint Nextel of the Channels will not be interrupted, unless the FCC denies by Final Order, the applications for renewal of the License or the continued long term de facto transfer lease of the Channels. Licensee will file any renewal

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

application(s) for the License and Licensee and Sprint Nextel shall cooperate to jointly file any additional appropriate application(s) to obtain any required FCC approval(s) for the continuation of this Agreement during and until the expiration of the Term not less than forty-five (45) days prior to the latest date that such application may be filed. The failure to complete filings by the forty-five day deadline listed above will not constitute a material breach under this Agreement if the filings are filed as soon as practicable, and under all circumstances by no later than the latest date that would allow this agreement to continue without interruption. In the event of any filing submitted by one of the Parties, that Party will contemporaneously provide the other Party with a complete copy of such filing. "Final Order" means an order issued by the FCC that is in effect and can no longer be appealed.

2.   **PAYMENTS**

   (a)   **Lump Sum Payments.** Sprint Nextel will pay Licensee a non-refundable one-time upfront fee of ███████████ ████ upon execution of this Agreement by both parties. Sprint Nextel will also pay Licensee a separate, one-time upfront payment of ████████████ ("Upfront Payment"), no later than thirty (30) days following the Consent Date or the Waiver Consent Date, whichever is later. The "Consent Date" is the date on which the FCC's grant of the De Facto Lease Application (as defined in Subsection 9(a)) becomes a Final Order. The date on which the FCC's grant of the Waiver Application becomes a Final Order is the "Waiver Consent Date." The ██ ████ ██████████ ████ Upfront Payment will be refundable to Sprint Nextel on a pro rata basis if this Agreement is terminated as a result of a material breach by the Licensee during the first five years of the Initial Term.

   (b)   **Monthly Payment.** Commencing with the first full calendar month following the Consent Date or the Waiver Consent Date, whichever is later, and continuing throughout the Term, Sprint Nextel will pay Licensee a monthly fee as specified in Schedule B attached hereto (the "Monthly Payment"). The Monthly Payment will be paid no later than thirty (30) days following the end of each calendar month for which the payment is due. If the Term expires on a date other than the last day of a calendar month, the Monthly Payment for that month will be adjusted on a pro rata basis. Notwithstanding anything to the contrary contained in this Agreement, Sprint Nextel's obligation to commence making payments under this Agreement is subject to Licensee completing and delivering to Sprint Nextel the Licensee and Electronic Filing Information Form, attached hereto as Exhibit A, and the Payee Setup Form attached hereto as Exhibit B, following the Effective Date. The Monthly Payment will be reduced on a pro rata basis (based on MHz, or population, as further provided below) during the Initial Term or any Renewal Term of this Agreement if, with respect to any Channel, (i) the bandwidth of the Sprint Nextel Capacity (in MHz) as contemplated by this Agreement on the Effective Date decreases or (ii) there is a decrease in population resulting from a reduction in the size of the geographic service area (in square miles) ("GSA") of any Channel, as compared to the GSA contemplated by this Agreement on the Effective Date. Notwithstanding anything in the foregoing to the contrary, the reduction in size of EBS lower or upper band

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

segment channels from 6 MHz to 5.5 MHz mandated by the FCC Rules as of the Effective Date concerning the Transition (as defined below) shall not be considered a decrease in Sprint Nextel Capacity. Furthermore, Sprint Nextel may not use as a basis for a reduction in the Monthly Payment a change in the characteristics of the capacity under the J or K band channels associated with the Channels or the mid-band segment ("MBS") channel if that change is a result of the Transition.

(c)    **Payment Receipt Address.** Monthly payments due under this Agreement from Sprint Nextel to Licensee shall be sent to the address below. Licensee may change the payment receipt address at any time by providing written notice to Sprint Nextel pursuant to the notice provisions of this Agreement.

> Albright College
> P.O. Box 15234
> 1621 North 13th Street
> Reading, PA 19612-5234
> Attention: Vice President for Administration and Finance

3.    **EXCLUSIVITY AND RIGHT OF FIRST REFUSAL**

(a)    **Exclusivity**. Except as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels; provided, however, that Licensee has the ability during the last year of the Term, and during the last year of the Initial Term if Sprint Nextel has elected not to renew the Agreement in accordance with Subsection 1(b), to negotiate with and contract or agree with any third party with respect to any period following the end of this Agreement, so long as Licensee complies with the ROFR set forth in Subsection 3(b).

(b)    **Right of First Refusal**. Unless this Agreement is terminated by Licensee as a result of Sprint Nextel's material breach or pursuant to Section 11(f), and except with respect to any use of Licensee's Capacity consistent with Subsections 13(b)(ii) and (iii), or any permitted assignment or transfer of control transaction pursuant to Section 10 where the assignee or transferee is also a public institution or agency, a bona fide local private educational institution with students actually enrolled in local classroom instruction (except for any such public or private educational institution that is affiliated with a national EBS licensee), or a public broadcasting station, Sprint Nextel, or an entity designated by Sprint Nextel ("Designee"), will have the right to use, lease or purchase (if Sprint Nextel or the Designee is then eligible to hold an EBS license) some or all of the Channels by matching any acceptable *bona fide* offer received by Licensee from a third party (the "ROFR") during the Term and for a period of three (3) years after the Term (the "ROFR Term"). If Sprint Nextel declines to renew this Agreement pursuant to Section 1(b) above, the ROFR Term provided for in this Section will remain in effect through the Term and for only one (1) year following the end of the Term. Within thirty (30) days following Licensee's determination to accept a *bona fide* third party offer (the "Third Party Offer"), Licensee will notify Sprint Nextel of any Third Party Offer, including (i) the identity of the offeror, (ii) the terms of the offer, and (iii) a true and correct copy of the operative agreement, letter of intent,

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

3

term sheet or other similar definitive then-existing documentation relating to the offer. Licensee's notice to Sprint Nextel of the Third Party Offer will constitute an offer by Licensee to Sprint Nextel (or a Sprint Nextel Designee) for the lease, use or purchase of the rights to the Channel(s) impacted by the Third Party Offer on substantially the same terms and conditions set forth in the Third Party Offer. Sprint Nextel will notify Licensee within thirty (30) days following receipt of such notification if Sprint Nextel is exercising its ROFR. If Sprint Nextel fails to exercise its ROFR, Licensee will have sixty (60) days from the expiration of Sprint Nextel's thirty (30) day response period to enter into an agreement with the third party offeror on substantially the same terms and conditions as were offered to Sprint Nextel and supply Sprint Nextel with a fully-executed copy of that agreement. If, within the sixty (60) day period, Licensee does not enter into a binding agreement with the third party offeror on the same terms and conditions as were offered to Sprint Nextel, then Sprint Nextel's ROFR will remain in effect pursuant to the terms stated in this Subsection. If, within the sixty (60) day period, Licensee enters into a binding agreement with the third party offeror on the same terms and conditions as were offered to Sprint Nextel, supplies Sprint Nextel with a fully-executed copy of that agreement, and such transaction is thereafter ultimately consummated, then Sprint Nextel's ROFR will terminate with respect to such transaction; however, the ROFR will remain in full force and effect with respect to any subsequent Third Party Offer with respect to the lease, use or purchase of the rights to the Channels received during the Term and for a period of three (3) years thereafter (one (1) year if Sprint Nextel declines to renew the Agreement pursuant to 1(b)). The terms of any agreement between the Parties (or between Licensee and a Designee) resulting from the exercise of Sprint Nextel's ROFR will be ratified in a separate contract. All materials and information exchanged under the ROFR are subject to the non-disclosure provisions of this Agreement.

(c)     **Bifurcation of Bundled Offer**. If a Third Party Offer bundles or encompasses assets other than Licensee's rights to any of the Channels, the Parties will use good faith efforts to bifurcate the offer into a portion applicable solely to Licensee's rights in any of the Channels, and a remaining portion applicable to the other assets, such that the Parties can ascertain the consideration offered and the terms and conditions applicable to rights related specifically to the Channels. If the Parties agree upon the consideration, terms and conditions of the bifurcated offer, Sprint Nextel (or its Designee) will have the option to exercise its ROFR with respect to the portion of the bifurcated offer applicable to Licensee's rights in any of the Channels. If such third party offer cannot, after using good faith efforts, be bifurcated by the Parties as provided above or if the Parties do not agree upon the consideration, terms and conditions of such bifurcated offer, then Licensee will reject such third party's entire offer.

(d)     **Form of Consideration and Determination of Value**. Subject to Sprint Nextel's rights described in Subsection 3(b), if the whole or any part of the consideration of the Third Party Offer is in a form other than cash, then Sprint Nextel may meet the consideration using cash, comparable consideration, or both, in its acceptance notice. If Licensee does not accept Sprint Nextel's offer of a cash substitute for the non-cash consideration, then Licensee will notify Sprint Nextel in writing of

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

4

Licensee's estimate of a fair cash substitute within fifteen (15) days after Licensee's receipt of Sprint Nextel's acceptance notice. Licensee's failure to notify Sprint Nextel of its estimate of a fair cash substitute within the prescribed fifteen (15) day period will be deemed an acceptance of Sprint Nextel's cash-substitute offer. If Licensee rejects Sprint Nextel's cash-substitute offer, then Sprint Nextel will have ten (10) days following receipt of Licensee's rejection to notify Licensee of its election to (i) adopt Licensee's stated cash value, or (ii) submit the valuation of a fair cash substitute for determination by binding arbitration. In the event of arbitration pursuant to this Section 3, the Parties will instruct the arbitrator(s) to assign a reasonable monetary value to any non-cash consideration provided in any Third Party Offer despite any determination that such non-cash consideration is not readily available in the marketplace to Sprint Nextel, except where the non-cash consideration is the services or participation of a person(s), where the value will be the amount Licensee would reasonably pay such person(s) in the then-current market for the work the person would be performing. In any case where arbitration is invoked, Sprint Nextel's ROFR will remain in effect with respect to the third party offer until thirty (30) days after Sprint Nextel is notified of the arbitrators' decision, during which time Sprint Nextel may revise its notice of exercise of its ROFR to adopt the arbitrators' findings or waive its ROFR with respect to the Third Party Offer. If, within sixty (60) days after the end of Sprint Nextel's thirty (30) day time period to consider the arbitrator's decision, Licensee does not enter into a binding agreement with the third party offeror on the same terms and conditions as contained in the Third Party Offer, then Sprint Nextel's ROFR will remain in effect pursuant to the terms stated in Section 3(b). If, within the sixty (60) day period, Licensee enters into a binding agreement with the third party offeror on the same terms and conditions contained in the Third Party Offer (a fully-executed copy of which will be supplied to Sprint Nextel), then Sprint Nextel's ROFR will terminate with respect to such transaction, but the ROFR will remain in full force and effect with respect to any subsequent Third Party Offer with respect to the lease, use or purchase of the rights to the Channels received during the Term and for the applicable ROFR Term as provided in Section 3(b).

(e)     **Arbitration**. Any arbitration pursuant to this Section will be brought in the city of Reading Pennsylvania before the American Arbitration Association (the "AAA") under the AAA's Commercial Arbitration Rules (the "AAA Rules"). Arbitration will be conducted by three (3) arbitrators appointed in accordance with the AAA Rules. Each Party will pay its own attorneys' fees and costs in connection with the arbitration and the Parties will divide equally the fees and costs of the arbitrators, provided, however, that in their award, the arbitrators may reapportion the fees and costs of the arbitrators as the arbitrators deem appropriate.

(f)     **Right to Participate**. If Licensee decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part or the whole of the Channels at any time before the third (3rd) anniversary of the end of the Term, then Licensee will provide Sprint Nextel with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity:

      (i)     to submit bids, proposals and offers for the Channels;

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

5

(ii)   to receive information with respect to such bids, proposals, offers and counters thereto;

(iii)  to discuss such information with Licensee;

(iv)   to counter any such bids, proposals or offers; and

(v)    to be provided with copies of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by Licensee.

This right to participate does not limit in any manner, and is in addition to, the ROFR set forth in Subsection 3(b).


4.    **FREQUENCY BAND TRANSITION**

The Parties acknowledge that the Channels are subject to relocation to different frequencies as a result of the Transition Plan adopted by the FCC in WT Docket No. 03-66 (the "Transition"). Sprint Nextel and Licensee will cooperate in the Transition in accordance with FCC Rules to facilitate Sprint Nextel's use of the Sprint Nextel Capacity and Licensee's use of Licensee's Capacity. If Licensee is not the entity initiating or overseeing the Transition of the Channels to alternative frequencies (the "Proponent"), then Licensee will designate and reasonably promote Sprint Nextel or its designee as Proponent, and otherwise support Sprint Nextel's interests in the means and outcome of the Transition to the extent permitted by FCC Rules and consistent with Licensee's Transition rights thereunder. Licensee will consult with Sprint Nextel before adopting, consenting to, or otherwise agreeing to any change of frequencies or characteristics of the Channels other than those changes required by FCC Rules, and will fully involve Sprint Nextel in all of its interactions with any third parties concerning transitions to channel plans allowed as an outcome of the FCC's Transition proceedings. Furthermore, Licensee will not adopt, consent to, agree to, or support any change of frequencies or characteristics of the Channels, except as required FCC Rules, that would impair Sprint Nextel's full and flexible use of the Sprint Nextel Capacity throughout the entirety of the GSA for the Channels. Notwithstanding the foregoing, however, in the event that neither Sprint Nextel nor any third party initiates and/or completes the Transition of the Channels within the time frames specified by the FCC, Licensee may, at its sole option, avail itself of any "self-transition" rights made available pursuant to FCC Rules with respect to the Channels, and Sprint Nextel will reimburse Licensee's reasonable costs thereof.

5.    **CAPACITY REQUIREMENTS AND USES**

(a)   **Licensee's Capacity**.  The FCC requires EBS licensees to reserve certain channel capacity for their own use in any spectrum leasing arrangement ("Reservation"). In this Agreement, the  capacity of Licensee is referred to as "Licensee's Capacity."  When the Channels are being operated in analog mode, Licensee's Capacity is six (6) MHz of spectrum.  When the Channels are operated in digital mode, then Licensee's Capacity will be five percent (5%) of the capacity of the Channels.  If the FCC reduces the Reservation, Sprint Nextel, at its sole discretion, may elect to decrease Licensee's Capacity in any increment selected by Sprint Nextel and will adjust the Monthly Payment on a *pro rata* basis to account for the resulting increase in bandwidth (measured in MHz) of the Sprint Nextel Capacity. Unless otherwise agreed by the Parties, Sprint Nextel may, at its sole discretion, designate as Licensee's Capacity the equivalent of five percent (5%) of the

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

6

bandwidth (measured in MHz) of the Channels on any BRS or EBS spectrum licensed to or leased by Sprint Nextel, or any of its affiliates, in the Area.

(b) **Use of Licensee's Capacity**. Licensee will use Licensee's Capacity to help satisfy its minimum educational use requirements pursuant to FCC Rules ("Minimum Use Requirements"), provided, however, Licensee is not precluded from using other methods to meet the Minimum Use Requirements, including the products and services set forth in Subsection 7(c) and any video or audio transmission capacity made available to it by Nextel, to the extent they allow Licensee to meet such requirements. Licensee will not use Licensee's Capacity in any manner that would interfere with Sprint Nextel's use or planned use of the Sprint Nextel Capacity or any other BRS or EBS spectrum, or violate FCC Rules, including rules relating to the prevention of interference to adjacent channels and markets. Licensee will provide Sprint Nextel at least one hundred eighty (180) days advance notice prior to deployment of any facilities which use Licensee's Capacity. Licensee will promptly provide Sprint Nextel with all engineering and other information requested by Sprint Nextel concerning Licensee's planned use of Licensee's Capacity.

(c) **Sprint Nextel Capacity**. From and after the Consent Date, Sprint Nextel will have the exclusive right to operate and use all the capacity of the Channels except for Licensee's Capacity ("Sprint Nextel Capacity"). Notwithstanding the foregoing, however, Sprint Nextel agrees that Licensee may continue to program the Channels to continue its educational video transmissions until the earlier of (i) the end of the Transition; or (ii) a date specified by Sprint Nextel that is no earlier than fifteen (15) days following notice to Licensee by Sprint Nextel of its intent to use the Channels (except for Licensee's Capacity) prior to the end of the Transition ("Licensee's Interim Use"). Licensee will bear all responsibility, all costs and expenses for all repairs, maintenance and replacement of all equipment used in the operation of the Channels in connection with Licensee's Interim Use.

(d) **Use of Sprint Nextel Capacity**. Sprint Nextel may use Sprint Nextel Capacity in any manner or format that is in compliance with applicable laws and regulations and for any lawful purpose, including those that may be authorized in the future by the FCC. Sprint Nextel may maximize the use and amount of Sprint Nextel Capacity by employing techniques allowed by the FCC, including but not limited to: digitization, subchannelization and superchannelization or by channel loading and/or channel shifting of Licensee's Capacity as those terms are defined by FCC Rules. Sprint Nextel may also change the medium used for Licensee's Capacity, if allowed by the FCC (such as Internet delivery, or any other delivery system, including the use of spectrum other than BRS or EBS spectrum, that may be authorized in the future by the FCC), provided that Sprint Nextel bears all associated reasonable costs and expenses. Notwithstanding the foregoing, and except as required by Section 6(a), nothing herein will require Sprint Nextel to construct, operate or continue to operate any commercial service utilizing the Channels.

(e) **Content and Operation**. Sprint Nextel will not be restricted in providing Internet, data, video streaming or voice services over Sprint Nextel Capacity, but will comply with any applicable legal requirements relating to the provision of any

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

7

such services. Sprint Nextel will not be liable to Licensee for the content, communications, transmissions or postings initiated or made by third parties over the Internet or other computer, data networking or voice systems.

(f)     **Review of Educational Reservation and Use**. During the fifteenth (15th) year of the Term and during each fifth year of the Term thereafter, Licensee will have an opportunity to review its internal educational use requirements in light of changes in educational needs, technology, and other relevant factors (each a "Review" and collectively the "Reviews") and obtain access to such additional services, support and/or equipment as the parties may agree upon to advance Licensee's educational mission. If at any Review Licensee determines that it has additional needs to meet an increase in its internal educational use requirements, Licensee will provide Sprint Nextel with (i) written notice of such determination, and (ii) reasonable supporting documentation or other proof showing the increase in Licensee's internal educational use requirements and that the increase is not temporary in nature. The Parties will then cooperate to determine the equipment and services necessary to meet increases in Licensee's internal educational use requirements that can be supported by reasonable proof, except that (a) Sprint Nextel will not be required to relinquish any part of the Sprint Nextel Capacity, (b) Sprint Nextel will not be required to provide any products or services not generally offered by Sprint Nextel in the Area, and (c) Licensee will pay for any associated costs and expenses that exceed fifteen (15) percent of the monthly Account Credit (as the term was defined on the Effective Date).

6.    **EQUIPMENT**

(a)     **Operation and Maintenance of Equipment**. Sprint Nextel will, at its expense, operate and maintain the transmission equipment used to operate the Sprint Nextel Capacity ("Sprint Nextel Equipment") and will ensure that operation and maintenance of the Sprint Nextel Equipment complies in all material respects with applicable FCC Rules. Licensee will, at its expense, operate and maintain the transmission equipment, if any, used to operate Licensee's Capacity, but Licensee will be under no obligation to provide or operate such equipment. Sprint Nextel will be obligated to either construct and maintain facilities that satisfy the FCC Rules concerning "substantial service" ("Substantial Service Requirements") for the Channels or provide Licensee with the notice described under Subsection 11(f)(2). Licensee will reasonably cooperate with any Sprint Nextel proposal to implement video transmission capabilities, including supply Sprint Nextel with educational programming and make use of any video transmissions of educational programming, provided Licensee does not incur, or is otherwise reimbursed for, any expense associated with the construction and operation of the transmission facilities.

(b)     **Option to Purchase Equipment**. Upon termination of this Agreement for any reason other than breach by Licensee, to the extent required by the FCC Rules in effect at such time, Licensee will have the option to purchase, at fair market value, one (1) base station for use by Licensee on the Channels, provided, however, licensee shall have no right to any portion of Sprint Nextel's network or any proprietary software or information, or intellectual property. To exercise such option, Licensee must notify Sprint Nextel in writing within fifteen (15) days of

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

the termination of this Agreement and the Parties will use commercially reasonable efforts to consummate the transaction as soon as practicable.

7.    **BROADBAND AND OTHER SERVICES**

    (a)    **Preparation for Commercial Services**. Sprint Nextel may, from time to time and as permitted by FCC Rules, and subject to the requirements of Section 6(a), cease all operation of the Channels.

    (b)    Reserved.

    (c)    **Sprint Nextel Products and Services**: Sprint Nextel will provide Licensee with a monthly Account Credit (as defined below) to be used to purchase Sprint Nextel communication products and services.

        (i)    Account Credit.    The account credit will be ▆▆▆▆▆▆ ▆▆▆▆▆▆ ▆▆ ▆ beginning the first full month following the later of (A) the Consent Date, (B) the Waiver Consent Date (C) the date Licensee has established a Sprint Nextel customer account through the appropriate commercial channels and, (D) the date Licensee has delivered to Sprint Nextel a completed and executed copy of the Licensee and Electronic Filing Information Form attached as Exhibit A and the Payee Setup Form attached hereto as Exhibit B, and continuing until the end of the Term (the "Account Credit"). The Account Credit will be credited to Licensee's Sprint Nextel customer account by Sprint Nextel no later than thirty (30) days following the end of each calendar month during the Term. The Account Credit for the final month will be adjusted on a *pro rata* basis if the Term expires on a day other than the last day of a calendar month. Licensee may use the Account Credit to purchase commercial communication products and services of Sprint Nextel that are generally offered in the Area, in such type and amount as Licensee shall determine, at Sprint Nextel's then commercially available rates for similarly situated entities for such products or services provided that the rates provided to Licensee will not be at a level that will cause the rates under any agreement with the U.S. General Services Administration, or any similar agreement with any governmental or other entity to be altered. The Account Credit will be applied to any charges and fees incurred in connection with Licensee's account on a monthly basis.  If during any month, Licensee incurs charges and fees on its Sprint Nextel customer account in an amount less than the Account Credit, the unused Account Credit may not be transferred, credited to a subsequent month or redeemed for cash, and will revert to Sprint Nextel.

8.    **CHANNEL SWAPS AND INTERFERENCE CONSENTS**

    (a)    **Interference Consents**. Sprint Nextel may, at its expense, enter into any Interference Consents (defined below) with respect to the Channels.    The effectiveness of any such Interference Consent entered into by Sprint Nextel, by its

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

9

terms, may not extend beyond the Term. Licensee will, within thirty (30) days of written request by Sprint Nextel, enter into any Interference Consent with respect to the Channels which is commercially reasonable in the context of the commercial use and development of the Channels and which provides for fair and reciprocal rights and limitations on the use of the Channels and such other spectrum subject to such Interference Consent. Any such Interference Consent executed by Licensee at the request of Sprint may survive indefinitely. Upon the request of Sprint Nextel, Licensee will use reasonable efforts to terminate any then existing Interference Consent to which it is a party, but Licensee will not be required to offer any consideration in connection with those efforts unless such consideration is to be paid for by Sprint Nextel. Sprint Nextel will negotiate and draft the Interference Consents and make any consideration payments due to third parties under the Interference Consents. "Interference Consents" means any agreements or arrangements affecting the use or operation of the Channels, including any agreement or arrangement concerning:

    (i)     acceptance of interference or signal strength from a third party's transmitters in excess of the interference or signal strength such third party is entitled to transmit under FCC Rules, or limiting interference or signal strength from transmitters operating on any of the Channels below what is allowed under FCC Rules;

    (ii)    the alteration of operating parameters authorized under the license for any Channel or third party channel;

    (iii)   the coordination of adjacent market channel use or other matters concerned with the operation of adjacent markets;

    (iv)   emission mask and/or emission type; or

    (v)   restricting station operations, licensing or location.

(b)    **Channel Swaps**. Licensee will complete, submit to the FCC on such date as requested by Sprint Nextel, and prosecute such applications as Sprint Nextel may request to effectuate an exchange of all or a portion of the Channels for the same amount (determined in MHz) of other EBS or BRS spectrum other than guard band spectrum (a "Channel Swap") licensed in the same general geographic area as the Channels ("Swapped Channels"), and thereafter cause such exchange to be consummated, provided that the population residing within the GSA for the Swapped Channels is at least 96.0% of the population residing within the GSA for the Channels as of the date of such exchange and thereafter Licensee is, or would be after giving effect to the Transition, licensed for at least one block of 16.5 MHz of contiguous spectrum in either of the Lower Band Segment or the Upper Band Segment. Effective upon the consummation of a Channel Swap, such Swapped Channels will be considered "Channels" for purposes of this Agreement and any spectrum transferred on behalf of Licensee pursuant to such Channel Swap will no longer be considered "Channels" for purposes of this Agreement. Sprint Nextel will not reduce Monthly Payments based on a reduction in GSA as a result of a Channel Swap pursuant to this Subsection.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

9.    **APPLICATIONS, AUCTIONS AND FEES**

(a)    **Application**.  Sprint Nextel and Licensee will cooperate to prepare and file the application for the FCC's approval of the long term de facto transfer lease of the Channels (the "De Facto Lease Application") within fourteen (14) days following the Effective Date.  If the FCC denies the De Facto Lease Application or grants it with conditions materially adverse to Sprint Nextel or to Licensee, upon Sprint Nextel's request, and the Parties' agreement on the payment of expenses, Licensee will use its best efforts to secure reversal of the FCC's action .

(b)    **Waiver Application.**  Licensee has prepared and filed the Waiver Application.  If the FCC denies the Waiver Application or grants it with conditions materially adverse to Sprint Nextel in its sole discretion, upon Sprint Nextel's request and the Parties' agreement on the payment of expenses, Licensee will use its best efforts to secure reversal of the FCC's action.

(c)    **Application Preparation**.  Other than the Waiver Application and those other applications required to be filed by Licensee in accordance with the terms of this Agreement, Sprint Nextel will prepare and submit all applications, amendments, petitions, requests for waivers, and other documents necessary for the operation of Sprint Nextel Capacity and permitted to be submitted by Sprint Nextel under the FCC Rules.  Promptly, but no later than thirty (30) days following written request by Sprint Nextel, Licensee will submit to the FCC and thereafter prosecute any lawful application, amendment, petition, request for waiver, or any other documents with respect to the Channels required by or is consistent with this Agreement that is requested by Sprint Nextel.  Not less than forty five (45) days prior to  the date that any such filing is due, Licensee will prepare and submit all applications, amendments, petitions, requests for waivers, and other documents necessary for the maintenance and renewal of the License or required of Licensee to remain eligible under FCC Rules to provide Sprint Nextel Capacity to Sprint Nextel.  The failure to complete filings by the forty-five day deadline listed above will not constitute a material breach under this Agreement if the filings are filed as soon as practicable, and under all circumstances by no later than the latest date that would allow this agreement to continue without interruption.  Licensee will provide Sprint Nextel with copies of documents submitted pursuant to the preceding sentence at the same time it submits such documents to the appropriate agency.  The Parties will cooperate in good faith in the preparation, submission and prosecution of all applications, amendments, petitions, requests for waivers, and other documents necessary to secure any FCC approval, consent or other action required to effectuate the Leasing Arrangement without conditions that are materially adverse to either Party.

(d)    **Application Costs**.  Other than the Waiver Application and those other applications required to be filed by Licensee in accordance with the terms of this Agreement, Sprint Nextel will, at its own expense, prepare all applications, notices, certificates, exhibits, consent agreements, approvals or authorizations that Sprint Nextel submits to the FCC or requests Licensee to submit pursuant to this Agreement.  Sprint Nextel will pay FCC filing fees associated with seeking consent of the Leasing Arrangement and will promptly pay or reimburse Licensee

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

11

for its reasonable expenses (including legal and/or engineering fees) associated with the evaluation of and activities undertaken by Licensee in response to any request by Sprint Nextel for action by Licensee. Licensee will pay its own costs associated with the renewal of the License and with any other filings to the FCC requested or customarily required of Licensee to remain eligible under FCC Rules to provide Sprint Nextel Capacity to Sprint Nextel (except as such costs relate to Sprint Nextel's status as lessee under this Agreement).

(e)    **Regulatory Fees**. Sprint Nextel will pay any regulatory fees imposed by the FCC on Sprint Nextel's use of the Sprint Nextel Capacity under this Agreement upon receipt of notice from the FCC that such fees are due, or upon receipt of at least thirty (30) days advance written notice from Licensee that such fees are due if notice is sent to Licensee.

(f)    **Auction Participation**.

(i)    If the FCC auctions EBS spectrum (other than the Channels), upon Sprint Nextel's request made at least 120 days in advance of any such auction (or shorter in the event that FCC notice of the auction occurs within 120 days of the auction), Licensee will negotiate in good faith with Sprint Nextel for 60 days to reach an agreement pursuant to which Licensee will participate in the EBS spectrum auction and Sprint Nextel will serve as Licensee's agent and attorney-in-fact to bid for Licensee. Any such agreement will provide that Sprint Nextel will indemnify and hold Licensee harmless from any requirement to pay the U.S. Treasury any amount bid by Sprint Nextel on Licensee's behalf, as well as any liability incurred by Licensee as a result of Sprint Nextel's activities as agent and attorney-in-fact. In the event that Sprint Nextel does not request that Licensee participate in an EBS auction, or the Parties do not reach an agreement on Licensee's participation in the auction, Licensee shall be entitled to participate in any such auction in its own right, at its own expense, without obligation to Sprint Nextel with respect to any such capacity acquired thereby.

(ii)    In the event that the FCC permits but does not mandate Licensee to auction any of the Channels, Licensee will decline such invitation to auction unless Sprint Nextel and Licensee mutually agree on the parameters and limitations of Licensee's participation and its effect on this Agreement. In the event that the FCC requires Licensee to auction any of the Channels, the Parties will use best efforts, including participate in the auction, to ensure that the rights of the Parties under this Agreement continue in full force and effect provided, however, that such participation by Licensee will be at Sprint Nextel's expense.

10.    **TRANSFERS AND ASSIGNMENTS**

(a)    **Limited Transfers and Assignments by Sprint Nextel**. Subject to Subsection 16(f), Sprint Nextel may do any of the following, but Sprint Nextel will remain

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

primarily and directly responsible to Licensee for compliance with all its obligations under this Agreement:

    (i)    sublease any or all of the Sprint Nextel Capacity;

    (ii)    permit any direct or indirect affiliate of Sprint Nextel to use any portion of the Sprint Nextel Capacity; and

    (iii)    delegate any or all of its obligations under this Agreement.

(b)    **Full Transfers and Assignments by Sprint Nextel.**  Subject to Subsection 16(f), Sprint Nextel may assign this Agreement to any third party capable of fully performing the obligations of Sprint Nextel hereunder, provided that:

    (i)    Sprint Nextel agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Sprint Nextel's obligations hereunder and acknowledges all of Licensee's rights hereunder;

    (ii)    the assignment and assumption agreement is in a form reasonably acceptable to Licensee;

    (iii)    Sprint Nextel provides Licensee at least thirty (30) days advance notice of such proposed assignment, and upon closing of such assignment, provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to Licensee.

(c)    **By Licensee**.  Subject to Sprint Nextel's ROFR, and FCC Rules, Licensee may negotiate and enter into any contract to assign the License to a third party provided that:

    (i)    Licensee agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Licensee's obligations hereunder and acknowledges all of Sprint Nextel's rights hereunder, including Sprint Nextel's ROFR (as it applies to any subsequent transfer);

    (ii)    The assignment and assumption agreement is in a form reasonably acceptable to Sprint Nextel;

    (iii)    Licensee provides Sprint Nextel at least thirty (30) days advance notice of such proposed assignment, and upon closing of such assignment, provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to Sprint Nextel; and

    (iv)    the assignee is not a Competing Entity (defined below).

A "Competing Entity" is any party that (1) offers, provides or delivers a commercially available telecommunications service using EBS or BRS spectrum within the United States of America (a "Competing Service"), (2) owns (except a less than one percent (1%) interest in a publicly traded company) any interest in any entity which provides a Competing Service, (3) has granted, or is affiliated with a party that has granted, to any provider of a Competing Service a global or overarching agreement for the right,

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

13

option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires.

**11. TERMINATION OF AGREEMENT**

(a)     This Agreement will automatically terminate with respect to the License or affected Channel(s) upon the earlier of:

    (i)     an FCC Final Order denying the application for the long term de facto transfer lease of the Channels or the extension of the Term or an FCC Final Order denying the Waiver Application;

    (ii)    the loss or expiration without renewal of the License;

    (iii)   an FCC Final Order revoking, terminating or canceling the License; or

    (iv)    Sprint Nextel's acquisition of the License or some of the Channels respectively.

In such event, the Monthly Payments will be reduced on a *pro rata* basis to account for those Channels or portions thereof which are the subject of such termination.

(b)     This Agreement may be terminated by either Party upon material breach of the other Party, if the breaching Party is provided with written notice by the non-breaching Party of the alleged grounds for the breach and allowed a thirty (30) day period for cure following such notice. If any such material breach is not reasonably capable of being cured within such thirty (30) day period, and the breaching party clearly demonstrates ongoing good-faith efforts to cure the breach, then the cure period will be extended an additional one hundred eighty (180) days and this Agreement may not be terminated so long as the breaching Party commences action to cure such breach within the initial thirty (30) day period and thereafter diligently pursues such cure to completion within the additional one hundred eighty (180) days. The Parties agree that the loss of the License will not be deemed a material breach by Licensee if (i) Licensee has met all of its obligations under this Agreement, or any obligations that Licensee has not met have no material causal relationship to the loss; (ii) the loss is not due to the fault of Licensee; and (iii) the Licensee used best efforts to keep in force and renew the License. The Parties also agree that the denial of the DeFacto Transfer Application because the Waiver Application is denied and/or of the Waiver Application will not e deemed a material breach by Licensee.

(c)     Sprint Nextel may terminate this Agreement if, for any reason other than a breach of this Agreement by Sprint Nextel, the Sprint Nextel Capacity falls below 16.5 MHz.

(d)     Sprint Nextel may terminate this Agreement on thirty (30) days' written notice to Licensee if:

    (i)     the FCC has not granted the application for the long term de facto transfer lease of the Channels and such grant has not become a Final Order within one (1) year of the Waiver Consent Date or the FCC grants the application for the lease or any extension but places conditions that are materially adverse to Sprint Nextel;

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

14

(ii)     the FCC Rules are amended subsequent to the Effective Date in a manner that, in Sprint Nextel's sole discretion, materially impairs Sprint Nextel's ability to develop and launch a commercial wireless telecommunications system using BRS or EBS spectrum, or that places additional material obligations on Sprint Nextel as conditions of its use of the Channels in such a system; provided, however, that any such termination shall be exercised no later than 180 days following the date on which the amended FCC Rules become a Final Order; or

(iii)    the FCC has not granted the application for the Waiver and such grant has not become a Final Order within one (1) year of the Effective Date, the FCC denies the application for the Waiver or the FCC grants the application for the Waiver but places conditions that are materially adverse to Sprint Nextel.

(e)     Licensee may terminate this Agreement if:

(i)      Licensee advises and certifies ("Notice and Certification") to Sprint Nextel in writing that Licensee desires to permanently cease all EBS operations in the Area and Licensee assigns without any consideration its rights under the License and Channels to a qualified entity designated by Sprint Nextel during the period that is six (6) months following receipt by Sprint Nextel of the Notice and Certification ("Six Months Period"). If Sprint Nextel does not designate a replacement entity for Licensee during the Six Months Period, Licensee will seek the cancellation of the licenses for all of the Channels with the FCC and this Agreement will automatically terminate upon the cancellation by the FCC of such licenses; or

(ii)     Sprint Nextel fails to comply with the Communications Act or the FCC Rules (collectively, the "Governing Rules") governing its use of the Channels; provided that, Licensee's right to terminate under this Sub-section (ii) may be exercised only if (A) Licensee becomes aware of an on-going violation or repeated violations by Sprint Nextel of the Governing Rules, or any other violation of the Governing Rules that might adversely affect Licensee's rights in the License or impose liability on Licensee as licensee of the Channels, and (B) after giving notice to Sprint Nextel of such violation(s), Sprint Nextel does not immediately, in the case of an on-going violation, begin to cure such violation and fully effect such cure within thirty (30) days or such lesser period that the FCC may specifically impose, and in the case of repeated violations, take steps to prevent such violations in the future and fully effect such steps within thirty (30) days or such lesser period that the FCC may specifically impose, such that the violation does not re-occur. If any such failure to comply with the Governing Rules, as provided in (A) or (B) above, is not reasonably capable of being cured within a thirty (30) day period, Sprint Nextel clearly demonstrates ongoing good-faith efforts to cure the breach, and the FCC does not create an

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

15

earlier deadline, then the cure period will be extended an additional one hundred eighty (180) days and this Agreement may not be terminated so long as Sprint Nextel commences action to cure such breach within the initial thirty (30) day period and thereafter diligently pursues such cure to completion within the additional one hundred eighty (180) days.

(f)     If the FCC alters the Substantial Service Requirements applicable to the Channels in a manner that materially increases the burden on Sprint Nextel to satisfy such requirements, then Sprint Nextel no later than ninety (90) days following the change in such Substantial Service Requirements, may notify Licensee that Sprint Nextel is not assuming any obligations to meet such Substantial Service Requirements.  Within forty-five (45) days following such notice, Licensee may elect:

    (i)     to terminate this Agreement by providing notice thereof, in which case the Agreement will terminate forty-five (45) days after Licensee's notice; or

    (ii)    to continue this Agreement in which case neither Party will have liability to the other for the failure to meet such Substantial Service Requirements.    If Licensee does not elect to terminate this Agreement pursuant to this Subsection, this Agreement will continue except that neither Party will have liability to the other for the failure to meet such Substantial Service Requirements.

If Sprint Nextel does not provide notice of its intent to not assume the Substantial Service Requirements, Sprint Nextel will take all necessary steps to ensure that such Substantial Service Requirements are satisfied by the deadline established by the FCC.

(g)     The Parties will notify the FCC of the termination or expiration of this Agreement with respect to the License or any of the Channels within ten (10) calendar days following the termination or expiration.

(h)     Except as expressly set forth in this Agreement, upon the expiration or termination of this Agreement, the Parties will have no further obligations to each other.  Any termination or expiration of this Agreement, regardless of cause, will not release either Licensee or Sprint Nextel from any liability arising from any breach or violation by that Party of the terms of this Agreement prior to the expiration or termination.  The general and procedural provisions of this Agreement, which may be relevant to enforcing the obligations or duties of the Parties, will survive the expiration or termination of this Agreement until the obligations or duties are performed or discharged in full.

## 12.    EXPENSES

Except as expressly provided in this Agreement, each Party will pay its own expenses incident to the preparation and performance of this Agreement, and any amendment or modification to this Agreement, including, but not limited to, all fees and expenses of their respective legal counsel and any engineering, accounting and brokerage expenses in connection with this Agreement.  Sprint Nextel is entitled to one hundred percent (100%) of the revenue generated from the use of the Sprint Nextel

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

Capacity. Sprint Nextel also retains all right, title and interest in all of the assets operating on, or used in the operation of the Sprint Nextel Capacity, including without limitation all equipment, customers, and proprietary information such as customer or technical information, and Licensee will have no right or interest in or to such assets.

13. **COVENANT NOT TO COMPETE**

During the Term, Licensee will not directly or indirectly use Licensee's Capacity to compete with Sprint Nextel or its affiliates in any business activity or business or service offerings, or provide a Competing Service in the Area. Nothing in this Section prohibits Licensee from

  (a)  subject to Sprint Nextel's ROFR, leasing the capacity of the Channels to a third party for any period after the termination or expiration of this Agreement, or

  (b)  at any time:

    (i)  leasing EBS channels or any spectrum held by Licensee to any party for any purpose other than the Channels,

    (ii)  providing educational services (including but not limited to video and/or data services) to itself or to other schools, colleges, universities or other governmental or nonprofit entities, or

    (iii)  providing educational teleconferencing or other noncommercial activities advancing its educational purposes.

14. **CONFIDENTIALITY AND NON-DISCLOSURE**

  (a)  **Non-Disclosure of Information**. From the Effective Date until the three (3) year anniversary of the expiration or termination of this Agreement, the Parties and their Agents (as defined below) will:

    (i)  treat all Information (as defined below) as confidential and proprietary;

    (i)  hold all Information in strict confidence;

    (ii)  not disclose any Information to any entity or person (or the fact that the Information has been made available to it); and

    (iii)  not use any Information for any purpose other than implementing the terms of this Agreement.

For purposes of this Agreement, "Information" means all non-public information disclosed hereunder or in connection herewith, whether written or oral, that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential, including, without limitation, the terms of this Agreement, all negotiations and discussions relating to this Agreement and the matters subject to this Agreement, and all other information the Parties may supply and/or disclose to each other in conjunction with this Agreement relating to the business of the disclosing Party or its affiliates, whether supplied or disclosed during negotiations with respect to this Agreement, during the Initial Term or any Renewal Term of this Agreement.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

17

(b)   **Certain Exceptions**.  Notwithstanding anything to the contrary in Subsection (a) above:

    (i)   The term "Information" will not include information that:

       (A)   is information customarily required to be disclosed in an FCC application seeking consent for or renewal of the Leasing Arrangement.

       (B)   is required to be disclosed to the FCC in support of the lease applications or notices submitted to the FCC; provided, however, that the Parties will submit a confidentiality request to the FCC if the FCC seeks from the Parties a copy of this Agreement or any information regarding its terms (other than those terms referred to in (A), above);

       (C)   has been or becomes published or is now, or in the future, in the public domain without breach of this Agreement or breach of a similar agreement by a third party;

       (D)   prior to disclosure hereunder, is property within the legitimate possession of the receiving Party which can be verified by independent evidence;

       (E)   subsequent to disclosure hereunder, is lawfully received from a third party having rights therein without restriction of the third party's or the receiving Party's rights to disseminate the information and without notice of any restriction against its further disclosure; or

       (F)   is independently developed by the receiving Party through persons who have not had, either directly or indirectly, access to or knowledge of such Information which can be verified by independent evidence.

    (ii)   The Parties may disclose Information to their respective affiliates, employees, shareholders, agents, representatives, attorneys and accountants (collectively, "Agents") as required to perform obligations under this Agreement; provided, however, that prior to disclosing any Information to any Agent, the Party disclosing such Information to the Agent will advise the Agent of the Information's confidential nature and the terms of this Section 14 and cause the Agent to abide by the terms of this Section 14.

    (iii)   The Parties may disclose Information as required by applicable law, regulation or regulatory or legal process; provided, however, that if any Party or any of its Agents becomes legally compelled or required to disclose any of the Information, the Party so compelled will, if permitted by applicable law, regulation or regulatory or legal process, provide the other Party with prompt, prior, written notice of such requirement so that such other Party may seek a protective

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

18

order or other appropriate remedy; provided, further, that if such a protective order or other remedy is not obtained or available, each Party will, and will cause their Agents to, disclose only that portion of the Information that is legally required to be disclosed and to otherwise take all reasonable steps to preserve the confidential nature of the Information.

(iv)     Sprint Nextel may disclose Information to any third parties which are subject to the terms of a confidentiality agreement prohibiting the further dissemination of such Information beyond that which would otherwise be permitted if such third parties were a party to this Section 14.

## 15.    ASSUMPTION OF LIABILITIES

Neither Party is assuming or will be responsible for any of the other's liabilities or obligations (including but not limited to customer obligations) except as required by the FCC or as otherwise specifically set forth in this Agreement.

## 16.    FCC-MANDATED LEASING ARRANGEMENT OBLIGATIONS

(a)     Licensee and Sprint Nextel are familiar with the FCC Rules, the Communications Act of 1934, as amended ("Communications Act"), the Code of Federal Regulations, and will materially comply at all times with all such laws and regulations as they pertain to the use of the Channels.

(b)     This Agreement may be revoked, cancelled or terminated by the FCC, or Licensee pursuant to the terms of Subsection 11(e)(ii), if Sprint Nextel fails to comply with applicable FCC Rules.

(c)     Except as set forth in Subsection 9(e), neither Licensee nor Sprint Nextel will represent itself as the legal representative of the other before the FCC or any party, but will cooperate with each other with respect to FCC matters concerning the Licenses and the Channels.

(d)     If the License is revoked, cancelled, terminated or otherwise ceases to be in effect, Sprint Nextel has no continuing authority or right to use the Channels unless otherwise authorized by the FCC.

(e)     This Agreement is not an assignment, sale or transfer of the License itself.

(f)     This Agreement may only be assigned in compliance with its terms and the FCC Rules and will not be assigned to any entity that is ineligible or unqualified to enter into a spectrum leasing arrangement under the FCC Rules. Licensee will not consent to an assignment unless such assignment complies with applicable FCC Rules.

(g)     Licensee and Sprint Nextel will each retain a copy of this Agreement and make it available upon request by the FCC, in accordance with the confidentiality provisions in Section 14.

## 17.    REPRESENTATIONS AND WARRANTIES

(a)     **Mutual Representations and Warranties**.  Each Party represents and warrants to the other that:

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

19

(i)    it is duly organized, validly existing and in good standing under the laws of the state of its formation, and has full power and authority to carry out all the transactions contemplated by this Agreement;

(ii)    it has taken all requisite organizational action to approve the execution, delivery and performance of this Agreement;

(iii)    this Agreement constitutes a legal, valid and binding obligation enforceable against such Party in accordance with its terms, subject only to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally and general equitable principles regardless of whether such enforceability is considered in a proceeding at law or in equity; and

(iv)    neither the execution nor the delivery of this Agreement nor the performance of the transactions contemplated by it will conflict with, or result in any violation or default under, any term of the articles or certificate of incorporation, organizational documents, or by-laws of such Party, or any agreement, mortgage, indenture, license, permit, lease or other instrument, judgment, decree, order, law or regulation by which the Party or its assets are bound.

(b)    **Sprint Nextel's Representations and Warranties**.   Sprint Nextel hereby represents and  warrants that it has the requisite capabilities and financial resources to satisfy its   obligations set forth in this Agreement.

(c)    **Licensee's Representations and Warranties**.  Licensee represents and warrants, except to the extent altered by the facts and circumstances surrounding the Waiver Application, that:

(i)    Licensee has obtained, and is in material compliance with all rules that apply to the License and operation of the Channels, and the License is in full force and effect,

(ii)    to the best of Licensee's knowledge, there are no facts that may warrant the revocation or cancellation of the License,

(iii)    Licensee is the lawful and exclusive licensee under the License

(iv)    to the best of Licensee's knowledge, the Channels are not subject to any authorizations other than those listed on Schedule A.

(v)    Except as reflected in the public records of the FCC and listed on Exhibit C, there are no applications pending before the FCC or any other governmental authority that relate in any way to the Channels or the License;

(vi)    As of the Effective Date, there are no ongoing Interference Consents or other agreements or undertakings that limit or transfer the whole or any part of the GSA of the License or any of the Channels;

SPRINT NEXTEL
CONFIDENTIAL AND PROPRIETARY

(vii)    there is no complaint, inquiry, investigation or proceeding pending before the FCC, or any other governmental authority or regulatory body, or, to the best knowledge of Licensee, threatened which could result in the revocation, modification, restriction, cancellation, termination or non-renewal of, or other action adversely affecting the License or the Channels,-and knows of no facts that, if brought to the attention of the FCC, a governmental authority or regulatory body, could result in the revocation, modification, restriction, cancellation, termination or non-renewal of, or other action adversely affecting, the License or any of the Channels; and

(viii)    there is no pending or threatened litigation that relates in any way to the Channels or License or that would otherwise prevent, impede, or have the effect of preventing or impeding Licensee from satisfying its obligations under this Agreement.

(ix)    Licensee is satisfying the FCC Rules to fulfill its obligations under this Agreement, to maintain the License, and remain an eligible EBS licensee of the License and Channels.

(x)    Prior to the Effective Date, Licensee has terminated any prior leases involving the Channels or the License.

18.    **COVENANTS**

(a)    **Sprint Nextel's Covenants**.  Throughout the Term, Sprint Nextel will:

(i)    not take any action prohibited by this Agreement or fail to take any action that it is required to take pursuant to this Agreement which could reasonably be expected to cause the impairment of, or the revocation, cancellation, or suspension by the FCC of, or the FCC's refusal to renew Licensee's License or any portion thereof;

(ii)    not take any action or fail to take any action that it is required to take that would cause any of its representations and warranties under this Agreement to become untrue or incorrect in any respect;

(iii)    promptly notify Licensee of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Sprint Nextel's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranty been made at such time; and

(iv)    promptly notify Licensee of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Sprint Nextel's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranty been made at such time.

(b)    **Licensee's Covenants**.  Throughout the Term, Licensee will:

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

21

(i)    use best efforts to obtain and maintain all lawful licenses, permits and authorizations required or desired by Sprint Nextel for the use of the Channels;

(ii)    take all necessary action required pursuant to this Agreement to be able to meet its obligations to Sprint Nextel under this Agreement and remain eligible under the FCC Rules to hold the License with respect to all of the Channels, including meeting any educational use requirements;

(iii)    take all necessary steps to renew each License, as required under this Agreement, and not commit any act, engage in any activity prohibited by this Agreement, or fail to take any action that it is required to under this Agreement that could reasonably be expected to cause the impairment of, or the revocation, cancellation, or suspension by the FCC of, or the FCC's refusal to renew any License or any portion thereof;

(iv)    not take any action or fail to take any action that it is required to take that would cause any of its representations and warranties under this Agreement to become untrue or incorrect in any respect;

(v)    promptly notify Sprint Nextel of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Licensee's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranties been made at such time; and

(vi)    promptly notify Sprint Nextel of any event or circumstance which may reasonably be deemed to constitute a breach of or lead to a breach of Licensee's representations or warranties under this Agreement or that may cause any such representations or warranties to be materially misleading or untrue had such representation or warranties been made at such time.

19.    **INDEMNIFICATION**

(a)    **Sprint Nextel's Duty to Indemnify**. Sprint Nextel will defend, indemnify and hold Licensee and each of its affiliates and their respective partners, members, officers, directors, employees, agents, representatives, successors and assigns harmless from and against any and all liabilities, losses, damages and costs, including reasonable attorney's fees, to the extent resulting from, arising out of, or in any way connected with claims by a third party directly resulting from: (i) any breach by Sprint Nextel of any warranty, representation, agreement or obligation contained in this Agreement, including any breach of the obligation to comply with any legal requirements that apply to Sprint Nextel in conjunction with the provision of services on the Channels; (ii) the installation, maintenance, testing, repair, or physical operation of the facilities utilizing the Channels; or (iii) a breach by Sprint Nextel of an agreement with that third party.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

22

(b)  **Licensee's Duty to Indemnify**.  Licensee will defend, indemnify and hold Sprint Nextel and each of its affiliates and their respective partners, members, officers, directors, employees, agents, representatives, successors and assigns harmless from and against any and all liabilities, losses, damages and costs, including reasonable attorney's fees, to the extent resulting from, arising out of, or in any way connected with claims by a third party directly resulting from any breach by Licensee of any warranty, representation, agreement or obligation contained in this Agreement.

(c)  **Claims**.  In any circumstance in which a Party ("Indemnifying Party") is required by the provisions of this Agreement to indemnify the other Party ("Indemnified Party") with respect to any claim by a third party:

  (i)  the Indemnified Party will give prompt and reasonably detailed written notice of the circumstances to the Indemnifying Party (including, without limitation, the amount of such claim, or if the amount is not yet liquidated or otherwise determinable, the Indemnified Party's reasonable, good faith estimate thereof); provided, however, that no delay in giving notice will relieve the Indemnifying Party of its obligations unless the delay results in actual prejudice and then only to the extent of the actual prejudice;

  (ii)  the Indemnified Party will not make any admission or make or accept any offer of settlement or compromise or consent to entry of any judgment (other than a dismissal on the merits with prejudice without costs) or findings of fact without the prior written consent of the Indemnifying Party, which consent will not be unreasonably withheld, delayed or conditioned;

  (iii)  unless the counsel selected is reasonably objected to by the Indemnified Party, the Indemnifying Party will be entitled to direct and may assume the defense of any action and select counsel or additional co-counsel for such purpose, at its cost and expense;

  (iv)  after the Indemnifying Party assumes the defense of any action pursuant to clause (iii) of this Subsection, the Indemnifying Party will have no liability for any attorney's fees that are incurred by the Indemnified Party unless the employment of counsel by the Indemnified Party and that counsel's fees have been authorized by the Indemnifying Party;

  (v)  the Indemnified Party will reasonably cooperate with the Indemnifying Party and counsel in the defense of any action, and will provide documents and information and access to witnesses upon reasonable request; and

  (vi)  the Indemnifying Party will not settle any such action without the written consent of the Indemnified Party (which consent shall not be unreasonably withheld), or consent to the entry of any judgment or enter into any settlement which does not include as an unconditional term thereof the giving by the claimant or plaintiff to

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

23

the Indemnified Party a release from all liability with respect to the claim.

(d) **Survival**. This indemnification Section will survive for one (1) year following the expiration or termination of this Agreement and Sprint Nextel's ROFR (the "Indemnification Period"); <u>provided</u>, <u>however</u>, that this Section will not terminate with respect to any *bona fide* claim as to which the Party to be indemnified has, before the expiration of the Indemnification Period, delivered proper notice in accordance with this Section.

20. **NOTICES**

(a) Any notice required to be given by one Party to the other under this Agreement will be delivered using a reliable national express overnight delivery service and will be effective upon receipt. All notices will be delivered to the Parties at the following addresses:

<u>If to Sprint Nextel:</u>

Sprint Nextel Corporation
Legal Department
Attention: Spectrum Management
2001 Edmund Halley Drive
Reston, VA 20191
Phone: 703.433.4000

<u>With a copy to:</u>

Sprint Nextel Corporation
Vice President Spectrum Management
2001 Edmund Halley Drive
Reston, VA 20191
Phone: (703) 433-4471

<u>If to Licensee:</u>

Albright College
Attention: Vice President for Administration and Finance
P.O. Box 15234
1621 North 13th Street
Reading, PA 19612-5234
Phone: (610) 525-2443

<u>With a copy to:</u>

Todd D. Gray
Dow Lohnes PLLC
1200 New Hampshire Avenue, NW
Suite 800

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

24

Washington, D. C. 20036-6802
Phone: (202)776-2571

(b)    Either Party may change its addresses for receipt of notice or payment by giving notice of such change to the other Party as provided in this Section.

## 21.   MISCELLANEOUS

(a)    **Force Majeure**.  Neither Party will be liable for any nonperformance under this Agreement due to causes beyond its reasonable control that could not have been reasonably anticipated by the non-performing Party and that cannot be reasonably avoided or overcome (each such cause being a "Force Majeure Event"); if:

    (i)    the non-performing party gives the other Party prompt written notice of such cause, and in any event, within fifteen (15) calendar days of its discovery; and

    (ii)    such nonperformance will be excused only during the period when the Force Majeure Event occurs, continues to exist and cannot be reasonably overcome.

(b)    **Independent Parties**.  None of the provisions of this Agreement will be deemed to constitute a partnership, joint venture, or any other similar relationship between the Parties, and neither Party will have any authority to bind the other in any manner except as specifically indicated in this Agreement.  Neither Party will have or hold itself out as having any right, authority or agency to act on behalf of the other Party in any capacity or in any manner, except as may be specifically authorized in this Agreement.

(c)    **Specific Performance**.

    (i)    **Licensee:**  Licensee acknowledges that the License and Channels are unique and that Licensee's failure to perform this Agreement will cause Sprint Nextel irreparable damage and injury which cannot be reasonably or adequately compensated for in damages in an action at law.  Therefore, Sprint Nextel will be entitled, as a matter of right, to require of Licensee specific performance of all of Licensee's obligations under this Agreement, without a showing of irreparable harm beyond the concession of Licensee in this Subsection, or proof of specific monetary or other damages, but without waiving any right to money or other damages, and to obtain injunctive and other equitable relief in any court of competent jurisdiction to prevent the violation or threatened violation of any of the provisions of this Agreement.  Licensee acknowledges that the provisions of this Subsection constitute an essential element of this Agreement, without which this Agreement would not have been executed by Sprint Nextel.

    (ii)    **Sprint Nextel:**  Sprint Nextel acknowledges that the License and Channels are unique and that Sprint Nextel's failure to perform certain obligations under this Agreement will cause Licensee irreparable damage and injury which cannot be reasonably or

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

25

adequately compensated for in damages in an action at law. Therefore, Licensee will be entitled, as a matter of right, to require of Sprint Nextel specific performance of any obligation of Sprint Nextel under this Agreement, which if not performed by Sprint Nextel would result in the loss of the License, and which Licensee cannot have reasonably performed through alternative means, without a showing of irreparable harm beyond the concession of Licensee in this Subsection, or proof of specific monetary or other damages, but without waiving any right to money or other damages, and to obtain injunctive and other equitable relief in any court of competent jurisdiction to prevent the violation or threatened violation of such a Sprint Nextel obligation under this Agreement. Sprint Nextel acknowledges that the provisions of this Subsection constitute an essential element of this Agreement, without which this Agreement would not have been executed by Licensee.

(d)    **Applicable Law**.  The validity, construction and performance of this Agreement will be governed by and construed in accordance with the laws of the Commonwealth of **Pennsylvania**, without regard to the principles of conflict of laws.

(e)    **Waiver of Jury Trial**.  The Parties hereby irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any right that they may have to trial by jury of any claim or cause of action, or in any legal proceeding, directly or indirectly based upon or arising out of this Agreement or the transactions contemplated by this Agreement (whether based on contract, tort, or any other theory).  Each Party acknowledges that the provisions of this Subsection constitute an essential element of this Agreement, without which this Agreement would not have been executed by either Party.

(f)    **Attorneys' Fees**.  Except as may otherwise be specifically set forth in this Agreement, if any action is brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorneys' fees and costs, as determined by the court hearing the action.

(g)    **Severability**.  If any provision of this Agreement is found to be illegal, invalid or unenforceable, that provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired, unless continued enforcement of the provisions frustrates the intent of the Parties ("Frustration").  If the Parties, after negotiating in good faith, are unable to negotiate a modification of this Agreement to remedy a Frustration, this Agreement may be terminated by the Party that would suffer a materially adverse effect by the Frustration, by giving thirty (30) days prior written notice of such intent to terminate to the other Party.  The Parties will continue to negotiate in good faith during such thirty (30) day notice period to attempt to remedy the Frustration and if the Parties negotiate a remedy to the Frustration during such period, the notice provided to initiate such period will no longer be effective to terminate the Agreement.

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

(h)    **No Waiver**.  No delay or failure by either Party in exercising any right under this Agreement, and no partial or single exercise of that right, will constitute a waiver of that or any other right.  Failure to enforce any right under this Agreement will not be deemed a waiver of future enforcement of that or any other right.

(i)    **No Third Party Beneficiaries**.  This Agreement is for the sole benefit of the Parties and their successors and permitted assigns and nothing herein expressed or implied will give or be constructed to give to any other person or entity any legal or equitable rights hereunder.

(j)    **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but which collectively will constitute one and the same instrument. Original signatures transmitted by facsimile will be effective to create counterparts.

(k)    **Headings**.  The headings and captions used in this Agreement are for convenience only and are not to be considered in construing or interpreting this Agreement.

(l)    **Construction**.  Each Party has had the opportunity to engage legal counsel to review and negotiate the terms and provisions of this Agreement.  This Agreement will be interpreted in accordance with its terms and without any strict construction in favor of or against either Party based on draftsmanship of this Agreement or otherwise.

(m)    **Complete Agreement**.  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter addressed, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, between the Parties or any of their affiliates regarding this subject matter  No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Parties.

(n)    **Cooperation**.  The Parties will take such further action and execute such further assurances, documents and certificates as either Party may reasonably request to effectuate the purposes of this Agreement.  From time to time, Licensee will execute and deliver to Sprint Nextel an estoppel certificate in a form reasonably requested by Sprint Nextel.  Upon the request of Sprint Nextel, Licensee will use reasonable efforts to obtain from the FCC such evidence as Sprint Nextel deems reasonably acceptable to establish that the License will not be subject to impairment, cancellation, revocation or suspension as a result of the Waiver. Nothing contained in this Section shall be deemed to alter the termination right set forth in Section 11(d).  Furthermore, Sprint Nextel shall assume no liability whatsoever in connection with the Waiver Application.

22.    **INCLUDED SCHEDULES AND EXHIBITS**

The following schedules and exhibits are part of this Agreement:

(a)    Schedule A:  License and Channel Information; and

(b)    Schedule B:  Monthly Payment Schedule; and

(c)    Exhibit A:  Licensee and Electronic Filing Information Form.

(d)    Exhibit B:  Payee Setup Form

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

AGREED TO:

**Nextel Spectrum Acquisition Corp.**                    **Albright College**

By: _____                    By: _____

Name: **Robert Finch, VP**                    Name: Paul Gazzerro, Jr.

Title: **Authorized Signatory**                    Title: Vice President, Administration and Finance

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

**SCHEDULE A**

**LICENSE(S)**

| Call Sign | Channel(s) | Licensee | Location | # of Channels | Service Type | Grant Date | Expiration Date |
|-----------|------------|----------|----------|---------------|--------------|------------|-----------------|
| WND475 | D1, D2, D3, D4, (including the associated guard band channels) | Albright College | Reading, Pennsylvania | 4 | ED | 8/24/1998 | 8/24/2008 |

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

**SCHEDULE B**

**MONTHLY PAYMENT SCHEDULE**

**WND475  READING, PENNSYLVANIA**

| Year | Monthly Payment |
|------|-----------------|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |

**SPRINT NEXTEL**
**CONFIDENTIAL AND PROPRIETARY**

# Exhibit 5

## ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT (the "Agreement"), effective as of November 5th, 2019 (the "Effective Date"), is made and entered into by Clearwire Communications LLC, a Delaware limited liability company ("CWL"), NSAC, LLC, a Delaware limited liability company ("Transferor"), Clearwire XOHM LLC, a Delaware limited liability company ("XOHM"), and TDI Acquisition Sub, LLC, a Delaware limited liability company ("Transferee").

WHEREAS, CWL owns (either directly or indirectly through other wholly owned subsidiaries of CWL) 100% interest in both Transferor and Transferee;

WHEREAS, Transferor holds certain Federal Communications Commission spectrum licenses ("Spectrum Licenses"), and Transferor holds rights under certain Federal Communications Commission spectrum leases which have associated obligations and liabilities ("Spectrum Leases");

WHEREAS, Transferor desires to assign the Spectrum Licenses and its rights and obligations under the Spectrum Leases listed on Schedule 1 through a series of distributions and contributions to Transferee, and Transferee desires to accept the Spectrum Licenses and Spectrum Leases listed on Schedule 1 on the Effective Date;

NOW, THEREFORE:

In consideration of the foregoing recitals and the mutual covenants and agreements contained in this Agreement, the parties agree as follows:

1. Distribution of Spectrum Licenses and Spectrum Leases. Transferor hereby distributes its entire ownership interest in the Spectrum Licenses and its rights and obligations under the Spectrum Leases listed on Schedule 1 to XOHM, and XOHM hereby accepts from Transferor, all rights, title and interest in the Spectrum Licenses and Spectrum Leases listed on Schedule 1.

2. Contribution of Spectrum Licenses and Spectrum Leases. Immediately thereafter, XOHM hereby contributes its entire ownership interest in the Spectrum Licenses and rights and obligations under the Spectrum Leases listed on Schedule 1 that it received from Transferor to Transferee, and Transferee hereby accepts from XOHM, all rights, title and interest in the Spectrum Licenses and Spectrum Leases listed on Schedule 1.

3. Date of Distributions and Contributions of Spectrum Licenses. All of the distributions and contributions of Spectrum Licenses included in sections 1 and 2 are intended to occur on the Effective Date.

4. Assignment of Spectrum Leases. Transferor transfers and assigns all of its rights, title, interest and obligations, other than any such obligations accruing prior to the effectiveness of this Agreement (the "Lease Spectrum Rights and Obligations"), as the "Lessee" or "Operator" under the Spectrum Lease agreements identified in Schedule 1. The parties agree that the assignment of each of the Spectrum Leases

from Transferor to Transferee will be viewed as *pro forma* by the Federal Communications Commission ("FCC"), which requires that Transferor file a new lease application noting the ownership structure change. Within a reasonable time after the Effective Date, Transferor will undertake the *pro forma* FCC process. Upon receipt of FCC consent of the *pro forma* assignment of each Spectrum Lease from Transferor to Transferee, the aforementioned transfer and assignment will be deemed effective (the "Lease Assignment Date"). All of the distributions and contributions of Spectrum Leases included in sections 1 and 2 are intended to occur on the Lease Assignment Date, and Transferee agrees to assume all of the obligations and liabilities of Transferor under the respective Spectrum Lease and further acknowledges all of the licensee's rights thereunder on that date.

5. <u>Intent of the Parties</u>. It is the intent of the parties to this Agreement that the Spectrum Licenses, which are currently held by the Transferor, be transferred in their entirety, through a series of distributions and contributions, to Transferee as of the Effective Date. The parties further intend that Spectrum Lease rights, obligations and liabilities in their entirety, which are currently held by Transferor, be transferred in their entirety, through a series of distributions and contributions, to Transferee as of the Lease Assignment Date. In addition, the parties intend that the assignments contemplated by this Agreement will not alter the existing ownership structure of either Transferor or Transferee. The parties agree to carry out the terms of this Agreement in a manner consistent with this intent.

6. Miscellaneous.
   a. <u>Limited Representations and Warranties</u>.  No party hereto makes any representation or warranty whatsoever as to any matter hereunder.
   b. <u>Assignment</u>.  This Agreement shall be binding on, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.
   c. <u>Governing Law</u>.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Kansas.
   d. <u>Further Assurances</u>.  Each of the parties will, and will cause their respective affiliates to, execute and deliver such further certificates, agreements and other documents and to take such other actions as the other parties may reasonably request to consummate or implement the transactions contemplated by this Agreement or to evidence such events or matters.

*[Signature page follows]*

IN WITNESS WHEREOF, the parties have entered into this Agreement to be effective as of the Effective Date.

CLEARWIRE COMMUNICATIONS LLC

By: _____

Name: Patricia C. Tikkala
Title:  Vice President


NSAC, LLC

By: _____

Name: Larry Weians
Title:  Vice President


CLEARWIRE XOHM LLC

By: _____

Name: Larry Weians
Title:  Vice President


TDI ACQUISITION SUB, LLC

By: _____

Name: Patricia C. Tikkala
Title:  Vice President

**Schedule 1**
**List of Spectrum Licenses and Spectrum Leases to be transferred by Transferor to Transferee (through a series of distributions and contributions as outlined in the Agreement)**

**Transferor:** NSAC, LLC
**Transferee:** TDI Acquisition Sub, LLC

## Spectrum Licenses

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|---|---|---|---|
| B004 | Ada, OK | BTA004 | n/a |
| B006 | Albany-Tifton, GA | BTA006 | n/a |
| B007 | Albany, NY | BTA007 | n/a |
| B009 | Alexandria, LA | BTA009 | n/a |
| B017 | Anniston, AL | BTA017 | n/a |
| B019 | Ardmore, OK | BTA019 | n/a |
| B022 | Athens, GA | BTA022 | n/a |
| B026 | Augusta, GA | BTA026 | n/a |
| B029 | Baltimore, MD | BTA029 | n/a |
| B031 | Bartlesville, OK | BTA031 | n/a |
| B032 | Baton Rouge, LA | BTA032 | n/a |
| B036 | Bellingham, WA | BTA036 | n/a |
| B042 | Biloxi-Gulfport, MS | BTA042 | n/a |
| B043 | Binghamton, NY | BTA043 | n/a |
| B044 | Birmingham, AL | BTA044 | n/a |
| B049 | Blytheville, AR | BTA049 | n/a |
| B058 | Brunswick, GA | BTA058 | n/a |
| B060 | Buffalo, NY | BTA060 | n/a |
| B074 | Charlotte, NC | BTA074 | n/a |
| B076 | Chattanooga, TN | BTA076 | n/a |
| B091 | Columbia, SC | BTA091 | n/a |
| B092 | Columbus, GA | BTA092 | n/a |
| B094 | Columbus, MS | BTA094 | n/a |
| B108 | Decatur, AL | BTA108 | n/a |
| B115 | Dothan, AL | BTA115 | n/a |
| B116 | Dover, DE | BTA116 | n/a |
| B120 | Dyersburg, TN | BTA120 | n/a |
| B125 | El Dorado, AR | BTA125 | n/a |
| B127 | Elmira, NY | BTA127 | n/a |
| B130 | Enid, OK | BTA130 | n/a |
| B131 | Erie, PA | BTA131 | n/a |
| B140 | Fayetteville, AR | BTA140 | n/a |
| B146 | Florence, AL | BTA146 | n/a |
| B147 | Florence, SC | BTA147 | n/a |
| B153 | Ft. Smith, AR | BTA153 | n/a |
| B158 | Gadsden, AL | BTA158 | n/a |

## Schedule 1 (continued 2 of 6)
### Spectrum Licenses

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|-----------|-------------|---------------|-------------------------|
| B160 | Gainesville, GA | BTA160 | n/a |
| B164 | Glens Falls, NY | BTA164 | n/a |
| B165 | Goldsboro, NC | BTA165 | n/a |
| B175 | Greenville, MS | BTA175 | n/a |
| B176 | Greenville, NC | BTA176 | n/a |
| B177 | Greenville, SC | BTA177 | n/a |
| B186 | Hattiesburg, MS | BTA186 | n/a |
| B193 | Hot Springs, AR | BTA193 | n/a |
| B195 | Houma, LA | BTA195 | n/a |
| B198 | Huntsville, AL | BTA198 | n/a |
| B208 | Ithaca, NY | BTA208 | n/a |
| B210 | Jackson, MS | BTA210 | n/a |
| B211 | Jackson, TN | BTA211 | n/a |
| B214 | Jacksonville, NC | BTA214 | n/a |
| B219 | Jonesboro, AR | BTA219 | n/a |
| B232 | Knoxville, TN | BTA232 | n/a |
| B236 | Lafayette, LA | BTA236 | n/a |
| B237 | La Grange, GA | BTA237 | n/a |
| B238 | Lake Charles, LA | BTA238 | n/a |
| B246 | Laurel, MS | BTA246 | n/a |
| B248 | Lawton-Duncan, OK | BTA248 | n/a |
| B257 | Little Rock, AR | BTA257 | n/a |
| B267 | McAlester, OK | BTA267 | n/a |
| B271 | Macon, GA | BTA271 | n/a |
| B290 | Memphis, TN | BTA290 | n/a |
| B292 | Meridian, MS | BTA292 | n/a |
| B302 | Mobile, AL | BTA302 | n/a |
| B304 | Monroe, LA | BTA304 | n/a |
| B305 | Montgomery, AL | BTA305 | n/a |
| B311 | Muskogee, OK | BTA311 | n/a |
| B312 | Myrtle Beach, SC | BTA312 | n/a |
| B314 | Nashville, TN | BTA314 | n/a |
| B315 | Natchez, MS | BTA315 | n/a |
| B316 | New Bern, NC | BTA316 | n/a |
| B320 | New Orleans, LA | BTA320 | n/a |
| B321 | New York, NY | BTA321 | n/a |
| B324 | Norfolk, VA | BTA324 | n/a |
| B329 | Oklahoma City, OK | BTA329 | n/a |
| B331 | Olympia, WA | BTA331 | n/a |
| B334 | Opelika-Auburn, AL | BTA334 | n/a |
| B335 | Orangeburg, SC | BTA335 | n/a |
| B346 | Philadelphia, PA | BTA346 | n/a |
| B348 | Pine Bluff, AR | BTA348 | n/a |

## Schedule 1 (continued 3 of 6)
### Spectrum Licenses

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|-----------|-------------|---------------|-------------------------|
| B350 | Pittsburgh, PA | BTA350 | n/a |
| B354 | Ponca City, OK | BTA354 | n/a |
| B356 | Port Angeles, WA | BTA356 | n/a |
| B358 | Portland, OR | BTA358 | n/a |
| B361 | Poughkeepsie, NY | BTA361 | n/a |
| B364 | Providence, RI | BTA364 | n/a |
| B377 | Roanoke Rapids, NC | BTA377 | n/a |
| B379 | Rochester, NY | BTA379 | n/a |
| B384 | Rome, GA | BTA384 | n/a |
| B410 | Savannah, GA | BTA410 | n/a |
| B413 | Seattle-Tacoma, WA | BTA413 | n/a |
| B415 | Selma, AL | BTA415 | n/a |
| B419 | Shreveport, LA | BTA419 | n/a |
| B425 | Spokane, WA | BTA425 | n/a |
| B433 | Stillwater, OK | BTA433 | n/a |
| B436 | Sumter, SC | BTA436 | n/a |
| B438 | Syracuse, NY | BTA438 | n/a |
| B439 | Tallahassee, FL | BTA439 | n/a |
| B448 | Tulsa, OK | BTA448 | n/a |
| B449 | Tupelo-Corinth, MS | BTA449 | n/a |
| B450 | Tuscaloosa, AL | BTA450 | n/a |
| B453 | Utica-Rome, NY | BTA453 | n/a |
| B454 | Valdosta, GA | BTA454 | n/a |
| B455 | Vicksburg, MS | BTA455 | n/a |
| B461 | Washington, DC | BTA461 | n/a |
| B467 | Waycross, GA | BTA467 | n/a |
| B478 | Wilmington, NC | BTA478 | n/a |
| WFY738 | P35 GSA | P00092 | n/a |
| WGW715 | P35 GSA | P02042 | n/a |
| WHT799 | P35 GSA | P01343 | n/a |
| WLK351 | P35 GSA | P01881 | n/a |
| WLW738 | P35 GSA | P02916 | n/a |
| WMH664 | P35 GSA | P02686 | n/a |
| WMI374 | P35 GSA | P01446 | n/a |
| WMI821 | P35 GSA | P01458 | n/a |
| WMI881 | P35 GSA | P01466 | n/a |
| WMX206 | P35 GSA | P02713 | n/a |
| WMX207 | P35 GSA | P01477 | n/a |
| WMX626 | P35 GSA | P02602 | n/a |
| WMX629 | P35 GSA | P03458 | n/a |
| WMX650 | P35 GSA | P00699 | n/a |
| WMX675 | P35 GSA | P02325 | n/a |
| WMX712 | P35 GSA | P03748 | n/a |

## Schedule 1 (continued 4 of 6)
### Spectrum Licenses

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|-----------|-------------|---------------|-------------------------|
| WMX716 | P35 GSA | P00708 | n/a |
| WNTH843 | P35 GSA | P01607 | n/a |
| WNTH956 | P35 GSA | P01613 | n/a |
| WNTI796 | P35 GSA | P03257 | n/a |
| WNTJ459 | P35 GSA | P02797 | n/a |
| WQOH794 | P35 GSA | P01266 | n/a |
| WQOH798 | P35 GSA | P01265 | n/a |

### Spectrum Leases

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|-----------|-------------|---------------|-------------------------|
| KNZ69 | P35 GSA | P00825 | L000006063 |
| KNZ70 | P35 GSA | P02986 | L000006064 |
| KTN66 | P35 GSA | P00827 | L000002354 |
| KVS31 | P35 GSA | P01689 | L000006065 |
| KZE20 | P35 GSA | P01691 | L000006066 |
| WHG411 | P35 GSA | P01695 | L000001298 |
| WHG411 | P35 GSA | P01695 | L000032317 |
| WHN710 | P35 GSA | P02826 | L000001303 |
| WHN710 | P35 GSA | P02826 | L000032319 |
| WHR520 | P35 GSA | P01816 | L000000286 |
| WHR526 | P35 GSA | P01698 | L000001299 |
| WHR533 | P35 GSA | P02828 | L000000241 |
| WHR535 | P35 GSA | P03026 | L000007297 |
| WHR748 | P35 GSA | P03320 | L000001315 |
| WHR886 | P35 GSA | P00939 | L000000194 |
| WHR940 | P35 GSA | P00949 | L000001301 |
| WHR940 | P35 GSA | P00949 | L000032313 |
| WHR941 | P35 GSA | P02049 | L000001302 |
| WHR941 | P35 GSA | P020249 | L000032318 |
| WHR978 | P35 GSA | P00130 | L000010123 |
| WHR993 | P35 GSA | P03341 | L000001295 |
| WHR993 | P35 GSA | P03341 | L000032320 |
| WHT659 | P35 GSA | P03483 | L000000285 |
| WLX207 | P35 GSA | P02068 | L000010124 |
| WLX255 | P35 GSA | P03349 | L000001297 |
| WLX255 | P35 GSA | P03349 | L000032321 |
| WLX256 | P35 GSA | P00978 | L000001300 |
| WLX256 | P35 GSA | P00978 | L000032314 |
| WLX359 | P35 GSA | P01744 | L000002229 |
| WLX578 | P35 GSA | P01075 | L000001975 |
| WLX584 | P35 GSA | P02362 | LC_WLX584 |
| WLX616 | P35 GSA | P01758 | L000001290 |
| WLX634 | P35 GSA | P03071 | L000001271 |

### Schedule 1 (continued 5 of 6)

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|---|---|---|---|
| WLX695 | P35 GSA | P00295 | L000000289 |
| WLX769 | P35 GSA | P03078 | L000001273 |
| WLX818 | P35 GSA | P00316 | L000005357 |
| WLX819 | P35 GSA | P02134 | L000001749 |
| WLX846 | P35 GSA | P02536 | L000001958 |
| WLX890 | P35 GSA | P00343 | L000002638 |
| WLX924 | P35 GSA | P01128 | L000010281 |
| WMY489 | P35 GSA | P01953 | L000000795 |
| WNC202 | P35 GSA | P00382 | L000003951 |
| WNC231 | P35 GSA | P02003 | L000001624 |
| WNC236 | P35 GSA | P01139 | LC_WNC236 |
| WNC238 | P35 GSA | P02380 | L000005288 |
| WNC239 | P35 GSA | P00399 | L000003952 |
| WNC293 | P35 GSA | P01141 | L000001291 |
| WNC294 | P35 GSA | P00420 | L000000459 |
| WNC318 | P35 GSA | P01144 | L000001942 |
| WNC329 | P35 GSA | P02189 | L000004071 |
| WNC330 | P35 GSA | P03944 | L000001941 |
| WNC331 | P35 GSA | P03945 | L000001748 |
| WNC332 | P35 GSA | P02190 | L000005359 |
| WNC346 | P35 GSA | P02193 | L000010309 |
| WNC367 | P35 GSA | P02196 | L000010292 |
| WNC372 | P35 GSA | P00446 | L000006108 |
| WNC393 | P35 GSA | P00454 | L000001012 |
| WNC397 | P35 GSA | P02551 | L000001956 |
| WNC421 | P35 GSA | P02552 | L000001854 |
| WNC435 | P35 GSA | P02369 | L000003950 |
| WNC451 | P35 GSA | P02212 | L000010304 |
| WNC452 | P35 GSA | P00474 | L000005356 |
| WNC484 | P35 GSA | P01160 | L000017335 |
| WNC492 | P35 GSA | P03151 | L000001257 |
| WNC534 | P35 GSA | P00501 | L000004072 |
| WNC539 | P35 GSA | P02227 | L000001988 |
| WNC564 | P35 GSA | P00510 | LC_WNC564 |
| WNC669 | P35 GSA | P00543 | L000019573 |
| WNC734 | P35 GSA | P02255 | L000001260 |
| WNC750 | P35 GSA | P01194 | L000001293 |
| WNC779 | P35 GSA | P02575 | L000001270 |
| WNC829 | P35 GSA | P03190 | L000001943 |
| WNC831 | P35 GSA | P01207 | L000001959 |
| WNC832 | P35 GSA | P00592 | L000001891 |
| WNC919 | P35 GSA | P00617 | L000003949 |
| WND206 | P35 GSA | P02586 | L000000180 |
| WND234 | P35 GSA | P00793 | LC_WND234 |

## Schedule 1 (continued 6 of 6)

| Call Sign | Market Name | Market Number | Lease ID, if applicable |
|---|---|---|---|
| WND296 | P35 GSA | P03216 | L000000291 |
| WND297 | P35 GSA | P01232 | L000002338 |
| WND321 | P35 GSA | P00661 | L000002432 |
| WND330 | P35 GSA | P02309 | L000001269 |
| WND331 | P35 GSA | P03219 | L000001258 |
| WND348 | P35 GSA | P03221 | L000002521 |
| WND357 | P35 GSA | P03222 | L000005762 |
| WND400 | P35 GSA | P00678 | L000003947 |
| WND475 | P35 GSA | P02321 | L000001890 |
| WND478 | P35 GSA | P00691 | L000001847 |
| WND503 | P35 GSA | P00696 | L000001286 |
| WND547 | P35 GSA | P02089 | L000001643 |
| WND547 | P35 GSA | P02089 | L000038105 |
| WND554 | P35 GSA | P02090 | L000001264 |
| WND599 | P35 GSA | P02085 | L000002699 |
| WND601 | P35 GSA | P00214 | L000000168 |
| WQCI659 | P35 GSA | P03765 | L000001267 |
| WQCI690 | P35 GSA | P03766 | L000001256 |
| WQCK957 | P35 GSA | P03769 | L000001253 |
| WQCK961 | P35 GSA | P03770 | L000001265 |
| WQCL437 | P35 GSA | P03773 | L000001259 |
| WQCL444 | P35 GSA | P03774 | L000001266 |
| WQCQ857 | P35 GSA | P03812 | L000001252 |

# Exhibit 6

| | |
|---|---|
| **From:** | Jenna Smalley |
| **To:** | "PSchuchman@kozloffstoudt.com" |
| **Cc:** | Brown, Kenneth; Mandernach, Christopher; Hurley, Denis; Eric Schreiner; Steve Engelmyer |
| **Subject:** | TDI Acquisition Sub LLC v. Albright College, Berks County CCP, No. 21-04881 |
| **Date:** | Thursday, July 22, 2021 10:35:23 AM |
| **Attachments:** | image001.jpg |
| | image002.jpg |
| | image003.png |
| | image004.png |
| | Berks Co. Subpoena Package to Academia Spectrum, LLC (2021-07-22).pdf |

**SENT ON BEHALF OF ERIC J. SCHREINER, ESQ.**

Mr. Schuchman:

Attached please find a Notice of Intent to Serve Subpoena to Produce Documents or Things for Discovery Pursuant to Rule 4009.22, with the proposed subpoena attached. Kindly advise if you will agree to waive the 20-day notice period. You will also receive a hard copy of the attached via Federal Express.

Thank you,



Jenna Smalley
Paralegal
Kleinbard LLC



Three Logan Square, 5th Floor
1717 Arch Street |Philadelphia, PA  19103
D | 267.443.4108
F | 215.568.0140
E | jsmalley@kleinbard.com
W| www.kleinbard.com

  

This e-mail message, including any attachment(s), is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged and/or confidential. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, please notify us immediately by replying to this message and then delete this message from your system.

# Exhibit 7

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. 21-04881 |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

### CERTIFICATE PREREQUISITE TO SERVICE OF SUBPOENA TO PRODUCE DOCUMENTS OR THINGS FOR DISCOVERY PURSUANT TO RULE 4009.22

As a prerequisite to service of a subpoena for documents and things pursuant to Rule 4009.22, Plaintiff, TDI Acquisition Sub LLC, certifies that:

1.     A Notice of Intent to Serve the Subpoena with a copy of the Subpoena attached thereto was mailed or delivered to Defendant Albright College at least twenty (20) days prior to the date on which the Subpoena is sought to be served;

2.     A copy of the Notice of Intent, including the proposed Subpoena, is attached to this Certificate as "Exhibit A";

3.     No objection to the Subpoena has been received; and

{02122848;v1 }

4.    The Subpoena that will be served is identical to the Subpoena that is attached to the Notice of Intent to serve the Subpoena, except that it will be converted to a Virginia subpoena form in accordance with Virginia law because the subpoena will be served in that state pursuant to the Uniform Interstate Depositions and Discovery Act, as adopted by the Commonwealth of Virginia, Va. Code § 8.01-412.10.

Dated:  August 13, 2021

/s/  Eric J. Schreiner
Steven J. Engelmyer, Esq. (ID No. 42840)
Eric J. Schreiner, Esq. (ID No. 76721)
1717 Arch Street, 5th Fl.
Three Logan Square
Philadelphia, PA  19103
Telephone:  215-568-2000
Facsimile:  215-568-0140
sengelmyer@kleinbard.com
eschreiner@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
Christopher J. Mandernach*
Thomas K. White*
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
kbrown@wc.com
cmandernach@wc.com
twhite@wc.com
dhurley@wc.com
* application for admission *pro hac vice* forthcoming

*Attorneys for TDI Acquisition Sub LLC*

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

{02122848;v1 }

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

## **CERTIFICATE OF SERVICE**

       I, Eric J. Schreiner, Esq., hereby certify that on this 13th day of August, 2021, I caused a true and correct copy of the foregoing Notice of Intent to Serve Subpoena to Produce Documents and Things for Discovery Pursuant to Rule 4009.22 to be served upon the following counsel via email and first-class mail:

> Peter F. Schuchman, Esq.
> Kozloff Stoudt, P.C.
> 2640 Westview Dr.
> Wyomissing, PA 19610
> *Attorney for Defendant Albright College*

> /s/ Eric J. Schreiner
> Eric J. Schreiner, Esq.

{02122848;v1 }

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

# EXHIBIT A

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | |
|---|---|
| TDI ACQUISITION SUB LLC, | IN THE COURT OF COMMON PLEAS |
| | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | |
| | |
| v. | CIVIL ACTION/DECLARATORY |
| | JUDGMENT |
| ALBRIGHT COLLEGE, | |
| | NO. 21-04881 |
| Defendant. | |

## NOTICE OF INTENT TO SERVE SUBPOENA TO PRODUCE DOCUMENTS OR THINGS FOR DISCOVERY PURSUANT TO RULE 4009.22

TO:    Peter F. Schuchman, Esq.
       Kozloff Stoudt, P.C.
       2640 Westview Dr.
       Wyomissing, PA 19610
       *Attorney for Defendant Albright College*

Eric J. Schreiner, Esquire, intends to serve a Subpoena identical to the one that is attached to this Notice.  You have twenty (20) days from the date listed below in which to file of record and serve upon the undersigned an objection to the subpoena.  If the 20-day Notice period is waived, or, if no objection is made, then the subpoena may be served.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

{02112555;v1 }

Dated:  July 22, 2021

Eric J. Schreiner, Esquire (ID No. 76721)
Steven J. Engelmyer, Esquire (ID No. 42840)
1717 Arch Street, 5th Fl.
Three Logan Square
Philadelphia, PA  19103
Telephone:  215-568-2000
Facsimile:  215-568-0140
sengelmyer@kleinbard.com
eschreiner@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
Christopher J. Mandernach*
Thomas K. White*
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
kbrown@wc.com
cmandernach@wc.com
twhite@wc.com
dhurley@wc.com
* application for admission *pro hac vice*
forthcoming

*Attorneys for TDI Acquisition Sub LLC*

{02112555;v1 }

## <u>CERTIFICATE OF SERVICE</u>

I, Eric J. Schreiner, Esq., hereby certify that on this 22nd day of July, 2021, I caused a true and correct copy of the foregoing Notice of Intent to Serve Subpoena to Produce Documents and Things for Discovery Pursuant to Rule 4009.22 to be served upon the following counsel via e-mail and Federal Express:

> Peter F. Schuchman, Esq.
> Kozloff Stoudt, P.C.
> 2640 Westview Dr.
> Wyomissing, PA 19610
> *Attorney for Defendant Albright College*

Eric J. Schreiner, Esq.

{02112555;v1 }

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF BERKS

TDI ACQUISITION SUB LLC,                    :
     Plaintiff                            :
                                 :
v.                                          :
                                 :    Case No.    21-04481
ALBRIGHT COLLEGE,                           :
     Defendant.                           :
                                 :

## SUBPOENA TO PRODUCE DOCUMENTS OR THINGS FOR DISCOVERY

## PURSUANT TO 4009.22

TO: ACADEMIA SPECTRUM, LLC, c/o Registered Agents Inc., 4445 Corporation Lane, Suite 264
                  (Name of Person or Entity) Virginia Beach, Virginia 23462

Within twenty (20) days after service of this subpoena, you are ordered by the Court to produce the following documents or things:  See Attachment A.

at KLEINBARD LLC c/o Eric J. Schreiner, Esq., Three Logan Square, 1717 Arch Street, 5th Floor
                   (Address)        Philadelphia, PA 19103

You may deliver or mail legible copies of the documents or produce things requested by this subpoena, together with the certificate of compliance, to the party making this request at the address listed above. You have the right to seek in advance the reasonable cost preparing the copies or producing the things sought.

If you fail to produce the documents or things required by this subpoena within twenty (20) days after its service, the party serving this subpoena may seek a court order compelling you to comply with it.

This subpoena was issued at the request of the following person:

NAME:                       Eric J. Schreiner, Esq.

ADDRESS:                    Three Logan Square, 1717 Arch Street

                       5th Floor, Philadelphia, PA 19103

TELEPHONE:                  (215) 496-7217

SUPREME COURT ID#:          No. 76721

ATTORNEY FOR:               Plaintiff

BY THE COURT: _____

DATE: 7/22/2021      BY:    _____
                       JONATHAN K. DEL COLLO, PROTHONOTARY

Seal of the Court

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

## Notice of Language Rights



**Language Access Coordinator**
Berks County Services Center, 633 Court Street, 4th Floor, Reading, PA 19601
610-478-6208 x5712
Interpreter@countyofberks.com

**English:** You have the right to an interpreter at no cost to you. To request an interpreter, please inform court staff using the contact information provided at the top of this notice.

**Spanish/Español:** Usted tiene derecho a un intérprete libre de costo. Para solicitar un intérprete favor de informárselo al personal judicial utilizando la información provista en la parte superior de este aviso.

**Mandarin/Cantonese Simplified Chinese/普通话/粤语简体中文:** 您有权获得免费的口译员服务。若需要口译员，请使用本通知上方提供的联系信息通知法院工作人员。

**Mandarin/Cantonese Traditional Chinese/普通話/廣東話繁體中文:** 您有權要求免費傳譯服務。如欲要求傳譯服務，請參閱本通知頂部的聯絡資料，通知法庭職員。

**Arabic/العربية :** يحق لك الحصول على مترجم دون دفع أي تكلفة من جانبك. لطلب مترجم، يُرجى إعلام موظفي المحكمة باستخدام معلومات الاتصال المقدمة في الجزء العلوي من هذا الإشعار.

**Russian/Русский:** У вас есть право на бесплатные услуги переводчика. Заявка на переводчика подается в суд по адресу, телефону или эл. почте, указанным выше в заголовке этого уведомления.

**Vietnamese/Tiếng Việt:** Quý vị có quyền được một thông dịch viên giúp mà không tốn chi phí nào cả, xin hãy báo cho nhân viên tòa án dùng thông tin liên lạc có ở trên đầu thông báo này.

**Nepali/नेपाली:** तपाईंको निःशुल्क रूपमा भाषा अनुवादक राख्न पाउने अधिकार छ। अनुवादकको लागि अनुरोध गर्न, यस सूचनाको माथि दिइएको सम्पर्क जानकारी भरेर अदालतका कर्मचारीहरूलाई जानकारी दिनुहोस्।

**Korean/한국어:** 귀하는 비용에 대한 부담 없이 통역 서비스를 받을 권리가 있습니다. 통역 서비스를 요청하려면 본 통지서의 상단에 기재된 연락처를 통해 법원 직원에게 알리십시오.

**Polish/Polski:** Ma Pan/Pani prawo do nieodpłatnego skorzystania z usług tłumacza ustnego. Aby zwrócić się o wsparcie ze strony tłumacza ustnego, proszę skontaktować się z pracownikami sądu, korzystając z danych znajdujących się w górnej części niniejszego dokumentu.

**Punjabi/پنجابی /Pakistan:** تہاڈے کول بغیر ادائیگی کیتیاں اک مترجم حاصل کرن دا حق اے۔ مترجم دی درخواست کرن لئی، میربانی کر کے ایس نوٹس دے اوتے فرابم کیتیاں رابطے دیاں معلومات نوں ورتدیاں عدالت دے عملے نوں اطلاع دیو۔

**Punjabi/ਪੰਜਾਬੀ /India:** ਤੁਹਾਨੂੰ ਇਕ ਦੁਭਾਸ਼ੀਆ ਹਾਸਲ ਕਰਨ ਦਾ ਹੱਕ ਹੈ, ਜਿਸ ਦੀ ਤੁਹਾਨੂੰ ਕੋਈ ਲਾਗਤ ਨਹੀਂ ਲੱਗੇਗੀ। ਦੁਭਾਸ਼ੀਏ ਲਈ ਬੇਨਤੀ ਕਰਨ ਵਾਸਤੇ, ਕਿਰਪਾ ਕਰ ਕੇ ਅਦਾਲਤ ਦੇ ਅਮਲੇ ਨੂੰ ਜਾਣੂ ਕਰਵਾਓ ਤੇ ਇਸ ਲਈ ਇਸ ਨੋਟਿਸ ਦੇ ਸਿਖਰ ਉੱਤੇ ਦਿੱਤੀ ਸੰਪਰਕ ਜਾਣਕਾਰੀ ਦਾ ਇਸਤੇਮਾਲ ਕਰੋ।

**Portuguese/Português:** Você tem direito a um intérprete gratuitamente. Para solicitar um intérprete, informe à nossa equipe usando os dados de contato mostrados na parte superior deste aviso.

**Somali/Somaali:** Waxaad xaq u leedahay in lagu turjumo lacag la'aan ah. Si aad u codsato turjumaanka, fadlan u sheeg maxkamadda shaqaalaha adiga oo isticmaala macluumaadka ciwaanka kor lagu siiyay ee ogeysiiskaan.

**Haitian Creole/Kreyòl Ayisyen:** Ou gen dwa resevwa sèvis yon entèprèt gratis. Pou mande pou yon entèprèt, tanpri fè manm pèsonèl tribinal la konnen lè ou sèvi avèk enfòmasyon an yo te bay ou nan tèt avi sa a.

**French/Français :** Vous avez le droit de bénéficier gratuitement de l'assistance d'un interprète. Pour en faire la demande, veuillez en informer le personnel du tribunal à l'aide des coordonnées indiquées en haut de page.

**ATTACHMENT A**

**DEFINITIONS**

1.    The terms "You," "Your," and "Academia Spectrum" mean Academia Spectrum LLC, including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

2.    The term "Albright License" means Albright's license for Educational Broadband Service ("EBS") spectrum channels D1, D2, D3, and D4 under call sign WND475 in the Reading, Pennsylvania area, as granted to Albright by the Federal Communications Commission.

3.    The term "Albright Lease Agreement" means the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement between TDI, as successor in interest to original signatory Nextel Spectrum Acquisition Corporation, and Albright, which was entered into on March 2, 2007.

4.    The term "all" means all or any, and the term "any" means all or any.

5.    The term "BRS Spectrum License" means any license to use BRS spectrum and any right to use the spectrum to which that license pertains.

6.    The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person. "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

7.    The term "Complaint" means the complaint filed by TDI in this lawsuit on May 27, 2021, and any amended version thereof.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

{02112554;v1 }

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

8.    The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

9.    The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

10.    The terms "Defendant" and "Albright" mean Albright College, including any of its divisions, subsidiaries, affiliates, directors, officers, principals, employees, attorneys, agents, and representatives.

11.    As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things. The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

12.    The term "EBS Spectrum License" means any license to use EBS spectrum and any right to use the spectrum to which that license pertains.

13.    The terms "includes" and "including" mean includes and including without limitation. The terms "includes" and "including" do not limit the scope of any request.

14.    The term "Offer" means any bid, proposal, or offer.

15.    The term "person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

16.    The terms "TDI" and "Plaintiff" mean TDI Acquisition Sub LLC, a Delaware limited liability company, as well as any of its predecessors in interest, including Nextel Spectrum Acquisition Corporation, and all officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on behalf of any of these entities.

17.    The terms "WCO" and "WCO Spectrum" mean WCO Spectrum LLC, including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

18.    The term "WCO's Offer" means the April 30, 2021 non-binding offer letter from WCO to Albright, including Exhibit A attached thereto, which is entitled "Material Terms for License Purchase Offer." The term "WCO's Offer" also includes any modified, supplemented, or revised version of the April 30, 2021 non-binding offer letter, and any subsequent Offer from WCO concerning the Albright License.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

## INSTRUCTIONS

1.     You are to produce the requested Documents and Communications in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Berks County Court Local Rules, and any other applicable laws, rules, or regulations.

2.     These requests call for all Documents and Communications within Your possession, custody, or control.

3.     If in answering any of these requests You encounter any ambiguity in construing the request or any definition or instruction relevant to the request, set forth the matter deemed ambiguous and the construction selected or used in answering the request.

4.     Documents and Communications produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to correspond with the categories in the request.  All Documents and Communications produced in response to these requests should be Bates stamped or otherwise marked in sequential order.  If there are no Documents or Communications responsive to any particular request, You should so state in writing.

5.     You must produce ESI responsive to these requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact.  Pa. R. Civ. P. 4009.1(b).

6.     References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7.     References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest,

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

parents, subsidiaries, affiliates, divisions, departments, officers, or members and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8.    This subpoena calls for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, representatives, and agents or other persons acting on Your behalf, without regard to the physical location of such Documents or Communications.

9.    In responding to these requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf.  If Your response is that the Documents and Communications are not within Your possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each such Document and Communication.  If Your response is that Documents are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.    These requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production.  Pa. R. Civ. P. 4007.4.

11.    Each request contemplates production of all Documents or Communications in their entirety. If only a portion of a Document or Communication is responsive to one or more requests, the Document or Communication shall be produced in its entirety.

12.    If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

a.    each and every ground of privilege or protection claimed;

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

b.    the author and all recipients;

c.    the type of Document or Communication;

d.    the Document or Communication's general subject matter;

e.    the Document or Communication's date; and

f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule of Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced. For each, indicate the portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope.

15.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the request would indicate.

16.    If You believe that Your response to any request is incomplete, then You must respond with all responsive information of which You are now aware.

17.    In accordance with 231 Pa. Code § 4009.23, You are required to complete the Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant to Rule 4009.23, which is also attached here.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

## **DOCUMENTS TO BE PRODUCED**

1.    All Documents and Communications concerning the Albright License.

2.    All Documents and Communications concerning the Albright Lease Agreement.

3.    All Communications with Albright.

4.    All Communications with WCO.

5.    All Documents and Communications concerning WCO's Offer.

6.    All Documents and Communications concerning WCO's expressions of interest in making an Offer to purchase the Albright License.

7.    All Documents and Communications concerning any other person's Offer for the Albright License.

8.    All Documents and Communications concerning any other person's expressions of interest in making an Offer for the Albright License.

9.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications service in the United States.

10.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of (except a less than 1% interest in a publicly traded company) any interest in any entity which offers, provides, or delivers any telecommunications service within the United States.

11.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated grant or sale of any EBS Spectrum License or BRS Spectrum License—which, per the Definitions above, includes the right or option to use EBS or BRS spectrum—to any provider of a telecommunications service within the United States.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

12.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of any EBS Spectrum License or BRS Spectrum License.

13.    All Documents and Communications concerning WCO's business plan, strategy, or business model with respect to its acquisition of any EBS Spectrum License or BRS Spectrum License.

14.    All Documents and Communications concerning WCO's criteria for acquiring EBS Spectrum Licenses or BRS Spectrum Licenses.

15.    All Documents and Communications concerning WCO's affiliation or other relationship with any person which currently possesses—or has made, plans to make, or has contemplated making an Offer to acquire—any EBS Spectrum License or BRS Spectrum License.

Received County of Berks Prothonotary's Office on 08/13/2021 10:39 AM Prothonotary Docket No. 21-04881

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, Jr., PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. 21-04881 |
| Defendant. | : | |
| | : | |
| | : | |

## CERTIFICATE OF COMPLIANCE

TO: ACADEMIA SPECTRUM, LLC:

You are required to complete the following Certificate of Compliance when producing documents or things pursuant to the Subpoena.

**Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant To Rule 4009.23**

I, _____, (person served with subpoena) certify to the best of my knowledge, information and belief that all documents or things required to be produced pursuant to the subpoena issued on _____ (date of subpoena) have been produced.

Dated: _____        _____

                                Person Served with Subpoena

{02112554;v1 }

# Exhibit 8

## CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH, VIRGINIA

TDI Acquisition Sub LLC

                                Plaintiff

                                    *vs.*

Albright College

                                Defendant

Case No.: CL21-3972

## <u>AFFIDAVIT OF SERVICE</u>

I, Crystal Kleiber, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Subpoena Duces Tecum with Attachments in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 09/08/2021 at 9:45 AM, I served Academia Spectrum, LLC c/o Registered Agents, Inc., Registered Agent at 4445 Corporation Lane, Suite 264, Virginia Beach, Virginia 23462 with the Subpoena Duces Tecum with Attachments by serving Jessica Waddell, Agent, authorized to accept service on behalf of Registered Agents, Inc.

Jessica Waddell is described herein as:

Gender: Female    Race/Skin: White    Age: 36-50    Weight: 131-160    Height: 5'4"-5'8"    Hair: Brown    Glasses: No

I declare under penalty of perjury that this information is true and correct.

Sworn to before me on  9/9/21

Notary Public
My Commission Expires: Aug. 31, 2023

Crystal Kleiber

Client Ref Number:48374.0009
Job #: 1593501

MELONIE ZACHAU BOURQUE
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 7644234
My Comm. Expires August 31, 2023

I was commissioned a
notary public as
Melonie Zachau Bourque



412 N. Main Street, Suite 100
Buffalo, WY 82834
307-200-2803
RegisteredAgentsInc.com

The following people are authorized to accept documents on behalf of Registered Agents Inc.:

Steve Kamarek
Bill Kamarek
Jessica Waddell
Lindsey Herrera
Kirstey Kellogg
Kylie Ugarte
Mary-Claire Gabri

Thank you,

Bill Havre, Officer

RETURN



## SUBPOENA PURSUANT TO § 8.01-412.10
## VIRGINIA BEACH CIRCUIT COURT

To requesting party has submitted to the clerk of this court (i) a foreign subpoena, (ii) a written statement that the law of the foreign jurisdiction grants reciprocal privileges to citizens of the Commonwealth for taking discovery in the jurisdiction that issued the foreign subpoena, and (iii) provided, on attached list, the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

**TO THE SHERIFF OR ANY OTHER AUTHORIZED OFFICER**
You are commanded to summon:                                   **CL21-3972**
**ACADEMIA SPECTRUM, LLC**
**c/o REGISTERED AGENTS, INC**
**4445 CORPORATION LANE, SUITE 264**
**VIRGINIA BEACH, VA 23462**

**TO THE PERSON SUMMONED**
You are required to:

Produce and permit inspection and copying of designated books, documents, records, electronically stored information, or tangible things in the possession, custody, or control of the person **Within twenty (20) days after service of this subpoena (See Attachment A) at Kleinbard, LLC c/o Eric J. Schreiner, Esq., Three Logan Square, 1717 Arch Street, 5th Floor; Philadelphia, PA 19103 in accordance with the terms of the attached Subpoena,** in accordance with the terms of the attached foreign subpoena, which terms are incorporated in this subpoena.
Date Issued: **August 23, 2021**

Tina E. Sinnen, Clerk, Circuit Court

By: _____, Deputy Clerk

Name of Attorney for Requesting Party:
**Eric J. Schreiner, Esq.**
Telephone No.: **(215)-496-7217**

# Exhibit 9

_____
                                            :
TDI Acquisition Sub, LLC,                   :
                                            :
              Plaintiff,                    :
                                            :
        v.                                  :
                                            :
Albright College,                           :
                                            :
              Defendant.                    :
_____        :

## OBJECTIONS TO SUBPOENA

Academia Spectrum, LLC ("Respondent") hereby objects to the subpoena (the "Subpoena"), issued by Plaintiff, TDI Acquisition Sub, LLC ("Plaintiff"), in regard to the matter of *TDI Acquisition Sub, LLC v. Albright College*, and Respondent avers as follows:

1.       These Objections are made with respect to the Plaintiff's Subpoena and each and every definition, instruction, and request contained therein.  The assertion of the same, similar, or additional objections does not waive any of Respondent's Objections.

2.       Respondent objects to Plaintiff's Subpoena because the issuing Court lacks jurisdiction over the matter.

3.       Respondent objects to Plaintiff's Subpoena because it is facially defective, and fails to conform to the applicable Rules of Civil Procedure.

4.       Respondent objects to Plaintiff's Subpoena due to ineffective and improper service.

5.       Respondent objects to Plaintiff's definitions, instructions and Document Requests (collectively referred to as "Document Requests") in the Subpoena to the extent that they seek to impose unfair, overly broad and/or unreasonable obligations upon Respondent beyond the requirements of the applicable Rules of Civil Procedure and any other applicable rule or law.

6.      Respondent objects to Plaintiff's Document Requests to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, work-product doctrine, spousal privilege, self-critical analysis or investigative privilege, consulting expert exemption or any other privilege or exemption, or to the extent the Document Requests seek disclosure of confidential, proprietary or trade secret information protected from disclosure by applicable law.  To the extent that any information is inadvertently provided, which information is properly the subject of the attorney-client privilege or the work-product privilege, such disclosure is not to be construed as a waiver of the attorney-client privilege or the work-product privilege.  In the event that inadvertent disclosure occurs, Plaintiff shall make no use of the contents thereof, nor premise any further discovery on information learned therefrom.

7.      Respondent objects to Plaintiff's Document Requests to the extent that they are inaccurate, ambiguous, misleading or argumentative, assume facts that have no evidentiary basis, are unduly vague and incomprehensible or are unreasonably cumulative or duplicative.

8.      Respondent objects to Plaintiff's Document Requests to the extent that they are irrelevant and/or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Respondent objects to Plaintiff's Document Requests to the extent that they call for or seek legal conclusions and/or analysis.

10.     Respondent objects to Plaintiff's Document Requests to the extent that they seek documents and/or information not within Respondent's knowledge, possession, custody or control.

11.     Respondent objects to Plaintiff's Document Requests to the extent that they seek any document and/or information that is readily available to Plaintiff from its own records, from

a party to the litigation or is obtainable from publicly available sources that are more convenient, less burdensome and/or less expensive than if obtained from Respondent.

12.    By objecting to Plaintiff's Document Requests, Respondent specifically does not waive any rights under applicable statutes or laws, and does not consent to any court's jurisdiction.  No incidental or implied admissions are intended by the responses herein.  The fact that Respondent has objected to any Document Request herein is not intended and shall not be construed as a waiver of any part of any objection, whether general or specific.  In particular, Respondent does not in any way waive any objection but, rather, intends to preserve and does preserve all objections as to competency, relevancy, materiality and admissibility, any right to object to any use of the responses herein in any subsequent proceedings, including the trial of this or any action, all objections to vagueness, broadness and ambiguity, and all rights to object on any ground to any further discovery in this action.

13.    Respondent expressly reserves its right to supplement or modify its objections with such pertinent information as it may hereafter discover and will do so to the extent required by the applicable Rules of Civil Procedure and any other applicable rule or law.  Respondent also expressly reserves the right to raise supplemental objections.

# Exhibit 10

## IN THE CIRCUIT COURT OF VIRGINIA BEACH
## CIVIL DIVISION

TDI ACQUISITION SUB, LLC,

             Plaintiff,

v.

ALBRIGHT COLLEGE,

             Defendant.

**FOREIGN SUBPOENA IN A CIVIL ACTION**

No. CL21-3972

C.A. No. 21-04481
(pending in Berks County, Pennsylvania)

## <u>DECLARATION OF DENIS R. HURLEY</u>

I, Denis R. Hurley, state as follows:

1.      I am over the age of 18 and understand the meaning of an oath.  The statements set forth herein are based on my personal knowledge.

2.      I am an associate employed at Williams & Connolly LLP, one of the law firms of record for Plaintiff TDI Acquisition Sub LLC ("TDI") in the action *TDI Acquisition Sub LLC v. Albright College*, No. 21-04481, currently pending in the Court of Common Pleas, Berks County, Pennsylvania ("the Pennsylvania action"), and in this miscellaneous action before the Circuit Court of Virginia Beach.

3.      I make this declaration in support of TDI Acquisition Sub LLC's Opposition To Academia Spectrum LLC's Motion to Quash and Objection to Foreign Subpoena *Duces Tecum*.

4.      As one of the attorneys of record for TDI, I participated in a meet and confer call on October 5, 2021, between counsel for TDI and counsel for Academia Spectrum LLC ("Academia") with respect to the subpoena served on Academia on September 8, 2021, in the above-captioned case ("the Subpoena").

5.    During that phone call, counsel for TDI, including myself, asked counsel for Academia to offer specific objections to the particular document requests in the Subpoena. Counsel for Academia refused to offer any objections to the particular document requests. Counsel for Academia still has not communicated any such objections.

6.    During the same October 5, 2021 meet and confer call, counsel for Academia accused TDI of litigating in bad faith and abusing the discovery process.

7.    During the same October 5, 2021 meet and confer call, Academia erroneously stated that TDI has not attempted to request pertinent documents from Albright College ("Albright"), Defendant in the Pennsylvania action.

8.    In the course of discovery in the Pennsylvania action, TDI served document requests on Albright on July 8, 2021. On September 7, 2021, counsel for Albright stated that Albright had already provided to TDI all responsive documents in its possession, custody, or control.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:    1/7/2022

Denis R. Hurley

# Exhibit 11

# MITTS LAW, LLC

### 1822 Spruce Street
### Philadelphia, Pennsylvania 19103
### Tel: (215) 866-0110    Fax: (215) 866-0111

mmitts@mittslaw.com
mduffy@mittslaw.com
Phone: 215.866.0110
Fax: 215.866.0111

October 8, 2021

**VIA ELECTRONIC MAIL (to: dhurley@wc.com)**
Denis R. Hurley, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Re:    Subpoenas Issued to WCO Spectrum, LLC and Academia Spectrum, LLC
       *TDI Acquisition Sub, LLC v. Albright College*
       Court of Common Pleas of Berks County, Pennsylvania, Case No. 21-04481

Dear Mr. Hurley:

We are writing in response to your request for a further written statement of the positions of our clients, WCO Spectrum, LLC ("WCO") and Academia Spectrum, LLC ("Academia"), with respect to the subpoenas of TDI Acquisition Sub, LLC ("TDI" or "T-Mobile") issued to WCO and Academia in the matter of *TDI Acquisition Sub, LLC v. Albright College* out of the Court of Common Pleas of Berks County, Pennsylvania, Case No. 21-04481 (the "Berks County Action").[1]  This is without waiver or admission, and reservation of rights, concerning any previously asserted objections or otherwise, and is a courtesy, good faith response to TDI's inquiry through the course of the meet-and-confer process in which the parties are engaged.

TDI cannot trample the rights of a non-party on a procedural basis by insisting all objections were waived and thereby foreclose any challenge to an otherwise unenforceable subpoena.  WCO's objections to the WCO Subpoena are properly asserted, are not waived and must be resolved by a court, which would ultimately result in TDI's subpoena being rendered unenforceable.  WCO properly and timely contacted TDI's counsel upon learning of the WCO Subpoena and further detailed objections to the WCO Subpoena on September 30, 2021 (the "WCO Objections," a copy of which is appended hereto as Exhibit "3").

---

[1] Specifically, (1) the subpoena to produce documents or things issued to WCO on July 12, 2021 in the Berks County Action, upon which an out-of-state subpoena was issued in the Superior Court of Delaware on August 6, 2021, Case ID No. K21M-08-007 ( the "WCO Subpoena"), a copy of which is appended hereto as Exhibit "1;" and (2) the subpoena to produce documents or things issued to Academia on July 22, 2021 in the Berks County Action, upon which a foreign subpoena was issued in the Virginia Beach, Virginia Circuit Court on August 23, 2021, Case No. CL21003972-00 (the "Academia Subpoena"), a copy of which is appended hereto as Exhibit "2."

Denis R. Hurley, Esq.
October 8, 2021
Page 2

Regardless of the timing of the service of the objections, WCO's Objections cannot be waived because the circumstances here are unusual and WCO has acted at all times in good faith. The circumstances here are unusual particularly because the Delaware Superior Court lacks jurisdiction to enforce the WCO Subpoena, and the WCO Subpoena otherwise violates basic principles of third-party discovery, being overbroad on its face and far exceeding the bounds of fair discovery.

Critically, as set forth in the WCO Objections, and as a threshold matter, the Superior Court of Delaware does not have jurisdiction to enforce the WCO Subpoena. There are no documents of WCO within the State of Delaware over which the Superior Court of Delaware may exercise jurisdiction. Necessarily, there are no documents in Delaware responsive to any request within the WCO Subpoena. Notwithstanding the foregoing, WCO is in possession of documents outside of Delaware responsive to certain of TDI's all-encompassing, overbroad and improper requests, in the State of California – which documents are outside of the subpoena power of the Superior Court of Delaware, and not subject to production there. The WCO Subpoena cannot be enforced by the Superior Court of Delaware.

The WCO Subpoena is facially defective, for example lacking any date and time as to when a production is due, and intermingling instructions and rules of discovery under Delaware and Pennsylvania law in a manner that is fatally contradictory and confusing. A non-party cannot be expected to untangle the applicable rules and procedures surrounding a document it received concerning out-of-state third-party litigation, particularly where such divination is ultimately impossible, as is the case here.

None of the requests in the WCO Subpoena contain any limitation in time. Lacking that limitation in time, the WCO Subpoena seeks documents, for example, related to Gary Winnick's companies (request no. 15), which necessarily spans decades. WCO's requests seek documents subject to attorney-client privilege and are attorney work product, such as requests seeking everything related to legal documents, including contracts, offers and licenses. WCO's requests require legal conclusions, such as interpreting the terms of WCO's agreement with Albright College. WCO's requests seek privileged documents concerning all of these subjects and otherwise. All of this far exceeds the bounds of fair discovery and is otherwise impermissible.

TDI is improperly seeking, at the first instance, discovery from non-parties, which should not be unduly burdened with discovery that could be, and should be, first obtained through party discovery in the Berks County Action, and is otherwise already available to TDI through other sources. WCO is not even reasonably able to discern the claims and defenses in the Berks County Action, which establish the bounds of what discovery is appropriate. TDI has already amended its complaint once in apparent response to preliminary objections. It remains undecided by the court whether TDI's claims will be allowed to proceed past a potential subsequent demurrer or, if so, to what extent. Instead of placing this unclear, unfair burden on a non-party such as WCO, TDI should not be entitled to seek any third-party discovery until at least the close of pleadings in the Berks County Action, and then only to the extent it cannot obtain such discovery first from parties to the Berks County Action or other sources.

Denis R. Hurley, Esq.
October 8, 2021
Page 3

Disturbingly, the requests in the WCO Subpoena generally seek to invade WCO's most sensitive, highly confidential business practices, such as all documents and communications concerning WCO's actual, proposed, planned or contemplated acquisition or use of any EBS and BRS spectrum license (request no. 11). As TDI knows, acquisition of such spectrum licenses is a central component of WCO's business operations. TDI is thereby demanding WCO produce effectively every document related to WCO's business. There can be no greater overreach.

Even with the claims as presently stated in TDI's first amended complaint, it paints a deeply troubling picture of an underlying purpose to wrongfully stifle fair competition, which impairs any entitlement by TDI to the discovery it seeks. T-Mobile is, by judicial admission in the pleadings in the Berks County Action, a counterparty to bidding on and acquiring the same EBS spectrum licenses as WCO. T-Mobile also leases and utilizes such spectrum bands. Through the WCO Subpoena, T-Mobile is seeking an exceedingly broad scope of documents from WCO related to those transactions, which would provide T-Mobile with a monumentally unfair competitive advantage over WCO.

The claims of T-Mobile in the Berks County Action appear so contrived as to suggest that the real purpose may be of initiating the Berks County Action is (1) to obtain, through discovery, highly confidential information of a fellow bidder for such spectrum licenses, to which T-Mobile would otherwise have no entitlement, and (2) to deter WCO and other spectrum buyers and other educational institutions from engaging in future transactions for such licenses, so T-Mobile can utilize and acquire them more cheaply and easily. To that end, T-Mobile seeks to stifle competition for acquisition of such spectrum licenses and place a chilling effect on the willingness of educational institutions to sell such licenses to anyone other than T-Mobile. That not only undermines basic principles of a free market, but it undermines the FCC's intent in deregulating the EBS spectrum and allowing educational institutions to sell their licenses to other parties.

Ultimately, T-Mobile's actions here will ensure that the schools will receive less money for their licenses, thereby causing harm to the schools and their students - who are the intended beneficiaries of the FCC's actions - while at the same time, T-Mobile enriches itself. Certainly, T-Mobile is not entitled to obtain effectively all of WCO's business documentation through the WCO Subpoena for that purpose.

At all times WCO, a non-party to the Berks County Action, has acted in good faith. WCO properly asserted, and has not waived, all of its objections to the WCO Subpoena. WCO's objections, including, but not necessarily limited to, the above objections, were previously asserted and served upon TDI in the WCO Objections and otherwise.

All of the above objections apply equally, and at times more so, to the Academia Subpoena, which is even broader and more inappropriate. Academia's objections include, but are not necessarily limited to, the above objections, which objections were previously asserted and served upon TDI in Academia's prior objections and otherwise, including without limitation

Denis R. Hurley, Esq.
October 8, 2021
Page 4

Academia's assertion that the Virginia courts have no jurisdiction to enforce the Academia Subpoena because Academia does not have any documents in the Commonwealth of Virginia.

In light of the foregoing, WCO and Academia demand that TDI immediately withdraw the WCO Subpoena and the Academia Subpoena, and not seek further third-party discovery from WCO or Academia until, at the earliest, the close of pleadings in the Berks County Action, and even then, only to the extent TDI cannot first obtain such discovery from parties to the Berks County Action or from other sources. WCO and Academia request that TDI confirms it agrees to the terms of this paragraph, or otherwise respond in writing with respect to its positions, no later than the close of business on Tuesday, October 12, 2021.

Irrespective of any withdrawal, WCO and Academia reserve all rights to object to, and oppose, any third-party discovery subsequently issued to WCO and Academia, and otherwise to take such action as may be appropriate concerning TDI. Again, WCO and Academia make all of these statements without waiver or admission, reserving all rights presently and previously asserted, including the right to move to quash the subpoenas or for a protective order in Pennsylvania, Delaware, Virginia or elsewhere.

This communication constitutes an offer of compromise inadmissible in court pursuant to the applicable rules of evidence.

Thank you.

Very truly yours,

**MITTS LAW, LLC**

Michael J. Duffy
Maurice R. Mitts

Enclosures

cc:    Christopher Mandernach, Esq.
       R. Kennon Poteat III, Esq.

# Exhibit 2

# SUPERIOR COURT OF THE STATE OF DELAWARE

TDI ACQUISITION SUB LLC,
        Plaintiff

                V.

ALBRIGHT COLLEGE,
        Defendant.

## OUT OF STATE
## SUBPOENA IN A CIVIL CASE

K21M-08-007 JJC

Civil Action No.: 21-04481

---

**TO:** WCO SPECTRUM, LLC c/o Cogency Global, Inc. 850 New Burton Road, Suite 201
Dover, DE 19904

... **YOU ARE COMMANDED** to appear in the Delaware Superior Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

... **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

... **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

        See Attachment A.

| PLACE   KLEINBARD LLC c/o Eric J. Schreiner, Esq. Three Logan Square, 1717 Arch Street 5th Floor, Philadelphia, PA 19103 | DATE AND TIME |
|---|---|
|  |  |

... **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.   Delaware Superior Court Civil Rule 30 (b) (6).

| REQUESTING PARTY'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| SIGNATURE (FOR DELAWARE COURT USE ONLY)  CLERK OF COURT  Annette M. Ashley / MB | DATE  8-6-21 |

# PROOF OF SERVICE

| **SERVED** | DATE | | PLACE | |
|---|---|---|---|---|
| **SERVED ON (PRINT NAME)** | | MANNER OF SERVICE | | |
| **SERVED BY (PRINT NAME)** | | TITLE | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the State of Delaware that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

_____

SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

## Superior Court Civil Rule 45, Parts C, D & E:

### (c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The Court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the Court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the Court shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iii) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the Court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the Court may order appearance or production only upon specified conditions.

### (d) Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### (e) Contempt.

Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court.

## ATTACHMENT A

## DEFINITIONS

1.      The term "Albright License" means Albright's license for Educational Broadband Service ("EBS") spectrum channels D1, D2, D3, and D4 under call sign WND475 in the Reading, Pennsylvania area, as granted to Albright by the Federal Communications Commission.

2.      The term "Albright Lease Agreement" means the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement between TDI, as successor in interest to original signatory Nextel Spectrum Acquisition Corporation, and Albright, which was entered into on March 2, 2007.

3.      The term "all" means all or any, and the term "any" means all or any.

4.      The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person. "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

5.      The term "Complaint" means the complaint filed by TDI in this lawsuit on May 27, 2021, and any amended version thereof.

6.      The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

7.      The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

1

8.    The terms "Defendant" and "Albright" mean Albright College, including any of its divisions, subsidiaries, affiliates, directors, officers, principals, employees, attorneys, agents, and representatives.

9.    As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things. The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

10.    The terms "includes" and "including" mean includes and including without limitation. The terms "includes" and "including" do not limit the scope of any request.

11.    The term "Offer" shall mean any bid, proposal, or offer.

12.    The term "person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

13.    The terms "TDI" and "Plaintiff" mean TDI Acquisition Sub LLC, a Delaware limited liability company, as well as any of its predecessors in interest, including Nextel Spectrum

Acquisition Corporation, and all officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on behalf of any of these entities.

14.     The terms "WCO," "You," and "Your" shall mean "WCO Spectrum LLC," including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

15.     The term "WCO's Offer" means the April 30, 2021 non-binding offer letter from WCO to Albright, including Exhibit A attached thereto, which is entitled "Material Terms for License Purchase Offer." The term "WCO's Offer" also includes any modified, supplemented, or revised version of the April 30, 2021 non-binding offer letter, and any subsequent Offer from WCO concerning the Albright License.

## INSTRUCTIONS

1.     You are to produce the requested Documents and Communications in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Berks County Court Local Rules, and any other applicable laws, rules, or regulations.

2.     These requests call for all Documents and Communications within Your possession, custody, or control.

3.     If in answering any of these requests You encounter any ambiguity in construing the request or any definition or instruction relevant to the request, set forth the matter deemed ambiguous and the construction selected or used in answering the request.

4.     Documents and Communications produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to

3

correspond with the categories in the request. All Documents and Communications produced in response to these requests should be Bates stamped or otherwise marked in sequential order. If there are no Documents or Communications responsive to any particular request, You should so state in writing.

5.      You must produce ESI responsive to these requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact. Pa. R. Civ. P. 4009.1(b).

6.      References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7.      References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, or members and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8.      This subpoena calls for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, representatives, and agents or other persons acting on Your behalf, without regard to the physical location of such Documents or Communications.

9.      In responding to these requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf. If Your response is that the Documents and Communications are not within Your possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each

4

such Document and Communication. If Your response is that Documents are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.    These requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production. Pa. R. Civ. P. 4007.4.

11.    Each request contemplates production of all Documents or Communications in their entirety. If only a portion of a Document or Communication is responsive to one or more requests, the Document or Communication shall be produced in its entirety.

12.    If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

      a.    each and every ground of privilege or protection claimed;

      b.    the author and all recipients;

      c.    the type of Document or Communication;

      d.    the Document or Communication's general subject matter;

      e.    the Document or Communication's date; and

      f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced. For each, indicate the

5

portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope.

15.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the request would indicate.

16.    If You believe that Your response to any request is incomplete, then You must respond with all responsive information of which You are now aware.

17.    In accordance with 231 Pa. Code § 4009.23, You are required to complete the attached Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant to Rule 4009.23, which is also attached here.

## DOCUMENTS TO BE PRODUCED

1.    All Documents and Communications concerning WCO's Offer.

2.    All Documents and Communications concerning WCO's expressions of interest in making an Offer to purchase the Albright License.

3.    All Communications with Albright.

4.    All Documents and Communications concerning the Albright License.

5.    All Documents and Communications concerning the Albright Lease Agreement, including TDI's rights under the Albright Lease Agreement and Albright's obligations under the Albright Lease Agreement.

6.    All Documents and Communications concerning the requirement in Section 10(c) of the Albright Lease Agreement that any assignee of the Albright License must agree to assume all of Albright's obligations and acknowledge TDI's rights under the Albright Lease Agreement.

7.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications service in the United States.

8.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of (except a less than 1% interest in a publicly traded company) any interest in any entity which offers, provides, or delivers any telecommunications service within the United States.

9.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated grant of the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

10.    All Documents and Communications concerning WCO's affiliation with any entity which has granted, proposed, planned, or contemplated granting the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

11.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition or use of any EBS and BRS spectrum license.

12.    All Documents and Communications concerning WCO's assertion that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."

7

13.    All Documents and Communications concerning Your claim that WCO is a "specialist in financing and operating telecommunications assets and companies."

14.    All Documents and Communications concerning Your claim that WCO "has previously been active in the telecom industry."

15.    All Documents and Communications concerning Your claim that Gary Winnick's companies "have consistently received FCC transfer approvals."

# Exhibit 3

SERVE



## SUBPOENA PURSUANT TO § 8.01-412.10
## VIRGINIA BEACH CIRCUIT COURT

To requesting party has submitted to the clerk of this court (i) a foreign subpoena, (ii) a written statement that the law of the foreign jurisdiction grants reciprocal privileges to citizens of the Commonwealth for taking discovery in the jurisdiction that issued the foreign subpoena, and (iii) provided, on attached list, the names, addresses, and telephone numbers of all counsel of record in the proceeding to which the subpoena relates and of any party not represented by counsel.

**TO THE SHERIFF OR ANY OTHER AUTHORIZED OFFICER**
You are commanded to summon:                                         **CL21-3972**
**ACADEMIA SPECTRUM, LLC**
**c/o REGISTERED AGENTS, INC**
**4445 CORPORATION LANE, SUITE 264**
**VIRGINIA BEACH, VA 23462**

**TO THE PERSON SUMMONED**
You are required to:

Produce and permit inspection and copying of designated books, documents, records, electronically stored information, or tangible things in the possession, custody, or control of the person **Within twenty (20) days after service of this subpoena (See Attachment A) at Kleinbard, LLC c/o Eric J. Schreiner, Esq., Three Logan Square, 1717 Arch Street, 5th Floor; Philadelphia, PA 19103 in accordance with the terms of the attached Subpoena,** in accordance with the terms of the attached foreign subpoena, which terms are incorporated in this subpoena.
Date Issued: **August 23, 2021**

Tina E. Sinnen, Clerk, Circuit Court

By: _____, Deputy Clerk

Name of Attorney for Requesting Party:
**Eric J. Schreiner, Esq.**
Telephone No.: **(215)-496-7217**

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF BERKS

TDI ACQUISITION SUB LLC,    :
                Plaintiff   :
                            :
v.                          :
                            :   Case No.   21-04481
ALBRIGHT COLLEGE,           :               CL21-3972
                Defendant.  :
                            :
                            :

## SUBPOENA TO PRODUCE DOCUMENTS OR THINGS FOR DISCOVERY

## PURSUANT TO 4009.22

TO: ACADEMIA SPECTRUM, LLC.c/o Registered Agents Inc., 4445 Corporation Lane, Suite 264
(Name of Person or Entity) Virginia Beach, Virginia 23462

Within twenty (20) days after service of this subpoena, you are ordered by the Court to produce the
following documents or things:  See Attachment A.

at KLEINBARD LLC c/o Eric J. Schreiner, Esq., Three Logan Square, 1717 Arch Street, 5th Floor
                              (Address)          Philadelphia, PA 19103

You may deliver or mail legible copies of the documents or produce things requested by this subpoena,
together with the certificate of compliance, to the party making this request at the address listed above. You
have the right to seek in advance the reasonable cost preparing the copies or producing the things sought.

If you fail to produce the documents or things required by this subpoena within twenty (20) days after its
service, the party serving this subpoena may seek a court order compelling you to comply with it.

This subpoena was issued at the request of the following person:

| | |
|---|---|
| NAME: | Eric J. Schreiner, Esq. |
| ADDRESS: | Three Logan Square, 1717 Arch Street |
| | 5th Floor, Philadelphia, PA 19103 |
| TELEPHONE: | (215) 496-7217 |
| SUPREME COURT ID#: | No. 76721 |
| ATTORNEY FOR: | Plaintiff |

BY THE COURT:

DATE: 7/22/2021      BY: _____
                         JONATHAN K. DEL COLLO, PROTHONOTARY

Seal of the Court

# Notice of Language Rights



Language Access Coordinator
Berks County Services Center, 633 Court Street, 4th Floor, Reading, PA 19601
610-478-6208 x5712
interpreter@countyofberks.com

**English**: You have the right to an interpreter at no cost to you. To request an interpreter, please inform court staff using the contact information provided at the top of this notice.

**Spanish/Español**: Usted tiene derecho a un intérprete libre de costo. Para solicitar un intérprete favor de informárselo al personal judicial utilizando la información provista en la parte superior de este aviso.

**Mandarin/Cantonese Simplified Chinese/普通话/粤语简体中文**: 您有权获得免费的口译员服务。若需要口译员，请使用本通知上方提供的联系信息通知法院工作人员。

**Mandarin/Cantonese Traditional Chinese/普通話/廣東話繁體中文**: 您有權要求免費傳譯服務。如欲要求傳譯服務，請參閱本通知頂部的聯絡資料，通知法庭職員。

**Arabic/العربية**: يحق لك الحصول على مترجم دون دفع أي تكلفة من جانبك. لطلب مترجم، يُرجى إعلام موظفي المحكمة باستخدام معلومات الاتصال المقدمة في الجزء العلوي من هذا الإشعار.

**Russian/Русский**: У вас есть право на бесплатные услуги переводчика. Заявка на переводчика подается в суд по адресу, телефону или эл. почте, указанным выше в заголовке этого уведомления.

**Vietnamese/Tiếng Việt**: Quý vị có quyền được một thông dịch viên giúp mà không tốn chi phí nào cả, xin hãy báo cho nhân viên tòa án đúng thông tin liên lạc có ở trên đầu thông báo này.

**Nepali/नेपाली**: तपाईंको निःशुल्क रूपमा भाषा अनुवादक राख्न पाउने अधिकार छ। अनुवादकको लागि अनुरोध गर्न, यस सूचनाको माथि दिइएको सम्पर्क जानकारी भरेर अदालतका कर्मचारीहरूलाई जानकारी दिनुहोस्।

**Korean/한국어**: 귀하는 비용에 대한 부담 없이 통역 서비스를 받을 권리가 있습니다. 통역 서비스를 요청하려면 본 통지서의 상단에 기재된 연락처를 통해 법원 직원에게 알리십시오.

**Polish/Polski**: Ma Pan/Pani prawo do nieodpłatnego skorzystania z usług tłumacza ustnego. Aby zwrócić się o wsparcie ze strony tłumacza ustnego, proszę skontaktować się z pracownikami sądu, korzystając z danych znajdujących się w górnej części niniejszego dokumentu.

**Punjabi/پنجابی/Pakistan/پاکستان**: تہاڈے کول بغیر ادائیگی کیتیاں اک مترجم حاصل کرن دا حق اے۔ مترجم دی درخواست کرن لئی، میربانی کر کے ایس نوٹس دے اوپر فراہم کیتیاں رابطے دیاں معلومات نوں ورتدیاں عدالت دے عملے نوں اطلاع دیو۔

**Punjabi/ਪੰਜਾਬੀ/India**: ਤੁਹਾਨੂੰ ਇੱਕ ਦੁਭਾਸ਼ੀਆ ਹਾਸਲ ਕਰਨ ਦਾ ਹੱਕ ਹੈ, ਜਿਸ ਦੀ ਤੁਹਾਨੂੰ ਬੇਝੀ ਲਾਗਤ ਨਹੀਂ ਲੱਗੇਗੀ। ਦੁਭਾਸ਼ੀਏ ਲਈ ਬੇਨਤੀ ਕਰਨ ਵਾਸਤੇ, ਕਿਰਪਾ ਕਰ ਕੇ ਅਦਾਲਤ ਦੇ ਅਮਲੇ ਨੂੰ ਜਾਣੂ ਕਰਵਾਓ ਤੇ ਇਸ ਲਈ ਇਸ ਨੋਟਿਸ ਦੇ ਸਿਖਰ ਉੱਤੇ ਦਿੱਤੀ ਸੰਪਰਕ ਜਾਣਕਾਰੀ ਦਾ ਇਸਤੇਮਾਲ ਕਰੋ।

**Portuguese/Português**: Você tem direito a um intérprete gratuitamente. Para solicitar um intérprete, informe à nossa equipe usando os dados de contato mostrados na parte superior deste aviso.

**Somali/Somaali**: Waxaad xaq u leedahay in lagu turjumo lacag la'aan ah. Si aad u codsato turjumaanka, fadlan u sheeg maxkamadda shaqaalaha adiga oo isticmaala macluumaadka ciwaanka kor lagu siiyay ee ogeyailskaan.

**Haitian Creole/Kreyòl Ayisyen**: Ou gen dwa resevwa sèvis yon entèprèt gratis. Pou mande pou yon entèprèt, tanpri fè manm pèsonèl tribinal la konnen lè ou sèvi avèk enfòmasyon an yo te bay ou nan tèt avi sa a.

**French/Français** : Vous avez le droit de bénéficier gratuitement de l'assistance d'un interprète. Pour en faire la demande, veuillez en informer le personnel du tribunal à l'aide des coordonnées indiquées en haut de page.

## ATTACHMENT A

### DEFINITIONS

1.    The terms "You," "Your," and "Academia Spectrum" mean Academia Spectrum LLC, including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

2.    The term "Albright License" means Albright's license for Educational Broadband Service ("EBS") spectrum channels D1, D2, D3, and D4 under call sign WND475 in the Reading, Pennsylvania area, as granted to Albright by the Federal Communications Commission.

3.    The term "Albright Lease Agreement" means the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement between TDI, as successor in interest to original signatory Nextel Spectrum Acquisition Corporation, and Albright, which was entered into on March 2, 2007.

4.    The term "all" means all or any, and the term "any" means all or any.

5.    The term "BRS Spectrum License" means any license to use BRS spectrum and any right to use the spectrum to which that license pertains.

6.    The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person. "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

7.    The term "Complaint" means the complaint filed by TDI in this lawsuit on May 27, 2021, and any amended version thereof.

{02112554;v1 }

8.      The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

9.      The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

10.      The terms "Defendant" and "Albright" mean Albright College, including any of its divisions, subsidiaries, affiliates, directors, officers, principals, employees, attorneys, agents, and representatives.

11.      As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things. The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

12.     The term "EBS Spectrum License" means any license to use EBS spectrum and any right to use the spectrum to which that license pertains.

13.     The terms "includes" and "including" mean includes and including without limitation. The terms "includes" and "including" do not limit the scope of any request.

14.     The term "Offer" means any bid, proposal, or offer.

15.     The term "person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

16.     The terms "TDI" and "Plaintiff" mean TDI Acquisition Sub LLC, a Delaware limited liability company, as well as any of its predecessors in interest, including Nextel Spectrum Acquisition Corporation, and all officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on behalf of any of these entities.

17.     The terms "WCO" and "WCO Spectrum" mean WCO Spectrum LLC, including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

18.     The term "WCO's Offer" means the April 30, 2021 non-binding offer letter from WCO to Albright, including Exhibit A attached thereto, which is entitled "Material Terms for License Purchase Offer." The term "WCO's Offer" also includes any modified, supplemented, or revised version of the April 30, 2021 non-binding offer letter, and any subsequent Offer from WCO concerning the Albright License.

## INSTRUCTIONS

1.    You are to produce the requested Documents and Communications in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Berks County Court Local Rules, and any other applicable laws, rules, or regulations.

2.    These requests call for all Documents and Communications within Your possession, custody, or control.

3.    If in answering any of these requests You encounter any ambiguity in construing the request or any definition or instruction relevant to the request, set forth the matter deemed ambiguous and the construction selected or used in answering the request.

4.    Documents and Communications produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to correspond with the categories in the request. All Documents and Communications produced in response to these requests should be Bates stamped or otherwise marked in sequential order. If there are no Documents or Communications responsive to any particular request, You should so state in writing.

5.    You must produce ESI responsive to these requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact. Pa. R. Civ. P. 4009.1(b).

6.    References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7.    References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest,

parents, subsidiaries, affiliates, divisions, departments, officers, or members and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8.    This subpoena calls for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, representatives, and agents or other persons acting on Your behalf, without regard to the physical location of such Documents or Communications.

9.    In responding to these requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf.  If Your response is that the Documents and Communications are not within Your possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each such Document and Communication.  If Your response is that Documents are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.    These requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production.  Pa. R. Civ. P. 4007.4.

11.    Each request contemplates production of all Documents or Communications in their entirety. If only a portion of a Document or Communication is responsive to one or more requests, the Document or Communication shall be produced in its entirety.

12.    If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

a.    each and every ground of privilege or protection claimed;

    b.    the author and all recipients;

    c.    the type of Document or Communication;

    d.    the Document or Communication's general subject matter;

    e.    the Document or Communication's date; and

    f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule of Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced. For each, indicate the portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope.

15.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the request would indicate.

16.    If You believe that Your response to any request is incomplete, then You must respond with all responsive information of which You are now aware.

17.    In accordance with 231 Pa. Code § 4009.23, You are required to complete the Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant to Rule 4009.23, which is also attached here.

## DOCUMENTS TO BE PRODUCED

1.    All Documents and Communications concerning the Albright License.

2.    All Documents and Communications concerning the Albright Lease Agreement.

3.    All Communications with Albright.

4.    All Communications with WCO.

5.    All Documents and Communications concerning WCO's Offer.

6.    All Documents and Communications concerning WCO's expressions of interest in making an Offer to purchase the Albright License.

7.    All Documents and Communications concerning any other person's Offer for the Albright License.

8.    All Documents and Communications concerning any other person's expressions of interest in making an Offer for the Albright License.

9.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications service in the United States.

10.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of (except a less than 1% interest in a publicly traded company) any interest in any entity which offers, provides, or delivers any telecommunications service within the United States.

11.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated grant or sale of any EBS Spectrum License or BRS Spectrum License— which, per the Definitions above, includes the right or option to use EBS or BRS spectrum—to any provider of a telecommunications service within the United States.

12.    All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of any EBS Spectrum License or BRS Spectrum License.

13.    All Documents and Communications concerning WCO's business plan, strategy, or business model with respect to its acquisition of any EBS Spectrum License or BRS Spectrum License.

14.    All Documents and Communications concerning WCO's criteria for acquiring EBS Spectrum Licenses or BRS Spectrum Licenses.

15.    All Documents and Communications concerning WCO's affiliation or other relationship with any person which currently possesses—or has made, plans to make, or has contemplated making an Offer to acquire—any EBS Spectrum License or BRS Spectrum License.

*CL21-3972*

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, Jr., PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | |
|---|---|
| TDI ACQUISITION SUB LLC, | : IN THE COURT OF COMMON PLEAS<br>: OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : |
| | : |
| v. | : CIVIL ACTION/DECLARATORY<br>: JUDGMENT |
| ALBRIGHT COLLEGE, | : |
| | : NO. 21-04881 |
| Defendant. | : |
| | : |

## CERTIFICATE OF COMPLIANCE

TO:  ACADEMIA SPECTRUM, LLC:

You are required to complete the following Certificate of Compliance when producing

documents or things pursuant to the Subpoena.

### Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant To Rule 4009.23

I, _____, (person served with subpoena) certify to the best of my

knowledge, information and belief that all documents or things required to be produced pursuant

to the subpoena issued on _____ (date of subpoena) have been produced.


Dated: _____        _____
                                                Person Served with Subpoena

{02112554;v1 }

WILLIAMS & CONNOLLY LLP

August 19, 2021
Page 4

**List of Counsel of Record in**
***TDI Acquisition Sub LLC v. Albright College*, Case No. 21-04481**

*Counsel for Plaintiff TDI Acquisition Sub LLC*

**KLEINBARD, LLC**
Steven J. Engelmyer
Eric J. Schreiner
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-20007230
sengelmyer@kleinbard.com
eschreiner@kleinbard.com

**WILLIAMS & CONNOLLY LLP**
Kenneth J. Brown
Christopher J. Mandernach
William I. Stewart
Thomas K. White
Denis R. Hurley
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
cmandernach@wc.com
wstewart@wc.com
twhite@wc.com
dhurley@wc.com

*Counsel for Defendant Albright College*

**KOZLOFF STOUDT**
Peter Schuchman, Jr.
2640 Westview Dr.
Wyomissing, Pennsylvania 19610
PSchuchman@kozloffstoudt.com

WILLIAMS & CONNOLLY LLP

August 19, 2021
Page 5

## CERTIFICATE OF SERVICE OF SUBPOENA

I, Denis R. Hurley, hereby certify that a copy of the enclosed Subpoena to Produce

Documents or Things Pursuant to Pennsylvania Rule of Civil Procedure 4009.22 was mailed and

emailed on July 22, 2021, to counsel for defendant Albright College:

> Peter F. Schuchman, Esq.
> Kozloff Stoudt, P.C.
> 2640 Westview Dr.
> Wyomissing, PA 19610
> pschuchman@kozloffstoudt.com
> *Attorney for Defendant Albright College*

Denis R. Hurley

# Exhibit 4

———————————————————————        :

TDI Acquisition Sub, LLC,                       :

          Plaintiff,                     :

               v.                        :

Albright College,                               :

          Defendant.                    :

———————————————————————        :

## <u>OBJECTIONS TO SUBPOENA</u>

WCO Spectrum, LLC ("Respondent") hereby objects to the subpoena (the "Subpoena"), issued by Plaintiff, TDI Acquisition Sub, LLC ("Plaintiff"), in regard to the matter of *TDI Acquisition Sub, LLC v. Albright College*, and Respondent avers as follows:

1.      These Objections are made with respect to the Plaintiff's Subpoena and each and every definition, instruction, and request contained therein.  The assertion of the same, similar, or additional objections does not waive any of Respondent's Objections.

2.      Respondent objects to Plaintiff's Subpoena because the issuing Court lacks jurisdiction over the matter.

3.      Respondent objects to Plaintiff's Subpoena because it is facially defective, and fails to conform to the applicable Rules of Civil Procedure.

4.      Respondent objects to Plaintiff's Subpoena due to ineffective and improper service.

5.      Respondent objects to Plaintiff's definitions, instructions and Document Requests (collectively referred to as "Document Requests") in the Subpoena to the extent that they seek to impose unfair, overly broad and/or unreasonable obligations upon Respondent beyond the requirements of the applicable Rules of Civil Procedure and any other applicable rule or law.

6.      Respondent objects to Plaintiff's Document Requests to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, work-product doctrine, spousal privilege, self-critical analysis or investigative privilege, consulting expert exemption or any other privilege or exemption, or to the extent the Document Requests seek disclosure of confidential, proprietary or trade secret information protected from disclosure by applicable law.  To the extent that any information is inadvertently provided, which information is properly the subject of the attorney-client privilege or the work-product privilege, such disclosure is not to be construed as a waiver of the attorney-client privilege or the work-product privilege.  In the event that inadvertent disclosure occurs, Plaintiff shall make no use of the contents thereof, nor premise any further discovery on information learned therefrom.

7.      Respondent objects to Plaintiff's Document Requests to the extent that they are inaccurate, ambiguous, misleading or argumentative, assume facts that have no evidentiary basis, are unduly vague and incomprehensible or are unreasonably cumulative or duplicative.

8.      Respondent objects to Plaintiff's Document Requests to the extent that they are irrelevant and/or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Respondent objects to Plaintiff's Document Requests to the extent that they call for or seek legal conclusions and/or analysis.

10.      Respondent objects to Plaintiff's Document Requests to the extent that they seek documents and/or information not within Respondent's knowledge, possession, custody or control.

11.      Respondent objects to Plaintiff's Document Requests to the extent that they seek any document and/or information that is readily available to Plaintiff from his own records, from

a party to the litigation or is obtainable from publicly available sources that are more convenient, less burdensome and/or less expensive than if obtained from Respondent.

12.     By objecting to Plaintiff's Document Requests, Respondent specifically does not waive any rights under applicable statutes or laws, and does not consent to any court's jurisdiction.  No incidental or implied admissions are intended by the responses herein.  The fact that Respondent has objected to any Document Request herein is not intended and shall not be construed as a waiver of any part of any objection, whether general or specific.  In particular, Respondent does not in any way waive any objection but, rather, intends to preserve and does preserve all objections as to competency, relevancy, materiality and admissibility, any right to object to any use of the responses herein in any subsequent proceedings, including the trial of this or any action, all objections to vagueness, broadness and ambiguity, and all rights to object on any ground to any further discovery in this action.

13.     Respondent expressly reserves its right to supplement or modify its objections with such pertinent information as it may hereafter discover and will do so to the extent required by the applicable Rules of Civil Procedure and any other applicable rule or law.  Respondent also expressly reserves the right to raise supplemental objections.

# Exhibit 12

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

DENIS R. HURLEY
(202) 434-5374
dhurley@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 14, 2021

<u>Via Email</u>

Michael J. Duffy
Mitts Law LLC
1822 Spruce Street
Philadelphia, PA 19103

>      **Re:   Subpoenas Issued to WCO Spectrum LLC and Academia Spectrum LLC in**
>      ***TDI Acquisition Sub LLC v. Albright College*, No. 21-4481**

Dear Mr. Duffy:

We are in receipt of your letter dated October 8, 2021 (the "October 8 Letter") concerning the subpoenas served by TDI Acquisition Sub LLC ("TDI") on your clients WCO Spectrum LLC ("WCO") and Academia Spectrum LLC ("Academia"). As you know, because your clients disregarded their deadlines to respond to their respective subpoenas, they have waived all objections and must produce all responsive documents in their possession. Your letter consists of a series of "kitchen sink" assertions aimed at avoiding that result, none of which has any merit. Nevertheless, in the interest of avoiding litigation, our client, TDI Acquisition Sub LLC ("TDI"), remains willing to meet and confer as to WCO and Academia's respective document productions.

**The WCO Subpoena**

By way of background, TDI properly served the WCO subpoena. On July 12, 2021, in accordance with Pennsylvania law, TDI served Defendant Albright College ("Albright") with a Notice of Intent to Serve Subpoena to Produce Documents or Things for Discovery Pursuant to Pennsylvania Rule 4009.22. *See* Ex. A. That notice triggered a 20-day period during which Albright had the opportunity to object on any grounds. *See* 231 Pa. Code § 4009.21. Albright did not do so. Accordingly, on August 4, 2021, TDI filed a Certificate of Prerequisite to Service of Subpoena to Produce Documents or Things for Discovery Pursuant to Pennsylvania Rule 4009.22. *See* Ex. B. TDI domesticated the Pennsylvania subpoena in Delaware according to Delaware's version of the Uniform Interstate Discovery and Deposition Act. *See* 10 Del. Code § 4311. The Superior Court of Delaware for Kent County issued the subpoena on August 6, 2021. On August 19, 2021, TDI served the subpoena on WCO's registered agent, Cogency Global, Inc. *See* Ex. C.

WILLIAMS & CONNOLLY LLP

October 14, 2021
Page 2

Under Delaware law, WCO was required to serve objections by September 2, 2021. *See* Del. Super. Ct. Civ. R. 45(c)(2)(B) (providing for 14 days to serve objections). WCO did not respond by that deadline. Instead, having received no response for almost a month, on September 16, 2021, TDI contacted WCO Managing Partner Carl Katerndahl directly, asserting that WCO had failed to respond to the subpoena and that it had therefore waived objections, and demanding production of the relevant documents. *See* Ex. D. Five days later, WCO acknowledged receipt of the subpoena and requested a 20-day extension to respond. *See* Ex. E. WCO then asserted that the subpoena had not been served properly, alleging that WCO's registered agent is The Corporation Trust Company, not Cogency Global. *See* Ex. F. TDI investigated this claim, and, according to records kept by the Delaware Secretary of State, WCO changed its registered agent from Cogency Global to The Corporation Trust Company on September 16, 2021, approximately one hour after TDI emailed Mr. Katerndahl. *Compare* Ex. D (Email from D. Hurley to C. Katerndahl (Sept. 16, 2021)) *with* Ex. G (Record of WCO's Change of Registered Agent) *and* Ex. H (Record of WCO's Original Registered Agent). TDI responded on September 29, 2021, noting that Cogency Global was WCO's registered agent on the date of service—August 19, 2021—and therefore, WCO was properly served. *See* Ex. I. WCO did not respond to that email and since that time has not asserted that service was improper.

The next day, WCO sent TDI a list of boilerplate objections and asked to meet and confer. *See* Ex. J; Ex. K. The parties[1] held a meet and confer call on October 5, 2021, during which WCO accused TDI of litigating in bad faith; refused to answer whether WCO possessed responsive documents; and refused to answer whether it intended to produce any documents. WCO still has not provided particularized objections to the subpoena or attempted to meaningfully meet and confer with respect to the individual requests in the subpoena. *See In re Oxbow Carbon LLC Unitholder Litig.*, No. CV 12447-VCL, 2017 WL 959396, at *1 (Del. Ch. Mar. 13, 2017) ("When a party objects to providing discovery, the burden is on the objecting party to show why and in what way the information requested is privileged or otherwise improperly requested. Generic and formulaic objections are insufficient." (quotation and citations omitted)). TDI re-stated its position that WCO failed to timely respond to the subpoena and therefore had waived any objections to it.

Nothing in your October 8 Letter remotely suggests otherwise.

First, many of WCO's assertions can be quickly dispatched as simply untrue. WCO's statement that it "timely contacted TDI's counsel" is false, as discussed. Similarly false is WCO's assertion that a Delaware LLC is not subject to service of process through its registered agent in Delaware. *See* 6 Del. Code § 18-105 (authorizing service of process on the registered agent of Delaware limited liability companies); *Wirth v. Avondale IQ, LLC*, No. CV N10J-03776, 2018 WL 2383578, at *2 (Del. Super. Ct. May 25, 2018) ("Every [LLC] in Delaware is required to have a registered agent to receive service of process."). WCO's assertion that third-party discovery is unavailable in Pennsylvania until the pleadings are closed is likewise false. *See* 231 Pa. Code § 4003.08 (expressly authorizing pre-answer discovery). WCO's assertion that TDI is seeking

---

[1] Counsel for WCO also represents Academia. The October 5, 2021 meet and confer included both entities. *See* Ex. J.

WILLIAMS & CONNOLLY LLP

October 14, 2021
Page 3

third-party discovery in the first instance is false as well—TDI requested documents from Albright, and Albright has informed TDI that it has provided all relevant documents.

Second, WCO's assertions that TDI is seeking sensitive information, litigating for an improper purpose, and trying to stifle competition are nonsense. TDI's subpoenas seek information about the core issues implicated by its breach of contract action against Albright.

Third, to the extent WCO claims the subpoena is overly broad or seeks irrelevant materials, TDI is willing to meet and confer. To be clear, TDI is willing to do so solely in an effort to avoid the cost of litigation, and without waiving any right, claim, or argument concerning WCO's waiver.

**The Academia Spectrum Subpoena**

TDI completed a similar process with respect to Academia's subpoena. It served Albright with a Notice of Intent to Serve Subpoena on July 22, 2021. *See* Ex. L. Albright did not object. TDI filed the Certificate of Prerequisite to Service of Subpoena to Produce Documents or Things for Discovery Pursuant to Pennsylvania Rule 4009.22 on August 13, 2021. *See* Ex. M. TDI domesticated the subpoena through the Virginia Beach Circuit Court on August 23, 2021. The subpoena was served on Academia through its registered agent on September 8, 2021. *See* Ex. N. The deadline to respond was September 28, 2021. Academia provided no response by that deadline. Instead, it contacted TDI on September 29, 2021, requesting a meet and confer. *See* Ex. O. On September 30, Academia sent TDI a list of boilerplate objections, which are legally improper. *See* Ex. J; Ex. P; *Loudoun Cty. Asphalt, L.L.C. v. Wise Guys Contracting L.L.C.*, 79 Va. Cir. 605 (2009) (granting motion to compel noting that party's "general objections" to discovery requests were "confusing and not related to any particular discovery request"). Like WCO, Academia has not yet answered whether it possesses responsive documents and, if so, whether it intends to produce them.

\* \* \* \* \*

In the interest of avoiding litigation, TDI remains willing to meet and confer with WCO and Academia regarding their respective productions. Please let me know by October 19, 2021 whether your clients are prepared to participate in a substantive meet and confer process and make a meaningful document production. If they are unwilling to do so, we will pursue the appropriate legal remedies. TDI continues to reserve all rights in enforcing the WCO and Academia subpoenas, including without limitation its assertion that WCO and Academia have waived all objections to their respective subpoenas by failing to timely object and never providing legally cognizable objections.

Sincerely,

Denis R. Hurley

WILLIAMS & CONNOLLY LLP

October 14, 2021
Page 4


Enclosures

cc:    Kenneth J. Brown
       Christopher J. Mandernach
       R. Kennon Poteat III
       Maurice R. Mitts

# Exhibit 13

| | |
|---|---|
| **From:** | Michael Duffy |
| **To:** | Hurley, Denis |
| **Cc:** | Mandernach, Christopher; Poteat III, R. Kennon; David Sugden; Marlynn Howe; Maurice Mitts; Brown, Kenneth; Hurley, Denis |
| **Subject:** | RE: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas |
| **Date:** | Thursday, October 21, 2021 9:29:17 AM |

Denis,

Following up regarding the below, it does not appear that further meet and confer efforts will be productive given the parties' respective positions. Thank you.

MICHAEL JAMES DUFFY | MITTS LAW, LLC
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**From:** Michael Duffy <MDuffy@mittslaw.com>
**Sent:** Tuesday, October 19, 2021 7:14 PM
**To:** Hurley, Denis <dhurley@wc.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice Mitts <MMitts@mittslaw.com>; Brown, Kenneth <KBrown@wc.com>; Hurley, Denis <dhurley@wc.com>
**Subject:** Re: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Denis,

We are waiting to hear back from the client to be able to respond to your communication. We expect to be able to do so by tomorrow at the latest. Thanks.

MICHAEL JAMES DUFFY | MITTS LAW, LLC
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**From:** Hurley, Denis <dhurley@wc.com>
**Sent:** Thursday, October 14, 2021 8:10:06 PM
**To:** Michael Duffy <MDuffy@mittslaw.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice

Mitts <MMitts@mittslaw.com>; Brown, Kenneth <KBrown@wc.com>; Hurley, Denis
<dhurley@wc.com>
**Subject:** RE: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Michael,

Please see the attached correspondence and accompanying exhibits.

**Denis R. Hurley**
**Associate | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5374 | (F) 202-434-5029
dhurley@wc.com | www.wc.com

---

**From:** Michael Duffy <MDuffy@mittslaw.com>
**Sent:** Friday, October 8, 2021 6:16 PM
**To:** Hurley, Denis <dhurley@wc.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>;
David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice
Mitts <MMitts@mittslaw.com>
**Subject:** TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Denis,

Please find correspondence attached. Thank you.

MICHAEL JAMES DUFFY | MITTS LAW, LLC
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you
are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify
the sender and delete the e-mail and any attachments. Thank you.

---

This message and any attachments are intended only for the addressee and may contain information that is
privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or
disclose the contents of the message and any attachments. Instead, please delete the message and any attachments
and notify the sender immediately. Thank you.

# Exhibit 14

| | |
|---|---|
| **From:** | Michael Duffy |
| **To:** | Hurley, Denis |
| **Cc:** | Mandernach, Christopher; Poteat III, R. Kennon; David Sugden; Marlynn Howe; Maurice Mitts; Brown, Kenneth |
| **Subject:** | RE: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas |
| **Date:** | Thursday, October 28, 2021 12:18:54 PM |

Denis,

Thank you for the outreach.

With respect to both WCO and Academia, the subpoenas appear improper in their entirety. As stated more fully previously, neither DE nor VA courts have the power to enforce the subpoenas, which suffer many other infirmities. There also does not appear to be a genuine controversy in the underlying PA case since, according to T-Mobile, there was never a bona fide binding offer, and no agreement or transaction has otherwise taken place between WCO and Albright. The case instead appears to be a vehicle to invade the sensitive business information of another party seeking to acquire EBS licenses for the channels T-Mobile leases, interfere with WCO's business relationships, stifle competition for acquisition of EBS licenses and, ultimately, to convert T-Mobile's monopoly on leasing the EBS spectrum into a far more potent monopoly of ownership of the underlying licenses – at the expense of the educational institutions and students the FCC's recent deregulation was intended to benefit.

We would be willing to resolve this discovery matter as we previously proposed, with both of the subpoenas withdrawn and no further discovery sought from WCO or Academia until at least the close of the pleadings in the underlying Pennsylvania case, and then only to the extent T-Mobile cannot first obtain such discovery from parties to the Berks County action or from other sources. Even if the subpoenas were withdrawn, WCO and Academia reserve all rights to object to, and oppose, any subsequent subpoenas issued to, or discovery sought regarding, WCO and Academia, and otherwise to take such action as WCO and Academia may deem appropriate concerning this matter. Again, these statements are made without waiver or admission, reserving all rights and objections presently and previously asserted, in this case and otherwise.

MICHAEL JAMES DUFFY | MITTS LAW, LLC
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**From:** Hurley, Denis <dhurley@wc.com>
**Sent:** Wednesday, October 27, 2021 1:31 AM
**To:** Michael Duffy <MDuffy@mittslaw.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice Mitts <MMitts@mittslaw.com>; Brown, Kenneth <KBrown@wc.com>; Hurley, Denis <dhurley@wc.com>

**Subject:** RE: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Michael,

Please confirm that your statement that further meet and confer efforts would not be productive applies to both the WCO subpoena and the Academia Spectrum subpoena.  While reserving all of our rights and arguments, our offer to meet and confer on both subpoenas remains open.

Thank you,

**Denis R. Hurley**
**Associate | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5374 | (F) 202-434-5029
dhurley@wc.com | www.wc.com

---

**From:** Michael Duffy <MDuffy@mittslaw.com>
**Sent:** Thursday, October 21, 2021 9:27 AM
**To:** Hurley, Denis <dhurley@wc.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice Mitts <MMitts@mittslaw.com>; Brown, Kenneth <KBrown@wc.com>; Hurley, Denis <dhurley@wc.com>
**Subject:** RE: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Denis,

Following up regarding the below, it does not appear that further meet and confer efforts will be productive given the parties' respective positions. Thank you.

MICHAEL JAMES DUFFY | MITTS LAW, LLC
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

---

**From:** Michael Duffy <MDuffy@mittslaw.com>
**Sent:** Tuesday, October 19, 2021 7:14 PM
**To:** Hurley, Denis <dhurley@wc.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice Mitts <MMitts@mittslaw.com>; Brown, Kenneth <KBrown@wc.com>; Hurley, Denis <dhurley@wc.com>

**Subject:** Re: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Denis,

We are waiting to hear back from the client to be able to respond to your communication. We expect to be able to do so by tomorrow at the latest. Thanks.

MICHAEL JAMES DUFFY | **MITTS LAW, LLC**
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**From:** Hurley, Denis <dhurley@wc.com>
**Sent:** Thursday, October 14, 2021 8:10:06 PM
**To:** Michael Duffy <MDuffy@mittslaw.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice Mitts <MMitts@mittslaw.com>; Brown, Kenneth <KBrown@wc.com>; Hurley, Denis <dhurley@wc.com>
**Subject:** RE: TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Michael,

Please see the attached correspondence and accompanying exhibits.

**Denis R. Hurley**
**Associate | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5374 | (F) 202-434-5029
dhurley@wc.com | www.wc.com

**From:** Michael Duffy <MDuffy@mittslaw.com>
**Sent:** Friday, October 8, 2021 6:16 PM
**To:** Hurley, Denis <dhurley@wc.com>
**Cc:** Mandernach, Christopher <CMandernach@wc.com>; Poteat III, R. Kennon <kpoteat@wc.com>; David Sugden <dsugden@calljensen.com>; Marlynn Howe <mhowe@calljensen.com>; Maurice Mitts <MMitts@mittslaw.com>
**Subject:** TDI v. Albright: WCO Spectrum, LLC & Academia Spectrum, LLC Subpoenas

Denis,

Please find correspondence attached. Thank you.

MICHAEL JAMES DUFFY | MITTS LAW, LLC
1822 Spruce Street | Philadelphia, PA 19103
p 215.866.0125 | f 215.866.0111
mduffy@mittslaw.com | www.mittslaw.com

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# Exhibit 15

---------------------------------------------------

TDI Acquisition Sub, LLC,          :

          Plaintiff,         :

          v.          :

Albright College,          :

          Defendant.         :

---------------------------------------------------

## OBJECTIONS TO SUBPOENA

WCO Spectrum, LLC ("Respondent") hereby objects to the subpoena (the "Subpoena"), issued by Plaintiff, TDI Acquisition Sub, LLC ("Plaintiff"), in regard to the matter of *TDI Acquisition Sub, LLC v. Albright College*, and Respondent avers as follows:

1.      These Objections are made with respect to the Plaintiff's Subpoena and each and every definition, instruction, and request contained therein.  The assertion of the same, similar, or additional objections does not waive any of Respondent's Objections.

2.      Respondent objects to Plaintiff's Subpoena because the issuing Court lacks jurisdiction over the matter.

3.      Respondent objects to Plaintiff's Subpoena because it is facially defective, and fails to conform to the applicable Rules of Civil Procedure.

4.      Respondent objects to Plaintiff's Subpoena due to ineffective and improper service.

5.      Respondent objects to Plaintiff's definitions, instructions and Document Requests (collectively referred to as "Document Requests") in the Subpoena to the extent that they seek to impose unfair, overly broad and/or unreasonable obligations upon Respondent beyond the requirements of the applicable Rules of Civil Procedure and any other applicable rule or law.

6.      Respondent objects to Plaintiff's Document Requests to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, work-product doctrine, spousal privilege, self-critical analysis or investigative privilege, consulting expert exemption or any other privilege or exemption, or to the extent the Document Requests seek disclosure of confidential, proprietary or trade secret information protected from disclosure by applicable law.  To the extent that any information is inadvertently provided, which information is properly the subject of the attorney-client privilege or the work-product privilege, such disclosure is not to be construed as a waiver of the attorney-client privilege or the work-product privilege.  In the event that inadvertent disclosure occurs, Plaintiff shall make no use of the contents thereof, nor premise any further discovery on information learned therefrom.

7.      Respondent objects to Plaintiff's Document Requests to the extent that they are inaccurate, ambiguous, misleading or argumentative, assume facts that have no evidentiary basis, are unduly vague and incomprehensible or are unreasonably cumulative or duplicative.

8.      Respondent objects to Plaintiff's Document Requests to the extent that they are irrelevant and/or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Respondent objects to Plaintiff's Document Requests to the extent that they call for or seek legal conclusions and/or analysis.

10.     Respondent objects to Plaintiff's Document Requests to the extent that they seek documents and/or information not within Respondent's knowledge, possession, custody or control.

11.     Respondent objects to Plaintiff's Document Requests to the extent that they seek any document and/or information that is readily available to Plaintiff from its own records, from

a party to the litigation or is obtainable from publicly available sources that are more convenient, less burdensome and/or less expensive than if obtained from Respondent.

12.    By objecting to Plaintiff's Document Requests, Respondent specifically does not waive any rights under applicable statutes or laws, and does not consent to any court's jurisdiction.  No incidental or implied admissions are intended by the responses herein.  The fact that Respondent has objected to any Document Request herein is not intended and shall not be construed as a waiver of any part of any objection, whether general or specific.  In particular, Respondent does not in any way waive any objection but, rather, intends to preserve and does preserve all objections as to competency, relevancy, materiality and admissibility, any right to object to any use of the responses herein in any subsequent proceedings, including the trial of this or any action, all objections to vagueness, broadness and ambiguity, and all rights to object on any ground to any further discovery in this action.

13.    Respondent expressly reserves its right to supplement or modify its objections with such pertinent information as it may hereafter discover and will do so to the extent required by the applicable Rules of Civil Procedure and any other applicable rule or law.  Respondent also expressly reserves the right to raise supplemental objections.

# Exhibit 16

## COMMONWEALTH OF VIRGINIA
## STATE CORPORATION COMMISSION

### Office of the Clerk

November 4, 2019

ROBERT FINCH
820 GREAT CUMBERLAND RD
MCLEAN, VA 22102

### RECEIPT

RE: Academia Spectrum LLC

ID: S8636161

DCN: 19-11-04-6650

Dear Customer:

This is your receipt for $100.00 to cover the fee(s) for filing articles of organization for a limited liability company with this office.

The effective date of the filing is November 4, 2019.

If you have any questions, please call (804) 371-9733 or toll-free in Virginia, (866) 722-2551.

Sincerely,

Joel H. Peck

Joel H. Peck
Clerk of the Commission

RECEIPTLC
LLNCD
CISECOM

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, NOVEMBER 4, 2019

The State Corporation Commission has found the accompanying articles submitted on behalf of

Academia Spectrum LLC

to comply with the requirements of law, and confirms payment of all required fees.  Therefore, it is ORDERED that this

# CERTIFICATE OF ORGANIZATION

be issued and admitted to record with the articles of organization in the Office of the Clerk of the Commission, effective November 4, 2019.

STATE CORPORATION COMMISSION

By

Judith Williams Jagdmann
Commissioner

DLLCACPT
CISECOM
19-11-04-6650

**ARTICLES OF ORGANIZATION**

**OF**

**ACADEMIA SPECTRUM LLC**

The undersigned, pursuant to Chapter 12 of Title 13.1 of the Code of Virginia, states as follows:

1.    The name of the limited liability company is Academia Spectrum LLC.

2.    The purpose for which the limited liability company is formed is to engage in any lawful business, purpose or activity for which a limited liability company may be formed under the Virginia Limited Liability Company Act.

3.    The name of the limited liability company's initial registered agent is Robert Finch.  The initial registered agent is an individual who is a resident of Virginia and a member or manager of the limited liability company.

4.    The address of the limited liability company's initial registered office, which is identical to the business office of the initial registered agent, is 820 Great Cumberland Rd, McLean, VA 22102. The initial registered office is located in Fairfax County, Virginia.

5.    The address of the limited liability company's principal office where the records of the limited liability company are to be kept is 820 Great Cumberland Rd, McLean, VA 22102.

ORGANIZER:

/s/    Haley Pople   Date: November 4, 2019
       Haley Pople

# Exhibit 17

KLEINBARD LLC
Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. 21-04881 |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

**PLAINTIFF TDI ACQUISITION SUB LLC'S FIRST SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS TO DEFENDANT ALBRIGHT COLLEGE**

Plaintiff TDI Acquisition Sub LLC ("TDI"), by its attorneys, submits the following First

Set of Requests for Production of Documents ("Requests") to Defendant Albright College

("Albright"). The documents must either be made available for inspection and copying as they are

kept in the ordinary course of business, including labeling as to the source of the documents, or

provided and categorized by specific response to the individual requests. Please produce all

documents to Kleinbard LLC, Three Logan Square, 1717 Arch Street, 5th Floor, Philadelphia,

Pennsylvania 19103, attention: Eric J. Schreiner, Esq., within thirty (30) days of service, in

accordance with Pennsylvania Rule of Civil Procedure 4009.12(a).

1

## **DEFINITIONS**

1.        The term "Albright License" means Albright's license for Educational Broadband Service ("EBS") spectrum channels D1, D2, D3, and D4 under call sign WND475 in the Reading, Pennsylvania area, as granted to Albright by the Federal Communications Commission ("FCC").

2.        The term "Albright Lease Agreement" means the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement between TDI, as successor in interest to original signatory Nextel Spectrum Acquisition Corporation, and Albright, which was entered into on March 2, 2007.

3.        The term "all" means all or any, and the term "any" means all or any.

4.        The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person.  "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

5.        The term "Complaint" means the complaint filed by TDI in this lawsuit on May 27, 2021, and any amended version thereof.

6.        The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

7.        The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

8.    The terms "Defendant," "You," and "Your" mean Albright, including any of its divisions, subsidiaries, affiliates, directors, officers, principals, employees, attorneys, agents, and representatives.

9.    As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things.  The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

10.    The terms "includes" and "including" mean includes and including without limitation.  The terms "includes" and "including" do not limit the scope of any request.

11.    The term "Offer" shall mean any bid, proposal, or offer.

12.    The term "person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

13.    The terms "TDI" and "Plaintiff" mean TDI Acquisition Sub LLC, a Delaware limited liability company, as well as any of its predecessors in interest, including Nextel Spectrum

Acquisition Corporation, and all officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on behalf of any of these entities.

14.     The term "WCO" means "WCO Spectrum LLC," including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

15.     The term "WCO's Offer" means the April 30, 2021 non-binding offer letter from WCO to Albright, including Exhibit A attached thereto, which is entitled "Material Terms for License Purchase Offer." The term "WCO's Offer" also includes any modified, supplemented, or revised version of the April 30, 2021 non-binding offer letter, and any subsequent Offer from WCO concerning the Albright License.

## **INSTRUCTIONS**

1.     You are to respond to these Requests in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Berks County Court Local Rules, and any other applicable laws, rules, or regulations.

2.     These Requests call for all Documents and Communications within Your possession, custody or control.

3.     If, in responding to any of these Requests, You encounter any ambiguity in construing either the Request or a definition or instructions relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding to the Request.

4.     Documents and Communications produced in response to these Requests should be produced as they are kept in the usual course of business or should be organized and labeled to

correspond with the categories in the Request. All Documents and Communications produced in response to these Requests should be Bates stamped or otherwise marked in sequential order. If there are no Documents or Communications responsive to any particular Request, You should so state in writing.

5. You must produce ESI responsive to these Requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact. Pa. R. Civ. P. 4009.1(b).

6. References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7. References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, or members, and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8. These Requests call for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, subsidiaries, affiliates, directors, officers, principals, representatives, attorneys, and agents, or other persons acting on Your behalf, without regard to the physical location of such Documents and Communications.

9. In responding to these Requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf. If Your response is that the Documents or Communications are not within Your

possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each such Document or Communication. If Your response is that the Documents or Communications are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.    These Requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production. Pa. R. Civ. P. 4007.4.

11.    Each Request contemplates production of all Documents and Communications in their entirety. If only a portion of a Document or Communication is responsive to one or more Requests, the Document or Communication shall be produced in its entirety.

12.    If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

    a.    each and every ground of privilege or protection claimed;

    b.    the author and all recipients;

    c.    the type of Document or Communication;

    d.    the Document or Communication's general subject matter;

    e.    the Document or Communication's date; and

    f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced. For each, indicate the

6

portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.     The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each Request all responses that might otherwise be considered outside its scope.

15.     To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the Request would indicate.

16.     If You find any of the Requests to be unclear, overbroad, or unduly burdensome, Plaintiff is prepared to meet and confer regarding the issue.

### **DOCUMENTS TO BE PRODUCED**

1.     All Documents and Communications concerning the actual, proposed, planned or contemplated sale or assignment of the Albright License.

2.     All Communications with WCO.

3.     All Documents and Communications concerning WCO.

4.     All Documents and Communications concerning WCO's Offer.

5.     All Documents and Communications concerning whether WCO's Offer is capable of being accepted.

6.     All Documents and Communications concerning about whether Albright could, would, or should accept WCO's Offer.

7.     All Documents and Communications concerning T-Mobile's Right of First Refusal ("ROFR") to purchase the Albright License as provided for in Section 3(b) of the Albright Lease Agreement.

8.      All Documents and Communications concerning whether WCO is or is not a "Competing Entity," as that phrase is used in Section 10(c) of the Albright Lease Agreement.

9.      All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications service in the United States.

10.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of (except a less than 1% interest in a publicly traded company) any interest in any entity which offers, provides, or delivers any telecommunications service within the United States.

11.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated grant of the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

12.     All Documents and Communications concerning WCO's affiliation with any entity which has granted, proposed, planned, or contemplated granting the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

13.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition or use of any EBS and BRS spectrum license.

14.     All Documents and Communications concerning WCO's assertion that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."

15.     All Documents and Communications concerning WCO's claim that is a "specialist in financing and operating telecommunications assets and companies."

16.     All Documents and Communications concerning WCO's claim that it "has previously been active in the telecom industry."

17.     All Documents and Communications concerning WCO's claim that Gary Winnick's companies "have consistently received FCC transfer approvals."

18.     All Documents and Communications concerning TDI's right under Section 3(f)(v) of the Albright Lease Agreement to receive copies of any open bids, proposals, offers, counter-bids and counter-offers for the Albright License.

19.     All Documents and Communications concerning TDI's right under Section 3(f)(ii) of the Albright Lease Agreement to receive information with respect to any bids, proposals, offers and counters thereto for the Albright License.

20.     All Documents and Communications concerning TDI's right under Section 3(f)(iii) of the Albright Lease Agreement to discuss with You any information with respect to any bids, proposals, or counters thereto for the Albright License.

21.     All Documents and Communications concerning any counteroffer from Albright for the Albright License in response to WCO's Offer.

22.     All Documents and Communications concerning the requirement in Section 10(c) of the Albright Lease Agreement that any assignee of the Albright License must agree to assume all of Albright's obligations and acknowledge TDI's rights under the Albright Lease Agreement.

23.     All Documents and Communications concerning WCO's efforts to purchase any EBS spectrum license other than the Albright License.

24.     All Documents and Communications concerning any actual, potential, planned, or contemplated Offer to purchase the Albright License made by any person other than WCO.

25.     All Documents and Communications concerning Parkview Consulting.

26.    All Documents and Communications concerning "The Protect the People Project."

27.    All Documents and Communications concerning any Pennsylvania Right to Know Law request for the Albright Lease Agreement or any related documents.

28.    All Documents and Communications with or concerning any person that is advising or otherwise working with WCO with respect to the Albright License, or EBS spectrum licenses generally.  This includes all Documents and Communications with or concerning Select Spectrum LLC and Academia Spectrum LLC.

29.    All Documents identified in Your response to Plaintiff's First Set of Interrogatories Addressed to Defendant.

30.    All reports or opinions generated by any expert witness or consultant that You intend to call at trial.

31.    All Documents relied upon by any expert or consultant that You intend to call as an expert witness at trial.

32.    All resumes or curriculum vitae of any expert witness that You intend to call at trial.

33.    All Documents that evidence, reflect, refer or relate to Communications between You (but not including Your counsel) and any expert or consultant You intend to call as an expert witness at trial.


Dated:  July 8, 2021                         KLEINBARD, LLC
                                             Steven J. Engelmyer, PA ID No. 42840
                                             Eric J. Schreiner, PA ID No. 76721
                                             Three Logan Square
                                             1717 Arch Street, 5th Floor
                                             Philadelphia, PA 19103
                                             Telephone: (215) 568-2000
                                             sengelmyer@kleinbard.com

eschreiner@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
Christopher J. Mandernach*
William I. Stewart
Thomas K. White*
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
cmandernach@wc.com
wstewart@wc.com
twhite@wc.com
dhurley@wc.com
* application for admission *pro hac vice*
forthcoming

*Attorneys for Plaintiff TDI Acquisition Sub LLC*

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, Jr., PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. 21-04881 |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2021, I caused a true and correct copy of the foregoing

Request for Production to be served as stated on the following:

Via Mail and Email:

Peter Schuchman, Jr.
Kozloff Stoudt
2640 Westview Dr.
Wyomissing, Pennsylvania 19610
PSchuchman@kozloffstoudt.com
*Attorney for Defendant Albright College*

Dated:  July 8, 2021

_____

Eric J. Schreiner, PA ID No. 76721
KLEINBARD, LLC
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-2000
eschreiner@kleinbard.com

*Attorney for Plaintiff TDI Acquisition Sub LLC*

# Exhibit 4

REDACTED VERSION OF DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit 5

## IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

TDI ACQUISITION SUB LLC,

        Plaintiff,

   vs.

ALBRIGHT COLLEGE,

        Defendant.

Case No. CL21-3972

## ORDER

On March 22, 2022, TDI Acquisition Sub LLC ("TDI") and Academia Spectrum LLC ("Academia") appeared before the Court regarding TDI's subpoena duces tecum and Academia's motion to quash. Upon review of the parties' briefs, the hearing of oral argument, and finding good cause to do so, the Court hereby ORDERS as follows:

Counsel for Academia has represented that it has caused a comprehensive review and production of all documents related to WCO Spectrum LLC ("WCO") and Defendant Albright College ("Albright"). However, to address TDI's remaining concerns, Academia's counsel is directed to produce all additional documents and communications (if any), including, but not limited to, emails between and among WCO and Academia and Albright and Academia, concerning Albright, WCO's Offer, the Albright Lease Agreement, and the Albright License, as those terms are defined in TDI's subpoena. Academia's counsel is directed to conduct a further search for responsive documents, and Academia's counsel is directed to supervise the search for such responsive documents using the following search terms, as well as appropriate wild cards, applied to all Academia custodians (including, but not limited to, Andreas Bitzarakis):

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

- WND475

- Albright

- "Reading, PA" OR "Reading, Pennsylvania"

- "16,200,000" (including with wildcard "*16,200,000")

- "1,620,000" (including with wildcard "*16,200,000")

- "@winnickco.com" AND "Albright"

- "@wcospectrum.com" AND "Albright"

- "Winnick" AND "Albright"

- "Katerndahl" AND "Albright"

- "Vasudevan" AND "Albright"

- "Bloch" AND "Albright"

- "@wbklaw.com" AND "Albright"

- "ROFR" AND "Albright"

- "Right of First Refusal" AND "Albright"

- "Gray" AND "Albright"

Academia is directed to produce all additional responsive documents pursuant to it, by April 8, 2022.

Finally, Academia's Motion to Quash is granted with respect to document request 4, except to the extent any such communications between Academia and WCO concern Albright; and granted with respect to document requests 12, 13, and 14. The Court's ruling directing Academia to produce all documents and communications regarding Albright, the Albright Lease Agreement, and the Albright License serves to deny Academia's Motion to Quash as to document requests 1, 2, 3, 5 and 6 because they concern only Albright.

2

**IT IS SO ORDERED ADJUDGED AND DECREED.**

_____
Judge Patricia L. West

Dated: _____4-29-22_____

**SEEN AND AGREED, IN PART, AND OBJECTED TO, IN PART FOR THE REASONS STATED ON RECORD AND IN THE BRIEFS WHICH ARE INCORPORATED HEREIN:**

Robert M. Tata (VSB #30101)
Kevin J. Cosgrove (VSB #18828)
**HUNTON ANDREWS KURTH LLP**
500 E. Main Street, Suite 1301
Norfolk, VA 23510
Telephone: (757) 640-5328
btata@huntonAK.com

Kenneth J. Brown (VSB #48134)
R. Kennon Poteat (VSB #73324)
Denis R. Hurley
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*Counsel for TDI Acquisition Sub LLC*

**SEEN AND AGREED, IN PART, AND OBJECTED TO, IN PART FOR THE REASONS STATED ON RECORD AND IN THE BRIEFS WHICH ARE INCORPORATED HEREIN:**

Wyatt B. Durrette, Jr. (VSB #04719)
**DURRETTE, ARKEMA, GERSON & GILL, PC**
1111 E. Main Street, 16th Floor
Richmond, VA 23219
Telephone: (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@dagglaw.com

3

Maurice R. Mitts
**Mitts Law, LLC**
1822 Spruce Street
Philadelphia, PA   19103
Telephone:  (215) 866-0110
Facsimile:  (215) 866-0111
mmitts@mittslaw.com

*Counsel for Academia Spectrum, LLC*

4

The attached "dated" copy is provided to you free of charge. It indicates the date the judge signed your order. If you would like a photo copy (with judges' signature) please remit .50 per page and $2.00 certification fee (if desired) and a SASE.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 6



HUNTON ANDREWS KURTH LLP
500 EAST MAIN STREET
SUITE 1301
NORFOLK, VIRGINIA 23510

TEL   757 • 640 • 5300
FAX   757 • 625 • 7720

ROBERT M. TATA
DIRECT DIAL: 757 • 640 • 5328
EMAIL: btata@HuntonAK.com

FILE NO: 125071.1

May 20, 2022

***Via Hand Delivery***

Honorable Tina E. Sinnen
Clerk of Court
Virginia Beach Circuit Court
2425 Nimmo Parkway
Building 10 & 10B
Virginia Beach, VA  23456-9017

<u>**TDI Acquisition Sub LLC v. Albright College**</u>
No. CL21-3972
Foreign Subpoena in a Civil Action
Pending in Berks County, Pennsylvania at C.A. No. 21-04481

Dear Ms. Sinnen:

     Enclosed for filing please find TDI Acquisition Sub LLC's Motion to Compel Production of Documents that Academia Spectrum LLC Improperly Unredacted.

     Thank you for your assistance.

Sincerely,

Robert M. Tata

Enclosures

cc:    *(w/encl. – via email & first class mail)*
     Wyatt B. Durette, Jr., Esq.
     Maurice R. Mitts, Esq.
     Denis R. Hurley, Esq.

## IN THE CIRCUIT COURT OF VIRGINIA BEACH
## CIVIL DIVISION

TDI ACQUISITION SUB, LLC,

        Plaintiff,

v.

ALBRIGHT COLLEGE,

        Defendant.

**FOREIGN SUBPOENA IN A CIVIL ACTION**

No. CL21-3972

C.A. No. 21-04481
(pending in Berks County, Pennsylvania)

### TDI ACQUISITION SUB LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS THAT ACADEMIA SPECTRUM LLC IMPROPERLY UNREDACTED

       Sadly, Plaintiff TDI Acquisition Sub LLC ("TDI") must return to this Court now for the *fourth time* to seek a reasonable response to a simple subpoena because Academia Spectrum LLC ("Academia") so heavily redacted the key "deal memo" and certain other documents for no legally valid reason. These documents should be produced immediately in unredacted form.

       Specifically, on March 22, 2022, Academia represented to this Court that it had produced all documents related to WCO Spectrum LLC ("WCO") and Defendant Albright College ("Albright"), but to address TDI's concerns, the Court directed Academia to produce all additional documents and communications *concerning Albright* in response to TDI's September 2021 subpoena. Notwithstanding its representation that it already had produced all such documents (a mere 70 pages), Academia proceeded to produce an additional 541 pages in response to the Court's Order. Academia's supplemental production, however, was riddled with redactions, rendering it mostly useless for TDI. Indeed, Academia redacted nearly 200 pages without any explanation. Most egregiously, Academia improperly redacted key portions of WCO's "deal memo" *concerning Albright*, including parts that address the contemplated transaction's "Strategic

Importance to TMO [T-Mobile, TDI's parent company]" and "Potential TMO Strategy," thereby concealing information TDI was entitled to receive.

TDI immediately raised the impropriety of these redactions, but Academia has refused to produce the unredacted "deal memo," claiming it to be off limits as "transaction strategy," not because of any valid privilege. There is, of course, no legal protection for business information like "transaction strategy." Academia has no basis for its withholding of this critical document, as it goes to the heart of the remaining dispute in this case—whether, as a self-described whistleblower alleges, WCO and Albright are engaged in a scheme to defraud TDI and its parent company, T-Mobile.

As a result, TDI seeks an order compelling Academia to (i) produce the unredacted "deal memo" concerning Albright, which is plainly responsive and should be produced in its entirety, and (ii) produce in unredacted form certain communications sent or from T-Mobile because Academia has no plausible reason for redacting such documents.

## BACKGROUND

1.      On March 22, 2022, this Court heard argument on TDI's efforts to enforce the subpoena served on Academia back in September 2021, and make Academia finally produce documents and communications in response. TDI explained that the Pennsylvania state court, where the underlying litigation remains pending, had recently declined to interfere with TDI's outstanding subpoenas, including this one. The Pennsylvania court decided as much because a self-described whistleblower had asserted that WCO and certain EBS spectrum licensees like Albright are engaged in a scheme to defraud TDI and T-Mobile. WCO's alleged scheme involves making sham offers to purchase licenses, which T-Mobile leases from thousands of educational institutions across the country, in order to trigger T-Mobile's Right of First Refusal ("ROFR") to

purchase those licenses and collect kickbacks on the purchase amounts when T-Mobile exercises its ROFR.

2.    At the March 22 hearing, in an effort to try to persuade this Court not to order Academia to produce any additional documents beyond its initial paltry 70-page production, Academia represented to this Court multiple times that Academia had produced all it had related to Albright. *See* 3/22/2022 Tr. 41:25-42:2, 42:5-6; *id.* 44:7-10, 44:16; *id.* 46:9-15.  TDI, however, pressed that, given the nature of Academia's initial production, it was impossible that Academia had produced all documents and communications concerning Albright.  *See, e.g.*, 35:20-24, 37:10-38:16, 43:11-44:15.  In the end, this Court issued an order that noted Academia's representation, yet importantly directed Academia to "produce all additional documents and communications (if any), including, but not limited to, emails between and among WCO and Academia and Albright and Academia, concerning Albright, WCO's Offer, the Albright Lease Agreement [with TDI], and the Albright License."  4/14/2022 Order at 1.  The Court further directed Academia's counsel to supervise the search and utilize 15 specific search terms.  *Id.* at 1-2.

3.    Because of this Court's Order, on April 8, 2022 Academia produced an additional 541 pages of new documents.  Academia has never provided an explanation as to why its initial search (which it represented to this Court was thorough and complete) failed to locate the 541 pages that it eventually produced when forced to do so by this Court's Order.

4.    Academia, however, imposed heavy redactions across nearly 200 pages of its supplemental production.  In doing so, Academia did not include a basis for a single redaction.  On April 18, 2022, TDI promptly raised numerous issues associated with redactions that it believed to be improper. Ex. 1.  Most importantly, TDI complained that Academia redacted portions of a "deal memo" prepared specifically for the Albright transaction.  Ex. 2 (Academia 00230-233).

3

The Albright "deal memo" concerns issues related solely to Albright, its license, and its lease with TDI, and it evidently discusses other strategic issues related to T-Mobile that Academia has tried to hide from T-Mobile, the victim of the fraud alleged by the whistleblower. *Id.* at 00231. Academia redacted key portions of that "deal memo," including fields like "purchase price," "strategic importance [of the license] to TMO [T-Mobile]" and "potential TMO [T-Mobile] strategy" as to Albright. *Id.*

5.      TDI also raised the fact that Academia improperly redacted at least 22 pages that were sent from, or sent to, T-Mobile or its counsel (both in-house and outside). *See* Ex. 3 (Academia 00404-405, -00407-408, -00409-413, -00414-416, -00423-431).

6.      Academia waited three weeks to respond substantively. On May 9, 2022, Academia provided a log which it called a "Log of Academia/WCO Documents Withheld" ("Relevance Log"). *See* Ex. 4.[1] With respect to WCO's "deal memo" concerning Albright, Academia did not assert that it was privileged, but rather stated that the key portions of it were redacted because it related to "transaction strategy." *See id.* at 3 (row 11). Academia notably did not reference any authority to support any such redaction and did not explain how it could possibly redact this information, which plainly concerns Albright.

7.      Because Academia has refused to budge, TDI brings this motion seeking an order compelling Academia to produce unredacted versions, as required by this Court's Order.

---

[1]   On May 9, Academia produced 8 pages that it admits were improperly redacted. These documents, however, are entirely non-substantive; the newly unredacted information relates entirely to Albright's counsel's vacation plans, a subject that should never have been redacted in the first place.

## ARGUMENT

**A.    Contrary to this Court's Order, Academia Improperly Redacted Key Portions of WCO's "Deal Memo" Concerning Albright.**

8.    This Court ordered Academia to produce documents regarding Albright, and Academia has failed to do so. *See* 4/14/2022 Order; *see also* 3/22/2022 Tr. 54:20-25 (ordering Academia to "produce all documents and communications regarding Albright, the Albright lease and the Albright license"). Specifically, Academia redacted key portions of the "deal memo" that WCO prepared for its contemplated Albright transaction. Ex. 2 (Academia 00230-33). Academia, in fact, redacted the only portions of the "deal memo" that actually matter to TDI's lawsuit against Albright and the whistleblower's allegations—fields addressing the "Purchase Price," "Strategic Importance to TMO [T-Mobile]" and "potential TMO [T-Mobile] strategy." *Id.*

9.    Academia has no valid basis for its redaction of this key information that bears on WCO's strategy vis-à-vis TDI and T-Mobile, as it relates to the Albright transaction. Academia asserts no valid privilege, but instead claims it can redact that information because it concerns "transaction strategy." Ex. 4 (row 11). That is absurd. WCO's transaction strategy as it relates to the Albright deal is at the core of that dispute, and the "deal memo" should be produced in unredacted form in its entirety. Nothing in the law or this Court's Order permits Academia to redact information "concerning Albright," which this Court expressly directed Academia to produce in full, no exceptions. *See, e.g.*, *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2019 WL 8107922, at *2 (E.D. Va. May 28, 2019) (holding redaction of information "not allowed because that information is clearly relevant").

10.    Because Academia's position on this document flies in the face of this Court's Order, Academia should be ordered to produce the "deal memo" without redactions.

**B.     T-Mobile Documents**

11.     Academia, for unknown reasons, also has redacted at least 14 pages of documents that were sent to or from T-Mobile.  *See* Ex. 3 (Academia 00404-405, -00407-408, -00409-413, -00414-416, -00418-422, -00423-431).  There is no reason why Academia should redact such documents, and TDI is at a loss for why Academia continues to refuse to produce them in unredacted form, after TDI called this category of documents out specifically in meet-and-confer correspondence.  Academia logged them as documents responsive to TDI's subpoena, and they should be required to produce them in full.

<u>**CONCLUSION**</u>

For all of these reasons, the Court should grant TDI's motion and compel Academia to produce the 26 pages of documents referenced above in unredacted form.[2]

Respectfully Submitted,

By: _____

Robert M. Tata (VA Bar No. 30101)
HUNTON ANDREWS KURTH LLP
500 East Main St., Suite 1301
Norfolk, Virginia 23510
Telephone: (757) 640-5328
Facsimile: (757) 625-7720
btata@huntonak.com

Kenneth J. Brown (VA Bar No. 48134)
R. Kennon Poteat, III (VA Bar No. 73324)
Denis R. Hurley (*pro hav vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000

---

[2]  On May 9, 2022, Academia, for the first time, provided a privilege log of documents that it withheld in their entirety.  This motion does not address such documents, but TDI reserves all rights and will undertake to meet and confer with Academia regarding certain problematic entries.

Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*Attorneys for TDI Acquisition Sub LLC*

Dated:  May 20, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2022, I caused a true and correct copy of the foregoing

Plaintiff TDI Acquisition Sub LLC's Motion to Compel Production of Documents That Academia

Spectrum LLC Improperly Unredacted to be served upon the following parties via email and first

class mail:

> Wyatt B, Durette, Jr.
> Durrette, Arkema, Gerson & Gill PC
> Bank of America Center
> 1111 E. Main Street, 16th Floor
> Richmond, VA 23219
> wdurrette@dagglaw.com
>
> Maurice R. Mitts
> Mitts Law, LLC
> 1822 Spruce Street
> Philadelphia, PA 19103
> mmitts@mittslaw.com

> Robert M. Tata

Dated:  May 20, 2022

# Exhibit 1

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

R. KENNON POTEAT III
(202) 434-5699

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

April 18, 2022

**Via Email**

Maurice Mitts
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
mmitts@mittslaw.com

Re:     ***TDI Acquisition Sub LLC v. Albright College***, **Case No. CL21-3972**
        **(Va. Beach Cir. Ct.)**

Dear Maurice:

I write regarding Academia's production of redacted documents in response to the subpoena served on it by TDI in the above-captioned matter. In total, Academia produced 611 pages,[1] 203 of which—or one third of the entire production—are completely or partially redacted. Most glaringly, Academia has improperly redacted documents about the Albright College transaction, which the Court ordered it to produce. In addition, Academia has either erroneously or improperly redacted several other categories of documents. We address each category of Academia's problematic redactions below.

1.     **Albright College**. At the March 22 hearing, the Court ordered Academia to produce all documents and communications "regarding Albright." 3/22/2022 Tr. 54:20-25. Academia committed to do so. *See id.* 41:25-42:3. Nevertheless, Academia's production reveals that it is concealing information about the Albright transaction through improper redaction. Based on our review, Academia has improperly redacted at least 88 such pages.

Specifically, WCO prepared a "deal memo" for the Albright transaction, which it provided to Academia/Andreas Bitzarakis when WCO and Academia was working on the price to propose for Albright's license. Academia 00230-233. The Albright "deal memo" concerns issues related solely to Albright, its license, and its lease with TDI, and discusses other strategic issues related to T-Mobile. *Id.* at 00231. But Academia redacted key portions of that "deal memo," including

---

[1] Even though Academia represented to the Court that it had only 70 pages of responsive material, *see* 3/22/22 Tr. 41:25-42:3, 42:5-6, Academia produced another 541 pages after the Court's order.

WILLIAMS & CONNOLLY LLP

April 18, 2022
Page 2

fields like "strategic importance [of the license] to TMO [T-Mobile]" and "potential TMO [T-Mobile] strategy" as to Albright. *Id*. Academia has identified no basis for these redactions, and indeed, there is none. In trying to conceal this information from TDI, Academia is in breach of the Court's Order.[2]

Academia also redacted part of an e-mail communication between Academia/Bitzarakis and Albright's outside counsel Todd Gray, with the subject line "Albright." Academia 00084-85. Bitzarakis and Gray were clearly discussing Albright, but Academia redacted entire messages within this email chain that not only included the content of the message but also the participants of those communications and the dates/times of particular transmissions. There does not appear to be any valid basis for this redaction, and we request that it be removed and the document produced in unredacted form, along with other documents with similar redactions in other copies of this same chain. *See* Academia 00013-14, -0015-17, -00018, -00020-21, -00023-24, -00027, -00128, -00131, -00133-134, -00135-137.

WCO sent Academia/Bitzarakis a "Dashboard" PowerPoint presentation, dated August 25, 2021, that contains pages related to Albright. *See* Academia 00574-581. In particular, the third slide addresses Albright specifically, but Academia has without any basis redacted the title of that slide. *Id*. 00578. That redaction should be removed, as it prevents TDI from fully understanding the content and context of the slide. The same is true for the completely redacted "Dashboard" at Academia 00540-543. Other documents regarding Albright with problematic redactions of titles of pages that should be removed include Academia 00191, -00217-218, -00223-225.

Academia redacted another e-mail communication with Gray that occurred on May 28, 2021, the day TDI filed its lawsuit against Albright in Pennsylvania. *See* Academia 00173. Academia employed a broad, block redaction for e-mail communications that occurred after Gray informed WCO about that lawsuit, such that we cannot tell who was involved in any of those subsequent discussions. *Id*.

Lastly on this topic, Academia appears to have erroneously or improperly redacted certain other documents specifically about Albright. *See* Academia 00010, -00053, -00179, -00335-341, -00488, -00496-500, -00513, -00519, -00528, -00530, -00537, -00538-543, -00556-564, 00583, -00594-601.

2.    **T-Mobile**. Academia produced in redacted form at least 14 pages that were sent from, or sent to, T-Mobile or its counsel (both in-house and outside). *See* Academia 00404-405, -00407-408, -00409-413, -00414-416, -00418-422, -00423-431. Academia does not provide any basis for these redactions, and there does not appear to be any.

---

[2] Academia redacted "deal memos" in other documents as well. To the extent any such memos concern Albright, they must be produced in unredacted form. *See* Academia 00433-479.

WILLIAMS & CONNOLLY LLP

April 18, 2022
Page 3

    3.    **Third Parties**.  Academia produced in redacted form many pages that appear to include other third parties.  Specifically, Academia redacted e-mails/attachments involving Tyler Kratz (tmkratz@gmail.com), Alex Russo (alex.russo@mtholdings.net), David Walsh, Jim Simril, and Brian Nelson (Brian.Nelson@ccisd.us).  *See, e.g.*, Academia 00180 (Kratz), -00230-236 (Kratz), -00415-416 (Nelson), -00496-500 (Kratz), -00501-503 (Kratz), -00512-513 (Kratz), -00514-517 (Kratz), -00518-519 (Kratz), -00520-523 (Kratz), -00527-528 (Kratz), -00529-530 (Kratz), -00531-535 (Kratz, Simril), -00536-537 (Kratz, Simril), -00538-543 (Kratz), -00574-581 (Russo, Walsh), -00582-592 (Russo, Walsh), -00602-603 (Walsh), -00604-611 (Russo, Walsh).  Academia has provided no basis for these redactions, and there does not appear to be any.

    4.    **Documents and Communications Redacted for Relevance**.  Many pages of Academia's production are entirely or nearly entirely redacted, without any explanation whatsoever.  *See, e.g.*, Academia 000038, -000080-83, -000088-95, -000099-124, -00152-55, -00173, -00179, -00186-211, -00217-25, -00234-36, -00238-47, -00256-67, -00279, -00289, -00299-302, -00304-313, -00315-322, -00325-333, -00335-341, -00344-351, -00362, -00373-374, -00393-398, -00404, -00411-414, -00416, -00418-422, -00433-479, -00490-495, -00497-500, -00502-503, -00508-510, -00513, -00515-517, -00519, -00521-23, -00528, -00530, -00532-535, -00537, -00539, -00541-543, -00557-564, -00572-573, -00576-581, -00583, -00585-592, -00594-601, -00603, -00606-611.  To the extent any of these redactions are based on relevance, they are improper, as a legal matter.  *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2019 WL 8107922, at *2 (E.D. Va. May 28, 2019); ("[T]he general rule is that redactions based on relevance is a generally disfavored process."); *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (producing party's redactions "based on that party's unilateral determinations of relevancy" improper); *Durling v. Papa John's Int'l, Inc.*, No. 16-CV-03592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) ("Redactions on grounds of non-responsiveness or irrelevance are generally impermissible").  To the extent a document concerns the Albright transaction, which we understand each of these do given the nature of Academia's production, then Academia cannot redact all or portions of them based on relevance.

    Please immediately produce the foregoing documents in unredacted form, or explain the privilege that underlies any such redaction you seek to defend.  If such a production is not made by April 25, we will understand that we should bring this issue to the Court's attention for resolution.

            Sincerely,

            */s/ R. Kennon Poteat III*

            R. Kennon Poteat III

WILLIAMS & CONNOLLY LLP

April 18, 2022
Page 4

cc:    Wyatt B. Durrette, Jr., Esq.
       Bank Of America Center
       1111 East Main Street, 16th Floor
       Richmond, VA 23219
       wdurrette@dagglaw.com
       *Counsel for Academia*

       Robert M. Tata
       Hunton Andrews Kurth LLP
       500 East Main Street, Suite 1301
       Norfolk, VA 23510
       btata@HuntonAK.com
       *Counsel for TDI*

# Exhibit 2

| **From:** | Matthew Bloch <mbloch@winnickco.com> |
| **Sent:** | Monday, February 22, 2021 3:30 PM |
| **To:** | Gary  Winnick; Carl Katerndahl; Tyler Kratz; Andreas Bitzarakis |
| **Subject:** | Deal Memos - Albright ██████ |
| **Attachments:** | WCO Spectrum - Albright.pdf; WCO Spectrum - ████████████ |

All,

Attached are the deal memos for Albright ████████ .  Let's discuss and agree on the terms (specifically pricing) so we can send out the offers and Commitment Costs Agreement.

Thanks,
Matt

1

WCD SPECTRUM

Date: 2/16/2021

| License Holder Summary | |
|---|---|
| License Holder | Albright College |
| Location | Reading, PA |
| License Holder Description | Private liberal arts college in Reading. Affiliated with United Methodist Church |
| Lawyer | Todd Gray |
| Contacts | Jeffrey Stader |
| Summary of Discussions | Ready to move forward at calc output |
| Website | www.albright.edu |
| Link to Management / Board | https://www.albright.edu/about-albright/board-of-trustees/ |
| | |

| License Summary | |
|---|---|
| Call Signs / Regions | WND475 |
| Capacity (MHz) | 22.5 MHz |
| POPs | 1,405,877 |
| MHz-POPs | 31,632,233 |
| Purchase Price | ████████████ |
| Pricing ($/MHz-POP) | $.51 MHz-POP |
| Sum of remain. lease pymts. | N/A |
| Yield | 4% |
| Lessee | TDI Acquisition Sub, LLC |
| Lease Terms | Lease Commencement: 4/2007, Expiration 4/2037 |
| ROFR | Yes, as well as third-party exclusivity carve out |
| | |

| Transaction Strategy | |
|---|---|
| Disclosure Requirements | |
| Market Analysis | ████████████ |
| Channel Group | ████ |
| Strategic Importance to TMO | ████████████ |
| Potential TMO Strategy | ████████████ |
| | |

| Transaction Status | |
|---|---|
| NDA | 2/16/21 |
| Unsigned Offer | |
| Negotiation | |
| Signed Offer | |
| ROFR | |
| Next Steps | |
| Commentary | |

Academia 00231

WCU SPECTRUM

| Investment Committee | IC Approval 1: Unsigned Offer | IC Approval 2: Signed Offer |
|---|---|---|
| Date: | [Date] | [Date] |
| Gary Winnick | [Initial] | [Initial] |
| Carl Katerndahl | [Initial] | [Initial] |
| Matthew Bloch | [Initial] | [Initial] |
| Andreas Bitzarakis | [Initial] | [Initial] |
| Tyler Kratz | [Initial] | [Initial] |

WCO SPECTRUM

[Insert Model Output]

No Model Created – Because no access to financial information

Academia 00233

# Exhibit 3



Academia 00404





12920 SE 38th Street, Bellevue, WA  98006
www.t-mobile.com

Academia 00405





Academia 00407





12920 SE 38th Street, Bellevue, WA  98006
www.t-mobile.com

Academia 00408



Academia 00409

**From:** Ted
**To:** Todd Gray; Jarmon, Lee
**Cc:** Brown, Heather
**Subject:** Re: UCF EBS license
**Date:** Thursday, May 6, 2021 11:38:22 AM
**Attachments:** image001.png



Todd

**Todd D. Gray**

**Gray Miller Persh** LLP

2233 Wisconsin Avenue NW

Suite 226

Washington, DC 20007

202-776-2571

tgray@graymillerpersh.com

*This message from the law firm of Gray Miller Persh LLP may contain confidential or privileged information. If you received this*

Academia 00410

*transmission in error, please contact me immediately. Disclosure or use of any part of this message by persons other than the intended recipient is prohibited.*



Academia 00411



Regards,

Todd

**Todd D. Gray**

**Gray Miller Persh** LLP

2233 Wisconsin Avenue NW
Suite 226
Washington, DC 20007
202-776-2571
tgray@graymillerpersh.com

*This message from the law firm of Gray Miller Persh LLP may contain confidential or privileged information. If you received this transmission in error, please contact me immediately. Disclosure or use of any part of this message by persons other than the intended recipient is prohibited.*

**From:** Jarmon, Lee <Lee.Jarmon@t-mobile.com>
**Sent:** Friday, April 9, 2021 12:28 PM



**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.



Academia 00414

**From:**     Nelson, Brian
**To:**       Jarmon, Lee



**From:** Jarmon, Lee <Lee.Jarmon@t-mobile.com>
**Sent:** Tuesday, May 4, 2021 8:47 AM
**To:** Nelson, Brian <Brian.Nelson@ccisd.us>
**Subject:** RE: Educational Broadband Service Long-Term De Facto Lease Agreement (WLX220)

[External Email: Use caution opening attachments & links]

Mr. Nelson,

Thank you for your prompt response and I look forward to hearing back from you.

Kind regards,

**Lee Jarmon**

Managing Corporate Counsel – Legal Affairs

**Academia 00415**



Academia 00416

LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KENNETH J. BROWN
(202) 434-5818
kbrown@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 7, 2021



Academia 00423

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 2

Academia 00424

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 3



Academia 00425

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 4



Academia 00426

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 5



Academia 00427

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 6



Academia 00428

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 7



Academia 00429

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 8



Academia 00430

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 9

Academia 00431

# Exhibit 4

# TDI ACQUISITION SUB. LLC, v. ALBRIGHT COLLEGE

## CIRCUIT COURT OF THE COUNTY OF VIRGINIA BEACH
## No. CL21-3972

### Log of Academia/Albright/WCO Documents Withheld per Judge West's March 22, 2022, Order

| No. | DATE | FROM | TO | Subject Matter | DESCRIPTION | BATES NO. |
|---|---|---|---|---|---|---|
| 1. | 1/5/21 | Andreas Bitzarakis | Sylvia Kim, Gary Winnick, Mathew Bloch, Carl Katerndahl, Tyler Kratz | Unrelated Business Activity | Email Chain: re updates on unrelated business opportunity | 00076 |
| 2. | 1/8/21 | Andreas Bitzarakis | Sylvia Kim | Unrelated Business Activity | Email re: draft of report on unrelated business opportunity | 00080-00083 |
| 3. | 1/25/21 | Mathew Bloch | Sylvia Kim, Gary Winnick, Mathew Bloch, Carl Katerndahl, Tyler Kratz, Andreas Bitzarakis, Saurabh Suri | Unrelated Business Activity | WCO Pipeline Report (Albright Information unredacted) | 00087-00095 |
| 4. | 2/2/21 | Mathew Bloch | Sylvia Kim, Gary Winnick, Mathew Bloch, Carl Katerndahl, Tyler Kratz, Andreas Bitzarakis, Saurabh Suri | Unrelated Business Activity | WCO Pipeline Report (Albright Information unredacted) | 00098-00124 |

| 11. | 2/22/21 | Matthew Bloch | Andreas Bitzarakis, Gary Winnick, Tyler Kratz, Esq., Carl Katerndahl | Unrelated Business Activity | Email re: Deal memo for Albright and Unrelated Licensee (Albright Information unredacted) (Transaction Strategy Section redacted) | 00230-00236 |
| 12. | 2/23/21 | Mathew Bloch | Gary Winnick, Andreas Bitzarakis, Tyler Kratz, Esq., Carl Katerndahl, Saurabh Suri, Sylvia Kim, Roger Jackson | Unrelated Business Activity | Pipeline Report (Albright Information unredacted) | 00238-00247 |
| 13. | 2/26/21 | Andreas Bitzarakis | Mathew Bloch | Unrelated Business Activity | Email re: Offer for Albright and Unrelated Licensee (Albright information unredacted) | 00258-00278 |
| 14. | 2/26/21 | Todd Gray, Esq. | Andreas Bitzarakis | Unrelated Business Activity | Email re: Offer for Albright and Unrelated Licensee (Albright information unredacted) | 00279, 00289 |
| 15. | 2/28/21 | Andreas Bitzarakis | Todd Gray, Esq. | Unrelated Business Activity | Email re: Offer for Unrelated Licensee | 00299-00301 |
| 16. | 3/2/21 | Mathew Bloch | Gary Winnick; Carl Katerndahl; Tyler | Unrelated Business Activity | WCOS Pipeline Summary | 00304-00313 |

# Exhibit 7

## IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

TDI ACQUISITION SUB, LLC,

                Plaintiff,

    vs.

ALBRIGHT COLLEGE,

                Defendant.

Case No. CL21-3972

### ORDER REGARDING TDI ACQUISITION SUB, LLC'S MOTION TO COMPEL

On July 25, 2022, Plaintiff TDI Acquisition Sub, LLC ("TDI") and subpoena recipient Academia Spectrum LLC ("Academia") appeared before the Court regarding TDI's motion to compel removal of redactions on a previously produced document responsive to its subpoena *duces tecum* pursuant to this Court's Order dated April 29, 2022. Upon review of the parties' briefs, the hearing of oral argument, and the finding of good cause to do so, the Court ORDERS as follows:

Academia shall produce a completely unredacted version of its Albright College "Deal Memo," previously produced in redacted form as Academia 00231 on or before August 15, 2022. Because Academia has represented that the document is confidential and that it contains business strategy beyond Albright College, the document may be designated **"Confidential – Attorneys' Eyes Only."** This designation shall only allow access to this document to TDI's outside and inside counsel. Should TDI determine that it needs access to the document with a lower or no confidentiality designation, and Academia will not agree to a lower or no confidentiality designation, TDI shall be entitled to move the Court for relief. This Court shall have continuing jurisdiction over this matter in the event such relief is sought.

IT IS SO ORDERED, ADJUDGED, AND DECREED.

_____
Judge

Dated: _____8│23│22_____

**SEEN AND AGREED, IN PART, AND OBJECTED TO, IN PART FOR THE REASONS STATED ON RECORD AND IN THE BRIEFS WHICH ARE INCORPORATED HEREIN:**

Robert M. Tata (VSB #30101)
**HUNTON ANDREWS KURTH LLP**
500 E. Main Street, Suite 1301
Norfolk, VA 23510
Telephone: (757) 640-5328
btata@huntonAK.com

Kenneth J. Brown (VSB #48134)
R. Kennon Poteat (VSB #73324)
Denis R. Hurley (admitted *pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*Counsel for Plaintiff TDI Acquisition Sub, LLC*

2

**SEEN AND AGREED, IN PART, AND OBJECTED TO, IN PART FOR THE REASONS STATED ON RECORD AND IN THE BRIEFS WHICH ARE INCORPORATED HEREIN:**

Wyatt B. Durrette, Jr. (VSB #04719)
**DURRETTE, ARKEMA, GERSON & GILL, PC**
1111 E. Main Street, 16th Floor
Richmond, VA  23219
Telephone:  (804) 775-6900
Facsimile: (804) 775-6911
wdurrette@dagglaw.com

Maurice R. Mitts (admitted *pro hac vice*)
**MITTS LAW, LLC**
1822 Spruce Street
Philadelphia, PA  19103
Telephone:  (215) 866-0110
Facsimile:  (215) 866-0111
mmitts@mittslaw.com

*Counsel for Academia Spectrum, LLC*

3

# Exhibit 8

EFiled: May 20 2022 10:55AM EDT
Transaction ID 67641411
Case No. K21M-08-007 JJC

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TDI ACQUISITION SUB, LLC,

              Plaintiff,

v.

ALBRIGHT COLLEGE,

              Defendant.

**OUT-OF-STATE SUBPOENA IN A CIVIL ACTION**

K21M-08-007 (JJC)

C.A. No. 21-04481
(pending in Berks County, Pennsylvania)

# PLAINTIFF TDI ACQUISITION SUB LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM WCO SPECTRUM LLC

It is now more than eight months since Plaintiff TDI Acquisition Sub LLC served its subpoena on WCO Spectrum LLC, and WCO has yet to produce a single document. This dispute started with WCO refusing to meet and confer properly and filing a frivolous motion to quash, arguing this Court lacked the power to enforce a subpoena on WCO, a Delaware LLC, which WCO lost. Rather than meeting and conferring like this Court ordered, WCO appealed the order denying its motion, which it also lost. Having lost twice here, WCO went to Pennsylvania to seek a protective order, claiming this case was moot because it disclaimed any intention of pursuing defendant Albright College's FCC license, which spawned the underlying litigation. But WCO ignored the allegations made by a self-described whistleblower, who asserted that WCO and certain EBS spectrum licensees like Albright are engaged in a scheme to defraud TDI and its parent company, T-Mobile. WCO's alleged scheme involves making sham offers to purchase licenses, which T-Mobile leases from thousands of educational institutions across the country, in order to trigger T-Mobile's Right of First Refusal ("ROFR") and collect kickbacks on the purchase amounts when T-Mobile exercises its ROFR. Based on the whistleblower allegations, the Pennsylvania court declined to interfere with TDI's outstanding subpoenas, including this one.

Because WCO has refused to produce the requested discovery and instead tries to conceal documents that bear on whether it is committing a fraud, TDI is forced to move this Court to compel production.

## RELEVANT BACKGROUND

1.     TDI's subpoena contains 15 document requests, each of which is relevant to the whistleblower allegations.  Ex. 1.

2.     In pursuing discovery, TDI has sought documents from Albright, WCO, and WCO's consultant, Academia Spectrum LLC, regarding the circumstances surrounding and legitimacy of WCO's offer to purchase Albright's license.  Specifically, from WCO, TDI seeks documents and communications regarding Albright (Requests 1-6) and the legitimacy of WCO's purported business in pursuing EBS licenses like Albright's (Requests 7-15).  *See* Ex. 1.

3.     Since being served in August 2021, WCO has engaged in a pattern of obstruction and delay.  WCO started by ignoring the deadline to respond.  *See* Ex. 2. WCO then served boilerplate general objections, and refused to engage in meet and confers.  *See* Ex. 3.  WCO next filed a motion to quash, arguing that it—a Delaware LLC—was beyond a Delaware court's subpoena powers.  Mot. to Quash (Oct. 21, 2021).  After that motion was denied, WCO again refused to confer over the particular requests or produce a single document, and then shut that whole process down by appealing the order denying its motion to quash.  While its appeal was

pending here, WCO filed an improper (and unsuccessful) motion for protective order in Pennsylvania, seeking to abrogate this Court's order. *See* Ex. 4 Tr. 34:15-16.

4.     But during WCO's machinations, a self-described whistleblower emerged and provided information and documents to TDI's Pennsylvania counsel. The whistleblower alleged specifically that WCO and certain educational institutions are defrauding TDI and T-Mobile through a scheme involving offers to purchase EBS licenses, including the one held by Albright. Specifically, the whistleblower alleged that WCO was making sham offers to purchase licenses from educational institutions across the country and pocketing kickbacks from them in the event that T-Mobile exercised its ROFR to acquire the license at issue. TDI filed a motion for permission to review the documents, which was recently given. That court also refused to grant WCO's motion for a protective order. It disagreed with WCO's argument that the case is moot because it is no longer pursuing the Albright license, as the whistleblower's allegations remain live. The court ruled that it would "not block[] subpoenas," *id.* Tr. 34:15-16, and that it would permit TDI to seek discovery about any potential fraud from WCO and its consultant Academia.

5.     In a parallel proceeding in Virginia, TDI sought to enforce the subpoena on Academia, which also had been refusing to produce documents. On March 22, the court there ordered Academia to produce all documents regarding Albright, Ex. 5 Tr. 78:4-79:17, but stated that seeking broader documents about WCO's business

3

pursuing EBS licenses was "more an issue for WCO and [TDI's] discovery in the WCO" proceeding in this Court, *id*. Tr. 62:21-24.

6.      In the wake of the Virginia court's order, TDI resumed the meet-and-confer process with WCO.  Only then did WCO agree to withdraw its objections to Requests 1-6 and promise to produce all documents and communications regarding Albright.  *See* Ex. 6.  But more than a month has passed and WCO still has not produced a single document.  WCO also refuses to produce any documents in response to Requests 7-15, arguing that it should not have to produce any documents that do not strictly relate to Albright, even though they may relate more broadly to the legitimacy of its business in pursuing EBS licenses.  *Id*.

7.      Because of all this, TDI must move to compel.

## ARGUMENT

8.      WCO is wrongfully withholding responsive documents that bear on whether WCO and licensees like Albright are defrauding TDI and T-Mobile, as alleged by the whistleblower.  Indeed, these requests concern whether WCO's business in pursuing EBS licenses, including Albright's, is legitimate, or simply a ruse to procure kickbacks when T-Mobile exercises its ROFR to buy them.

9.      Requests 1-6 could not be more straightforward and seek all documents and communications regarding Albright that are plainly relevant to TDI's claims. *See* Ex. 1.  These requests, in particular, seek documents regarding WCO's

communications with Albright, WCO's internal communications and those with its consultants about Albright, WCO's documents analyzing a potential Albright transaction, and WCO's analysis of T-Mobile's rights and anticipated reactions to such an offer. Because WCO cannot seriously object to their relevance, especially after the Virginia court ordered production in response to similar requests, WCO has withdrawn its objections to them. But despite having done so, WCO has failed to produce any such documents to TDI. WCO has not responded to TDI's request for a status update on such production. Out of an abundance of caution, TDI thus seeks an order compelling such production.

10.    Requests 7-11 seek documents directly concerning the legitimacy of WCO's business in pursuing EBS licenses, which bear directly on the whistleblower's allegations. *See* Ex. 1. Specifically, these requests seek documents and communications related to WCO's current and contemplated role in the telecommunications industry, all of which target information about the actual or intended use (if any) of any such licenses going forward. Request 11, in particular, encompasses documents about the validity of any supposed financing arrangements to back WCO's purported purchase offers. In other words, these requests all seek documents bearing on whether WCO aims to purchase EBS licenses to create or facilitate a telecommunications service, or for some other legitimate reason, or are shams intended to trigger T-Mobile's ROFR and precipitate kickbacks to WCO.

5

11.    The rest of the requests seek documents and communications underlying representations WCO made to certain licensees when it was purportedly pursuing transactions with them.  Request 12 seeks documents related to WCO's representation *to Albright* in its April 30, 2021 offer letter that "principals of WCO have sourced and deployed billions of dollars to fund . . . Wireless Telecommunications Operations."  Ex. 1.  The veracity of, and any basis for, that statement bears on whether WCO's offer was a fraud, as the whistleblower alleges.

12.    And Requests 13-15 seek documents related to WCO's representations to other licensees that (i) it "is a specialist in financing and operating telecommunications assets and companies"; (ii) it "has previously been active in the telecom industry"; and (iii) its founders' companies "have consistently received FCC transfer approvals."  Ex. 1.  Again, these documents bear directly on whether WCO is committing a fraud on TDI and T-Mobile, as it probes the basis of various assertions about its business in pursuing discussions with licensees.

13.    TDI will be prepared to address each of these requests at a hearing.

Of Counsel:                                     BAYARD, P.A.

WILLIAMS & CONNOLLY LLP        */s/ Peter B. Ladig*
Kenneth J. Brown                          Peter B. Ladig (#3513)
Denis R. Hurley                            600 N. King Street, Suite 400
680 Maine Avenue SW                  Wilmington, Delaware 19899
Washington, DC 20024                  (302) 655-5000
(202) 434-5000                             Attorneys for TDI Acquisition Sub LLC

Dated: May 20, 2022

6

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| TDI ACQUISITION SUB, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ALBRIGHT COLLEGE, <br><br> Defendant. | **OUT-OF-STATE SUBPOENA IN A CIVIL ACTION** <br><br> K21M-08-007 (JJC) <br><br> C.A. No. 21-04481 <br> (pending in Berks County, Pennsylvania) |

## CERTIFICATE OF SERVICE

I, Peter B. Ladig, hereby certify that on May 20, 2022, I caused a true and correct copy of the foregoing Plaintiff TDI Acquisition Sub LLC's Motion to Compel Production of Documents from WCO Spectrum LLC to be served upon the following parties via FileandServe Express:

> Ryan M. Ernst, Esquire
> 1204 N. King Street
> Wilmington, DE 19801


> */s/ Peter B. Ladig*
> Peter B. Ladig (#3513)

Dated:  May 20, 2022

EFiled: May 20 2022 10:55AM EDT
Transaction ID 67641411
Case No. K21M-08-007 JJC

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| TDI ACQUISITION SUB, LLC, | **OUT-OF-STATE SUBPOENA IN A CIVIL ACTION** |
| Plaintiff, | |
| | K21M-08-007 (JJC) |
| v. | |
| ALBRIGHT COLLEGE, | C.A. No. 21-04481 (pending in Berks County, Pennsylvania) |
| Defendant. | |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of TDI Acquisition Sub LLC's Motion to Compel Production of Documents from WCO Spectrum LLC, it is hereby ORDERED and DECREED that the Motion is GRANTED.

_____

Clark, J.

EFiled:  May 20 2022 10:55AM EDT
Transaction ID 67641411
Case No. K21M-08-007 JJC

# Exhibit 1

# SUPERIOR COURT OF THE STATE OF DELAWARE

TDI ACQUISITION SUB LLC,
      Plaintiff

        v.

ALBRIGHT COLLEGE,
      Defendant.

**OUT OF STATE
SUBPOENA IN A CIVIL CASE**

K21M-08-007 JJC

Civil Action No.:   21-04481

**TO:**   WCO SPECTRUM, LLC c/o Cogency Global, Inc. 850 New Burton Road, Suite 201
Dover, DE 19904

... **YOU ARE COMMANDED** to appear in the Delaware Superior Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

... **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

... **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

      See Attachment A.

| PLACE   KLEINBARD LLC c/o Eric J. Schreiner, Esq. Three Logan Square, 1717 Arch Street 5th Floor, Philadelphia, PA 19103 | DATE AND TIME |
|---|---|

... **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Delaware Superior Court Civil Rule 30 (b) (6).

| REQUESTING PARTY'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| SIGNATURE (FOR DELAWARE COURT USE ONLY)  CLERK OF COURT  Annette D. Ashley / MB | DATE  8-6-21 |

f:\forms\civil\rule45.wp  rev. 7/2010

## PROOF OF SERVICE

| SERVED | DATE | | PLACE | |
|---|---|---|---|---|
| **SERVED ON (PRINT NAME)** | | MANNER OF SERVICE | | |
| **SERVED BY (PRINT NAME)** | | TITLE | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the State of Delaware that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                 DATE          SIGNATURE OF SERVER

_____

_____
ADDRESS OF SERVER

## Superior Court Civil Rule 45, Parts C, D & E:

### (c)  Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The Court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the Court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the Court shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance,
(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iii) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the Court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the Court may order appearance or production only upon specified conditions.

### (d)  Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### (e) Contempt.

Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of court.

## ATTACHMENT A

## DEFINITIONS

1.      The term "Albright License" means Albright's license for Educational Broadband Service ("EBS") spectrum channels D1, D2, D3, and D4 under call sign WND475 in the Reading, Pennsylvania area, as granted to Albright by the Federal Communications Commission.

2.      The term "Albright Lease Agreement" means the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement between TDI, as successor in interest to original signatory Nextel Spectrum Acquisition Corporation, and Albright, which was entered into on March 2, 2007.

3.      The term "all" means all or any, and the term "any" means all or any.

4.      The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person. "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

5.      The term "Complaint" means the complaint filed by TDI in this lawsuit on May 27, 2021, and any amended version thereof.

6.      The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

7.      The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

1

8.     The terms "Defendant" and "Albright" mean Albright College, including any of its divisions, subsidiaries, affiliates, directors, officers, principals, employees, attorneys, agents, and representatives.

9.     As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of  Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things.  The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

10.     The terms "includes" and "including" mean includes and including without limitation.  The terms "includes" and "including" do not limit the scope of any request.

11.     The term "Offer" shall mean any bid, proposal, or offer.

12.     The term "person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

13.     The terms "TDI" and "Plaintiff" mean TDI Acquisition Sub LLC, a Delaware limited liability company, as well as any of its predecessors in interest, including Nextel Spectrum

2

Acquisition Corporation, and all officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on behalf of any of these entities.

14.    The terms "WCO," "You," and "Your" shall mean "WCO Spectrum LLC," including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

15.    The term "WCO's Offer" means the April 30, 2021 non-binding offer letter from WCO to Albright, including Exhibit A attached thereto, which is entitled "Material Terms for License Purchase Offer." The term "WCO's Offer" also includes any modified, supplemented, or revised version of the April 30, 2021 non-binding offer letter, and any subsequent Offer from WCO concerning the Albright License.

## **INSTRUCTIONS**

1.    You are to produce the requested Documents and Communications in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Berks County Court Local Rules, and any other applicable laws, rules, or regulations.

2.    These requests call for all Documents and Communications within Your possession, custody, or control.

3.    If in answering any of these requests You encounter any ambiguity in construing the request or any definition or instruction relevant to the request, set forth the matter deemed ambiguous and the construction selected or used in answering the request.

4.    Documents and Communications produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to

correspond with the categories in the request. All Documents and Communications produced in response to these requests should be Bates stamped or otherwise marked in sequential order. If there are no Documents or Communications responsive to any particular request, You should so state in writing.

5.    You must produce ESI responsive to these requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact. Pa. R. Civ. P. 4009.1(b).

6.    References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7.    References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, or members and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8.    This subpoena calls for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, representatives, and agents or other persons acting on Your behalf, without regard to the physical location of such Documents or Communications.

9.    In responding to these requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf. If Your response is that the Documents and Communications are not within Your possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each

4

such Document and Communication. If Your response is that Documents are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.    These requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production. Pa. R. Civ. P. 4007.4.

11.    Each request contemplates production of all Documents or Communications in their entirety. If only a portion of a Document or Communication is responsive to one or more requests, the Document or Communication shall be produced in its entirety.

12.    If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

        a.    each and every ground of privilege or protection claimed;

        b.    the author and all recipients;

        c.    the type of Document or Communication;

        d.    the Document or Communication's general subject matter;

        e.    the Document or Communication's date; and

        f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced. For each, indicate the

portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope.

15.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the request would indicate.

16.    If You believe that Your response to any request is incomplete, then You must respond with all responsive information of which You are now aware.

17.    In accordance with 231 Pa. Code § 4009.23, You are required to complete the attached Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant to Rule 4009.23, which is also attached here.

## DOCUMENTS TO BE PRODUCED

1.    All Documents and Communications concerning WCO's Offer.

2.    All Documents and Communications concerning WCO's expressions of interest in making an Offer to purchase the Albright License.

3.    All Communications with Albright.

4.    All Documents and Communications concerning the Albright License.

5.    All Documents and Communications concerning the Albright Lease Agreement, including TDI's rights under the Albright Lease Agreement and Albright's obligations under the Albright Lease Agreement.

6.     All Documents and Communications concerning the requirement in Section 10(c) of the Albright Lease Agreement that any assignee of the Albright License must agree to assume all of Albright's obligations and acknowledge TDI's rights under the Albright Lease Agreement.

7.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications service in the United States.

8.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of (except a less than 1% interest in a publicly traded company) any interest in any entity which offers, provides, or delivers any telecommunications service within the United States.

9.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated grant of the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

10.     All Documents and Communications concerning WCO's affiliation with any entity which has granted, proposed, planned, or contemplated granting the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

11.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition or use of any EBS and BRS spectrum license.

12.     All Documents and Communications concerning WCO's assertion that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."

13.    All Documents and Communications concerning Your claim that WCO is a "specialist in financing and operating telecommunications assets and companies."

14.    All Documents and Communications concerning Your claim that WCO "has previously been active in the telecom industry."

15.    All Documents and Communications concerning Your claim that Gary Winnick's companies "have consistently received FCC transfer approvals."

# Exhibit 2

| From: | Hurley, Denis |
|---|---|
| To: | "Ckaterndahl@winnickco.com"; "mbloch@winnickco.com" |
| Cc: | "info@wcospectrum.com"; Mandernach, Christopher; Poteat III, R. Kennon; "rjackson@wcospectrum.com"; "arusso@wcospectrum.com"; Hurley, Denis |
| Subject: | TDI Acquisition Sub LLC v. Albright College, No. 21-4881 – Subpoena to WCO Spectrum LLC |
| Date: | Thursday, September 16, 2021 5:26:27 PM |
| Attachments: | WCO Subpoena Cover Letter.pdf |
| | WCO Pennsylvania Subpoena.pdf |
| | WCO Delaware Superior Court Subpoena Form.pdf |
| | Affidavit of Service re WCO Spectrum, LLC.PDF |

Carl:

On August 19, 2021, plaintiff in the above action, TDI Acquisition Sub LLC, served WCO Spectrum LLC, via its registered agent, with a subpoena to produce documents and things.  The subpoena was issued by Delaware Superior Court in Kent County, and it incorporates the terms of a subpoena issued by the relevant Pennsylvania state court in the above action.  The cover letter, Pennsylvania subpoena, Delaware subpoena, and affidavit of service are attached for your reference.

Under Delaware law, the deadline for WCO to object to the subpoena was 14 days from the date of service (September 2, 2021).  See Del. Super. Ct. Civ. R. 45(c)(2)(B).  The deadline set in the subpoena for the production of documents under Pennsylvania law was 20 days from the date of service (September 8, 2021).  Both deadlines have now passed.

Despite the passage of these deadlines, we have not received any documents from WCO in response to the subpoena.  Please therefore confirm your receipt of this communication immediately, and produce the documents requested by the subpoena no later than **Monday, September 20, 2021**.  TDI reserves all rights in the meantime.

I am available to discuss by telephone should you have questions.

Regards,

**Denis R. Hurley**
**Associate | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5374 | (F) 202-434-5029
dhurley@wc.com | www.wc.com

# Exhibit 3

| | |
|---|---|
| TDI Acquisition Sub, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| Albright College, | : |
| | : |
| Defendant. | : |
| | : |

## <u>OBJECTIONS TO SUBPOENA</u>

WCO Spectrum, LLC ("Respondent") hereby objects to the subpoena (the "Subpoena"), issued by Plaintiff, TDI Acquisition Sub, LLC ("Plaintiff"), in regard to the matter of *TDI Acquisition Sub, LLC v. Albright College*, and Respondent avers as follows:

1.     These Objections are made with respect to the Plaintiff's Subpoena and each and every definition, instruction, and request contained therein.  The assertion of the same, similar, or additional objections does not waive any of Respondent's Objections.

2.     Respondent objects to Plaintiff's Subpoena because the issuing Court lacks jurisdiction over the matter.

3.     Respondent objects to Plaintiff's Subpoena because it is facially defective, and fails to conform to the applicable Rules of Civil Procedure.

4.     Respondent objects to Plaintiff's Subpoena due to ineffective and improper service.

5.     Respondent objects to Plaintiff's definitions, instructions and Document Requests (collectively referred to as "Document Requests") in the Subpoena to the extent that they seek to impose unfair, overly broad and/or unreasonable obligations upon Respondent beyond the requirements of the applicable Rules of Civil Procedure and any other applicable rule or law.

6.      Respondent objects to Plaintiff's Document Requests to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, work-product doctrine, spousal privilege, self-critical analysis or investigative privilege, consulting expert exemption or any other privilege or exemption, or to the extent the Document Requests seek disclosure of confidential, proprietary or trade secret information protected from disclosure by applicable law.  To the extent that any information is inadvertently provided, which information is properly the subject of the attorney-client privilege or the work-product privilege, such disclosure is not to be construed as a waiver of the attorney-client privilege or the work-product privilege.  In the event that inadvertent disclosure occurs, Plaintiff shall make no use of the contents thereof, nor premise any further discovery on information learned therefrom.

7.      Respondent objects to Plaintiff's Document Requests to the extent that they are inaccurate, ambiguous, misleading or argumentative, assume facts that have no evidentiary basis, are unduly vague and incomprehensible or are unreasonably cumulative or duplicative.

8.      Respondent objects to Plaintiff's Document Requests to the extent that they are irrelevant and/or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Respondent objects to Plaintiff's Document Requests to the extent that they call for or seek legal conclusions and/or analysis.

10.     Respondent objects to Plaintiff's Document Requests to the extent that they seek documents and/or information not within Respondent's knowledge, possession, custody or control.

11.     Respondent objects to Plaintiff's Document Requests to the extent that they seek any document and/or information that is readily available to Plaintiff from its own records, from

a party to the litigation or is obtainable from publicly available sources that are more convenient, less burdensome and/or less expensive than if obtained from Respondent.

12.    By objecting to Plaintiff's Document Requests, Respondent specifically does not waive any rights under applicable statutes or laws, and does not consent to any court's jurisdiction.  No incidental or implied admissions are intended by the responses herein.  The fact that Respondent has objected to any Document Request herein is not intended and shall not be construed as a waiver of any part of any objection, whether general or specific.  In particular, Respondent does not in any way waive any objection but, rather, intends to preserve and does preserve all objections as to competency, relevancy, materiality and admissibility, any right to object to any use of the responses herein in any subsequent proceedings, including the trial of this or any action, all objections to vagueness, broadness and ambiguity, and all rights to object on any ground to any further discovery in this action.

13.    Respondent expressly reserves its right to supplement or modify its objections with such pertinent information as it may hereafter discover and will do so to the extent required by the applicable Rules of Civil Procedure and any other applicable rule or law.  Respondent also expressly reserves the right to raise supplemental objections.

# Exhibit 4

```
TDI ACQUISITION SUB LLC        :  In the Court of Common Pleas
               Plaintiff       :  of Berks County, Pennsylvania
                               :  Civil Action Law
          vs.                  :
                               :
                               :
ALBRIGHT COLLEGE               :
               Defendant       :  No. 21-04881
                  _____
```

HEARING
Monday, March 21, 2022
Reading, Pennsylvania
_____

Before THE HONORABLE J. BENJAMIN NEVIUS, Judge
_____


APPEARANCES:

```
For the Plaintiff:    STEVEN J. ENGELMYER, ESQUIRE
TDI Acquisition       1717 Arch Street, 5th Floor
Sub, LLC              Philadelphia, Pennsylvania 19103



                      KENNETH J. BROWN, ESQUIRE
                      725 Twelfth Street, N.W.
                      Washington, D.C. 20005

For the Defendant:    PETER F. SCHUCHMAN, JR, ESQUIRE
Albright College      2640 Westview Drive
                      Wyomissing, Pennsylvania 19610



For nonparty WCO:     MAURICE R. MITTS, ESQUIRE
Spectrum, LLC         1822 Spruce Street
                      Philadelphia, Pennsylvania 19103



DISTRIBUTION:         Original and once (1) copy filed with
                      the Office of the Prothonotary to be
                      distributed to Attorney Mitts upon
                      payment of balance due and owing.


                      ANGELA ROTKISKE
                   Official Court Reporter
```

1

1    (Reading, Pennsylvania, Monday, March 21, 2022, at 2 p.m.)

2           (REPORTER'S NOTE:  At the direction of the

3    Trial Judge, this transcript shall be considered as

4    containing an exception to every ruling by the Court.)

5           THE COURT:  All right.  This is civil docket

6    21-4881.  This is the time and place for a sort of all

7    purposes conference all hands on deck with the various party

8    and nonparty participants in this proceeding.  We have Mr.

9    Schuchman on behalf of Albright College.  We have Mr.  Brown

10    and Mr.  Engelmyer on behalf of Plaintiffs as well Mr.

11    Mitts on behalf of nonparty, WCO Spectrum, LLC.  And after

12    reading all of the paperwork it appears to be really between

13    a battle between WCO and TDI is really what's going on and

14    Albright sort of in the middle if that's an accurate --

15           MR. SCHUCHMAN:  I have strategically placed

16    myself, Your Honor.

17           THE COURT:  Physically in between.

18           MR. SCHUCHMAN:  Yes.

19           THE COURT:  So I had Mr.  Mitts, I don't think

20    you were a participant in the first conference call that I

21    had with counsel in this a few weeks ago, I finally have had

22    an ability to get up to speed on Judge Rowley's cases.  I'm

23    still transitioning out from assignments I've had

24    previously.  This one is -- and we can go off the record.

25           (WHEREUPON, discussion occurred off the

1    shows something else that involves WCO maybe WCO comes in

2    and Albright is out.  I don't know.

3            But my view is, again, if we have a small

4    nonprofit college here that really didn't do anything wrong

5    we need to have an opportunity for them to extricate

6    themselves from this as soon as possible and let the two big

7    boys in the room fight each other.  So take a look at your

8    documents.  I will give you an order to that effect.  I will

9    hold on issuing an order on the protective motion until I

10   can take a look at some of the stuff that you submitted.

11   All right.  Yes?

12           MR. BROWN:  May we continue pursuing the

13   subpoenas to gather the additional information that we are

14   looking for?

15           THE COURT:  I'm not blocking any subpoenas

16   that have already gone out.  Sounds like you are already

17   talking about that with another court, a court of

18   jurisdiction tomorrow.

19           MR. BROWN:  Two actually.

20           THE COURT:  Two.  You are dealing in Delaware

21   as well?

22           MR. BROWN:  Not tomorrow.

23           THE COURT:  Okay.  I will let you guys fight

24   that out with those particular courts.  Go ahead.

25           MR. MITTS:  Your Honor, the first thing is if

34

# Exhibit 5

VIRGINIA:  IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA
BEACH

---------------------------

TDI ACQUISITION SUB, LLC,    :

                  Plaintiff,  :

v.                            :   CASE NUMBER:
                              :   CL21-3972

ALBRIGHT COLLEGE,             :
                  Defendant.  :
---------------------------

HEARD BEFORE THE HONORABLE

PATRICIA L. WEST, JUDGE

MARCH 24, 2022 – 2:10 P.M.

VIRGINIA BEACH, VIRGINIA

KELLY A. ROWE, CCR
OLD DOMINION REPORTING
(757) 650-8546
kellyrowe305@gmail.com

APPEARANCES:

WILLIAMS & CONNOLLY, L.L.P.
By:  Denis R. Hurley, Esquire,
By:  R. Kennon Poteat, III, Esquire,
725 Twelfth Street NW
Washington, D.C. 20005
dhurley@wc.com
kpoteat@wc.com
Pro hac vice counsel for TDI Acquisition, LLC.

HUNTON ANDREWS KURTH
By:  Kevin J. Cosgrove, Esquire
500 East Main Street, Suite 1301
Norfolk, Virginia 23510
kcosgrove@hunton.com
Counsel for TDI Acquisition, LLC.

DURRETTE, ARKEMA, GERSON & GILL, P.C.
By:  Wyatt B. Durrette, Jr., Esquire,
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
wdurrette@dagglaw.com
Counsel for Academia Spectrum, LLC.

MITTS LAW, LLC
By:  Maurice R. Mitt, Esquire,
1822 Spruce Street
Philadelphia, Pennsylvania 19103
(215) 866-0112
mmitts@mittslaw.com
Counsel for Academia Spectrum.

KELLY A. ROWE, CCR
OLD DOMINION REPORTING
(757) 650-8546
kellyrowe305@gmail.com

---

3

1    (Court reporter duly sworn.)

2

3        THE COURT:  We are here in matter of *TDI*
4    *Acquisition versus Albright College*.  This is in
5    reference to a subpoena duces tecum that was issued to
6    a Virginia corporation or established in Virginia,
7    Academia.

8        So who do we have present today?  If we can
9    just go down the line.  This is the TDI — yeah, TDI
10   side.

11       MR. HURLEY:  Yes, Your Honor.  Denis Hurley
12   with Williams & Connolly.

13       THE COURT:  Your name again?  I'm sorry.

14       MR. COSGROVE:  Kevin Cosgrove, Hunton,
15   Andrews, Kurth.

16       THE COURT:  What was your first name — I
17   mean your second name?

18       MR. HURLEY:  Denis Hurley.

19       THE COURT:  Hurley.  All right.

20       MR. POTEAT:  And good afternoon, Kennon
21   Poteat of Williams & Connolly.

22       THE COURT:  I think you argued last time.

23       MR. POTEAT:  I did.

24       THE COURT:  Okay.

25       MR. MITTS:  Good afternoon, Your Honor.  Good

---

4

1    to see you.  Maurice Mitts on behalf of Academia.

2        THE COURT:  Smitts?

3        MR. MITTS:  Mitts, M-I-T-T-S.

4        THE COURT:  Okay.

5        MR. DURRETTE:  And Wyatt Durrette, Your
6    Honor, on behalf of Academia.

7        THE COURT:  Okay.  And I'm going to put some
8    notes down that help me real quick on this.  We have —
9    let's see.  And just so that I can keep everything
10   straight, I'm going to go through this and make sure I
11   have this right.  I just do a little chart for me to
12   follow.

13       TDI had a contractual relationship with
14   Albright.  And then WCO had a bid, whether it's a bona
15   fide bid or bona fide competing entity with Albright as
16   well.  And then WCO has some relationship with
17   Academia, and those are the records that TDI is trying
18   to get.

19       MR. DURRETTE:  That's right, Your Honor.

20       THE COURT:  And the last time we were here —
21   well, the first time we were here the Court determined
22   that Virginia was an appropriate place for the subpoena
23   duces tecum to issue.  We came back.  I had asked
24   everyone to try to work out their differences on
25   discovery now that we'd established jurisdiction.  And

1   stamped Academia 070.
2           So number one, it's not true they are a
3   competitor.  Number two, the documents that go to that
4   subject have been produced.  So I understand that they
5   have a wish.
6           THE COURT:  Okay.  Let me just be clear about
7   this.  I'm not asking — well, I'm going to ask you —
8   and I'm not saying that you have to turn anything over,
9   but does Academia have any prior or current
10  relationship with WCO involving some other entities?
11          MR. MITTS:  I think they do.  We wouldn't be
12  having this conversation if this was a one-trick pony.
13  I think they do.
14          THE COURT:  Okay.  So —
15          MR. MITTS:  And that's why it is not
16  pertinent because that has nothing to do with whether
17  or not this is a bona fide offer for the Albright deal.
18  And as you correctly pointed out, we are not a
19  contender.  And so when they said, well, that will put
20  the issue to rest.  No, it won't put the issue to rest.
21  We have already put the issue to rest.  If we are not
22  getting married to Albright, it is over.
23          I know they want to use this as a pretext for
24  invading another business, but there isn't a
25  controversy here any more.  And to pretend that that's

1   not the case — I don't have to be a litigant to the
2   case.  I don't have to be a litigant to the case.  It's
3   whether or not I'm willing to do a transaction.  And
4   both my desire, my stated intention and my legal right
5   under the option are all negative.  That really is a
6   game over.
7           THE COURT:  So the issue that you have this
8   isn't relevant, how can you justify the relevance of
9   asking for documents from Academia that are not related
10  to this particular issue given the fact that WCO has
11  provided you information to show that they are not a
12  competitor?
13          MR. POTEAT:  Well, the problem is the
14  information that they have provided is WCO saying, we
15  are not a competing entity.  When in the history of
16  litigation has that been conclusive of any issue?  If
17  that was the case, you would never be able to take
18  discovery period because the other side would say, ah,
19  yeah, no, we are not a competing entity but don't look
20  under the hood.
21          THE COURT:  But isn't this more an issue for
22  WCO and your discovery in the WCO case and not Academia
23  because they were involved with WCO for purposes of
24  this particular transaction.  Now you are not going
25  after WCO, or maybe that's who you want to say is the

1   person who — well, is — okay.  WCO was a competitor.
2           MR. POTEAT:  The — in that lawsuit against
3   Albright it is a competing — yeah, it's a competing
4   entity to bar.
5           THE COURT:  They were trying to bar from
6   Albright, so.  I mean, you would find out from them and
7   from looking at their practices whether or not they are
8   a competing entity.
9           MR. POTEAT:  Well, we certainly would be
10  doing that.  But to the extent Academia has information
11  about it that is relevant to those issues — WCO was
12  using Academia as their agent in this.
13          THE COURT:  And you are getting the
14  information from them about WCO and Albright.
15          MR. POTEAT:  Well, we — we haven't gotten
16  anything about WCO in terms of communications with WCO
17  on Albright.  And to the extent that Academia has
18  information about WCO's business that would render
19  them — that's what all of these, 12, 13, 14 — I mean,
20  that is what all of these are going towards — trying
21  to get information, documents and communications that
22  would show WCO is, in fact, a competing entity.
23          The fact WCO says, no.  Okay.  But we have to
24  be able to test that and see what documents there exist
25  about their business and about what they are going to

1   do with these licenses.
2           THE COURT:  And you need to get that from
3   WCO.  As far as I can tell, Academia is involved as
4   their agent in this particular deal.  They don't have
5   an obligation — they are not part of this at all.
6   They are not even really that tangentially
7   related because they — I mean, I guess they were.  But
8   they don't have an obligation to provide you with WCO's
9   documents.  WCO is the company that you should be
10  getting those documents from to find out what their
11  business practices are.
12          MR. POTEAT:  We are certainly seeking them
13  from WCO, but I don't think there's any legal basis to
14  say, and you can't go after those documents from
15  Academia.  Because, who knows, WCO may have some
16  documents.  Academia may have documents that WCO
17  doesn't.  They may have information that they put
18  together about WCO's business, what the plans are
19  related to —
20          THE COURT:  Well, if this is the way that
21  they do business then you are probably not going to
22  find anything more in any other deal than what you
23  found in this deal.  It would be the same kind of
24  information.  The kind of e-mails that you got here
25  between WCO and Academia or — would be the same in any

77

```
1          THE COURT:  If after that you find something
2   it would be a violation.  Or I guess after that it
3   would not be timely and they could bring it back.
4          MR. POTEAT:  And we just want an order.  I
5   mean, the tone wasn't intended to be punitive at all.
6          THE COURT:  Well, you read his.  Are you okay
7   with his?
8          MR. POTEAT:  We would like an order that
9   directs them to produce all communications and
10  documents.
11         THE COURT:  Is that not what yours does?
12         MR. MITTS:  Yes, it does, Your Honor.
13         MR. POTEAT:  It doesn't.  Theirs just talks
14  about their representation --
15         MR. MITTS:  No, it goes further.
16         MR. POTEAT:  Then it says you will do a
17  search.
18         MR. MITTS:  Here is what I said.
19         THE COURT:  His further ordered something.
20         MR. MITTS:  Yeah.  "And to address any
21  remaining concerns of TDI, Academia's counsel has
22  agreed to run a further search with the following terms
23  against the Academia records."
24         THE COURT:  Well, how about, it is further
25  ordered that Academia will run these terms?
```

78

```
1          MR. MITTS:  Okay.  That's fine, Your Honor.
2          THE COURT:  Instead of they have agreed to.
3   I think that's where your sticking point might be?
4          MR. POTEAT:  Well, we just need the fact
5   that -- you know, maybe another way to get at it, if he
6   wants to put in there that you denied.  I mean, you
7   denied their motion to quash as to 1, 2 and 3.  And
8   then you partially denied it to 4.  And so if you put
9   that --
10         THE COURT:  I guess we can just do one order
11  encompassing the whole motion today, the final results.
12  I ordered that these are the terms.  I thought if we
13  got the terms we were going to use I thought the rest
14  was pretty clear.
15         MR. MITTS:  I did too, Your Honor.  That is
16  why I focused on the terms because I thought this was
17  really the only remaining issue.
18         THE COURT:  So I think it's appropriate too
19  since we had the hearing to say all the other findings
20  as well.  That you would comply with the other portions
21  that you have.
22         MR. MITTS:  That we have.  And that we have
23  agreed to do this further.
24         THE COURT:  You made representations that you
25  have provided everything that is pursuant to -- or that
```

79

```
1   is responsive to 1, 2, 3 and 4 -- not 4 but partially
2   4.
3          MR. MITTS:  It's 1, 3, partially 4, 5 and 6.
4          THE COURT:  So 1, 2 --
5          MR. POTEAT:  1, 2, 3 and partially 4.
6          MR. MITTS:  Partially 4, 5 and 6.  And that
7   documents don't exist for 7, 8, 9, 10, 11 and 15.  And
8   the Court sustained our objections as to 12, 13 and 14.
9          THE COURT:  As represented by counsel
10  documents don't exist for those and -- yeah.
11         MR. POTEAT:  I mean, I don't want an order
12  saying that documents don't exist because I think we
13  will probably be back here at some point.
14         THE COURT:  Counsel has represented there are
15  no documents responsive to 4 -- well, no, that is a
16  partial -- 13, 14, 15, whatever it is.
17         MR. MITTS:  It's 7, 8, 9, 10, 11 and 15.
18         THE COURT:  We didn't talk about those
19  because they actually involve Albright but maybe not
20  WCO.  But we haven't talked about that issue.
21         MR. MITTS:  We did, Your Honor.
22         THE COURT:  We talked about Academia and WCO.
23  We never talked about Academia not related
24  to WCO.
25         MR. MITTS:  Well, Academia and Albright they
```

80

```
1   have.  That's what all of this production is.
2          MR. POTEAT:  Related to WCO's offer.  So it
3   was limited even further in terms of the communications
4   with Albright.  And so we -- as the order that we
5   proposed it would include the earlier discussions with
6   Albright.  So any communications Academia had with
7   Albright ought to be produced.
8          THE COURT:  Okay.  But we haven't talked
9   about that though.  I don't think.  Did we?
10         MR. POTEAT:  Yeah.  Well, I mean, anything
11  Academia has regarding Albright should be produced.
12  And I thought that's what we -- we got to.
13         THE COURT:  Well, I guess I didn't address
14  that specifically.  I was referring to Albright and
15  this deal just like I was referring to WCO and this
16  deal.  This particular deal.
17         If they represent Albright in some other way,
18  I never talked about that --
19         MR. POTEAT:  Yeah, they don't represent
20  Albright.  They represent WCO.
21         THE COURT:  Y'all never argued that.  Or if
22  they represent any other company that has been dealing
23  with Albright.  I guess they wouldn't.  That would be a
24  conflict.
25         MR. POTEAT:  Yeah, there has been no
```

# Exhibit 6

| | |
|---|---|
| **From:** | Poteat III, R. Kennon |
| **To:** | Maurice Mitts |
| **Cc:** | Hurley, Denis |
| **Subject:** | RE: Albright case - WCO Subpoena |
| **Date:** | Monday, May 2, 2022 11:00:14 AM |

Maurice:

Please advise on when WCO will make its production in response to the TDI subpoena.  It's now been more than a month since WCO said it would produce all responsive documents regarding Albright, as set forth below.

Thanks,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  |  vcard  |  www.wc.com/kpoteat
*He, Him, His*

-

**From:** Maurice Mitts <MMitts@mittslaw.com>
**Sent:** Sunday, April 17, 2022 8:43 PM
**To:** Poteat III, R. Kennon <kpoteat@wc.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Ken,

I hope you enjoyed the holiday.

I have followed up on the search terms and the custodians we discussed for the WCO subpoena.  We will run those terms against the custodians' files.  I will update once I have a better understanding of the volume of materials generated from these search criteria and as to when we can make a production.

Thank you,

Maurice

Maurice Mitts, Esq.
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
T (215) 866-0112
F (215) 866-0113
C (215) 327-7744

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

---

**From:** Poteat III, R. Kennon <kpoteat@wc.com>
**Sent:** Friday, April 8, 2022 3:40 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Maurice:

I'm writing to follow-up on my e-mail below from Monday.

Thanks,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  | vcard | www.wc.com/kpoteat
*He, Him, His*

---

**From:** Poteat III, R. Kennon
**Sent:** Monday, April 4, 2022 2:09 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Maurice:

I write to follow-up on our meet and confer from Thursday, March 31 regarding TDI's subpoena duces tecum to WCO Spectrum in the *Albright* matter.

First, with respect to **Requests 1-6**, you indicated that WCO was withdrawing its objections/motion to quash and will produce all responsive documents.  In terms of custodians, we request that WCO search and collect documents from Gary Winnick, Carl Katerndahl, Matthew Bloch, and Ash Vasudevan, along with any other personnel or agents doing work regarding Albright.  As we discussed, you agreed that WCO would search for documents in e-mail, on individual laptops/hard drives, and on WCO shared drives/folders, as well as hard copy materials.  Finally, you asked us for a list of proposed search terms, which we provide below:

- WND475
- Albright
- "@albright.edu"
- "Reading, PA" OR "Reading, Pennsylvania"
- "16,200,000" (including with wildcard "*16,200,000")
- "1,620,000" (including with wildcard "*16,200,000")
- "Academia" AND "Albright"
- "@academiaspectrum.com" AND "Albright"
- "@selectspectrum.com" AND "Albright"
- "Bitzarakis" AND "Albright"
- "Andreas" AND "Albright"
- "Vasudevan" AND "Albright"
- "Kratz" AND "Albright"
- "tmkratz@gmail.com" AND "Albright"
- "@wbklaw.com" AND "Albright"
- "ROFR" AND "Albright"
- "Right of First Refusal" AND "Albright"
- "Gray" AND "Albright"
- "@graymillerpersh.com" AND "Albright"

Second, with respect to **Requests 7-10**, WCO had previously indicated that it "does not possess any document responsive" to those requests.  We asked for specifics in terms of what WCO had done to search for such documents, and you did not have that information but said you would provide it to us.  You also indicated that as part of your search, collection, and production regarding Requests 1-6, WCO would look for documents and communications that would be responsive to Requests 7-10 and would produce them to the extent there are any.

Third, regarding **Request 11**, you indicated that WCO was not willing to produce any documents, unless they concerned Albright.  We explained that TDI needed documents responsive to Request 11, as they are relevant to its claims that Albright failed to show WCO made a bona fide offer, which includes, but is not limited to, the "Competing Entity" issue under the TDI-Albright Lease.  We also explained that such documents were relevant to TDI's investigation of the whistleblower allegations as they related to WCO and Albright.  We, however, understand that WCO is going to stand on its objections to that request.

Finally, regarding **Requests 12-15**, you said that you did not think WCO would be willing to produce documents unless they concerned Albright.  We indicated that these requests sought information

related to representations that WCO has made in correspondence with EBS license holders, and we expect WCO to produce any such material, given that it is relevant to the bona fide offer issue, including the bar to any sale to a "Competing Entity."  Please let us know if WCO will modify its position with respect to these requests.

Regards,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  | vcard | www.wc.com/kpoteat
*He, Him, His*

---

**From:** Poteat III, R. Kennon
**Sent:** Wednesday, March 30, 2022 5:37 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Sounds good.  Denis, can you send around a dial-in?

Thanks,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  | vcard | www.wc.com/kpoteat
*He, Him, His*

---

**From:** Maurice Mitts <MMitts@mittslaw.com>
**Sent:** Wednesday, March 30, 2022 2:51 PM
**To:** Poteat III, R. Kennon <kpoteat@wc.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Kennon,

Let's have a call tomorrow at 4 pm if that still works for you.

Thank you,

Maurice

Maurice Mitts, Esq.
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
T (215) 866-0112
F (215) 866-0113
C (215) 327-7744

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

---

**From:** Poteat III, R. Kennon <kpoteat@wc.com>
**Sent:** Monday, March 28, 2022 5:54 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** Albright case - WCO Subpoena

Maurice:

With respect to TDI's subpoena to WCO, we'd like to meet and confer this week.  We are available tomorrow morning between 10-11, Wednesday is open (except 11-noon), and Thursday afternoon is open (between 11-4:30).  Please let us know what works for you, and we'll send an invite.

Best,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  |  vcard  |  www.wc.com/kpoteat
*He, Him, His*

---

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

# Exhibit 9





EFiled: Aug 11 2022 10:16AM EDT
Transaction ID 67921276
Case No. K21M-08-007 JJC

*David W. Klauder, Esq.*
Wilmington, DE 19
dklauder@bk-legal.com

August 11, 2022

<u>**VIA LEXIS NEXIS FILE & SERVE*XPRESS***</u>

The Honorable Jeffrey J. Clark
The Honorable Andrea M. Freud
State of Delaware Superior Court
Kent County Courthouse
38 The Green
Dover, Delaware 19901

     Re:   *TDI Acquisition Sub LLC v. Albright College*
            Case No. K21M-08-007 (JJC)

Dear Judge Clark and Commissioner Freud:

     I write on behalf of WCO Spectrum, LLC ("WCO") regarding the Motion to

Compel filed by TDI Acquisition Sub, LLC ("TDI") that is set to be heard by the

Court in person today at 2:00 p.m. WCO has produced the documents requested in

TDI's subpoena, thereby mooting TDI's Motion to Compel. WCO believes

today's hearing should be cancelled as unnecessary; TDI believes the hearing

should proceed.

     The subpoena that TDI served on WCO contains 15 documents requests.

Motion ¶ 1. TDI filed the Motion to Compel "[b]ecause WCO has refused to

produce the requested discovery . . . TDI is forced to move this Court to compel

**Philadelphia, PA**
1905 Spruce Street
Philadelphia, PA 19103
(215) 642-8271

**Wilmington, DE**
1204 North King Street
Wilmington, DE 19801
(302) 803-4600

**Media, PA**
9 West 3rd Street
Media, PA 19063
(484) 441-6444

THE HONORABLE JEFFREY J. CLARK AND THE HONORABLE ANDREA M. FREUD
August 11, 2022
Page 2 of 2

production." Motion at 2. The Motion to Compel does not include a "wherefore" clause or "prayer for relief" and the proposed order to the Motion to Compel simply states that the Motion is "Granted." Therefore, the Motion to Compel only seeks the production of documents in response to the subpoena's 15 document requests.

On August 10, 2022, WCO produced to TDI 11,451 pages of documents responsive to TDI's subpoena. WCO requested that TDI withdraw the Motion to Compel, but TDI responded that it will proceed with the hearing. WCO believes that TDI has received all the relief it requested in the Motion to Compel and that there is no further relief that was requested that the Court could grant. Accordingly, WCO respectfully requests that the Court deny the Motion to Compel, without prejudice, as moot and cancel today's hearing.

Counsel is available at the convenience of the Court, should Your Honor have any questions or concerns regarding this matter.

Respectfully Submitted,

/s/  David M. Klauder

David M. Klauder, Esq. (#5769)

cc: Peter B. Ladig, Esq. (by File & Serve)

# Exhibit 10

REDACTED VERSION OF DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

# Exhibit 11

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

NSAC, LLC,

                    Plaintiff,

v.                                                    Case No. _____

THE SCHOOL BOARD OF ST. LUCIE
COUNTY, FLORIDA,

                    Defendant.

## COMPLAINT

Plaintiff NSAC, LLC ("NSAC"), by its undersigned counsel, hereby brings this Complaint ("Complaint") to remedy several breaches of contract by Defendant the School Board of St. Lucie County, Florida (the "Board").

## NATURE OF THE ACTION

1.        The Board holds two Federal Communications Commission ("FCC") licenses to use eight unique "channels" of radio frequency spectrum in the Fort Pierce, Florida area (the "Licenses"). These licensed channels are part of the Educational Broadband Service ("EBS"), which is a range of spectrum that the FCC historically has licensed only to educational and non-profit entities. Those entities, in turn, typically have leased the spectrum capacity authorized by their licenses to commercial entities.

2.        NSAC is a subsidiary of T-Mobile US, Inc. ("T-Mobile"), a company that provides wireless communications services. NSAC's business is to acquire and hold spectrum use rights for itself and other T-Mobile affiliates. Since 2008, the Board has leased to NSAC or its predecessor-in-interest the excess capacity on the licensed channels pursuant to a written agreement (the "Lease Agreement").

1

3.      The Lease Agreement guarantees that NSAC will make certain payments to the Board and, in exchange, the Board provides various rights to NSAC.  Those rights include the following:

      a.      NSAC's Exclusivity right, which prohibits the Board from assigning the Licenses to a third party unless certain criteria are met, including, without limitation, that the proposed buyer or assignee may not be a "Competing Entity," as that term is defined in the Lease Agreement.  *See* Ex. A §§ 3(a), 10(c).

      b.      NSAC's Right of First Refusal ("ROFR"), which provides that, in the event the Board receives an "acceptable *bona fide* offer" for the Licenses, NSAC has the right to match that offer and receive certain additional information concerning that offer.  *See* Ex. A § 3(b).

      c.      NSAC's Right to Participate, which provides that, in the event that the Board solicits bids, proposals, or offers for the sale or assignment of the Licenses, the Board must provide NSAC "with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity" to, *inter alia*, "receive information" with respect to such bids, proposals, or offers, "discuss such information" with the Board, and "counter" such bids, proposals, or offers. *See* Ex. A § 3(f).

4.      The Board has breached each of these provisions of the Lease Agreement.

5.      In November 2021, the Board informed NSAC that it had received a purported offer to purchase the Licenses from a third-party competitor to NSAC, WCO Spectrum LLC ("WCO"), for $6,795,000.

6.      Three months later, in February 2022, the Board informed NSAC that it had received

a new purported, non-binding offer from WCO, this one for $7,550,000.  The Board characterized this offer as "*bona fide*" and informed NSAC that it intended to accept the new offer unless NSAC exercised its ROFR right within 30 days.  The Board also summarily asserted that WCO was not a Competing Entity and attached a conclusory declaration that purported to verify as much but contained no supporting evidence.

7.  In response, NSAC requested that the Board provide certain information and assurances due to NSAC under the Lease Agreement.  Among other things, NSAC requested that the Board provide information sufficient to establish that WCO's offer was *bona fide* and thus capable of being accepted, including information to substantiate its unsupported assertion that WCO is not a Competing Entity.  NSAC also requested that the Board provide information that NSAC is due under the Right to Participate provision, including all documents and communications exchanged between WCO and the Board concerning WCO's offers.

8.  NSAC also offered that the parties could enter a standstill agreement that would preserve the status quo by stipulating that:  (i) until the issues raised in NSAC's letter had been resolved, the time in which NSAC must decide whether to exercise its ROFR right would not start running; and (ii) in the interim, the Board would not proceed with any proposed sale or assignment of the Licenses.

9.  The Board refused to provide the requested information or to enter the proposed standstill agreement, and took the position that NSAC's ROFR right expires on March 26, 2022.

10.  The Board, as the party seeking to invoke the contractual exception to exclusivity, bears the burden of establishing that WCO's offer is *bona fide* and capable of being accepted, including but not limited to establishing that WCO is not a Competing Entity.

11.  The Board has not carried this burden.

12.  Accordingly, unless and until the Board establishes that the exception to exclusivity

3

applies, it should not be permitted to sell or assign the Licenses to WCO, or should be required to

unwind any such transaction to the extent the Board already has purported to effect it.

13.     Additionally, it is critically important that the 30 days in which NSAC must decide

whether to match an "acceptable *bona fide*" offer under the ROFR provision does not start running

until the Board in fact has established that WCO's offer is *bona fide* and capable of being accepted.

Otherwise, the Board could coerce NSAC into matching an invalid offer and obtain funds to which it

was never entitled.

14.     Accordingly, because the Board has not established that WCO's non-binding offer

is *bona fide* and capable of being accepted—including because it has not established that WCO is not

a Competing Entity—NSAC also seeks a declaration that the 30-day period in which it must exercise

its ROFR has not yet begun to run.

## PARTIES

15.     NSAC is a limited liability company organized under the laws of Delaware.  Its

ultimate parent is T-Mobile.  NSAC's sole member is Clearwire XOHM LLC, a limited liability

company organized under the laws of Delaware.  Clearwire XOHM LLC's sole member is Nextel

West Corp., a Delaware corporation with its principal place of business located at 12920 SE 38th

Street, Bellevue, Washington 98006.  Accordingly, NSAC is a citizen of Delaware, Washington, and

no other state.

16.     The Board is a public school system in St. Lucie County, Florida, with its main

address at 9641 Brandywine Lane, Port St. Lucie, Florida 34986.  Accordingly, the Board is a citizen

of Florida and no other state.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the

claims are between citizens of different states. Plaintiff NSAC is a citizen of Delaware, Washington, and no other state. Defendant the Board is a citizen of Florida and no other state.

18.     This Court has personal jurisdiction over the Board because it exists in Florida, its principal place of business is in Florida, and it committed the acts complained of in Florida.

19.     This District is a proper venue under 28 U.S.C. § 1391(b) because the Board resides in this District, a substantial part of the events giving rise to the claim occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

## FACTUAL BACKGROUND

### A.     The Licenses to the Fort Pierce Spectrum

20.     The Board has long held two Licenses to use eight unique channels of radio-frequency spectrum in the Fort Pierce, Florida, area. The channels are designated A1, A2, A3, and A4, under the FCC "call sign" WLX391; and B1, B2, B3, and B4, under the FCC call sign WLX392.

21.     The licensed channels are part of the EBS, which is a range of spectrum that the FCC historically has licensed to educational and/or non-profit organizations.

22.     There are 20 EBS channels in any particular geographic area. They fall within the band of spectrum from 2496 to 2690 MHz, commonly referred to as the "2.5 GHz" spectrum band.

23.     Prior to April 2020, FCC rules permitted EBS licensees, like the Board, to lease all but five percent of their licensed spectrum to non-educational entities, like NSAC. Nearly all of the 1,300 EBS licensees nationwide did so. These leases took spectrum that otherwise would have gone unused, and used it to support modern high-speed broadband telecommunications services—such as the emerging 5G cellular service that T-Mobile affiliates provide in St. Lucie County.

### B.     The September 2008 Lease Agreement

24.     On September 9, 2008, the Board and NSAC's predecessor-in-interest entered into a lease agreement for the spectrum capacity authorized by the Licenses, a copy of which is attached

hereto as Exhibit A.[1]  NSAC's predecessor-in-interest subsequently assigned its rights and obligations under the Lease Agreement to NSAC.  The Lease Agreement's term is through approximately 2038. The parties operated under the Lease Agreement for the first 13 years of its duration without incident.[2]

25.    Under the Lease Agreement, the Board grants NSAC the right to use the spectrum capacity authorized by the Licenses (subject to the FCC's mandate that the parties reserve five percent of the spectrum capacity for educational uses) in exchange for an initial fee and a monthly payment. The Lease Agreement also contains several other provisions that are central to this dispute.

26.    The Lease Agreement contains an Exclusivity provision that, as relevant here, prohibits the Board from "negotiat[ing] with or enter[ing] into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels" "[e]xcept as otherwise permitted pursuant to Subsection 10(c)."  Ex. A § 3(a).

27.    Section 10(c), in turn, provides:

Subject to [NSAC]'s ROFR and FCC Rules, [the Board] may negotiate and enter into any contract to assign the Licenses to a third party provided that:

(i)    [the Board] provides [NSAC] at least thirty (30) days advance notice prior to entering into any agreement relating to any such proposed assignment;

(ii)    [the Board] agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of [the Board]'s obligations hereunder and acknowledges all of [NSAC]'s rights hereunder, including [NSAC]'s ROFR (as it applies to any subsequent transfer);

(iii)    the assignment and assumption agreement is in a form reasonable acceptable to [NSAC];

(iv)    the assignee is not a Competing Entity (defined below); and

---

[1] NSAC has filed the Lease Agreement with minor redactions to prevent the disclosure of NSAC's confidential trade secret information contained in its EBS lease agreements.  *See* Ex. A § 14 ("CONFIDENTIALITY AND NON-DISCLOSURE").

[2] On February 8, 2011, the Board and NSAC's predecessor-in-interest executed an Addendum to the Lease Agreement, a copy of which is attached as Exhibit B.  On November 30, 2018, the Board and NSAC executed a First Amendment to the Lease Agreement, a copy of which is attached as Exhibit C.

(v)     upon closing of such assignment, [the Board] (assignor) provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to [NSAC].

A "Competing Entity" is any party that (1) offers, provides or delivers a commercially available telecommunications service using EBS or BRS spectrum within the United States of America (a "Competing Service"), (2) owns (except a less than two and one-half percent (2½%) interest in a publicly traded company) any interest in any entity which provides a Competing Service, (3) has granted, or controls, is controlled by or is under common control with, a party that has granted, to any provider of a Competing Service a global or overarching agreement for the right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires.

Ex. A § 10(c).

28.     The Lease Agreement also contains a ROFR provision that grants NSAC "the right to use, lease, or purchase . . . some or all of the Channels . . . by matching any acceptable *bona fide* offer received by [the Board] from a third party (the 'ROFR') during the Term." Ex. A § 3(b). The ROFR provision further provides: "Within thirty (30) days following [the Board]'s determination to accept a *bona fide* third party offer (the 'Third Party Offer'), [the Board] will notify [NSAC] of any Third Party Offer, including (i) the identity of the offeror; (ii) the terms of the offer, and (iii) a true and correct copy of the operative agreement, letter of intent, term sheet or other similar definitive then-existing documentation relating to the offer." *Id.* NSAC then has thirty (30) days to notify the Board whether it will exercise its ROFR to purchase the Licenses. *Id.*

29.     The Lease also grants NSAC a "Right to Participate." *See* Ex. A § 3(f). That provision states in relevant part: "If [the Board] decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part of the whole of the Channels . . . then *[the Board] will provide [NSAC] with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity*: (i) to submit bids, proposals and offers for the Channels . . . ; (ii) to receive information with respect to such bids, proposals, offers and counters thereto; (iii) to discuss such information with [the Board]; (iv) to counter any such bids, proposals or offers; and (v) to be

7

provided with copies of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by [the Board]." *Id.* (emphasis added).

**C.**     **The FCC Changes the Rules for Holding EBS Licenses**

30.     Prior to April 2020, FCC regulations allowed only educational or non-profit entities to hold EBS spectrum licenses.

31.     Effective April 27, 2020, however, the FCC eliminated the educational-use requirement for EBS licenses.  According to the FCC, this change was enacted because "technological changes over the last 30 years enable any educator with a broadband connection to access a myriad of educational resources."  Transforming the 2.5 GHz Band, 86 Fed. Reg. 10,839, 10,840 (2021). Hence, "[o]nly a handful of EBS licensees ha[d] deployed their own networks or use[d] their EBS licenses in a way that require[d] dedicated spectrum." *Id.*  Instead, most licensees "rel[ied] on lessees [such as NSAC] to deploy and operate broadband networks and use[d] the leases as a source for revenues or devices." *Id.*

32.     With EBS licenses now available to non-educational actors—and with 2.5 GHz spectrum being one of the most important components of the emerging 5G telecommunications technology—several new entities have entered the market for spectrum licenses, seeking to acquire such licenses for commercial gain.

33.     One such entity is Winnick & Company, which operates through a number of affiliates, including WCO.  WCO is a private company owned and controlled by billionaire Gary Winnick.  *See* About WCO Spectrum LLC, https://www.wcospectrum.com/about-wco-spectrum/ (last visited Mar. 25, 2022).  WCO describes itself as an investor in EBS spectrum licenses.

34.     Since the FCC rule change, WCO has sent dozens of institutions "Non-Binding Term Sheets" purporting to propose to purchase their EBS licenses, without regard for whether the terms of the underlying contracts permit such purchases.  *See, e.g.*, Ex. D (WCO Term Sheet to the Board).

**D.      WCO Makes Its First Non-Binding Offer to the Board**

35.      In 2021, WCO apparently made its first entreaty to the Board about a potential purchase of its Licenses.

36.      On November 19, 2021, the Board, through its outside counsel, Todd D. Gray, Esq., informed Heather Brown, Esq., in-house counsel for T-Mobile, that it had received an "unsolicited offer" to purchase the Licenses.  *See* Ex. E.  Mr. Gray stated that the Board "may be interested" in pursuing such a sale and inquired whether NSAC was interested in purchasing the Licenses.  *See* Ex. E.

37.      Later that day, Mr. Gray provided Ms. Brown and Tajit Mehta of T-Mobile with a copy of the purported "offer letter" the Board had received.  Ex. F.  The letter, which was one-page long and dated October 22, 2021, showed that the offeror was WCO and that the offer was for $6,795,000.  *See* Ex. G.

38.      In that letter, WCO stated that it is a "private investment firm focused on acquiring Educational Broadband Service . . . spectrum licenses" and that WCO's "principals . . . have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation." Ex. G.

39.      Neither WCO's letter, nor Mr. Gray in his communications with NSAC, represented that WCO's October 22, 2021 offer was "*bona fide*."  Nor did either represent at that time that WCO was not a "Competing Entity."

**E.      WCO Makes a Second, Higher Non-Binding Offer to the Board**

40.      Three months later, on February 24, 2022, Mr. Gray notified Ms. Brown that the Board had received a new, higher non-binding offer from WCO, this one for $7,550,000.  *See* Ex. H.

41.      Mr. Gray told Ms. Brown that the Board intended to accept this $7,550,000 offer—which he notably did not describe as "unsolicited"—unless NSAC provided notice that it intended to

exercise the ROFR "within thirty (30) days," or by March 26, 2022. *See* Ex. H.

42. Mr. Gray also attached two documents to his February 24, 2022 correspondence to Ms. Brown. First, he attached a copy of WCO's new purported offer letter, which was dated February 22, 2022 and included a proposed non-binding term sheet. *See* Ex. D. The term sheet purports to "summarize[] the basic terms and conditions pursuant to which WCO Spectrum, LLC (the 'Buyer') proposes to acquire . . . certain [EBS] licenses from the School Board of St. Lucie County, Florida." *See* Ex. D.

43. The term sheet also emphasizes that it is for "DISCUSSION PURPOSES ONLY" and that it "do[es] not represent a binding offer, agreement, or commitment from the Buyer to acquire the EBS licenses." *See* Ex. D.

44. WCO's accompanying cover letter likewise underscores that it "is solely a non-binding offer and is not, and should not be, considered a legally binding indication or agreement in any matter." *See* Ex. D. In that letter, WCO also references a "Non-Disclosure Agreement" between the Board and WCO dated December 14, 2021. *See* Ex. D.

45. Second, Mr. Gray attached an "Affidavit of Carl Katerndahl" (the "Katerndahl Affidavit"), which Mr. Gray characterized as "attesting to the fact that WCO is not a Competing Entity" under Section 10(c) of the Lease. *See* Ex. I.

46. Specifically, the Katerndahl Affidavit, which is less than half a page long, purports to "verify" that (1) "WCO and its affiliates do not provide a telecommunications service using Educational Broadband Service (['] EBS') or Broadband Radio Service ('BRS') spectrum within the United States of America (a 'Competing Service')"; (2) WCO and its affiliates do not own an interest in any entity which provides a Competing Service"; and (3) "WCO is not affiliated with a party that has granted, to any provider of a Competing Service any right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that WCO or such party owns or

10

subsequently acquires." Ex. I. The affidavit provided no facts whatsoever to support Mr. Katerndahl's unadorned, self-serving assertions.

**F.      NSAC Unsuccessfully Seeks Information to Which It Is Entitled**

47.      On March 17, 2022, NSAC, through outside counsel, formally notified the Board that, *inter alia*, (1) it was in breach of Section 3(a) given that the Board had not established that WCO's $7,550,000 offer was *bona fide*, including but not limited to because it had not established that WCO is not a "Competing Entity"; and (2) it was in breach of Section 3(f) given that the Board had not provided NSAC with an opportunity no less favorable in timing or substance than the right provided to WCO to receive information under the Lease and discuss such information with the Board. *See* Ex. J.

48.      In an effort to resolve those breaches, NSAC requested various information and assurances to which it is entitled under the Lease Agreement. Specifically, it asked the Board to:

a.      establish that WCO's offer is "*bona fide*" and thus capable of being accepted, and provide NSAC with a true and correct copy of "the operative agreement, letter of intent, term sheet, or other similar definitive then-existing documentation relating to the offer," as required under Section 3(b);

b.      establish that WCO is not a Competing Entity, as required under Section 10(c)(iv);

c.      provide NSAC with an assurance that WCO will "agree[] in writing to assume all of [the Board]'s obligations" under the Lease Agreement and "acknowledge[] all of" NSAC's rights thereunder, as required under Section 10(c)(ii);

d.      provide NSAC with a proposed agreement—which the February 22, 2022 term sheet explicitly is not—sufficient to enable it to determine if such agreement is

11

"in a form reasonably acceptable" to NSAC, as required under Section 10(c)(iii); and

e.  provide NSAC with, *inter alia*, "information with respect to" any bids, proposals, offers, and counters thereto—including information concerning the reasons why WCO increased its offer—and permit NSAC to "discuss such information with [the Board]," as required under Section 3(f).

*See* Ex. J.

49.     These rights are critical not only because the requested information is important in its own right, but because it bears directly on whether NSAC will exercise the ROFR.

50.     NSAC's letter also included a list of questions intended to facilitate the exchange of information required by the Lease Agreement. *See* Ex. J.

51.     In an effort to facilitate the exchange of this information without resorting to litigation, NSAC also requested that the Board enter a proposed Standstill Agreement that it attached to the letter. *See* Ex. K. The proposed agreement would have preserved the status quo by providing that, until the issues raised in the letter are resolved, the time period in which NSAC must exercise its ROFR will not begin running, if at all, and the Board will not proceed with any sale or assignment of the Licenses. *See* Ex. K.

52.     On March 24, 2022, the Board refused to provide the requested information and refused to enter the proposed Standstill Agreement, taking the position that NSAC's ROFR right expires on March 26, 2022 and stating that, if NSAC did not exercise its ROFR by that date, the Board "will proceed with the sale of the licenses to WCO." Ex. L.

53.     NSAC has done everything in its power to obtain the information to which it is entitled without resorting to litigation. *See* Exs. J, K. Those efforts uniformly have been unsuccessful.

54.     Now, as a last resort, NSAC brings this action based on the Board's breaches of the

Exclusivity provision in Section 3(a) and the Right to Participate provision in Section 3(f), and for a declaration that the Board has failed to provide the information needed to start the time period during which NSAC must exercise its ROFR under Section 3(b).

## CAUSES OF ACTION
### COUNT I
### (Breach of Contract – Exclusivity)

55.     NSAC repeats and realleges paragraphs 1 through 54 as if they were fully set forth herein.

56.     The Lease Agreement constitutes a valid and enforceable contract between the Board and NSAC.

57.     NSAC complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

58.     The Board has breached Section 3(a) of the Lease Agreement.

59.     Section 3(a) provides that, "[e]xcept as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels."

60.     Section 10(c), in turn, permits the Board to "assign" the Licenses to a third party provided that certain criteria are met, including that the proposed assignee "is not a Competing Entity."

61.     Notably, Section 10(c) does not provide that the Board may assign the Licenses to a third party that *represents* or *states* that it is not a "Competing Entity"; the provision bars assignment to any third party that *is in fact* a "Competing Entity."

62.     As a matter of law, because Section 10(c) is an exception to the exclusivity requirement of Section 3(a), the Board bears the burden of demonstrating that the requirements of Section 10(c) are met.

13

63.     The Board has not carried that burden because it has not shown that WCO's offer is *bona fide* and thus capable of being accepted, which includes but is not limited to establishing that WCO is not a Competing Entity under Section 10(c).

64.     The only "support" the Board has provided for its assertion that WCO is not a Competing Entity is the Katerndahl Affidavit. That is entirely insufficient to carry the Board's burden.

65.     For one thing, the Katerndahl Affidavit provides zero factual support for its assertions, and merely purports to recite the elements of the Lease Agreement's definition of a "Competing Entity." *See* Ex. I.

66.     For another, the Katerndahl Affidavit does not even recite the definition's elements accurately. In particular, it purports to "verify" that "WCO is not affiliated with a party that has granted, to any provider of a Competing Service any right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that WCO or such party owns or subsequently acquires." Ex. I. But that is not the relevant inquiry under the Lease Agreement. The Lease Agreement defines "Competing Entity," in relevant part, as follows:

> A "Competing Entity" is any party that . . . has granted, ***or controls, is controlled by or is under common control with,*** a party that has granted, to any provider of a Competing Service ***a global or overarching agreement*** for the right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires.

Ex. A § 10(c) (emphases added).

67.     Put simply, even if the representations in the Katerndahl Affidavit were true (which is dubious), they would not establish that WCO is not a Competing Entity.

68.     Other than the unsupported Katerndahl Affidavit, the Board has provided no information to substantiate its assertion that WCO is not a Competing Entity.

69.     This failure is especially concerning given that NSAC has good reason to suspect that WCO is, in fact, a Competing Entity.

70.     WCO made a point of touting to the Board that it is a "private investment firm focused on acquiring Educational Broadband Service . . . spectrum licenses" and that WCO's "principals . . . have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation." Ex. G.

71.     When NSAC has inquired into the basis for WCO's statements, it has been stonewalled by the Board.

72.     That is notable because it is clear—based on WCO having submitted multiple offers to the Board, and entering a December 14, 2021 Non-Disclosure Agreement with the Board—that the Board and WCO have had discussions with WCO about its offers, and it is inconceivable that the "Competing Entity" issue was not addressed during those discussions.

73.     Against this background, the Board has not carried its burden of establishing that WCO is not a Competing Entity.

74.     The Board also has not carried its burden with respect to Section 10(c)(ii).

75.     Under Section 10(c)(ii), the Board may proceed with an assignment of the Licenses to a third party only if the Board "agrees in writing to assign all of its rights and obligations under this Agreement and such third party agrees in writing to assume all of [the Board]'s obligations hereunder and acknowledges all of [NSAC]'s rights hereunder, including [NSAC]'s ROFR (as it applies to any subsequent transfer."

76.     As discussed above, the Board has not provided NSAC any assurance from WCO in writing that WCO will "assume all of [the Board]'s obligations hereunder and acknowledge[] all of [NSAC]'s rights hereunder."

77.     Because the Board seeks to assign the Licenses without having met its burden to show that the exception to exclusivity in Section 10(c) applies, and without providing the necessary assurance required under Section 10(c), it is in breach of Section 3(a).

15

78.     Consequently, the Court should enjoin the Board from proceeding with any sale, assignment, or other transfer of the License or its rights thereunder to WCO, or should unwind any such transaction that the Board and WCO already have purported to consummate.

WHEREFORE, NSAC respectfully asks the Court to:

a.     Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing the Board from selling, transferring, or assigning the Licenses to WCO or any of its affiliates, or unwinding any such transaction to the extent the Board already has purported to effect it;

b.     Award NSAC compensatory damages in an amount exceeding $75,000;

c.     Award NSAC all costs and interest allowed by law;

d.     Pursuant to Section 22(f) of the Lease Agreement, award NSAC all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with the Board and WCO;

e.     Award NSAC such other relief as the Court deems just and reasonable; and

f.     Provide NSAC with the right to amend this Complaint in the event the Court determines NSAC has failed to adequately plead the foregoing claim against the Board or as other events may warrant.

## COUNT II
### (Breach of Contract – Right to Participate)

79.     NSAC repeats and realleges paragraphs 1 through 54 as if they were fully set forth herein.

80.     The Lease Agreement constitutes a valid and enforceable contract between the Board and NSAC.

81.     NSAC complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

16

82.     The Board breached Section 3(f) of the Lease Agreement.

83.     That section provides that, "[i]f [the Board] decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part of the whole of the Channels . . . then [the Board] will provide [NSAC] with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity: (i) to submit bids, proposals and offers for the Channels . . . ; (ii) to receive information with respect to such bids, proposals, offers and counters thereto; (iii) to discuss such information with [the Board]; (iv) to counter any such bids, proposals or offers; and (v) to be provided with copies of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by [the Board]."

84.     Upon information and belief, the Board solicited bids, proposals, and/or offers from WCO for the sale or assignment of the Licenses, including but not limited to WCO's February 22, 2022 non-binding "offer" of $7,550,000.   That offer was WCO's second purported offer and represented a $755,000 increase over WCO's earlier purported offer of October 22, 2021.  It is flatly implausible that WCO decided to increase its offer without engaging in communications with the Board.  Further, and notably, while the Board described WCO's first offer as "unsolicited," it did not do the same for WCO's February 22, 2022 offer.

85.     In addition, the Board and WCO apparently entered into a December 14, 2021 Non-Disclosure Agreement.  *See* Ex. D.  The Board's execution of such an agreement with WCO confirms that the Board has deprived NSAC of its right to an "an opportunity no less favorable in timing or substance than the opportunity provided to any other entity" to, *inter alia*, "receive information with respect to such bids, proposals, offers and counters thereto."

86.     The Board has refused to share the required information concerning either of WCO's two offers, including without limitation any information about the Board's communications with WCO that resulted in WCO subsequently making a higher offer, copies of all documents exchanged

between WCO and the Board concerning the offers, and copies of the December 14, 2021 Non-Disclosure Agreement and any other agreements between the Board and WCO.

87.     The Board has thus failed to provide NSAC with the same opportunity as WCO to receive information with respect to WCO's offers. This breach has further deprived NSAC of its right to discuss such information with the Board and to "counter" any offers received by the Board.

WHEREFORE, NSAC respectfully asks the Court to:

a.     Order specific performance by the Board of Section 3(f) of the Lease Agreement, by mandating that the Board share all information requested by NSAC concerning, *inter alia*, WCO's October 22, 2021 non-binding offer, WCO's February 22, 2022 non-binding offer and the term sheet attached thereto, and all circumstances surrounding these offers.

b.     Award NSAC compensatory damages in an amount exceeding $75,000;

c.     Award NSAC all costs and interest allowed by law;

d.     Pursuant to Section 22(f) of the Lease Agreement, award NSAC all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with the Board and WCO;

e.     Award NSAC such other relief as the Court deems just and reasonable; and

f.     Provide NSAC with the right to amend this Complaint in the event the Court determines NSAC has failed to adequately plead the foregoing claim against the Board or as other events may warrant.

## COUNT III
### (Declaratory Judgment – ROFR)

88.     NSAC repeats and realleges paragraphs 1 through 54 as if they were fully set forth herein.

89.     The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between NSAC and the Board regarding the parties' rights and obligations under the Lease Agreement.

90.     Under Section 3(b) of the Lease Agreement, NSAC's time for exercising the ROFR is triggered by the Board's "determination to accept a *bona fide* third party offer."

91.     Because Section 10(c) of the Lease Agreement prohibits the assignment of the License to a Competing Entity, an offer from a Competing Entity is not a *bona fide* offer for purposes of Section 3(b).  Nor is it an offer that is capable of being "accept[ed]."

92.     As a matter of law and equity, the time period during which NSAC must decide whether to exercise its ROFR does not begin running until the Board has established that the third party offer is *bona fide* and can be accepted, which includes but is not limited to until the Board has established that WCO is not a Competing Entity.

93.     Otherwise, the Board could obtain an invalid offer—the invalidity of which is concealed—and compel NSAC to match it or risk losing its right to do so.  If NSAC chose to match it, then the Board would have coerced a significant sum of money ($7.55 million in this case) that NSAC was never required to pay.

94.     Such a result is precluded by the Lease Agreement and governing equitable principles.

WHEREFORE, NSAC respectfully asks the Court to:

a.     Issue a declaratory judgment that the time period during which NSAC must notify the Board whether it is exercising its ROFR will not start running, if at all, until the Court issues a final

19

ruling determining whether the Board has established that WCO's offer is *bona fide*, which includes but is not limited to until the Board has established that WCO is not a Competing Entity.

b.      Award NSAC all costs and interest allowed by law;

c.      Pursuant to Section 22(f) of the Lease Agreement, award NSAC all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with the Board and WCO;

d.      Award NSAC such other relief as the Court deems just and reasonable; and

e.      Provide NSAC with the right to amend this Complaint in the event the Court determines NSAC has failed to adequately plead the foregoing claim against the Board or as other events may warrant.

## PRAYER FOR RELIEF

WHEREFORE, NSAC respectfully asks the Court to:

a.      Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing the Board from selling, transferring, or assigning the Licenses to WCO or any of its affiliates, or unwinding any such transaction to the extent the Board already has purported to effect it;

b.      Order specific performance by the Board of Section 3(f) of the Lease Agreement, by mandating that the Board share all information requested by NSAC concerning, *inter alia*, WCO's October 22, 2021 non-binding offer, WCO's February 22, 2022 non-binding offer and the term sheet attached thereto, and all circumstances surrounding these offers;

c.      Issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that the time period during which NSAC must notify the Board whether it is exercising its ROFR will not start running, if at all, until the Court issues a final ruling determining whether the Board has established that WCO's

offer is *bona fide*, which includes but is not limited to until the Board has established that WCO is not

a Competing Entity;

     d.     Award NSAC compensatory damages in an amount exceeding $75,000, including

those incurred in having to enforce its rights under the Lease Agreement;

     e.     Pursuant to Section 19(b) of the Lease Agreement, order the Board to indemnify and

hold NSAC harmless from and against any and all liabilities, losses, damages and costs, including

reasonable attorneys' fees, resulting from, arising out of, or in any way connected with the Board's

breach of the Lease Agreement.

     f.     Award NSAC all costs and interest allowed by law;

     g.     Pursuant to Section 22(f) of the Lease Agreement, award NSAC all attorney's fees and

expenses that relate to its pursuit of this litigation and the preceding dealings with the Board and

WCO;

     h.     Award NSAC such other relief as the Court deems just and reasonable; and

     i.     Provide NSAC with the right to amend this Complaint in the event the Court

determines NSAC has failed to adequately plead the foregoing claim against the Board or as other

events may warrant.

Dated:  March 25, 2022          Respectfully submitted,


          /s/ *Michael A. Abel*
          Michael A. Abel
          Florida Bar No. 0075078
          mabel@abelbeanlaw.com
          ABEL BEAN LAW
          100 N. Laura Street, Suite 501
          Jacksonville, FL 32202
          Telephone: (904) 944-4100
          Facsimile: (904) 944-4122

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
kbrown@wc.com
R. Kennon Poteat III*
kpoteat@wc.com
William I. Stewart*
wstewart@wc.com
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*application for admission *pro hac vice*
Forthcoming under Rule 4, Rules
Governing the Admission, Practice, Peer
Review, and Discipline Of Attorneys

*Attorneys for NSAC, LLC*

# Exhibit 12

Case 2:23-cv-14034-AMC Document 18 Entered on FLSD Docket 09/04/2024 Page 3 of 7
Case 2:22-cv-14106-AMC Document 23 Entered on FLSD Docket 09/04/2024 Page 3
ID #:2091

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT PIERCE DIVISION

### CASE NO. 22-14106-CIV-CANNON

**NSAC, LLC**,

      Plaintiffs,

v.

**THE SCHOOL BOARD OF
ST. LUCIE, COUNTY, FLORIDA**,

      Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant's Motion to Dismiss (the "Motion") [ECF No. 19], filed on June 1, 2022. The Motion seeks dismissal of the Complaint [ECF No. 1] for lack of subject matter jurisdiction under Rule 12(b)(1) [ECF No. 19]. The Court has reviewed the Complaint [ECF No. 1], the Motion [ECF No. 19], the Response [ECF No. 20], the Reply [ECF No. 22], and the full record. For the reasons set forth below, and pursuant to the parties' agreement, the Motion [ECF No. 19] is **GRANTED**, and Plaintiff's Complaint is dismissed without prejudice.

Plaintiff alleges that Defendant breached its contract with Plaintiff when it attempted to sell its Federal Communication Commission ("FCC") licenses for broadband service to a third-party, WCO Spectrum LLC ("WCO") [ECF No. 19 p. 1]. Since 2008, Defendant has leased the excess capacity on its licensed radio channels to Plaintiff [ECF No. 19 pp. 1–2]. The lease between the parties gives Plaintiff a right of first refusal, which requires Defendant to notify Plaintiff of its intent to accept a bona fide third-party offer to purchase the licenses [ECF No. 19 p. 2]. WCO offered to purchase Defendant's FCC licenses in November 2021 and February 2022 [ECF No. 19

p. 3]. On both occasions, Defendant notified Plaintiff of its intent to accept the offers. In February 2022, Defendant's notification prompted Plaintiff to ask Defendant to execute a standstill agreement to grant Plaintiff additional rights under the lease [ECF No. 19 pp. 3–4]. When Defendant refused to execute the standstill agreement, Plaintiff filed the instant action [ECF No. 19 p. 4]. After the Complaint [ECF No. 1] was filed, WCO withdrew its offer to purchase the licenses, and Defendant notified Plaintiff of the withdrawal of the right of first refusal [ECF No. 19 p. 4]

Defendant moves for dismissal under Article III, arguing that any controversy between the parties stemming from the lease and the right of first refusal was rendered moot once WCO withdrew its offer to purchase the subject licenses [ECF No. 19 pp. 5–9; ECF No. 22]. Plaintiff does not disagree, acknowledging that dismissal for lack of jurisdiction is appropriate because the controversy between the parties has been resolved by WCO's withdrawal of its offer to purchase the subject licenses [ECF No. 20]. Based on the parties' agreement that the underlying controversy that formed the basis for this case is now moot, the Court grants Defendant's Motion and dismisses this action for lack of subject matter jurisdiction.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion to Dismiss [ECF No. 19] is **GRANTED**.

2. The Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida this 30th day of September 2022.

CASE NO. 22-14106-CIV-CANNON

AILEEN M. CANNON
UNITED STATES DISTRICT JUDGE

cc:    counsel of record

3

# Exhibit 13

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**MAY 2022**

E-Filing Number: 2205014392

**000629**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| T-MOBILE US INC. | WCO SPECTRUM LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 12920 SE 38TH STREET<br>BELLEVUE WA 98006 | C/O CORPORATION TRUST CENTER 1209 ORANGE STREET<br>WILMINGTON DE 19801 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CLEARWIRE SPECTRUM HOLDINGS III LLC | SCH LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 12920 SE 3TH ST BELLEVUE<br>BELLEVUE WA 98006 | C/O ASHOK VASUDEVAN 10139 S BLANEY AVE APT A<br>CUPERTINO CA 95014 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| CLEARWIRE SPECTRUM HOLDINGS II LLC | ACADEMIA SPECTRUM LLC |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 12920 SE 38TH ST. BELLEVUE<br>BELLEVUE WA 98006 | C/O VIRGINIA REGISTERED AGENT  4445 CORPORATION<br>LN STE 264<br>VIRGINIA BEACH VA 23462 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 8 | 8 | ☐ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☒ Writ of Summons  ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less<br>☒ More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☐ Non-Jury<br>☐ Other: | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☒ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

**CASE TYPE AND CODE**

4F - FRAUD

**STATUTORY BASIS FOR CAUSE OF ACTION**

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | FILED<br>PRO PROTHY<br><br>MAY **06** 2022<br><br>**S. RICE** | IS CASE SUBJECT TO<br>COORDINATION ORDER?<br>YES          NO |
|---|---|---|

**TO THE PROTHONOTARY:**

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: T-MOBILE US INC. , CLEARWIRE
SPECTRUM HOLDINGS III LLC , CLEARWI

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| STEVEN J. ENGELMYER | KLEINBARD LLC<br>THREE LOGAN SQUARE<br>1717 ARCH ST 5TH FLOOR<br>PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215)568-2000 | (215)568-0140 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 42840 | sengelmyer@kleinbard.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *STEVEN ENGELMYER* | Friday, May 06, 2022, 04:46 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

**COMPLETE LIST OF PLAINTIFFS:**

    1. T-MOBILE US INC.
        12920 SE 38TH STREET
        BELLEVUE WA 98006
    2. CLEARWIRE SPECTRUM HOLDINGS III LLC
        12920 SE 3TH ST BELLEVUE
        BELLEVUE WA 98006
    3. CLEARWIRE SPECTRUM HOLDINGS II LLC
        12920 SE 38TH ST. BELLEVUE
        BELLEVUE WA 98006
    4. CLEARWIRE SPECTRUM HOLDINGS LLC
        12920 SE 38TH ST. BELLEVUE
        BELLEVUE WA 98006
    5. FIXED WIRELESS HOLDINGS LLC
        12920 SE 38TH ST. BELLEVUE
        BELLEVUE WA 98006
    6. NSAC LLC
        12920 SE 38TH ST. BELLEVUE
        BELLEVUE WA 98006
    7. TDI ACQUISITION SU LLC
        12920 SE 38TH ST. BELLEVUE
        BELLEVUE WA 98006
    8. WBSY LICENSING LLC
        12920 SE 38TH ST. BELLEVUE
        BELLEVUE WA 98006

**COMPLETE LIST OF DEFENDANTS:**

    1. WCO SPECTRUM LLC
        C/O CORPORATION TRUST CENTER 1209 ORANGE STREET
        WILMINGTON DE 19801
    2. SCH LLC
        C/O ASHOK VASUDEVAN 10139 S BLANEY AVE APT A
        CUPERTINO CA 95014
    3. ACADEMIA SPECTRUM LLC
        C/O VIRGINIA REGISTERED AGENT  4445 CORPORATION LN STE 264
        VIRGINIA BEACH VA 23462
    4. GARY WINNICK
        9355 WILSHIRE BLVD SUITE 200
        BEVERLY HILLS CA 90210
    5. CARL KATERNDAHL
        9355 WILSHIRE BLVD SUITE 200
        BEVERLY HILLS CA 90210
    6. ASHOK VASUDEVAN
        10139 S BLANEY AVE APT A
        CUPERTINO CA 95014
    7. ANDREAS BITZARAKIS
        294 WATCH HILL RD
        BERLIN CT 06037
    8. TYLER KRATZ
        25 AVENUE MUNOZ RIVERA APT 419
        SAN JUAN PR 00901

**COMMERCE PROGRAM ADDENDUM**
**TO CIVIL COVER SHEET**

This case is subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

_____ 1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

__X__ 2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:

_____ a. Uniform Commercial Code transactions;

_____ b. Purchases or sales of business or the assets of businesses;

_____ c. Sales of goods or services by or to business enterprises;

_____ d. Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;

_____ e. Surety bonds;

_____ f. Purchases or sales or leases of, or security interests in, commercial, real or personal property; and

_____ g. Franchisor/franchisee relationships.

_____ 3. Actions relating to trade secret or non-compete agreements;

__X__ 4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

_____ 5. Actions relating to intellectual property disputes;

_____ 6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

_____ 7. Derivative actions and class actions based on claims otherwise falling within these ten types, such as shareholder class actions, but not including consumer class actions, personal injury class actions, and products liability class actions;

_____ 8. Actions relating to corporate trust affairs;

_____ 9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

_____ 10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

**KLEINBARD LLC**
Steven J. Engelmyer, Esq.
Identification No. 42840
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
(215) 496-7230 / (215) 568-0140 (fax)
sengelmyer@kleinbard.com
*Attorneys for Plaintiffs*



*Filed and Attested by the Office of Judicial Records 06 MAY 2022 04:46 pm S. RICE*

| | | |
|---|---|---|
| T-MOBILE US, INC., | : | PHILADELPHIA COUNTY |
| 12920 SE 38th Street | : | COURT OF COMMON PLEAS |
| Bellevue, WA 98006 | : | |
| | : | _____, 20___ |
| CLEARWIRE SPECTRUM HOLDINGS | : | |
| III, LLC | : | No. _____ |
| 12920 SE 38th Street | : | |
| Bellevue, WA 98006 | : | |
| | : | |
| CLEARWIRE SPECTRUM HOLDINGS | : | |
| II, LLC | : | |
| 12920 SE 38th Street | : | |
| Bellevue, WA 98006 | : | |
| | : | |
| CLEARWIRE SPECTRUM HOLDINGS, | : | |
| LLC | : | |
| 12920 SE 38th Street | : | |
| Bellevue, WA 98006 | : | |
| | : | |
| FIXED WIRELESS HOLDINGS, LLC | : | |
| 12920 SE 38th Street | : | |
| Bellevue, WA 98006 | : | |
| | : | |
| NSAC, LLC | : | |
| 12920 SE 38th Street | : | |
| Bellevue, WA 98006 | : | |
| | : | |
| TDI ACQUISITION SUB, LLC | : | |
| 12920 SE 38th St., | : | |
| Bellevue, Washington 98006 | : | |
| | : | |
| WBSY LICENSING, LLC | : | |
| 12920 SE 38th Street | : | |
| Bellevue, WA 98006 | : | |
| | : | |
| *Plaintiffs,* | : | |

Case ID: 220500629

|  | : |  |
| v. | : |  |
|  | : |  |
| WCO SPECTRUM, LLC | : |  |
| c/o Corporation Trust Center | : |  |
| 1209 Orange St | : |  |
| Wilmington, DE 19801 | : |  |
|  | : |  |
| SCH LLC | : |  |
| c/o Ashok Vasudevan | : |  |
| 10139 S Blaney Ave Apt A | : |  |
| Cupertino, CA 95014-3155 | : |  |
|  | : |  |
| ACADEMIA SPECTRUM LLC | : |  |
| c/o Virginia Registered Agent Services | : |  |
| 4445 Corporation Ln Ste 264 | : |  |
| Virginia Beach, VA 23462 | : |  |
|  | : |  |
| GARY WINNICK | : |  |
| 9355 Wilshire Blvd., Suite 200 | : |  |
| Beverly Hills, CA 90210 | : |  |
|  | : |  |
| CARL KATERNDAHL | : |  |
| 9355 Wilshire Blvd., Suite 200 | : |  |
| Beverly Hills, CA 90210 | : |  |
|  | : |  |
| TYLER KRATZ, | : |  |
| 25 Avenue Munoz Rivera, Apt. 419, | : |  |
| San Juan, Puerto Rico 00901 | : |  |
|  | : |  |
| ASHOK VASUDEVAN, | : |  |
| 10139 S Blaney Ave Apt A | : |  |
| Cupertino, CA 95014-3155 | : |  |
|  | : |  |
| ANDREAS BITZARAKIS, | : |  |
| 294 Watch Hill Rd | : |  |
| Berlin, CT, 06037 | : |  |

*Defendants.*

## PRAECIPE FOR WRIT OF SUMMONS

To the Office of Judicial Records:

      Kindly issue a Writ of Summons in the above captioned civil action.

Case ID: 220500629

Respectfully submitted,

KLEINBARD LLC
By: /s/ Steven J. Engelmyer
Steven J. Engelmyer, Esq.
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
(215) 496-7230 / (215) 568-0140 (fax)
sengelmyer@kleinbard.com

Dated: May 6, 2022

Summons
Citacion

# Commonwealth of Pennsylvania
## COUNTY OF PHILADELPHIA

| | | |
|---|---|---|
| T-MOBILE US, INC., et al | : | COURT OF COMMON PLEAS |
| *Plaintiff* | : | |
| | : | _____Term, 20_____ |
| vs. | : | |
| | : | No._____ |
| WCO SPECTRUM, LLC, et al | : | |
| *Defendant* | : | |

To[1]

WCO SPECTRUM, LLC, et al

(See Attachment "A")

_____

# Writ of Summons

You are notified that the Plaintiff[2]
*Usted esta avisado que el demandante*

T-MOBILE US, INC., et al

(See Attachment "A")

_____

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



ERIC FEDER
*Director, Office of Judicial Records*

By: _____

Date:_____

220500629
06 MAY 2022 04:46 pm
S. RICE

10-208 (Rev. 6/14)

_____

[1] Name(s) of Defendant(s)
[2] Name(s) of Plaintiff(s)

Case ID: 220500629

# Court of Common Pleas

_____ Term, 20 _____

No. _____

T-MOBILE US, INC., et al
*Plaintiff*

vs.

WCO SPECTRUM, LLC, et al
*Defendant*

# SUMMONS

Case ID: 220500629

**<u>Attachment "A" to Writ of Summons</u>**

*T-Mobile US, Inc. et al v. WCO Spectrum, LLC, et al*

**<u>Names and Addresses of Plaintiffs</u>:**

T-MOBILE US, INC.
12920 SE 38th Street
Bellevue, WA 98006

CLEARWIRE SPECTRUM HOLDINGS III, LLC
12920 SE 38th Street
Bellevue, WA 98006

CLEARWIRE SPECTRUM HOLDINGS II, LLC
12920 SE 38th Street
Bellevue, WA 98006

CLEARWIRE SPECTRUM HOLDINGS, LLC
12920 SE 38th Street
Bellevue, WA 98006

FIXED WIRELESS HOLDINGS, LLC
12920 SE 38th Street
Bellevue, WA 98006

NSAC, LLC
12920 SE 38th Street
Bellevue, WA 98006

TDI ACQUISITION SUB, LLC
12920 SE 38th St.,
Bellevue, Washington 98006

WBSY LICENSING, LLC
12920 SE 38th Street
Bellevue, WA 98006

Page 2 – Attachment "A" to Writ of Summons
T-Mobile US, Inc. et al v. WCO Spectrum, LLC, et al

**Names and Addresses of Defendants:**

WCO SPECTRUM, LLC
c/o Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

SCH LLC
c/o Ashok Vasudevan
10139 S Blaney Ave Apt A
Cupertino, CA 95014-3155

ACADEMIA SPECTRUM LLC
c/o Virginia Registered Agent Services
4445 Corporation Ln Ste 264
Virginia Beach, VA 23462

GARY WINNICK
9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210

CARL KATERNDAHL
9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210

TYLER KRATZ,
25 Avenue Munoz Rivera, Apt. 419,
San Juan, Puerto Rico 00901

ASHOK VASUDEVAN,
10139 S Blaney Ave Apt A
Cupertino, CA 95014-3155

ANDREAS BITZARAKIS,
294 Watch Hill Rd
Berlin, CT, 06037

# Exhibit 14

*Filed and Attested by the Office of Judicial Records 31 MAY 2022 11:15 am T. DIVON*

| | |
|---|---|
| T-MOBILE US, INC., | : IN THE COURT OF COMMON PLEAS |
| CLEARWIRE SPECTRUM HOLDINGS | : OF PHILADELPHIA COUNTY, |
| LLC, | : PENNSYLVANIA |
| CLEARWIRE SPECTRUM HOLDINGS II | : |
| LLC, | : May Term, 2022 |
| CLEARWIRE SPECTRUM HOLDINGS III | : |
| LLC, | : No. 00629 |
| FIXED WIRELESS HOLDINGS LLC, | : |
| NSAC LLC, | : COMMERCE PROGRAM |
| TDI ACQUISITION SUB LLC, | : |
| WBSY LICENSING LLC | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| WCO SPECTRUM LLC, | : |
| SCH LLC, | : |
| ACADEMIA SPECTRUM LLC, | : |
| GARY WINNICK, | : |
| CARL KATERNDAHL, | : |
| ASHOK VASUDEVAN, | : |
| ANDREAS BITZARAKIS, | : |
| TYLER KRANTZ | : |
| | : |
| Defendants. | : |
| | : |

## PROPOSED ORDER

**AND** NOW, this ___ day of _____, 2022, upon consideration of the Motion

to Compel filed by Plaintiffs T-Mobile US, Inc.; Clearwire Spectrum Holdings; Clearwire

Spectrum Holdings II; Clearwire Spectrum Holdings III; Fixed Wireless Holdings LLC; NSAC

LLC; TDI Acquisition Sub LLC; and WBSY Licensing LLC, it is hereby **ORDERED**, and

**DECREED** that said Motion is **GRANTED**.

Defendants WCO Spectrum LLC; SCH LLC; Academia Spectrum LLC; Gary Winnick;

Carl Katerndahl; Ashok Vasudevan; Andreas Bitzarakis; and Tyler Krantz are **ORDERED** to

produce all documents responsive to Plaintiffs' First Set of Requests for Production of Documents within twenty (20) days of this Order.  Redactions for relevance are not permitted.

BY THE COURT:

_____

Hon. Leon Tucker, J.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

KLEINBARD LLC
By: Steven J. Engelmyer, PA. ID No. 42840
sengelmyer@kleinbard.com
Eric. J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| T-MOBILE US, INC.,<br>CLEARWIRE SPECTRUM HOLDINGS LLC,<br>CLEARWIRE SPECTRUM HOLDINGS II LLC,<br>CLEARWIRE SPECTRUM HOLDINGS III LLC,<br>FIXED WIRELESS HOLDINGS LLC,<br>NSAC LLC,<br>TDI ACQUISITION SUB LLC,<br>WBSY LICENSING LLC<br><br>　　　　Plaintiff<br><br>v.<br><br>WCO SPECTRUM LLC,<br>SCH LLC,<br>ACADEMIA SPECTRUM LLC,<br>GARY WINNICK,<br>CARL KATERNDAHL,<br>ASHOK VASUDEVAN,<br>ANDREAS BITZARAKIS,<br>TYLER KRANTZ,<br><br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | IN THE COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY,<br>PENNSYLVANIA<br><br>May Term, 2022<br><br>No. 00629<br><br>COMMERCE PROGRAM |

**PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE
DOCUMENTS IN RESPONSE TO PLAINTIFFS' FIRST SET OF
<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

This lawsuit concerns allegations of fraud leveled against Defendants by a self-described whistleblower who is a former insider at Defendant WCO Spectrum LLC ("WCO"). According to the whistleblower, WCO and the other Defendants are engaged in a nationwide scheme to defraud Plaintiff T-Mobile US, Inc. and its subsidiaries (collectively, "T-Mobile"), which works as follows: T-Mobile leases the right to use certain wireless spectrum from educational institutions that hold Federal Communications Commission ("FCC") licenses for that spectrum. T-Mobile's leases typically include a Right of First Refusal ("ROFR"), which provides that, if a third party makes a bona fide offer to purchase a spectrum license and the licensee intends to accept such an offer, then T-Mobile has 30 days to match the third party's terms and acquire the license. According to the whistleblower, WCO makes non-binding offers to purchase these institutions' licenses that it has no intention of honoring. Instead, the offers are intended to induce T-Mobile to exercise its ROFR. Simultaneously, WCO enters into secret side agreements with these institutions pursuant to which WCO pockets a kickback, in the form of a ten percent cut of the purchase price, in the event T-Mobile exercises its ROFR. Through this scheme, WCO—with the help of the other Defendants, with whom it conspires to commit this fraud—already has siphoned tens of millions of dollars from T-Mobile to itself, and its illegal conduct continues unabated.

The whistleblower not only provided information to T-Mobile verbally, he also sent a written description of the fraud and provided five internal WCO documents to Plaintiffs' counsel to support his allegations, which Plaintiffs were granted permission to review in March 2022. Notably, three of these documents show that WCO conspires with an entity called SCH LLC (a defendant here), which purportedly gave WCO access to *$2 billion* in order to fund WCO's efforts to acquire licenses. This appears to be a sham. SCH is a California company with no apparent

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

history, no public presence, and no lines of business.  It is run by former movie producer Ash Vasudevan (also a defendant here) out of a modest multi-unit apartment building in Cupertino.

Even though the whistleblower's information and documents all support the allegations that WCO and its co-conspirators are engaged in a nationwide fraud against T-Mobile, Plaintiffs seek additional information and corroboration about the scheme in order to file their complaint. Plaintiffs thus filed their writ of summons and invoked Pennsylvania's pre-complaint discovery procedures by serving targeted requests pursuant to Pennsylvania Rule of Civil Procedure 4003.8. This case based on serious whistleblower allegations is tailor-made for Pennsylvania's pre-complaint discovery procedures.  Because WCO and its co-conspirators have refused to produce a single document in response to Plaintiffs' requests and have no valid objections, Plaintiffs move this Court to compel Defendants to produce all responsive documents.

In support of this motion to compel, Plaintiffs state as follows:

1.      T-Mobile currently leases wireless spectrum from educational institutions across the country and uses that leased spectrum as part of its nationwide cellular and data network.  This spectrum falls within the 2.5 GHz band, which the FCC has historically licensed to educational institutions under its "Educational Broadband Service" ("EBS") licensing program.  *See In re Transforming the 2.5 GHz Band*, Report & Order, FCC 19–62 ¶ 16.  The original intent of the program was to reserve certain wireless spectrum for educational programming.  *See id.* ¶ 5.  To that end, the FCC issued EBS licenses to educational institutions across the country.  *See id.*

2.      Prior to April 2020, FCC regulations allowed only educational entities to hold EBS spectrum licenses.  *See id.* ¶ 3.  The FCC, however, permitted EBS licensees—most of which lack the technical knowledge, expertise, and infrastructure to operate a telecommunications network— to lease all but five percent of the spectrum authorized by their licenses to commercial entities like

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

T-Mobile.  *See id.* ¶¶ 6–7.  As of 2019, nearly all of the 1,300 EBS licensees had leased their excess capacity.  *See id.*  These leases took spectrum that otherwise would have gone unused and put it to work supporting modern, high-speed broadband and telecommunications services.  *See id.* ¶ 4.

3.      Effective April 27, 2020, the FCC eliminated the requirement that EBS licenses could only be owned by educational institutions, making it possible for licensees to sell their licenses to commercial entities.  According to the FCC, "technological changes of the last 30 years enable any educator with a broadband connection to access a myriad of educational resources" and "most licensees rel[ied] on lessees to deploy and operate broadband networks and use the leases as a source for revenues or devices."  *Id.* ¶ 16.

4.      Notwithstanding that change, thousands of EBS licenses remain subject to lease agreements with commercial entities, under which the licensees make money by leasing the spectrum.  T-Mobile continues to lease spectrum from institutions that still own licenses.

5.      T-Mobile's lease agreements with these institutions contain various provisions that protect its contractual rights in the event a third party makes an offer to acquire the EBS license.

6.      The lease agreements typically include a ROFR provision, which states that, if a third party makes a bona fide offer to purchase an EBS license subject to a lease and the licensee intends to accept such an offer, then T-Mobile has 30 days to match the third party's terms and acquire the license.  To trigger this type of provision, an EBS licensee must, *inter alia*, intend to accept an offer from a third party, send T-Mobile a ROFR notice (which starts the clock on the 30-day ROFR period), and establish that the offer is "bona fide."

7.      Not long after the FCC rule change permitting commercial entities to own spectrum licenses, WCO began to use an entity called Parkview Consulting ("Parkview") to issue public records requests—under Parkview's name in an effort to hide WCO's involvement—to

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

educational institutions across the country seeking copies of T-Mobile's EBS lease agreements. WCO obtained a number of T-Mobile's confidential lease agreements this way. T-Mobile eventually learned that Parkview is a front for WCO. To this day, WCO continues to submit public records requests for T-Mobile's EBS leases in this fashion. As a result, WCO knows the terms of many T-Mobile leases, including the ROFRs.

8.      By the second half of 2020, WCO—a company run by founder Gary Winnick and senior executive Carl Katerndahl, with the assistance of key consultant Tyler Krantz[1] (all of whom are defendants here)—was actively targeting institutions that leased spectrum to T-Mobile, which were subject to ROFRs. In the spring of 2021, a dispute arose between T-Mobile subsidiary TDI Acquisition Sub LLC ("TDI") and an EBS licensee, Albright College ("Albright"). For years, TDI had leased excess spectrum from Albright, which owns a license to use certain EBS spectrum in the Reading, Pennsylvania area. The relationship between TDI and Albright had been amicable and uneventful. On April 30, 2021, WCO sent a non-binding term sheet in which it proposed to purchase Albright's license. Soon after, Albright sent TDI a purported ROFR notice. Pursuant to its contractual rights, TDI sought certain information from Albright and WCO about the supposed offer. Neither Albright nor WCO provided the required information. Because Albright failed to establish that the offer was "bona fide," TDI sued Albright in the Court of Common Pleas of Berks County, Pennsylvania to enforce its contractual rights. That case was captioned *TDI Acquisition Sub LLC v. Albright College*, No. 21-04881 (Nevius, J.). TDI did not sue WCO or any of the other Defendants as part of that action.

---

[1]  In his responses and objections to Plaintiffs' discovery requests, counsel for Mr. Krantz spells his client's name as it appears here: "Krantz." In other documents in T-Mobile's possession, Mr. Krantz is variously referred to as "Krantz" or "Kratz."

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

9.     During the *Albright* litigation, on October 25, 2021, a self-described whistleblower—who said he is a former insider at WCO, but whose identity remains unknown to Plaintiffs—called TDI's Pennsylvania counsel, Steven J. Engelmyer, who also is one of Plaintiffs' counsel of record in this action.  In a series of phone calls, the whistleblower described how WCO, in conjunction with numerous co-conspirators and EBS licensees, is perpetrating a fraudulent scheme against T-Mobile by which it uses sham offers to purchase EBS licenses to siphon money from T-Mobile to itself.  According to the whistleblower, the scheme works as follows:  WCO makes a sham, non-binding offer to purchase a license.  WCO does not intend to honor its offer; instead its sole purpose is to trigger the ROFR in T-Mobile's lease agreement.  This coercively forces T-Mobile to decide within 30 days whether to purchase the license.  Before making the sham offer, WCO and the licensee execute a secret side contract, titled a "Commitment Costs Agreement" ("CCA"), which provides that, if TDI matches WCO's offer and purchases the license, the licensee pays WCO ten percent (10%) of the purchase price.  WCO and the licensee try to hide this kickback arrangement from T-Mobile by using a non-disclosure agreement ("NDA").

10.     In addition to describing WCO's scheme, the whistleblower sent TDI's Pennsylvania counsel several documents memorializing it.  These documents described in detail WCO's arrangement with licensees like Albright and provided evidence that WCO never actually intended to purchase Albright's license.  When TDI's counsel received the documents from the whistleblower, he did not immediately review them.  Rather, out of an abundance of caution, and given that the *Albright* litigation already was pending, TDI sought the Berks County court's permission to inspect and use them.  On March 21, 2022, that court granted TDI permission to do so.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

11.    Upon inspection, TDI learned that the documents strongly support the whistleblower's allegations.  In particular, three of the documents show that an entity called SCH LLC purportedly gave WCO access to *$2 billion* in financing.  But SCH is a California company with no apparent history, no public presence, and no lines of business, which is run by a former movie producer (Defendant Vasudevan) out of a modest apartment in this multi-unit building in Cupertino:



It is implausible that SCH legitimately could have extended a *$2 billion* line of credit to anyone. The whistleblower also provided a four-page narrative that described WCO's scheme in detail, consistent with his verbal descriptions and the documents he provided.

12.    Since the whistleblower and his allegations about WCO defrauding T-Mobile surfaced publicly, WCO and Defendant Academia Spectrum LLC ("Academia")—a spectrum broker run by Defendant Andreas Bitzarakis that WCO uses as a conduit with licensees to implement the fraud—brazenly have obstructed discovery that might illuminate the whistleblower's allegations.  As part of the Berks County case, TDI served document subpoenas on WCO in Delaware and Academia in Virginia.  Since then, WCO and Academia (each

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

represented by WCO's counsel here) have engaged in a protracted pattern of obstruction and delay. WCO started by frivolously challenging whether the Delaware court had jurisdiction to enforce a subpoena served on a Delaware LLC, and Academia did the same in Virginia. The Delaware and Virginia courts rejected those baseless arguments. WCO delayed further by unsuccessfully seeking reconsideration of that ruling in Delaware.

13.    After losing every argument in Delaware and Virginia, WCO filed a motion for a protective order in Berks County seeking to stop all discovery. In this filing, WCO represented that it was no longer pursuing the Albright transaction, and asserted that the case therefore was moot. At a hearing on March 21, 2022, the Berks County court ruled that TDI could pursue its subpoenas in Delaware and Virginia in order to investigate the whistleblower's allegations *concerning the Albright transaction* (though the whistleblower's allegations are far broader than that). *See* Ex. 1 (March 21, 2022 Berks Cnty. Tr. 43:13–17) ("My ruling as of right now is those subpoenas which were validly issued [from] this court and then domesticated in those jurisdictions you have a date in court with either the court or master they will resolve how those should be enforced and I think that's appropriate."); *see also* Ex. 2 (April 29, 2022 Va. Beach Cir. Ct. Order) (ordering production of communications "regarding Albright").

14.    TDI did everything in its power to seek discovery concerning the Albright transaction, as permitted by the Berks County court. Academia was directed by the Virginia court to produce all documents regarding the Albright transaction. But after stalling for weeks, Academia made an improper production that was heavily redacted, rendering it largely of no use. For example, Academia redacted a "deal memo" specifically addressing Albright on the baseless ground of "transaction strategy." *See* Ex. 3 (Academia 230–33). As a result, TDI filed a motion to compel Academia to remove its improper redactions, which the Virginia court granted on

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

July 25, 2022, ordering Academia to produce a completely unredacted "deal memo" by August 15. WCO, for its part, produced only documents regarding Albright, and it did so on the eve of a hearing on TDI's motion to compel in Delaware. That production, however, was plagued by the same issues as Academia's. And, like Academia's production, it is limited to the Albright transaction. Indeed, to the extent that any document concerned general strategy or any other transaction WCO was supposedly pursuing, both WCO and Academia redacted that information. TDI has thus not obtained discovery from any Defendant concerning WCO's broader fraudulent scheme.

15. The *Albright* case is now concluded. On August 11, 2022, Albright filed preliminary objections to T-Mobile's amended complaint, asserting that, *inter alia*, the contract claims—which, to reiterate, did not concern the whistleblower's allegations of fraud in any respect—were moot. In doing so, Albright represented to the Berks County court that "no case or controversy exist[ed]" any longer because T-Mobile "already has accomplished its stated goal for the lawsuit," which was to "prevent Albright from selling its License to WCO" in contravention of its lease with TDI. Ex. 4 (excerpt of Albright's Preliminary Objs. to Pls.' Am. Compl.). Albright's assertions echoed WCO's, which stated that the *Albright* case "has been over since the day" WCO represented to the court that it was withdrawing its offer to Albright and was "no longer a suitor." *See* Ex. 5 (July 11, 2022 Berks Cnty. Tr. 8:9–11); *see also id.* 9:3–5 ("there isn't anything at issue" in *Albright*). WCO even intervened as a plaintiff in the *Albright* action to seek dismissal based on the same mootness argument.

16. On August 26, 2022, T-Mobile discontinued the *Albright* case without prejudice. The only reason T-Mobile filed the lawsuit against Albright in Berks County—an action it took prior to being contacted by the whistleblower and without any knowledge of Defendants' fraud—

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

was because that is where Albright College is located.  As the Berks County court itself recognized after the whistleblower's allegations came to light, this dispute between T-Mobile and Defendants "is obviously much bigger than Berks County, Pennsylvania."  Ex. 5 at 12:24–25.  WCO's counsel similarly told the Berks County court in seeking dismissal of that case that, "if [T-Mobile] want[s] to bring another lawsuit somewhere, we can deal with it in the appropriate course."  *Id*. at 8:11– 12.

17.    In light of the whistleblower's allegations and supporting documentation, T-Mobile filed this lawsuit via a writ of summons on May 6, 2022, related to the alleged nationwide fraud in its entirety and not limited to the Albright transaction.  T-Mobile filed the writ in this Court because WCO has targeted EBS spectrum covering the Philadelphia area as part of its scheme and has profited from T-Mobile's exercise of a ROFR to match WCO's sham offer to acquire that Philadelphia spectrum.  Given the nature and extent of the fraud allegations, this lawsuit is brought directly against WCO and its co-conspirators, and extends far beyond the limited claims and issues that were before the Berks County court in the *Albright* litigation.

18.    Plaintiffs Clearwire Spectrum Holdings LLC, Clearwire Spectrum Holdings II LLC, Clearwire Spectrum Holdings III LLC, Fixed Wireless Holdings LLC, NSAC LLC, TDI, and WBSY Licensing LLC are all subsidiaries of Plaintiff T-Mobile US, Inc. that have been coerced into exercising a ROFR under an EBS lease agreement because of a sham offer submitted by WCO.  Plaintiffs filed this lawsuit via writ of summons against the following Defendants, each of whom played a critical role in perpetuating this fraud against T-Mobile:  (i) WCO and its founder Winnick and senior executive Katerndahl; (ii) WCO's consultant Tyler Krantz; (iii)  WCO's broker Academia and Academia's principal Bitzarakis; and (iv) WCO's supposed financier, SCH, and SCH's principal Vasudevan.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

19.    WCO is at the center of the fraud, and through Defendants Winnick, Katerndahl, and Krantz, is the entity that developed the fraudulent scheme to make sham offers to EBS licensees in order to trigger T-Mobile's ROFR rights.  WCO has collected tens of millions of dollars in illegal kickbacks when T-Mobile exercised its ROFRs and acquired the licenses to which those sham offers pertained.  Winnick is WCO's leader and spearheaded this scheme, with the help of Katerndahl.  Katerndahl signed numerous agreements to affect the fraudulent scheme, including, for example, the CCA between WCO and the Pennsylvania Hospital Television Network concerning the spectrum in the "Philadelphia, PA" "[m]arket."

20.    WCO's key consultant Krantz is believed to have developed (or helped develop) the fraudulent scheme, and implemented it on a nationwide basis.  Krantz sits alongside Winnick and Katerndahl on WCO's "Investment Committee," which identifies as targets EBS licenses that are leased to T-Mobile.  Among other things, Krantz participates in preparing "deal memos" (like the one referenced above) that are used to effectuate the fraud against T-Mobile.

21.    WCO's broker Academia and its principal Bitzarakis are believed to help identify EBS licenses to target that are subject to T-Mobile leases, and Academia and Bitzarakis serve as a conduit between WCO and various EBS licensees located across the country.  Among other things, Bitzarakis participates in strategy sessions, contacts EBS licensees about WCO potentially making offers to them, and delivers the sham offers to those entities.  It is believed that Bitzarakis further facilitates the scheme by negotiating WCO's kickbacks and documenting them under the guise of CCAs, as well as the NDAs that try to hide those payments.

22.    Finally, WCO's supposed financier SCH and its principal Vasudevan create the appearance of providing WCO with $2 billion in financing, which is a sham designed for WCO to use in the event its financial wherewithal to make its substantial offers to EBS licensees is ever

11

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

questioned.  The whistleblower specifically identified SCH in his allegations of fraud and provided the documents pursuant to which the financing supposedly was provided.

23.     Concurrently with the writ of summons, Plaintiffs served pre-complaint document requests on each Defendant.  *See* Ex. 6 (Pls.' First Reqs. for Produc.).  Pursuant to Rule 4003.8, each of Plaintiffs' seventeen (17) requests seeks documents "material and necessary" to filing a complaint regarding Defendants' alleged fraudulent EBS license kickback scheme:

24.     Requests 1 and 2 ask for, respectively, "Organizational charts or other documents sufficient to identify all entities affiliated with WCO" and "Organizational charts, corporate directories, or other documents sufficient to identify all current and former" agents, officers, etc. of WCO.  Documents responsive to these requests are material and necessary to Plaintiffs' complaint because they will enable Plaintiffs to identify all proper Defendants.  For example, Plaintiffs have reason to believe that additional WCO affiliates and associated individuals act in furtherance of the fraudulent scheme against T-Mobile, and documents responsive to this request would assist in identifying those entities and individuals.

25.     Requests 3 and 10 seek documents concerning WCO's strategies for targeting EBS licenses, including whether WCO specifically targets EBS licenses that are subject to T-Mobile leases with ROFRs.  Documents responsive to this request will assist Plaintiffs in confirming the scope, time frame, and substance of their claims.  Based on the "deal memo" that Academia produced in the *Albright* litigation, T-Mobile knows that WCO specifically analyzes the ROFR provisions in T-Mobile's leases and its scheme's "impact" on T-Mobile and T-Mobile's possible responsive strategies.  *See* Ex. 3.

26.     Request 4 seeks documents concerning the whistleblower.  WCO became aware that a whistleblower had surfaced and provided information to TDI's Pennsylvania counsel in the

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

*Albright* litigation as early as December 2021. Needless to say, any documents and communications in the possession, custody, or control of WCO and its related co-Defendants about the whistleblower, including concerning the identity of the whistleblower, reactions to the whistleblower's disclosures, and actions taken in response to the whistleblower, bear directly on Plaintiffs' framing of the allegations in their complaint.

27. Requests 5 through 9 seek documents and communications concerning lease agreements between T-Mobile (or any of its subsidiaries) and any EBS licensee, particularly documents concerning T-Mobile's ROFR rights; WCO's arrangements with any licensee for a kickback (or what it tries to conceal as "Commitment Costs"); how WCO determines the amount of the kickback; WCO's negotiations with licensees in reaching particular kickback amounts, including the amount by which WCO inflates its sham offers to accommodate such kickbacks; and WCO's actual receipt of these kickbacks. Each of these bears directly on the scope of Defendants' fraudulent scheme and Plaintiffs' framing of their complaint.

28. Requests 11, 12, 15, 16, and 17, respectively, seek documents and communications concerning WCO's financing of its purported "offers" to purchase EBS licenses; WCO's communications with SCH principal and former movie producer Vasudevan about such financing; WCO's communications with SCH more generally about purported financing; "[d]ocuments sufficient to show SCH LLC's lines of business, investments, sources of income, and sources and amounts of funding and financing" for WCO's EBS license purchases; and WCO and SCH's financing arrangements in general. These documents bear directly on the whistleblower's allegations that WCO's financing for its supposed purchase of EBS licenses is illusory, and will shed light on whether WCO's relationship with its purported multibillion dollar financier is a sham.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

29.     Relatedly, Requests 13 and 14 ask for "[o]rganizational charts sufficient to identify all entities affiliated with SCH" and organizational charts or other documents sufficient to identify SCH officers, partners, and other agents.  Like Requests 1 and 2, documents responsive to these requests are material and necessary to Plaintiffs' claims because they will enable Plaintiffs to identify the proper defendants as it relates to SCH, including whether there are additional conspirators associated with SCH that should be named Defendants, and shed light on whether WCO's relationship with its supposed multibillion dollar financier is a sham.

30.     On June 10, 2022, Defendants WCO, Winnick, Katerndahl, Krantz, Academia, and Bitzarakis—all represented by WCO's counsel—served objections to Plaintiffs' requests for production.  Consistent with WCO's pattern of obstruction, none of the Defendants agreed to produce a single document.  *See*, *e.g.*, Exs. 7, 8, 9, 10, 11, 12 (Defs.' Resps. & Objs. to Pls.' First Set of Reqs. for Produc.).

31.     On June 15, 2022, Defendants SCH and Vasudevan—represented by a former law partner of WCO's lead counsel—likewise served objections to Plaintiffs' requests for production, which largely mirrored the other Defendants' objections.  Like the other Defendants, neither agreed to produce any documents.  *See* Ex. 13 (Defs. SCH LLC and Ashok Vasudevan Resps. & Objs. to Pls.' First Set of Reqs. for Produc.).[2]

32.     Each Defendant served nearly identical, baseless objections to Plaintiffs' requests for production.  Most notably, Defendants repeatedly objected to discovery because a particular request "is not related to the *Albright* matter in any way," notwithstanding that *Albright* was an

---

[2]  At the parties' July 26 meet and confer, counsel for SCH and Vasudevan claimed he knew nothing about Plaintiffs' allegations (even though he is a former law partner of WCO's counsel and came to this case through that relationship).  On August 3, counsel for Plaintiffs provided counsel for SCH and Vasudevan with public court filings summarizing these allegations.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

entirely different lawsuit (i) that did not feature any claim based on the whistleblower's allegations; (ii) in which no Defendant in this case was a defendant; (iii) that WCO vigorously argued should be dismissed on mootness grounds; and (iv) that has since been voluntarily discontinued. The *Albright* case has no bearing on the scope of discovery in this action. To be clear, the discovery TDI obtained in the *Albright* case was limited to the proposed Albright transaction, and whether additional claims should be brought against Albright College, which is not a defendant here. In fact, WCO told the Berks County court that any discovery requests and resulting disputes relating to the whistleblower's allegations "would be up to a judge in Philadelphia." Ex. 5 at 42:20–21.

33.    On July 12, 2022, Plaintiffs offered to meet and confer with Defendants about the requests and their responses. *See* Ex. 14. In the meantime, Plaintiffs provided the whistleblower documents to WCO. At a meet and confer held on July 26, Defendants reaffirmed their refusal to produce any documents in response to Plaintiffs' requests. Rather than engaging in a good-faith discussion with Plaintiffs' counsel, Defendants' counsel criticized the whistleblower's allegations while at the same time feigning that they did not understand what this action was about. In fact, Defendants' counsel is well-acquainted with the whistleblower's allegations, which have been the subject of hours of discussion with counsel for T-Mobile. In response, Plaintiffs reiterated in detail what this suit pertains to—the whistleblower's allegations of a nationwide fraud being committed by WCO and its cronies against T-Mobile and its subsidiaries. *See* Ex. 15. Following this discussion, Defendants have continued to refuse to produce any responsive documents, forcing Plaintiffs to file this motion to compel.

34.    As explained above and further in the accompanying memorandum of law, all of the documents responsive to the requests are "material and necessary to the filing of the complaint

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense." Pa. R. Civ. P. 4003.8(a).

35.     For these reasons, and for the reasons set forth in the accompanying memorandum of law, Plaintiffs seek an order pursuant to Pennsylvania Rule 4019(a)(1)(viii) and (c)(5) directing Defendants to produce all documents responsive to their requests for production.

**WHEREFORE**, Plaintiffs respectfully request the Court grant this motion to compel and issue the proposed order included with this motion.

Respectfully Submitted,

By: /s/ Steven J. Engelmyer

KLEINBARD, LLC
Steven J. Engelmyer, PA ID No. 42840
Eric J. Schreiner, PA ID No. 76721
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-2000
sengelmyer@kleinbard.com
eschreiner@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
R. Kennon Poteat, III*
Denis R. Hurley*
680 Maine Avenue, SW
Washington, DC 20004
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

Dated:  September 2, 2022

KLEINBARD LLC
By: Steven J. Engelmyer, PA. ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| T-MOBILE US, INC., | : | IN THE COURT OF COMMON PLEAS |
| CLEARWIRE SPECTRUM HOLDINGS LLC, | : | OF BERKS COUNTY, PENNSYLVANIA |
| CLEARWIRE SPECTRUM HOLDINGS II LLC, | : | CIVIL ACTION/DECLARATORY |
| CLEARWIRE SPECTRUM HOLDINGS III LLC, | : | JUDGMENT |
| FIXED WIRELESS HOLDINGS LLC, | : | NO. 21-04881 |
| NSAC LLC, | : | |
| TDI ACQUISITION SUB LLC, | : | |
| WBSY LICENSING LLC | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| WCO SPECTRUM LLC, | : | |
| SCH LLC, | : | |
| ACADEMIA SPECTRUM LLC, | : | |
| GARY WINNICK, | : | |
| CARL KATERNDAHL, | : | |
| ASHOK VASUDEVAN, | : | |
| ANDREAS BITZARAKIS, | : | |
| TYLER KRANTZ, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS IN RESPONSE TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>MATTER BEFORE THE COURT</u>

This lawsuit concerns allegations of fraud leveled against Defendants by a self-described whistleblower who is a former insider at WCO Spectrum LLC ("WCO").  According to the whistleblower, WCO and the other Defendants are engaged in a nationwide scheme to defraud Plaintiff T-Mobile US, Inc. and its subsidiaries (collectively, "T-Mobile"), which works as follows:  T-Mobile leases the right to use certain wireless spectrum from educational institutions that hold Federal Communications Commission ("FCC") licenses for that spectrum.  T-Mobile's leases typically include a Right of First Refusal ("ROFR"), which provides that, if a third party makes a bona fide offer to purchase a spectrum license and the licensee intends to accept such an offer, then T-Mobile has 30 days to match the third party's terms and acquire the license.  According to the whistleblower, WCO makes non-binding offers to purchase these institutions' licenses that it has no intention of honoring.  Instead, the offers are intended to induce T-Mobile to exercise its ROFR.  Simultaneously, WCO enters into secret side agreements with these institutions pursuant to which WCO pockets a kickback, in the form of a ten percent cut of the purchase price, in the event T-Mobile exercises its ROFR.  Through this scheme, WCO—with the help of the other Defendants, with whom it conspires to commit this fraud—already has siphoned tens of millions of dollars from T-Mobile to itself, and its illegal conduct continues unabated.

The whistleblower not only provided information to T-Mobile verbally, he also sent a written description of the fraud and provided five internal WCO documents to Plaintiffs' counsel to support his allegations, which Plaintiffs were granted permission to review in March 2022.  Notably, three of these documents show that WCO conspires with an entity called SCH LLC (a defendant here), which purportedly gave WCO access to *$2 billion* in order to fund WCO's efforts to acquire licenses.  This appears to be a sham.  SCH is a California company with no apparent

2

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

history, no public presence, and no lines of business. It is run by former movie producer Ash Vasudevan (also a defendant here) out of a modest multi-unit apartment building in Cupertino.

Even though the whistleblower's information and documents all support the allegations that WCO and its co-conspirators are engaged in a nationwide fraud against T-Mobile, Plaintiffs seek additional information and corroboration about the scheme in order to file their complaint. Plaintiffs thus filed their writ of summons and invoked Pennsylvania's pre-complaint discovery procedures by serving targeted requests pursuant to Pennsylvania Rule of Civil Procedure 4003.8. This case based on serious whistleblower allegations is tailor-made for Pennsylvania's pre-complaint discovery procedures. Because WCO and its co-conspirators have refused to produce a single document in response to Plaintiffs' requests and have no valid objections, Plaintiffs move this Court to compel Defendants to produce all responsive documents.

## **QUESTION PRESENTED**

1.    Should the Court **compel** Defendants to produce all documents in response to Plaintiffs' First Requests for Production of Documents?

Suggested Answer: **Yes**.

## **FACTUAL BACKGROUND**

**A.    Background**

T-Mobile currently leases wireless spectrum from educational institutions across the country and uses that leased spectrum as part of its nationwide cellular and data network. This spectrum falls within the 2.5 GHz band, which the FCC has historically licensed to educational institutions under its "Educational Broadband Service" ("EBS") licensing program. *See In re Transforming the 2.5 GHz Band*, Report & Order, FCC 19–62 ¶ 16. The original intent of the

3

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

program was to reserve certain wireless spectrum for educational programming. *See id.* ¶ 5. To that end, the FCC issued EBS licenses to educational institutions across the country. *See id.*

Prior to April 2020, FCC regulations allowed only educational entities to hold EBS spectrum licenses. *See id.* ¶ 3. The FCC, however, permitted EBS licensees—most of which lack the technical knowledge, expertise, and infrastructure to operate a telecommunications network— to lease all but five percent of the spectrum authorized by their licenses to commercial entities like T-Mobile. *See id.* ¶¶ 6–7. As of 2019, nearly all of the 1,300 EBS licensees had leased their excess capacity. *See id.* These leases took spectrum that otherwise would have gone unused and put it to work supporting modern, high-speed broadband and telecommunications services. *See id.* ¶ 4.

Effective April 27, 2020, the FCC eliminated the requirement that EBS licenses could only be owned by educational institutions, making it possible for licensees to sell their licenses to commercial entities. According to the FCC, "technological changes of the last 30 years enable any educator with a broadband connection to access a myriad of educational resources" and "most licensees rel[ied] on lessees to deploy and operate broadband networks and use the leases as a source for revenues or devices." *Id.* ¶ 16.

Notwithstanding that change, thousands of EBS licenses remain subject to lease agreements with commercial entities, under which the licensees make money by leasing the spectrum. T-Mobile continues to lease spectrum from institutions that still own licenses. T-Mobile's lease agreements with these institutions contain various provisions that protect its contractual rights in the event a third party makes an offer to acquire the EBS license. The lease agreements typically include a ROFR provision, which states that, if a third party makes a bona fide offer to purchase an EBS license subject to a lease and the licensee intends to accept such an offer, then T-Mobile has 30 days to match the third party's terms and acquire the license. To

4

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

trigger this type of provision, an EBS licensee must, *inter alia*, intend to accept an offer from a third party, send T-Mobile a ROFR notice (which starts the clock on the 30-day ROFR period), and establish that the offer is "bona fide."

Not long after the FCC rule change permitting commercial entities to own spectrum licenses, WCO began to use an entity called Parkview Consulting ("Parkview") to issue public records requests—under Parkview's name in an effort to hide WCO's involvement—to educational institutions across the country seeking copies of T-Mobile's EBS lease agreements. WCO obtained a number of T-Mobile's confidential lease agreements this way. T-Mobile eventually learned that Parkview is a front for WCO. To this day, WCO continues to submit public records requests for T-Mobile's EBS leases in this fashion. As a result, WCO knows the terms of many T-Mobile leases, including the ROFRs.

By the second half of 2020, WCO—a company run by founder Gary Winnick and senior executive Carl Katerndahl, with the assistance of key consultant Tyler Krantz[3] (all of whom are defendants here)—was actively targeting institutions that leased spectrum to T-Mobile, which were subject to ROFRs. In the spring of 2021, a dispute arose between T-Mobile subsidiary TDI Acquisition Sub LLC ("TDI") and an EBS licensee, Albright College ("Albright"). For years, TDI had leased excess spectrum from Albright, which owns a license to use certain EBS spectrum in the Reading, Pennsylvania area. The relationship between TDI and Albright had been amicable and uneventful. On April 30, 2021, WCO sent a non-binding term sheet in which it proposed to purchase Albright's license. Soon after, Albright sent TDI a purported ROFR notice. Pursuant to its contractual rights, TDI sought certain information from Albright and WCO about the supposed

---

[3] In his responses and objections to Plaintiffs' discovery requests, counsel for Mr. Krantz spells his client's name as it appears here: "Krantz." In other documents in T-Mobile's possession, Mr. Krantz is variously referred to as "Krantz" or "Kratz."

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

offer.  Neither Albright nor WCO provided the required information.  Because Albright failed to

establish that the offer was "bona fide," TDI sued Albright in the Court of Common Pleas of Berks

County, Pennsylvania to enforce its contractual rights.  That case was captioned *TDI Acquisition*

*Sub LLC v. Albright College*, No. 21-04881 (Nevius, J.).  TDI did not sue WCO or any of the other

Defendants as part of that action.

## B.    A Whistleblower Emerges

During the *Albright* litigation, on October 25, 2021, a self-described whistleblower—who

said he is a former insider at WCO, but whose identity remains unknown to Plaintiffs—called

TDI's Pennsylvania counsel, Steven J. Engelmyer, who also is one of Plaintiffs' counsel of record

in this action.  In a series of phone calls, the whistleblower described how WCO, in conjunction

with numerous co-conspirators and EBS licensees, is perpetrating a fraudulent scheme against T-

Mobile by which it uses sham offers to purchase EBS licenses to siphon money from T-Mobile to

itself.  According to the whistleblower, the scheme works as follows:  WCO makes a sham, non-

binding offer to purchase a license.  WCO does not intend to honor its offer; instead its sole purpose

is to trigger the ROFR in T-Mobile's lease agreement.  This coercively forces T-Mobile to decide

within 30 days whether to purchase the license.  Before making the sham offer, WCO and the

licensee execute a secret side contract, titled a "Commitment Costs Agreement" ("CCA"), which

provides that, if TDI matches WCO's offer and purchases the license, the licensee pays WCO ten

percent (10%) of the purchase price.  WCO and the licensee try to hide this kickback arrangement

from T-Mobile by using a non-disclosure agreement ("NDA").

In addition to describing WCO's scheme, the whistleblower sent TDI's Pennsylvania

counsel several documents memorializing it.  These documents described in detail WCO's

arrangement with licensees like Albright and provided evidence that WCO never actually intended

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to purchase Albright's license.   When TDI's counsel received the documents from the whistleblower, he did not immediately review them.   Rather, out of an abundance of caution, and given that the *Albright* litigation already was pending, TDI sought the Berks County court's permission to inspect and use them.   On March 21, 2022, that court granted TDI permission to do so.

Upon inspection, TDI learned that the documents strongly support the whistleblower's allegations.   In particular, three of the documents show that an entity called SCH LLC purportedly gave WCO access to ***$2 billion*** in financing.   But SCH is a California company with no apparent history, no public presence, and no lines of business, which is run by a former movie producer (Defendant Vasudevan) out of a modest apartment in this multi-unit building in Cupertino:



It is implausible that SCH legitimately could have extended a ***$2 billion*** line of credit to anyone. The whistleblower also provided a four-page narrative that described WCO's scheme in detail, consistent with his verbal descriptions and the documents he provided.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## C.    Subpoenas to WCO and Academia

Since the whistleblower and his allegations about WCO defrauding T-Mobile surfaced publicly, WCO and Defendant Academia Spectrum LLC ("Academia")—a spectrum broker run by Defendant Andreas Bitzarakis that WCO uses as a conduit with licensees to implement the fraud—brazenly have obstructed discovery that might illuminate the whistleblower's allegations. As part of the Berks County case, TDI served document subpoenas on WCO in Delaware and Academia in Virginia.  Since then, WCO and Academia (each represented by WCO's counsel here) have engaged in a protracted pattern of obstruction and delay.  WCO started by frivolously challenging whether the Delaware court had jurisdiction to enforce a subpoena served on a Delaware LLC, and Academia did the same in Virginia.  The Delaware and Virginia courts rejected those baseless arguments.  WCO delayed further by unsuccessfully seeking reconsideration of that ruling in Delaware.

After losing every argument in Delaware and Virginia, WCO filed a motion for a protective order in Berks County seeking to stop all discovery.  In this filing, WCO represented that it was no longer pursuing the Albright transaction, and asserted that the case therefore was moot.  At a hearing on March 21, 2022, the Berks County court ruled that TDI could pursue its subpoenas in Delaware and Virginia in order to investigate the whistleblower's allegations *concerning the Albright transaction* (though the whistleblower's allegations are far broader than that).  *See* Ex. 1 (March 21, 2022 Berks Cnty. Tr. 43:13–17) ("My ruling as of right now is those subpoenas which were validly issued [from] this court and then domesticated in those jurisdictions you have a date in court with either the court or master they will resolve how those should be enforced and I think that's appropriate."); *see also* Ex. 2 (April 29, 2022 Virginia Beach Cir. Ct. Order) (ordering production of communications "regarding Albright").

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

TDI did everything in its power to seek discovery concerning the Albright transaction, as permitted by the Berks County court. Academia was directed by the Virginia court to produce all documents regarding the Albright transaction. But after stalling for weeks, Academia made an improper production that was heavily redacted, rendering it largely of no use. For example, Academia redacted a "deal memo" specifically addressing Albright on the baseless ground of "transaction strategy." *See* Ex. 3 (Academia 230–33). As a result, TDI filed a motion to compel Academia to remove its improper redactions, which the Virginia court granted on July 25, 2022, ordering Academia to produce a completely unredacted "deal memo" by August 15. WCO, for its part, produced only documents regarding Albright, and it did so on the eve of a hearing on TDI's motion to compel in Delaware. That production, however, was plagued by the same issues as Academia's. And, like Academia's production, it is limited to the Albright transaction. Indeed, to the extent that any document concerned general strategy or any other transaction WCO was supposedly pursuing, both WCO and Academia redacted that information. TDI has thus not obtained discovery from any Defendant concerning WCO's broader fraudulent scheme.

**D.    The Albright Litigation Concludes**

The *Albright* case is now concluded. On August 11, 2022, Albright filed preliminary objections to T-Mobile's amended complaint, asserting that, *inter alia*, the contract claims— which, to reiterate, did not concern the whistleblower's allegations of fraud in any respect—were moot. In doing so, Albright represented to the Berks County court that "no case or controversy exist[ed]" any longer because T-Mobile "already has accomplished its stated goal for the lawsuit," which was to "prevent Albright from selling its License to WCO" in contravention of its lease with TDI. Ex. 4 (excerpt of Albright's Preliminary Objs. to Pls.' Am. Compl.). Albright's assertions echoed WCO's, which stated that the *Albright* case "has been over since the day" WCO

9

represented to the court that it was withdrawing its offer to Albright and was "no longer a suitor." *See* Ex. 5 (July 11, 2022 Berks Cnty. Tr. 8:9–11); *see also id.* 9:3–5 ("there isn't anything at issue" in *Albright*). WCO even intervened as a plaintiff in the *Albright* action to seek dismissal based on the same mootness argument.

On August 26, 2022, T-Mobile discontinued the *Albright* case without prejudice. The only reason T-Mobile filed the lawsuit against Albright in Berks County—an action it took prior to being contacted by the whistleblower and without any knowledge of Defendants' fraud— was because that is where Albright College is located. As the Berks County court itself recognized after the whistleblower's allegations came to light, this dispute between T-Mobile and Defendants "is obviously much bigger than Berks County, Pennsylvania." Ex. 5 at 12:24–25. WCO's counsel similarly told the Berks County court in seeking dismissal of that case that, "if [T-Mobile] want[s] to bring another lawsuit somewhere, we can deal with it in the appropriate course." *Id.* at 8:11–12.

## E.    T-Mobile Files a Writ of Summons

In light of the whistleblower's allegations and supporting documentation, T-Mobile filed this lawsuit via a writ of summons on May 6, 2022, related to the alleged nationwide fraud in its entirety and not limited to the Albright transaction. T-Mobile filed the writ in this Court because WCO has targeted EBS spectrum covering the Philadelphia area as part of its scheme and has profited from T-Mobile's exercise of a ROFR to match WCO's sham offer to acquire that Philadelphia spectrum. Given the nature and extent of the fraud allegations, this lawsuit is brought directly against WCO and its co-conspirators, and extends far beyond the limited claims and issues that were before the Berks County court in the *Albright* litigation.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Plaintiffs Clearwire Spectrum Holdings LLC, Clearwire Spectrum Holdings II LLC, Clearwire Spectrum Holdings III LLC, Fixed Wireless Holdings LLC, NSAC LLC, TDI, and WBSY Licensing LLC are all subsidiaries of Plaintiff T-Mobile US, Inc. that have been coerced into exercising a ROFR under an EBS lease agreement because of a sham offer submitted by WCO. Plaintiffs filed this lawsuit via writ of summons against the following Defendants, each of whom played a critical role in perpetuating this fraud against T-Mobile:  (i) WCO and its founder Winnick and senior executive Katerndahl; (ii) WCO's consultant Tyler Krantz; (iii)  WCO's broker Academia and Academia's principal Bitzarakis; and (iv) WCO's supposed financier, SCH, and SCH's principal Vasudevan.

WCO is at the center of the fraud, and through Defendants Winnick, Katerndahl, and Krantz, is the entity that developed the fraudulent scheme to make sham offers to EBS licensees in order to trigger T-Mobile's ROFR rights.  WCO has collected tens of millions of dollars in illegal kickbacks when T-Mobile exercised its ROFRs and acquired the licenses to which those sham offers pertained.  Winnick is WCO's leader and spearheaded this scheme, with the help of Katerndahl.  Katerndahl signed numerous agreements to affect the fraudulent scheme, including, for example, the CCA between WCO and the Pennsylvania Hospital Television Network concerning the spectrum in the "Philadelphia, PA" "[m]arket."

WCO's key consultant Krantz is believed to have developed (or helped develop) the fraudulent scheme, and implemented it on a nationwide basis.  Krantz sits alongside Winnick and Katerndahl on WCO's "Investment Committee," which identifies as targets EBS licenses that are leased to T-Mobile.  Among other things, Krantz participates in preparing "deal memos" (like the one referenced above) that are used to effectuate the fraud against T-Mobile.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

WCO's broker Academia and its principal Bitzarakis are believed to help identify EBS licenses to target that are subject to T-Mobile leases, and Academia and Bitzarakis serve as a conduit between WCO and various EBS licensees located across the country. Among other things, Bitzarakis participates in strategy sessions, contacts EBS licensees about WCO potentially making offers to them, and delivers the sham offers to those entities. It is believed that Bitzarakis further facilitates the scheme by negotiating WCO's kickbacks and documenting them under the guise of CCAs, as well as the NDAs that try to hide those payments.

Finally, WCO's supposed financier SCH and its principal Vasudevan create the appearance of providing WCO with $2 billion in financing, which is a sham designed for WCO to use in the event its financial wherewithal to make its substantial offers to EBS licensees is ever questioned. The whistleblower specifically identified SCH in his allegations of fraud and provided the documents pursuant to which the financing supposedly was provided.

Concurrently with the writ of summons, Plaintiffs served pre-complaint document requests on each Defendant. *See* Ex. 6 (Pls.' First Reqs. for Production). Pursuant to Rule 4003.8, each of Plaintiffs' seventeen (17) requests seeks documents "material and necessary" to filing a complaint regarding Defendants' alleged fraudulent EBS license kickback scheme. *See infra* Pls.' Mot. to Compel ¶¶ 25–30.

Each of the Defendants served nearly identical, baseless objections to Plaintiffs' document requests. *See* Exs. 7, 8, 9, 10, 11, 12, 13. None of the Defendants agreed to produce any documents. Despite Plaintiffs' best efforts to meet and confer, Defendants continue to obstruct T-Mobile's discovery, necessitating this motion to compel.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## ARGUMENT

This Court should order Defendants to produce documents in response to Plaintiffs' pre-complaint discovery requests because these requests seek documents "material and necessary" to Plaintiffs' complaint, and will impose little burden on Defendants. Pa. R. Civ. P. 4003.8(a). Under Pennsylvania law, a plaintiff "may obtain pre-complaint discovery where the information sought is material and necessary to the filing of the complaint and the discovery will not cause unreasonable annoyance, embarrassment, oppression, burden or expense." *Id.*; *see Armstrong v. Tullytown Borough*, No. 2014-05675, 2015 WL 10937075, at *4 (Pa. Ct. C.P. Bucks Cnty. May 15, 2015) (courts weigh "the importance of the" discovery to plaintiff's complaint "against the burden on" defendant). The decision of whether to permit pre-complaint discovery is "vested to the sound discretion of the trial court." *See Tullytown Borough v. Armstrong*, 129 A.3d 619, 622 (Pa. Commw. Ct. 2015) (permitting pre-complaint discovery). Courts authorize such discovery to learn facts that would facilitate drafting a complaint, including "'all parties liable to plaintiff for injury, or the identity or whereabouts of witnesses.'" *Doe C.D. v. Career Tech. Ctr.*, No. 19CV3029, 2019 WL 3333866, at *4 (Pa. Ct. C.P. Lackawanna Cnty. July 18, 2019) (citation omitted); *see also Armstrong*, 2015 WL 10937075, at *3 (permitting pre-complaint discovery to enable plaintiffs to identify proper defendants); *Woodward v. ViroPharma Inc.*, No. 3222 EDA 2011, 2013 WL 1485110, at *5 (Pa. Super. Ct. Apr. 3, 2013) (same); *Sullivan v. Crete Carrier Corp.*, No. 8716 CIVIL 2015, 2016 WL 11776119, at *2 (Pa. Ct. C.P. June 20, 2016) (same). Even under the stricter standard that existed prior to 2006, under which a party seeking pre-complaint discovery was required to establish a *prima facie* case (which Plaintiffs do here based on the whistleblower's allegations), courts authorized pre-complaint discovery that "relates to the occurrence of the specific" event at issue, circumstances giving rise to the cause of action, and "identification of

13

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

witnesses."[4] *French v. ITT Indus./Harrisburg Design Ctr.*, 66 Pa. D. & C. 4th 196, 200 (Pa. Ct. C.P. Lawrence Cnty. 2004) (allowing pre-complaint discovery into the specifics of an industrial accident and the "manufacture, design, maintenance, repair, servicing and chain of distribution of specific equipment and its components that were involved in the accident").

This case, in which there are credible allegations of fraud from a whistleblower, is tailor-made for pre-complaint discovery. Each of Plaintiffs' requests seeks targeted documents that would help Plaintiffs understand the full scope and contours of Defendants' fraudulent scheme. Each request is squarely "necessary and material" to Plaintiffs' propounding of a complaint against Defendants related to the nationwide fraud that the whistleblower alleges, and none of the requests will "cause unreasonable annoyance, embarrassment, oppression, burden or expense" on WCO and its co-Defendants. Pa. R. Civ. P. 4003.8(a). Plaintiffs' requests fall generally into three limited categories: Documents related to (i) the apparent sham financing arrangements between WCO and SCH; (ii) WCO's targeting EBS licenses covered by T-Mobile lease agreements with ROFR provisions that WCO seeks to trigger as part of its kickback scheme; and (iii) T-Mobile's anticipated exercise of ROFRs and WCO's receipt of kickbacks in the form of percentage cuts of purchase prices for EBS licenses.

## I.    Requests Seeking Sham Financing Documents

Seven of Plaintiffs' requests (11–17) target specific documents concerning WCO's supposed financing of EBS license purchases through a purported **$2 billion** line of credit from an

---

[4] In *McNeil v. Jordan*, the Pennsylvania Supreme Court rejected a requirement that a plaintiff seeking pre-complaint discovery must first establish a *prima facie* case. 894 A.2d 1260, 1273 (Pa. 2006). The Court held that requiring a prima facie case "prior to allowing pre-complaint discovery is tantamount to writing pre-complaint discovery out of the civil rules entirely." *Id.* The Court then adopted the more lenient "material and necessary" standard, *id.* at 1278, which later was adopted in modified form as Rule 4003.8.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

entity, with no public profile, called SCH LLC.  Requests 13 and 14 ask for "Organizational charts sufficient to identify all entities affiliated with SCH" and organizational charts or other documents sufficient to identify SCH officers, partners, and other agents.  Documents responsive to these requests fall squarely within the ambit of Rule 4003.8 because they will enable Plaintiffs to identify additional proper defendants, including whether there are other conspirators associated with SCH.  *See Armstrong*, 2015 WL 10937075, at *3 (permitting pre-complaint discovery that would help plaintiffs determine "whether there is a sufficient factual basis to file a complaint" against a particular defendant); *ViroPharma Inc.*, 2013 WL 1485110, at *5 (permitting pre-complaint discovery to facilitate identification of proper defendants); *Sullivan*, 2016 WL 11776119, at *2 (same).  Little is publicly available about SCH, or the only person apparently affiliated with it, former movie producer Vasudevan.  Given the apparent size of SCH, producing organizational charts to identify the entities and people associated with this entity will impose almost no burden on SCH and Vasudevan, or WCO and the other Defendants to the extent they are in possession of any such documents.

Relatedly, Requests 11, 12, and 15–17 seek documents and communications concerning (i) WCO's financing of EBS license purchases; and (ii) the sources of SCH's purported billions of dollars in funding.  These requests go to the "limited purpose," *Career Tech. Ctr.*, 2019 WL 3333866, at *4, of confirming whether WCO's purported multi-billion dollar funding is a sham.  Such documents are material and necessary to the contours of Plaintiffs' claims.  *See French*, 66 Pa. D. & C. 4th at 201.  In addition, given the targeted nature of these requests, it would be easy for Defendants like WCO and SCH to collect and produce these documents with little burden.

## II.    Requests About WCO's Targeting of T-Mobile

Requests 3 and 5–10 seek documents from Defendants concerning their victim, T-Mobile.

15

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Specifically, Plaintiffs seek documents regarding WCO's targeting of T-Mobile, including whether WCO focuses its sham offers on entities who have lease agreements with T-Mobile, whether Plaintiffs target lease agreements that contain ROFRs, and which ROFRs WCO thinks T-Mobile will be most likely to exercise. This includes, specifically, documents like the one produced by Academia concerning Albright, which shows WCO's intense interest in T-Mobile's ROFRs, WCO's analysis of the relative importance of certain EBS licenses to T-Mobile (which bears on the likelihood of T-Mobile exercising its ROFRs), and WCO's assessment of how T-Mobile might react to WCO offers to various licensees. *See* Ex. 3. Given the nature of the whistleblower's allegations, such documents lie at the heart of WCO's alleged scheme to defraud T-Mobile, and will assist Plaintiffs in defining the scope, time frame, and substance of their claims. *Cf. Armstrong*, 2015 WL 10937075, at *3 (allowing pre-complaint discovery to ascertain contours of claims arising from allegedly improper surveillance by local government). None of these requests impose an unreasonable burden, particularly when weighed against the centrality of these issues to Plaintiffs' claims.

## III.    Requests Seeking Documents About WCO and the Whistleblower

Finally, Requests 1, 2, and 4 seek documents about WCO itself. Requests 1 and 2 ask for, respectively, "[o]rganizational charts or other documents sufficient to identify all entities affiliated with WCO" and "[o]rganizational charts, corporate directories, or other documents sufficient to identify all current and former" agents, officers, and the like of WCO. Documents responsive to these two requests will enable Plaintiffs to identify the proper WCO defendants, and whether there are other WCO-related entities or individuals that should be named as defendants or who could be potential witnesses. *See Armstrong*, 2015 WL 10937075, at *3 (pre-complaint discovery to

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

identify proper defendants); *Woodward*, 2013 WL 1485110, at *5 (same); *Sullivan*, 2016 WL 11776119, at *2 (same).

And Request 4 seeks documents concerning the whistleblower, whose allegations are the impetus for this action. Any documents concerning WCO's knowledge of the identity of this individual or WCO's reactions to his allegations will bear directly on Plaintiffs' framing of these allegations in drawing up their complaint, but they also will reflect WCO's reaction to news of a whistleblower exposing their fraud, which would directly impact Plaintiffs' claims.

Defendants have made clear that they will try to portray Plaintiffs' efforts to obtain information about the fraud as a pursuit of Defendants' confidential business plans. The Court should not be distracted by this spin. Defendants' "business plans," according to the whistleblower, are to defraud T-Mobile. As a result, this Court should see Defendants' assertion for what it is—a claim by the alleged fraudsters, who have been outed by a whistleblower, that their victim should not be permitted to investigate the fraud being committed against it, because the fraud is confidential, sensitive business information belonging to the fraudsters. That, of course, is absurd on its face. Plaintiffs' requests are properly targeted and have been propounded only to obtain information about the fraud that will assist T-Mobile in filing a complaint.

## **RELIEF REQUESTED**

Each of these requests is material and necessary to Plaintiffs (the apparent victims of a massive fraud) filing their complaint against Defendants (the apparent fraudsters). Depending on the content of the responsive documents, Plaintiffs also reserve the right to seek additional documents or pre-complaint depositions. *See*, *e.g.*, *Armstrong*, 2015 WL 10937075, at *3. The importance of the pre-complaint discovery sought here far outweighs the relatively minimal burden on Defendants of producing the requested documents. And the gravity and extent of the

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

alleged fraud allegations, which originated with an apparent former insider at WCO, surely justify a review of the documents T-Mobile seeks before filing an appropriate complaint.

For all of these reasons, Plaintiffs request that the Court order Defendants to produce all responsive documents, without relevance redactions, pursuant to Plaintiffs' First Requests for Production of Documents.

Dated: September 2, 2022                    Respectfully submitted,


                                            By: /s/ Steven J. Engelmyer

                                            KLEINBARD, LLC
                                            Steven J. Engelmyer, PA ID No. 42840
                                            Eric J. Schreiner, PA ID No. 76721
                                            Three Logan Square
                                            1717 Arch Street, 5th Floor
                                            Philadelphia, PA 19103
                                            Telephone: (215) 568-2000
                                            sengelmyer@kleinbard.com
                                            eschreiner@kleinbard.com

                                            WILLIAMS & CONNOLLY LLP
                                            Kenneth J. Brown*
                                            R. Kennon Poteat III*
                                            Denis R. Hurley*
                                            680 Maine Avenue, SW
                                            Washington, DC 20004
                                            Telephone: (202) 434-5000
                                            Facsimile: (202) 434-5029
                                            kbrown@wc.com
                                            kpoteat@wc.com
                                            dhurley@wc.com

                                            * admitted *pro hac vice*

                                            *Attorneys for TDI Acquisition Sub LLC*

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## CERTIFICATION OF COMPLIANCE WITH PENNSYLVANIA'S
## <u>CASE RECORDS PUBLIC ACCESS POLICY</u>

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

*/s/ Eric J. Schreiner*
Eric J. Schreiner

Dated:  September 2, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

KLEINBARD LLC
Steven J. Engelmyer (No. 42840)
Eric J. Schreiner (No. 76721)
Three Logan Square, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-2000
sengelmyer@kleinbard.com
eschreiner@kleinbard.com
*Attorneys for Plaintiffs*

| | |
|---|---|
| T-MOBILE US, INC.,<br>CLEARWIRE SPECTRUM HOLDINGS LLC,<br>CLEARWIRE SPECTRUM HOLDINGS II LLC,<br>CLEARWIRE SPECTRUM HOLDINGS III LLC,<br>FIXED WIRELESS HOLDINGS LLC,<br>NSAC LLC,<br>TDI ACQUISITION SUB LLC,<br>WBSY LICENSING LLC,<br><br>          Plaintiffs,<br><br>v.<br><br>WCO SPECTRUM LLC,<br>SCH LLC,<br>ACADEMIA SPECTRUM LLC,<br>GARY WINNICK,<br>CARL KATERNDAHL,<br>ASHOK VASUDEVAN,<br>ANDREAS BITZARAKIS,<br>TYLER KRANTZ,<br><br>          Defendants. | IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA<br><br>May Term, 2022<br><br>No. 00629<br><br>COMMERCE PROGRAM |

## <u>ATTORNEY CERTIFICATION OF GOOD FAITH</u>

Undersigned counsel for movant hereby certifies and attests that counsel have contacted

opposing counsel regarding the matter contained in the foregoing motion in an effort to resolve

the specific dispute at issue and that despite counsel's good faith attempts to resolve the dispute,

counsel have been unable to do so.

Respectfully,


/s/ Steven J. Engelmyer
Steven J. Engelmyer (No. 42840)
KLEINBARD LLC
Three Logan Square, 5th Floor
1717 Arch Street
Philadelphia, PA  19103
Telephone: (215) 568-2000
Facsimile: (215) 568-0140
sengelmyer@kleinbard.com

*Attorney for Plaintiffs*

Date:  September 2, 2022

## CERTIFICATE OF SERVICE

I, Eric J. Schreiner, Esq., hereby certify that on this date, I caused to be served a true and correct copy of the foregoing, Plaintiff TDI Acquisition Sub LLC's Motion to Compel Defendants to Respond to Its First Requests for Production of Documents, via email, upon the following counsel:

> Maurice R. Mitts, Esq.
> MITTS LAW, LLC
> 1822 Spruce Street
> Philadelphia, PA 19103
> (215) 866-0112 (phone)
> (215) 866-0113 (fax)
> mmitts@mittslaw.com
> *Attorney for Defendants WCO*
> *Spectrum, LLC, Academia Spectrum*
> *LLC, Gary Winnick, Carl*
> *Katerndahl, Tyler Krantz and*
> *Andreas Bitzakaris*
>
> Gerard M. McCabe, Esq.
> McCABE LAW GROUP, LLC
> 42 Hawkswell Circle
> Oreland, PA 19075
> Telephone: (215) 965-0003
> Facsimile: (215) 965-0013
> gmccabe@mccabe.law
> *Attorney for Defendants WCH LLC*
> *and Ashok Vasudevan*

> ___/s/ Eric J. Schreiner_____
> Eric J. Schreiner, Esq.
> *Attorney for Plaintiff*
> *TDI Acquisition Sub LLC*

Dated: September 2, 2022



*Filed and Attested by the Office of Judicial Records 02 SEP 2022 11:15 am P. DIVON*

# Exhibit 1

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
TDI ACQUISITION SUB LLC        :  In the Court of Common Pleas
                 Plaintiff     :  of Berks County, Pennsylvania
                               :  Civil Action Law
          vs.                  :
                               :
                               :
ALBRIGHT COLLEGE               :
                 Defendant     :  No. 21-04881
                   _____
```

HEARING
Monday, March 21, 2022
Reading, Pennsylvania
_____

Before THE HONORABLE J. BENJAMIN NEVIUS, Judge
_____


APPEARANCES:

```
For the Plaintiff:     STEVEN J. ENGELMYER, ESQUIRE
TDI Acquisition        1717 Arch Street, 5th Floor
Sub, LLC               Philadelphia, Pennsylvania 19103



                       KENNETH J. BROWN, ESQUIRE
                       725 Twelfth Street, N.W.
                       Washington, D.C. 20005


For the Defendant:     PETER F. SCHUCHMAN, JR, ESQUIRE
Albright College       2640 Westview Drive
                       Wyomissing, Pennsylvania 19610



For nonparty WCO:      MAURICE R. MITTS, ESQUIRE
Spectrum, LLC          1822 Spruce Street
                       Philadelphia, Pennsylvania 19103



DISTRIBUTION:          Original and once (1) copy filed with
                       the Office of the Prothonotary to be
                       distributed to Attorney Mitts upon
                       payment of balance due and owing.


            ANGELA ROTKISKE
        Official Court Reporter
```

1

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
 1   (Reading, Pennsylvania, Monday, March 21, 2022, at 2 p.m.)
 2              (REPORTER'S NOTE:  At the direction of the
 3   Trial Judge, this transcript shall be considered as
 4   containing an exception to every ruling by the Court.)
 5              THE COURT:  All right.  This is civil docket
 6   21-4881.  This is the time and place for a sort of all
 7   purposes conference all hands on deck with the various party
 8   and nonparty participants in this proceeding.  We have Mr.
 9   Schuchman on behalf of Albright College.  We have Mr. Brown
10   and Mr. Engelmyer on behalf of Plaintiffs as well Mr.
11   Mitts on behalf of nonparty, WCO Spectrum, LLC.  And after
12   reading all of the paperwork it appears to be really between
13   a battle between WCO and TDI is really what's going on and
14   Albright sort of in the middle if that's an accurate --
15              MR. SCHUCHMAN:  I have strategically placed
16   myself, Your Honor.
17              THE COURT:  Physically in between.
18              MR. SCHUCHMAN:  Yes.
19              THE COURT:  So I had Mr. Mitts, I don't think
20   you were a participant in the first conference call that I
21   had with counsel in this a few weeks ago, I finally have had
22   an ability to get up to speed on Judge Rowley's cases.  I'm
23   still transitioning out from assignments I've had
24   previously.  This one is -- and we can go off the record.
25              (WHEREUPON, discussion occurred off the
```

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

1   move forward with it.

2              MR. BROWN:  But the point is the documents

3   that we need to review to make that determination certainly

4   include the whistleblower documents but they also include

5   the materials that we sought from Winnick and its consultant

6   Academia Spectrum.

7              THE COURT:  I'm not limiting you in any time.

8   All I'm limiting you in the time is to give that information

9   to Mr.  Schuchman --

10             MR. BROWN:  What Mr.  Mitts is suggesting is

11   he wants to be able to go to Virginia tomorrow and tell the

12   Court you don't need to do anything.

13             THE COURT:  My ruling as of right now is those

14   subpoenas which were validly issued on this court and then

15   domesticated in those jurisdictions you have a date in court

16   with either the court or master they will resolve how those

17   should be enforced and I think that's appropriate.  All

18   right.

19             MR. ENGELMYER:  Yes, sir.

20             MR. BROWN:  Yes.

21             MR. MITTS:  Thank you very much for your time.

22   I really appreciate it, Your Honor.

23             (WHEREUPON, the proceedings concluded at 3:15

24   p.m.)

25

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 2

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# IN THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

TDI ACQUISITION SUB LLC,

          Plaintiff,

   vs.

ALBRIGHT COLLEGE,

          Defendant.

Case No. CL21-3972

## ORDER

On March 22, 2022, TDI Acquisition Sub LLC ("TDI") and Academia Spectrum LLC ("Academia") appeared before the Court regarding TDI's subpoena duces tecum and Academia's motion to quash. Upon review of the parties' briefs, the hearing of oral argument, and finding good cause to do so, the Court hereby ORDERS as follows:

Counsel for Academia has represented that it has caused a comprehensive review and production of all documents related to WCO Spectrum LLC ("WCO") and Defendant Albright College ("Albright"). However, to address TDI's remaining concerns, Academia's counsel is directed to produce all additional documents and communications (if any), including, but not limited to, emails between and among WCO and Academia and Albright and Academia, concerning Albright, WCO's Offer, the Albright Lease Agreement, and the Albright License, as those terms are defined in TDI's subpoena. Academia's counsel is directed to conduct a further search for responsive documents, and Academia's counsel is directed to supervise the search for such responsive documents using the following search terms, as well as appropriate wild cards, applied to all Academia custodians (including, but not limited to, Andreas Bitzarakis):

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

- WND475

- Albright

- "Reading, PA" OR "Reading, Pennsylvania"

- "16,200,000" (including with wildcard "*16,200,000")

- "1,620,000" (including with wildcard "*16,200,000")

- "@winnickco.com" AND "Albright"

- "@wcospectrum.com" AND "Albright"

- "Winnick" AND "Albright"

- "Katerndahl" AND "Albright"

- "Vasudevan" AND "Albright"

- "Bloch" AND "Albright"

- "@wbklaw.com" AND "Albright"

- "ROFR" AND "Albright"

- "Right of First Refusal" AND "Albright"

- "Gray" AND "Albright"

Academia is directed to produce all additional responsive documents pursuant to it, by April 8, 2022.

Finally, Academia's Motion to Quash is granted with respect to document request 4, except to the extent any such communications between Academia and WCO concern Albright; and granted with respect to document requests 12, 13, and 14. The Court's ruling directing Academia to produce all documents and communications regarding Albright, the Albright Lease Agreement, and the Albright License serves to deny Academia's Motion to Quash as to document requests 1, 2, 3, 5 and 6 because they concern only Albright.

2

**IT IS SO ORDERED ADJUDGED AND DECREED**.

_____
Judge Patricia L. West

Dated: _____4-29-22_____

**SEEN AND AGREED, IN PART, AND OBJECTED TO, IN PART FOR THE REASONS STATED ON RECORD AND IN THE BRIEFS WHICH ARE INCORPORATED HEREIN:**

Robert M. Tata (VSB #30101)
Kevin J. Cosgrove (VSB #18828)
**HUNTON ANDREWS KURTH LLP**
500 E. Main Street, Suite 1301
Norfolk, VA  23510
Telephone:  (757) 640-5328
btata@huntonAK.com

Kenneth J. Brown (VSB #48134)
R. Kennon Poteat (VSB #73324)
Denis R. Hurley
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*Counsel for TDI Acquisition Sub LLC*

**SEEN AND AGREED, IN PART, AND OBJECTED TO, IN PART FOR THE REASONS STATED ON RECORD AND IN THE BRIEFS WHICH ARE INCORPORATED HEREIN:**

Wyatt B. Durrette, Jr. (VSB #04719)
**DURRETTE, ARKEMA, GERSON & GILL, PC**
1111 E. Main Street, 16th Floor
Richmond, VA  23219
Telephone:  (804) 775-6900
Facsimile:  (804) 775-6911
wdurrette@dagglaw.com

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Maurice R. Mitts
**Mitts Law, LLC**
1822 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 866-0110
Facsimile: (215) 866-0111
mmitts@mittslaw.com

*Counsel for Academia Spectrum, LLC*

4

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

The attached "dated" copy is provided to you free of charge. It indicates the date the judge signed your order. If you would like a photo copy (with judges' signature) please remit .50 per page and $2.00 certification fee (if desired) and a SASE.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# **Exhibit 3**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

| | |
|---|---|
| **From:** | Matthew Bloch <mbloch@winnickco.com> |
| **Sent:** | Monday, February 22, 2021 3:30 PM |
| **To:** | Gary  Winnick; Carl Katerndahl; Tyler Kratz; Andreas Bitzarakis |
| **Subject:** | Deal Memos - Albright ███████ |
| **Attachments:** | WCO Spectrum - Albright.pdf; WCO Spectrum - ██████████ |

All,

Attached are the deal memos for Albright ████████.  Let's discuss and agree on the terms (specifically pricing) so we can send out the offers and Commitment Costs Agreement.

Thanks,
Matt

1

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.:22090381
Academia 00280

WCO SPECTRUM

Date: 2/16/2021

| License Holder Summary | |
|---|---|
| License Holder | Albright College |
| Location | Reading, PA |
| License Holder Description | Private liberal arts college in Reading. Affiliated with United Methodist Church |
| Lawyer | Todd Gray |
| Contacts | Jeffrey Stader |
| Summary of Discussions | Ready to move forward at calc output |
| Website | www.albright.edu |
| Link to Management / Board | https://www.albright.edu/about-albright/board-of-trustees/ |
| | |

| License Summary | |
|---|---|
| Call Signs / Regions | WND475 |
| Capacity (MHz) | 22.5 MHz |
| POPs | 1,405,877 |
| MHz-POPs | 31,632,233 |
| Purchase Price | ███████████████ |
| Pricing ($/MHz-POP) | $.51 MHz-POP |
| Sum of remain. lease pymts. | N/A |
| Yield | 4% |
| Lessee | TDI Acquisition Sub, LLC |
| Lease Terms | Lease Commencement: 4/2007, Expiration 4/2037 |
| ROFR | Yes, as well as third-party exclusivity carve out |
| | |

| Transaction Strategy | |
|---|---|
| Disclosure Requirements | |
| Market Analysis | ████████████████████ |
| Channel Group | ████████ |
| Strategic Importance to TMO | ████████████████████ |
| Potential TMO Strategy | ████████████████ |
| | |

| Transaction Status | |
|---|---|
| NDA | 2/16/21 |
| Unsigned Offer | |
| Negotiation | |
| Signed Offer | |
| ROFR | |
| Next Steps | |
| Commentary | |

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381
Academia 00280

WCD SPECTRUM

| Investment Committee | IC Approval 1: Unsigned Offer | IC Approval 2: Signed Offer |
|---|---|---|
| Date: | [Date] | [Date] |
| Gary Winnick | [Initial] | [Initial] |
| Carl Katerndahl | [Initial] | [Initial] |
| Matthew Bloch | [Initial] | [Initial] |
| Andreas Bitzarakis | [Initial] | [Initial] |
| Tyler Kratz | [Initial] | [Initial] |

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No. 220500381
Academia 00282

ID #:2160

WCO SPECTRUM

[Insert Model Output]

No Model Created – Because no access to financial information

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00283

# **Exhibit 4**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Peter F. Schuchman, Jr., Esquire
Attorney No.: 69343
Michael C. Kochkodin, Esquire
Attorney No.: 86412
KOZLOFF STOUDT
2640 Westview Drive
Wyomissing, PA 19610                                Attorneys for Defendant
(610) 670-2552                                      Albright College

|                                   |   |                                    |
|-----------------------------------|---|------------------------------------|
|                                   | : |                                    |
| TDI ACQUISITION SUB LLC,          | : | IN THE COURT OF COMMON PLEAS OF    |
|                     Plaintiff     | : | BERKS COUNTY, PENNSYLVANIA         |
|                                   | : |                                    |
|          vs.                      | : | CIVIL ACTION                       |
|                                   | : |                                    |
| ALBRIGHT COLLEGE,                 | : | CASE NO. 21-04881                  |
|                     Defendant     | : |                                    |
|                                   | : |                                    |
|          and                      | : | ASSIGNED TO: BENJAMIN J. NEVIUS, J.|
|                                   | : |                                    |
| WCO SPECTRUM, LLC,                | : |                                    |
|                     Intervenor    | : |                                    |
|                                   | : |                                    |

### PRELIMINARY OBJECTIONS OF DEFENDANT ALBRIGHT COLLEGE TO PLAINTIFF'S AMENDED COMPLAINT

**AND NOW,** comes the Defendant, Albright College, by and through its

attorneys Peter F. Schuchman, Jr., Esquire, Michael C. Kochkodin, Esquire, and Kozloff

Stoudt, and preliminarily objects to Plaintiff's Amended Complaint in accordance with

the provisions of Pennsylvania Rule of Civil Procedure 1028(a) as follows:

### PROCEDURAL BACKGROUND FACTS

1.  Plaintiff, TDI Acquisition Sub LLC ("TDI") commenced this lawsuit by way of a

Complaint filed on or about May 27, 2021.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

59. WCO never acquired any rights or interests with respect to the Lease. <u>See</u> Exhibit "3" at pg. 2.

60. There not only is no allegation by TDI in its FAC that Albright ever entered into a binding agreement with WCO but also, the time period within which Albright could have chosen to accept an offer from WCO with respect to the License without proceeding anew through TDI's ROFR process has expired by its own terms. <u>See</u> Exhibit "1" at ¶¶ 59, 63; Exhibit "2" at §3(b)**.**

61. Moreover, both TDI and the Court have been presented with binding representations that (i) Albright never entered into a binding transaction to sell or assign its License to WCO, (ii) WCO never acquired any rights or interests with respect to the Lease; and (iii) WCO will not take any future steps to acquire any rights with respect to the Lease. <u>See</u> Exhibit "3".

62. Inasmuch as TDI's self-professed reason for filing this lawsuit was to prevent Albright from selling its License to WCO (<u>See</u> Exhibit "1" at ¶ 1), the aforesaid facts establish that regardless of the lack of substantive merit to TDI's purported causes of action, TDI already has accomplished its stated goal for the lawsuit.

63. Accordingly, no case or controversy exists between TDI and Albright and this lawsuit accordingly is moot and should be dismissed with prejudice in its entirety.

WHEREFORE, Defendant Albright College, respectfully requests this Honorable Court sustain this preliminary objection and dismiss Plaintiff's First Amended Complaint in its entirety with prejudice as moot.

14

# Exhibit 5

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
TDI ACQUISITION SUB LLC        :  In the Court of Common Pleas
                    Plaintiff  :  of Berks County, Pennsylvania
                               :  Civil Action Law
            vs.                :
                               :
                               :
ALBRIGHT COLLEGE               :
                    Defendant  :  No. 21-04881
                 _____
```

MOTION TO INTERVENE
Monday, July 11, 2022
Reading, Pennsylvania
_____

Before THE HONORABLE J. BENJAMIN NEVIUS, Judge
_____

APPEARANCES:

For the Plaintiff:    STEVEN J. ENGELMYER, ESQUIRE
                      Three Logan Square
                      1717 Arch Street, 5th Floor
                      Philadelphia, PA  19103

                      KENNETH J. BROWN, ESQUIRE
                      725 Twelfth Street, N.W.
                      Washington, DC  20005

For the Defendant:    PETER F. SCHUCHMAN, JR., ESQUIRE
                      2640 Westview Drive
                      Wyomissing, PA  19610


For the Petitioner:   MAURICE R. MITTS, ESQUIRE
WCO SPECTRUM, LLC     1822 Spruce Street
                      Philadelphia, PA  19103



DISTRIBUTION:         Original and two (2) copies filed with
                      the Office of the Prothonotary to be
                      distributed to Maurice R. Mitts,
                      Esquire and Steven J. Engelmyer, Esquire, upon
                      payment of balance due and owing.


                         BRENDA L. FRUMOLT
                      Official Court Reporter


1

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
1    hearing.  Fundamentally, it is inappropriate for any
2    litigant, any litigant to use a court proceeding as a
3    pretext for invading somebody else's -- a non-party's
4    business.  There's one defendant in this case.  It's
5    Albright College.  Sadly, really sadly, Albright lost this
6    opportunity.  This money would have gone to the college and
7    would have been made available for scholarship for students.
8    $16.2 million that's what was at issue.  That whole
9    opportunity is lost.  This case has been over since the day
10   I made that representation in court because we're no longer
11   a suitor.  They want to bring another lawsuit somewhere, we
12   can deal with it in the appropriate course.
13            THE COURT:  Why did WCO back off if it wanted
14   the license?
15            MR. MITTS:  Because they were incessant about
16   it and we were not getting anywhere in the process.
17            THE COURT:  Okay.
18            MR. MITTS:  And, Your Honor, let me say this,
19   they are using this case really improperly.  They filed a
20   new writ of summons -- you know, they ignored your court
21   order to produce whistleblower documents and give us a
22   courtesy copy.  They ignored all that.  They recently filed
23   a writ of summons in Philadelphia.  They sued not only WCO,
24   but they sued principals of WCO.  They sued a bunch of
25   people.
```

8

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

1              The very first -- the very first defined term

2    in this document request for this supposed precomplaint of

3    discovery is about Albright College.  If there's an Albright

4    College controversy, it would be here; but of course, there

5    isn't anything at issue here.  As Mr. Schuchman correctly

6    said in his answer to our petition, there is no case in

7    controversy.  It is quite apparent that they are using this

8    case as a vehicle to try to get access to unfair proprietary

9    competitive information about WCO that has nothing to do

10   with Albright College.

11             In fact, they've asked for other EBS, other

12   colleges, other universities.  That's what they were trying

13   to get in these foreign jurisdictions in Virginia and

14   Delaware.  Albright College is not a wealthy institution.

15   And so it's -- their involvement in this proceeding has been

16   very truncated and we understand that.  But we also

17   understand that the lack of a formal filing causing this

18   case to be thrown out which is what's appropriate when there

19   aren't any remaining issues is not something that Albright

20   has done yet.  They do, however, join in our -- in the

21   relief we seek in our petition and say many times that there

22   is no case in controversy and this case ought to be thrown

23   out and dismissed with prejudice.  That's the reason we're

24   seeking intervention, Your Honor, is to end this case which

25   has really been hijacked for these improper discovery

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

1  the preliminary objections, are those still outstanding?

2            MR. SCHUCHMAN:  We only filed PO's to the

3  initial complaint.  They filed the amended complaint.  Mr.

4  Engelmyer and I have been corresponding or speaking

5  approximately monthly, and he's graciously granted me an

6  open-ended extension of time rather than on a monthly basis

7  to try and save Albright 200 bucks a month in all of this.

8  Where we are is there's an amended complaint out there that

9  remains redacted.  Even the defendant hasn't received an

10  unredacted copy.

11            But back to my point, Your Honor, I'm making a

12  motion at this point to dismiss the case because the

13  pleadings themselves demonstrate that the offer expired on

14  its terms -- by its own terms and then you can take -- call

15  it a motion for summary judgment if you want, Your Honor,

16  Mr. Mitts's representations that were filed in court not

17  only did that initial deal expire, but there will be no deal

18  in the future demonstrates there's no actual case or

19  controversy.  We got two behemoth companies that are

20  fighting with each other.  It shouldn't be here at the

21  expense of Albright.

22            THE COURT:  Where else is this -- I mean,

23  obviously, I think we talked about this the first time.

24  This is obviously much bigger than Berks County,

25  Pennsylvania.  So where else is this pending and what other

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

1    they have that they want?

2               MR. MITTS:  Everything about our business

3    model.  That's what they really want.  That is what they

4    want.  They want to know about other schools, how you choose

5    schools, how you value things.  There's a whole host of

6    things they want.

7               THE COURT:  Is that going to be in a document

8    or is that something --

9               MR. MITTS:  Yes, there are some.  Yes, there

10   are documents in there that talk about what's the strategy.

11              THE COURT:  Okay.

12              MR. MITTS:  And you heard Mr. Brown say --

13              THE COURT:  It doesn't sound like those are

14   going to be turned over at least under the Virginia

15   subpoena.

16              MR. MITTS:  That's right.  And they're not

17   going to get it under Delaware, either; and they shouldn't

18   get it, Your Honor.

19              THE COURT:  Philadelphia action I don't know.

20              MR. MITTS:  That would be up to a judge in

21   Philadelphia.  And the other point, Your Honor, that's

22   really worth underscoring was they have represented to you

23   that there are very serious allegations in these documents

24   that they have that implicate WCO, that implicate Albright,

25   and they're running all that down.  It's either the case

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# **Exhibit 6**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

KLEINBARD LLC
Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone:  215-568-2000
*Attorneys for Plaintiffs*

| | |
|---|---|
| T-Mobile US, Inc.,<br>Clearwire Spectrum Holdings III, LLC<br>Clearwire Spectrum Holdings II, LLC<br>Clearwire Spectrum Holdings, LLC<br>Fixed Wireless Holdings, LLC<br>NSAC, LLC<br>TDI Acquisition Sub, LLC<br>WBSY Licensing, LLC | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br><br>CASE NO. 00629<br><br>MAY TERM, 2022<br><br>COMMERCE PROGRAM |
|            Plaintiffs<br><br>v.<br><br>WCO Spectrum LLC,<br>SCH LLC<br>Academia Spectrum LLC,<br>Gary Winnick,<br>Carl Katerndahl,<br>Tyler Kratz<br>Ash Vasudevan,<br>Andreas Bitzarakis,<br><br>           Defendants | |

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS

Plaintiffs T-Mobile US, Inc., Clearwire Spectrum Holdings III, LLC, Clearwire Spectrum

Holdings II, LLC, Clearwire Spectrum Holdings, LLC, Fixed Wireless Holdings, LLC, NSAC,

LLC, TDI Acquisition Sub, LLC, and WBSY Licensing, LLC (collectively, "T-Mobile") by their

{02227965;v3 }

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

attorneys, pursuant to Pennsylvania Rule of Civil Procedure 4003.8, submits these Requests for Production of Documents ("Requests") to Defendants WCO Spectrum LLC, SCH LLC, Academia Spectrum LLC, Gary Winnick, Carl Katerndahl, Tyler Kratz, Ash Vasudevan, and Andreas Bitzarakis.  Please produce all documents to Kleinbard LLC, Three Logan Square, 1717 Arch Street, 5th Floor, Philadelphia, Pennsylvania 19103, attention: Eric J. Schreiner, Esq., within thirty (30) days of service, in accordance with Pennsylvania Rule of Civil Procedure 4009.12(a).

## DEFINITIONS

1.     The term "Albright Litigation" refers to the case of *TDI Acquisition Sub LLC v. Albright College*, No. 21-04881, originally filed on May 27, 2021, and currently pending in the Court of Common Pleas for Berks County, Pennsylvania.

2.     The term "all" means all or any, and the term "any" means all or any.

3.     The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person. "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

4.     The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

5.     The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

6.     The term "Commitment Costs Agreement" means any agreement between WCO and any person who, at the time of execution of such agreement, holds an FCC license to use radiofrequency spectrum in the United States, through which that person agrees to compensate WCO in the event that person sells its FCC license to an entity other than WCO.  For avoidance of doubt, the term includes, but is not limited to, any document entitled "Commitment Costs Agreement."

7.     As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things.  The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

8.     The terms "includes" and "including" mean includes and including without limitation.  The terms "includes" and "including" do not limit the scope of any request.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

9.      The term "Lease Agreement" means any agreement through which a Licensee leases to T-Mobile its right to use any portion of the spectrum capacity granted by the FCC to the Licensee pursuant to a License.

10.      The term "License" means any FCC-issued license granting its holder the right to use spectrum in the 2.5 GHz band of spectrum pursuant to the FCC's Broadband Radio Service and Education Broadband Service licensing programs.

11.      The term "Licensee" means any entity that holds a License.

12.      The term "Offer" means any binding or non-binding bid, proposal, offer, or term sheet proposing a transaction.

13.      The term "Person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

14.      The term "ROFR" means "right of first refusal."

15.      The term "SCH LLC" refers to a California LLC currently or formerly located at 10139 S. Blaney Avenue, Cupertino, California, including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

16.      The term "T-Mobile" means T-Mobile US, Inc., including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

17.    The term "WCO" means "WCO Spectrum LLC" including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.  For avoidance of doubt, this includes Winnick and Company, Pacific Capital Group, Inc., and GKW Spectrum Holdings, LLC, as well as any of their successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

18.    The term "the Whistleblower" refers to the anonymous individual who contacted Pennsylvania counsel for TDI Acquisition Sub LLC in the Albright Litigation alleging that WCO Spectrum LLC was engaging in a fraudulent scheme against TDI and its parent company T-Mobile USA, Inc., and who provided alleged documentary evidence of that scheme to TDI's Pennsylvania counsel.

## **INSTRUCTIONS**

1.    You are to respond to these Requests in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Local Rules of the Philadelphia County Court of Common Pleas, and all other applicable laws, rules, and regulations.

2.    These Requests call for all Documents and Communications within Your possession, custody or control.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

3.      If, in responding to any of these Requests, You encounter any ambiguity in construing either the Request or a definition or instructions relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding to the Request.

4.      Documents and Communications produced in response to these Requests should be produced as they are kept in the usual course of business or should be organized and labeled to correspond with the categories in the Request. All Documents and Communications produced in response to these Requests should be Bates stamped or otherwise marked in sequential order. If there are no Documents or Communications responsive to any particular Request, You should so state in writing.

5.      You must produce ESI responsive to these Requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact. Pa. R. Civ. P. 4009.1(b).

6.      References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7.      References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, or members, and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8.      These Requests call for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, subsidiaries, affiliates, directors, officers, principals,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

representatives, attorneys, and agents, or other persons acting on Your behalf, without regard to the physical location of such Documents and Communications.

9.      In responding to these Requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf.  If Your response is that the Documents or Communications are not within Your possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each such Document or Communication.  If Your response is that the Documents or Communications are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.     These Requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production.  Pa. R. Civ. P. 4007.4.

11.     Each Request contemplates production of all Documents and Communications in their entirety.  If only a portion of a Document or Communication is responsive to one or more Requests, the Document or Communication shall be produced in its entirety.

12.     If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

        a.      each and every ground of privilege or protection claimed;

        b.      the author and all recipients;

        c.      the type of Document or Communication;

        d.      the Document or Communication's general subject matter;

        e.      the Document or Communication's date; and

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced.  For each, indicate the portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each Request all responses that might otherwise be considered outside its scope.

15.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the Request would indicate.

16.    If You find any of the Requests to be unclear, overbroad, or unduly burdensome, Plaintiff is prepared to meet and confer regarding the issue.

## DOCUMENTS TO BE PRODUCED

1.    Organizational charts or other documents sufficient to identify all entities affiliated with WCO, including, all current and former parent companies, subsidiaries, and affiliates of each such entity.

2.    Organizational charts, corporate directories, or other documents sufficient to identify all current and former WCO officers, partners, managing partners, directors, board members, employees, contractors, advisors, consultants, and investment committee members by

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

full name; title or titles; and the dates of each such individual's employment or engagement with WCO.

3.      All documents and communications concerning T-Mobile, including any deal memos, pipeline reports, opportunity by stage reports, opportunity history stage reports, and dashboard documents that concern or reference T-Mobile.

4.      All documents and communications concerning the Whistleblower.

5.      All documents and communications concerning any Lease Agreement, including the ROFR provision in any Lease Agreement.

6.      All documents and communications concerning any Commitment Costs Agreement between WCO and any Licensee, including each such Commitment Costs Agreement itself.

7.      All documents and communications concerning how WCO determines, calculates, or otherwise arrives at the amount of any payments that could be made or owed by Licensees to WCO pursuant to any Commitment Costs Agreement, in the event that T-Mobile exercises a ROFR to acquire a License.

8.      All documents and communications concerning WCO's discussions and communications with any Licensee about the actual, potential, or contemplated purchase of any License subject to a Lease Agreement prior to WCO's making any offer to purchase such License.

9.      All documents and communications concerning the actual, potential, or contemplated receipt by WCO of any portion of any amount paid by T-Mobile to any Licensee for any License.

10.     All documents and communications concerning WCO's actual, potential, or contemplated acquisition of any License, including all deal memos, pipeline reports, opportunity by stage reports, opportunity history stage reports, and dashboard documents.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

11.     All documents and communications concerning WCO's financing or planned financing of the purchase of any License subject to a Lease Agreement, including WCO's Revolving Line of Credit Loan Agreement with SCH LLC, and any other loan or financing agreements.

12.     All communications to, from, or copying Ash Vasudevan (whether or not others were party to such communications) concerning WCO's financing or planned financing of the purchase of any License subject to a Lease Agreement.

13.     Organizational charts sufficient to identify all entities affiliated with SCH LLC, including current and former parents, subsidiaries, and affiliates of such entities.

14.     Organizational charts, corporate directories, or other documents sufficient to identify all current and former SCH LLC officers, partners, managing partners, directors, employees, contractors, and consultants by full name; title or titles; and the dates of each such individual's employment or engagement with SCH LLC.

15.     All communications between WCO and SCH LLC.

16.     Documents sufficient to show SCH LLC's lines of business, investments, sources of income, and sources and amounts of funding and financing, as it relates to the financing or potential financing of WCO's purchase of any License subject to a Lease Agreement.

17.     All documents concerning any "Borrowing Requests," "Initial Loan," payment of interest on any Initial Loan, "Additional Loans," and "Participation Payments," pursuant to the Revolving Line of Credit Note between WCO and SCH LLC, as it relates to financing or potential financing of the purchase of any Licenses subject to a Lease Agreement.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

KLEINBARD LLC

By: /s/ Steven J. Engelmyer
Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone:  215-568-2000
*Attorneys for Plaintiffs*

Dated: May 11, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## CERTIFICATE OF SERVICE

I, Steven J. Engelmyer, Esq., hereby certify that on this date, I caused to be served a true and correct copy of the foregoing, Plaintiff's First Set of Requests for Production of Documents, via Process Server, upon the following:

WCO SPECTRUM, LLC
c/o Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

SCH LLC
c/o Ashok Vasudevan
10139 S Blaney Ave Apt A
Cupertino, CA 95014-3155

ACADEMIA SPECTRUM LLC
c/o Virginia Registered Agent Services
4445 Corporation Ln Ste 264
Virginia Beach, VA 23462

GARY WINNICK
9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210

CARL KATERNDAHL
9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210

TYLER KRATZ,
25 Avenue Munoz Rivera, Apt. 419,
San Juan, Puerto Rico 00901

ASHOK VASUDEVAN,
10139 S Blaney Ave Apt A
Cupertino, CA 95014-3155

ANDREAS BITZARAKIS,
294 Watch Hill Rd
Berlin, CT, 06037

/s/ Steven J. Engelmyer
Steven J. Engelmyer
*Attorney for Plaintiffs*

Dated:  May 11, 2022

{02227965;v3 }

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# **Exhibit 7**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire (Attorney I.D. No. 50297)
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC,*
*Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

| | | |
|---|---|---|
| **T-MOBILE US, INC.**, *et al.*, | ) | PHILADELPHIA COUNTY |
| | ) | COURT OF COMMON PLEAS |
| Plaintiffs, | ) | TRIAL DIVISION |
| | ) | |
| v. | ) | May Term, 2022 |
| | ) | |
| **WCO SPECTRUM, LLC**, *et al.*, | ) | No. 00629 |
| | ) | |
| Defendants. | ) | COMMERCE PROGRAM |
| | ) | |

### DEFENDANT WCO SPECTRUM, LLC'S OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.     Defendant, WCO Spectrum, LLC, ("Answering Defendant") objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all inappropriate for pre-complaint discovery.

3.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not established good faith reasons why the documents sought are material and necessary to the drafting of a complaint.

4.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of their pleading.

5.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous, and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.      Answering Defendant objects to Plaintiff's First Set of Requests for Production of Documents because they relate to a prior pending action in Berks County in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, CCP Berks County, Case No. 21-04881 assigned to the Honorable J. Benjamin Nevius and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none.  Moreover, the Answering Defendant has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Answering Defendant.

9.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

10.    Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.    Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad as to time, place, and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.    Answering Defendant's objections to each request for production of documents are made subject to, and without waiving, any objection to the relevancy, competency, admissibility, or privilege regarding any evidence for any purpose.

15.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that the responses may be construed as an admission by Answering Defendant that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Answering Defendant's responses to Plaintiffs' First Set of Requests for Production of Documents are not intended to be, and shall not be construed as, an agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained in their requests and/or interrogatories.

16.    The general objections asserted above shall be deemed applicable to and continuing with respect to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents

3

responded to below. The general objections asserted above are incorporated into each and every response set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request. Answering Defendant reserves the right to amend, supplement, or alter its responses to Plaintiffs' First Set of Requests for Production of Documents at any time hereafter.

**RESPONSES**

1.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

2.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

3.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

4.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

By way of further response, the hypocrisy inherent in this request for production of documents is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed same. They are currently in blatant contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven days after review. Nearly three months

4

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

later, Plaintiffs continue to refuse to produce these documents, laying bare their true intention here: circumventing the Berks County Court, misrepresenting Plaintiffs' true intentions, and forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has forced WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. This writ and this discovery is a mere ruse to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding WCO Spectrum as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully WCO Spectrum out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.        Objection. In addition to the general objections set forth above, this request for production of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.        Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.        Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

10.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

13.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

14.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

15.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

16.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

17.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**MITTS LAW, LLC**

*/s/ Maurice R. Mitts*
Maurice R. Mitts, Esquire
Attorney ID No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC, Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

Dated:  June 10, 2022

9

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

I, Maurice R. Mitts, Esquire, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served via U.S. First Class Mail on the following Defendant:

Steven J. Engelmyer, Esq.
KleinbardLLC
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
sengelmyer@kleinbard.com
*Attorney for Plaintiffs*

Date: June 10, 2022                    */s/ Maurice R. Mitts*
                                       Maurice R. Mitts, Esquire

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 8

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire (Attorney I.D. No. 50297)
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC,*
*Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

| | | |
|---|---|---|
| **T-MOBILE US, INC.**, *et al.*, | ) | PHILADELPHIA COUNTY |
| | ) | COURT OF COMMON PLEAS |
| Plaintiffs, | ) | TRIAL DIVISION |
| | ) | |
| v. | ) | May Term, 2022 |
| | ) | |
| **WCO SPECTRUM, LLC**, *et al.*, | ) | No. 00629 |
| | ) | |
| Defendants. | ) | COMMERCE PROGRAM |
| | ) | |

### DEFENDANT ACADEMIA SPECTRUM LLC'S OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.      Defendant, Academia Spectrum LLC, ("Answering Defendant") objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all inappropriate for pre-complaint discovery.

3.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not established good faith reasons why the documents sought are material and necessary to the drafting of a complaint.

4.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of their pleading.

5.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous, and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.      Answering Defendant objects to Plaintiff's First Set of Requests for Production of Documents because they relate to a prior pending action in Berks County in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, CCP Berks County, Case No. 21-04881 assigned to the Honorable J. Benjamin Nevius and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none.  Moreover, the Answering Defendant has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Answering Defendant.

9.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the

2

critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

10.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad as to time, place, and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.     Answering Defendant's objections to each request for production of documents are made subject to, and without waiving, any objection to the relevancy, competency, admissibility, or privilege regarding any evidence for any purpose.

15.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that the responses may be construed as an admission by Answering Defendant that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Answering Defendant's responses to Plaintiffs' First Set of Requests for Production of Documents are not intended to be, and shall not be construed as, an agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained in their requests and/or interrogatories.

16.     The general objections asserted above shall be deemed applicable to and continuing with respect to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents

3

responded to below. The general objections asserted above are incorporated into each and every response set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request. Answering Defendant reserves the right to amend, supplement, or alter its responses to Plaintiffs' First Set of Requests for Production of Documents at any time hereafter.

## RESPONSES

1.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

2.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

3.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

4.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

By way of further response, the hypocrisy inherent in this request for production of documents is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed same. They are currently in blatant contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven days after review. Nearly three months

4

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

later, Plaintiffs continue to refuse to produce these documents, laying bare their true intention here: circumventing the Berks County Court, misrepresenting Plaintiffs' true intentions, and forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has forced WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. This writ and this discovery is a mere ruse to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding WCO Spectrum as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully WCO Spectrum out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.      Objection. In addition to the general objections set forth above, this request for production of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

10.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

13.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

14.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

15.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

16.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

17.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**MITTS LAW, LLC**

<u>/s/ Maurice R. Mitts</u>
Maurice R. Mitts, Esquire
Attorney ID No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC, Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

Dated:  June 10, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

      I, Maurice R. Mitts, Esquire, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served via U.S. First Class Mail on the following Defendant:

Steven J. Engelmyer, Esq.
KleinbardLLC
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
sengelmyer@kleinbard.com
*Attorney for Plaintiffs*

Date: June 10, 2022                           */s/ Maurice R. Mitts*
                                         Maurice R. Mitts, Esquire

# Exhibit 9

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire (Attorney I.D. No. 50297)
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC,*
*Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

| | | |
|---|---|---|
| **T-MOBILE US, INC.**, *et al.*, | ) | PHILADELPHIA COUNTY |
| | ) | COURT OF COMMON PLEAS |
| Plaintiffs, | ) | TRIAL DIVISION |
| | ) | |
| v. | ) | May Term, 2022 |
| | ) | |
| **WCO SPECTRUM, LLC**, *et al.*, | ) | No. 00629 |
| | ) | |
| Defendants. | ) | COMMERCE PROGRAM |
| | ) | |

### DEFENDANT ANDREAS BITZAKARIS' OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.      Defendant, Andreas Bitzakaris, ("Answering Defendant") objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all inappropriate for pre-complaint discovery.

3.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not established good faith reasons why the documents sought are material and necessary to the drafting of a complaint.

4.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of their pleading.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

5.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous, and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.      Answering Defendant objects to Plaintiff's First Set of Requests for Production of Documents because they relate to a prior pending action in Berks County in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, CCP Berks County, Case No. 21-04881 assigned to the Honorable J. Benjamin Nevius and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none.  Moreover, the Answering Defendant has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Answering Defendant.

9.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

10.    Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.    Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad as to time, place, and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.    Answering Defendant objects to each of the Requests contained in  Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.    Answering Defendant's objections to each request for production of documents are made subject to, and without waiving, any objection to the relevancy, competency, admissibility, or privilege regarding any evidence for any purpose.

15.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that the responses may be construed as an admission by Answering Defendant that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Answering Defendant's responses to Plaintiffs' First Set of Requests for Production of Documents are not intended to be, and shall not be construed as, an agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained in their requests and/or interrogatories.

16.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as an improper attempt to obtain discovery in a jurisdiction where the Answering Defendant lacks sufficient contacts with the jurisdiction to permit the constitutional assertion of jurisdiction over this Answering Defendant.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

17.    The general objections asserted above shall be deemed applicable to and continuing with respect to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents responded to below. The general objections asserted above are incorporated into each and every response set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request. Answering Defendant reserves the right to amend, supplement, or alter its responses to Plaintiffs' First Set of Requests for Production of Documents at any time hereafter.

## RESPONSES

1.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

2.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

3.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

4.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

By way of further response, the hypocrisy inherent in this request for production of documents is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed same.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

They are currently in blatant contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven days after review. Nearly three months later, Plaintiffs continue to refuse to produce these documents, laying bare their true intention here: circumventing the Berks County Court, misrepresenting Plaintiffs' true intentions, and forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has forced WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. This writ and this discovery is a mere ruse to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding WCO Spectrum as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully WCO Spectrum out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.      Objection. In addition to the general objections set forth above, this request for production of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

10.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

13.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

14.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

15.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

16.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

17.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**MITTS LAW, LLC**

*/s/ Maurice R. Mitts*
Maurice R. Mitts, Esquire
Attorney ID No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum,*
*LLC, Academia Spectrum LLC, Gary*
*Winnick, Carl Katerndahl, Tyler Krantz*
*and Andreas Bitzakaris*

Dated:  June 10, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

I, Maurice R. Mitts, Esquire, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served via U.S. First Class Mail on the following Defendant:

Steven J. Engelmyer, Esq.
KleinbardLLC
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
sengelmyer@kleinbard.com
*Attorney for Plaintiffs*

Date: June 10, 2022                    */s/ Maurice R. Mitts*
                                        Maurice R. Mitts, Esquire

# Exhibit 10

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire (Attorney I.D. No. 50297)
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC,*
*Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

| | |
|---|---|
| **T-MOBILE US, INC.**, *et al.*, ) | PHILADELPHIA COUNTY |
| ) | COURT OF COMMON PLEAS |
| Plaintiffs, ) | TRIAL DIVISION |
| ) | |
| v. ) | May Term, 2022 |
| ) | |
| **WCO SPECTRUM, LLC**, *et al.*, ) | No. 00629 |
| ) | |
| Defendants. ) | COMMERCE PROGRAM |

### DEFENDANT CARL KATERNDAHL'S OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

#### GENERAL OBJECTIONS

1.      Defendant, Carl Katerndahl, ("Answering Defendant") objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all inappropriate for pre-complaint discovery.

3.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not established good faith reasons why the documents sought are material and necessary to the drafting of a complaint.

4.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of their pleading.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

5.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous, and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.    Answering Defendant objects to Plaintiff's First Set of Requests for Production of Documents because they relate to a prior pending action in Berks County in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, CCP Berks County, Case No. 21-04881 assigned to the Honorable J. Benjamin Nevius and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none.  Moreover, the Answering Defendant has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Answering Defendant.

9.    Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

10.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad as to time, place, and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.     Answering Defendant objects to each of the Requests contained in  Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.     Answering Defendant's objections to each request for production of documents are made subject to, and without waiving, any objection to the relevancy, competency, admissibility, or privilege regarding any evidence for any purpose.

15.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that the responses may be construed as an admission by Answering Defendant that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Answering Defendant's responses to Plaintiffs' First Set of Requests for Production of Documents are not intended to be, and shall not be construed as, an agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained in their requests and/or interrogatories.

16.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as an imporper attempt to obtain discovery in a jurisdiction where the Answering Defendant lacks sufficient contacts with the jurisdiction to permit the constitutional assertion of jurisdiction over this Answering Defendant.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

17.    The general objections asserted above shall be deemed applicable to and continuing with respect to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents responded to below. The general objections asserted above are incorporated into each and every response set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request. Answering Defendant reserves the right to amend, supplement, or alter its responses to Plaintiffs' First Set of Requests for Production of Documents at any time hereafter.

**RESPONSES**

1.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

2.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

3.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

4.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

By way of further response, the hypocrisy inherent in this request for production of documents is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed same.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

They are currently in blatant contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven days after review. Nearly three months later, Plaintiffs continue to refuse to produce these documents, laying bare their true intention here: circumventing the Berks County Court, misrepresenting Plaintiffs' true intentions, and forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has forced WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. This writ and this discovery is a mere ruse to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding WCO Spectrum as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully WCO Spectrum out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.        Objection. In addition to the general objections set forth above, this request for production of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.        Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.        Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

10.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

13. Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

14. Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

15. Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

16. Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

17. Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**MITTS LAW, LLC**

*/s/ Maurice R. Mitts*
Maurice R. Mitts, Esquire
Attorney ID No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum,*
*LLC, Academia Spectrum LLC, Gary*
*Winnick, Carl Katerndahl, Tyler Krantz*
*and Andreas Bitzakaris*

Dated:  June 10, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

I, Maurice R. Mitts, Esquire, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served via U.S. First Class Mail on the following Defendant:

Steven J. Engelmyer, Esq.
KleinbardLLC
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
sengelmyer@kleinbard.com
*Attorney for Plaintiffs*

Date: June 10, 2022                     */s/ Maurice R. Mitts*
                                        Maurice R. Mitts, Esquire

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 11

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire (Attorney I.D. No. 50297)
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC,*
*Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

| | | |
|---|---|---|
| **T-MOBILE US, INC.**, *et al.*, | ) | PHILADELPHIA COUNTY |
| | ) | COURT OF COMMON PLEAS |
| Plaintiffs, | ) | TRIAL DIVISION |
| | ) | |
| v. | ) | May Term, 2022 |
| | ) | |
| **WCO SPECTRUM, LLC**, *et al.*, | ) | No. 00629 |
| | ) | |
| Defendants. | ) | COMMERCE PROGRAM |
| | ) | |

### DEFENDANT GARY WINNICK'S OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

#### GENERAL OBJECTIONS

1.      Defendant, Gary Winnick, ("Answering Defendant") objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all inappropriate for pre-complaint discovery.

3.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not established good faith reasons why the documents sought are material and necessary to the drafting of a complaint.

4.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of their pleading.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

5.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous, and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.      Answering Defendant objects to Plaintiff's First Set of Requests for Production of Documents because they relate to a prior pending action in Berks County in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, CCP Berks County, Case No. 21-04881 assigned to the Honorable J. Benjamin Nevius and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none.  Moreover, the Answering Defendant has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Answering Defendant.

9.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

10.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad as to time, place, and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.     Answering Defendant's objections to each request for production of documents are made subject to, and without waiving, any objection to the relevancy, competency, admissibility, or privilege regarding any evidence for any purpose.

15.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that the responses may be construed as an admission by Answering Defendant that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Answering Defendant's responses to Plaintiffs' First Set of Requests for Production of Documents are not intended to be, and shall not be construed as, an agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained in their requests and/or interrogatories.

16.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as an imporper attempt to obtain discovery in a jurisdiction where the Answering Defendant lacks sufficient contacts with the jurisdiction to permit the constitutional assertion of jurisdiction over this Answering Defendant.

3

17.     The general objections asserted above shall be deemed applicable to and continuing with respect to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents responded to below. The general objections asserted above are incorporated into each and every response set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request. Answering Defendant reserves the right to amend, supplement, or alter its responses to Plaintiffs' First Set of Requests for Production of Documents at any time hereafter.

## RESPONSES

1.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

2.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

3.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

4.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

        By way of further response, the hypocrisy inherent in this request for production of documents is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed same.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

They are currently in blatant contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven days after review. Nearly three months later, Plaintiffs continue to refuse to produce these documents, laying bare their true intention here: circumventing the Berks County Court, misrepresenting Plaintiffs' true intentions, and forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has forced WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. This writ and this discovery is a mere ruse to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding WCO Spectrum as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully WCO Spectrum out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.      Objection. In addition to the general objections set forth above, this request for production of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

10.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

13.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

14.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

15.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

16.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

17.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**MITTS LAW, LLC**

_/s/ Maurice R. Mitts_
Maurice R. Mitts, Esquire
Attorney ID No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
_Attorney for Defendants WCO Spectrum,_
_LLC, Academia Spectrum LLC, Gary_
_Winnick, Carl Katerndahl, Tyler Krantz_
_and Andreas Bitzakaris_

Dated:  June 10, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

      I, Maurice R. Mitts, Esquire, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served via U.S. First Class Mail on the following Defendant:

Steven J. Engelmyer, Esq.
KleinbardLLC
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
sengelmyer@kleinbard.com
*Attorney for Plaintiffs*

Date: June 10, 2022                    */s/ Maurice R. Mitts*
                                         Maurice R. Mitts, Esquire

# Exhibit 12

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**MITTS LAW, LLC**
Maurice R. Mitts, Esquire (Attorney I.D. No. 50297)
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum, LLC, Academia Spectrum LLC,*
*Gary Winnick, Carl Katerndahl, Tyler Krantz and Andreas Bitzakaris*

| | | |
|---|---|---|
| **T-MOBILE US, INC.**, *et al.*, | ) | PHILADELPHIA COUNTY |
| | ) | COURT OF COMMON PLEAS |
| Plaintiffs, | ) | TRIAL DIVISION |
| | ) | |
| v. | ) | May Term, 2022 |
| | ) | |
| **WCO SPECTRUM, LLC**, *et al.*, | ) | No. 00629 |
| | ) | |
| Defendants. | ) | COMMERCE PROGRAM |
| | ) | |

### DEFENDANT TYLER KRANTZ'S OBJECTIONS TO
### PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

#### GENERAL OBJECTIONS

1.      Defendant, Tyler Krantz, ("Answering Defendant") objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all inappropriate for pre-complaint discovery.

3.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not established good faith reasons why the documents sought are material and necessary to the drafting of a complaint.

4.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of their pleading.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

5.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous, and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.      Answering Defendant objects to Plaintiff's First Set of Requests for Production of Documents because they relate to a prior pending action in Berks County in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, CCP Berks County, Case No. 21-04881 assigned to the Honorable J. Benjamin Nevius and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none.  Moreover, the Answering Defendant has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Answering Defendant.

9.      Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

10.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.     Answering Defendant objects to the definitions contained in Plaintiffs' First Set of Requests for Production of Documents as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as being overly broad as to time, place, and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.     Answering Defendant objects to each of the Requests contained in  Plaintiffs' First Set of Requests for Production of Documents to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.     Answering Defendant's objections to each request for production of documents are made subject to, and without waiving, any objection to the relevancy, competency, admissibility, or privilege regarding any evidence for any purpose.

15.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents to the extent that the responses may be construed as an admission by Answering Defendant that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Answering Defendant's responses to Plaintiffs' First Set of Requests for Production of Documents are not intended to be, and shall not be construed as, an agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained in their requests and/or interrogatories.

16.     Answering Defendant objects to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents as an imporper attempt to obtain discovery in a jurisdiction where the Answering Defendant lacks sufficient contacts with the jurisdiction to permit the constitutional assertion of jurisdiction over this Answering Defendant.

3

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

17.    The general objections asserted above shall be deemed applicable to and continuing with respect to each of the Requests contained in Plaintiffs' First Set of Requests for Production of Documents responded to below. The general objections asserted above are incorporated into each and every response set forth herein. Such objections are not waived, nor in any way limited, by any response to any specific request. Answering Defendant reserves the right to amend, supplement, or alter its responses to Plaintiffs' First Set of Requests for Production of Documents at any time hereafter.

## RESPONSES

1.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

2.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

3.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

4.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the <u>Albright</u> matter in any way, and is not material and necessary to the drafting of a complaint.

By way of further response, the hypocrisy inherent in this request for production of documents is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed same.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

They are currently in blatant contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven days after review. Nearly three months later, Plaintiffs continue to refuse to produce these documents, laying bare their true intention here: circumventing the Berks County Court, misrepresenting Plaintiffs' true intentions, and forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has forced WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. This writ and this discovery is a mere ruse to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding WCO Spectrum as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully WCO Spectrum out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the Albright matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.    Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.      Objection. In addition to the general objections set forth above, this request for production of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.      Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

10.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, and not material and necessary to the drafting of a complaint. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery:

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

13.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

14.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

15.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

16.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is directed to a third party and the documents requested are in the possession of a third party.

17.     Objection. In addition to the general objections set forth above, this request for production of documents of documents is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the <u>Albright</u> matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this request for production of documents seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

this request for production of documents makes clear Plaintiffs' true intent in seeking this discovery: acquiring Defendant's internal privileged business strategy with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**MITTS LAW, LLC**

/s/ Maurice R. Mitts
Maurice R. Mitts, Esquire
Attorney ID No. 50297
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112 (telephone)
(215) 866-0113 (facsimile)
mmitts@mittslaw.com
*Attorney for Defendants WCO Spectrum,*
*LLC, Academia Spectrum LLC, Gary*
*Winnick, Carl Katerndahl, Tyler Krantz*
*and Andreas Bitzakaris*

Dated:  June 10, 2022

## <u>CERTIFICATE OF SERVICE</u>

I, Maurice R. Mitts, Esquire, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served via U.S. First Class Mail on the following Defendant:

Steven J. Engelmyer, Esq.
KleinbardLLC
1717 Arch Street, Fifth Floor
Three Logan Square
Philadelphia, PA 19103
sengelmyer@kleinbard.com
*Attorney for Plaintiffs*

Date: June 10, 2022                              */s/ Maurice R. Mitts*
                                                 Maurice R. Mitts, Esquire

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 13

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

GERARD M. MCCABE, ESQUIRE
I.D. # 66564
**McCABE LAW GROUP, LLC**
42 Hawkswell Circle
Oreland, PA 19075
(215) 965-0003 (Main)
(215) 965-0013 (Fax)                    **ATTORNEY FOR SCH, LLC,**
gmccabe@mccabe.law                      **AND ASHOK VASUDEVAN**

---

| | |
|---|---|
| T-MOBILE US, INC., *et al.*, | : COURT OF COMMON PLEAS |
| | : |
| Plaintiffs, | : PHILADELPHIA COUNTY |
| | : |
| vs. | : May Term 2022 |
| | : |
| WCO SPECTRUM, LLC, *et al.*, | : No. 00629 |
| | : |
| Defendants. | : |
| | : |

---

### DEFENDANTS SCH, LLC'S AND ASHOK VASUDEVAN'S OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to the Pennsylvania Rules of Civil Procedure, Defendants **SCH, LLC** ("SCH"), and **Ashok Vasudevan** ("Vasudevan") (together, SCH and Vasudevan, "Defendants"), hereby provide the following General and Specific Objections (the "Responses") to Plaintiffs' First Set of Requests for Production of Documents (the "Document Requests"). Defendants reserve their right to supplement the Responses to the extent that Defendants discover additional responsive information at a later time.

In addition to the General and Specific Objections and Responses set forth herein, there are three (3) primary reasons why Plaintiffs' Document Requests are improper. First, Plaintiffs lack personal jurisdiction over Defendants who have no contacts with and have done no business in Pennsylvania. By submitting these Objections and Responses to the Document Requests, Defendants do not waive but rather assert and affirm their entitlement to the defense that Plaintiffs lack personal jurisdiction over Defendants.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Second, although the Pennsylvania Rules of Civil Procedure permit pre-complaint discovery pursuant to Rule 4003.8, such Rule only permits discovery that satisfies two (2) conditions: (i) the information sought must be material and necessary to the filing of the complaint; and (2) the discovery must not cause unreasonable annoyance, embarrassment, oppression, burden or expense to any person or party. *See* Pa. R. Civ. P. 4003.8. The Document Requests fail to satisfy these primary requirements of Rule 4003.8 for the reasons set forth hereafter.

And, third, the Document Requests violate Philadelphia Local Civil Rule of Procedure that requires the filing of a motion by a party seeking to take pre-complaint discovery. *See* Phila. Cnty. Rule 4003.8 ("a request for pre-complaint discovery … **must comply with** all requirements of Non-Discovery Motions as set forth in Phila. Civ. R. *208.3(b)(2)") (emphasis supplied); Phila. Civ. R. *208.3(b)(2) ("All motions . . . **shall be filed** with the Office of Judicial Records … .") (emphasis supplied). Mere service of the Document Requests upon Defendants (over whom Plaintiffs cannot achieve personal jurisdiction) is insufficient to impose an obligation upon Defendants to respond and the General and Specific Objections asserted herein are being provided without waiver of the requirement that Plaintiffs file a motion in order to secure their right to substantive pre-complaint discovery.

## **GENERAL OBJECTIONS**

1.      Defendants object to each of the Document Requests on the grounds that they are all overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

2.      Defendants object to each of the Document Requests because they are all inappropriate for pre-complaint discovery and fail to satisfy the standards required by and seet forth in Rule 4003.8.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

3.    Defendants object to each of the Document Requests because Plaintiffs have not established good faith reasons why the documents requested to be produced are material and necessary to the drafting of a complaint.

4.    Defendants object to each of the Document Requests because Plaintiffs have not set forth how and why the requested materials will materially advance the drafting of a complaint.

5.    Defendants object to each of the Document Requests because Plaintiffs have failed to assert or explain why they are unable to draft a complaint without the requested discovery.

6.    Defendants object to each of the Document Requests because Plaintiffs are engaged in a "fishing expedition" and an amorphous, ambiguous and overbroad discovery process purportedly designed to detect a cause of action they lack probable cause to anticipate or support prior to the pre-complaint discovery process.

7.    Defendants object to the Document Requests because they relate to a prior pending action in Berks County, Pennsylvania, in the action styled *TDI Acquisition Sub Acquisition LLC v. Albright College*, C.C.P. Berks County, Case No. 21-04881, assigned to the Honorable J. Benjamin Nevius, and are an inappropriate attempt to circumvent the proceedings in that Court and to concoct a controversy where there is none. Moreover, the Defendants has no connection to Philadelphia County whatsoever and the effort to contrive a case in Philadelphia, where none exists, is bad faith.

8.    Defendants object to each of the Document Requests because they are all designed to cause unreasonable annoyance, embarrassment, oppression, burden or expense to Defendants.

9.    Defendants object to each of the Document Requests to the extent that they seek discovery of information or materials which (i) are protected by the attorney-client privilege, (ii) were prepared or obtained in anticipation of litigation, (iii) were prepared or obtained for the

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

benefit and at the direction of counsel, (iv) constitute work product or mental impressions of counsel, (v) are protected from disclosure by the self-evaluation privilege, the critical self-analysis privilege or the audit privilege, and/or (vi) are protected by any other applicable doctrine or privilege.

10.    Defendants object to the definitions contained in Document Requests as being overly broad, vague and inconsistent with the normal usage and meaning of the words defined therein, and/or internally inconsistent with each other.

11.    Defendants object to the definitions contained in Document Requests as being inconsistent with, and in violation of, the Pennsylvania Rules of Civil Procedure and the applicable local rules.

12.    Defendants object to each of the Document Requests as being overly broad as to time, place and scope of inquiry, unduly burdensome and not reasonably calculated to lead to the discovery of relevant or admissible evidence.

13.    Defendants object to each of the Document Requests to the extent that they seek the disclosure of private, proprietary, confidential, competitively sensitive trade secret information or sensitive financial information.

14.    Defendants' objections to each Document Request are made subject to, and without waiving, any objection to the relevancy, competency, admissibility or privilege regarding any evidence for any purpose.

15.    Defendants object to each of the Document Requests to the extent that any responses thereto may be construed as an admission by Defendants that any fact or circumstance alleged in the request for production of documents occurred or existed. Moreover, Defendants' Responses to the Document Requests are not intended to be, and shall not be construed as, an

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

agreement or concurrence with Plaintiffs' characterization of any facts or circumstances contained
in the Document Requests.

16.     The general objections asserted above shall be deemed applicable to and continuing
with respect to each of the Document Requests further responded to below. The general objections
asserted above are incorporated into each and every response set forth herein. Such general
objections are neither waived nor in any way limited by any response to any specific request.
Defendants reserve the right to amend, supplement or alter their Responses to the Document
Requests at any time hereafter.

## SPECIFIC OBJECTIONS & RESPONSES

1.     **Objection**. In addition to the general objections set forth above, this Document
Request is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to
lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter
in any way, and is not material and necessary to the drafting of a complaint. In addition, this
Document Request is directed to different defendants and the documents requested are not in the
possession, custody or control of Defendants.

2.     **Objection**. In addition to the general objections set forth above, this Document
Request is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to
lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter
in any way, and is not material and necessary to the drafting of a complaint. In addition, this
Document Request is directed to different defendants and the documents requested are not in the
possession, custody or control of Defendants.

3.     **Objection**. In addition to the general objections set forth above, this Document
Request is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter in any way, and is not material and necessary to the drafting of a complaint.

4. **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter in any way, and is not material and necessary to the drafting of a complaint.

By way of further response, the hypocrisy inherent in this Document Request is blatant. Plaintiffs are in possession of the purported "whistleblower" documents and have reviewed them. They are currently in contempt of Judge Nevius's order in the Berks County matter to turn over the documents to both Albright College and to WCO Spectrum seven (7) days after review. Nearly three months later, Plaintiffs refuse to produce these documents, laying bare their true intention here, namely (i) circumventing the Berks County Court, (ii) misrepresenting Plaintiffs' true intentions, and (iii) forum shopping for more favorable rulings on discovery matters. Plaintiffs' behavior has compelled WCO Spectrum to file a Petition to Intervene in that matter, currently pending with the Berks County Court of Common Pleas.

Moreover, Plaintiffs themselves represented to Judge Nevius that they would return to the Berks County Court if the purported whistleblower documents supported their conclusion that additional action might need to be taken concerning WCO Spectrum and other defendants. To date, no complaint has been filed in Berks County, no amendments to the current complaint pending against Albright College have been proposed, and there are no allegations of fraud or other related conduct pending in any Court in the Commonwealth or elsewhere. The Writ served

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

on Defendants and these Document Requests are a mere ruse by Plaintiffs to attempt to conceal the obvious: Plaintiffs are engaged in a strategy to uncover strategic business information regarding all defendants named as it concerns the purchase of broadband spectrum leases in order to use that information to obtain a strategic business advantage and attempt to bully competitors out of the market, create a chilling effect on colleges and universities throughout the country, and restrict the re-sale of T-Mobile leases.

5.     **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

6.     **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

7.     **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

8.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

9.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

in the marketplace. In addition, this Document Request is directed to different defendants and the documents requested are not in the possession, custody or control of Defendants.

10.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

11.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, and not material and necessary to the drafting of a complaint. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

12.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

to the *Albright* matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

13.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter in any way, and is not material and necessary to the drafting of a complaint.

14.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter in any way, and is not material and necessary to the drafting of a complaint.

15.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

16.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, is unlimited in time, is unlimited in scope, is not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, is not related to the *Albright* matter in any way, and is not material and necessary to the drafting of a complaint.

17.    **Objection**. In addition to the general objections set forth above, this Document Request is overly broad, ambiguous in its construction, unlimited in time, unlimited in scope, not reasonably calculated to lead to the discovery of relevant and/or admissible evidence, not related to the *Albright* matter in any way, not material and necessary to the drafting of a complaint, and seeks information in the possession of third parties. Further, this Document Request seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Moreover, this Document Request makes clear that Plaintiffs' true intent in seeking this discovery is the acquisition of Defendants' internal privileged business strategy, if any, with regard to the purchase of licenses to provide a strategic advantage to Plaintiffs in the marketplace.

Respectfully submitted,

**McCABE LAW GROUP, LLC**

**By:**    */s/ Gerard M. McCabe*
Gerard M. McCabe, Esquire
Attorney I.D. No. 66564
42 Hawkswell Circle
Oreland, PA 19075
(215) 965-0004 (Direct)
(215) 965-0013 (Fax)
gmccabe@mccabe.law

**Attorneys For SCH, LLC, and Ashok Vasudevan**

Dated:  June 15, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

I, Gerard M. McCabe, Esquire, hereby certify that, on the 15th day of June, 2022, I caused a copy of the foregoing Objections to Plaintiffs' First Set of Requests for Production of Documents to be served by email only on the following attorney for Plaintiffs:

> Steven J. Engelmyer, Esquire
> Kleinbard LLC
> 1717 Arch Street, Fifth Floor
> Three Logan Square
> Philadelphia, PA 19103
> sengelmyer@kleinbard.com
>
> *Attorney for Plaintiffs*
>
> Maurice R. Mitts, Esquire
> Mitts Law, LLC
> 1822 Spruce Street
> Philadelphia, PA 19103
> mmitts@mittslaw.com
>
> *Attorneys for Defendants WCO Spectrum, LLC,*
> *Academia Spectrum LLC, Gary Winnick, Carl*
> *Katerndahl, Tyler Krantz and Andreas Bitzakaris*

> /s/ *Gerard M. McCabe*
> Gerard M. McCabe, Esquire

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 14

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

| | |
|---|---|
| **From:** | Poteat III, R. Kennon |
| **To:** | Maurice Mitts; gmccabe@mccabe.law |
| **Cc:** | Brown, Kenneth; Hurley, Denis; Steve Engelmyer |
| **Subject:** | T-Mobile et al. v. WCO Spectrum et al., No. 00629 (Court of Common Pleas, Philadelphia County) |
| **Date:** | Tuesday, July 12, 2022 10:34:27 AM |

Dear Mr. Mitts and Mr. McCabe:

We are in receipt of your clients' responses and objections to Plaintiffs' document requests in the above-captioned case.  We understand, based on those objections, that Defendants are refusing to produce any documents in response to those requests.  But we'd like to schedule a meet and confer call to discuss.  Are you available this Thursday or Friday?  Please let us know, and we'll get a calendar invite circulated.

Thanks,
Kennon Poteat

**R. Kennon Poteat III**
**Williams & Connolly LLP**
680 Maine Avenue, S.W., Washington, DC 20024
202-434-5699  |  vcard  |  www.wc.com/kpoteat

# Exhibit 15

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

R. KENNON POTEAT III
(202) 434-5699

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 3, 2022

**VIA EMAIL**

Maurice Mitts
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
mmitts@mittslaw.com

Gerard McCabe
McCabe Law Group, LLC
42 Hawkswell Circle
Oreland, PA 19075
gmccabe@mccabe.law

Re:    *T-Mobile US Inc., et al. v. WCO Spectrum, LLC et al.*, May 2022 Term,
No. 00629 (Philadelphia Cty. Ct. of Common Pleas)

Dear Mr. Mitts and Mr. McCabe:

On behalf of Plaintiffs, we write in furtherance of the July 26 "meet and confer" concerning Defendants' refusal to produce any documents in response to Plaintiffs' requests in this matter, and in response to Mr. Mitts' e-mail that followed on July 27. As discussed below, that call was entirely unproductive given Defendants' unwillingness to compromise on any requests. Defendants appear to be employing the same tactics that Defendants WCO Spectrum and Academia Spectrum have employed in a separate litigation in Berks County, where they have obstructed and delayed third-party discovery against them for nearly a year and have made clear that they will produce documents only when ordered by the court. Defendants' continued, wholesale obstruction—this time of the targeted pre-complaint discovery that Plaintiffs seek in this action—leaves Plaintiffs no choice but to file a motion to compel.

First, our July 26 call got off to a bad start when Mr. Mitts characterized Plaintiffs' claims as "salacious" and "tabloid fodder," and claimed he did not know what Plaintiffs' action could possibly concern. Mr. Mitts, however, knows exactly what this case is about. He knows from numerous public and non-public disclosures that a whistleblower emerged who has alleged that WCO, its executives, and certain related entities and executives (all Defendants here) are engaged

WILLIAMS & CONNOLLY LLP

August 3, 2022
Page 2

in a nationwide fraud against T-Mobile.  Specifically, he knows that the whistleblower (a former senior insider at WCO) told TDI's counsel that the scheme involved WCO (i) making sham offers to purchase licenses from EBS spectrum licensees in order to trigger T-Mobile's Rights of First Refusal ("ROFRs") to buy the licenses and (ii) collecting kickbacks from the licensees (~10% of the purchase price) when T-Mobile exercised its ROFRs and purchased the licenses.  Through this scheme, WCO, with the help of the other Defendants, has improperly siphoned tens of millions of dollars from T-Mobile and its subsidiaries.  Mr. Mitts also knows that the whistleblower provided internal WCO documents to Plaintiffs' counsel—which we have now provided to Mr. Mitts— that support these allegations, including with respect to the sham financing purportedly provided by Defendants SCH LLC and Ashok Vasudevan.  Those documents include a four-page narrative prepared by the whistleblower—titled "Gary Winnick Fraud"—that lays out the fraud in detail and sets forth the basis for the whistleblower's knowledge about the scheme.  Mr. Mitts' feigned incomprehension rang particularly hollow because we appeared in court on July 25 (the day before our call) and discussed the whistleblower's allegations of fraud and supporting documents for more than an hour.

Mr. McCabe suggested that he did not know what the writ of summons could concern either, but we find this hard to believe.  We understand that Mr. McCabe is a former law partner of Mr. Mitts and that he came to represent SCH and Vasudevan because of that relationship.  As a result, we would have expected Mr. Mitts to have briefed Mr. McCabe about the fraud allegations based on publicly available materials.  In any event, to the extent this has not happened, we have attached Plaintiff TDI's briefs that address the whistleblower allegations that were filed on the public dockets in Delaware and Virginia concerning third-party subpoenas to WCO and Academia.  *See* Attachs. A & B.

Second, Mr. Mitts' suggestion that Pennsylvania law does not permit pre-complaint discovery in circumstances like these is baseless.  A case like this one—with credible allegations from a whistleblower and supporting documentation—is tailor-made for the kind of targeted pre-complaint discovery Plaintiffs have served here.  While Defendants may believe that Plaintiffs have enough information to file a complaint for fraud against Defendants, which is what Mr. Mitts represented on our call when arguing that discovery of this nature was not needed, we believe the limited discovery we seek will facilitate the preparation and filing of Plaintiffs' complaint and would lead to a more efficient litigation.

Lastly, we conferred in good faith and answered your questions appropriately, with significant detail about the potential claims that are at issue.  Mr. Mitts' e-mail oddly pretends that none of that happened.  No matter, what is clear from our "meet and confer" is that Defendants will not agree to produce any documents in response to Plaintiffs' requests short of a court order. Instead, Defendants are simply trying to draw this process out by asking questions to which they know the answers and by trying to impugn and dispute the whistleblower's allegations, neither of which is productive at this stage of the dispute.  Accordingly, please let us know by Friday, August 5, whether Defendants will agree to produce any documents in this action.  If you do not agree to do so by that date, we will understand that Defendants are standing on their objections, and we will take appropriate measures to enforce Plaintiffs' document requests.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

WILLIAMS & CONNOLLY LLP

August 3, 2022
Page 3

Sincerely,

*/s/ R. Kennon Poteat III*

R. Kennon Poteat III
*Counsel for Plaintiffs*

cc:    Steven Engelmyer, Esq.
       *Counsel for Plaintiffs*

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# **Attachment A**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

EFiled:  May 20 2022 10:55AM EDT
Transaction ID 67641411
Case No. K21M-08-007 JJC

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| TDI ACQUISITION SUB, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>ALBRIGHT COLLEGE,<br><br>       Defendant. | **OUT-OF-STATE SUBPOENA IN A CIVIL ACTION**<br><br>K21M-08-007 (JJC)<br><br>C.A. No. 21-04481<br>(pending in Berks County, Pennsylvania) |

**PLAINTIFF TDI ACQUISITION SUB LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM WCO SPECTRUM LLC**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

It is now more than eight months since Plaintiff TDI Acquisition Sub LLC served its subpoena on WCO Spectrum LLC, and WCO has yet to produce a single document.  This dispute started with WCO refusing to meet and confer properly and filing a frivolous motion to quash, arguing this Court lacked the power to enforce a subpoena on WCO, a Delaware LLC, which WCO lost.  Rather than meeting and conferring like this Court ordered, WCO appealed the order denying its motion, which it also lost.  Having lost twice here, WCO went to Pennsylvania to seek a protective order, claiming this case was moot because it disclaimed any intention of pursuing defendant Albright College's FCC license, which spawned the underlying litigation.    But  WCO  ignored  the  allegations  made  by  a  self-described whistleblower, who asserted that WCO and certain EBS spectrum licensees like Albright are engaged in a scheme to defraud TDI and its parent company, T-Mobile. WCO's alleged scheme involves making sham offers to purchase licenses, which T-Mobile leases from thousands of educational institutions across the country, in order to trigger T-Mobile's Right of First Refusal ("ROFR") and collect kickbacks on the purchase amounts when T-Mobile exercises its ROFR.  Based on the whistleblower allegations, the Pennsylvania court declined to interfere with TDI's outstanding subpoenas, including this one.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Because WCO has refused to produce the requested discovery and instead tries to conceal documents that bear on whether it is committing a fraud, TDI is forced to move this Court to compel production.

## RELEVANT BACKGROUND

1.    TDI's subpoena contains 15 document requests, each of which is relevant to the whistleblower allegations.  Ex. 1.

2.    In pursuing discovery, TDI has sought documents from Albright, WCO, and WCO's consultant, Academia Spectrum LLC, regarding the circumstances surrounding and legitimacy of WCO's offer to purchase Albright's license.  Specifically, from WCO, TDI seeks documents and communications regarding Albright (Requests 1-6) and the legitimacy of WCO's purported business in pursuing EBS licenses like Albright's (Requests 7-15).  *See* Ex. 1.

3.    Since being served in August 2021, WCO has engaged in a pattern of obstruction and delay.  WCO started by ignoring the deadline to respond.  *See* Ex. 2. WCO then served boilerplate general objections, and refused to engage in meet and confers.  *See* Ex. 3.  WCO next filed a motion to quash, arguing that it—a Delaware LLC—was beyond a Delaware court's subpoena powers.  Mot. to Quash (Oct. 21, 2021).  After that motion was denied, WCO again refused to confer over the particular requests or produce a single document, and then shut that whole process down by appealing the order denying its motion to quash.  While its appeal was

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

pending here, WCO filed an improper (and unsuccessful) motion for protective order in Pennsylvania, seeking to abrogate this Court's order. *See* Ex. 4 Tr. 34:15-16.

4.    But during WCO's machinations, a self-described whistleblower emerged and provided information and documents to TDI's Pennsylvania counsel. The whistleblower alleged specifically that WCO and certain educational institutions are defrauding TDI and T-Mobile through a scheme involving offers to purchase EBS licenses, including the one held by Albright. Specifically, the whistleblower alleged that WCO was making sham offers to purchase licenses from educational institutions across the country and pocketing kickbacks from them in the event that T-Mobile exercised its ROFR to acquire the license at issue. TDI filed a motion for permission to review the documents, which was recently given. That court also refused to grant WCO's motion for a protective order. It disagreed with WCO's argument that the case is moot because it is no longer pursuing the Albright license, as the whistleblower's allegations remain live. The court ruled that it would "not block[] subpoenas," *id.* Tr. 34:15-16, and that it would permit TDI to seek discovery about any potential fraud from WCO and its consultant Academia.

5.    In a parallel proceeding in Virginia, TDI sought to enforce the subpoena on Academia, which also had been refusing to produce documents. On March 22, the court there ordered Academia to produce all documents regarding Albright, Ex. 5 Tr. 78:4-79:17, but stated that seeking broader documents about WCO's business

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

pursuing EBS licenses was "more an issue for WCO and [TDI's] discovery in the WCO" proceeding in this Court, *id*. Tr. 62:21-24.

6.     In the wake of the Virginia court's order, TDI resumed the meet-and-confer process with WCO.  Only then did WCO agree to withdraw its objections to Requests 1-6 and promise to produce all documents and communications regarding Albright.  *See* Ex. 6.  But more than a month has passed and WCO still has not produced a single document.  WCO also refuses to produce any documents in response to Requests 7-15, arguing that it should not have to produce any documents that do not strictly relate to Albright, even though they may relate more broadly to the legitimacy of its business in pursuing EBS licenses.  *Id*.

7.     Because of all this, TDI must move to compel.

## ARGUMENT

8.     WCO is wrongfully withholding responsive documents that bear on whether WCO and licensees like Albright are defrauding TDI and T-Mobile, as alleged by the whistleblower.  Indeed, these requests concern whether WCO's business in pursuing EBS licenses, including Albright's, is legitimate, or simply a ruse to procure kickbacks when T-Mobile exercises its ROFR to buy them.

9.     Requests 1-6 could not be more straightforward and seek all documents and communications regarding Albright that are plainly relevant to TDI's claims. *See* Ex. 1.  These requests, in particular, seek documents regarding WCO's

4

communications with Albright, WCO's internal communications and those with its consultants about Albright, WCO's documents analyzing a potential Albright transaction, and WCO's analysis of T-Mobile's rights and anticipated reactions to such an offer. Because WCO cannot seriously object to their relevance, especially after the Virginia court ordered production in response to similar requests, WCO has withdrawn its objections to them. But despite having done so, WCO has failed to produce any such documents to TDI. WCO has not responded to TDI's request for a status update on such production. Out of an abundance of caution, TDI thus seeks an order compelling such production.

10.    Requests 7-11 seek documents directly concerning the legitimacy of WCO's business in pursuing EBS licenses, which bear directly on the whistleblower's allegations. *See* Ex. 1. Specifically, these requests seek documents and communications related to WCO's current and contemplated role in the telecommunications industry, all of which target information about the actual or intended use (if any) of any such licenses going forward. Request 11, in particular, encompasses documents about the validity of any supposed financing arrangements to back WCO's purported purchase offers. In other words, these requests all seek documents bearing on whether WCO aims to purchase EBS licenses to create or facilitate a telecommunications service, or for some other legitimate reason, or are shams intended to trigger T-Mobile's ROFR and precipitate kickbacks to WCO.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

11.    The rest of the requests seek documents and communications underlying representations WCO made to certain licensees when it was purportedly pursuing transactions with them. Request 12 seeks documents related to WCO's representation *to Albright* in its April 30, 2021 offer letter that "principals of WCO have sourced and deployed billions of dollars to fund … Wireless Telecommunications Operations." Ex. 1. The veracity of, and any basis for, that statement bears on whether WCO's offer was a fraud, as the whistleblower alleges.

12.    And Requests 13-15 seek documents related to WCO's representations to other licensees that (i) it "is a specialist in financing and operating telecommunications assets and companies"; (ii) it "has previously been active in the telecom industry"; and (iii) its founders' companies "have consistently received FCC transfer approvals." Ex. 1. Again, these documents bear directly on whether WCO is committing a fraud on TDI and T-Mobile, as it probes the basis of various assertions about its business in pursuing discussions with licensees.

13.    TDI will be prepared to address each of these requests at a hearing.

Of Counsel:                          BAYARD, P.A.

WILLIAMS & CONNOLLY LLP              */s/ Peter B. Ladig*
Kenneth J. Brown                     Peter B. Ladig (#3513)
Denis R. Hurley                      600 N. King Street, Suite 400
680 Maine Avenue SW                  Wilmington, Delaware 19899
Washington, DC 20024                 (302) 655-5000
(202) 434-5000                       Attorneys for TDI Acquisition Sub LLC

Dated: May 20, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

|  |  |
|---|---|
| TDI ACQUISITION SUB, LLC, | **OUT-OF-STATE SUBPOENA IN A CIVIL ACTION** |
| Plaintiff, | |
| | K21M-08-007 (JJC) |
| v. | |
| | C.A. No. 21-04481 |
| ALBRIGHT COLLEGE, | (pending in Berks County, Pennsylvania) |
| Defendant. | |

**CERTIFICATE OF SERVICE**

I, Peter B. Ladig, hereby certify that on May 20, 2022, I caused a true and correct copy of the foregoing Plaintiff TDI Acquisition Sub LLC's Motion to Compel Production of Documents from WCO Spectrum LLC to be served upon the following parties via FileandServe Express:

> Ryan M. Ernst, Esquire
> 1204 N. King Street
> Wilmington, DE 19801

> */s/ Peter B. Ladig*
> Peter B. Ladig (#3513)

Dated: May 20, 2022

EFiled:  May 20 2022 10:55AM EDT
Transaction ID 67641411
Case No. K21M-08-007 JJC

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

TDI ACQUISITION SUB, LLC,

         Plaintiff,

v.

ALBRIGHT COLLEGE,

         Defendant.

**OUT-OF-STATE SUBPOENA IN A CIVIL ACTION**

K21M-08-007 (JJC)

C.A. No. 21-04481
(pending in Berks County, Pennsylvania)

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2022, upon consideration of TDI Acquisition Sub LLC's Motion to Compel Production of Documents from WCO Spectrum LLC, it is hereby ORDERED and DECREED that the Motion is GRANTED.

 

_____

                      Clark, J.

EFiled:  May 20 2022 10:55AM EDT
Transaction ID 67641411
Case No. K21M-08-007 JJC

# Exhibit 1

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# SUPERIOR COURT OF THE STATE OF DELAWARE

TDI ACQUISITION SUB LLC,
        Plaintiff

        v.

ALBRIGHT COLLEGE,
        Defendant.

**OUT OF STATE
SUBPOENA IN A CIVIL CASE**

K21M-08-007 JJC

Civil Action No.:  21-04481

---

**TO:**  WCO SPECTRUM, LLC c/o Cogency Global, Inc. 850 New Burton Road, Suite 201
        Dover, DE 19904

… **YOU ARE COMMANDED** to appear in the Delaware Superior Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

… **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

… **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

    See Attachment A.

| PLACE | KLEINBARD LLC c/o Eric J. Schreiner, Esq. Three Logan Square, 1717 Arch Street 5th Floor, Philadelphia, PA 19103 | DATE AND TIME |
|---|---|---|

… **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Delaware Superior Court Civil Rule 30 (b) (6).

| REQUESTING PARTY'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| SIGNATURE (FOR DELAWARE COURT USE ONLY) CLERK OF COURT  Annette 0 Ashley / MB | DATE  8-6-21 |

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# PROOF OF SERVICE

| SERVED | DATE | | PLACE |
|---|---|---|---|
| | | | |

| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
|---|---|---|
| | | |

| SERVED BY (PRINT NAME) | | TITLE |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the State of Delaware that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____     _____

DATE     SIGNATURE OF SERVER

_____

ADDRESS OF SERVER

## Superior Court Civil Rule 45, Parts C, D & E:

### (c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The Court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the Court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the Court shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iii) subjects a person to undue burden.

(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the Court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the Court may order appearance or production only upon specified conditions.

### (d) Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### (e) Contempt.

Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court.

Certification Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## ATTACHMENT A

## DEFINITIONS

1.      The term "Albright License" means Albright's license for Educational Broadband Service ("EBS") spectrum channels D1, D2, D3, and D4 under call sign WND475 in the Reading, Pennsylvania area, as granted to Albright by the Federal Communications Commission.

2.      The term "Albright Lease Agreement" means the Educational Broadband Service Long-Term De Facto Transfer Lease Agreement between TDI, as successor in interest to original signatory Nextel Spectrum Acquisition Corporation, and Albright, which was entered into on March 2, 2007.

3.      The term "all" means all or any, and the term "any" means all or any.

4.      The term "Communication" means any oral, written, or electronic exchange of words, thoughts, information, or ideas with another person. "Communication" includes statements made in person, by telephone, letter, envelope, telegram, facsimile, electronic mail, attachment to electronic mail, text message, instant message, voice mail, social media, or the Internet.

5.      The term "Complaint" means the complaint filed by TDI in this lawsuit on May 27, 2021, and any amended version thereof.

6.      The term "Computer System" means any computer software (including source code, executable code, databases and related documentation), computer firmware, computer hardware (whether general or special purpose), or any other automated, computerized, and/or software system or device, including any item, device, or system provided in a "software-as-a-service," "cloud computing," or hosted arrangement.

7.      The term "concerning" means referring to, relating to, describing, demonstrating, evidencing, reflecting, or constituting.

1

8.     The terms "Defendant" and "Albright" mean Albright College, including any of its divisions, subsidiaries, affiliates, directors, officers, principals, employees, attorneys, agents, and representatives.

9.     As used herein, the term "Document" shall be interpreted in the most comprehensive and inclusive sense in light of  Pennsylvania Rule of Civil Procedure 4009.1(a) and includes the original and any non-identical copies (including those with any notations, marks, alterations, comments, or other changes) of any written, typed, printed or otherwise recorded matter, however produced or reproduced, of every kind and description, in whatever form (e.g., draft and final version) that are in Your actual or constructive possession, custody, care, or control, including but not limited to all writings, devices, components, computer data, computer generated Documents, computer disks or data tapes, electronically stored information ("ESI"), or any other writings or tangible things.  The Documents requested include all attachments to the specifically described Documents and all other materials that originally accompanied them. The term "Document" specifically includes ESI and all recorded or retrievable electronic data or Communications such as electronic mail (Email), metadata, voicemail messages, and attachments, and all translations thereof.

10.     The terms "includes" and "including" mean includes and including without limitation.  The terms "includes" and "including" do not limit the scope of any request.

11.     The term "Offer" shall mean any bid, proposal, or offer.

12.     The term "person" means any natural person or any legal entity, including any business entity, corporation, partnership, or association.

13.     The terms "TDI" and "Plaintiff" mean TDI Acquisition Sub LLC, a Delaware limited liability company, as well as any of its predecessors in interest, including Nextel Spectrum

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Acquisition Corporation, and all officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on behalf of any of these entities.

14.    The terms "WCO," "You," and "Your" shall mean "WCO Spectrum LLC," including its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

15.    The term "WCO's Offer" means the April 30, 2021 non-binding offer letter from WCO to Albright, including Exhibit A attached thereto, which is entitled "Material Terms for License Purchase Offer." The term "WCO's Offer" also includes any modified, supplemented, or revised version of the April 30, 2021 non-binding offer letter, and any subsequent Offer from WCO concerning the Albright License.

## **INSTRUCTIONS**

1.    You are to produce the requested Documents and Communications in accordance with the requirements of the Pennsylvania Rules of Civil Procedure, the Berks County Court Local Rules, and any other applicable laws, rules, or regulations.

2.    These requests call for all Documents and Communications within Your possession, custody, or control.

3.    If in answering any of these requests You encounter any ambiguity in construing the request or any definition or instruction relevant to the request, set forth the matter deemed ambiguous and the construction selected or used in answering the request.

4.    Documents and Communications produced in response to these requests should be produced as they are kept in the usual course of business or should be organized and labeled to

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

correspond with the categories in the request. All Documents and Communications produced in response to these requests should be Bates stamped or otherwise marked in sequential order. If there are no Documents or Communications responsive to any particular request, You should so state in writing.

5.      You must produce ESI responsive to these requests in the form in which the data is ordinarily maintained, or in a form that is reasonably usable and able to be stored or recovered with all metadata intact. Pa. R. Civ. P. 4009.1(b).

6.      References to any natural person shall be deemed to include that natural person's agents, attorneys, representatives, current and former employees, successors, and any person acting or purporting to act on that person's behalf.

7.      References to any non-natural person (e.g., a corporation, partnership, or other legal entity) shall be deemed to include any of that entity's predecessors or successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, or members and for each of the foregoing, any present or former trustees, officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

8.      This subpoena calls for the production of all responsive Documents and Communications in Your possession, custody, or control, or in the possession, custody, or control of Your employees, divisions, representatives, and agents or other persons acting on Your behalf, without regard to the physical location of such Documents or Communications.

9.      In responding to these requests, include Documents and Communications obtained on Your behalf by Your counsel, employees, agents, or any and all other persons acting on Your behalf. If Your response is that the Documents and Communications are not within Your possession, custody, or control, describe in detail the unsuccessful efforts You made to locate each

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

such Document and Communication.  If Your response is that Documents are not under Your control, identify the name and address of the person(s) in control of, and the location of, the Documents or Communications.

10.    These requests are continuing in character and require further response if additional Documents or Communications are obtained or located after the time of initial production.  Pa. R. Civ. P. 4007.4.

11.    Each request contemplates production of all Documents or Communications in their entirety. If only a portion of a Document or Communication is responsive to one or more requests, the Document or Communication shall be produced in its entirety.

12.    If any Document or Communication is withheld in whole or in part for any reason including a claim of privilege, set forth separately with respect to each:

       a.    each and every ground of privilege or protection claimed;

       b.    the author and all recipients;

       c.    the type of Document or Communication;

       d.    the Document or Communication's general subject matter;

       e.    the Document or Communication's date; and

       f.    any other information sufficient to enable a full assessment of the applicability of the privilege or protection claims, as required by Pennsylvania Rule Civil Procedure 4009.12(b)(2).

13.    To the extent that You assert that a Document or Communication contains both information that should be protected from disclosure and non-privileged information, the non-privileged portions of the Document or Communication must be produced.  For each, indicate the

5

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

portion of the Document or Communication withheld by stamping the words "MATERIAL REDACTED" in an appropriate location that does not obscure the remaining text.

14.    The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope.

15.    To the extent not otherwise defined, all words shall have their usual and ordinary meaning as the context of the request would indicate.

16.    If You believe that Your response to any request is incomplete, then You must respond with all responsive information of which You are now aware.

17.    In accordance with 231 Pa. Code § 4009.23, You are required to complete the attached Certificate of Compliance with Subpoena to Produce Documents or Things Pursuant to Rule 4009.23, which is also attached here.

## DOCUMENTS TO BE PRODUCED

1.    All Documents and Communications concerning WCO's Offer.

2.    All Documents and Communications concerning WCO's expressions of interest in making an Offer to purchase the Albright License.

3.    All Communications with Albright.

4.    All Documents and Communications concerning the Albright License.

5.    All Documents and Communications concerning the Albright Lease Agreement, including TDI's rights under the Albright Lease Agreement and Albright's obligations under the Albright Lease Agreement.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

6.     All Documents and Communications concerning the requirement in Section 10(c) of the Albright Lease Agreement that any assignee of the Albright License must agree to assume all of Albright's obligations and acknowledge TDI's rights under the Albright Lease Agreement.

7.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated offering, provision, or delivery of any telecommunications service in the United States.

8.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition of (except a less than 1% interest in a publicly traded company) any interest in any entity which offers, provides, or delivers any telecommunications service within the United States.

9.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated grant of the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

10.     All Documents and Communications concerning WCO's affiliation with any entity which has granted, proposed, planned, or contemplated granting the right or option to use EBS or BRS spectrum to any provider of a telecommunications service within the United States.

11.     All Documents and Communications concerning WCO's actual, proposed, planned, or contemplated acquisition or use of any EBS and BRS spectrum license.

12.     All Documents and Communications concerning WCO's assertion that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

13.    All Documents and Communications concerning Your claim that WCO is a "specialist in financing and operating telecommunications assets and companies."

14.    All Documents and Communications concerning Your claim that WCO "has previously been active in the telecom industry."

15.    All Documents and Communications concerning Your claim that Gary Winnick's companies "have consistently received FCC transfer approvals."

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 2

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

| From: | Hurley, Denis |
|---|---|
| To: | "Ckaterndahl@winnickco.com"; "mbloch@winnickco.com" |
| Cc: | "info@wcospectrum.com"; Mandernach, Christopher; Poteat III, R. Kennon; "rjackson@wcospectrum.com"; "arusso@wcospectrum.com"; Hurley, Denis |
| Subject: | TDI Acquisition Sub LLC v. Albright College, No. 21-4881 – Subpoena to WCO Spectrum LLC |
| Date: | Thursday, September 16, 2021 5:26:27 PM |
| Attachments: | WCO Subpoena Cover Letter.pdf<br>WCO Pennsylvania Subpoena.pdf<br>WCO Delaware Superior Court Subpoena Form.pdf<br>Affidavit of Service re WCO Spectrum, LLC.PDF |

Carl:

On August 19, 2021, plaintiff in the above action, TDI Acquisition Sub LLC, served WCO Spectrum LLC, via its registered agent, with a subpoena to produce documents and things. The subpoena was issued by Delaware Superior Court in Kent County, and it incorporates the terms of a subpoena issued by the relevant Pennsylvania state court in the above action. The cover letter, Pennsylvania subpoena, Delaware subpoena, and affidavit of service are attached for your reference.

Under Delaware law, the deadline for WCO to object to the subpoena was 14 days from the date of service (September 2, 2021). See Del. Super. Ct. Civ. R. 45(c)(2)(B). The deadline set in the subpoena for the production of documents under Pennsylvania law was 20 days from the date of service (September 8, 2021). Both deadlines have now passed.

Despite the passage of these deadlines, we have not received any documents from WCO in response to the subpoena. Please therefore confirm your receipt of this communication immediately, and produce the documents requested by the subpoena no later than **Monday, September 20, 2021**. TDI reserves all rights in the meantime.

I am available to discuss by telephone should you have questions.

Regards,

**Denis R. Hurley**
**Associate | Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
(P) 202-434-5374 | (F) 202-434-5029
dhurley@wc.com | www.wc.com

# **Exhibit 3**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

_____
                                                :
TDI Acquisition Sub, LLC,                       :
                                                :
            Plaintiff,                          :
                                                :
            v.                                  :
                                                :
Albright College,                               :
                                                :
            Defendant.                          :
_____        :

## <u>OBJECTIONS TO SUBPOENA</u>

WCO Spectrum, LLC ("Respondent") hereby objects to the subpoena (the "Subpoena"), issued by Plaintiff, TDI Acquisition Sub, LLC ("Plaintiff"), in regard to the matter of *TDI Acquisition Sub, LLC v. Albright College*, and Respondent avers as follows:

1.      These Objections are made with respect to the Plaintiff's Subpoena and each and every definition, instruction, and request contained therein.  The assertion of the same, similar, or additional objections does not waive any of Respondent's Objections.

2.      Respondent objects to Plaintiff's Subpoena because the issuing Court lacks jurisdiction over the matter.

3.      Respondent objects to Plaintiff's Subpoena because it is facially defective, and fails to conform to the applicable Rules of Civil Procedure.

4.      Respondent objects to Plaintiff's Subpoena due to ineffective and improper service.

5.      Respondent objects to Plaintiff's definitions, instructions and Document Requests (collectively referred to as "Document Requests") in the Subpoena to the extent that they seek to impose unfair, overly broad and/or unreasonable obligations upon Respondent beyond the requirements of the applicable Rules of Civil Procedure and any other applicable rule or law.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

6.      Respondent objects to Plaintiff's Document Requests to the extent that they seek disclosure of information protected from discovery by the attorney-client privilege, work-product doctrine, spousal privilege, self-critical analysis or investigative privilege, consulting expert exemption or any other privilege or exemption, or to the extent the Document Requests seek disclosure of confidential, proprietary or trade secret information protected from disclosure by applicable law.  To the extent that any information is inadvertently provided, which information is properly the subject of the attorney-client privilege or the work-product privilege, such disclosure is not to be construed as a waiver of the attorney-client privilege or the work-product privilege.  In the event that inadvertent disclosure occurs, Plaintiff shall make no use of the contents thereof, nor premise any further discovery on information learned therefrom.

7.      Respondent objects to Plaintiff's Document Requests to the extent that they are inaccurate, ambiguous, misleading or argumentative, assume facts that have no evidentiary basis, are unduly vague and incomprehensible or are unreasonably cumulative or duplicative.

8.      Respondent objects to Plaintiff's Document Requests to the extent that they are irrelevant and/or seek information not reasonably calculated to lead to the discovery of admissible evidence.

9.      Respondent objects to Plaintiff's Document Requests to the extent that they call for or seek legal conclusions and/or analysis.

10.     Respondent objects to Plaintiff's Document Requests to the extent that they seek documents and/or information not within Respondent's knowledge, possession, custody or control.

11.     Respondent objects to Plaintiff's Document Requests to the extent that they seek any document and/or information that is readily available to Plaintiff from its own records, from

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

a party to the litigation or is obtainable from publicly available sources that are more convenient, less burdensome and/or less expensive than if obtained from Respondent.

12.     By objecting to Plaintiff's Document Requests, Respondent specifically does not waive any rights under applicable statutes or laws, and does not consent to any court's jurisdiction.  No incidental or implied admissions are intended by the responses herein.  The fact that Respondent has objected to any Document Request herein is not intended and shall not be construed as a waiver of any part of any objection, whether general or specific.  In particular, Respondent does not in any way waive any objection but, rather, intends to preserve and does preserve all objections as to competency, relevancy, materiality and admissibility, any right to object to any use of the responses herein in any subsequent proceedings, including the trial of this or any action, all objections to vagueness, broadness and ambiguity, and all rights to object on any ground to any further discovery in this action.

13.     Respondent expressly reserves its right to supplement or modify its objections with such pertinent information as it may hereafter discover and will do so to the extent required by the applicable Rules of Civil Procedure and any other applicable rule or law.  Respondent also expressly reserves the right to raise supplemental objections.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# **Exhibit 4**

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
TDI ACQUISITION SUB LLC       :   In the Court of Common Pleas
              Plaintiff       :   of Berks County, Pennsylvania
                              :   Civil Action Law
         vs.                  :
                              :
                              :
ALBRIGHT COLLEGE              :
              Defendant       :   No. 21-04881
                     _____
```

HEARING
Monday, March 21, 2022
Reading, Pennsylvania
_____

Before THE HONORABLE J. BENJAMIN NEVIUS, Judge
_____

APPEARANCES:

```
For the Plaintiff:    STEVEN J. ENGELMYER, ESQUIRE
TDI Acquisition       1717 Arch Street, 5th Floor
Sub, LLC              Philadelphia, Pennsylvania 19103


                      KENNETH J. BROWN, ESQUIRE
                      725 Twelfth Street, N.W.
                      Washington, D.C. 20005

For the Defendant:    PETER F. SCHUCHMAN, JR, ESQUIRE
Albright College      2640 Westview Drive
                      Wyomissing, Pennsylvania 19610



For nonparty WCO:     MAURICE R. MITTS, ESQUIRE
Spectrum, LLC         1822 Spruce Street
                      Philadelphia, Pennsylvania 19103



DISTRIBUTION:         Original and once (1) copy filed with
                      the Office of the Prothonotary to be
                      distributed to Attorney Mitts upon
                      payment of balance due and owing.


                      ANGELA ROTKISKE
                   Official Court Reporter
```

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
 1   (Reading, Pennsylvania, Monday, March 21, 2022, at 2 p.m.)
 2              (REPORTER'S NOTE:  At the direction of the
 3   Trial Judge, this transcript shall be considered as
 4   containing an exception to every ruling by the Court.)
 5              THE COURT:  All right.  This is civil docket
 6   21-4881.  This is the time and place for a sort of all
 7   purposes conference all hands on deck with the various party
 8   and nonparty participants in this proceeding.  We have Mr.
 9   Schuchman on behalf of Albright College.  We have Mr.  Brown
10   and Mr.  Engelmyer on behalf of Plaintiffs as well Mr.
11   Mitts on behalf of nonparty, WCO Spectrum, LLC.  And after
12   reading all of the paperwork it appears to be really between
13   a battle between WCO and TDI is really what's going on and
14   Albright sort of in the middle if that's an accurate --
15              MR. SCHUCHMAN:  I have strategically placed
16   myself, Your Honor.
17              THE COURT:  Physically in between.
18              MR. SCHUCHMAN:  Yes.
19              THE COURT:  So I had Mr.  Mitts, I don't think
20   you were a participant in the first conference call that I
21   had with counsel in this a few weeks ago, I finally have had
22   an ability to get up to speed on Judge Rowley's cases.  I'm
23   still transitioning out from assignments I've had
24   previously.  This one is -- and we can go off the record.
25              (WHEREUPON, discussion occurred off the
```

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

1  shows something else that involves WCO maybe WCO comes in

2  and Albright is out.  I don't know.

3          But my view is, again, if we have a small

4  nonprofit college here that really didn't do anything wrong

5  we need to have an opportunity for them to extricate

6  themselves from this as soon as possible and let the two big

7  boys in the room fight each other.  So take a look at your

8  documents.  I will give you an order to that effect.  I will

9  hold on issuing an order on the protective motion until I

10 can take a look at some of the stuff that you submitted.

11 All right.  Yes?

12          MR. BROWN:  May we continue pursuing the

13 subpoenas to gather the additional information that we are

14 looking for?

15          THE COURT:  I'm not blocking any subpoenas

16 that have already gone out.  Sounds like you are already

17 talking about that with another court, a court of

18 jurisdiction tomorrow.

19          MR. BROWN:  Two actually.

20          THE COURT:  Two.  You are dealing in Delaware

21 as well?

22          MR. BROWN:  Not tomorrow.

23          THE COURT:  Okay.  I will let you guys fight

24 that out with those particular courts.  Go ahead.

25          MR. MITTS:  Your Honor, the first thing is if

34

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 5

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

```
VIRGINIA:  IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA
           BEACH

_____
TDI ACQUISITION SUB, LLC,   :
                 Plaintiff, :
                            :
v.                          :   CASE NUMBER:
                            :   CL21-3972
ALBRIGHT COLLEGE,           :
                 Defendant. :
_____


              HEARD BEFORE THE HONORABLE

              PATRICIA L. WEST, JUDGE


            MARCH 24, 2022 - 2:10 P.M.


              VIRGINIA BEACH, VIRGINIA
```

KELLY A. ROWE, CCR
OLD DOMINION REPORTING
(757) 650-8546
kellyrowe305@gmail.com

APPEARANCES:

WILLIAMS & CONNOLLY, L.L.P.
By:  Denis R. Hurley, Esquire,
By:  R. Kennon Poteat, III, Esquire,
725 Twelfth Street NW
Washington, D.C. 20005
dhurley@wc.com
kpoteat@wc.com
Pro hac vice counsel for TDI Acquisition, LLC.

HUNTON ANDREWS KURTH
By:  Kevin J. Cosgrove, Esquire
500 East Main Street, Suite 1301
Norfolk, Virginia 23510
kcosgrove@hunton.com
Counsel for TDI Acquisition, LLC.

DURRETTE, ARKEMA, GERSON & GILL, P.C.
By:  Wyatt B. Durrette, Jr., Esquire,
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
wdurrette@dagglaw.com
Counsel for Academia Spectrum, LLC.

MITTS LAW, LLC
By:  Maurice R. Mitt, Esquire,
1822 Spruce Street
Philadelphia, Pennsylvania 19103
(215)866-0112
mmitts@mittslaw.com
Counsel for Academia Spectrum.

KELLY A. ROWE, CCR
OLD DOMINION REPORTING
(757) 650-8546
kellyrowe305@gmail.com

3

```
1            (Court reporter duly sworn.)
2
3            THE COURT:  We are here in matter of TDI
4    Acquisition versus Albright College.  This is in
5    reference to a subpoena duces tecum that was issued to
6    a Virginia corporation or established in Virginia,
7    Academia.
8            So who do we have present today?  If we can
9    just go down the line.  This is the TDI -- yeah, TDI
10   side.
11           MR. HURLEY:  Yes, Your Honor.  Denis Hurley
12   with Williams & Connolly.
13           THE COURT:  Your name again?  I'm sorry.
14           MR. COSGROVE:  Kevin Cosgrove, Hunton,
15   Andrews, Kurth.
16           THE COURT:  What was your first name -- I
17   mean your second name?
18           MR. HURLEY:  Denis Hurley.
19           THE COURT:  Hurley.  All right.
20           MR. POTEAT:  And good afternoon, Kennon
21   Poteat of Williams & Connolly.
22           THE COURT:  I think you argued last time.
23           MR. POTEAT:  I did.
24           THE COURT:  Okay.
25           MR. MITTS:  Good afternoon, Your Honor.  Good
```

4

```
1    to see you.  Maurice Mitts on behalf of Academia.
2            THE COURT:  Smitts?
3            MR. MITTS:  Mitts, M-I-T-T-S.
4            THE COURT:  Okay.
5            MR. DURRETTE:  And Wyatt Durrette, Your
6    Honor, on behalf of Academia.
7            THE COURT:  Okay.  And I'm going to put some
8    notes down that help me real quick on this.  We have --
9    let's see.  And just so that I can keep everything
10   straight, I'm going to go through this and make sure I
11   have this right.  I just do a little chart for me to
12   follow.
13           TDI had a contractual relationship with
14   Albright.  And then WCO had a bid, whether it's a bona
15   fide bid or bona fide competing entity with Albright as
16   well.  And then WCO has some relationship with
17   Academia, and those are the records that TDI is trying
18   to get.
19           MR. DURRETTE:  That's right, Your Honor.
20           THE COURT:  And the last time we were here --
21   well, the first time we were here the Court determined
22   that Virginia was an appropriate place for the subpoena
23   duces tecum to issue.  We came back.  I had asked
24   everyone to try to work out their differences on
25   discovery now that we'd established jurisdiction.  And
```

**61**

1  stamped Academia 070.
2         So number one, it's not true they are a
3  competitor. Number two, the documents that go to that
4  subject have been produced. So I understand that they
5  have a wish.
6         THE COURT: Okay. Let me just be clear about
7  this. I'm not asking — well, I'm going to ask you —
8  and I'm not saying that you have to turn anything over,
9  but does Academia have any prior or current
10 relationship with WCO involving some other entities?
11        MR. MITTS: I think they do. We wouldn't be
12 having this conversation if this was a one-trick pony.
13 I think they do.
14        THE COURT: Okay. So —
15        MR. MITTS: And that's why it is not
16 pertinent because that has nothing to do with whether
17 or not this is a bona fide offer for the Albright deal.
18 And as you correctly pointed out, we are not a
19 contender. And so when they said, well, that will put
20 the issue to rest. No, it won't put the issue to rest.
21 We have already put the issue to rest. If we are not
22 getting married to Albright, it is over.
23        I know they want to use this as a pretext for
24 invading another business, but there isn't a
25 controversy here any more. And to pretend that's

**62**

1  not the case — I don't have to be a litigant to the
2  case. I don't have to be a litigant to the case. It's
3  whether or not I'm willing to do a transaction. And
4  both my desire, my stated intention and my legal right
5  under the option are all negative. That really is a
6  game over.
7         THE COURT: So the issue that you have this
8  isn't relevant, how can you justify the relevance of
9  asking for documents from Academia that are not related
10 to this particular issue given the fact that WCO has
11 provided you information to show that they are not a
12 competitor?
13        MR. POTEAT: Well, the problem is the
14 information that they have provided is WCO saying, we
15 are not a competing entity. When in the history of
16 litigation has that been conclusive of any issue? If
17 that was the case, you would never be able to take
18 discovery period because the other side would say, ah,
19 yeah, no, we are not a competing entity but don't look
20 under the hood.
21        THE COURT: But isn't this more an issue for
22 WCO and your discovery in the WCO case and not Academia
23 because they were involved with WCO for purposes of
24 this particular transaction. Now you are not going
25 after WCO, or maybe that's who you want to say is the

**63**

1  person who — well, is — okay. WCO was a competitor.
2         MR. POTEAT: The — in that lawsuit against
3  Albright it is a competing — yeah, it's a competing
4  entity to bar.
5         THE COURT: They were trying to bar from
6  Albright, so. I mean, you would find out from them and
7  from looking at their practices whether or not they are
8  a competing entity.
9         MR. POTEAT: Well, we certainly would be
10 doing that. But to the extent Academia has information
11 about it that is relevant to those issues — WCO was
12 using Academia as their agent in this.
13        THE COURT: And you are getting the
14 information from them about WCO and Albright.
15        MR. POTEAT: Well, we — we haven't gotten
16 anything about WCO in terms of communications with WCO
17 on Albright. And to the extent that Academia has
18 information about WCO's business that would render
19 them — that's what all of these, 12, 13, 14 — I mean,
20 that is what all of these are going towards — trying
21 to get information, documents and communications that
22 would show WCO is, in fact, a competing entity.
23        The fact WCO says, no. Okay. But we have to
24 be able to test that and see what documents there exist
25 about their business and about what they are going to

**64**

1  do with these licenses.
2         THE COURT: And you need to get that from
3  WCO. As far as I can tell, Academia is involved as
4  their agent in this particular deal. They don't have
5  an obligation — they are not part of this at all.
6  They are not even really that tangentially
7  related because they — I mean, I guess they were. But
8  they don't have an obligation to provide you with WCO's
9  documents. WCO is the company that you should be
10 getting those documents from to find out what their
11 business practices are.
12        MR. POTEAT: We are certainly seeking them
13 from WCO, but I don't think there's any legal basis to
14 say, and you can't go after those documents from
15 Academia. Because, who knows, WCO may have some
16 documents. Academia may have documents that WCO
17 doesn't. They may have information that they put
18 together about WCO's business, what the plans are
19 related to —
20        THE COURT: Well, if this is the way that
21 they do business then you are probably not going to
22 find anything more in any other deal than what you
23 found in this deal. It would be the same kind of
24 information. The kind of e-mails that you got here
25 between WCO and Academia or — would be the same in any

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

77

```
1    THE COURT:  If after that you find something
2  it would be a violation.  Or I guess after that it
3  would not be timely and they could bring it back.
4    MR. POTEAT:  And we just want an order.  I
5  mean, the tone wasn't intended to be punitive at all.
6    THE COURT:  Well, you read his.  Are you okay
7  with his?
8    MR. POTEAT:  We would like an order that
9  directs them to produce all communications and
10  documents.
11    THE COURT:  Is that not what yours does?
12    MR. MITTS:  Yes, it does, Your Honor.
13    MR. POTEAT:  It doesn't.  Theirs just talks
14  about their representation --
15    MR. MITTS:  No, it goes further.
16    MR. POTEAT:  Then it says you will do a
17  search.
18    MR. MITTS:  Here is what I said.
19    THE COURT:  His further ordered something.
20    MR. MITTS:  Yeah.  "And to address any
21  remaining concerns of TDI, Academia's counsel has
22  agreed to run a further search with the following terms
23  against the Academia records."
24    THE COURT:  Well, how about, it is further
25  ordered that Academia will run these terms?
```

78

```
2    MR. MITTS:  Okay.  That's fine, Your Honor.
2    THE COURT:  Instead of they have agreed to.
3  I think that's where your sticking point might be?
4    MR. POTEAT:  Well, we just need the fact
5  that -- you know, maybe another way to get at it, if he
6  wants to put in there what you denied.  I mean, you
7  denied their motion to quash as to 1, 2 and 3.  And
8  then you partially denied it to 4.  And so if you put
9  that --
10    THE COURT:  I guess we can just do one order
11  encompassing the whole motion today, the final results.
12  I ordered that these are the terms.  I thought if we
13  got the terms we were going to use I thought the rest
14  was pretty clear.
15    MR. MITTS:  I did too, Your Honor.  That is
16  why I focused on the terms because I thought this was
17  really the only remaining issue.
18    THE COURT:  So I think it's appropriate too
19  since we had the hearing to say all the other findings
20  as well.  That you would comply with the other portions
21  that you have.
22    MR. MITTS:  That we have.  And that we have
23  agreed to do this further.
24    THE COURT:  You made representations that you
25  have provided everything that is pursuant to -- or that
```

79

```
1  is responsive to 1, 2, 3 and 4 -- not 4 but partially
2  4.
3    MR. MITTS:  It's 1, 3, partially 4, 5 and 6.
4    THE COURT:  So 1, 2 --
5    MR. POTEAT:  1, 2, 3 and partially 4.
6    MR. MITTS:  Partially 4, 5 and 6.  And that
7  documents don't exist for 7, 8, 9, 10, 11 and 15.  And
8  the Court sustained our objections as to 12, 13 and 14.
9    THE COURT:  As represented by counsel
10  documents don't exist for those and -- yeah.
11    MR. POTEAT:  I mean, I don't want an order
12  saying that documents don't exist because I think we
13  will probably be back here at some point.
14    THE COURT:  Counsel has represented there are
15  no documents responsive to 4 -- well, no, that is a
16  partial 13, 14, 15, whatever it is.
17    MR. MITTS:  It's 7, 8, 9, 10, 11 and 15.
18    THE COURT:  We didn't talk about those
19  because they actually involve Albright but maybe not
20  WCO.  But we haven't talked about that issue.
21    MR. MITTS:  We did, Your Honor.
22    THE COURT:  We talked about Academia and WCO.
23  We never talked about Academia and Albright not related
24  to WCO.
25    MR. MITTS:  Well, Academia and Albright they
```

80

```
1  have.  That's what all of this production is.
2    MR. POTEAT:  Related to WCO's offer.  So it
3  was limited even further in terms of the communications
4  with Albright.  And so we -- as the order that we
5  proposed it would include the earlier discussions with
6  Albright.  So any communications Academia had with
7  Albright ought to be produced.
8    THE COURT:  Okay.  But we haven't talked
9  about that though.  I don't think.  Did we?
10    MR. POTEAT:  Yeah.  Well, I mean, anything
11  Academia has regarding Albright should be produced.
12  And I thought that's what we -- we got to.
13    THE COURT:  Well, I guess I didn't address
14  that specifically.  I was referring to Albright and
15  this deal just like I was referring to WCO and this
16  deal.  This particular deal.
17    If they represent Albright in some other way,
18  I never talked about that --
19    MR. POTEAT:  Yeah, they don't represent
20  Albright.  They represent WCO.
21    THE COURT:  Y'all never argued that.  Or if
22  they represent any other company that has been dealing
23  with Albright.  I guess they wouldn't.  That would be a
24  conflict.
25    MR. POTEAT:  Yeah, there has been no
```

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 6

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

| | |
|---|---|
| **From:** | Poteat III, R. Kennon |
| **To:** | Maurice Mitts |
| **Cc:** | Hurley, Denis |
| **Subject:** | RE: Albright case - WCO Subpoena |
| **Date:** | Monday, May 2, 2022 11:00:14 AM |

Maurice:

Please advise on when WCO will make its production in response to the TDI subpoena. It's now been more than a month since WCO said it would produce all responsive documents regarding Albright, as set forth below.

Thanks,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  |  vcard  |  www.wc.com/kpoteat
*He, Him, His*

-

---

**From:** Maurice Mitts <MMitts@mittslaw.com>
**Sent:** Sunday, April 17, 2022 8:43 PM
**To:** Poteat III, R. Kennon <kpoteat@wc.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Ken,

    I hope you enjoyed the holiday.

    I have followed up on the search terms and the custodians we discussed for the WCO subpoena. We will run those terms against the custodians' files. I will update once I have a better understanding of the volume of materials generated from these search criteria and as to when we can make a production.

Thank you,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Maurice

Maurice Mitts, Esq.
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
T (215) 866-0112
F (215) 866-0113
C (215) 327-7744

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

---

**From:** Poteat III, R. Kennon <kpoteat@wc.com>
**Sent:** Friday, April 8, 2022 3:40 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Maurice:

I'm writing to follow-up on my e-mail below from Monday.

Thanks,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  | vcard | www.wc.com/kpoteat
*He, Him, His*

---

**From:** Poteat III, R. Kennon
**Sent:** Monday, April 4, 2022 2:09 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Maurice:

I write to follow-up on our meet and confer from Thursday, March 31 regarding TDI's subpoena duces tecum to WCO Spectrum in the *Albright* matter.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

First, with respect to **Requests 1-6**, you indicated that WCO was withdrawing its objections/motion to quash and will produce all responsive documents.  In terms of custodians, we request that WCO search and collect documents from Gary Winnick, Carl Katerndahl, Matthew Bloch, and Ash Vasudevan, along with any other personnel or agents doing work regarding Albright.  As we discussed, you agreed that WCO would search for documents in e-mail, on individual laptops/hard drives, and on WCO shared drives/folders, as well as hard copy materials.  Finally, you asked us for a list of proposed search terms, which we provide below:

- WND475
- Albright
- "@albright.edu"
- "Reading, PA" OR "Reading, Pennsylvania"
- "16,200,000" (including with wildcard "*16,200,000")
- "1,620,000" (including with wildcard "*16,200,000")
- "Academia" AND "Albright"
- "@academiaspectrum.com" AND "Albright"
- "@selectspectrum.com" AND "Albright"
- "Bitzarakis" AND "Albright"
- "Andreas" AND "Albright"
- "Vasudevan" AND "Albright"
- "Kratz" AND "Albright"
- "[tmkratz@gmail.com](mailto:tmkratz@gmail.com)" AND "Albright"
- "@wbklaw.com" AND "Albright"
- "ROFR" AND "Albright"
- "Right of First Refusal" AND "Albright"
- "Gray" AND "Albright"
- "@graymillerpersh.com" AND "Albright"

Second, with respect to **Requests 7-10**, WCO had previously indicated that it "does not possess any document responsive" to those requests.  We asked for specifics in terms of what WCO had done to search for such documents, and you did not have that information but said you would provide it to us.  You also indicated that as part of your search, collection, and production regarding Requests 1-6, WCO would look for documents and communications that would be responsive to Requests 7-10 and would produce them to the extent there are any.

Third, regarding **Request 11**, you indicated that WCO was not willing to produce any documents, unless they concerned Albright.  We explained that TDI needed documents responsive to Request 11, as they are relevant to its claims that Albright failed to show WCO made a bona fide offer, which includes, but is not limited to, the "Competing Entity" issue under the TDI-Albright Lease.  We also explained that such documents were relevant to TDI's investigation of the whistleblower allegations as they related to WCO and Albright.  We, however, understand that WCO is going to stand on its objections to that request.

Finally, regarding **Requests 12-15**, you said that you did not think WCO would be willing to produce documents unless they concerned Albright.  We indicated that these requests sought information

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

related to representations that WCO has made in correspondence with EBS license holders, and we expect WCO to produce any such material, given that it is relevant to the bona fide offer issue, including the bar to any sale to a "Competing Entity."  Please let us know if WCO will modify its position with respect to these requests.

Regards,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  |  vcard  |  www.wc.com/kpoteat
*He, Him, His*

---

**From:** Poteat III, R. Kennon
**Sent:** Wednesday, March 30, 2022 5:37 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Sounds good.  Denis, can you send around a dial-in?

Thanks,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  |  vcard  |  www.wc.com/kpoteat
*He, Him, His*

---

**From:** Maurice Mitts <MMitts@mittslaw.com>
**Sent:** Wednesday, March 30, 2022 2:51 PM
**To:** Poteat III, R. Kennon <kpoteat@wc.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** RE: Albright case - WCO Subpoena

Kennon,

Let's have a call tomorrow at 4 pm if that still works for you.

Thank you,

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Maurice

Maurice Mitts, Esq.
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
T (215) 866-0112
F (215) 866-0113
C (215) 327-7744

This e-mail is from Mitts Law, LLC, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

**From:** Poteat III, R. Kennon <kpoteat@wc.com>
**Sent:** Monday, March 28, 2022 5:54 PM
**To:** Maurice Mitts <MMitts@mittslaw.com>
**Cc:** Hurley, Denis <dhurley@wc.com>
**Subject:** Albright case - WCO Subpoena

Maurice:

With respect to TDI's subpoena to WCO, we'd like to meet and confer this week.  We are available tomorrow morning between 10-11, Wednesday is open (except 11-noon), and Thursday afternoon is open (between 11-4:30).  Please let us know what works for you, and we'll send an invite.

Best,
Kennon

**R. Kennon Poteat III**
**Williams & Connolly LLP**
725 Twelfth Street, N.W., Washington, DC 20005
202-434-5699  |  vcard  |  www.wc.com/kpoteat
*He, Him, His*

This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Attachment B

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381



HUNTON ANDREWS KURTH LLP
500 EAST MAIN STREET
SUITE 1301
NORFOLK, VIRGINIA 23510

TEL   757 • 640 • 5300
FAX   757 • 625 • 7720

ROBERT M. TATA
DIRECT DIAL: 757 • 640 • 5328
EMAIL: btata@HuntonAK.com

FILE NO: 125071.1

May 20, 2022

**_Via Hand Delivery_**

Honorable Tina E. Sinnen
Clerk of Court
Virginia Beach Circuit Court
2425 Nimmo Parkway
Building 10 & 10B
Virginia Beach, VA  23456-9017

**TDI Acquisition Sub LLC v. Albright College**
No. CL21-3972
Foreign Subpoena in a Civil Action
Pending in Berks County, Pennsylvania at C.A. No. 21-04481

Dear Ms. Sinnen:

    Enclosed for filing please find TDI Acquisition Sub LLC's Motion to Compel Production of Documents that Academia Spectrum LLC Improperly Unredacted.

    Thank you for your assistance.

Sincerely,

Robert M. Tata

Enclosures

cc:    *(w/encl. – via email & first class mail)*
      Wyatt B. Durette, Jr., Esq.
      Maurice R. Mitts, Esq.
      Denis R. Hurley, Esq.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## IN THE CIRCUIT COURT OF VIRGINIA BEACH
## CIVIL DIVISION

TDI ACQUISITION SUB, LLC,

            Plaintiff,

v.

ALBRIGHT COLLEGE,

            Defendant.

**FOREIGN SUBPOENA IN A CIVIL ACTION**

No. CL21-3972

C.A. No. 21-04481
(pending in Berks County, Pennsylvania)

### TDI ACQUISITION SUB LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS THAT ACADEMIA SPECTRUM LLC IMPROPERLY UNREDACTED

Sadly, Plaintiff TDI Acquisition Sub LLC ("TDI") must return to this Court now for the *fourth time* to seek a reasonable response to a simple subpoena because Academia Spectrum LLC ("Academia") so heavily redacted the key "deal memo" and certain other documents for no legally valid reason. These documents should be produced immediately in unredacted form.

Specifically, on March 22, 2022, Academia represented to this Court that it had produced all documents related to WCO Spectrum LLC ("WCO") and Defendant Albright College ("Albright"), but to address TDI's concerns, the Court directed Academia to produce all additional documents and communications *concerning Albright* in response to TDI's September 2021 subpoena. Notwithstanding its representation that it already had produced all such documents (a mere 70 pages), Academia proceeded to produce an additional 541 pages in response to the Court's Order. Academia's supplemental production, however, was riddled with redactions, rendering it mostly useless for TDI. Indeed, Academia redacted nearly 200 pages without any explanation. Most egregiously, Academia improperly redacted key portions of WCO's "deal memo" *concerning Albright*, including parts that address the contemplated transaction's "Strategic

Importance to TMO [T-Mobile, TDI's parent company]" and "Potential TMO Strategy," thereby concealing information TDI was entitled to receive.

TDI immediately raised the impropriety of these redactions, but Academia has refused to produce the unredacted "deal memo," claiming it to be off limits as "transaction strategy," not because of any valid privilege. There is, of course, no legal protection for business information like "transaction strategy." Academia has no basis for its withholding of this critical document, as it goes to the heart of the remaining dispute in this case—whether, as a self-described whistleblower alleges, WCO and Albright are engaged in a scheme to defraud TDI and its parent company, T-Mobile.

As a result, TDI seeks an order compelling Academia to (i) produce the unredacted "deal memo" concerning Albright, which is plainly responsive and should be produced in its entirety, and (ii) produce in unredacted form certain communications sent or from T-Mobile because Academia has no plausible reason for redacting such documents.

## **BACKGROUND**

1.    On March 22, 2022, this Court heard argument on TDI's efforts to enforce the subpoena served on Academia back in September 2021, and make Academia finally produce documents and communications in response. TDI explained that the Pennsylvania state court, where the underlying litigation remains pending, had recently declined to interfere with TDI's outstanding subpoenas, including this one. The Pennsylvania court decided as much because a self-described whistleblower had asserted that WCO and certain EBS spectrum licensees like Albright are engaged in a scheme to defraud TDI and T-Mobile. WCO's alleged scheme involves making sham offers to purchase licenses, which T-Mobile leases from thousands of educational institutions across the country, in order to trigger T-Mobile's Right of First Refusal ("ROFR") to

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

purchase those licenses and collect kickbacks on the purchase amounts when T-Mobile exercises its ROFR.

2.     At the March 22 hearing, in an effort to try to persuade this Court not to order Academia to produce any additional documents beyond its initial paltry 70-page production, Academia represented to this Court multiple times that Academia had produced all it had related to Albright. *See* 3/22/2022 Tr. 41:25-42:2, 42:5-6; *id.* 44:7-10, 44:16; *id.* 46:9-15.  TDI, however, pressed that, given the nature of Academia's initial production, it was impossible that Academia had produced all documents and communications concerning Albright. *See, e.g.*, 35:20-24, 37:10-38:16, 43:11-44:15.  In the end, this Court issued an order that noted Academia's representation, yet importantly directed Academia to "produce all additional documents and communications (if any), including, but not limited to, emails between and among WCO and Academia and Albright and Academia, concerning Albright, WCO's Offer, the Albright Lease Agreement [with TDI], and the Albright License."  4/14/2022 Order at 1.  The Court further directed Academia's counsel to supervise the search and utilize 15 specific search terms. *Id.* at 1-2.

3.     Because of this Court's Order, on April 8, 2022 Academia produced an additional 541 pages of new documents.  Academia has never provided an explanation as to why its initial search (which it represented to this Court was thorough and complete) failed to locate the 541 pages that it eventually produced when forced to do so by this Court's Order.

4.     Academia, however, imposed heavy redactions across nearly 200 pages of its supplemental production.  In doing so, Academia did not include a basis for a single redaction.  On April 18, 2022, TDI promptly raised numerous issues associated with redactions that it believed to be improper. Ex. 1.  Most importantly, TDI complained that Academia redacted portions of a "deal memo" prepared specifically for the Albright transaction.  Ex. 2 (Academia 00230-233).

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

The Albright "deal memo" concerns issues related solely to Albright, its license, and its lease with TDI, and it evidently discusses other strategic issues related to T-Mobile that Academia has tried to hide from T-Mobile, the victim of the fraud alleged by the whistleblower.  *Id*. at 00231. Academia redacted key portions of that "deal memo," including fields like "purchase price," "strategic importance [of the license] to TMO [T-Mobile]" and "potential TMO [T-Mobile] strategy" as to Albright.  *Id.*

5.    TDI also raised the fact that Academia improperly redacted at least 22 pages that were sent from, or sent to, T-Mobile or its counsel (both in-house and outside).  *See* Ex. 3 (Academia 00404-405, -00407-408, -00409-413, -00414-416, -00423-431).

6.    Academia waited three weeks to respond substantively.  On May 9, 2022, Academia provided a log which it called a "Log of Academia/WCO Documents Withheld" ("Relevance Log").  *See* Ex. 4.[1]  With respect to WCO's "deal memo" concerning Albright, Academia did not assert that it was privileged, but rather stated that the key portions of it were redacted because it related to "transaction strategy."  *See id*. at 3 (row 11).  Academia notably did not reference any authority to support any such redaction and did not explain how it could possibly redact this information, which plainly concerns Albright.

7.    Because Academia has refused to budge, TDI brings this motion seeking an order compelling Academia to produce unredacted versions, as required by this Court's Order.

---

[1]  On May 9, Academia produced 8 pages that it admits were improperly redacted.  These documents, however, are entirely non-substantive; the newly unredacted information relates entirely to Albright's counsel's vacation plans, a subject that should never have been redacted in the first place.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## ARGUMENT

**A.    Contrary to this Court's Order, Academia Improperly Redacted Key Portions of WCO's "Deal Memo" Concerning Albright.**

8.    This Court ordered Academia to produce documents regarding Albright, and Academia has failed to do so. *See* 4/14/2022 Order; *see also* 3/22/2022 Tr. 54:20-25 (ordering Academia to "produce all documents and communications regarding Albright, the Albright lease and the Albright license"). Specifically, Academia redacted key portions of the "deal memo" that WCO prepared for its contemplated Albright transaction. Ex. 2 (Academia 00230-33). Academia, in fact, redacted the only portions of the "deal memo" that actually matter to TDI's lawsuit against Albright and the whistleblower's allegations—fields addressing the "Purchase Price," "Strategic Importance to TMO [T-Mobile]" and "potential TMO [T-Mobile] strategy." *Id.*

9.    Academia has no valid basis for its redaction of this key information that bears on WCO's strategy vis-à-vis TDI and T-Mobile, as it relates to the Albright transaction. Academia asserts no valid privilege, but instead claims it can redact that information because it concerns "transaction strategy." Ex. 4 (row 11). That is absurd. WCO's transaction strategy as it relates to the Albright deal is at the core of that dispute, and the "deal memo" should be produced in unredacted form in its entirety. Nothing in the law or this Court's Order permits Academia to redact information "concerning Albright," which this Court expressly directed Academia to produce in full, no exceptions. *See, e.g.*, *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2019 WL 8107922, at *2 (E.D. Va. May 28, 2019) (holding redaction of information "not allowed because that information is clearly relevant").

10.    Because Academia's position on this document flies in the face of this Court's Order, Academia should be ordered to produce the "deal memo" without redactions.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

**B.      T-Mobile Documents**

11.      Academia, for unknown reasons, also has redacted at least 14 pages of documents that were sent to or from T-Mobile.  *See* Ex. 3 (Academia 00404-405, -00407-408, -00409-413, -00414-416, -00418-422, -00423-431).   There is no reason why Academia should redact such documents, and TDI is at a loss for why Academia continues to refuse to produce them in unredacted form, after TDI called this category of documents out specifically in meet-and-confer correspondence.  Academia logged them as documents responsive to TDI's subpoena, and they should be required to produce them in full.

<u>**CONCLUSION**</u>

For all of these reasons, the Court should grant TDI's motion and compel Academia to produce the 26 pages of documents referenced above in unredacted form.[2]

Respectfully Submitted,

By: _____

Robert M. Tata (VA Bar No. 30101)
HUNTON ANDREWS KURTH LLP
500 East Main St., Suite 1301
Norfolk, Virginia 23510
Telephone: (757) 640-5328
Facsimile: (757) 625-7720
btata@huntonak.com

Kenneth J. Brown (VA Bar No. 48134)
R. Kennon Poteat, III (VA Bar No. 73324)
Denis R. Hurley (*pro hav vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000

---

[2]  On May 9, 2022, Academia, for the first time, provided a privilege log of documents that it withheld in their entirety.  This motion does not address such documents, but TDI reserves all rights and will undertake to meet and confer with Academia regarding certain problematic entries.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
dhurley@wc.com

*Attorneys for TDI Acquisition Sub LLC*

Dated:  May 20, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2022, I caused a true and correct copy of the foregoing

Plaintiff TDI Acquisition Sub LLC's Motion to Compel Production of Documents That Academia

Spectrum LLC Improperly Unredacted to be served upon the following parties via email and first

class mail:

> Wyatt B, Durette, Jr.
> Durrette, Arkema, Gerson & Gill PC
> Bank of America Center
> 1111 E. Main Street, 16th Floor
> Richmond, VA 23219
> wdurrette@dagglaw.com
>
> Maurice R. Mitts
> Mitts Law, LLC
> 1822 Spruce Street
> Philadelphia, PA 19103
> mmitts@mittslaw.com

> _____
> Robert M. Tata

Dated:  May 20, 2022

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# Exhibit 1

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

R. KENNON POTEAT III
(202) 434-5699

WASHINGTON, D. C. 20005-5901

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

(202) 434-5000

FAX (202) 434-5029

April 18, 2022

**Via Email**

Maurice Mitts
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
mmitts@mittslaw.com

> **Re:** *TDI Acquisition Sub LLC v. Albright College*, **Case No. CL21-3972**
> **(Va. Beach Cir. Ct.)**

Dear Maurice:

I write regarding Academia's production of redacted documents in response to the subpoena served on it by TDI in the above-captioned matter. In total, Academia produced 611 pages,[1] 203 of which—or one third of the entire production—are completely or partially redacted. Most glaringly, Academia has improperly redacted documents about the Albright College transaction, which the Court ordered it to produce. In addition, Academia has either erroneously or improperly redacted several other categories of documents. We address each category of Academia's problematic redactions below.

1. **Albright College**. At the March 22 hearing, the Court ordered Academia to produce all documents and communications "regarding Albright." 3/22/2022 Tr. 54:20-25. Academia committed to do so. *See id.* 41:25-42:3. Nevertheless, Academia's production reveals that it is concealing information about the Albright transaction through improper redaction. Based on our review, Academia has improperly redacted at least 88 such pages.

Specifically, WCO prepared a "deal memo" for the Albright transaction, which it provided to Academia/Andreas Bitzarakis when WCO and Academia was working on the price to propose for Albright's license. Academia 00230-233. The Albright "deal memo" concerns issues related solely to Albright, its license, and its lease with TDI, and discusses other strategic issues related to T-Mobile. *Id.* at 00231. But Academia redacted key portions of that "deal memo," including

---

[1] Even though Academia represented to the Court that it had only 70 pages of responsive material, *see* 3/22/22 Tr. 41:25-42:3, 42:5-6, Academia produced another 541 pages after the Court's order.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

WILLIAMS & CONNOLLY LLP

April 18, 2022
Page 2

fields like "strategic importance [of the license] to TMO [T-Mobile]" and "potential TMO [T-Mobile] strategy" as to Albright. *Id*. Academia has identified no basis for these redactions, and indeed, there is none. In trying to conceal this information from TDI, Academia is in breach of the Court's Order.[2]

Academia also redacted part of an e-mail communication between Academia/Bitzarakis and Albright's outside counsel Todd Gray, with the subject line "Albright." Academia 00084-85. Bitzarakis and Gray were clearly discussing Albright, but Academia redacted entire messages within this email chain that not only included the content of the message but also the participants of those communications and the dates/times of particular transmissions. There does not appear to be any valid basis for this redaction, and we request that it be removed and the document produced in unredacted form, along with other documents with similar redactions in other copies of this same chain. *See* Academia 00013-14, -0015-17, -00018, -00020-21, -00023-24, -00027, -00128, -00131, -00133-134, -00135-137.

WCO sent Academia/Bitzarakis a "Dashboard" PowerPoint presentation, dated August 25, 2021, that contains pages related to Albright. *See* Academia 00574-581. In particular, the third slide addresses Albright specifically, but Academia has without any basis redacted the title of that slide. *Id*. 00578. That redaction should be removed, as it prevents TDI from fully understanding the content and context of the slide. The same is true for the completely redacted "Dashboard" at Academia 00540-543. Other documents regarding Albright with problematic redactions of titles of pages that should be removed include Academia 00191, -00217-218, -00223-225.

Academia redacted another e-mail communication with Gray that occurred on May 28, 2021, the day TDI filed its lawsuit against Albright in Pennsylvania. *See* Academia 00173. Academia employed a broad, block redaction for e-mail communications that occurred after Gray informed WCO about that lawsuit, such that we cannot tell who was involved in any of those subsequent discussions. *Id*.

Lastly on this topic, Academia appears to have erroneously or improperly redacted certain other documents specifically about Albright. *See* Academia 00010, -00053, -00179, -00335-341, -00488, -00496-500, -00513, -00519, -00528, -00530, -00537, -00538-543, -00556-564, 00583, -00594-601.

    2.    **T-Mobile**. Academia produced in redacted form at least 14 pages that were sent from, or sent to, T-Mobile or its counsel (both in-house and outside). *See* Academia 00404-405, -00407-408, -00409-413, -00414-416, -00418-422, -00423-431. Academia does not provide any basis for these redactions, and there does not appear to be any.

---

[2] Academia redacted "deal memos" in other documents as well. To the extent any such memos concern Albright, they must be produced in unredacted form. *See* Academia 00433-479.

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

WILLIAMS & CONNOLLY LLP

April 18, 2022
Page 3

      3.    **Third Parties**.  Academia produced in redacted form many pages that appear to include other third parties.  Specifically, Academia redacted e-mails/attachments involving Tyler Kratz (tmkratz@gmail.com), Alex Russo (alex.russo@mtholdings.net), David Walsh, Jim Simril, and Brian Nelson (Brian.Nelson@ccisd.us).  *See, e.g.*, Academia 00180 (Kratz), -00230-236 (Kratz), -00415-416 (Nelson), -00496-500 (Kratz), -00501-503 (Kratz), -00512-513 (Kratz), -00514-517 (Kratz), -00518-519 (Kratz), -00520-523 (Kratz), -00527-528 (Kratz), -00529-530 (Kratz), -00531-535 (Kratz, Simril), -00536-537 (Kratz, Simril), -00538-543 (Kratz), -00574-581 (Russo, Walsh), -00582-592 (Russo, Walsh), -00602-603 (Walsh), -00604-611 (Russo, Walsh).  Academia has provided no basis for these redactions, and there does not appear to be any.

      4.    **Documents and Communications Redacted for Relevance**.  Many pages of Academia's production are entirely or nearly entirely redacted, without any explanation whatsoever.  *See, e.g.*, Academia 000038, -000080-83, -000088-95, -000099-124, -00152-55, -00173, -00179, -00186-211, -00217-25, -00234-36, -00238-47, -00256-67, -00279, -00289, -00299-302, -00304-313, -00315-322, -00325-333, -00335-341, -00344-351, -00362, -00373-374, -00393-398, -00404, -00411-414, -00416, -00418-422, -00433-479, -00490-495, -00497-500, -00502-503, -00508-510, -00513, -00515-517, -00519, -00521-23, -00528, -00530, -00532-535, -00537, -00539, -00541-543, -00557-564, -00572-573, -00576-581, -00583, -00585-592, -00594-601, -00603, -00606-611.  To the extent any of these redactions are based on relevance, they are improper, as a legal matter.  *Williams v. Big Picture Loans, LLC*, No. 3:17-CV-461, 2019 WL 8107922, at *2 (E.D. Va. May 28, 2019); ("[T]he general rule is that redactions based on relevance is a generally disfavored process."); *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (producing party's redactions "based on that party's unilateral determinations of relevancy" improper); *Durling v. Papa John's Int'l, Inc.*, No. 16-CV-03592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) ("Redactions on grounds of non-responsiveness or irrelevance are generally impermissible").  To the extent a document concerns the Albright transaction, which we understand each of these do given the nature of Academia's production, then Academia cannot redact all or portions of them based on relevance.

      Please immediately produce the foregoing documents in unredacted form, or explain the privilege that underlies any such redaction you seek to defend.  If such a production is not made by April 25, we will understand that we should bring this issue to the Court's attention for resolution.

      Sincerely,

      */s/ R. Kennon Poteat III*

      R. Kennon Poteat III

WILLIAMS & CONNOLLY LLP

April 18, 2022
Page 4

cc:     Wyatt B. Durrette, Jr., Esq.
        Bank Of America Center
        1111 East Main Street, 16th Floor
        Richmond, VA 23219
        wdurrette@dagglaw.com
        *Counsel for Academia*

        Robert M. Tata
        Hunton Andrews Kurth LLP
        500 East Main Street, Suite 1301
        Norfolk, VA 23510
        btata@HuntonAK.com
        *Counsel for TDI*

# Exhibit 2

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

| | |
|---|---|
| **From:** | Matthew Bloch <mbloch@winnickco.com> |
| **Sent:** | Monday, February 22, 2021 3:30 PM |
| **To:** | Gary  Winnick; Carl Katerndahl; Tyler Kratz; Andreas Bitzarakis |
| **Subject:** | Deal Memos - Albright ███████ |
| **Attachments:** | WCO Spectrum - Albright.pdf; WCO Spectrum - ███████████ |

All,

Attached are the deal memos for Albright ████████.  Let's discuss and agree on the terms (specifically pricing) so we can send out the offers and Commitment Costs Agreement.

Thanks,
Matt

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00280

WCD SPECTRUM

Date: 2/16/2021

| License Holder Summary | |
|---|---|
| License Holder | Albright College |
| Location | Reading, PA |
| License Holder Description | Private liberal arts college in Reading. Affiliated with United Methodist Church |
| Lawyer | Todd Gray |
| Contacts | Jeffrey Stader |
| Summary of Discussions | Ready to move forward at calc output |
| Website | www.albright.edu |
| Link to Management / Board | https://www.albright.edu/about-albright/board-of-trustees/ |
| | |

| License Summary | |
|---|---|
| Call Signs / Regions | WND475 |
| Capacity (MHz) | 22.5 MHz |
| POPs | 1,405,877 |
| MHz-POPs | 31,632,233 |
| Purchase Price | ██████████████ |
| Pricing ($/MHz-POP) | $.51 MHz-POP |
| Sum of remain. lease pymts. | N/A |
| Yield | 4% |
| Lessee | TDI Acquisition Sub, LLC |
| Lease Terms | Lease Commencement: 4/2007, Expiration 4/2037 |
| ROFR | Yes, as well as third-party exclusivity carve out |
| | |

| Transaction Strategy | |
|---|---|
| Disclosure Requirements | |
| Market Analysis | ██████████████████ |
| Channel Group | ████ |
| Strategic Importance to TMO | ████████████████████ |
| Potential TMO Strategy | ███████████████████ |

| Transaction Status | |
|---|---|
| NDA | 2/16/21 |
| Unsigned Offer | |
| Negotiation | |
| Signed Offer | |
| ROFR | |
| Next Steps | |
| Commentary | |

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381
Academia 00280

WCD SPECTRUM

| Investment Committee | IC Approval 1: Unsigned Offer | IC Approval 2: Signed Offer |
|---|---|---|
| Date: | [Date] | [Date] |
| Gary Winnick | [Initial] | [Initial] |
| Carl Katerndahl | [Initial] | [Initial] |
| Matthew Bloch | [Initial] | [Initial] |
| Andreas Bitzarakis | [Initial] | [Initial] |
| Tyler Kratz | [Initial] | [Initial] |

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00282

WCO SPECTRUM

[Insert Model Output]

No Model Created – Because no access to financial information

# Exhibit 3

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00404







12920 SE 38th Street, Bellevue, WA  98006
www.t-mobile.com





Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00407





12920 SE 38th Street, Bellevue, WA  98006
www.t-mobile.com

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381

Academia 00408



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00409

| | |
|---|---|
| **From:** | Ted |
| **To:** | Todd Gray; Jarmon, Lee |
| **Cc:** | Brown, Heather |
| **Subject:** | Re: UCF EBS license |
| **Date:** | Thursday, May 6, 2021 11:38:22 AM |
| **Attachments:** | image001.png |



Todd

**Todd D. Gray**

**Gray Miller Persh** LLP

2233 Wisconsin Avenue NW

Suite 226

Washington, DC 20007

202-776-2571

tgray@graymillerpersh.com

*This message from the law firm of Gray Miller Persh LLP may contain confidential or privileged information. If you received this*

*transmission in error, please contact me immediately. Disclosure or use of any part of this message by persons other than the intended recipient is prohibited.*





Regards,

Todd

**Todd D. Gray**

**Gray Miller Persh** LLP

2233 Wisconsin Avenue NW
Suite 226
Washington, DC 20007
202-776-2571
tgray@graymillerpersh.com

*This message from the law firm of Gray Miller Persh LLP may contain confidential or privileged information. If you received this transmission in error, please contact me immediately. Disclosure or use of any part of this message by persons other than the intended recipient is prohibited.*

**From:** Jarmon, Lee <Lee.Jarmon@t-mobile.com>
**Sent:** Friday, April 9, 2021 12:28 PM

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00402



**[EXTERNAL EMAIL]** DO NOT CLICK links or attachments unless you recognize the sender and know the content is safe.



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00404

**From:**     Nelson, Brian
**To:**     Jarmon, Lee



**From:** Jarmon, Lee <Lee.Jarmon@t-mobile.com>
**Sent:** Tuesday, May 4, 2021 8:47 AM
**To:** Nelson, Brian <Brian.Nelson@ccisd.us>
**Subject:** RE: Educational Broadband Service Long-Term De Facto Lease Agreement (WLX220)

[External Email: Use caution opening attachments & links]

Mr. Nelson,

Thank you for your prompt response and I look forward to hearing back from you.

Kind regards,

**Lee Jarmon**
Managing Corporate Counsel – Legal Affairs

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00405



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00406

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KENNETH J. BROWN
(202) 434-5818
kbrown@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 7, 2021



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00423

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 2



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00424

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 3



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00425

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 4



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00426

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 5



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No. 220500381
Academia 00407

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 6



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00428

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 7



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00429

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 8



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 220500381
Academia 00480

WILLIAMS & CONNOLLY LLP

May 7, 2021
Page 9



Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No. 220500381
Academia 004810

# Exhibit 4

Certification Due Date: 09/09/2022
Response Date: 09/16/2022
Case ID: 220500629
Control No.: 22090381

# TDI ACQUISITION SUB. LLC, v. ALBRIGHT COLLEGE

## CIRCUIT COURT OF THE COUNTY OF VIRGINIA BEACH
### No. CL21-3972

### Log of Academia/Albright/WCO Documents Withheld per Judge West's March 22, 2022, Order

| No. | DATE | FROM | TO | Subject Matter | DESCRIPTION | BATES NO. |
|---|---|---|---|---|---|---|
| 1. | 1/5/21 | Andreas Bitzarakis | Sylvia Kim, Gary Winnick, Mathew Bloch, Carl Katerndahl, Tyler Kratz | Unrelated Business Activity | Email Chain: re updates on unrelated business opportunity | 00076 |
| 2. | 1/8/21 | Andreas Bitzarakis | Sylvia Kim | Unrelated Business Activity | Email re: draft of report on unrelated business opportunity | 00080-00083 |
| 3. | 1/25/21 | Mathew Bloch | Sylvia Kim, Gary Winnick, Mathew Bloch, Carl Katerndahl, Tyler Kratz, Andreas Bitzarakis, Saurabh Suri | Unrelated Business Activity | WCO Pipeline Report (Albright Information unredacted) | 00087-00095 |
| 4. | 2/2/21 | Mathew Bloch | Sylvia Kim, Gary Winnick, Mathew Bloch, Carl Katerndahl, Tyler Kratz, Andreas Bitzarakis, Saurabh Suri | Unrelated Business Activity | WCO Pipeline Report (Albright Information unredacted) | 00098-00124 |

| 11. | 2/22/21 | Matthew Bloch | Andreas Bitzarakis, Gary Winnick, Tyler Kratz, Esq., Carl Katerndahl | Unrelated Business Activity | Email re: Deal memo for Albright and Unrelated Licensee (Albright Information unredacted) (Transaction Strategy Section redacted) | 00230-00236 |
| 12. | 2/23/21 | Mathew Bloch | Gary Winnick, Andreas Bitzarakis, Tyler Kratz, Esq., Carl Katerndahl, Saurabh Suri, Sylvia Kim, Roger Jackson | Unrelated Business Activity | Pipeline Report (Albright Information unredacted) | 00238-00247 |
| 13. | 2/26/21 | Andreas Bitzarakis | Mathew Bloch | Unrelated Business Activity | Email re: Offer for Albright and Unrelated Licensee (Albright information unredacted) | 00258-00278 |
| 14. | 2/26/21 | Todd Gray, Esq. | Andreas Bitzarakis | Unrelated Business Activity | Email re: Offer for Albright and Unrelated Licensee (Albright information unredacted) | 00279, 00289 |
| 15. | 2/28/21 | Andreas Bitzarakis | Todd Gray, Esq. | Unrelated Business Activity | Email re: Offer for Unrelated Licensee | 00299-00301 |
| 16. | 3/2/21 | Mathew Bloch | Gary Winnick; Carl Katerndahl; Tyler | Unrelated Business Activity | WCOS Pipeline Summary | 00304-00313 |

# Exhibit 15

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION
- - -

T-MOBILE U.S. INC., et al,     :   NO. 220500629
          Plaintiffs,          :
                               :
       V.                      :
                               :
WCO SPECTRUM, LLC, et al       :
                               :
          Defendants.      -   -   -   :

                    Virtual Courtroom, City Hall
                    Philadelphia, Pennsylvania

                         -   -   -

                    November 10, 2022

                         -   -   -

B E F O R E:  THE HONORABLE PAULA A. PATRICK, J.

1    APPEARANCES:

2                          PLAINTIFFS

3
           BY:  STEVEN J. ENGELMYER, ESQUIRE
4               Counsel for T-Mobile

5

6          BY:  KENNON POTEAT, ESQUIRE
                KENNETH BROWN, ESQUIRE
7               Counsel for T-Mobile U.S. Inc.
                Clear Wire Spectrum
8               Fixed Wireless
                NSAC
9               TDI Acquisition
                WBS Licensing
10

11                         DEFENDANTS

12         BY:  MAURICE R. MITTS, ESQUIRE
                Counsel for WCO Spectrum
13              Academia Spectrum
                Carl Katerndahl
14              Gary Winnick
                Andreas Bitzarkis
15              Tyler Krantz

16

17         BY:  GERALD MCCABE
                Counsel for SCH
18              Ashok Vasudevan

19

20

21

22

23

24

25                    THE COURT CRIER:  Since we have a

1      course, we're here and whatever happened

2      here, whatever.  I'm saying to you, file the

3      complaint if you have something.  The

4      defendants did not issue rule to file a

5      complainant, but, yet, you come to court

6      looking for pre-complaint discovery and I'm

7      not inclined to give that, not at all.

8              And if this case is what you say

9      it is or should be, and you have this

10     whistleblower who has information, then you

11     should have enough information to file the

12     complaint.  If you don't, then I don't know

13     what else to tell you.  If there's other

14     different cases that you have been involved

15     in with some of the same issues, then so be

16     it.  But I can tell you real clear, I am not

17     inclined to give pre-complaint discovery on

18     this matter.

19             It's up to you whether you want

20     to file a complaint.  But today what I'm

21     doing is I'm denying your motion for

22     pre-complaint discovery.

23             That's the order of the Court.

24             MR. MCCABE:  We also have a

25     motion for a protective order.

1                          CERTIFICATE

2

3              I hereby certify that the

4      proceedings and evidence are contained fully

5      and accurately in the notes taken by me on

6      the trial of the above cause, and this copy

7      is a correct transcript of the same.

8

9

10

11            NICOLE L. MASCIANTONIO, RPR

12              OFFICIAL COURT REPORTER

13

14

15              (The foregoing certification of

16      this transcript does not apply to any

17      reproduction of the same by any means unless

18      under the direct control and/or supervision

19      of the certifying reporter.)

20

21

22

23

24

25

# Exhibit 16

Case 2:23-cv-04347-AH-E  Document 149-3  Filed 05/30/25  Page 673 of 703  Page
Case 1:2? cv 00752 DC  Doc #: 1  Filed: 04/04/23  1 of 13.  PageID #: 1
ID #:2360

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CLEARWIRE SPECTRUM HOLDINGS II LLC<br>12920 SE 38th Street<br>Bellevue, Washington 98006,<br><br>            Plaintiff,<br><br>    v.<br><br>LORAIN COUNTY COMMUNITY COLLEGE<br>1005 North Abbe Road<br>Elyria, Ohio 44035,<br><br>            Defendant. | CASE NO.<br><br>JUDGE<br><br><br><br>**COMPLAINT** |

Plaintiff Clearwire Spectrum Holdings II LLC ("Clearwire II"), by its undersigned counsel, brings this complaint to remedy multiple breaches of contract by Defendant Lorain County Community College ("LCCC").

**NATURE OF THE ACTION**

1.    LCCC holds a Federal Communications Commission ("FCC") license to use four unique "channels" of radio frequency in the Cleveland, Ohio area (the "License"). These licensed channels are part of the Educational Broadband Service ("EBS"), which is a range of spectrum that the FCC historically has licensed only to educational entities. Those entities, in turn, typically have leased the spectrum capacity authorized by their licenses to commercial entities.

2.    Clearwire II is a subsidiary of T-Mobile US, Inc. ("T-Mobile"), a company that provides wireless communications services to more than one hundred million customers across the United States. Clearwire II's business is to acquire and hold spectrum use rights for itself and

1

other T-Mobile affiliates. Since 2007, LCCC has leased to Clearwire II the excess capacity on three of the four licensed channels at issue (the "Channels") pursuant to a written lease agreement with a 30-year term (the "Lease Agreement"), a copy of which is attached hereto as Exhibit A.[1]

3.     The Lease Agreement guarantees that Clearwire II will make payments to LCCC and, in exchange, LCCC will provide various rights to Clearwire II. One of those rights is the right to deal exclusively with LCCC concerning the Channels during the lease term, which precludes LCCC from negotiating to sell and/or selling the License to any third party. It is critically important to Clearwire II to know who its contract counterparty will be for the full duration of the term. This is true for numerous reasons, including that it minimizes risk to T-Mobile's network. For example, if an EBS licensee goes bankrupt, T-Mobile may lose its lease and corresponding ability to broadcast over that spectrum. Thus, when entering into a lease agreement, T-Mobile considers the outlook of its potential counterparty and bargains to keep that counterparty. T-Mobile also has a strong interest in eliminating reputational and other risks associated with being forced into a business relationship with a counterparty not of its choosing. Accordingly, the Lease Agreement's exclusivity provision prohibits LCCC from "negotiat[ing] or contract[ing] with any third party"—*i.e.*, any party other than Clearwire II—"to lease, sell, assign, transfer or use any of the Capacity of the Channels" for the entirety of the 30-year term, unless Clearwire II decides not to renew the lease at any point. Ex. A § 3(a). The only exception to this prohibition is that LCCC may negotiate or contract with third parties to sell the License during the last 90 days of the term. *See id.*

---

[1] Clearwire II has filed the Lease Agreement with minor redactions to prevent the disclosure of Clearwire II's confidential trade secret information contained in its EBS lease agreements. *See* Ex. A § 14 ("CONFIDENTIALITY AND NON-DISCLOSURE").

2

4. The parties performed under the Lease Agreement for more than a decade without incident.

5. In April 2020, however, a new FCC rule went into effect that allows commercial entities to directly buy, sell, and hold EBS spectrum licenses. While the FCC rules changed, the Lease Agreement's prohibition on negotiating and contracting for a sale of the License did not.

6. In 2021, LCCC was approached by a third party—WCO Spectrum LLC ("WCO")—about purchasing LCCC's License, notwithstanding LCCC's contractual commitment to Clearwire II.

7. On August 10, 2021, WCO made its first non-binding proposal to purchase LCCC's License for $14.75 million. LCCC informed Clearwire II of that purported offer, and asked if Clearwire II was interested in acquiring the License. LCCC sought approximately $18 million for the License. Clearwire II declined to pay that amount and reminded LCCC of its exclusivity obligations under the Lease Agreement.

8. Despite that reminder, LCCC continued to engage with WCO. On March 16, 2023, LCCC sent Clearwire II a letter stating that WCO supposedly had offered to pay LCCC $20.1 million for the License, approximately 10% more than the amount LCCC previously had indicated it would accept from Clearwire II. WCO apparently had extended that purported offer on January 12, 2022, but LCCC and WCO continued to negotiate throughout 2022, and entered into various agreements with one another related to the negotiations and potential transaction. After receiving LCCC's letter, Clearwire II promptly informed LCCC that, under Section 3(a) of the Lease Agreement, no sale was permitted because Clearwire II had not notified LCCC that it would not renew the Lease Agreement. To the contrary, Clearwire II intends to perform under the Lease Agreement for the entirety of the lease term, as it may be extended from time to time. LCCC,

3

however, refused to comply with its exclusivity obligation and threatened to proceed with a sale

of the License to WCO on or about April 15, 2023. This would upend the parties' agreement to

give Clearwire II the right to contract exclusively with LCCC with respect to the Channels for at

least 14 more years. In taking that position, LCCC never addressed how it could possibly complete

a transaction with WCO without violating the exclusivity provision to which it agreed in 2007.

9.      Thus, LCCC has both negotiated a sale of the License with WCO and is threatening

to complete such a prohibited transaction unless Clearwire II matches WCO's supposed offer.

Because LCCC's conduct flatly breaches the exclusivity provision of the Lease Agreement, LCCC

should be prohibited from entering into any such transaction with WCO.

## PARTIES

10.     Plaintiff Clearwire Spectrum Holdings II LLC is a limited liability company

organized under the laws of Delaware, with a principal office at 12920 SE 38th Street, Bellevue,

Washington, 98006. Clearwire II's sole member is Clearwire Legacy LLC, a limited liability

company organized under the laws of Delaware. Clearwire Legacy LLC's sole member is

Clearwire Communications LLC, a limited liability company organized under the laws of

Delaware. Clearwire Communications LLC's sole member is Sprint Communications LLC, a

limited liability company organized under the laws of Delaware. Sprint Communications LLC's

sole member is Sprint LLC, a limited liability company organized under the laws of Delaware.

Sprint LLC's sole member is T-Mobile USA, Inc., a Delaware corporation with its principal place

of business located at 12920 SE 38th Street, Bellevue, Washington 98006. Accordingly, Clearwire

II is a citizen of Delaware, Washington, and no other state. Clearwire II is a T-Mobile subsidiary

that leases EBS spectrum from educational institutions.

4

11.     Defendant LCCC is a public community college in Elyria, Ohio, with its main address at 1005 N. Abbe Road, Elyria, Ohio 44035. Accordingly, LCCC is a citizen of Ohio and no other state.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and the claims are between citizens of different states. Plaintiff Clearwire II is a citizen of Delaware, Washington, and no other state. Defendant LCCC is a citizen of Ohio and no other state.

13.     Personal jurisdiction is proper over LCCC in this district because LCCC exists in Ohio, its principal place of business is in Ohio, and it committed the acts complained of in Ohio.

14.     Venue is proper in this court under 28 U.S.C. § 1391(b) because LCCC resides in this District, a substantial part of the events giving rise to the claim occurred in this District, and a substantial part of the property that is the subject of the action is situated in this District.

## STATEMENT OF THE CASE

### A.     The License to the Cleveland Spectrum

15.     LCCC has long held a license to use four unique channels of radio-frequency spectrum in the Cleveland, Ohio, area. The channels are designated G1, G2, G3, and G4 under FCC "call sign" WHR777.

16.     The licensed channels are part of the EBS, which is a range of spectrum that the FCC historically has licensed to educational and/or non-profit organizations.

17.     There are 20 EBS channels in any particular geographic area. They fall within the band of spectrum from 2496 to 2690 MHz, commonly referred to as the "2.5 GHz" spectrum band.

18.     Prior to April 2020, FCC regulations allowed only non-commercial entities that provided educational services to hold EBS spectrum licenses. *In re Transforming the 2.5 GHz*

5

*Band*, 34 FCC Rcd. 5446, 5448 (2019), 2019 WL 3065514. The FCC, however, permitted EBS licensees—most of which lack the technical knowledge, expertise, and infrastructure to operate a telecommunications network—to lease all but five percent of the spectrum authorized by their licenses to commercial entities like Clearwire II. *See id.* As of 2019, nearly all of the 1,300 EBS licensees had leased their excess capacity. *See id.* These leases took spectrum that otherwise would have gone unused and put it to work supporting modern, high-speed broadband and telecommunications services. *See id.*

**B.    The October 2007 Lease Agreement**

19.    On October 22, 2007, LCCC and Clearwire II entered into a Lease Agreement for the spectrum capacity authorized by the License for three of the licensed channels (G1, G2, and G3). *See* Ex. A. The Lease Agreement's maximum term is through 2037.

20.    The parties operated under the Lease Agreement for the first 15 years of its duration without incident.

21.    Under the Lease Agreement, LCCC grants Clearwire II the right to use three of the Channels under the License in exchange for an initial fee and monthly payments during the term. Clearwire II has timely made all of these payments without issue.

22.    The Lease Agreement contains an exclusivity provision that, as relevant here, prohibits LCCC from "negotiat[ing] with or contract[ing] with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels." Ex. A § 3(a). This provision prohibits LCCC from transferring, or negotiating to transfer, the License to anyone other than Clearwire II.

23.    The only exception is that, "if [Clearwire II] notifies Licensee that it has elected not to renew the Agreement, in accordance with Section 1(b), Licensee shall have the ability during the ninety (90) days immediately preceding the effective date of such termination to negotiate and

6

contract with any third party with respect to any period following the end of this Agreement, so long as Licensee complies with the Right of First Refusal set forth in Section 3(b)." *Id.*

24. In agreeing to the exclusivity provision in Section 3(a), LCCC promised Clearwire II that LCCC would be the exclusive holder of the License for the entire duration of the term, unless Clearwire II elected not to renew the lease.

25. Clearwire II has not notified Licensee that it has elected not to renew the Lease Agreement. To the contrary, Clearwire II intends to continue performing under that agreement for the entire lease term, as it may be extended from time to time.

## C. The FCC Changes the Rules for Holding EBS Licenses

26. Effective April 27, 2020, the FCC eliminated the educational-use requirement for EBS licenses, thereby permitting commercial entities to hold such licenses. According to the FCC, this change was enacted because "technological changes over the last 30 years enable any educator with a broadband connection to access a myriad of educational resources." *In re Transforming the 2.5 GHz Band*, 34 FCC Rcd. at 5451. Hence, "[o]nly a handful of EBS licensees ha[d] deployed their own networks or use[d] their EBS licenses in a way that require[d] dedicated spectrum." *Id.* Instead, most licensees "rel[ied] on lessees [such as Clearwire II] to deploy and operate broadband networks and use[d] the leases as a source for revenues or devices." *Id.*

27. WCO is a private company owned and controlled by billionaire Gary Winnick. *See About WCO Spectrum LLC*, WCO SPECTRUM, https://www.wcospectrum.com/about-wco-spectrum (last visited Mar. 27, 2023). WCO portrays itself as an "investor" in EBS spectrum licenses. Since the FCC rule change, WCO has sent at least dozens of institutions "Non-Binding Term Sheets" in which it purportedly offered to buy their EBS licenses, without regard for whether the terms of the underlying contracts permit such purchases.

7

**D.     WCO Makes Its First Non-Binding Offer to LCCC**

28.     On May 10, 2021, WCO apparently made its first entreaty to LCCC about a potential purchase of its License.

29.     On August 10, 2021, LCCC, through its outside counsel, Louis J. Licata, Esq., informed Heather Brown, Esq., in-house counsel for Clearwire II, that it had received an "unsolicited" offer to purchase the License.  Mr. Licata stated that he represented LCCC in a "potential transaction" involving the License.

30.     Later that day, Mr. Licata provided Ms. Brown with a copy of the purported "offer letter" LCCC had received.  The letter, which was one-page long and dated May 10, 2021, showed that the purported offeror was WCO and that the purported offer was for $14.75 million.  The offer was for the entire License WHR777 and did not specify individual Channels.

31.     In late 2021, in discussions with Clearwire II, LCCC suggested that Clearwire II should offer $18 million for the License.  Clearwire II declined to pay that amount.

**E.     WCO Makes a Second, Higher Non-Binding Offer to LCCC**

32.     More than one year later, and after further discussions and negotiations between LCCC and WCO, on March 16, 2023, Lee G. Petro, Esq., another lawyer for LCCC, notified Clearwire II that LCCC had received a new, higher non-binding offer from WCO for the License, this time for $20.1 million.  This amount was approximately 10% more than the $18 million LCCC previously had suggested it would accept in discussions with Clearwire II.

33.     The materials provided by LCCC showed that WCO sent an offer to LCCC to purchase the License (again covering all four channels) for $20.1 million on January 12, 2022.  On March 25, 2022, LCCC's Board of Trustees supposedly considered WCO's purported offer and voted to authorize LCCC staff to execute any documents "necessary to effectuate and finalize the transaction."  LCCC then had further discussions with WCO, and received a purported offer letter

8

from WCO on March 28, 2022. A short time later, LCCC entered into agreements with WCO that WCO demanded as part of their negotiation. Indeed, Clearwire II has learned recently that LCCC and WCO negotiated and entered into a so-called Commitment Cost Agreement on July 20, 2022. The Commitment Cost Agreement provides that if Clearwire II were to match WCO's purported offer and purchase the License for $20.1 million, then LCCC would owe WCO $2.01 million (10% of the purchase price), with LCCC netting about $18 million (the amount it was seeking in negotiations). After entering into that contract with WCO, LCCC subsequently requested a "Proof of Funds Letter" from WCO. In further discussions between LCCC and WCO, WCO supposedly promised to provide LCCC with such a letter by August 5, 2022, but failed to do so. Even though WCO missed that deadline, LCCC engaged in additional discussions with WCO, and WCO eventually provided a letter to LCCC seven months later in early 2023.

34. After that extended back and forth between LCCC and WCO, in March 2023, LCCC informed Clearwire II that LCCC intended to accept WCO's purported $20.1 million offer—which unlike before, LCCC notably did not describe as "unsolicited"—unless Clearwire II provided notice that it intended to match the offer "within thirty (30) days," or by April 15, 2023.

35. In direct breach of Section 3(a), LCCC is attempting to foist upon Clearwire II a choice that it specifically contracted to avoid: Either pay more than $20 million to acquire the License or have WCO acquire the License. This choice is a direct derogation of Clearwire II's exclusivity right.

**F.     Clearwire II Unsuccessfully Tries to Resolve Its Dispute with LCCC**

36. On March 27, 2023, Clearwire II, through outside counsel, formally notified LCCC that it was in breach of the exclusivity provision contained in Section 3(a) of the Lease Agreement because it had negotiated to sell, and threatened to sell, the License to a third party even though Clearwire II had not notified LCCC of an intention to not renew its Lease Agreement. Clearwire

9

II also sought LCCC's assurance that it would not proceed with any transaction for the License with WCO. LCCC, however, refused and indicated, without addressing its exclusivity obligation, that it would sell the License to WCO shortly after April 15, 2023, unless Clearwire II matched the offer.

37.     On April 5, 2023, counsel for Clearwire II reached out to request a 30-day extension of the alleged deadline for Clearwire to respond to LCCC. On April 7, 2023, LCCC responded that it would only agree to this short extension of time if Clearwire agreed to (1) "waive all rights in equity or law against [LCCC]" related to WCO's purported offer, and (2) pay LCCC at least $22.11 million for the License if it chooses to match WCO's offer—*i.e.*, $2.01 million more than WCO's purported offer.

38.     Now, as a last resort, Clearwire II brings this action based on LCCC's breach of the exclusivity provision contained in Section 3(a) of the Lease Agreement.

## CLAIMS FOR RELIEF

### COUNT I
### (Breach of Contract – Exclusivity)

39.     Clearwire II repeats and realleges the allegations set forth above as though fully set forth herein.

40.     The Lease Agreement constitutes a valid and enforceable contract between LCCC and Clearwire II.

41.     Clearwire II complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

42.     LCCC has breached Section 3(a) of the Lease Agreement.

10

43.    Section 3(a) provides that, "[d]uring the Term, Licensee will not negotiate or contract with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels or any option therefore." Ex. A § 3(a).

44.    This exclusivity provision states, however, that "if [Clearwire II] notifies Licensee that it has elected not to renew the Agreement, in accordance with Section 1(b), Licensee shall have the ability during the ninety (90) days immediately preceding the effective date of such termination to negotiate and contract with any third party with respect to any period following the end of this Agreement, so long as Licensee complies with the Right of First Refusal set forth in Section 3(b)." *Id.*

45.    Clearwire II did not notify Licensee of an election not to renew the Agreement, and thus the sole exception to the exclusivity provision does not apply.

46.    Because LCCC negotiated to sell, and has threatened and seeks to sell, the License to a third party, WCO, it is in breach of Section 3(a).

47.    Clearwire II has been injured by LCCC's breach of its legally enforceable obligations under the Lease Agreement.

## COUNT II
### (Declaratory Judgment)

48.    Clearwire II repeats and realleges all of the allegations of the preceding paragraphs as if they were fully set forth herein.

49.    The Court may declare the rights and legal relations of the parties pursuant to 28 U.S.C. §§ 2201 and 2202 because there is a case of actual controversy between Clearwire II and LCCC regarding the parties' rights and obligations under the Lease Agreement.

11

50.     Section 3(a)'s exclusivity provision provides that "[d]uring the Term, Licensee will not negotiate or contract with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels or any option therefore." Ex. A § 3(a).

51.     Because LCCC is not permitted to proceed with the proposed sale of the License, LCCC is not permitted to "accept" the purported offer from WCO. Lease Agreement § 3(b).

52.     Accordingly, Clearwire II respectfully requests a judgment declaring that LCCC is prohibited from selling the License to WCO.

## PRAYER FOR RELIEF

WHEREFORE, Clearwire II prays for relief and judgment against Defendant as follows:

A.  Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing LCCC from selling, transferring, or assigning the Licenses to WCO or any of its affiliates unless and until Clearwire II indicates it will not renew the Lease and the Lease is in its final 90 days, or unwinding any such transaction to the extent LCCC already has purported to effect it;

B.  Declare that LCCC is prohibited from selling, transferring, or assigning the License to WCO or any of its affiliates unless and until Clearwire II notifies LCCC that it will not renew the Lease and the Lease is in its final 90 days;

C.  Pursuant to Section 21(f) of the Lease Agreement, award Clearwire II all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with LCCC and WCO;

D.  Award Clearwire II all costs and interests allowed by law;

E.  Award Clearwire II such other relief as the Court deems just and reasonable; and

12

F.  Provide Clearwire II with the right to amend this complaint in the event the Court

determines Clearwire II has failed to adequately plead the foregoing claims against

LCCC or as other events may warrant.


Dated: April 14, 2023                              Respectfully submitted,


                                                   */s/ Jill G. Okun*
                                                   JILL G. OKUN (0034477)
                                                   PORTER WRIGHT MORRIS & ARTHUR LLP
                                                   950 Main Avenue, Suite 500
                                                   Cleveland, OH 44113
                                                   Telephone: (216) 443-2508
                                                   Facsimile: (216) 443-9011
                                                   Email: jokun@porterwright.com

                                                   KENNETH J. BROWN*
                                                   R. KENNON POTEAT III*
                                                   WILLIAMS & CONNOLLY LLP
                                                   680 Maine Avenue, SW
                                                   Washington, DC 20024
                                                   Telephone: (202) 434-5000
                                                   Facsimile: (202) 434-5029
                                                   Email: kbrown@wc.com
                                                   Email: kpoteat@wc.com

                                                   * *pro hac vice* forthcoming

                                                   *Attorneys for Plaintiff*

13

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

ⓓ ORIGINAL

# EDUCATIONAL BROADBAND SERVICE
# LONG-TERM *DE FACTO* LEASE AGREEMENT

THIS Educational Broadband    Service ("**EBS**") Long-Term *De Facto* Lease Agreement (the "**Agreement**") is entered into as of ___October 22___, 2007 (the "**Effective Date**"), by and between Lorain County Community College, a political subdivision of the State of Ohio with its principal offices at 1005 N. Abbe Road, Elyria, Ohio 44035 (the "**Licensee**"), and Clearwire Spectrum Holdings II LLC, a Nevada limited liability company with its principal offices at 4400 Carillon Point, Kirkland, WA 98033 ("**Clearwire**") (each sometimes referred to as "**Party**" and collectively as "**Parties**").

WHEREAS the Federal Communications Commission ("**FCC**") has authorized EBS channels G1 through G 3 (the "**Channels**") under call sign WHR777 (the "**License**") to Licensee to transmit in the Elyria, Ohio area (the "**Market**");

WHEREAS, the FCC has authorized the EBS Channel G4 under the License to Licensee (the "**Excluded Channel**");

WHEREAS the Parties have agreed to enter into this Agreement for Licensee to lease Clearwire one hundred percent (100%) of the capacity to operate on the Channels which, pursuant to the rules, regulations and policies of the FCC (the "**FCC Rules**"), can be made available for commercial use, in accordance with the terms and conditions below, and subject to FCC approval;

THEN, in consideration of the promises and covenants set forth in this Agreement, and for good and valuable consideration, the sufficiency of which is acknowledged by the Parties' signatures, the Parties agree as follows:

## 1.    LEASE TERM AND RENEWAL

(a)    **Initial Term and Extension.** Subject to Paragraph 1(c), the initial term shall begin on the date upon which the FCC has approved the FCC Long Term Lease Application (as hereinafter defined) filed by the Parties with respect to this Agreement pursuant to Section 9 hereof ("**Commencement Date**"), and shall end on the date that the then-current EBS License expires (the "**Initial Term**"); unless the Agreement is terminated earlier in accordance with Section 11.

(b)    **Renewal.** Subject to Paragraph 1(c), this Agreement will renew for successive terms on the date that the EBS License is renewed by the FCC ("**Renewal Date**") and expire when the renewed EBS license expires, provided that the final Renewal Term will conclude thirty (30) years after the Commencement Date (each, a "**Renewal Term**"), for a maximum Agreement duration of thirty (30) years. The Renewal Terms will occur automatically unless Clearwire notifies the Licensee in writing at least twelve (12) months prior to the end of the Initial Term or any Renewal Term that it declines to renew the Agreement. The terms and conditions of this Agreement apply to each Renewal Term. The Initial Term and all Renewal Terms are collectively referred to herein as the "**Term**".

(c)    **Renewal of License and Extension of Agreement.** In the event that the License expires during the Initial Term and/or any Renewal Term, this Agreement will also expire at such time unless the License is renewed and FCC authorization for this Agreement is extended. Licensee and Clearwire will cooperate to timely file a renewal application for the License, in conjunction with a request for an extension of the then-applicable Initial Term or Renewal Term, to the date that is ten (10) years from the beginning of such Initial Term or Renewal Term. This Agreement will continue to apply unless the FCC denies by Final Order any application for Renewal of the License or extension of the Term.  "**Final Order**" means an order issued by the FCC that is in full force and effect and as to which (i) no petition, application or appeal is pending and (ii) the time for the filing of any such petition, application or appeal has passed.

## 2.    COMPENSATION

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

(a)     **Monthly Fee.** Beginning within five (5) business days of the issuance by the FCC of a public notice announcing the grant of the FCC Long Term Lease Application, and on the first day of each month thereafter throughout the Term and each Renewal Term, Clearwire will pay Licensee a monthly fee (the "**Monthly Fee**") for use of the Clearwire Capacity (as defined in Subsection 5(a) below), as follows: (i) ▮▮▮▮▮▮▮▮▮▮ per month during years one (1) through five (5) of the Term; (ii) ▮▮▮▮▮▮▮▮▮ per month during years six (6) through ten (10) of the Term; (iii) ▮▮▮▮▮▮▮▮▮▮ per month during years eleven (11) through fifteen (15) of the Term; (iv) ▮▮▮▮▮▮▮▮▮▮ per month during years sixteen (16) through twenty (20) of the Term; (v) ▮▮▮▮▮▮▮▮▮▮ per month during years twenty-one (21) through twenty-five (25) of the Term; and (vi) ▮▮▮▮▮▮▮▮▮▮ per month during years twenty-six (26) through thirty (30) of the Term. The Monthly Fee due for any partial calendar month, at the commencement of the Initial Term or expiration of the Term, shall be prorated accordingly.

The Monthly Fee will be reduced or increased on a *pro rata* basis during the Initial Term or any Renewal Term of this Agreement in the event that: (1) the amount of Clearwire Capacity increases or decreases from the amount of Clearwire Capacity available as of the Effective Date; or (2) any portion of Clearwire Capacity becomes unavailable to Clearwire in any part of the Geographic Service Area ("**GSA**") of the Channels as such Geographic Service Area exists as of the Effective Date. For the purpose of the foregoing, the pro-ration of the Monthly Fee with respect to increases or decreases in Clearwire's Capacity shall be based on the number of megahertz ("**MHz**") of capacity made available to Clearwire as a result of such increase or decrease as compared to the number of MHz of capacity contemplated to be made available to Clearwire under this Agreement. The pro-ration of the Monthly Fee with respect to any unavailability of any part of the GSA with respect to any amount of capacity shall be based on the number of MHz per population made available to Clearwire as a result of such unavailability as compared to the MHz per population contemplated to be made available under this Agreement. In making either calculation, however, the J and K channel associated with the Broadband Radio Service ("**BRS**") Channels following FCC mandated re-banding (the "**Re-banding**") shall not be considered to be unavailable to Clearwire as a result of any determination by Clearwire that such J and K channel capacity is not, at any given time, configurable or usable in a manner that is commercially useful to Clearwire, and the reduction in size of EBS lower or upper band channels from 6 MHz to 5.5 MHz following Re-banding shall not be considered as a decrease in Clearwire's Capacity.

(b)     **Initial Fee.** Within five (5) business days of the later of (i) the issuance by the FCC of a public notice announcing the grant of the FCC Long Term Lease Application or (ii) the date upon which Licensee delivers a completed IRS Form W-9 to Clearwire, Clearwire shall pay to Licensee the amount of ▮▮▮▮▮▮▮▮▮▮ (the "**Initial Fee**").

In the event the Agreement is terminated by reason of uncured default by Licensee during the first ten (10) years of the Agreement or if a FCC Final Order approving the application for approval of this Agreement has not occurred within twelve (12) months following the payment of the Initial Fee, all or a portion of the Initial Fee will be refunded to Clearwire ("**Refund**") in the manner described in this Subsection 2(b). If the FCC Final Order approving the application for approval of this Agreement has not occurred and the Agreement is terminated pursuant to Subsection 11(d), then Clearwire shall be entitled to a full refund of the Initial Fee. If the FCC Final Order has occurred, but this Agreement is terminated prior to the tenth anniversary of the Commencement Date through no fault of Clearwire, then the Refund shall be an amount equal to a pro rata portion of the Initial Fee calculated by multiplying the Initial Fee by a fraction, the numerator of which shall be the number of days the Agreement was in effect, beginning on the Commencement Date through and including the termination date, and the denominator of which shall be 3,650. There will be no Refund if the termination occurs after the first day of the eleventh (11th) year of the Agreement.

(c)     **Payment Receipt Address.**

Lorain County Community College
1005 N. Abbe Road
Elyria, OH 44035
Attn: Bursar's Office

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

(d) **W-9.** Within ten (10) days following the execution of this Agreement, Licensee shall deliver a completed IRS Form W-9 to Clearwire.

## 3. EXCLUSIVITY AND RIGHT OF FIRST REFUSAL

(a) **Exclusivity.** During the Term, Licensee will not negotiate or contract with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels or any option therefore; provided, however, that if Clearwire notifies Licensee that it has elected not to renew the Agreement, in accordance with Section 1(b), Licensee shall have the ability during the ninety (90) days immediately preceding the effective date of such termination to negotiate and contract with any third party with respect to any period following the end of this Agreement, so long as Licensee complies with the Right of First Refusal set forth in Section 3(b).

(b) **Right of First Refusal ("ROFR").** During the Term and, if Clearwire provides to Licensee an offer (in the form of a written summary of the material terms) for a new lease agreement no later than twenty-four (24) months prior to the end of the Term, then for the twenty-four (24) months following the expiration or termination of this Agreement (unless this Agreement is terminated solely as a result of Clearwire's default), Clearwire or Clearwire's designee will have a ROFR to acquire the License (if FCC rules allow it and the Licensee desires to sell), lease or otherwise use any of the capacity on the Channels (or any part thereof) in any other manner, or to acquire an option to acquire, lease or otherwise use any of the capacity on the Channels (or any part thereof) on the same terms as any *bona fide* third party offer received by Licensee that Licensee intends to accept. Licensee will notify in writing Clearwire of any such *bona fide* offer, including the terms of the offer, within thirty (30) days following Licensee's determination to accept the offer. Clearwire will notify Licensee within thirty (30) days following receipt of such notification if it is exercising its ROFR. In the event that Clearwire fails to exercise its ROFR, Licensee will have sixty (60) days from the expiration of Clearwire's thirty (30) day response period to enter into an agreement with the offeror on the same terms and conditions as were offered to Clearwire. If, within the sixty (60) day period, Licensee does not enter into a binding agreement with the offeror on the same terms and conditions as were offered to Clearwire, then Clearwire's ROFR shall remain in effect pursuant to the terms stated in this Subsection. If, within the sixty (60) day period, Licensee enters into a binding agreement with the offeror on the same terms and conditions as were offered to Clearwire, then Clearwire's ROFR will terminate; provided, however, that should Licensee's agreement with the offeror be terminated within twenty-four (24) months after the expiration or termination of this Agreement, Clearwire's ROFR will be reinstated for the remainder of the twenty-four (24) month period or for a period of one hundred eighty (180) days, whichever is longer. The terms will be ratified in a separate agreement. All materials exchanged under this ROFR are subject to the non-disclosure provisions of Section 14 of this Agreement.

(c) **Form of Consideration and Determination of Value.** Subject to, and without limiting Clearwire's rights described in Subsection 3(b), if the whole or any part of the consideration of the third party offer is in a form other than cash, then Clearwire may meet such non-cash consideration using cash, comparable non-cash consideration, or both in its acceptance notice. If Licensee does not accept Clearwire's offer of a cash substitute for the non-cash consideration, then Licensee must notify Clearwire in writing of Licensee's estimate of a fair cash substitute within fifteen (15) days after Licensee's receipt of Clearwire's acceptance notice. Licensee's failure to notify Clearwire of its estimate of a fair cash substitute within the prescribed fifteen (15) day period shall be deemed an acceptance of Clearwire's cash-substitute offer. If Licensee rejects Clearwire's cash-substitute offer, then Clearwire will have ten (10) days from receipt of Licensee's rejection to notify Licensee of its election to (1) adopt Licensee's stated cash value, or (2) submit the valuation issue for determination by binding arbitration. In any case where the right to arbitrate is invoked, Clearwire's ROFR will remain open until thirty (30) days after Clearwire is notified of the arbitrators' decision, during which time Clearwire may revise its acceptance notice to adopt the arbitrators' findings or waive its ROFR with respect to the third party offer, provided that Licensee and third party execute a contract to implement the third-party offer within ninety (90) days of the end of Clearwire's thirty (30) day time period to consider the arbitration decision. Licensee's failure to accept the third-party offer restores this ROFR.

(d) **Right to Participate.** Except in the event this Agreement terminates as a result of Clearwire's default, if Licensee decides to consider, issue or solicit bids, proposals or offers for the sale (if permitted by the FCC), assignment, transfer or use of any part or the whole of the Channels at any time before eighteen (18) months after the end of this Agreement, then Licensee will provide Clearwire with an opportunity no less favorable

in timing or substance than the opportunity provided to any other entity: (1) to receive and/or submit bids, proposals and offers for the Channels; (2) to receive information with respect to such bids, proposals, offers and counters thereto; (3) to discuss any of the same with Licensee; (4) to counter any such bids, proposals or offers; and (5) to be provided with copies (to the extent allowed by law) of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by Licensee. This right to participate does not limit in any manner, and is in addition to, the ROFR set forth in Subsection 3(b).

## 4. FREQUENCY BAND TRANSITION

The FCC expects that most EBS and BRS licensees will transition their spectrum to a new spectrum plan pursuant to Sections 27.1230 through 27.1235 of the FCC's Rules within the time period specified by the FCC Rules (the "**Transition**"). Licensee and Operator acknowledge that the Transition involving the Channels has been initiated by an Affiliate of Sprint Nextel as Proponent, and that Licensee has negotiated an agreement with the Proponent in connection with the Transition that will satisfy Licensee's rights and interests in the Transition.

## 5. CAPACITY REQUIREMENTS AND USES

(a) **Clearwire Capacity.** Upon consent by the FCC to Clearwire's leasing of all of the capacity on the Channels, Clearwire will have the exclusive right to use all of the capacity under the Channels ("**Clearwire Capacity**").

(b) **Use of Capacity.** Clearwire may use Clearwire Capacity in any manner and for any purpose that is lawful, in analog, digital or any other format, including those that may be authorized in the future by the FCC. Licensee will use the Excluded Channel to satisfy the minimum educational use requirements for EBS channels pursuant to FCC Rules.

(c) **Channel Swapping; Costs.** With the consent of Licensee, which consent will not be unreasonably withheld, conditioned, or delayed, Clearwire may require Licensee to enter into agreements to swap some or all of its Channels for other channels in the Market (the "**Swapped Channels**"), and in connection therewith file any necessary FCC applications to accomplish the swap, so long as there is no material difference in the operational capability or value of the Swapped Channels as compared to Licensee's previous Channels taking into account such factors as the GSA and the population therein. It is understood and agreed, however, that Licensee shall not be required to consent to any channel swap of an Upper Band Channel or Lower Band Channel for a Middle Band Channel, or to any swap under which the Swapped Channels provide less contiguous spectrum licensed to Licensee than Licensee's previous Channels. Clearwire agrees to bear all costs and expenses associated with the implementation of channel swapping, including the reasonable out of pocket costs of Licensee's engineering consultants and attorneys.

## 6. EQUIPMENT

(a) **Operation and Maintenance of Equipment:** During the period prior to Transition or, if earlier, prior to the migration of Licensee's multiple video programming services to the Excluded Channel, which the parties agree to work together to digitize in the process of such migration (the "Migration"), Licensee may operate the transmission equipment currently in place for the Channels (the "EBS Equipment") at each transmission facility. Licensee will perform maintenance it deems appropriate on all such equipment at its own expense, subject to Clearwire's ultimate control as de facto transferee of the Channels.

(b) **Post-Transition or Migration Operation and Maintenance of Equipment on the Excluded Channel:** Licensee will ensure that operation and maintenance of its equipment complies in all material respects with applicable FCC Rules, including the broadcast of sufficient educational programming to meet all current and future FCC requirements on the Excluded Channel.

(c) **Post Transition Operation of Shared Equipment.** Licensee and Clearwire acknowledge that because Licensee's educational obligations will be met on the Excluded Channel using equipment owned, controlled and maintained by Licensee, Clearwire has no continuing obligation to provide Licensee with the

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

opportunity to purchase or lease equipment. In the event that any equipment is shared by Licensee and Clearwire, and this Lease is terminated as a result of action by Clearwire, Licensee will have the option to purchase or lease comparable equipment from Clearwire, for the purpose of meeting its educational obligations, at a purchase price equal to Clearwire's cost in obtaining such equipment.

(d)     **Post-Transition Operation of Equipment on the Channels:** In addition to the foregoing, Clearwire will construct and maintain facilities for the Channels that provide transmission capability sufficient to satisfy minimum build-out or performance requirements applicable to EBS Channels under standards prevailing at any given time under FCC rules.

## 7.     ADVANCED WIRELESS SERVICES FOR PERMITTED END USERS.

After commercial launch by Clearwire of its wireless services on the Channels in the Market, Licensee may request at no cost to Licensee, via submission of an Order Form (as defined below), Standard Advanced Services Installation of Clearwire's wireless services for Permitted End Users that are located within Clearwire's then-serviceable area of the GSA for the Channels. Clearwire shall approve Licensee's Order Form in its reasonable discretion, taking into consideration relevant technical operational and legal factors. Such services shall be specified by Licensee and shall be among Operator's standard retail service offerings in the Market with an overall value not to exceed                        per month increasing by fifteen (15%) percent every five (5) years. Licensee shall comply with all laws and obtain any necessary governmental permits or approvals, and third party approvals, which are necessary in order for Clearwire to undertake a Standard Advanced Services Installation.

(a)     **Definitions. "Order Form"** has the meaning set forth in the terms of service referenced in Section 7(b) below. **"Standard Advanced Services Installation"** means the customer premises Internet access equipment package made generally available to Clearwire's retail customers in the Market, at the time Clearwire receives Licensee's Order Form, who subscribe to the same tier of Internet access service over BRS or EBS capacity. **"Permitted End Users"** means Licensee itself and any educational institution or not-for-profit organization or site in the Market with whom Licensee is working in furtherance of its educational goals.

(b)     **Terms of Use.** Licensee's ordering and use of the Standard Advanced Services Installation, and the use of such services by Licensee's users and Permitted End Users, shall be governed by the acceptable use policy and terms of service, and such other policies of general applicability which apply to such services, which are subject to amendment and may be found at http://www.clearwire.com or such other URL as may be designated; provided, however, that financial terms contained in the terms of service shall not apply to such services to Licensee or Permitted End Users that are provided free of charge pursuant to this Section 7. In addition to the foregoing policies, Clearwire may specify from time to time, in its sole discretion, reasonable procedures for the activation, addition, deletion or substitution of services to Licensee, its users and Permitted End Users.

(c)     **Equipment and Software.** For Licensee and any Permitted End Users for whom Clearwire has provided a Standard Advanced Services Installation, Clearwire shall make available any equipment, services or software upgrades that Clearwire makes generally available to Clearwire's retail customers subscribing to the same tier of service in the Market over BRS or EBS facilities. In the event that any equipment upgrade involves replacement of equipment, the replaced equipment shall be returned to Clearwire or its designee and title to the replacement equipment shall transfer to Licensee or its designee.

(d)     **Title.** All equipment provided by Clearwire to Licensee as part of Standard Advanced Services Installations for Permitted End Users shall be the property of Licensee or its designee(s), free and clear of all liens and encumbrances, when paid in full (if any payment is required). Licensee shall own, and be solely responsible for the maintenance and operation of, all facilities installed at Licensee's locations and receive sites, including the sites of its Permitted End Users.

(e)     **Discount Installations.** After Licensee has exceeded the value of services specified in Section 7, Clearwire, at Licensee's request, shall offer a                 discount from its standard monthly subscription rates to Licensee's students, faculty and staff. At Licensee's request, Clearwire shall set up a dedicated activation process and resources for enrollment in this discounted plan.

## 8. INTERFERENCE CONSENTS

Licensee will enter into interference consents with third parties relating to the Channels ("**Interference Consents**"), as Clearwire reasonably requests and without any additional compensation, provided that such Interference Consents do not result in a reasonably foreseeable material degradation in the value of the Channels; and provided further that Interference Consents that involve fair and reciprocal rights and limitations for and on the operation of Licensee's facilities and the facilities of the other party in connection with system coordination inside GSAs and at GSA boundaries will not be deemed to cause material degradation in value. Clearwire will bear the cost relating to any Interference consent requested by Clearwire hereunder and will negotiate and draft the Interference Consents and make any consideration payments due to third parties under the Interference Consents. Licensee will not enter into or issue any Interference Consents without Clearwire's prior written consent.

## 9. APPLICATIONS, AUCTIONS AND FEES

(a) **Application Preparation.** Clearwire will prepare and submit in its name all applications, amendments, petitions, requests for waivers, and other documents necessary for the proper operation of the Clearwire Capacity. Licensee will prepare and submit all applications, amendments, petitions, requests for waivers, and other documents necessary for the modification, maintenance and renewal of the License that, under FCC Rules, may only be filed by Licensee, including any such filings reasonably requested by Clearwire. The Parties will cooperate in the preparation and submission of all applications, amendments, petitions, requests for waivers, and other documents necessary to secure any FCC approval, consent or other action required to effectuate this Agreement.

(b) **Application Costs.** Clearwire will, at its own expense, prepare all applications, notices, certificates, exhibits, consent agreements, approvals or authorizations that Clearwire submits to the FCC or seeks to have Licensee submit to the FCC pursuant to the Agreement. Clearwire will also promptly pay or reimburse Licensee for its reasonable out-of-pocket expenses, including Licensee's reasonable attorney's fees, in connection with the activities requested or required of Licensee by Clearwire under this Agreement. Licensee will otherwise pay all its own costs associated with the renewal of any License (except as such costs relate to defending this Agreement or Clearwire's use of Clearwire Capacity hereunder) and with any other filings with, or information requested by, the FCC, or required of Licensee to remain eligible under FCC Rules to provide Clearwire Capacity to Clearwire.

(c) **Regulatory Fees.** Clearwire will pay any federal regulatory fees associated with the License upon receipt of notice from the FCC that such fees are due, or upon receipt of at least thirty (30) days advance written notice from Licensee that such fees are due in the event that notice is sent to Licensee.

(d) **FCC Long Term Lease Application.** Within ten (10) business days following the execution of this Agreement and prior to consummating the transfer of *de facto* control of the Channels, the Parties agree to cooperate as required to prepare and file with the FCC all forms and related exhibits, certifications and other documents necessary to obtain the FCC's consent to this Agreement and satisfy the FCC's requirements for long term *de facto* lease approval as set forth in 47 C.F.R. § 1.9030(e) ("**FCC Long Term Lease Application**"). Each Party covenants and agrees that it will fully cooperate with the other, and do all things reasonably necessary to timely submit, prosecute and defend the FCC Long Term Lease Application, including responding to any petitions for reconsideration or FCC reconsiderations of the grant of the FCC Long Term Lease Application, and will promptly file or provide the other Party with all other information which is required to be provided to the FCC in furtherance of the transactions contemplated hereby. The Parties will disclose in the FCC Long Term Lease Application the automatic extension of the Term upon the renewal of the License. The Parties further covenant and agree to include in any License renewal application, or separately request, as necessary, a request to extend and renew this Agreement for the renewal term of the License, if this Agreement contemplates renewal of this Agreement for or during any part of such License renewal term. Any fees associated with the filing of the FCC Long Term Lease Application and renewals thereof shall be paid by Clearwire. To the extent Licensee is required to file this Agreement with the FCC, the Licensee shall first notify and consult with Clearwire, and will to the extent permitted by the FCC redact all information from the Agreement which Clearwire reasonably designates as confidential including, but not limited to, all payment information. In the event a petition for reconsideration is filed against the grant of an FCC Long Term Lease Application, or if the FCC determines to reconsider such grant on its

own motion, Clearwire shall determine at its option whether to delay commencement of the Initial Term until resolution of such reconsideration and, in the event of such delay, it will notify Licensee in writing.

## 10.    TRANSFERS OR ASSIGNMENTS

Subject to Subsections 16(f)-(g), neither Clearwire nor Licensee may assign or transfer its rights and/or obligations under this Agreement without the prior written consent of the other Party, such consent not to be unreasonably withheld, conditioned or delayed; provided that Clearwire may, without the prior consent of Licensee: (1) assign any of its rights under this Agreement as collateral; or (2) sell, assign, sublease, delegate or transfer this Agreement or any of its rights or obligations hereunder to any affiliate of Clearwire or any entity that acquires or otherwise merges with Clearwire or its affiliates, or, in connection with a transfer of FCC licenses or leases in at least three (3) GSA's, to any entity demonstrating the financial and operational capability to perform the obligations of Clearwire hereunder.

## 11.    TERMINATION OF AGREEMENT

(a)    This Agreement will automatically terminate with respect to the License or affected Channel(s) upon the earlier of: (1) an FCC Final Order denying any application for approval of this Agreement including any extensions of the term thereof; (2) the loss or expiration without renewal of the License; (3) an FCC Final Order revoking, terminating or canceling the License; or (4) Clearwire's acquisition of the License or some of the Channels pursuant to an agreement between Clearwire and Licensee.

(b)    This Agreement may be terminated by either Party upon material breach of the other Party, provided that the breaching Party shall be provided with written notice by the non-breaching Party of the alleged grounds for the breach and allowed a thirty (30) day period for cure following such notice; provided, however that if the defaulting Party proceeds with reasonable diligence during such thirty (30) day period and is unable, because of circumstances beyond its control or because of the nature of the default, to cure the default within such applicable time period, the time for cure shall be extended, but in no event beyond one hundred eighty (180) days after receipt of written notice from the non-defaulting Party.

(c)    Licensee may terminate this Agreement: (1) pursuant to Section 16(b), or (2) in the event Clearwire commences or has commenced against it any proceeding under any applicable bankruptcy, insolvency or reorganization law, or is adjudged bankrupt or makes a general assignment for the benefit of its creditors.

(d)    Clearwire may terminate this Agreement if a FCC Final Order approving the application for approval of this Agreement has not occurred within twelve (12) months following the payment of the Initial Fee.

(e)    The Parties will notify the FCC of the termination of this Agreement with respect to the License or any of the Channels within ten (10) calendar days following the termination.

(f)    Except as expressly set forth in this Agreement, upon the expiration or termination of this Agreement, each Party will pay its own fees and expenses related to this Agreement and the transactions contemplated herein, and the Parties will have no further liability to each other except by reason of any breach of this Agreement occurring prior to the date of expiration or termination. Any termination or expiration of this Agreement, regardless of cause, will not release either Licensee or Clearwire from any liability arising from any breach or violation by that Party of the terms of this Agreement prior to the expiration or termination. The general and procedural provisions of this Agreement, which may be relevant to enforcing the obligations or duties of the Parties, as well as any other provisions that by their terms obligate either Party following expiration or termination, will survive the expiration or termination of this Agreement until the obligations or duties are performed or discharged in full.

## 12.    REVENUES AND EXPENSES

Except that Clearwire will pay Licensee's reasonable attorney's fees in the negotiation of this initial Agreement, each Party will pay its own expenses incident to any amendments or modifications to the Agreement,

including, but not limited to, all fees and expenses of their respective legal counsel and any engineering and accounting expenses. Clearwire is entitled to one hundred percent (100%) of the revenue generated from the use of the Clearwire Capacity.

### 13.    COMPETITION

Licensee agrees that it will not, during the Term of this Agreement, engage in building, operating, managing or distributing, on a for-profit basis, a wireless broadband network.

### 14.    CONFIDENTIALITY AND NON-DISCLOSURE

(a)    **Confidentiality of the Terms of this Agreement.** The terms of this Agreement that are not otherwise required to be disclosed to the FCC in support of the lease applications or notices submitted to the FCC will be kept strictly confidential by the Parties and their agents, which confidentiality obligation will survive the termination or expiration of this Agreement for a period of two (2) years. The Parties may make disclosures as required by law (including as required or appropriate to be disclosed by Clearwire pursuant to the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, or The Nasdaq Stock Market, Inc., including the related regulations and marketplace rules and as required or appropriate to be disclosed by Licensee due to its status as a state government institution under the laws of the State of Ohio), and to employees, shareholders, agents, attorneys and accountants (collectively, "Agents") as required to perform obligations under the Agreement, provided, however, that the Parties will cause all Agents to honor the provisions of this Section. In addition, Clearwire may disclose this Agreement to its affiliates, strategic partners, actual or potential investors, lenders, acquirers, merger partners, and others whom Clearwire deems in good faith to have a need to know such information for purposes of pursuing a transaction or business relationship with Clearwire, so long as Clearwire secures an enforceable obligation from such third party to limit the use and disclosure of this Agreement as provided herein. The Parties will submit a confidentiality request to the FCC in the event the FCC seeks from the Parties a copy of this Agreement or any other confidential information regarding its terms.

(b)    **Non-Disclosure of Shared Information.** As used herein, the term "Information" shall mean all non-public information disclosed hereunder, whether written or oral, that is designated as confidential or that, given the nature of the information or the circumstances surrounding its disclosure, reasonably should be considered as confidential. The term Information does not include information which:  (1) has been or becomes published or is now, or in the future, in the public domain without breach of this Agreement or breach of a similar agreement by a third party; (2) prior to disclosure hereunder, is property within the legitimate possession of the receiving Party which can be verified by independent evidence; (3) subsequent to disclosure hereunder, is lawfully received from a third party having rights therein without restriction of third party's or the receiving Party's rights to disseminate the information and without notice of any restriction against its further disclosure; or (4) is independently developed by the receiving Party through persons who have not had, either directly or indirectly, access to or knowledge of such Information which can be verified by independent evidence. During the Initial Term or any Renewal Term of this Agreement, the Parties may be supplying and/or disclosing to each other Information relating to the business of the other Party. The Information will, during the Initial Term and any Renewal Term of this Agreement, and for a period of three (3) years after the termination or expiration of the Agreement, be kept confidential by the Parties and not used for any purpose other than implementing the terms of this Agreement. The receiving Party will be responsible for any improper use of the Information by it or any of its Agents. Without the prior written consent of the disclosing Party, the receiving Party will not disclose to any entity or person the Information, or the fact that the Information has been made available to it, except for disclosures required by law, including Information as required or appropriate to be disclosed by Clearwire pursuant to the Securities Act of 1933, as amended, the Securities Exchange Act of 1934, as amended, or The Nasdaq Stock Market, Inc., including the related regulations and marketplace rules and as required or appropriate to be disclosed by Licensee due to its status as a state government institution under the laws of the State of Ohio. Each person to whom Information is disclosed must be advised of its confidential nature and must agree to abide by the terms of this Subsection.

### 15.    ASSUMPTION OF LIABILITIES

Neither Party is assuming or will be responsible for any of the other's liabilities or obligations (including but not limited to customer obligations) except as required by the FCC and this Agreement.

8

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

16.    **FCC-MANDATED LEASING ARRANGEMENT OBLIGATIONS**

(a)    Licensee and Clearwire are familiar with the FCC Rules affecting spectrum leasing and the provision of EBS, the Communications Act of 1934, as amended (**"Communications Act"**), the Code of Federal Regulations, and all other applicable FCC Rules, and agree to comply with all such laws and regulations.

(b)    Clearwire assumes primary responsibility for complying with the Communications Act, and any FCC Rules that apply to the Channels and License, and the Agreement may be revoked, cancelled or terminated, in accordance with Section 11, by Licensee or by the FCC if Clearwire fails to comply with applicable laws and regulations.

(c)    Neither Licensee nor Clearwire will represent itself as the legal representative of the other before the FCC or any party, but will cooperate with each other with respect to FCC matters concerning the Licenses and the Channels.

(d)    If the License is revoked, cancelled, terminated or otherwise ceases to be in effect, Clearwire has no continuing authority or right to use the leased spectrum unless otherwise authorized by the FCC.

(e)    The Agreement is not an assignment, sale or transfer of the License itself.

(f)    The Agreement will not be assigned to any entity that is ineligible or unqualified to enter into a spectrum leasing arrangement under the FCC Rules.

(g)    Licensee will not consent to an assignment of a spectrum leasing arrangement unless such assignment complies with applicable FCC Rules.

(h)    Licensee and Clearwire must each retain a copy of the Agreement and make it available upon request by the FCC, in accordance with the confidentiality provisions in Section 14.

17.    **LICENSEE'S AUTHORIZATIONS**

Licensee will use its best efforts to obtain and maintain all licenses, permits and authorizations required or desired by Clearwire for the use of the Channels, and will remain eligible under the FCC Rules to provide the Clearwire Capacity. Licensee will take all necessary steps to renew the License, as required, and will not commit any act, engage in any activity, or fail to take any action that could reasonably be expected to cause the FCC to impair, revoke, cancel, suspend or refuse to renew the License.

18.    **MUTUAL REPRESENTATIONS AND WARRANTIES**

In addition to any other representations and warranties contained in this Agreement, each Party represents and warrants to the other that: (a) it has the full right and authority to enter into, execute, deliver, and perform its obligations under this Agreement; (b) it has taken all requisite corporate action to approve the execution, delivery and performance of this Agreement; (c) this Agreement constitutes a legal, valid and binding obligation enforceable against such Party in accordance with its terms; and (d) its execution of and performance under this Agreement will not violate any applicable existing regulations, Rules, statutes or court orders of any local, state or federal government agency, court or body, or any of its existing contractual obligations.

Further, Licensee represents and warrants to Clearwire that: (i) the License is in full force and effect, (ii) Licensee's operations and activities pursuant to the License are being conducted in material compliance with all FCC rules, (iii) no person other than Licensee has any right, title or interest in or claims to the License, and (iv) there is no proceeding now pending or to the knowledge of Licensee, threatened against the Licensee before any local, state or federal regulatory body with respect to the License, or any acts or omissions by Licensee or its agents, as of the Effective Date, that could have a material, adverse effect on Licensee's authorization.

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

**19.  INDEMNIFICATION.**

Clearwire will defend, indemnify and hold Licensee harmless from and against any and all liabilities, losses, damages and costs, including reasonable attorney's fees, resulting from, arising out of, or in any way connected with any breach by Clearwire of any warranty, representation, agreement or obligation contained herein. Clearwire's obligations under this section will survive the expiration or termination of this Agreement.

**20.  NOTICES**

Any notice required to be given by one Party to the other under this Agreement will be delivered using a reliable national express overnight delivery service and will be effective upon receipt. All notices will be delivered to the Parties at the following addresses:

    (a)    **Clearwire:**

Clearwire Spectrum Holdings II LLC
4400 Carillon Point
Kirkland, WA 98033
Attn: Hope Cochran, Vice President
Fax: (425) 216-7776

With a copy to:

Clearwire Spectrum Holdings II LLC
4400 Carillon Point
Kirkland, WA 98033
Attn: Legal Department
Fax: (425) 216-7776

**Licensee**

Lorain County Community College
1005 N. Abbe Road
Elyria, OH 44035
Attn: Vice President Administrative Services
Fax: (440) 366-4150

With a copy which shall not constitute notice to:

Baker & Hostetler LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, D.C. 20036
Attention: Kenneth C. Howard, Jr.

Fax: (202) 861-1783

Either Party may change its addresses for receipt of notice or payment by giving notice of such change to the other Party as provided in this Section.

**21.  MISCELLANEOUS**

    (a)    **Laws, Rules and Regulations.** This Agreement is subject to all laws, Rules, regulations and ordinances relative to, among other things, the subject matter addressed in this Agreement.

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

(b) **Force Majeure.** The Parties shall not be responsible for or liable for failure to perform all or any part of this Agreement or for any delay in the performance of all or any part of this Agreement, directly or indirectly resulting from or contributed to by any foreign or domestic embargo, seizure, act of God, insurrection, war and/or continuance of war, or fire, flood, explosion or other accident, or the adoption or enactment of any law, ordinance, regulation or ruling, or any other event or contingency that is reasonably beyond the control of the Party obligated to perform; provided that the non-performing Party gives the other Party prompt written notice of such cause, and in any event, within fifteen (15) calendar days of its discovery.

(c) **Independent Parties.** None of the provisions of this Agreement will be deemed to constitute a partnership, joint venture, or any other such relationship between the Parties, and neither Party will have any authority to bind the other in any manner. Neither Party will have or hold itself out as having any right, authority or agency to act on behalf of the other Party in any capacity or in any manner, except as may be specifically authorized in this Agreement.

(d) **Specific Performance.** Licensee acknowledges that the License and Channels subject to this Agreement are unique and the loss to Clearwire due to Licensee's failure to perform this Agreement could not be easily measured with damages. Clearwire will be entitled to injunctive relief and specific enforcement of this Agreement in a court of equity without proof of specific monetary damages, but without waiving any right thereto, in the event of breach of this Agreement by Licensee.

(e) **Applicable Law and Venue.** The validity, construction and performance of this Agreement will be governed by and construed in accordance with the laws of the State of Ohio, without regard to the principles of conflict of laws.

(f) **Attorneys' Fees.** If any action shall be brought on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement, the prevailing Party will be entitled to recover from the other its reasonable attorneys' fees and costs, as determined by the court hearing the action.

(g) **Severability.** If any provision of this Agreement is found to be illegal, invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired, unless continued enforcement of the provisions frustrates the intent of the Parties.

(h) **No Waiver.** No delay or failure by either Party in exercising any right under this Agreement, and no partial or single exercise of that right, will constitute a waiver of that or any other right. Failure to enforce any right under this Agreement will not be deemed a waiver of future enforcement of that or any other right.

(i) **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but which collectively will constitute one and the same instrument. Original signatures transmitted by facsimile will be effective to create such counterparts.

(j) **Headings.** The headings and captions used in this Agreement are for convenience only and are not to be considered in construing or interpreting this Agreement.

(k) **Construction.** The Parties and their respective counsel have negotiated this Agreement. This Agreement will be interpreted in accordance with its terms and without any strict construction in favor of or against either Party based on draftsmanship of the Agreement or otherwise.

(l) **Complete Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter addressed, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, between the Parties or any of their affiliates regarding this subject matter. No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Parties.

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

      (m)    **Limitation on Liability.** Notwithstanding anything else to the contrary in this Agreement, neither party will be liable under any contract, negligence, strict liability or other legal, contractual or equitable theory for: (1) any indirect, special, incidental or consequential damages, however caused and whether or not advised in advance of the possibility of such damages; or (2) damages for lost profits; or (3) cost of procurement of substitute goods, technology or services.

      (n)    **Cooperation.** The Parties will take such further action and execute such further assurances, documents and certificates as either Party may reasonably request to effectuate the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the date first above written.

**AGREED TO:**

**CLEARWIRE SPECTRUM HOLDINGS II LLC**

By: _____

Name: _____Steve Fdmie_____

Title: _____

**LORAIN COUNTY COMMUNITY COLLEGE**

By: _____

Name: _____

Title: _____

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

(l)    Complete Agreement. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter addressed, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, between the Parties or any of their affiliates regarding this subject matter. No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Parties.

(m)    Limitation on Liability. Notwithstanding anything else to the contrary in this Agreement, neither party will be liable under any contract, negligence, strict liability or other legal, contractual or equitable theory for: (1) any indirect, special, incidental or consequential damages, however caused and whether or not advised in advance of the possibility of such damages; or (2) damages for lost profits; or (3) cost of procurement of substitute goods, technology or services.

(n)    Cooperation. The Parties will take such further action and execute such further assurances, documents and certificates as either Party may reasonably request to effectuate the purposes of this Agreement.

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the date first above written.

AGREED TO:

CLEARWIRE SPECTRUM HOLDINGS II LLC

By:_____

Name:_____

Title:_____

LORAIN COUNTY COMMUNITY COLLEGE

By: _____

Name: David J. Cummins

Title: Treasurer

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Clearwire Spectrum Holdings II LLC | Lorain County Community College |

**(b)** County of Residence of First Listed Plaintiff   King County, WA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Lorain County, OH
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jill Okun; PorterWright; 950 Main Avenue, Suite 500; Cleveland, OH 44113; 216-443-2508

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |   Product Liability | |   28 USC 157 |   3729(a)) |
| ☐ 140 Negotiable Instrument |   Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |   Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
|   & Enforcement of Judgment |   Slander |   Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |   Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted |   Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
|   Student Loans | ☐ 340 Marine |   Injury Product | |   New Drug Application | ☐ 470 Racketeer Influenced and |
|   (Excludes Veterans) | ☐ 345 Marine Product |   Liability | | ☐ 840 Trademark |   Corrupt Organizations |
| ☐ 153 Recovery of Overpayment |   Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
|   of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** |   Act of 2016 |   (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☒ 190 Other Contract |   Product Liability | ☐ 380 Other Personal |   Act | **SOCIAL SECURITY** |   Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |   Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise |   Injury | ☐ 385 Property Damage |   Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - |   Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) |   Exchange |
| |   Medical Malpractice | | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |   Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate |   Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |   Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |   Sentence | |   or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability |   Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** |   26 USC 7609 |   Act/Review or Appeal of |
| |   Employment | **Other:** | ☐ 462 Naturalization Application | |   Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| |   Other | ☐ 550 Civil Rights |   Actions | |   State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of contract

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
Injunction

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:

JUDGE                           DOCKET NUMBER

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 4/14/2023 | /s/ Jill Okun |

**FOR OFFICE USE ONLY**

RECEIPT #      AMOUNT      APPLYING IFP      JUDGE      MAG. JUDGE

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**    Civil Categories: (Please check one category only ).

1. [✔] General Civil
2. [ ] Administrative Review/Social Security
3. [ ] Habeas Corpus Death Penalty

*If under Title 28, §2255, name the SENTENCING JUDGE: _____

CASE NUMBER:

**II.**    **RELATED OR REFILED CASES** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regard for the place of holding court in which the case was refiled. Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action: [ ] is **RELATED** to another **PENDING** civil case [ ] is a **REFILED** case [ ] was **PREVIOUSLY REMANDED**

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.**    In accordance with Local Civil Rule  3.8, actions involving counties in the Eastern Division shall be filed at any of the divisional offices therein. Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER. UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

(1)    **Resident defendant.** If the defendant resides in a county within this district, please set forth the name of such county
**COUNTY**: Lorain County

Corporation **For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.**

(2)    **Non-Resident defendant.** If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.
**COUNTY:**

(3)    **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.
**COUNTY:**

**IV.**    The Counties in the Northern District of Ohio are divided into divisions as shown below. After the county is determined in Section III, please check the appropriate division.

**EASTERN DIVISION**

[ ] AKRON    (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
[✔] CLEVELAND    (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)
[ ] YOUNGSTOWN    (Counties: Columbiana, Mahoning and Trumbull)

**WESTERN DIVISION**

[ ] TOLEDO    (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# Exhibit 17

The Court approves the dismissal without prejudice
*s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES
DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CLEARWIRE SPECTRUM HOLDINGS II LLC, | ) CASE NO. 1:23-cv-00752 |
| | ) |
| | ) JUDGE JAMES S. GWIN |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE JAMES E. GRIMES, |
| v. | ) JR. |
| | ) |
| LORAIN COUNTY COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

**STIPULATION OF DISMISSAL WITHOUT PREJUDICE**

Plaintiff Clearwire Spectrum Holdings II LLC ("Clearwire II") and Defendant Lorain County Community College ("LCCC") hereby stipulate and agree as follows:

1. On June 23, 2023, LCCC withdrew its authorization to sell its Educational Broadband Service ("EBS") License (EBS Station WHR777) to WCO Spectrum LLC. As a result, LCCC rescinded its March 16, 2023 "Notice of Receipt of Offer to Purchase EBS Station WHR777" to Clearwire II.

2. In light of this development, the issues raised in Clearwire II's complaint are moot.

3. Accordingly, pursuant to Rule 41(a)(ii), Fed. R. Civ. P., the parties stipulate to dismissing this action without prejudice. Each party will bear its own fees and costs.

Respectfully submitted,

PORTER WRIGHT MORRIS & ARTHUR LLP

*/s/ Jill G. Okun*
JILL G. OKUN (0034477)
950 Main Avenue, Suite 500
Cleveland, OH 44113
Telephone: (216) 443-2508

1