**ALSTON & BIRD LLP**
Jeffrey A. Rosenfeld (#136896)
jeffrey.rosenfeld@alston.com
Jesse Steinbach (#278923)
jesse.steinbach@alston.com
Brooke Bolender (#340689)
brooke.bolender@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1143

**WILLIAMS & CONNOLLY LLP**
Kenneth J. Brown*
kbrown@wc.com
Jonathan B. Pitt*
jpitt@wc.com
William P. Ashworth*
washworth@wc.com
R. Kennon Poteat III*
kpoteat@wc.com
Kathryn E. Hoover*
khoover@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000

**KLEINBARD LLC**
Steven J. Engelmyer*
sengelmyer@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-2000

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T-MOBILE US, INC., CLEARWIRE SPECTRUM HOLDINGS LLC, CLEARWIRE SPECTRUM HOLDINGS II LLC, CLEARWIRE SPECTRUM HOLDINGS III LLC, FIXED WIRELESS HOLDINGS LLC, NSAC LLC, TDI ACQUISITION SUB LLC, AND WBSY LICENSING LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> WCO SPECTRUM LLC, SCH LLC, ACADEMIA SPECTRUM LLC, KAREN WINNICK AS TRUSTEE OF GKW TRUST, EXECUTOR OF THE ESTATE OF GARY WINNICK AND GARY WINNICK'S SUCCESSOR-IN-INTEREST, CARL KATERNDAHL, ASHOK VASUDEVAN, ANDREAS BITZARAKIS, AND TYLER KRATZ, <br><br> Defendants. | Case No. 2:23-CV-4347-AH-E <br><br> Hon. Anne Hwang, Ctrm 9C <br><br> **[PROPOSED] JOINT STIPULATION FOR ENTRY OF AGREED DISCOVERY ORDER** <br><br> Complaint Filed: June 2, 2023 |

The parties (each, "Party," and collectively, "Parties"), having agreed to the following protocol for the production of documents and data, including electronically stored information ("ESI"), and the Court having found that good cause exists for issuance of an appropriately-tailored Discovery Order ("Order"), it is therefore hereby ORDERED:

This Order shall be the governing document by which the Parties and the Court manage the production of documents and data in the above-captioned action. This Order shall govern all Parties to these proceedings, whether they are currently involved or become involved in the future. This Order shall also govern productions made by any third party who is subpoenaed in this action unless otherwise agreed to between all Parties and the third party. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

The Parties and the Court recognize that this Order is based on facts and circumstances as they are currently known to each Party, that the discovery process is iterative, and that additions and modifications to this Order may become necessary as more information becomes known to the Parties. Nothing in this Order will be interpreted to require disclosure of documents or information protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. All Parties preserve such privileges and there is no intent through either this Order or the production of documents or information hereunder to waive or weaken such privileges.

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order on Discovery Disputes, the Federal Rules of Civil Procedure, and the Local Rules of this Court. The Parties acknowledge that they have reviewed and shall reference the Court's Checklist for Conference of Counsel Regarding ESI

during any Rule 26 conference and when seeking to resolve discovery disputes about ESI during meet-and-confer conferences.  Furthermore, the parties will use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant information.  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery, and other parameters to limit and guide preservation and discovery issues.

I. **Production Protocol**

1. **Parent-Child Relationships.** Parent-child relationships (*i.e.*, the association between an attachment and its parent document) must be preserved.  For example, electronic documents attached to an email are to be produced with contemporaneous and sequential Bates numbers, immediately following those of the parent document.  Similarly, if a Party produces a document with attachments, appendices or indices that are part of that same document family, those documents should be produced with contemporaneous and sequential Bates numbers in the order in which they were attached.

2. **Partially Withheld Families**.  The Parties agree that if any part of an Email family is responsive, the entire Email family will be produced, except for any attachments that are withheld or redacted on the basis of privilege.  Where an attachment or attachments must be withheld in their entirety for privilege, and another document or documents in the family must be produced, the privileged attachment(s) will either be redacted in full or produced as a slip sheet bearing only a Bates number, and the non-privileged portions of the family will be produced in their entirety.

