# Exhibit 1

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

KLEINBARD LLC
By: Steven J. Engelmyer, PA ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | | |
|---|---|---|
| TDI ACQUISITION SUB LLC, | : | IN THE COURT OF COMMON PLEAS |
| | : | OF BERKS COUNTY, PENNSYLVANIA |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION/DECLARATORY |
| | : | JUDGMENT |
| ALBRIGHT COLLEGE, | : | |
| | : | NO. 21-04881 |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## <u>NOTICE TO DEFEND</u>

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

# NOTICE TO DEFEND
# NOTIFICACIÓN PARA DEFENDERSE

## NOTICE

**You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

**Lawyers' Referral Service of the
Berks County Bar Association
544 Court Street
Reading, Pennsylvania 19601
Telephone (610)375-4591
www.BerksBar.org**

## AVISO

**Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

**USTED DEBE LLEVARLE ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O NO PUEDE CORRER CON LOS GASTOS DE UNO, VAYA O LLAME POR TELEFONO A LA OFICINA EXPUESTA ABAJO. ESTA OFICINA PUEDE POVEERLE INFORMACION RESPECTO A COMO CONTRATAR A UN ABOGADO.**

**SI NO PUEDE CORRER CON LOS GASTOS PARA CONTRATAR A UN ABOGADO, ESTA OFICINA PUDIERA PROVEERLE INFORMACION RESPECTO A INSTITUCIONES QUE PUEDAN OFRECER SERVICIOS LEGALES A PERSONAS QUE CALIFICAN PARA LA REDUCCION DE HONORARIOS O QUE NO TENGAN QUE PAGAR HONORARIOS.**

**Servicio de Recomendación para Contratar Abogados
del Colegio de Abogados del Condado Berks
544 Court Street
Reading, Pennsylvania 19601
Teléfono (610) 375-4591
www.BerksBar.org**

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

KLEINBARD LLC
By: Steven J. Engelmyer, PA. ID No. 42840
sengelmyer@kleinbard.com
Eric J. Schreiner, PA ID No. 76721
eschreiner@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000
*Attorneys for Plaintiff*
*TDI Acquisition Sub LLC*

| | |
|---|---|
| TDI ACQUISITION SUB LLC,<br><br>        Plaintiff<br><br>v.<br><br>ALBRIGHT COLLEGE,<br><br>        Defendant. | IN THE COURT OF COMMON PLEAS<br>OF BERKS COUNTY, PENNSYLVANIA<br><br>CIVIL ACTION/DECLARATORY<br>JUDGMENT<br><br>NO. 21-04881<br><br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiff TDI Acquisition Sub LLC, by its undersigned counsel, hereby alleges the

following for its complaint against Defendant Albright College:

### NATURE OF THE ACTION

1.      In this action, Plaintiff TDI Acquisition Sub LLC ("TDI") seeks to prevent

Defendant Albright College ("Albright") from selling—in breach of the parties' contract—a

Federal Communications Commission ("FCC") license to use certain radio frequency spectrum in

the Reading, Pennsylvania area (the "License").

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

2.      Section 3(a) of the contract is an exclusivity provision that prohibits Albright from selling or assigning the License unless the exception to exclusivity set forth in subsection 10(c) applies.  That exception cannot apply if, among other things, the proposed buyer or assignee is a "Competing Entity," as that term is defined in subsection 10(c).

3.      Albright is the party seeking to invoke this exception to exclusivity, so it bears the burden of establishing that the exception applies.

4.      Albright has not carried that burden.

5.      Although both it and the proposed assignee of the License—an entity called WCO Spectrum LLC ("WCO"), which provided Albright with a non-binding offer to buy the License—have offered purely conclusory statements to the effect that WCO is not a "Competing Entity," both Albright and WCO have refused to provide any information that would substantiate (or disprove) those statements.  And the little information WCO has disclosed provides reason to believe the exception does not apply.

6.      Accordingly, unless and until Albright establishes that the exception to exclusivity applies—including, most significantly, that WCO is not a "Competing Entity"—it should not be permitted to sell or assign the License to WCO, or should be required to unwind any such transaction to the extent Albright already has purported to effect it.

7.      In addition, Section 3(b) of the contract grants TDI a Right of First Refusal ("ROFR") in the event a third party offers to purchase the License from Albright.  Under that provision, once Albright has established that there is a *bona fide* offer that it has validly elected to accept, TDI has 30 days to decide whether to match the offer.

