# Exhibit 7

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION



# EDUCATIONAL BROADBAND SERVICE
# LONG-TERM *DE FACTO* LEASE AGREEMENT

THIS Educational Broadband Service ("**EBS**") Long-Term *De Facto* Lease Agreement (the "**Agreement**") is entered into as of <u>  October 22  </u>, 2007 (the "**Effective Date**"), by and between Lorain County Community College, a political subdivision of the State of Ohio with its principal offices at 1005 N. Abbe Road, Elyria, Ohio 44035 (the "**Licensee**"), and Clearwire Spectrum Holdings II LLC, a Nevada limited liability company with its principal offices at 4400 Carillon Point, Kirkland, WA 98033 ("**Clearwire**") (each sometimes referred to as "**Party**" and collectively as "**Parties**").

WHEREAS the Federal Communications Commission ("**FCC**") has authorized EBS channels G1 through G 3 (the "**Channels**") under call sign WHR777 (the "**License**") to Licensee to transmit in the Elyria, Ohio area (the "**Market**");

WHEREAS, the FCC has authorized the EBS Channel G4 under the License to Licensee (the "**Excluded Channel**");

WHEREAS the Parties have agreed to enter into this Agreement for Licensee to lease Clearwire one hundred percent (100%) of the capacity to operate on the Channels which, pursuant to the rules, regulations and policies of the FCC (the "**FCC Rules**"), can be made available for commercial use, in accordance with the terms and conditions below, and subject to FCC approval;

THEN, in consideration of the promises and covenants set forth in this Agreement, and for good and valuable consideration, the sufficiency of which is acknowledged by the Parties' signatures, the Parties agree as follows:

1. **LEASE TERM AND RENEWAL**

    (a) **Initial Term and Extension.** Subject to Paragraph 1(c), the initial term shall begin on the date upon which the FCC has approved the FCC Long Term Lease Application (as hereinafter defined) filed by the Parties with respect to this Agreement pursuant to Section 9 hereof ("**Commencement Date**"), and shall end on the date that the then-current EBS License expires (the "**Initial Term**"); unless the Agreement is terminated earlier in accordance with Section 11.

    (b) **Renewal.** Subject to Paragraph 1(c), this Agreement will renew for successive terms on the date that the EBS License is renewed by the FCC ("**Renewal Date**") and expire when the renewed EBS license expires, provided that the final Renewal Term will conclude thirty (30) years after the Commencement Date (each, a "**Renewal Term**"), for a maximum Agreement duration of thirty (30) years. The Renewal Terms will occur automatically unless Clearwire notifies the Licensee in writing at least twelve (12) months prior to the end of the Initial Term or any Renewal Term that it declines to renew the Agreement. The terms and conditions of this Agreement apply to each Renewal Term. The Initial Term and all Renewal Terms are collectively referred to herein as the "**Term**".

    (c) **Renewal of License and Extension of Agreement.** In the event that the License expires during the Initial Term and/or any Renewal Term, this Agreement will also expire at such time unless the License is renewed and FCC authorization for this Agreement is extended. Licensee and Clearwire will cooperate to timely file a renewal application for the License, in conjunction with a request for an extension of the then-applicable Initial Term or Renewal Term, to the date that is ten (10) years from the beginning of such Initial Term or Renewal Term. This Agreement will continue to apply unless the FCC denies by Final Order any application for Renewal of the License or extension of the Term. "**Final Order**" means an order issued by the FCC that is in full force and effect and as to which (i) no petition, application or appeal is pending and (ii) the time for the filing of any such petition, application or appeal has passed.

2. **COMPENSATION**

CLEARWIRE CONFIDENTIAL AND PROPRIETARY INFORMATION

      (d)    W-9. Within ten (10) days following the execution of this Agreement, Licensee shall deliver a completed IRS Form W-9 to Clearwire.

3.     EXCLUSIVITY AND RIGHT OF FIRST REFUSAL

      (a)    **Exclusivity.** During the Term, Licensee will not negotiate or contract with any third party to lease, sell, assign, transfer or use any of the capacity of the Channels or any option therefore; provided, however, that if Clearwire notifies Licensee that it has elected not to renew the Agreement, in accordance with Section 1(b), Licensee shall have the ability during the ninety (90) days immediately preceding the effective date of such termination to negotiate and contract with any third party with respect to any period following the end of this Agreement, so long as Licensee complies with the Right of First Refusal set forth in Section 3(b).

