**ALSTON & BIRD LLP**
Jeffrey A. Rosenfeld (#136896)
jeffrey.rosenfeld@alston.com
Jesse Steinbach (#278923)
jesse.steinbach@alston.com
Brooke Bolender (#340689)
brooke.bolender@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1143

**WILLIAMS & CONNOLLY LLP**
Kenneth J. Brown*
kbrown@wc.com
Jonathan B. Pitt*
jpitt@wc.com
William P. Ashworth*
washworth@wc.com
R. Kennon Poteat III*
kpoteat@wc.com
Kathryn E. Hoover*
khoover@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000

**KLEINBARD LLC**
Steven J. Engelmyer*
sengelmyer@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: (215) 568-2000

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| T-MOBILE US, INC., CLEARWIRE SPECTRUM HOLDINGS LLC, CLEARWIRE SPECTRUM HOLDINGS II LLC, CLEARWIRE SPECTRUM HOLDINGS III LLC, FIXED WIRELESS HOLDINGS LLC, NSAC LLC, TDI ACQUISITION SUB LLC, AND WBSY LICENSING LLC,<br><br>       Plaintiffs,<br><br>vs.<br><br>WCO SPECTRUM LLC, SCH LLC, ACADEMIA SPECTRUM LLC, KAREN WINNICK AS TRUSTEE OF GKW TRUST, EXECUTOR OF THE ESTATE OF GARY WINNICK AND GARY WINNICK'S SUCCESSOR-IN-INTEREST, CARL KATERNDAHL, ASHOK VASUDEVAN, ANDREAS BITZARAKIS, AND TYLER KRATZ,<br><br>      Defendants. | Case No. 2:23-CV-4347-AH(Ex)<br><br>**JOINT DISCOVERY DISPUTE STIPULATION PURSUANT TO L.R. 37-2**<br><br>DISCOVERY CUTOFF: NOT SET<br>PRETRIAL CONFERENCE: NOT SET<br>TRIAL: NOT SET<br><br>HEARING DATE: July 24, 2026<br>TIME: 9:30 am<br>DEPT: 750<br>JUDGE: Hon. Charles F. Eick |

# TABLE OF CONTENTS

I. T-MOBILE'S INTRODUCTORY STATEMENT ................................... 1

II. DEFENDANTS' INTRODUCTORY STATEMENT .............................. 4

III. ISSUES IN DISPUTE ...................................................................... 7

IV. ISSUE IN DISPUTE 1: WCO'S ABILITY TO PURCHASE LICENSES WHEN IT MADE OFFERS ........................................................ 8

    A. T-Mobile's Contentions and Points and Authorities Regarding Issue 1 ........................................................................ 23

        1. Background ................................................................... 23

        2. Defendants Should Be Ordered To Produce Documents In Response to RFPs 61-68 and 96-97 (WCO, Winnick & Katerndahl), RFPs 54-56 and 78-79 (Academia & Bitzarakis), RFPs 61-63 and 89-90 (Kratz) and Answer Interrogatory 18 ................................ 25

    B. Defendants' Contentions and Points and Authorities Regarding Issue 1 ........................................................................ 28

        1. Defendants Have Agreed to Produce, and Are Producing, All Relevant Financing Discovery Requested by T-Mobile in RFPs 61, 67, 68, 96 and 97 ........................................................ 28

        2. T-Mobile Is Not Entitled to Compel RFP Nos. 62–66 or Interrogatory No. 18 Absent Any Showing That the Subject Entities Were Intended Funding Sources. ................................ 30

        3. T-Mobile's Demanded Stipulation Is Not a Good-Faith Attempt to Resolve the Dispute ................................................ 31

V. ISSUE IN DISPUTE 2: ENTITIES FROM WHOM WCO PRODUCED DOCUMENTS ........................................................................ 34

    A. T-Mobile's Contentions and Points And Authorities Regarding Issue 2 ........................................................................ 34

        1. Background ................................................................... 34

2. Defendants Should Be Ordered To Confirm Whether They Are Withholding Documents From WCO Affiliates or Subsidiaries ...................................................................... 35

B. Defendants' Contentions and Points and Authorities Regarding Issue 2 .............................................................................. 36

VI. ISSUE IN DISPUTE 3: RELEVANT TIME PERIOD .......................... 38

A. T-Mobile's Contentions and Points and Authorities Regarding Issue 3 .............................................................................. 39

1. Background .................................................................. 39

2. Defendants Should Be Ordered To Produce Documents Through December 31, 2023 ...................................................... 40

B. Defendants' Contentions and Points and Authorities Regarding Issue 3 .............................................................................. 41

VII. ISSUE IN DISPUTE 4: PRODUCTION COMPLETION DATE FOR THOMAS GRIFFITH, FORMER WCO PRINCIPAL .......................... 43

A. T-Mobile's Contentions and Points and Authorities Regarding Issue 4 .............................................................................. 43

B. Defendants' Contentions and Points and Authorities Regarding Issue 4 .............................................................................. 43

In accordance with Central District of California Local Rule 37-2, Plaintiffs T-Mobile US, Inc., Clearwire Spectrum Holdings LLC, Clearwire Spectrum Holdings II LLC, Clearwire Spectrum Holdings III LLC, Fixed Wireless Holdings LLC, NSAC LLC, TDI Acquisition Sub LLC, and WBSY Licensing LLC (collectively "T-Mobile" or "Plaintiffs") and Defendants WCO Spectrum, LLC, Academia Spectrum, LLC, Karen Winnick, Carl Katerndahl, Andreas Bitzarakis and Tyler Kratz (collectively "Defendants"), and third-party subpoena recipient Thomas Griffith (who is represented by defense counsel), submit this Joint Discovery Dispute Stipulation setting forth certain disputes related to Defendants' responses to T-Mobile's document requests and interrogatories (and Mr. Griffith's response to T-Mobile's third party subpoena).[1]

## I.    T-MOBILE'S INTRODUCTORY STATEMENT

T-Mobile's action against Gary Winnick, his company WCO Spectrum LLC, and certain associated entities and people seeks to redress Defendants' scheme to defraud T-Mobile out of millions of dollars.  T-Mobile leases the right to use wireless spectrum from institutions that hold educational broadband service ("EBS") licenses issued by the FCC.  Ex. 1, ECF 1 ("Compl.") ¶¶ 1-3.[2]  T-Mobile's leases typically include Rights of First Refusal ("ROFRs"), which provide that if a third party makes a bona fide offer to purchase a license that the licensee intends to accept, then T-Mobile has 30 days to match the offer and acquire the license.  *Id*. ¶¶ 1-3, 39.  After an FCC rule change in 2019 allowing commercial entities to own EBS licenses, Mr. Winnick, WCO, and the other Defendants conspired to defraud T-Mobile by making sham offers to purchase licenses, inducing T-Mobile to exercise its ROFRs.  *Id*. ¶¶ 1-3, 42-43, 52-55.  Defendants did not intend to purchase any licenses, and, importantly, had no financial ability to do so.  Instead, the offers

---

[1] The Parties acknowledge that Local Rule 37-2.1 requires attachment of applicable scheduling order, however no scheduling order has yet been entered in this case.

[2] All exhibits are attached to the Declaration of William P. Ashworth.

were intended to coerce T-Mobile into exercising its ROFRs, *id.* ¶¶ 3-4, 52, 56, with WCO pocketing a kickback pursuant to secret side agreements with the licensees, *id.* ¶¶ 1, 3, 42.  To facilitate these kickbacks, WCO inflated its offers such that when T-Mobile matched WCO's terms, it paid more than the licensees were willing to accept.  *Id.* ¶¶ 3, 56.  Defendants received millions of dollars through this scheme. *Id.* ¶ 64.  T-Mobile therefore brings claims against Defendants for RICO and fraud, among others.

For years, Defendants staved off discovery into their fraudulent scheme.  But earlier this year, this Court forced Defendants to engage.  While some progress has been made, four disputes have crystalized that require resolution from this Court.

***First***, a key aspect of Defendants' fraudulent scheme is that they lacked the funds or financing needed to purchase the licenses WCO made sham offers to buy. *Id.* ¶¶ 3, 52, 56.  Defendants went so far as to enter into a fake line of credit agreement with Defendant SCH LLC, pursuant to which SCH purported to lend WCO $2 billion.  *Id.* ¶ 4.  But SCH, which has defaulted in this case, has no discernible assets, public presence, lines of business, and purportedly was operated out of its sole proprietor's modest Cupertino apartment.  *Id.* ¶¶ 4, 23-25.  Though once a billionaire, Mr. Winnick likewise lacked the assets needed to finance any license purchases.  After he passed away in November 2023, it became public that he had long been deeply in debt.  His widow and entities related to him are now in litigation with respect to their default on a $100-million loan that had been extended in 2020 by CIM Real Estate Credit LLC.  *See CIM Real Estate Credit LLC v. N. Crescent Realty VII, LLC*, 25STCV32860 (Cal. Super. Ct., L.A. Cnty).

