Brandon Baum-Zepeda (SBN 352698)
bbaum-zepeda@edelson.com
**EDELSON PC**
1255 Union St NE, Suite 850
Washington, DC 20002
Tel: 202.270.4777

Patrick F. Madden (*pro hac vice*)
pmadden@bergermontague.com
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3035

Natasha Fernández-Silber (*pro hac vice*)
nfernandezsilber@edelson.com
**EDELSON PC**
200 South 1st Street
Ann Arbor, MI 48104
Tel: 312-589-6370

*Attorneys for WCO Spectrum LLC*
*[Additional Counsel on Signature Page]*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

T-MOBILE US, INC., *et al.*,
Plaintiffs,

vs.

WCO SPECTRUM LLC, *et al.*,
Defendants.

No. 2:23-cv-04347-AH-E
Hon. Anne Hwang

**WCO SPECTRUM LLC'S OPPOSITION TO T-MOBILE'S EX PARTE APPLICATION TO FILE PROPOSED REPLY**

Complaint Filed: June 2, 2023
Counterclaims Filed: January 7, 2026

## INTRODUCTION

At the July 15 hearing, the Court repeatedly asked T-Mobile to answer two questions that go to the heart of this dispute: First, "what do I do with the language" of the "Exclusivity" provisions in the Leases barring third-party sales? Tr. 45:19-20; *id*. at 47:22-23 ("[S]o, that's why I keep asking you, what do I do with the language itself?"). And second, in regard to T-Mobile's argument that a 30-year term for its exclusive Leases is "necessary," are there "cases that deal with" such procompetitive justifications "at the motion to dismiss stage as opposed to [] summary judgment?" Tr. 54:4-6; *id*. at 52:7-8 ("Are there cases that are helpful regarding the length of the lease term?"); *id*. at 52:16-21 ("[A]re there cases at the motion to dismiss stage? Because, as I've indicated in the tentative . . . you've asserted that the lease term is necessary because of the nature of the product.").

T-Mobile's counsel could not answer either question, stating twice that he would "get back to" the Court. Tr. 52:25-53:1; *id*. at 54:7-8. The Court then granted the parties leave to file 10-page supplemental briefs on these issues, but not before confirming with T-Mobile's counsel that **he did not seek to file a reply.** Tr. 61:4-8 (Court: "I'll take the matter under submission and issue a final order after that, unless you're asking for a reply." Mr. Pitt: "Yeah, Your Honor, I think—we don't—we don't want to over burden you.").

After largely ignoring the Court's questions in its 10-page supplemental brief, T-Mobile now seeks leave to burden the Court with another supplemental brief. The request should be denied. T-Mobile has already submitted **three briefs** in support of its Motion to Dismiss, including its reply as of right under Local Rule 7-10. ECF Nos. 224-1, 228, 247. There is no reason why it should be permitted to file a fourth one. And T-Mobile's proposed reply (ECF No. 267-2)—which largely rehashes T-Mobile's prior arguments—will not assist the Court and confirms there is no valid basis for permitting additional supplemental briefing.

## ARGUMENT

### I. T-Mobile Does Not Meet the Standard for Ex Parte Relief.

T-Mobile fails to show any "irreparable injury," a prerequisite for its request to be heard on an expedited, ex parte basis. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The possibility that the Court might rule on the Motion to Dismiss before T-Mobile's request for a discretionary fourth brief is heard, *see* ECF No. 267-1 (T-Mobile's Mem. ISO Ex Parte Application For Leave to File Reply) at 2, hardly qualifies as harm at all, much less irreparable, urgent harm justifying the "extraordinary" remedy of ex parte relief. *Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 943 (C.D. Cal. 2022) ("Ex parte applications are solely for extraordinary relief and are rarely justified.").

Moreover, T-Mobile's instant request for ex parte adjudication represents the second improper ex parte application it has filed within the span of a week. T-Mobile filed the first one on August 11, 2026, the day before WCO's supplemental brief was due. *See* ECF No. 253 (Ex Parte Application to Enforce Discovery Stay). That filing was clearly timed to force WCO to draft two briefs simultaneously, and T-Mobile's counsel should be cautioned against abusing the Court's ex parte process in this way. *See Cal. Dep't Toxic Substances Control v. NL Indus., Inc.*, No. 20-cv-11293, 2025 WL 3049972, at *2 (C.D. Cal. Aug. 25, 2025) (filing a "last-minute ex parte application" knowing that "Plaintiffs would have to drop everything and file their opposition before 4 p.m. the next day, smacks of 'abuse'").