3. **Hard-copy Documents**.  The Parties shall produce responsive hard-copy documents. The Parties shall physically unitize the documents where possible and shall provide optical character recognition ("OCR") where practicable.  If any original hard-copy document has notes affixed thereto or attachments, the Parties

will scan and produce copies of the notes or attachments, unless privileged or otherwise protected, in the same manner as other documents. Each document's electronic image will convey the same information and image as the original document. Hard-copy documents should contain the following coding fields to the extent reasonably available:

    a.    Custodian (name of custodian where document originated)

    b.    Bates Begin (beginning production number)

    c.    Bates End (ending production number)

    d.    Confidentiality properties (populated with the confidentiality status)

    e.    Redaction (whether the document contains redactions; yes/no)

    f.    Redaction_Reason (privilege or social security numbers only)

    g.    Relative Path (relative path to the OCR/Txt Files)

    h.    Production Volume

4. **Non-email ESI.** Unless agreed upon by the Parties or a third party, or upon order by a court, non-email ESI originally maintained as ESI shall be produced in black and white, single-page, 300 DPI, Group IV TIFF format. Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a Party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with a quality setting of 75% or higher, with load files. Images for documents created with office or personal productivity software (*e.g.*, word processing documents, spreadsheets, and presentations) will include tracked changes, comments, hidden rows, columns or worksheets, speaker notes, and any other similar content that can be made visible with the application. Non-email ESI shall be produced with the following metadata fields in Concordance compatible load files, including Opticon/ Image load files, except that Excel spreadsheets (.xls, .xlsx), comma delimited text files (.csv), media files (e.g., video and audio files) and presentation files, such as

PowerPoint files (.ppt, .pptx), shall be produced in native format. A placeholder TIFF shall be provided for all files produced in native format. The placeholder should be bates stamped with the production number of the native file. The load files must contain the following fields (to the extent the data is able to be automatically extracted from the file and/or is available without manual input):

    a.    Custodian (name of custodian where document originated)

    b.    Custodians All (all custodians who were in possession of a de-duplicated document. This field should be populated as last name, first name and separated by semicolons for each custodian)

    c.    Author (author of file from properties)

    d.    Doc Title (title of file from properties)

    e.    Doc Subject (subject of file from properties)

    f.    Created Date (date the file was created)

    g.    Created Time (time the file was created)

    h.    Last Modified Date (date the file was last modified)

    i.    Last Modified Time (time the file was last modified)

    j.    Last Saved By (name of user who last saved the file)

    k.    File Name (original name of the file)

    l.    File Path (original location where the files existed at the time of collection)

    m.    File Path All (the file paths from the locations from which the items were stored by each custodian in the usual course of business separated by semicolons)

    n.    File Ext (extension for the file)

    o.    MD5 Hash (or equivalent)

    p.    Bates Begin (beginning production number)

    q.    Bates End (ending production number)

r. A field populated with the Bates number of the first page of the family group of documents (BEG BATES ATT)

s. A field populated with the Bates number of the last page of the family group of documents (END BATES ATT)

t. Attachment Name (original file name of all attachments to a parent document)

u. Page count

v. Record Type (email, email-attachment, edoc)

w. Time zone (Coordinated Universal Time)

x. Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format

y. Confidentiality (populated with the confidentiality status)

z. Redacted [Yes/No] (populated with the redaction status as a metadata field). For documents that are produced with redactions, each redaction will contain a black or white box with the word "Redacted" such that OCR text of the document will enable searching for "redacted" and locating the precise places where the redaction was done. All files that are redacted will be provided in TIFF format only and the only text provided is that which is OCRed.

aa. Redaction_Reason (privilege or social security numbers only)