8.      It is critically important that the 30 days does not start running until Albright has established that the third-party offer is *bona fide* and capable of being accepted.  Otherwise,

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Albright could coerce TDI into matching an invalid offer and obtaining funds to which it was never entitled.

9.      In this case, because Albright has not established that WCO's non-binding offer is *bona fide* and capable of being accepted—including most significantly because it has not established that WCO is not a Competing Entity—TDI also seeks a declaration that the 30-day period in which it may exercise its ROFR has not yet begun to run.

## PARTIES

10.     Plaintiff TDI is a Delaware limited liability company with its main address at 12920 SE 38th St., Bellevue, Washington 98006.  Its ultimate parent is T-Mobile, US, Inc.

11.     Defendant Albright College is a Pennsylvania non-profit corporation headquartered in Reading, Pennsylvania, with its main address at 1621 N. 13th St., Reading, Pennsylvania 19604.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 42 Pa. C.S.A. § 931 and 42 Pa. C.S.A. § 7532.

13.     This Court has general personal jurisdiction over Albright because it is incorporated in Pennsylvania and its principal place of business is in Pennsylvania.  This Court has specific personal jurisdiction over Albright because Albright's conduct relative to this dispute occurred in this forum.

14.     Pursuant to Pennsylvania Rule of Civil Procedure 2179(a)(1)-(3), venue is proper because Berks County is the county where (1) Albright's principal place of business is located; (2) Albright regularly conducts business; and (3) the transaction or occurrence took place out of which TDI's causes of action arose.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

## BACKGROUND

**A.    The License.**

15.    Albright has long held an FCC license to use four unique channels of radio-frequency spectrum in the Reading, Pennsylvania area.  The channels are designated D1, D2, D3, and D4, and the FCC "call sign" for the license is WND475.

16.    The licensed channels are part of the Educational Broadband Service ("EBS"), which is a range of spectrum that the FCC historically has licensed to educational organizations.

17.    There are 20 EBS channels in any particular geographic area.  They fall within the band of spectrum from 2496 to 2690 MHz, commonly referred to as the "2.5 GHz" spectrum band.

18.    On March 2, 2007, Albright entered into a lease agreement for the four channels with Nextel Spectrum Acquisition Corporation (the "Lease Agreement").[1]

19.    Nextel Spectrum Acquisition Corporation subsequently changed its name to "NSAC LLC," and on November 5, 2019, NSAC LLC executed an assignment all of its rights and obligations under the Lease Agreement to TDI.  *See* Ex. B.  The assignment was *pro forma* until deemed effective, in accordance with FCC rules, when TDI filed a new lease agreement with the FCC on September 15, 2020.  *See* Ex. C.

20.    Following the Sprint–T-Mobile merger in April 2020, TDI is now an indirect subsidiary of T-Mobile US, Inc.  Its business is to acquire and hold spectrum rights for use by other T-Mobile affiliates.

---

[1] A copy of the Lease Agreement is attached hereto as Exhibit A.  TDI has filed the Lease Agreement with minor redactions and has filed a motion to seal the redacted information concurrently with this Amended Complaint.  As further set out in that motion, these redactions prevent the disclosure of TDI's confidential trade secret information contained in its EBS lease agreements.  TDI has also filed another EBS lease agreement (Exhibit G) entirely under seal for reasons set forth in its motion to seal.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

**B.    Relevant Lease Agreement Terms**

21.    The Lease Agreement contains several terms that are relevant in the event that Albright—referred to in the Lease Agreement as "Licensee"—receives an offer to purchase the License.

22.    First, Section 3(a) provides in relevant part that, "[e]xcept as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels . . . ."

23.    Subsection 10(c), in turn, provides:

Subject to [TDI's] ROFR [i.e., Right of First Refusal], and FCC Rules, Licensee may negotiate and enter into any contract to assign the License to a third party provided that:

(i)     Licensee agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Licensee's obligations hereunder and acknowledges all of [TDI's] rights hereunder . . . ;

(ii)    the assignment and assumption agreement is in a form reasonably acceptable to [TDI];

(iii)   Licensee provides [TDI] at least thirty (30) days advance notice of such proposed assignment, and upon closing of such assignment, provides notice of the closing of the assignment and a fully executed copy of the assignment and assumption agreement to [TDI]; and

(iv)    the assignee is not a Competing Entity (defined below).