      (b)    **Right of First Refusal ("ROFR").** During the Term and, if Clearwire provides to Licensee an offer (in the form of a written summary of the material terms) for a new lease agreement no later than twenty-four (24) months prior to the end of the Term, then for the twenty-four (24) months following the expiration or termination of this Agreement (unless this Agreement is terminated solely as a result of Clearwire's default), Clearwire or Clearwire's designee will have a ROFR to acquire the License (if FCC rules allow it and the Licensee desires to sell), lease or otherwise use any of the capacity on the Channels (or any part thereof) in any other manner, or to acquire an option to acquire, lease or otherwise use any of the capacity on the Channels (or any part thereof) on the same terms as any *bona fide* third party offer received by Licensee that Licensee intends to accept. Licensee will notify in writing Clearwire of any such *bona fide* offer, including the terms of the offer, within thirty (30) days following Licensee's determination to accept the offer. Clearwire will notify Licensee within thirty (30) days following receipt of such notification if it is exercising its ROFR. In the event that Clearwire fails to exercise its ROFR, Licensee will have sixty (60) days from the expiration of Clearwire's thirty (30) day response period to enter into an agreement with the offeror on the same terms and conditions as were offered to Clearwire. If, within the sixty (60) day period, Licensee does not enter into a binding agreement with the offeror on the same terms and conditions as were offered to Clearwire, then Clearwire's ROFR shall remain in effect pursuant to the terms stated in this Subsection. If, within the sixty (60) day period, Licensee enters into a binding agreement with the offeror on the same terms and conditions as were offered to Clearwire, then Clearwire's ROFR will terminate; provided, however, that should Licensee's agreement with the offeror be terminated within twenty-four (24) months after the expiration or termination of this Agreement, Clearwire's ROFR will be reinstated for the remainder of the twenty-four (24) month period or for a period of one hundred eighty (180) days, whichever is longer. The terms will be ratified in a separate agreement. All materials exchanged under this ROFR are subject to the non-disclosure provisions of Section 14 of this Agreement.

      (c)    **Form of Consideration and Determination of Value.** Subject to, and without limiting Clearwire's rights described in Subsection 3(b), if the whole or any part of the consideration of the third party offer is in a form other than cash, then Clearwire may meet such non-cash consideration using cash, comparable non-cash consideration, or both in its acceptance notice. If Licensee does not accept Clearwire's offer of a cash substitute for the non-cash consideration, then Licensee must notify Clearwire in writing of Licensee's estimate of a fair cash substitute within fifteen (15) days after Licensee's receipt of Clearwire's acceptance notice. Licensee's failure to notify Clearwire of its estimate of a fair cash substitute within the prescribed fifteen (15) day period shall be deemed an acceptance of Clearwire's cash-substitute offer. If Licensee rejects Clearwire's cash-substitute offer, then Clearwire will have ten (10) days from receipt of Licensee's rejection to notify Licensee of its election to (1) adopt Licensee's stated cash value, or (2) submit the valuation issue for determination by binding arbitration. In any case where the right to arbitrate is invoked, Clearwire's ROFR will remain open until thirty (30) days after Clearwire is notified of the arbitrators' decision, during which time Clearwire may revise its acceptance notice to adopt the arbitrators' findings or waive its ROFR with respect to the third party offer, provided that Licensee and third party execute a contract to implement the third-party offer within ninety (90) days of the end of Clearwire's thirty (30) day time period to consider the arbitration decision. Licensee's failure to accept the third-party offer restores this ROFR.

      (d)    **Right to Participate.** Except in the event this Agreement terminates as a result of Clearwire's default, if Licensee decides to consider, issue or solicit bids, proposals or offers for the sale (if permitted by the FCC), assignment, transfer or use of any part or the whole of the Channels at any time before eighteen (18) months after the end of this Agreement, then Licensee will provide Clearwire with an opportunity no less favorable