T-Mobile has sought discovery regarding any potential sources of financing Defendants may invoke to try to claim they had the ability to fund the offers WCO made on EBS licenses.  Exs. 11-14.  Specifically, T-Mobile served requests targeting whether WCO had the wherewithal to make good on its offers, or whether as T-Mobile alleges, the offers were shams.  When Defendants initially refused to

JOINT DISCOVERY DISPUTE STIPULATION

provide the requested discovery, T-Mobile offered not to pursue it if Defendants would stipulate that "no Defendant other than WCO, and no entity related to or affiliated with any Defendant other than WCO, had the ability to finance any license purchases." Ex. 27, May 20 Email. Defendants refused and, simultaneously, maintained their refusal to produce discovery about the financial capabilities of these other entities. In short, Defendants seek to have it both ways. On the one hand, they wish to preserve their ability to argue that other entities could have funded or financed license purchases, while on the other hand, they refuse to produce any discovery that would confirm (or refute) any such assertion. Without a stipulation, Defendants should produce the requested discovery.

*Second*, Defendants have refused to identify the specific entities from which they are producing (or withholding) documents, which has prevented T-Mobile from assessing the adequacy of their efforts. Specifically, Defendants objected to T-Mobile's definition of "WCO Spectrum LLC"—which encompasses all entities that acted on behalf of WCO—as overly broad, but they have declined to identify the particular entities from which they are (and are not) producing documents. This basic information is routinely provided in discovery, and it should be provided here.

*Third*, Defendants refuse to produce documents post-dating October 31, 2023 based on the bare assertion that WCO ceased operations by then. This cut-off, however, is not reasonable. Initially, there is evidence showing that WCO continued operating after October 2023. But even accepting that cessation date *arguendo*, (i) WCO embarked on a multi-month wind down of its operations after that point; and (ii) Mr. Winnick passed away just a few days later, on November 4, 2023. The context of WCO's purported wind-down and Mr. Winnick's passing certainly generated discussions about issues relevant to this case in November and December 2023. Defendants, moreover, have made no effort to articulate any undue burden of searching for documents created during these two key months or to articulate any basis for their assertion that all discussions after October 31, 2023

JOINT DISCOVERY DISPUTE STIPULATION

are categorically irrelevant.  Defendants thus should be ordered to search for and produce documents through December 31, 2023.

*And fourth,* T-Mobile has sought documents from non-party Thomas Griffith—a former WCO insider represented by Defendants' counsel.  While Mr. Griffith agreed to produce documents in response to the subpoena, served months ago on February 20, 2026, he has slow-rolled his production.  When Mr. Griffith finally responded to the subpoena long after its return date (thus waiving any objections), he produced only 91 documents, none of which are e-mails.  Despite repeated attempts to gain clarity as to when he will complete his production, he has refused to provide any certainty.  Accordingly, Mr. Griffith should be ordered to complete his production by two weeks from the date of a ruling on this motion, and to confirm whether he is withholding documents based on any objections.

## II.    DEFENDANTS' INTRODUCTORY STATEMENT

Since the Court lifted the stay on discovery in January, Plaintiffs have sought far-reaching discovery, probing every corner of WCO's business—and Defendants have obliged. Defendants have engaged in the discovery process in good faith at every step of the way, agreeing to nearly every one of Plaintiffs' proposed search terms, identifying sources of discovery, and otherwise negotiating over the scope of written discovery. Now Plaintiffs seek to short circuit that process, manufacturing disputes then prematurely declaring impasse and running to the Court while discussions are ongoing.

T-Mobile's Motion asks the Court to compel responses to numerous discovery requests that were never meaningfully developed through the meet-and-confer process required by Local Rules 37-1 and 37-2. Rather than identifying the specific disputes it intended to present to the Court, T-Mobile repeatedly raised only broad discovery "subjects," demanded a sweeping stipulation, declared an impasse, and then attempted to expand the dispute in its proposed Joint Discovery Stipulation.  The Local Rules are designed to ensure that discovery disputes are

JOINT DISCOVERY DISPUTE STIPULATION

meaningfully developed before judicial intervention is sought.  That did not occur here.

Local Rules 37-1 and 37-2 require a party seeking to compel discovery to do two things before filing a motion. First, it must serve a letter requesting a meet-and-confer conference that identifies the issue specific issue and or discovery/request, states the moving party's position with respect to it and the authority it believes is dispositive, and specifies the relief sought. Second, the parties must meet and confer regarding those specific requests in an effort to resolve the dispute without court intervention. Only disputes that survive that process may be presented to the Court in a Joint Stipulation under Local Rule 37-2.1.

T-Mobile did neither for many of the requests now before the Court. The parties participated in numerous meet-and-confer conferences between January and June 2026. Those discussions addressed issues such as amended discovery responses, search parameters, custodians, data sources, third-party subpoenas, sequencing of discovery, and, later, deficiencies in T-Mobile's own discovery responses. (Mitts Decl. ¶¶ 6-19.) They did not include substantive discussions of the discovery requests that T-Mobile now seeks to compel.

The written correspondence confirms this. T-Mobile's March 2, 2026 deficiency letter discussed certain general objections and only a limited number of requests, including RFP Nos. 62-66 and Interrogatory No. 18. It said nothing about RFP Nos. 61, 67, 68, 96, or 97. (Mitts Decl. ¶ 11, Ex. 5.) Defendants responded by agreeing to meet and confer regarding the requests actually identified and agreed to T-Mobile's requested expansion of the relevant time period. (Mitts Decl. ¶ 12, Ex. 6.)

T-Mobile then shifted the discussion to a generalized "financing" dispute. Its April 10, 2026 letter demanded either production of broad categories of financial documents or a stipulation that no Defendant had the ability to purchase licenses

JOINT DISCOVERY DISPUTE STIPULATION

without outside financing. (Mitts Decl. ¶ 13, Ex. 7.) It never identified which requests purportedly sought that information, never explained why any specific response was deficient, and never identified the specific discovery requests it intended to present to the Court or the relief it intended to seek.

In response, Defendants rejected unfettered financial discovery regarding unrelated entities with no relevance to WCO while reiterating their willingness to continue meeting and conferring regarding specific discovery issues. (Mitts Decl. ¶ 15, Ex. 8.) T-Mobile nevertheless declared an "impasse" on the broad subject of financing without identifying what specific disputes remained to be resolved. (Mitts Decl. ¶ 16, Ex. 9.) Its subsequent correspondence—including its June 9, 2026 email sent immediately before the parties' meet and confer on T-Mobile's discovery deficiencies—continued to refer to Defendants' refusal to stipulate regarding financing, without identifying the specific disputes or RFPs it intended to present to the Court. (Mitts Decl. ¶¶ 18-19, Ex. 11.)

The difference between what occurred here and the process contemplated by Local Rule 37-1 is illustrated by the parties' June 9, 2026 meet and confer concerning T-Mobile's own deficient discovery responses. During that conference, counsel addressed T-Mobile's objections request by request, discussing each RFP individually and narrowing the issues accordingly. (Mitts Decl. ¶ 19.) That is precisely the process Local Rule 37-1 requires. The parties never engaged in a comparable discussion regarding any of the issues T-Mobile now asks the Court to resolve.

Because T-Mobile failed to satisfy the mandatory pre-filing procedures for many of the requests it now presents to the Court, those requests are not properly before the Court and the Motion should be denied on that basis alone. Moreover, even if the Court were to reach the merits, T-Mobile's Motion independently fails as to each of its four issues for the reasons set forth below.

JOINT DISCOVERY DISPUTE STIPULATION

## III.   ISSUES IN DISPUTE

T-Mobile identifies the following four issues in dispute, and its proposals for resolution.  T-Mobile has identified these issues and proposed resolutions both in correspondence and during multiple meet and confer discussions with Defendants, including as recently as June 9, 2026, but Defendants have refused to provide the requested documents and information.  *See* Ashworth Decl. ¶ 36.

| Issue in Dispute | T-Mobile's Proposed Resolution |
| --- | --- |
| Discovery Regarding Defendants' Ability to Purchase Licenses When WCO Made Offers | Order Defendants to (1) produce all non-privileged documents regarding their ability to finance license purchases, including documents responsive to RFPs 61-68, and 96-97 (WCO, Winnick & Katerndahl), RFPs 54-56 and 78-79 (Academia & Bitzarakis), and RFPs 61-63 and 89-90 (Kratz) and (2) fully respond to Interrogatory 18. |
| Entities From Which WCO Produced Documents | Order Defendants to identify all WCO subsidiaries, affiliates or otherwise related entities from which they have produced or will produce documents in response to T-Mobile's discovery requests (and any entities from which they are refusing to produce documents). |
| Relevant Time Period | Order Defendants to produce all non-privileged documents and information responsive to T-Mobile's RFPs and Interrogatories through December 31, 2023. |
| Completion Date for Thomas Griffith, Former WCO Principal | Order Mr. Griffith to (1) produce all documents, including email communications, responsive to T-Mobile's subpoena; and (2) confirm whether he is withholding documents based on objections within two weeks of the date of a ruling on this motion. |

JOINT DISCOVERY DISPUTE STIPULATION

Defendants maintain that T-Mobile grossly misrepresents the positions that Defendants have taken in discovery to date and has manufactured disputes where there are none. *First*, Defendants have agreed to produce—and are already producing—all documents concerning WCO's financing or planned financing of license purchases. *Second*, Defendants have agreed to produce documents pursuant to the parties' agreed upon search parameters.  *Third*, Mr. Griffith has **already produced all** responsive documents and files sought by T-Mobile's subpoena that were not identified as privileged. What is more, Plaintiffs seek to use these premature, half-baked disputes to pursue overbroad, invasive discovery concerning the personal finances of WCO's late founder, the individual defendants, and any entity remotely "*related*" to WCO with no conceivable relevance to any of the claims or defenses. The Court should deny Plaintiffs' improper Requests.