### II. T-Mobile's Proposed Reply Confirms There Is No Valid Reason for Additional Supplemental Briefing.

Leave to file supplemental briefing should be granted only if it will allow the Court to "consider evidence or arguments that give a more complete picture of the issues in need of resolution." *See Tounget v. Valley-Wide Recreation & Park Dist.*, No. 16-cv-88, 2020 WL 8410456, at *2 (C.D. Cal. Feb. 20, 2020). T-Mobile's Proposed Reply confirms that no such "valid reason" exists. *Id*.

**A. T-Mobile's proposed reply is largely devoted to rehashing its incorrect substantial foreclosure arguments.**

As it did in its last supplemental brief, T-Mobile again complains in its proposed reply that WCO "conflates" the concept of market "coverage" with the anticompetitive "effect" of substantial foreclosure of the relevant market. *See* Proposed Reply at 2-3. WCO does no such thing. As WCO has already explained, one factor (among many) that courts consider when deciding if a defendant's exclusive contracts result in "substantial foreclosure" is their market "coverage"—i.e., the portion of the relevant input (here, available 2.5 GHz Spectrum Licenses) that the contracts' exclusivity requirements encumber (or tie up). Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1821 (5th ed. 2025); *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (to allege substantial foreclosure, the challenged contracts must involve "a substantial share of the relevant market"). WCO alleges that a substantial share of available EBS Licenses (those not owned outright by T-Mobile) are encumbered by the Exclusivity provisions in the Leases, meaning they could not be accessed by T-Mobile's rivals, thus impairing competition. This allegation—along with the other indicia of substantial foreclosure WCO alleges, such as T-Mobile's market power and the long-term duration of its Leases—is more than sufficient at the pleading stage. *See CoStar v. CREXI*, 150 F.4th 1056, 1067 (9th Cir. 2025).

T-Mobile also again presses the ludicrous argument that, in order to plead substantial foreclosure, WCO was required to allege specific facts showing that each of the over 800 Licensees who declined to transact with WCO—many if not all of whose Leases legally precluded them from transacting with any other third party—did so because of their Leases. Proposed Reply at 2-3. This kind of heightened pleading requirement is plainly not contemplated by Rule 8 and has long been foreclosed by Supreme Court precedent, which holds that substantial foreclosure is assessed based on the "probable" effect of "performance" under the terms of

exclusive contracts. *Tampa Elec.*, 365 U.S. at 327. Nor are such specific causation allegations required to establish that WCO's injuries "flow from" T-Mobile's unlawful foreclosure of the relevant market—even at summary judgment. *See Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1168 (9th Cir. 2013) (an antitrust plaintiff survives summary judgment on causation by "present[ing] evidence that he suffered the sort of injury that would be the expected consequence of defendant's wrongful conduct"). To the extent WCO was required to plead any specific facts confirming that Licensees declined to transact with WCO because of their Leases—which, again, would be a requirement that finds no support in the case law—WCO has more than satisfied it by alleging facts concerning the owners of 100 Licenses, who expressly stated that they could not sell to WCO because of the Leases. FAC ¶¶ 141-154.[1]

T-Mobile again attempts to bait the Court into reversible error by insisting that foreclosure must be measured by dividing (a) the number of exclusive contracts that impacted WCO and were specifically referenced in the complaint, by (b) the total number of EBS Licenses in the market (2,200). *See* Proposed Reply at 1, 2-3 ("100 of 2,200 EBS licenses is just 4.5% of the purported market"). That is not how substantial foreclosure is measured, and directly contradicts *Twin City Sportservice*, 676 F.2d 1291 (9th Cir. 1982), a seminal Ninth Circuit decision on exclusive dealing that T-Mobile never once acknowledges. Under *Twin City*, foreclosure is assessed by

---

[1] T-Mobile now also claims that WCO "concedes" in its supplemental brief that the owners of only 100 Licenses allegedly refused to transact with WCO due to unspecified "lease terms" (not exclusivity provisions). Proposed Reply at 2. Nonsense. WCO has always been clear about the provisions of the Leases that results in substantial foreclosure—their Exclusivity provisions, which prohibit Licensees from "negotiat[ing] with" or "contract[ing]" with "any third party" to "lease, sell, assign, [or] transfer" its License. Whether a specific Licensee used those exact words in their emails to WCO—or simply pointed to their Leases generally—is completely irrelevant.

looking at the "aggregate" impact of all of T-Mobile's exclusive Leases on the market—not just those that harmed WCO specifically. *Id*. at 1303. The relevant ratio, in other words, would be the number of Licenses encumbered by T-Mobile's exclusive Leases, divided by the total number of available Licenses in the market (i.e., those not owned outright by T-Mobile). That is a factual question for summary judgment—after discovery has established the full scope of T-Mobile's exclusive Leases—not a pleading-stage inquiry. *Applied Medical Resources v. Medtronic*, No. 8:23-cv-00268, 2023 WL 5503107, at *2 n.1 (C.D. Cal. Aug. 2, 2023).