5. **Emails.** Unless agreed upon by the Parties or a third party, or upon order by a court, emails shall be produced in black and white, single-page, 300 DPI, Group IV TIFF format. Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a Party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with a quality setting of 75% or higher,

with load files. Emails shall be produced with the following metadata fields in Concordance load files, including Opticon/ Image load files as described, except that Excel spreadsheet attachments (.xls, .xlsx), comma delimited text file attachments (.csv), media file attachments (e.g., video and audio files), and presentation file attachments, such as PowerPoint files (.ppt, .pptx), shall be produced in native format. A placeholder TIFF shall be provided for all files produced in native format. The placeholder should be bates stamped with the production number of the native file. The load files should contain the following fields (to the extent the data is able to be automatically extracted from the file and/or is available without manual input):

    a.    Custodian (name of custodian where the document originated)

    b.    Custodians All (all custodians who were in possession of a de-duplicated document. This field should be populated as last name, first name and separated by semicolons for each custodian)

    c.    Author (From field)

    d.    CC

    e.    BCC

    f.    Recipient (To field)

    g.    Subject (subject line of the email)

    h.    MD5 Hash (or equivalent)

    i.    Date Sent (date the email was sent)

    j.    Time Sent (time the email was sent)

    k.    Date Received (date the email was received)

    l.    Time Received (time the email was received)

    m.    File Ext (extension for the file)

    n.    File Path (folder where the email was located at the time of collection)

o. File Path All (the file paths from the locations from which the items were stored by each custodian in the usual course of business separated by semicolons)

p. Bates Begin (beginning production number)

q. Bates End (ending production number)

r. Attachment Name (original file name of all attachments to a parent document)

s. A field populated with the Bates number of the first page of the family group of documents (BEG BATES ATT)

t. A field populated with the Bates number of the last page of the family group of documents (END BATES ATT)

u. Page count

v. Record Type (email, email-attachment, edoc)

w. Time zone (Coordinated Universal Time)

x. Confidentiality (populated with the confidentiality status)

y. Redacted [Yes/No] (populated with the redaction status as a metadata field). For documents that are produced with redactions, each redaction will contain a box with the word "Redacted" such that OCR text of the document will enable searching for "redacted" and locating the precise places where the redaction was done.

z. Redaction_Reason (privilege or social security numbers only)

aa. Native link (path to the native file as included in the production e.g., d:\PROD00l\natives\ABC000l5.xls) for all files produced in native format.

6. **Email Threading.** Email thread analysis may be utilized to reduce the volume of emails reviewed; however, all responsive lesser included threads must be produced as separate documents.

7. **Bates Numbering.** Each page of a produced document shall have a legible, unique page identifier ("Bates Number") that is sequential within a given document and across the Party's production sets. Each Bates Number must be marked in the lower right corner at a location that does not obliterate, conceal, or interfere with any information from the source document. Confidentiality designations, if needed, must be marked in the lower left corner at a location that does not obliterate or obscure any information from the source document. Each image file shall be named with the Beginning Bates Number of the document, followed by the extension ".TIF." Any native documents shall be named with the Beginning Bates number of the document.

8. **Zipped or Compressed Files.** All compressed or zipped ESI (e.g., .CAB, .GZ, .TAR. .ZIP) shall be unzipped or decompressed during processing in a reiterative manner to ensure that a compressed file within a compressed file is decompressed into the lowest possible compression resulting in individual files. To the extent an electronic file contains embedded files, such files shall be produced as attachments in sequential order as part of a family.

9. **Encrypted Files.** For any discoverable ESI that exists in encrypted format (e.g., password-protected), the producing party will take reasonable steps to decrypt any such files prior to production. Discoverable files that cannot be decrypted through reasonable efforts should be produced in their original format or promptly identified to the opposing party, and the Parties agree to meet and confer regarding how such information should be handled.

10. **Non-Convertible Files.** Files to be processed may be identified through the use of an inclusionary list of file types that typically contain meaningful user-created data. The following categories of electronic files may be specifically excluded from collection, review and production:

    a.    System or executable files (.exe, .dll, etc.);

b. ESI or data with a hash value that matches a value on the list(s) of known operating system and application files provided by the National Software Reference Library ("NSRL"), based out of the National Institute of Standards in Technology ("NIST");

c. ESI or data with file extensions that typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format, including: ani; bat; c; cab; cfg; class; dll; ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; out; pcd; pcx; reg; sfw; sys; tag; ttf; and xp.