24.    Subsection 10(c) defines a Competing Entity as "any party that (1) offers, provides or delivers a commercially available telecommunications service using EBS or BRS spectrum[2] within the United States of America (a 'Competing Service'), (2) owns (except a less than one

---

[2] EBS and BRS, which is short for Broadband Radio Service spectrum, occupy different parts of the 2.5 GHz spectrum band.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

percent (1%) interest in a publicly traded company) any interest in any entity which provides a Competing Service, [or] (3) has granted, or is affiliated with a party that has granted, to any provider of a Competing Service a global or overarching agreement for the right, option, or preemptive right, to use or otherwise acquire all or any portion of the EBS or BRS spectrum that such party owns or subsequently acquires."

25.     Under the ROFR provision of subsection 3(b), TDI has the right to "match[] any acceptable *bona fide* offer received by Licensee from a third party."

26.     To effectuate this right, the provision requires that, "[w]ithin thirty (30) days following Licensee's determination to accept a *bona fide* third party offer (the 'Third Party Offer'), Licensee will notify [TDI] of any Third Party Offer, including (i) the identity of the offeror, (ii) the terms of the offer, and (iii) a true and correct copy of the operative agreement, letter of intent, term sheet or other similar definitive then-existing documentation relating to the offer."

27.     Once all of those conditions (as well as the other conditions precedent in the Lease Agreement) are satisfied—including that Albright establishes that the offer is *bona fide* and capable of being accepted—TDI has the right to "notify Licensee within thirty (30) days following receipt of such notification if [it] is exercising its ROFR."

28.     Finally, subsection 3(f) of the Lease Agreement grants TDI a "Right to Participate":

If Licensee decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part or the whole of the Channels . . . , then Licensee will provide [TDI] with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity:

(i)     to submit bids, proposals and offers for the Channels;

(ii)    to receive information with respect to such bids, proposals, offers and counters thereto;

(iii)   to discuss such information with Licensee;

(iv)    to counter any such bids, proposals or offers; and

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

> (v) to be provided with copies of all open bids, proposals, offers, counter-bids and counter-offers promptly after they are received by Licensee.

This right to participate does not limit in any manner, and is in addition to, the ROFR set forth in Subsection 3(b).

29.     Like the provisions of subsections 3(a), 3(b), and 10(c), subsection 3(f) constitutes a condition precedent that Albright must satisfy before selling the License.

## C.    The FCC Changes the Rules for Holding EBS Licenses

30.     Prior to April 2020, FCC regulations allowed only educational entities to hold EBS spectrum licenses.

31.     The FCC, however, permitted EBS licensees, such as Albright—most of which lacked the technical knowledge, expertise, and infrastructure to operate a commercial telecommunications network—to lease all but five percent of their spectrum to non-educational entities such as TDI.

32.     Nearly all of the 1,300 EBS licensees nationwide did so.  That includes Albright, which entered into the Lease Agreement with TDI's predecessor.

33.     These leases took spectrum that otherwise would have gone unused and used it to support modern high-speed broadband telecommunications services.

34.     Effective April 27, 2020, the educational-use requirement for EBS licenses was eliminated.

35.     According to the FCC, this change was enacted because "technological changes over the last 30 years enable any educator with a broadband connection to access a myriad of educational resources."  Transforming the 2.5 GHz Band, 86 Fed. Reg. 10839, 10840 (2021).

36.     Hence, "[o]nly a handful of EBS licensees ha[d] deployed their own networks or use[d] their EBS licenses in a way that require[d] dedicated spectrum."  *Id.*

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

37.    Instead, most licensees "rel[ied] on lessees [such as TDI] to deploy and operate broadband networks and use[d] the leases as a source for revenues or devices." *Id.*

38.    With EBS licenses now available to non-educational actors—and with 2.5 GHz spectrum being one of the most important components of the emerging 5G telecommunications technology—several new entities have entered the market for spectrum licenses, seeking to acquire such licenses for commercial gain.

39.    One such entity is Winnick & Company, which operates through a number of affiliates, including WCO.

40.    Prior to its dealings relative to this case, WCO had attempted to acquire dozens of EBS licenses.

41.    Winnick & Company touts on its website that it has played an instrumental role in founding and operating multiple telecommunications providers, including Global Crossing and MetroPCS.  *See* Selected Transactions, www.winnickco.com/transactions.html (last visited June 29, 2021).