## IV.    ISSUE IN DISPUTE 1: WCO'S ABILITY TO PURCHASE LICENSES WHEN IT MADE OFFERS

The discovery requests relevant to this dispute are Request for Production Nos. 61-68, and 96-97 to WCO, Karen Winnick and Katerndahl; Request for Production Nos. 54-56 and 78-79 to Bitzarakis and Academia Spectrum; Request for Production Nos. 61-63 and 89-90 to Kratz; and Interrogatory No. 18.[3]

**WCO, WINNICK & KATERNDAHL RFP 61 / BITZARAKIS & ACADEMIA RFP 54 / KRATZ RFP 61:**

---

[3] T-Mobile served two sets of consecutively numbered RFPs on each of (1) WCO, Karen Winnick and Katerndahl, Ex. 2; Ex. 11; (2) Bitzarakis and Academia, Ex. 3; Ex. 12, and (3) Kratz, Ex. 4; Ex. 13.  The relevant RFPs are all contained in the second sets of RFPs served on each defendant group, as are the relevant responses and objections.  Ex. 15 (WCO, Winnick, & Katerndahl); Ex. 16 (Bitzarakis & Academia); Ex. 17 (Kratz).  The relevant interrogatory is contained in T-Mobile's second set of interrogatories to all Defendants.  Ex. 14 (T-Mobile's Second Set of Interrogatories); Ex. 18 (Defendants' R&Os).

All Documents and Communications concerning the "real financing" referenced in Answer ¶ 1, including any "line of credit agreement" and "other funding channels" referenced in Answer ¶¶ 4, 87.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 61:**

The WCO Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the referenced "real financing," including any "line of credit agreement" or "other funding channels." Moreover, the WCO Parties object to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege or other privilege or protection.

The WCO Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the WCO Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**BITZARAKIS & ACADEMIA'S RESPONSE TO RFP 54:**

The Academia Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the referenced "real financing," including any "line of credit agreement" or "other funding channels." Moreover, the Academia Parties object to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege or other privilege or protection.

The Academia Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing

JOINT DISCOVERY DISPUTE STIPULATION

objections, the Academia Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**KRATZ'S RESPONSE TO RFP 61:**

Kratz objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the referenced "real financing," including any "line of credit agreement" or "other funding channels." Moreover, Kratz objects to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege or other privilege or protection.

Kratz agrees to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, Kratz will produce responsive, non-privileged documents that he identifies pursuant to the agreed parameters.

**WCO, WINNICK & KATERNDAHL RFP 62:**

All Documents and Communications concerning the CIM Loan.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 62:**

The WCO Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the CIM Loan. The WCO Parties object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks information concerning lending arrangements and financial transactions that are not relevant to any claim or defense in this Action. The CIM Loan does not concern the acquisition of any License or the subject matter of this Action. The WCO Parties further object to this Request to the extent it seeks confidential financial information, private lending information, or information concerning non-party individuals or entities. The WCO Parties also object to the

extent the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing general or specific objections, the WCO Parties agree to meet and confer with Plaintiffs regarding this Request.

**WCO, WINNICK & KATERNDAHL RFP 63:**

All Documents and Communications concerning efforts to amend, restate, refinance, extend, supplement, or otherwise modify the CIM Loan.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 63:**

The WCO Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The WCO Parties object that this Request is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks information concerning lending arrangements and financial transactions that are not relevant to any claim or defense in this Action. The CIM Loan does not concern the acquisition of any License or the subject matter of this Action. The WCO Parties further object to this Request to the extent it seeks confidential financial information or information concerning non-party individuals or entities. The WCO Parties also object to the extent the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing general or specific objections, the WCO Parties agree to meet and confer with Plaintiffs regarding this Request.

**WCO, WINNICK & KATERNDAHL RFP 64:**

All Documents and Communications concerning advances taken from the CIM Loan.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 64:**

11

JOINT DISCOVERY DISPUTE STIPULATION

The WCO Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The WCO Parties object that this Request is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks information concerning lending arrangements and financial transactions that are not relevant to any claim or defense in this Action. The CIM Loan does not concern the acquisition of any License or the subject matter of this Action. The WCO Parties further object to this Request to the extent it seeks confidential financial information or information concerning non-party individuals or entities. The WCO Parties also object to the extent the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing general or specific objections, the WCO Parties agree to meet and confer with Plaintiffs regarding this Request.

**WCO, WINNICK & KATERNDAHL RFP 65:**

All Documents and Communications comprising or concerning information disclosed to CIM Real Estate Credit, LLC in connection with the CIM Loan or any advance or draw taken from that loan, including but not limited to information regarding (1) uses of funds from the CIM Loan; and (2) the finances or financial condition of WCO, Gary Winnick, and the Winnick Entities.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 65:**

The WCO Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The WCO Parties object that this Request is irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case because it seeks information concerning lending arrangements and financial transactions that are not relevant to any claim or

JOINT DISCOVERY DISPUTE STIPULATION

defense in this Action. The CIM Loan and any related transactions do not concern the acquisition of any License or the subject matter of this Action. The WCO Parties further object to this Request to the extent it seeks confidential financial information or information concerning non-party individuals or entities. The WCO Parties also object to the extent the Request seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing general or specific objections, the WCO Parties agree to meet and confer with Plaintiffs regarding this Request.

**WCO, WINNICK & KATERNDAHL RFP 67 / BITZARAKIS & ACADEMIA RFP 55 / KRATZ RFP 62:**

All Documents and Communications concerning the financial commitment (if any) that would have been required to pursue or complete a transaction with any Licensee.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 67:**

The WCO Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The WCO Parties object to the phrases "financial commitment" and "would have been required" as vague, ambiguous, and inherently speculative. The WCO Parties object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information concerning Licenses or transactions that are not the subject of this litigation. Finally, the WCO Parties object to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

The WCO Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and

JOINT DISCOVERY DISPUTE STIPULATION

proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the WCO Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**BITZARAKIS & ACADEMIA'S RESPONSE TO RFP 55:**

The Academia Parties object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The Academia Parties object to the phrases "financial commitment" and "would have been required" as vague, ambiguous, and inherently speculative. The Academia Parties object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information concerning Licenses or transactions that are not the subject of this litigation. Finally, the Academia Parties object to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

The Academia Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the Academia Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**KRATZ'S RESPONSE TO RFP 62:**

Kratz objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. Kratz objects to the phrases "financial commitment" and "would have been required" as vague, ambiguous, and inherently speculative. Kratz objects to this Request as irrelevant,

JOINT DISCOVERY DISPUTE STIPULATION

overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information concerning Licenses or transactions that are not the subject of this litigation. Finally, Kratz objects to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Kratz agrees to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, Kratz will produce responsive, non-privileged documents that he identifies pursuant to the agreed parameters.

**WCO, WINNICK & KATERNDAHL RFP 68 / BITZARAKIS & ACADEMIA RFP 56 / KRATZ RFP 63:**

Documents and Communications sufficient to show all funding sources—including the amount of each such funding source—available to WCO.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 68:**

The WCO Parties object to the phrases "funding sources" and "available to WCO" as vague and ambiguous. The WCO Parties further object to this Request as overly broad and unduly burdensome to the extent it seeks documents regarding "all" funding sources. Finally, the WCO Parties object to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

The WCO Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the WCO Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**BITZARAKIS & ACADEMIA'S RESPONSE TO RFP 56:**

The Academia Parties object to the phrases "funding sources" and "available to WCO" as vague and ambiguous. The Academia Parties further object to this Request as overly broad and unduly burdensome to the extent it seeks documents regarding "all" funding sources. Finally, the Academia Parties object to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

The Academia Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the Academia Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**KRATZ'S RESPONSE TO RFP 63:**

Kratz objects to the phrases "funding sources" and "available to WCO" as vague and ambiguous. Kratz further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents regarding "all" funding sources. Finally, Kratz objects to the extent that the Request seeks documents and/or information protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Kratz agrees to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, Kratz will produce responsive, non-privileged documents that he identifies pursuant to the agreed parameters.

JOINT DISCOVERY DISPUTE STIPULATION

**WCO, WINNICK & KATERNDAHL RFP 96 / BITZARAKIS & ACADEMIA RFP 78 / KRATZ RFP 89:**

All Documents and Communications concerning the amount of capital required for any transaction, proposed transaction, or contemplated transaction with any Licensee.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 96:**

The WCO Parties object to the phrases "proposed transaction" and "contemplated transaction" as vague, ambiguous, and overly broad. The WCO Parties further object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The WCO Parties further object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information unrelated to the acquisition efforts that are the subject of the claims and defenses in this Action. The WCO Parties object to the definition of "Licensee" to the extent it is not limited to holders of licenses being pursued by WCO for potential acquisition. The WCO Parties also object to the extent this Request seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

The WCO Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the WCO Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**BITZARAKIS & ACADEMIA'S RESPONSE TO RFP 78:**

The Academia Parties object to the phrases "proposed transaction" and "contemplated transaction" as vague, ambiguous, and overly broad. The Academia

Parties further object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. The Academia Parties further object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information unrelated to the acquisition efforts that are the subject of the claims and defenses in this Action. The Academia Parties object to the definition of "Licensee" to the extent it is not limited to holders of licenses being pursued by WCO for potential acquisition. The Academia Parties also object to the extent this Request seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

The Academia Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the Academia Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**KRATZ'S RESPONSE TO RFP 89:**

Kratz objects to the phrases "proposed transaction" and "contemplated transaction" as vague, ambiguous, and overly broad. Kratz further objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject matter of the Request. Kratz further objects to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks information unrelated to the acquisition efforts of WCO that are the subject of the claims and defenses in this Action. Kratz objects to the definition of "Licensee" to the extent it is not limited to holders of licenses being pursued by WCO for potential acquisition. Kratz also objects to the extent this Request seeks

documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

Kratz agrees to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, Kratz will produce responsive, non-privileged documents that he identifies pursuant to the agreed parameters.