**B. The proposed reply also recycles T-Mobile's prior market definition arguments, which are legally incorrect.**

T-Mobile additionally states in passing that WCO's alleged relevant market is "facially deficient." Proposed Reply at 3. To the extent the Court adopts this argument (as it did in its tentative), it would be reversible error for the reasons stated in WCO's Opposition to the Motion to Dismiss. ECF No. 227 at 10-11. The Court should revert to its prior determination that WCO plausibly alleges a relevant market for 2.5 GHz Spectrum License Rights, and T-Mobile's "objections are premature on this motion to dismiss." ECF No. 187 at 22.

**III. T-Mobile Cites No Cases Holding that the Court May Consider Its Procompetitive Justifications at the Pleading Stage.**

T-Mobile still has yet to find a single case holding that the Court may consider T-Mobile's procompetitive justification for the long-term durations of its exclusive Leases (i.e., that they were "necessary" for T-Mobile to compete with AT&T and Verizon). T-Mobile now characterizes the supposed "necessity" of its 30-year Lease terms as simply a market reality that WCO somehow admits to in the FAC. *See* Proposed Reply at 1-2. This argument blatantly mischaracterizes the allegations in the FAC. Nowhere does WCO plead that the entire 2.5 GHz spectrum band had to be controlled exclusively by one firm for 30 years, or that, in a competitive market, there would simply be a different long-term monopsonist in T-Mobile's place. WCO

instead pleads that in a competitive market—i.e., in the absence of T-Mobile's exclusive dealing scheme—multiple competitors would bid on spectrum license rights as part of a fair and open process, and, as a result, multiple firms could gain access to a "critical mass" of spectrum. FAC ¶¶ 12, 67, 87-88, 107. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007), is completely inapposite, and merely stands for the proposition that a "would-be supplier does not violate the antitrust laws by offering a multi-year agreement in a market in which the retailers already require one-year 'de facto' agreements." *Id.* at 453. It has no bearing on this dispute.

## IV. Judicial Notice of the 211 Leases Attached to WCO's Supplemental Opposition Is Plainly Proper.

T-Mobile's arguments against judicial notice are meritless. As an initial matter, the Leases WCO attaches are obviously "integral" to its counterclaims because they are the mechanisms by which T-Mobile allegedly foreclosed competition in the alleged relevant market. FAC ¶¶ 113-154. Judicial notice (or incorporation by reference) is therefore warranted. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). WCO did not attach these 200+ Leases to its opposition brief because it did not need to, as the case law makes clear: A plaintiff need not plead (let alone attach to a pleading) every contract underlying an exclusive dealing scheme at the pleading stage, particularly when there are thousands of them. *See Heckman v. Live Nation Ent.*, No. 22-cv-0047, 2025 WL 1141266, at *6-7, n.7 (C.D. Cal. Apr. 11, 2025). But because T-Mobile has insisted on improperly converting this Rule 12 proceeding into one for summary judgment by asking the Court to judicially notice reams of extrinsic evidence, WCO has been forced to respond in kind. It would be an abuse of discretion for the Court to notice the 71 Leases T-Mobile chose to append, as it indicated it would do in its tentative ruling, while denying WCO's request for judicial notice of additional Leases it has obtained. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018) ("If defendants are permitted to present their own version of the facts at the pleading

stage—and district courts accept those facts as uncontroverted and true—it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief.").

Moreover, contrary to T-Mobile's suggestion (Proposed Reply at 4), none of the Leases WCO attached to its brief came from third-party discovery in this litigation.[2] Nor has WCO engaged in improper "self-selection" of the Leases—an accusation that is rich considering T-Mobile possesses all of the Leases and could easily prove (if true) that the 211 Leases WCO attaches are unrepresentative by producing the full set. Instead, T-Mobile has fought WCO's efforts to obtain such discovery tooth and nail because it knows that the vast majority of its Leases contain expressly exclusive language—just as WCO alleges, and just as the partial record of 282 Leases confirms. Indeed, even looking at just the 71 Leases T-Mobile itself selected to attach to its own motion, the vast majority (if not all) are expressly exclusive.