11. **OCR/Extracted Text.** The Parties will produce corresponding document level text files—extracted text if available in the native file, or OCR for documents with no extractable text and for redacted documents—for all produced documents. The OCR/extracted text files will be provided in a manner suitable for importation into commercially available document management or litigation support software (*i.e.*, Relativity). OCR/extracted text files will be provided in Text file format with individual files corresponding to each document. The file name of each extracted or OCR text file will be the Bates number of the image of the first page of the corresponding document, followed by the extension ".txt."

12. **De-Duplication:** The Parties shall make reasonable efforts to de-duplicate ESI. All ESI will be de-duplicated using MD5 Hash, SHA-or Relativity Hash Values at the family level. The Parties shall only produce one document image for duplicate ESI documents within a duplicate group, with an "All Custodians" Metadata field identifying all the custodians who possessed copies of the document. For the avoidance of doubt, this paragraph is intended only to minimize the review burden on all Parties by allowing for the removal of exact duplicates within a Party's collections; nothing in this paragraph will be interpreted to authorize the removal of non-duplicative documents from the universe of documents that should be reviewed pursuant to the Parties' respective search

protocols.

13. **Production of Text Messages, Internal Communications, and Social App Communications.** Absent a showing of undue burden or other good cause, text messages (SMS messages), collaboration system messages (e.g., Slack), and social media messages (e.g., WhatsApp) will be searched and produced in 24-hour conversation summaries for custodians whom a Party reasonably believes possess potentially relevant communications that solely exist in these data sources, subject to the Parties' agreed-upon search criteria, and subject to any applicable privacy or any other applicable laws. The load files should contain the following fields (to the extent the data are able to be automatically extracted from the file and/or are available without manual input):

    a. Text path

    b. Chat account (account identifier or source of data, i.e., phone number or username)

    c. Chat application (Application source of text messages, i.e., native messages, WhatsApp, etc.)

    d. Chat participants (All individuals (name and/or number/username) in text/chat conversation (even if not an active participant in the current 24-hr excerpt)

    e. Chat start time (Timestamp of first message in 24-hr conversation in HH:MM:SS AM/PM format)

    f. Chat end time (Timestamp of last message in 24-hr conversation in HH:MM:SS AM/PM format)

    g. Confidential properties (populated with the confidentiality status)

    h. Redaction properties (populated with the redaction status). For documents that are produced with redactions, each redaction will contain a box with the word "Redacted" such that OCR text

of the document will enable searching for "redacted" and locating the precise places where the redaction was done.

14. **Document Production.** Documents shall be produced or provided via a secure encrypted electronic file transfer or file sharing system (e.g., FTP site). To the extent it is not practicable to produce or provide documents via secure electronic file transfer system, documents will be produced or provided in encrypted format on a portable hard drive. When reasonably feasible, each production shall be accompanied by a cover letter containing, or, if produced in a physical format, labeled with, (1) the producing Party's name; (2) the production date; (3) the Bates range of the materials contained on the Production Media; and (4) the Confidentiality status of the documents in the production. Any password necessary to access the production should be transmitted separately to all receiving parties as part of a cover letter or other transmittal notification. The password should not be included with or as part of the encrypted container or appear on labels attached to the media containing the production.

15. **Color.** Where color is material to the interpretation of ESI and upon reasonable request, a receiving Party may request that the ESI be produced in color.

16. **Native Format Copies.** The Parties shall, upon reasonable request, make native format copies of any produced, unredacted document not otherwise required to be produced in native format under this Protocol available for inspection and copying. The Party requesting the inspection and copying shall bear the cost of any such request.

17. **Unitizing of Documents.** Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., documents should be unitized as kept in the ordinary course of business).

18. **Confidentiality Designations.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. To the extent responsive documents are

produced in native format, confidentiality designations will be identified in the file name and stamped on the placeholder image.

19. **Hyperlinked Documents.** The Parties agree that, when producing ESI, the Producing Party is not obligated to collect or produce as family members documents that correspond to hyperlinks contained within that ESI, absent agreement of the Parties or a showing of good cause. If a Receiving Party identifies a specific hyperlinked document that it believes is relevant and necessary, the Parties shall meet and confer in good faith to determine whether the document should be collected and produced. Custodial or non-custodial sources, including but not limited to OneDrive, SharePoint and Google Drive, utilized by a Producing Party's email system as a repository for documents which may be hyperlinked in lieu of attachment shall not be excluded from that Party's search, review, and production processes for non-Email ESI.