42.    WCO's letters to La Roche University ("La Roche"), another Pennsylvania college which received a WCO offer, and Albright both state that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."  Exs. D at 1, E at 1.

43.    Although it has refused to disclose its plans for any licenses it acquires, it is clear that WCO is trying to assemble a large block of EBS spectrum as would be used in a telecommunications network.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

**D.    WCO's Earlier Offer to La Roche University**

44.    This is not the first time TDI has been forced to vindicate its rights under an EBS lease agreement under the threat of a purported sale of the license to WCO.

45.    In October 2020, WCO offered to purchase an EBS license leased by TDI and held by La Roche. *See* Ex. D.

46.    La Roche received a term sheet from WCO that was substantially similar to the one it presented to Albright. *See* Ex. D at 3–5. The cover letter to that term sheet states that (a) WCO is a "specialist in financing ***and operating telecommunications assets and companies***"; (b) WCO "has previously been active in the telecom industry"; and (c) Gary Winnick's companies "have consistently received FCC transfer approvals." Ex. D at 1 (emphasis added).

47.    After it learned of the La Roche term sheet, TDI asserted its rights under its EBS lease agreement with La Roche.

48.    On November 25, 2020, Heather Brown, in-house counsel for T-Mobile, sent a letter to Mary Beth Fetchko, Esq., General Counsel at La Roche. Ex. F. The letter requested the information and assurances due to TDI under the La Roche lease agreement.[3]

49.    The La Roche lease agreement provided TDI with substantially similar rights as the Lease Agreement at issue here, including but not limited to:  (i) ███████████████ ██████████████████████████████████████████████; (ii) ███ ████████████████████████████████████; (iii) ███████ ████████████████████████████████; (iv) ██████████████; and (v) ███████████████████████████████.

---

[3] The letter referenced NSAC rather than TDI, but, as stated, NSAC had assigned its rights to TDI.

██████████████████████████████████████████████████████

█████████████████████████. *See* Ex. G.

50.    In response, on December 8, 2020, WCO sent TDI a letter purporting to assure it

that WCO was not a ███████████████; but the letter merely parroted the definition of

███████████████ from the lease agreement and summarily denied that WCO meets any of that

definition's criteria.  Ex. H.  WCO provided no facts to support these conclusory assertions.

51.    The next day, TDI and La Roche executed a standstill agreement to give themselves

more time to fulfill TDI's rights.

52.    As part of that effort, on December 15, 2020, TDI had a call with Winnick & Co.

Chairman Gary Winnick.  The call was unproductive, as Mr. Winnick did not address any of the

contractual rights or concerns raised in Ms. Brown's November 25 letter.  He did, however, make

clear that WCO's efforts to acquire EBS licenses would not stop with La Roche.

53.    WCO and La Roche also requested written questions from TDI regarding the

specific information to which TDI was entitled.

54.    TDI complied, and on December 17 and 18, 2020, sent similar sets of questions to

La Roche and WCO, respectively.  *See* Exs. I, J.  These included a series of questions under the

heading "Whether WCO Is a ██████████████" which was designed to probe the veracity of

WCO's conclusory assertions that it does not meet the ████████████████████.

55.    On December 23 and 24, 2020, WCO and La Roche responded.  *See* Exs. K, L.

56.    WCO again recited the Lease Agreement's definition of ████████████████ stated

that it does not meet any of the three criteria, and provided no supporting information or

explanation for that assertion.  WCO refused to respond to any of the other questions—including

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

those about the statements in its cover letter—which it claimed "are outside the bounds of any

legal obligation WCO has to [TDI]." Ex. K.

      57.     La Roche's response was similarly unilluminating on the question of whether WCO

is a ▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. L.

      58.     TDI avoided litigation with La Roche only by exercising its ROFR and purchasing

the La Roche license.

**E.    WCO's Non-Binding Term Sheet to Albright**

      59.     On April 30, 2021, WCO sent Albright a two-page, non-binding term sheet, which

proposed a sale of the License for $16.2 million. *See* Ex. E.

      60.     The term sheet purports to "summarize[] the basic terms and conditions pursuant

to which WCO Spectrum, LLC (the 'Buyer') proposes to acquire a certain [EBS] license from

Albright College."