**WCO, WINNICK & KATERNDAHL RFP 97 / BITZARAKIS & ACADEMIA RFP 79 / KRATZ RFP 90:**

All Documents and Communications concerning the financial exposure of any Defendant resulting from any transaction, proposed transaction, or contemplated transaction with any Licensee.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO RFP 97:**

The WCO Parties object to the term "financial exposure" as vague and ambiguous. The WCO Parties further object to the phrases "proposed transaction" and "contemplated transaction" as vague, ambiguous, and overly broad. The WCO Parties further object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject of the Request. The WCO Parties further object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks documents and communications "concerning" the financial exposure of "any Defendant" resulting from "any transaction, proposed transaction, or contemplated transaction" with "any Licensee," without reasonable limitation to the acquisition efforts that are the subject of the claims and defenses in this Action. The WCO Parties further object to the definition of "Licensee" to the extent it is not limited to holders of licenses being pursued by WCO for potential acquisition. The WCO Parties also object to the extent

JOINT DISCOVERY DISPUTE STIPULATION

this Request seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, including communications reflecting legal advice or risk assessments.

The WCO Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the WCO Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**BITZARAKIS & ACADEMIA'S RESPONSE TO RFP 79:**

The Academia Parties object to the term "financial exposure" as vague and ambiguous. The Academia Parties further object to the phrases "proposed transaction" and "contemplated transaction" as vague, ambiguous, and overly broad. The Academia Parties further object to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject of the Request. The Academia Parties further object to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks documents and communications "concerning" the financial exposure of "any Defendant" resulting from "any transaction, proposed transaction, or contemplated transaction" with "any Licensee," without reasonable limitation to the acquisition efforts that are the subject of the claims and defenses in this Action. The Academia Parties further object to the definition of "Licensee" to the extent it is not limited to holders of licenses being pursued by WCO for potential acquisition. The Academia Parties also object to the extent this Request seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, including communications reflecting legal advice or risk assessments.

JOINT DISCOVERY DISPUTE STIPULATION

The Academia Parties agree to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, the Academia Parties will produce responsive, non-privileged documents that they identify pursuant to the agreed parameters.

**KRATZ'S RESPONSE TO RFP 90:**

Kratz objects to the term "financial exposure" as vague and ambiguous. Kratz further objects to the phrases "proposed transaction" and "contemplated transaction" as vague, ambiguous, and overly broad. Kratz further objects to this Request as overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks "all" documents and communications "concerning" the subject of the Request. Kratz further objects to this Request as irrelevant, overly broad, unduly burdensome, and not proportionate to the needs of the case to the extent it seeks documents and communications "concerning" the financial exposure of "any Defendant" resulting from "any transaction, proposed transaction, or contemplated transaction" with "any Licensee," without reasonable limitation to the acquisition efforts that are the subject of the claims and defenses in this Action. Kratz further objects to the definition of "Licensee" to the extent it is not limited to holders of licenses being pursued by WCO for potential acquisition. Kratz also objects to the extent this Request seeks documents and/or information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection, including communications reflecting legal advice or risk assessments.

Kratz agrees to meet and confer with Plaintiffs to develop an agreeable scope and method of collection and production of a reasonable and proportional set of materials in response to this Request from after January 1, 2020 through October 31, 2023. Subject to, and without waiver of, the foregoing objections, Kratz will produce

21

JOINT DISCOVERY DISPUTE STIPULATION

responsive, non-privileged documents that he identifies pursuant to the agreed parameters.

**INTEROGATORY 18:**

Identify and describe all assets of the Winnick Entities.[4]

**DEFENDANTS' RESPONSE TO INTERROGATORY 18:**

Answering Defendants object to this Interrogatory as overly broad, unduly burdensome, and not proportional to the needs of the case. The Interrogatory seeks identification and description of "all assets" of the "Winnick Entities," which is defined in an overbroad manner to include numerous entities, trusts, and persons beyond the named parties, without limitation as to time period, subject matter, corporate separateness, or relevance to the claims and defenses in this Action.

Answering Defendants further object to this Interrogatory because it seeks expansive asset and financial condition discovery absent any showing that such information is relevant to a claim or defense, including alter ego, veil piercing, or punitive damages. Pre-judgment asset discovery of this scope is unduly intrusive, disproportionate to the needs of the case, and not permitted under Rule 26(b)(1).

Answering Defendants further object to the definition of "Winnick Entities" as vague, ambiguous, and overbroad to the extent it purports to include undefined persons or entities "affiliated with" or "acting on behalf of" Gary Winnick or Karen Winnick without regard to legal separateness, control, or relevance.

Answering Defendants also object to the definition of "Identify" to the extent it imposes obligations beyond those required by the Federal Rules of Civil Procedure

---

[4] Per Definition 30, The "Winnick Entities" means Gary Winnick, Karen Winnick, the Estate of Gary Winnick, the GKW Trust, Winnick & Co., GKW Unified Holdings LLC, Pacific Capital Group, Inc., GKW Spectrum Holdings LLC, WQ8 Partners, LLC, North Crescent Realty VI LLC, North Crescent Realty VII LLC, NCR ART, LLC, Winbro One Irrevocable 1998 Trust, Winbro Two Irrevocable 1998 Trust, Winbro Three Irrevocable 1998 Trust, NCR Trust I Dated December 22, 1987 (As Amended and Restated December 16, 2002), and any other Person or entity created by, affiliated with, or acting on behalf of Gary Winnick or Karen Winnick.

and to the extent this Interrogatory would require the creation of compilations or analyses not maintained in the ordinary course of business.

### A.    T-Mobile's Contentions and Points and Authorities Regarding Issue 1

#### 1.    Background

A central issue in this case is whether Defendants had the funds to make good on their offers to buy EBS licenses.  Their lack of ability to fund or finance their offers is an important element of the fraudulent scheme.  T-Mobile alleges that each time Defendants made a sham offer to purchase a license it was false and misleading because, among other things, "WCO does not have legitimate financing to back up its offers." Compl. ¶ 56.  Indeed, T-Mobile claims "WCO lacks the capacity to make good on anything remotely approaching" the offers it made, which totaled billions of dollars. *Id.* ¶ 3.[5]  Gary Winnick also falsely told T-Mobile that WCO intended to invest $1 billion into EBS spectrum, *id.* ¶ 62, even though he was broke.  WCO even entered into a fake line of credit agreement with defaulted Defendant SCH, as described above, as part of the fraudulent scheme.  *Id.* ¶¶ 4, 50.  Defendants, however, argue in their Answer that WCO's offers were bona fide and that, aside from the fake line of credit from SCH, "WCO Spectrum had established other funding channels for its intended acquisition of EBS licenses."  Ex. 6, ECF 132 ("Ans.") ¶¶ 4, 87.  Defendants further argue WCO's offers "were legitimate" and "backed by real financing." *Id.* ¶ 1; *id.* ¶ 52e (Albright College offer was "supported by real financing") *id.* ¶ 52f ("legitimate financing").

T-Mobile has reason to believe that Defendants may argue that Mr. Winnick, the individual Defendants, or related entities were among these supposed funding channels.  For example, discovery in this case reveals that WCO was leveraging Mr. Winnick's purported wealth and status as WCO's "primary investor" to entice

---

[5] According to its Amended Counterclaim, WCO made over *$6 billion* of offers on EBS licenses.  Ex. 10, ECF 218 ¶ 13.

licensees to accept its fraudulent offers and trigger T-Mobile's ROFR.  A template offer letter shows WCO representing to licensees that the "proposed acquisition would be funded by WCO and its primary investor Gary Winnick," a "well known financier, considered a specialist in financing and operating telecommunication assets and companies" who has "sourced and deployed billions of dollars to fund transformative technologies."  Ex. 30, WCO 0000730.  WCO sent a version of that template to at least EBS licensee La Roche University, Ex. 31, WCO 0001589 at -1616—one of the offers T-Mobile alleges was fraudulent, Compl. ¶¶ 59-63.

Since Mr. Winnick's passing, separate litigation has unfolded over a $100-million loan from CIM Real Estate Credit collateralized by the Winnicks' Bel Air estate (Casa Encantada), among other assets, which has defaulted.  *See CIM Real Estate Credit LLC v. N. Crescent Realty VII, LLC,* 25STCV32860 (Cal. Super. Ct., L.A. Cnty.).  Through this lawsuit, information has come to light that suggests Mr. Winnick was in financial distress from 2020 through his passing in late 2023.  For example, according to Karen Winnick's verified cross-complaint, by 2020 Mr. Winnick had a $65 million loan from HSBC that "was in workout, and Gary had no viable means of repaying it."  Ex. 8 ¶ 34.  And in a declaration, Karen Winnick represented to the court that, "in the years prior to his death, [Gary] faced significant financial demands . . . . I did not know, until Gary passed away, that we were overextended and that Gary needed money to repay debts and maintain his lifestyle."  Ex. 7 ¶ 6.