## V. Sound Judicial Administration Plainly Favors Rule 54(b) Certification.

WCO is happy to submit additional briefing on the question of whether dismissal under Rule 54(b) is appropriate, should the Court request it. However, Rule 54(b) certification is plainly warranted in the event the FAC is dismissed.

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The Rule was adopted "specifically to avoid the possible injustice of delay[ing] judgment o[n] a distinctly separate claim [pending] adjudication of the entire case" and is "aimed to augment, not diminish, [a litigant's] appeal opportunity." *Gelboim v. Bank*

[2] WCO has obtained only one Lease through the issuance of a third-party subpoena, but WCO also independently obtained this lease via a public records request.

*of Am. Corp.*, 574 U.S. 405, 410 (2015) (citations omitted).

The Supreme Court has held that dismissal under Rule 54(b) is appropriate where the motion (1) concerns a "final judgment"—that is, a judgment that is "an ultimate disposition of an individual claim entered in the course of a multiple claims action," and (2) no "just reason for delay" of the appeal of such judgment exists. *Curtiss-Wright Corp. v. Gen. Elec. Co*., 446 U.S. 1, 7-8 (1980). A decision is "final" for purposes of this analysis "if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Arizona State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1039 (9th Cir. 1991). In determining whether any "just reason for delay exists," a district court must "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8.

Rule 54(b) certification would plainly be appropriate here in the event T-Mobile's Motion to Dismiss is granted with prejudice. To begin, this case involves more than one claim (and against more than one litigant), as Rule 54(b) requires: T-Mobile has asserted RICO and related fraud claims against WCO, and WCO has asserted antitrust counterclaims against T-Mobile. Should the Court decide to dismiss WCO's antitrust counterclaims against T-Mobile with prejudice, such a decision would be a "final judgment" because it would be the ultimate dismissal of the antitrust claims, ending all litigation on the merits of those claims, and leaving nothing for this Court to do but execute its judgment. *Arizona State Carpenters Pension Tr. Fund*, 938 F.2d at 1039. Nor would any "just reason for delay" exist: WCO's antitrust counterclaims assert a distinct legal theory from the claims in T-

Mobile's RICO suit,[3] and are based on a distinct set of factual allegations, so no appellate court would have to rule on these same issues more than once in the event of a subsequent appeal. *Curtiss-Wright*, 446 U.S. at 8; *see also Int'l Longshore & Warehouse Union v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1186 (9th Cir. 2017) (granting Rule 54(b) certification despite the existence of some factual overlap between dismissed claims, and those that remained, because they involved "distinct" and "complicated" legal issues). Indeed, Rule 54(b) certification is regularly granted where antitrust counterclaims are dismissed, particularly where they allege ongoing violations of the antitrust laws. *See, e.g.*, *Costar Grp., Inc. v. Com. Real Est. Exch., Inc.*, No. 22-cv-08819, 2023 WL 6783957, *3-4 (C.D. Cal. July 20, 2023).

## CONCLUSION

In light of the foregoing, T-Mobile's Ex Parte Application for Leave to File its Proposed Reply should be denied.

DATED: August 17, 2026

Respectfully submitted,

*/s/ Brandon Baum-Zepeda*
**EDELSON PC**
Brandon Baum-Zepeda* (SBN 352698)
1255 Union St NE, Suite 850
Washington, DC 20002
Tel: 202-270-4777
Email: bbaum-zepeda@edelson.com
*Barred only in California. Practice limited to matters authorized by D.C. Rule 49(c)(3).

---

[3] Indeed, T-Mobile has repeatedly opposed WCO's discovery requests on the grounds that they were relevant only to WCO's antitrust counterclaims, not T-Mobile's RICO claims. *See, e.g.*, T-Mobile Ex Parte Application, ECF No. 253 at 2, 4 (asserting WCO is seeking "antitrust-counterclaim discovery" irrelevant to T-Mobile's claims).

Natasha Fernández-Silber (*pro hac vice*)
200 South 1st Street
Ann Arbor, MI 48104
Tel: 312-589-6370
Email: nfernandezsilber@edelson.com

**BERGER MONTAGUE PC**
Patrick F. Madden (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3035
Email: pmadden@bergermontague.com

**MITTS LAW, LLC**
Maurice R. Mitts (*pro hac vice*)
1822 Spruce Street
Philadelphia, PA 19103
Tel: 215-866-0112
Email: mmitts@mittslaw.com

*Counsel for WCO Spectrum LLC*