II. **Processing of Third-Party Documents**

20. A Party that issues a subpoena requesting the production of documents ("Issuing Party") shall include a copy of this Order and the Protective Order in this case with the subpoena. The Issuing Party shall also state that the Parties have requested that third parties produce documents in accordance with the specifications set forth in this Order and the Protective Order.

21. The Issuing Party shall ensure that any documents it obtains pursuant to a subpoena are produced to all Parties within two weeks of receiving the third-party production.

22. If a third-party production is not Bates stamped, the Issuing Party will endorse the third-party production with unique prefixes and bates numbers prior to producing them to the other Party. The Issuing Party bears no responsibility for further conforming any third-party production to the requirements of this Protocol.

23. Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

### III. Privilege Logs

24. The Parties agree that any hard copy documents or ESI withheld or redacted on privilege grounds will be recorded on a line-by-line privilege log, with control numbers assigned by the producing Party. The Parties agree that a privilege log shall be provided within 30 days of substantial completion of document production, and that any supplements to that privilege log shall be provided no later than 30 days prior to the completion of fact discovery.

25. The Parties shall produce privilege logs in Excel or similar format that permits text searching, filtering, and sorting. Each installment of a privilege log shall be produced in chronological order, with documents for which date information is unavailable at the end of the log.

    a. A unique document identification number for each entry that remains constant even if the logs are sorted or revised. The identifier shall be unique to each entry and not as to a document family;

    b. Document type;

    c. Date (date sent for correspondence such as emails, memos and letters; date created for other documents);

    d. Custodian;

    e. The title of the document, or subject/re: line (unless that information is itself subject to a claim of privilege, in which case that withholding shall be indicated on the log);

    f. From;

    g. To;

    h. CC;

       i.      BCC;

       j.      All privilege(s) or protection(s) claimed;

       k.      A description of the document, its subject matter, and its contents sufficient to explain the basis for the claim(s) of privilege and to satisfy Federal Rule of Civil Procedure 26(b)(5);

       l.      The beginning bates number of the document (if produced in redacted form).

26. All names appearing in a privilege log shall reflect the full name and email address values as included in the available metadata (e.g., shall not be redacted to initials). Privilege logs shall identify attorneys on the face of the log with an asterisk (*).

27. The Parties agree to meet and confer in good faith regarding any disagreements over the sufficiency of a privilege log or privilege log entry.

28. Each individual email or communication withheld or redacted for privilege shall be logged regardless of whether such individual email or communication is also a lesser-included component of a later email or communication that is logged. The privilege description of an email chain in a Party's privilege log must adequately describe the basis for the privilege in the entire email chain. For the avoidance of doubt, a Party need not individually list the "To," "From," "CC"," "BCC," or other descriptors such as Date and Subject, for the earlier emails in the chain.

29. Each Party reserves the right to request that another Party log communications with outside litigation counsel. Such a request may be made at an appropriate time in connection with document discovery in this Action. If the Parties cannot agree on this issue, they will present competing proposals to the Court.

## IV. Inadvertent Disclosure

30. Inadvertent disclosure of information or documents subject to a claim of privilege or work product protection shall be governed by Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502, subject to the following two paragraphs below.

31. The production or disclosure of any information (including documents) in this action that a Party or third-party ("Producing Party") later claims should not have been produced due to a privilege or protection from discovery—including, but not limited to, any attorney client privilege, work product privilege, joint defense privilege, or settlement privilege—shall not constitute a waiver of, or estoppel as to, any such privilege or protection, unless (1) the Producing Party makes affirmative use of such information in the Action; or (2) the Producing Party does not object within a reasonable time to the party to whom the information was disclosed or produced (the "Recipient Party") making use of such information in the Action (e.g., at a deposition or in a Court filing). A Producing Party may request the return, destruction, or sequestration of such information, which request shall identify the information and the basis for requesting its return or destruction. If a Party receives information that it believes in good faith is subject to a valid claim of privilege or protection from discovery, the Recipient Party shall promptly identify the information to the Producing Party.