      61.     It makes clear, however, that

> The terms and conditions summarized herein are provided FOR DISCUSSION
> PURPOSES ONLY.  They do not represent a binding offer, agreement, or
> commitment from the Buyer to acquire the EBS license or any other assets, nor are
> they all-inclusive.  Closing of the proposed transaction is subject to completion of
> due diligence by the Buyer, the satisfaction of customary conditions precedent and
> execution of definitive agreements mutually acceptable to the parties (the
> 'Definitive Agreements'), the provisions of which shall be materially consistent
> with, though supersede, this Term Sheet and all other understandings between the
> parties.

Ex. E at 3.

      62.     The accompanying cover letter similarly provides that it "is not, and should not be,

considered a legally binding indication or agreement in any manner, and the failure to execute

definitive documentation or consummate the proposed acquisition shall impose no liability on

WCO or Licensee." Ex. E at 2.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

**F.        TDI Unsuccessfully Seeks Information to Which It Is Entitled**

63.        Following its receipt of the Albright term sheet on May 4, 2021, TDI sought the various types of information and assurances to which it is entitled under the Lease Agreement—just as it did with La Roche.

64.        To that end, on May 11, 2021, Ms. Brown sent a letter to Jeffrey L. Strader, Vice President for Finance and Strategic Partnerships at Albright.  *See* Ex. M.

65.        In this May 11, 2021 letter, Ms. Brown requested the information and assurances to which TDI is entitled:

a.    under Section 10(c)(iv), concerning whether WCO is a Competing Entity;

b.    under Section 10(c)(i), to ensure that WCO will "agree[] in writing to assume all of [Albright's] obligations" under the Lease Agreement and "acknowledge[] all of" NSAC's rights thereunder, which, to reiterate, have been assigned to TDI;

c.    under Section 10(c)(ii), to determine whether any proposed agreement—which the April 30, 2021 term sheet explicitly is not—is "in a form reasonably acceptable" to TDI;

d.    under Section 3(b), which requires Albright to provide TDI with a true and correct copy of the "definitive then-existing documentation related to" WCO's offer; and

e.    under the "Right to Participate" set forth in Section 3(f), which grants TDI the right to, *inter alia*, receive "information with respect" to any "bids, proposals, offers, and counters thereto."

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

66.     These rights are critical not only because the requested information is important in its own right, but because it bears directly on whether TDI will exercise its ROFR.

67.     TDI's letter also included a list of questions intended to facilitate the exchange of information required by the Lease Agreement.  *See* Ex. M.

68.     Ms. Brown sent a similar letter to WCO on the same day.  Ex. N.

69.     In that letter, Ms. Brown requested substantially the same information, consistent with TDI's rights under the Lease Agreement.  *See* Ex. N.

70.     Specifically, the letter included a similar series of questions, including several under the heading "Whether WCO Is a 'Competing Entity,'" which were designed to probe the veracity of WCO's conclusory assertions that it does not meet the Lease Agreement's definition of "Competing Entity."  Ex N.

71.     TDI also asked the basis of WCO's statement in its cover letter to Albright that the "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."  Ex. N at 2.

72.     TDI further asked—again—for the basis of WCO's statements in the La Roche offer letter that (a) it is a "specialist in financing ***and operating telecommunications assets and companies***"; (b) WCO "has previously been active in the telecom industry"; and (c) Mr. Winnick's companies "have consistently received FCC transfer approvals."  Ex. N at 2 (emphasis added).

73.     WCO responded in a letter dated May 13, 2021, which was evasive and uninformative.  Ex. O.

74.    With respect to whether it is a Competing Entity, WCO again parroted the Lease

Agreement's definition of "Competing Entity" verbatim and stated that it does not meet any of

that definition's three criteria.  Ex. O at 1.

75.    Again, WCO provided no supporting information or explanation of any kind.  Ex.

O at 1.

76.    WCO also refused to respond to TDI's questions seeking to elicit this

information—including those about the statements in WCO's letters to Albright and La Roche—

which it claimed "are outside the bounds of any legal obligation WCO has to [TDI]."  Ex O at 2.

77.    In addition, although WCO acknowledged that, "[i]f the assignment of the license

WND475, from Albright to WCO is consummated, WCO hereby confirms that it will assume all

of Albright's obligations and acknowledge NSAC's rights under the Lease Agreement," Ex O at

2, it offered no confirmation with respect to TDI's contractual rights.