As a result, T-Mobile sought discovery into Defendants and their entities' ability to fund or finance the offers WCO made—including but not limited to discovery regarding disclosures Defendants and their entities made to their lender CIM.  *See, e.g.,* Ex. 11 (RFPs 61-68 and 96-97 to WCO, Winnick & Katerndahl); Ex. 12 (RFPs 54-56 and 78-79 to Academia & Bitzarakis); Ex. 13 (RFPs 61-63 and 89-90 to Kratz).  Defendants refused to provide any discovery on purported funding sources other than "WCO's actual financing efforts, counterparties and transaction-

related materials."  Ex. 25, May 13 Letter at 2.  As an attempt to reach a resolution over this issue, T-Mobile offered that if Defendants stipulated that "no Defendant other than WCO, and no entity related to or affiliated with any Defendant other than WCO, had the ability to finance any license purchases," then it could forego that discovery; Defendants refused.  Ex. 27, May 20 Email; Ex. 28, June 1 Email.[6]  T-Mobile's position is simple: Defendants cannot have it both ways.  They cannot assert (or reserve the right to argue) that any Defendant or entity related to them would have backstopped WCO's offers, while refusing to provide discovery that would confirm or refute such assertions.  If they refuse to stipulate, they must provide this discovery.

> **2.  Defendants Should Be Ordered To Produce Documents In Response to RFPs 61-68 and 96-97 (WCO, Winnick & Katerndahl), RFPs 54-56 and 78-79 (Academia & Bitzarakis), RFPs 61-63 and 89-90 (Kratz) and Answer Interrogatory 18.**

Defendants, as the party resisting discovery, have the burden to show that the discovery should not be allowed.  *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009).  "Discovery regarding a party's financial condition may be obtained if it is relevant to the claims or defenses in the case."  *Fosbre v. Las Vegas Sands Corp.*, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (and collecting cases); *id.* at *3-5 (granting motion to compel documents regarding an individual defendant's financial condition in securities fraud action against the individual and the company he majority owned); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190-91 (C.D. Cal. 2006) (finding that "documents—primarily bank records—regarding financial transactions and data involving defendant Garber and/or related

---

[6] T-Mobile will also prove that *WCO* did not have the ability to finance license purchases, but that issue is not subject to this discovery motion, because (as T-Mobile understands it) WCO has agreed to provide discovery regarding its ability to finance license purchases.

JOINT DISCOVERY DISPUTE STIPULATION

entities" were "relevant, especially to plaintiff's civil RICO claims"); *iSmart Int'l Ltd. v. I-DocSecure, LLC*, 2006 WL 2263910, at *2 (N.D. Cal. Aug. 8, 2006) (granting motion to compel financial status documents where relevant to "proving or disproving [a party's] assertion that it had 'a pipeline of business in excess of $106 million.'").[7]

Here, Defendants' ability to fund or finance license purchases is squarely at issue, as explained above. *E.g.*, Compl. ¶¶ 1-4, 52, 56, 62. That WCO made offers to purchase EBS licenses knowing it lacked the financial resources to make good on them goes directly to the existence of the fraudulent scheme. *See Fosbre*, 2016 WL 54202 at *3-5. Defendants are wrong to suggest that "[t]he only relevant inquiry is whether WCO *intended* to purchase the licenses." Ex. 28, June 1 Email (emphasis added). Regardless of Defendants' intent in the abstract, making offers to purchase licenses that no Defendant had the ability to fund is fraud. *Hoffman v. United States*, 249 F.2d 338, 339 (9th Cir. 1957) (affirming wire fraud conviction where a defendant made false representations about an entity's ability and intent to purchase goods, when in reality, the entity had "only nominal assets and [was] created by the defendant to accomplish his scheme" and the defendant "knew that the goods ordered [by the "dummy" company] would not be paid promptly in full"). Defendants' lack of financial ability to make good on the offers they made is thus evidence of fraud, and the discovery related to that issue is clearly relevant and proportionate to the needs of this case. Defendants cannot dodge this discovery by wrongly arguing that it was their "intent" to secure financing in the future, not their actual ability to pay, that is at issue.

---

[7] While Defendants to date have not asserted that confidentiality issues are a barrier to production of these documents and information, any such assertion would be unfounded given their ability to designate documents and information as "Confidential" or "Highly Confidential" under the Protective Order in the case. Ex. 9, ECF 205-1 ¶ 4.

This discovery also is relevant to test the veracity of Defendants' representations about Mr. Winnick's ability to fund transactions as WCO's "primary investor," and Defendants' suggestions of Mr. Winnick's wealth to entice licensees to transact with WCO. *Supra* § IV.A.1; Ex. 30, WCO 0000730.

Similarly, T-Mobile's request for information regarding the assets of the Winnick Entities in Interrogatory 18 is proper. Documents obtained in third-party discovery indicate that certain of Winnick's entities contributed financially to WCO. Ex. 32, STEIN-WCO-001-0003344 (expert report in *Signal Flare* litigation).[8] For example, a composite of WCO's balance sheets reflects that WCO borrowed money from both Winnick & Co. and Pacific Capital Group LLC on several occasions over the years. *Id.* at -3356-58; *id.* at -3357 ("Account 'Due to Winnick & Company' represents expenses paid by Mr. Winnick on behalf of WCO"). And GKW Spectrum Holdings LLC is the entity through which Winnick was a member of WCO; thus, Winnick made contributions to WCO through GKW. *See id.* at -3356, -3358 (identifying GKW's equity contributions as an owner of WCO). For the same reasons T-Mobile is entitled to discover Mr. Winnick's ability to fund or finance license purchases, and it is entitled to discover whether Mr. Winnick could have utilized these related entities or others to finance license transactions.

In the parties' correspondence, Defendants have mischaracterized T-Mobile's allegations in an effort to artificially limit the scope of discovery. They suggest that T-Mobile's theory is that "Defendants did not intend to pursue financing for spectrum acquisitions" which "does not place Defendants' personal assets or unrelated financial holdings at issue." Ex. 22, April 2 Letter at 2. What T-Mobile actually alleged is that WCO "lacks the capacity to make good" on the offers. Compl. ¶ 3; *see also id.* ¶ 56 (each time the Defendants use sham, non-binding offers

---

[8] This litigation involved a dispute between Mr. Winnick and a former business partner related to the formation of WCO and the entitlement of that former business partner to distributions from WCO.

to trigger ROFRs, "it constitutes fraud and is unfair" in part because "WCO does not have legitimate financing to back up its offers"). It is not just that Defendants did not intend to pursue external financing, it is that they lacked *any* source of funds—internal or external—to make good on their offers.

Defendants further ignore that they put this discovery at issue. In their Answer, they argue that, aside from the fake line of credit from SCH, they had "other funding channels" available to them. Ans. ¶¶ 4, 87. They repeatedly assert WCO's offers "were legitimate," and "backed by real" and "legitimate financing." *Id.* ¶¶ 1, 52e, 52f. And in the parties' correspondence and meet and confers, they have refused to stipulate that no Defendant could back WCO's offers. Ex. 25, May 13 Letter at 2; Ex. 28, June 1 Email. Defendants cannot on the one hand assert that WCO's offers were backed by legitimate financing (and leave open the argument that any Defendant could provide that financing), and on the other hand refuse to produce discovery into the asserted sources of that financing.

If discovery is limited to only WCO's "actual financing efforts" as Defendants suggest, nothing would prevent Defendants from coming to trial and putting on evidence that Mr. Winnick (or any other Defendant) could have stepped in to fund any license acquisition if necessary. "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Duran*, 258 F.R.D. at 378 (citation and internal quotation marks omitted). Absent a stipulation that the non-WCO Defendants and their affiliates would not have financed WCO's offers, T-Mobile is entitled to discover whether those entities had sufficient funds to backstop WCO.

**B.  Defendants' Contentions and Points and Authorities Regarding Issue 1**

**1. Defendants Have Agreed to Produce, and Are Producing, All Relevant Financing Discovery Requested by T-Mobile in RFPs 61, 67, 68, 96 and 97.**

T-Mobile's first issue is premised on the assertion that Defendants have refused to produce financial discovery. That premise is false. T-Mobile served a series of requests directed at WCO's financing of license purchases, Defendants agreed to produce responsive, non-privileged documents pursuant to the parties' agreed-upon search parameters, and Defendants have been doing so on a rolling basis.

T-Mobile's First Set of Requests for Production sought, among other things, documents concerning WCO's financing or planned financing of license purchases, as well as documents and communications relating to the SCH letter of credit and the Leon Capital Group proof-of-funds letter. Its Second Set of Requests sought documents concerning WCO's planned acquisition model and documents relating to WCO's financing, line-of-credit agreements, and other funding channels. As to each of these requests, Defendants served objections but agreed to produce responsive, non-privileged documents pursuant to the agreed search parameters.

Defendants have already produced substantial materials reflecting WCO's financing efforts and continue to do so, including documents and communications concerning the SCH letter of credit, the Leon Capital Group proof-of-funds letter, investor presentations, and communications with third-party funding sources. Defendants fully intend to continue producing all responsive, non-privileged documents concerning WCO's actual, proposed, and intended financing of license offers as the rolling production continues. (Mitts Decl. ¶ 4.)