32. When a Producing Party or Recipient Party identifies such privileged or protected information, the Recipient Party: (1) shall not use, and shall immediately cease any prior use of, such information; (2) shall take reasonable steps to retrieve the information from others to which the Party disclosed the information; (3) shall, within ten business days of the Producing Party's request, return to the Producing Party or destroy or sequester the information and all copies thereof; and (4) shall confirm to the Producing Party the destruction or sequestration, under (3) above, of all copies of the information not returned to the Producing Party. No

one shall use the fact or circumstances of production of the information in this action to argue that any privilege or protection has been waived. Notwithstanding this provision, no Party shall be required to return, destroy, or sequester any information that may exist on any disaster recovery backup system.

## V. **Limitations**

33. Nothing in this Order shall prohibit a Party from seeking modification of any of its terms either by stipulation or by application to the Court. The Parties will meet and confer to attempt to resolve any dispute regarding proposed modifications before seeking Court intervention.

34. This Order relates to the general protocol of identifying and producing hard copy documents and ESI, and is not otherwise intended to alter the Parties' respective rights and obligations under the Federal Rules of Civil Procedure. The Parties may stipulate or any Party may bring a motion to modify or clarify the application of this Order to a particular document or set of documents, particular set of ESI, or otherwise.

35. The Parties will meet and confer regarding the production of any type of document or data that is not addressed in this Stipulation.

**IT IS SO ORDERED.**

Dated:   December 19, 2025          By: _____
                                        Hon. Charles F. Eick
                                        United States Magistrate Judge

Dated: December 19, 2025

/s/ Jeffrey A. Rosenfeld                /s/ Maurice R. Mitts
ALSTON & BIRD LLP                       WINNICK LAW, PC
Jeffrey A. Rosenfeld (#136896)          Alexander H. Winnick
jeffrey.rosenfeld@alston.com            2450 Colorado Avenue
Jesse Steinbach (#278923)               Suite 100E

1  jesse.steinbach@alston.com
2  Brooke Bolender (#340689)
   brooke.bolender@alston.com
3  350 South Grand Avenue, 51st Floor
4  Los Angeles, CA 90071
   Telephone: (213) 576-1143
5
6  WILLIAMS & CONNOLLY LLP
   Kenneth J. Brown*
7  kbrown@wc.com
8  Jonathan B. Pitt*
   jpitt@wc.com
9  William P. Ashworth*
   washworth@wc.com
10 R. Kennon Poteat III*
11 kpoteat@wc.com
   Kathryn E. Hoover*
12 khoover@wc.com
13 Ilana B. Frier*
   ifrier@wc.com
14 680 Maine Avenue, SW
15 Washington, DC 20024
   Telephone: (202) 434-5000
16 Facsimile: (202) 434-5029
17
18 KLEINBARD LLC
   Steven J. Engelmyer*
19 sengelmyer@kleinbard.com
20 Three Logan Square
   1717 Arch Street, 5th Floor
21 Philadelphia, PA 19103
22 Telephone: 215-568-2000
   * admitted *pro hac vice*
23 *Attorneys for Plaintiffs*

Santa Monica, CA 90404

MITTS LAW LLC
Maurice R. Mitts*
mmitts@mittslaw.com
1822 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 866-1010
Facsimile: (215) 866-0111

* admitted *pro hac vice*

*Attorneys for Defendants WCO Spectrum LLC, Academia Spectrum LLC, Karen Winnick, Carl Katerndahl, Andreas Bitzarakis, and Tyler Kratz*

24
25
26
27
28

JOINT STIPULATION FOR ENTRY OF AGREED DISCOVERY ORDER

## LOCAL RULE 5-4.3.4(a)(2)(i) CERTIFICATION

The filer of this document attests that all other signatories listed above on whose behalf this filing is submitted concur in the filing's content and have authorized the filing.

                                               */s/ Jeffrey A. Rosenfeld*
                                                 Jeffrey A. Rosenfeld