78.    Albright responded to TDI in a letter dated May 14, 2021.  Ex. P.

79.    Albright's response, while slightly more fulsome than WCO's, provided no

additional information concerning WCO's status as a Competing Entity.  Ex. P.

80.    To the contrary, it stated that, except for referring TDI to the conclusory statements

made by WCO, it "has no other information" about the "Competing Entity" issue or about the

various questions that TDI posed in an effort to elucidate it.  Ex. P at 5.

81.    Albright declined to provide any information regarding its communications with

WCO—which undoubtedly addressed the "Competing Entity" issue—claiming that "the Lease

Agreement does not provide TDI with any right to receive this information."  Ex. P at 4.

82.    Nor did Albright provide any additional information with respect to WCO's

agreement in writing to assume all of Albright's obligations and acknowledge all of the TDI's

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

rights; Albright again merely referred TDI to WCO's letters, which say nothing about TDI.  Ex. P at 3.

83.     Albright's letter then interpreted TDI's informational rights under Sections 3(b) (ROFR) and 3(f) (Right to Participate) in a way that sabotages TDI's ability to verify that any third party buyer of the License is not, in fact, a "Competing Entity."  Ex. P.

84.     Specifically, Albright contended that the phrase "definitive then-existing documentation relating to the offer" in Section 3(b) applies only to "documentation [that] accurately defines the material terms"—i.e., the offer itself, and not any documentation "relating to the offer"—and that TDI's Right to Participate under Section 3(f) is merely a "non-discrimination provision," which similarly does not entitle TDI to receive the information it requested.  Ex. P at 2.

85.     Albright's position, that TDI is entitled to the terms of the offer and nothing more, gives TDI no means with which to vindicate its right to prevent a sale of the License to a Competing Entity and would force TDI to rely on nothing more than WCO's conclusory assertions to that effect.

86.     To be clear, the ROFR period never started running because Albright: (i) did not carry its burden of establishing that WCO is not a Competing Entity, and thus that its term sheet was a "*bona fide* offer" that Albright could validly accept; (ii) has not fulfilled its obligations under Section 3(f) regarding TDI's Right to Participate because it refuses to share with TDI all of the information to which TDI is entitled under that provision; and (iii) has not ensured that WCO has given the required assurances, in writing, acknowledging all of TDI's rights under the Lease Agreement.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

87.     TDI has done everything in its power to obtain the information to which it is entitled without resorting to litigation.  *See* Exs. M (TDI letter to Albright), N (TDI letter to WCO), O (WCO response), P (Albright response).  Those efforts uniformly have been unsuccessful.

88.     Now, as a last resort, TDI brings this action based on Albright's breaches of the exclusivity provision in Section 3(a) and the "Right to Participate" in Section 3(f), and for a declaration that Albright has failed to provide the information needed to start the time period during which TDI may exercise its ROFR.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract – Exclusivity)

89.     Paragraphs 1–88 above are incorporated as if fully set forth herein.

90.     The Lease Agreement constitutes a valid and enforceable contract between TDI and Albright.

91.     TDI complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

92.     Albright breached Section 3(a) of the Lease Agreement.

93.     That section provides that, "[e]xcept as otherwise permitted pursuant to Subsection 10(c), during the Term, Licensee will not negotiate with or enter into any contract or agreement with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels . . . ."

94.     Subsection 10(c), in turn, allows Albright to assign the License only to a third party that "is not a Competing Entity."

95.     Notably, that provision does not provide that Albright may assign the License to a third party that ***represents or states*** that it is not a "Competing Entity"; the provision bars assignment to any third party that ***is in fact*** a "Competing Entity."

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

96.     As a matter of law, because Section 10(c) is an exception to the exclusivity requirement of Section 3(a), Albright bears the burden of demonstrating that the requirements of Section 10(c) are met.

97.     Albright has not carried that burden with respect to showing that WCO is not a Competing Entity under Section 10(c).

98.     The only information that it or WCO has provided concerning the Competing Entity issue is WCO's unsupported statements that it does meet any of the three criteria for qualifying as such an entity.

99.     Albright has informed TDI that it has no information about these issues beyond WCO's assertions; WCO has flatly refused to provide any additional information that would substantiate (or disprove) them; and both Albright and WCO have refused to provide any information about their discussions, which unquestionably addressed the Competing Entity issue.