RFP No. 61 illustrates the absence of any genuine dispute. Defendants agreed to produce documents responsive to that request and are doing so. There is no refusal to produce documents responsive to RFP No. 61, yet T-Mobile nevertheless includes it among the requests it asks the Court to compel. Discovery concerning WCO's financing—the financing WCO actually pursued and assembled to support its license offers—is simply not in dispute. Likewise, for RFP Nos. 67, 68, 96, and 97, Defendants agreed to meet and confer regarding search parameters,

29

JOINT DISCOVERY DISPUTE STIPULATION

and "produce responsive, non-privileged documents that they identify pursuant to the agreed parameters." Again, there is no dispute as to these RFPs.

### 2. T-Mobile Is Not Entitled to Compel RFP Nos. 62–66 or Interrogatory No. 18 Absent Any Showing That the Subject Entities Were Intended Funding Sources.

RFP Nos. 62-66 and Interrogatory No. 18 present a separate problem. These requests seek expansive financial discovery concerning personal financial relationships and entities that have no connection to WCO's financing of license purchases. This invasive discovery has no bearing on Plaintiff's claims or any defenses and is plainly improper.  Absent some showing that the entities at issue were actual or intended sources of financing for those acquisitions, T-Mobile is not entitled to that discovery.

RFP Nos. 62-66 seek documents concerning the CIM loan and the HSBC lending relationship. Those were personal lending arrangements for Mr. and Mrs. Winnick's home. WCO was not a borrower under either facility, was not a party to either arrangement, and T-Mobile has identified no evidence connecting either lending relationship to WCO's financing of license purchases. Instead, T-Mobile appears to rely solely on allegations from unrelated litigation filed after Gary Winnick's death to cast doubt on his personal financial condition. Whether certain personal loans were years later alleged to be in default (after Gary Winnick's death) has no bearing on whether WCO was actively pursuing financing for the acquisitions at issue here.

Interrogatory No. 18 is similarly overbroad. It requires Defendants to identify and describe all assets of the "Winnick Entities"—an asset inventory encompassing more than twenty entities under T-Mobile's extraordinarily expansive definitions—without any showing that those entities had *any* role in financing WCO's license purchases. Without some threshold showing that these entities were actual or intended funding sources, T-Mobile's demand for their

financial condition and asset information is precisely the type of speculative, disproportionate discovery that Rule 26 is designed to prevent.

Personal financial discovery is appropriate only where a party has affirmatively placed its own financial condition at issue. Here, no Defendant has represented that Gary Winnick, any of the individual Defendants, or any affiliated entity intended to personally finance WCO's license purchases. The record reflects precisely the opposite: WCO sought third-party financing through banks, family offices, private equity firms, and other outside sources. Whether the individual Defendants here could personally finance the purchase of a licenses is irrelevant to the question of whether WCO had legitimate financing.

Indeed, *Fosbre v. Las Vegas Sands Corp.*, 2016 WL 54202 (D. Nev. Jan. 5, 2016), cited by T-Mobile, supports Defendants' position. There, the court permitted discovery into the defendant's personal financial condition because the defendant had publicly represented that he would personally backstop the company's liquidity, thereby placing his own finances directly at issue. *Id.* at *3, 5*. The court expressly recognized, however, that where discovery into a party's financial condition is only marginally relevant and rests on speculative assertions, should not be allowed. *Id.* at *4.*.

To eliminate any possible dispute on these Requests, Defendants are prepared to stipulate that the three living individual Defendants —Tyler Kratz, Andreas Bitzarakis, and Carl Katerndahl—did not intend to personally finance WCO's license purchases from their own personal assets.

### 3. T-Mobile's Demanded Stipulation Is Not a Good-Faith Attempt to Resolve the Dispute.

T-Mobile's proposed stipulation further demonstrates that its Motion is not the product of a good-faith effort to resolve a discovery dispute. Rather than narrowing any disagreement, T-Mobile demanded that Defendants either submit to sweeping financial discovery concerning every affiliated person and entity or

stipulate that "no Defendant other than WCO, and no entity related to or affiliated with any Defendant other than WCO, *had the ability to* finance any license purchases." (Mitts Decl. ¶¶ 16-18, Exs. 9-11.)

That demand is improper for several reasons. First, it is untethered to any discovery request. T-Mobile never served an RFP or interrogatory asking whether any Defendant or affiliated entity had the abstract "ability to finance" license purchases. Second, whether a Defendant or affiliated entity theoretically possessed the ability to provide financing is not relevant to the claims or defenses in this case. The relevant inquiry concerns the financing WCO actually pursued and/or intended to pursue had T-Mobile not put it out of business. Third, had T-Mobile been attempting in good faith to resolve a discovery dispute, it would have narrowed the requests during the meet-and-confer process—for example, by asking Defendants to identify the individuals or entities that were actually intended to finance the acquisitions. Instead, T-Mobile created a sweeping "issue" encompassing an undefined universe of affiliated persons and entities, characterized Defendants' position as a wholesale refusal to produce discovery, and demanded an all-or-nothing stipulation that bears no relationship to any discovery request it actually served.

If T-Mobile has a good-faith basis to believe that a particular individual or entity was an intended source of financing for WCO's license purchases, it may identify that individual or entity and seek appropriately tailored discovery. Defendants remain willing to meet and confer regarding such targeted requests. What Defendants cannot be compelled to do is open the financial records of more than twenty non-party affiliated entities—or stipulate to a sweeping proposition concerning their hypothetical ability to finance acquisitions—based on nothing more than speculation.

In short, Defendants have agreed to produce, and are producing on a rolling basis, documents reflecting WCO's efforts to obtain financing for its license

JOINT DISCOVERY DISPUTE STIPULATION

purchases. What T-Mobile seeks instead is expansive discovery into the personal finances and assets of numerous affiliated individuals and entities without any showing that they were actual or intended financing sources, and, with respect to RFP Nos. 67, 68, 96, and 97, based on requests whose scope T-Mobile has refused to clarify. That discovery is unsupported, premature, and disproportionate to the needs of the case. T-Mobile's Motion should therefore be denied as to Issue No. 1.

JOINT DISCOVERY DISPUTE STIPULATION

## V.    ISSUE IN DISPUTE 2: ENTITIES FROM WHOM WCO PRODUCED DOCUMENTS

**DEFINITION OF "WCO"**

"WCO" means WCO Spectrum LLC and its Board of Trustees, board members, officers, employees, representatives, agents, and attorneys, to the fullest extent the context permits. WCO Spectrum LLC includes its predecessors and successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, members, and for each of the foregoing, any present or former principals (including all partners herein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf. For avoidance of doubt, this includes Winnick and Company, Pacific Capital Group, Inc., and GKW Spectrum Holdings, LLC, as well as any of their successors in interest, parents, subsidiaries, affiliates, divisions, departments, officers, directors, and for each of the foregoing, any present or former principals (including all partners therein), officers, directors, attorneys, advisors, representatives, employees, agents, accountants, or any other person(s) acting on its or their behalf.

**WCO'S RESPONSE TO DEFINITION OF "WCO":**

The WCO Parties object to the definition of WCO Spectrum LLC to the extent it includes all officers, employees, representatives, agents, and others.

### A.    T-Mobile's Contentions and Points And Authorities Regarding Issue 2

#### 1.    Background

Defendants have indicated they are interpreting WCO to "include WCO Spectrum LLC and its officers, employees, representatives, and agents when acting on behalf of WCO in connection with the matters at issue in this case." Ex. 22, April 2 Letter at 2. They suggest this interpretation "captures the entity and those acting on its behalf in connection with the matters at issue." Ex. 25, May 13 Letter

at 2.  And while they have represented that, "[t]o the extent any such entities were involved in the conduct at issue, responsive materials will be produced," *id.*, they have refused to identify which entities they contend "were involved in the conduct at issue" and thus are included within their searches, Ex. 27, May 20 Email; Ex. 29, June 9 Email.  Similarly, Defendants contend that the definition is "facially overbroad" because it would "sweep[] in every entity with a common owner."  Ex. 28, June 1 Email.

T-Mobile repeatedly has sought clarification from Defendants as to the entities they are including (and excluding) from their searches, but Defendants have obfuscated.  *E.g.*, Ex. 23, April 10 Letter at 3; Ex. 27, May 20 Email; Ex. 29, June 9 Email.  They simply maintain they "are not withholding documents that fall within the proper scope of discovery."  Ex. 28, June 1 Email.

### 2.    Defendants Should Be Ordered To Confirm Whether They Are Withholding Documents From WCO Affiliates or Subsidiaries

Despite repeated requests, Defendants refuse to identify which entities they contend are within the scope of discovery.  That is a basic issue and a fair question, which Defendants should be required to answer.

Defendants cannot rely on generalized objections of irrelevance and overbreadth devoid of any specificity.  *Duran*, 258 F.R.D. at 379  ("[U]nexplained and unsupported boilerplate objections are improper.").  Nor can Defendants simply declare they will interpret "WCO" such that it covers documents "that fall within the proper scope of discovery" without explaining *what* they contend falls "within" discovery (and, relatedly, what falls outside of it).  *See* Ex. 28, June 1 Email.