100.     These failures are especially concerning given that TDI has good reason to suspect that WCO is, in fact, a Competing Entity.

101.     WCO made a point of touting to Albright that "principals of WCO have sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Wireless Telecommunications Operations."  Ex. E at 1.

102.     In addition, in making its offer to La Roche, WCO stated that (a) it is a "specialist in financing *and operating telecommunications assets and companies*"; (b) it "has previously been active in the telecom industry"; and (c) Mr. Winnick's companies "have consistently received FCC transfer approvals."  Ex. D at 1 (emphasis added).

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

103.     Compounding these troubling statements is Winnick & Company's history of operating competing telecommunications providers like Global Crossing and Metro PCS, as well as Mr. Winnick's assertion during the December 15 telephone conversation regarding the La Roche offer that WCO's efforts to acquire EBS licenses would be ongoing.

104.     When TDI has inquired as to the basis for WCO's statements, it has been stonewalled by WCO, La Roche, and now Albright.

105.     That is notable because (a) Albright has had discussions with WCO about the non-binding term sheet, and it is inconceivable that the "Competing Entity" issue was not addressed during those discussions; (b) WCO clearly is attempting to put together a substantial block of EBS spectrum; and (c) an entity seeking to build a 5G network naturally would focus on acquiring 2.5 GHz spectrum.

106.     All of this raises legitimate concerns that WCO is in fact a Competing Entity.

107.     Against this background, Albright has not carried its burden of establishing that WCO is **not** a Competing Entity.

108.     Albright also has not carried its burden with respect to subsection 10(c)(i).

109.     Under Section 10(c), "[s]ubject to [TDI's] ROFR [i.e., Right of First Refusal] . . . Licensee may negotiate and enter into any contract to assign the License to a third party provided that: (i) Licensee agrees in writing to assign all its rights and obligations under this Agreement and such third party agrees in writing to assume all of Licensee's obligations hereunder and acknowledges all of Sprint Nextel's rights hereunder."

110.     As discussed above, WCO has not assured TDI, the current Licensor under the Lease Agreement, in writing that it will "assume all of Licensee's obligations hereunder and acknowledge[] all of [TDI's] rights hereunder."

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

111.    WCO has only offered such assurances to NSAC—TDI's predecessor in interest.

112.    Because Albright seeks to assign the License without having carried its burden to show that the exclusivity exception in Section 10(c) applies, it is in breach of Section 3(a).

113.    Consequently, the Court should enjoin Albright from proceeding with any sale, assignment, or other transfer of the License or its rights thereunder to WCO, or should unwind any such transaction that Albright and WCO already have purported to consummate.

WHEREFORE, TDI respectfully asks the Court to:

a.    Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing Albright from selling, transferring, or assigning the License to WCO or any of its affiliates, or unwinding any such transaction to the extent Albright already has purported to effect it;

b.    Award TDI compensatory damages in an amount exceeding $50,000;

c.    Award TDI all costs and interest allowed by law;

d.    Pursuant to Section 21(f) of the Lease Agreement, award TDI all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with Albright and WCO;

e.    Award TDI such other relief as the Court deems just and reasonable; and

f.    Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

## COUNT II
### (Breach of Contract – Right to Participate)

114.    Paragraphs 1–113 above are incorporated as if fully set forth herein.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

115.    The Lease Agreement constitutes a valid and enforceable contract between TDI and Albright.

116.    TDI complied with all conditions precedent and fully performed its obligations under the Lease Agreement.

117.    Albright breached Section 3(f) of the Lease Agreement.

118.    That section provides that, "[i]f Licensee decides to solicit bids, proposals or offers for the sale, assignment, transfer or use of any part or the whole of the Channels . . . , then Licensee will provide [TDI] with an opportunity no less favorable in timing or substance than the opportunity provided to any other entity . . . (ii) to receive information with respect to such bids, proposals, offers and counters thereto; [and] (iii) to discuss such information with" TDI, in addition to TDI's right to be provided with copies of bids, proposals, and the like under subsection 3(f)(v).

119.    Upon information and belief, Albright solicited bids, proposals, and offers from WCO for the sale or assignment of the License and those solicitations occurred both before and after WCO sent the non-binding term sheet to Albright.

120.    Albright has refused to share extensive information concerning WCO's non-binding term sheet including, without limitation, its refusal to share any information about its communications with WCO, which obviously centered around the term sheet.