Defendants' argument of "facial overbreadth" similarly lacks merit.  For one, T-Mobile has never taken the position that Defendants must produce documents from "every entity with a common owner" irrespective of relevance.  *See* Ex. 29, June 9 Email.  T-Mobile's position is that it is entitled to understand the sources

Defendants are searching in response to requests seeking information about or with "WCO," as defined in the requests.  To the extent WCO acted through subsidiary or affiliate entities with respect to the conduct at issue, those documents should be produced.   But T-Mobile cannot assess the scope of Defendants' productions without knowing which entities Defendants are (and are not) searching for and producing from.

Accordingly, Defendants should be ordered to provide the requested information about the sources they are searching for their productions.

**B.    Defendants' Contentions and Points and Authorities Regarding Issue 2**

T-Mobile's second issue is based on another false premise. T-Mobile tells the Court that Defendants have "refused to identify" the sources from which they are collecting and producing documents and asks the Court to compel that disclosure. But Defendants have never refused to identify their data sources. To the contrary, the parties exchanged proposed search parameters—including custodians, search terms, and data sources—met and conferred regarding those parameters, and reached agreement on them months ago. There is nothing for the Court to compel.

This is not a case in which Defendants concealed or withheld the sources of their production. Both sides exchanged proposed search parameters, including the specific data sources to be searched. (Mitts Decl. ¶ 9.) The parties then met and conferred on March 4, 2026, to discuss those proposals and reached agreement on the search parameters, including the agreed-upon data sources. (Id.) T-Mobile's counsel memorialized that agreement in a March 5, 2026 email, which identifies the agreed custodians, search terms, and data sources. (Mitts Decl. ¶ 10, Ex. 4.) Those are the very sources T-Mobile now claims Defendants have refused to identify.

Nor did T-Mobile ever contend that any particular data source had been omitted. At no point after the parties reached agreement did T-Mobile ask Defendants to collect from an additional source, identify a source it believed was

JOINT DISCOVERY DISPUTE STIPULATION

missing, or request that the parties revisit their agreed-upon search protocol. Instead, for the first time in its motion, T-Mobile asserts that Defendants have refused to disclose their data sources. The record establishes the opposite.

Because Defendants disclosed their data sources, the parties agreed on those sources, and T-Mobile never requested that any additional source be searched, there is no live discovery dispute for the Court to resolve. T-Mobile's Motion should therefore be denied as to Issue No. 2.

# VI.   ISSUE IN DISPUTE 3: RELEVANT TIME PERIOD

**INSTRUCTION 16:**

Unless otherwise noted, the relevant time period for these requests is January 1, 2018 through present.

**WCO, WINNICK & KATERNDAHL'S RESPONSE TO INSTRUCTION 16:**

The WCO Parties object to the relevant time period stated in Instruction No. 16 as overly broad and unduly burdensome. There is no basis for assuming documents from 2018—a full two years before FCC rules were changed to permit entities like WCO Spectrum LLC from purchasing spectrum—could possibly be relevant to this action. Furthermore, there is no basis to require the WCO Parties to search for or produce documents created after October 31, 2023.  As of that date, WCO no longer employed any personnel involved in pursuing or negotiating license acquisitions, and no such activities occurred thereafter.  Requiring the WCO Parties to search documents from clearly irrelevant time periods for responsive documents is overly broad, unduly burdensome, and not proportional to the needs of the case. The WCO Parties will neither search for nor produce documents dated prior to January 1, 2020, or after October 31, 2023.

**BITZARAKIS & ACADEMIA'S RESPONSE TO INSTRUCTION 16:**

The Academia Parties object to the relevant time period stated in Instruction No. 16 as overly broad and unduly burdensome. There is no basis for assuming documents from 2018—a full two years before FCC rules were changed to permit entities like WCO Spectrum LLC from purchasing spectrum—could possibly be relevant to this action. Furthermore, there is no basis to require the Academia Parties to search for or produce documents created after October 31, 2023. As of that date, WCO no longer employed any personnel involved in pursuing or negotiating license acquisitions, and no such activities occurred thereafter. Requiring the Academia Parties to search documents from clearly irrelevant time periods for responsive documents is overly broad, unduly burdensome, and not proportional to the needs of

the case. The Academia Parties will neither search for nor produce documents dated prior to January 1, 2020, or after October 31, 2023.

**KRATZ'S RESPONSE TO INSTRUCTION 16:**

Kratz objects to the relevant time period stated in Instruction No. 16 as overly broad and unduly burdensome. There is no basis for assuming documents from 2018—a full two years before FCC rules were changed to permit entities like WCO Spectrum LLC from purchasing spectrum—could possibly be relevant to this action. Furthermore, there is no basis to require Kratz to search for or produce documents created after October 31, 2023. As of that date, WCO no longer employed any personnel involved in pursuing or negotiating license acquisitions, and no such activities occurred thereafter. Requiring Kratz to search documents from clearly irrelevant time periods for responsive documents is overly broad, unduly burdensome, and not proportional to the needs of the case. Kratz will neither search for nor produce documents dated prior to January 1, 2020, or after October 31, 2023.

### A. T-Mobile's Contentions and Points and Authorities Regarding Issue 3

#### 1. Background

While the parties resolved their dispute over the start date for Defendants' document production, a dispute remains over the end date. Defendants unreasonably refuse to produce documents through 2023 based on their contention that WCO "ceased operations" by October 31, 2023. Ex. 22, April 2 Letter at 9; Ex. 27, May 20 Email. Setting aside the fact that this cessation date is disputed (as discussed below), it is a near certainty that documents relevant to this action exist from November and December 2023, which cover the period surrounding (i) WCO's wind down and (ii) Mr. Winnick's death on November 4, 2023. Ex. 5, ECF 67; *see* Ex. 23, Apr. 10 Letter at 9. It would be easy for Defendants to search for and review documents to cover two additional months—and they have never suggested that searches encompassing this two-month period would impose any

undue burden—but they have refused to do so. They have expressed a willingness to confer only about a "modest extension to capture any discrete winding-down materials related to WCO's operations"; Defendants otherwise refuse to produce documents on what they describe as "post-operations activities," which of course concedes there were activities after WCO purportedly ceased operations. Ex. 25, May 13 Letter at 4-5; Ex. 28, June 1 Email.

## 2. Defendants Should Be Ordered To Produce Documents Through December 31, 2023

T-Mobile's request is eminently reasonable—it is simply asking Defendants to produce documents generated during a two-month period in which (1) WCO wound down and engaged in "post-operation activities" and (2) Mr. Winnick died. This brief period will obviously contain responsive materials. Defendants' position is a flat no—without any explanation of what these "post-operations activities" are or why they are irrelevant to the claims or defenses in this case. Nor has WCO articulated any burden of searching for and producing documents for this additional two-month period.

That position is not sustainable. For one, third-party discovery in this case shows WCO continued operations into 2024. Ex. 32 (expert report in *Signal Flare* litigation). This material indicates "WCO closed its office effective June 1, 2024," not October 31, 2023, and continued to incur basic expenses associated with operating a business through 2024. *Id.* at -3353-54. But even taking the October 31, 2023 date at face value, Defendants articulate no reason why only "discrete" wind-down activities would be relevant but any other "post-operations activities" would not. Ex. 25, May 13 Letter at 4-5. And, critically, Mr. Winnick passed away on November 4, 2023—just a few days after Defendants' proposed cutoff date. Ex. 5, ECF 67. It is inevitable that WCO's purported wind down and Mr. Winnick's passing spurred discussions about issues that are relevant to this case. For example, in a declaration in the *CIM* litigation, Karen Winnick revealed that, after Mr.

JOINT DISCOVERY DISPUTE STIPULATION

Winnick's death, she learned that Mr. Winnick "faced significant financial demands . . . in the years prior to his death" and "needed money to repay debts."  Ex. 7 ¶ 6.

Defendants should therefore be ordered to produce documents through December 31, 2023.

### B.    Defendants' Contentions and Points and Authorities Regarding Issue 3

Defendants have already agreed to extend the relevant time period backward to April 1, 2019—well *before* WCO's formal formation—to capture the pre-formation activities reflected in the Signal Flare trial testimony concerning the development of WCO's business. Defendants initially proposed October 31, 2023—the date WCO ceased operations—as the end date for their productions. To eliminate this dispute and avoid burdening the Court, however, Defendants will extend the end date for WCO's productions through December 31, 2023.

That agreement does not mean the parties' discovery should be subject to identical temporal limits. The parties are not similarly situated, and the Federal Rules do not require symmetrical discovery where the relevant conduct occurred during different time periods. Discovery directed to Defendants properly tracks the lifespan of WCO because the claims against Defendants concern WCO's efforts to develop, finance, and operate its spectrum-acquisition business. WCO's operations had a beginning and an end. Discovery directed to T-Mobile is fundamentally different because the conduct relevant to Defendants' defenses and affirmative defenses did not end when WCO ceased operations.

According to Defendants, WCO ceased operating in October 2023 as a result of T-Mobile's anticompetitive conduct. T-Mobile, by contrast, continues to dominate the market for 2.5 GHz licenses and continues to engage in the very conduct that forms the basis of Defendants' affirmative defenses. Those defenses—including unclean hands and anticompetitive conduct—depend on T-Mobile's ongoing licensing practices, market conduct, and communications with regulators, all of

41
JOINT DISCOVERY DISPUTE STIPULATION

which continue beyond 2023. A temporal limitation that is appropriate for a company that no longer exists is not appropriate for the company whose continuing conduct remains directly at issue. T-Mobile cannot use WCO's cessation of operations as a basis to insulate its own ongoing conduct from discovery.