121.    Albright thus has failed to provide TDI with the same opportunity as WCO to receive information with respect to WCO's bid and to discuss that information with Albright.

122.    TDI is entitled to all legal and equitable remedies available under the law, including specific performance of Albright's obligations under Section 3(f) of the Lease Agreement.

WHEREFORE, TDI respectfully asks the Court to:

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

a.      Order necessary and appropriate injunctive relief, including a permanent/final injunction preventing Albright from selling, transferring, or assigning the License to WCO or any of its affiliates, or unwinding any such transaction to the extent Albright already has purported to effect it;

b.      Order specific performance by Albright of Section 3(f) of the Lease Agreement, by mandating that Albright share all information requested by TDI concerning, inter alia, WCO's non-binding term sheet and all circumstances surrounding it;

c.      Award TDI compensatory damages in an amount exceeding $50,000;

d.      Award TDI all costs and interest allowed by law;

e.      Pursuant to Section 21(f) of the Lease Agreement, award TDI all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with Albright and WCO;

f.      Award TDI such other relief as the Court deems just and reasonable; and

g.      Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

### COUNT III
### (Declaratory Judgment – ROFR)

123.    Paragraphs 1–122 above are incorporated as if fully set forth herein.

124.    Under Section 3(b) of the Lease Agreement, TDI's time for exercising the ROFR is triggered by Albright's "determination to accept a *bona fide* third party offer."

125.    Because Section 10(c) of the Lease Agreement prohibits the assignment of the License to a Competing Entity, an offer from a Competing Entity is not a *bona fide* offer for purposes of Section 3(b).  Nor is it an offer that is capable of being "accept[ed]."

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

126.    As a matter of law and equity, the time period during which TDI must decide whether to exercise its ROFR does not begin running until Albright has established that the third party offer is *bona fide* and can be accepted.

127.    Otherwise, Albright could obtain an invalid offer—the invalidity of which is concealed—and compel TDI to match it or risk losing its right to do so.  If TDI chose to match it, then Albright would have coerced a significant sum of money ($16.2 million in this case) that TDI never was required to pay.

128.    Such a result is precluded by the Lease Agreement and governing equitable principles.

WHEREFORE, TDI respectfully asks the Court to:

a.    Issue a declaratory judgment that the time period during which TDI must decide whether to exercise its ROFR will not start running, if at all, until Albright has established that WCO is not a Competing Entity;

b.    Award TDI all costs and interest allowed by law;

c.    Pursuant to Section 21(f) of the Lease Agreement, award TDI all attorney's fees and expenses that relate to its pursuit of this litigation and the preceding dealings with Albright and WCO;

d.    Award TDI such other relief as is just and reasonable; and

e.    Provide TDI with the right to amend this complaint in the event the Court determines TDI has failed to adequately plead any of the foregoing claims against Albright or as other events may warrant.

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

Dated:  July 7, 2021

Respectfully submitted,

By: _____

KLEINBARD, LLC
Steven J. Engelmyer, PA ID No. 42840
Eric J. Schreiner, PA ID No. 76721
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-20007230
sengelmyer@kleinbard.com
eschreiner@kleinbard.com

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
Christopher J. Mandernach*
William I Stewart
Thomas K. White*
Denis R. Hurley*
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
cmandernach@wc.com
wstewart@wc.com
twhite@wc.com
dhurley@wc.com
* application for admission *pro hac vice* forthcoming

*Attorneys for TDI Acquisition Sub LLC*

25

## VERIFICATION OF PLEADING

I, John Robertson, hereby verify that I am a Senior Business Analysis Manager at T-Mobile US, Inc., the parent entity of Plaintiff TDI Acquisition Sub LLC in this action; that, as such, I am authorized to make this Verification; and that the facts set forth in the foregoing Amended Complaint are true and correct to the best of my knowledge, information and belief. I hereby acknowledge that this verification is made subject to the penalties of Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Dated: 7-2-2021

John Robertson

Received County of Berks Prothonotary's Office on 07/07/2021 3:04 PM Prothonotary Docket No. 21-04881

## CERTIFICATION OF COMPLIANCE WITH PENNSYLVANIA'S
## CASE RECORDS PUBLIC ACCESS POLICY

I certify that this filing, which include portions of Exhibits A and G preliminarily filed under seal pursuant to a concurrently filed motion to seal, complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

_____
Eric J. Schreiner

Dated: July 7, 2021