JOINT DISCOVERY DISPUTE STIPULATION

## VII.  ISSUE IN DISPUTE 4: PRODUCTION COMPLETION DATE FOR THOMAS GRIFFITH, FORMER WCO PRINCIPAL

### A.  T-Mobile's Contentions and Points and Authorities Regarding Issue 4

Thomas Griffith is a former principal at WCO, who worked there when it was formed and was involved in its earliest operations.  On February 20, 2026, T-Mobile served a document subpoena on Mr. Griffith.  Ex. 19; Ex. 20.  Mr. Griffith failed to respond by the subpoena's return date of March 6, 2026.  *Id.*; Ashworth Decl. ¶ 22. Mr. Griffith, however, served untimely objections and responses approximately a month and a half later, on April 24, 2026.  Ex. 24.  On that same date Mr. Griffith produced 91 documents, none of which included any e-mail or other correspondence with Defendants.  Even though Mr. Griffith has agreed to produce his remaining responsive documents, he has slow-rolled his production and has not produced any additional materials for months.  When T-Mobile attempted to engage on the timing of the remainder of his production and work cooperatively with him by requesting a completion date in May, Ex. 26, May 15 Email, Mr. Griffith ignored it, Ashworth Decl. ¶ 29.  At this point, Mr. Griffith also has not stated whether he is attempting to withhold any documents based on his untimely objections, all of which have been waived.  *McCoy v. Sw. Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002) ("Failure to serve timely objections waives all grounds for objection, including privilege.").  Accordingly, this Court should order Mr. Griffith to produce all documents in response to the subpoena within two weeks of an order on this motion and to confirm he is not withholding any such documents based on any waived objections, including privilege.

### B.  Defendants' Contentions and Points and Authorities Regarding Issue 4

T-Mobile's motion to compel as to Mr. Griffith rests on two incorrect arguments: first, that Mr. Griffith waived all objections, including privilege, by failing to respond by March 6, 2026; and second, that he is improperly withholding responsive documents. Neither premise is supported by the record.

43

T-Mobile's waiver argument depends entirely on treating March 6, 2026 as a binding compliance deadline. It was not. T-Mobile's counsel unilaterally selected that date after Maurice Mitts agreed only to accept service of the subpoena on Mr. Griffith's behalf; he did not agree to any particular response or production deadline. (Mitts Decl. ¶ 10, Ex. 4.)

More importantly, two days before the purported deadline, on March 4, 2026, counsel met and conferred and confirmed they were proceeding cooperatively and would not hold one another to rigid deadlines. During that conference, defense counsel advised that Mr. Griffith was in the process of responding to the subpoena, that his personal files and emails would be searched separately in response to the subpoena, and that he would also be added as a custodian to WCO's corporate document collection. Ilana Frier's March 5, 2026 email—sent the day before the purported compliance deadline—confirms T-Mobile's contemporaneous understanding of that agreement. (Mitts Decl. ¶ 10, Ex. 4.) The email carefully memorializes the parties' agreements on numerous discovery issues, including Mr. Griffith's document collection, yet says nothing about an impending March 6 deadline, expresses no concern that a production was due the next day, and contains no suggestion that T-Mobile intended to claim waiver if documents were not produced immediately. The contemporaneous correspondence speaks for itself.

Even assuming the response could be viewed as technically untimely, waiver still would not apply because this case falls squarely within the "unusual circumstances" exception recognized by this Court. As *McCoy v. Southwest Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002)—a case cited by T-Mobile—explains, courts have consistently held that "in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections to a Rule 45 subpoena." Courts generally consider three factors: (1) whether the subpoena is facially overbroad and exceeds the bounds of fair discovery; (2) whether the subpoenaed witness is a non-party acting in good faith; and (3) whether counsel for the witness

JOINT DISCOVERY DISPUTE STIPULATION

and counsel for the subpoenaing party were in contact concerning the witness's compliance before objections were asserted. *Id.* All three factors are present here.

First, the subpoena is extraordinarily broad. It demands all documents and communications relating to WCO, T-Mobile, and every EBS licensee implicated in this complex RICO action—a sweeping request that far exceeds the scope of appropriate discovery directed to a non-party former employee.

Second, Mr. Griffith acted in good faith throughout the process. He did not ignore the subpoena. Through counsel, he collected his personal files, reviewed them for responsiveness and privilege, and produced 91 responsive, non-privileged documents. T-Mobile itself acknowledged throughout the discovery process that Mr. Griffith was cooperating and working toward compliance. (Mitts Decl. ¶ 10, Ex. 4.)

Third, counsel were in repeated and substantive communication regarding Mr. Griffith's compliance well before any privilege dispute arose. The March 4 meet and confer specifically addressed Mr. Griffith's subpoena response, and Ms. Frier's March 5 email memorialized the parties' agreement that his personal files and email would be searched separately while he was also added as a custodian to WCO's corporate document collection. This is precisely the type of active, pre-objection communication that *McCoy* recognized as supporting application of the unusual-circumstances exception.

*McCoy* itself underscores why waiver is inappropriate here. There, the court declined to apply the exception largely because the subpoena was not facially overbroad and counsel had not engaged in meaningful discussions concerning compliance before the privilege dispute arose. *Id.* Those facts are absent here. The subpoena is undeniably broad, Mr. Griffith is a cooperating non-party who has already produced nearly one hundred documents, and counsel were actively coordinating his compliance before any waiver argument was ever raised.

Even apart from waiver, T-Mobile's motion fails on the merits. The documents Mr. Griffith withheld consist of privileged communications between WCO and its

JOINT DISCOVERY DISPUTE STIPULATION

counsel that Mr. Griffith retained solely because of his former employment with WCO. The attorney-client privilege belongs to WCO, not to Mr. Griffith, and a former employee has no authority to waive his former employer's privilege. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981).

WCO timely asserted privilege over these documents in its own party discovery well before the Griffith subpoena was served. T-Mobile cannot use a subpoena directed to a former employee to circumvent privilege protections WCO has consistently maintained throughout this litigation. The fact that those privileged documents also happen to reside in Mr. Griffith's WCO files does not extinguish WCO's privilege. They will be identified on WCO's privilege log in the ordinary course, consistent with the Federal Rules.

Finally, T-Mobile's assertion that Mr. Griffith "slow-rolled" his production is inaccurate. Defendants have been engaged in a rolling production involving more than 400,000 documents collected from party custodians, while T-Mobile has itself failed to produce a single document in response to Defendants' discovery requests. Mr. Griffith's custodial documents within WCO's corporate collection are part of that ongoing rolling production and will be produced in due course. As to his personal files, they have been collected, reviewed, and all responsive, non-privileged documents have been produced.

JOINT DISCOVERY DISPUTE STIPULATION

Dated:  June 26, 2026

Respectfully submitted,

By: *Jeffrey A. Rosenfeld*
ALSTON & BIRD LLP
Jeffrey A. Rosenfeld (#136896)
jeffrey.rosenfeld@alston.com
Jesse Steinbach (#278923)
jesse.steinbach@alston.com
Brooke Bolender (#340689)
brooke.bolender@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1143

WILLIAMS & CONNOLLY LLP
Kenneth J. Brown*
kbrown@wc.com
Jonathan B. Pitt*
jpitt@wc.com
William P. Ashworth*
washworth@wc.com
R. Kennon Poteat III*
kpoteat@wc.com
Kathryn E. Hoover*
khoover@wc.com
Ilana B. Frier*
ifrier@wc.com
Camille Wyss*
cwyss@wc.com
680 Maine Avenue, SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

KLEINBARD LLC
Steven J. Engelmyer*
sengelmyer@kleinbard.com
Three Logan Square
1717 Arch Street, 5th Floor
Philadelphia, PA 19103
Telephone: 215-568-2000

47

*admitted *pro hac vice*

*Attorneys for Plaintiffs*

Dated: June 29, 2026          Respectfully Submitted,

WINNICK LAW, PC
Alexander H. Winnick (239430)
aw@winlawpc.com
2450 Colorado Ave., Suite 100E
Santa Monica, CA 90404
(424) 317-7411

*/s/ Maurice R. Mitts*
MITTS LAW, LLC
Maurice R. Mitts*
mmitts@mittslaw.com
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112

*admitted *pro hac vice*

*Attorneys for Defendants*

EDELSON PC
Natasha Fernandez-Silber*
nfernandezsilber@edelson.com
200 South 1st Street
Ann Arbor, MI 48104
312-589-6370

Ali Moghaddas
amoghaddas@edelson.com
1601 Wilshire Boulevard,
Suite 1970
Los Angeles, CA 90025
805-725-6234

Brandon Michael Baum-Zepeda
bbaum-zepeda@edelson.com

48

1255 Union Street NE, Suite 850
Washington, DC 20002
202-505-7608

BERGER MONTAGUE PC
Patrick F. Madden*
pmadden@bergermontague.com
1818 Market Street
Suite 3600
Philadelphia, PA 19103
215-875-3000

*admitted *pro hac vice*

*Attorneys for Defendant WCO Spectrum LLC*

JOINT DISCOVERY DISPUTE STIPULATION

## ATTESTATION

The filer, pursuant to L.R. 5-4.3.4(a)(2), hereby certifies that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  June 29, 2026                   ALSTON & BIRD LLP

                                        */s/ Jeffrey A. Rosenfeld*
                                        Jeffrey A. Rosenfeld

JOINT DISCOVERY DISPUTE STIPULATION