Brandon Baum-Zepeda (SBN 352698)
bbaum-zepeda@edelson.com
**EDELSON PC**
1255 Union Street NE, Suite 850
Washington, DC 20002
Tel: 202.270.4777

Natasha Fernández-Silber (*pro hac vice*)
nfernandezsilber@edelson.com
**EDELSON PC**
200 South 1st Street
Ann Arbor, MI 48104
Tel: 312-589-6370

Patrick F. Madden (*pro hac vice*)
pmadden@bergermontague.com
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3035

*Attorneys for WCO Spectrum LLC*
*[Additional Counsel on Signature Page]*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

T-MOBILE US, INC., *et al.*,
Plaintiffs,

vs.

WCO SPECTRUM LLC, *et al.*,
Defendants.

No. 2:23-cv-04347-AH-E
Hon. Charles F. Eick

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL**

Complaint Filed: June 2, 2023
Counterclaims Filed: January 7, 2026
Hearing Date: September 11, 2026
Time: 9:30 AM
Courtroom: 750

T-Mobile US, Inc. ("T-Mobile") objects on relevance grounds to WCO Spectrum LLC's ("WCO") Requests for Production ("RFP") Nos. 20-22, 24, 26-32, 37-39, 43-45 on the basis that (1) an "unclean hands" defense can never be premised on alleged anticompetitive conduct, and (2) WCO may not develop evidence to support a damages theory that differs from T-Mobile's. Both arguments are legally incorrect. Jt. Stip. 7-29, ECF No. 252-1. To the extent T-Mobile has concerns about proportionality, the appropriate response is to negotiate a reasonable scope of production, not to flatly refuse to produce relevant materials.

## I. T-Mobile Should Be Compelled to Produce the Disputed Discovery

### A. T-Mobile Should Produce Discovery Relevant to WCO's "Unclean Hands" Defense (Issues 1 and 3)

The doctrine of "unclean hands" bars relief to a plaintiff who acted wrongfully in connection with the matter at suit. *See Kendall-Jackson Winery v. Superior Ct.*, 76 Cal. App. 4th 970, 978 (1999). It is a well-recognized defense to T-Mobile's claims against WCO, e.g., Counts III–V (state-law fraud), VII (conversion), and X (unjust enrichment). Here, WCO asserts that T-Mobile has unlawfully prevented rivals like WCO from accessing 2.5 GHz spectrum licenses through an anticompetitive scheme that includes a web of exclusive contracts and a slew of unlawful license acquisitions—including the acquisitions at the root of T-Mobile's lawsuit. WCO seeks discovery relevant to this defense, including evidence concerning (1) T-Mobile's strategy for excluding potential competitors (RFP Nos. 21, 26-27), and (2) its monopsony power over the relevant market (RFP Nos. 22, 28-30, 32, 43). T-Mobile argues that anticompetitive conduct cannot form the basis of an "unclean hands" defense, and that T-Mobile's alleged misconduct is insufficiently related to its lawsuit against WCO. Neither argument withstands scrutiny.

T-Mobile is simply incorrect that there is "zero support" for an unclean hands defense based on anticompetitive conduct. *See* Jt. Stip. 18. "Anticompetitive conduct" is a well-recognized basis for the defense. *See*, *e.g.*, *Masimo Corp. v. Apple*

*Inc.*, 2023 WL 4680783, at *4 (C.D. Cal. Apr. 3, 2023) (ordering unclean hands defense based on plaintiff's use of anticompetitive "non-compete" agreements to be submitted to jury); *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2018 WL 2604825, at *2 (D. Del. June 4, 2018) (granting motion to compel discovery relevant to unclean hands defense based on "anti-competitive behavior"); *Chanel, Inc. v. RealReal, Inc.*, 2026 WL 843256, at *9 (S.D.N.Y. Mar. 26, 2026) (denying motion to strike unclean hands defense based on plaintiff's "anticompetitive schemes"); *10x Genomics, Inc. v. NanoString Techs.*, *Inc.*, 2023 WL 4420425, at *9 (D. Del. July 10, 2023) (granting leave to assert unclean hands defense based on anticompetitive conduct). *See also* 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2946 (3d ed.) ("unclean hands" doctrine has "wide[] application" in cases involving "anticompetitive conduct" by plaintiffs).

T-Mobile's cited authorities are inapposite. *U.S. v. Ali*, 620 F.3d 1062, 1070-71 (9th Cir. 2010) and *U.S. v. Weinstein*, 762 F.2d 1522, 1533 (11th Cir. 1985), are criminal cases that did not involve an "unclean hands" defense. *LifeScan v. Smith* merely stands for the proposition that there must be a nexus between the plaintiff's alleged anticompetitive conduct and their fraud claims, which did not exist based on the facts of that case. 2024 WL 1007845, at *11 (D.N.J. Feb. 15, 2024).[1]

Here, there is a direct nexus between T-Mobile's alleged anticompetitive conduct and its fraud claims against WCO: The license acquisitions that resulted in

---

[1] T-Mobile's attempt to distinguish the cases cited by WCO is equally unpersuasive. In *Hall v. Wright*, plaintiff's acts of "unfair competition" provided a basis for defendant's unclean hands defense. 240 F.2d 787, 795 (9th Cir. 1957). Whether this anticompetitive conduct was amplified by other misconduct is irrelevant. *See* Jt. Stip. 17. It is also irrelevant whether the anticompetitive conduct that gave rise to "unclean hands" in *Kendall-Jackson Winery* was evaluated under California's Alcoholic Beverage Control Act. *Id.* 16. Like the antitrust laws, this Act is concerned with ensuring competitive market conditions. *See Kendall-Jackson Winery,* 76 Cal. App. 4th at 982 (the Act's "tied-house" restrictions target "ability of large firms to dominate local markets").

T-Mobile's alleged injury were (according to WCO) unlawful actions taken in furtherance of T-Mobile's anticompetitive scheme. Ans. 1-2; Am. Countercl. ¶¶ 155-58, ECF 218. T-Mobile's claims for damages in connection with those acquisitions (i.e., the "rights" it "asserts" in this action) resulted directly from the pursuit of its anticompetitive scheme. Jt. Stip. 18 (quoting *Inst. of Cetacean Rsch. v. Sea Shepherd Cons. Soc'y*, 725 F.3d 940, 947 (9th Cir. 2013)). T-Mobile suggests there is no nexus because its alleged anticompetitive conduct goes beyond the specific transactions at issue in T-Mobile's complaint. *Id.* But the fact that T-Mobile engaged in misconduct broader than these particular transactions does not negate this direct causal connection, and T-Mobile cites no authority to the contrary.[2] And it would plainly create a perverse incentive to let a plaintiff escape the consequences of its own inequitable conduct simply because, as here, its misconduct is far-reaching.

### B. T-Mobile Should Be Compelled to Produce Documents Relevant to WCO's Measure of Damages (Issues 2 and 3)

The proper measure of damages in a fraud case is "the difference in actual value . . . between what the plaintiff gave and what he received," i.e., the overcharge. *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1240 (1995). The "actual value" of the asset received "is normally determined by the price at which it could be resold in an open market." Rest. 2d Torts § 549(1)(a), cmt. c (1977). Accordingly, the measure of T-Mobile's damages here (if any) is the difference between what T-Mobile paid for the licenses it acquired as a result of WCO's alleged fraud, and the market value of those licenses. *See Mier v. CVS Health*, 2023 WL 4837851, at *1 (9th Cir. July 28,

---

[2] In each of the cases T-Mobile cites, courts rejected the requested discovery because there was *no direct connection* between the alleged misconduct and the asserted claims, and thus, no viable unclean hands defense. *E.g.*, *Medimpact v. IQVIA Inc.*, 2022 WL 126307, at *3 (S.D. Cal. Jan. 13, 2022) ("[A]lleged misappropriated trade secrets are not related to any claim . . . ."); *Surefire, LLC v. Jetbeam USA*, 2014 WL 1512983, at *2 (S.D. Cal. Apr. 16, 2014) ("[T]he Court cannot accept Defendants' theory that such facts, if true, **directly** relates to Plaintiff's claims . . . .").

2023) ("Damages for fraud and negligent misrepresentation are calculated as the difference between what the consumer paid for the product and what the product's market value would have been but for the misrepresentation.").[3]

WCO asserts that T-Mobile acquired the licenses at issue here at prices well below their market value, meaning it suffered no overcharge damages, even if it can prove its fraud claims. WCO thus seeks discovery concerning the market value of the licenses T-Mobile acquired, including documents concerning T-Mobile's own analysis of the value of the licenses (RFP Nos. 20, 24, 37); its lease payments (the licenses' primary source of value) (RFP No. 39); and information about funding its acquisitions (RFP No. 38). This discovery should not be limited to the licenses over which T-Mobile is suing because other 2.5 GHz licenses serve as market "comps" and thus are relevant to the value of the licenses it acquired. T-Mobile refuses to produce this discovery on the basis that it is "non-responsive to [T-Mobile's] damages theory." Jt. Stip. 29. Specifically, T-Mobile asserts that the "actual value" of each of the licenses is the price T-Mobile paid, minus the breakup fee WCO received.[4]

At this stage, the Court need not decide the correct measure of damages. However, the fact that T-Mobile has a different theory of damages is not a basis to deny WCO discovery concerning its own theory. *See CSC Holdings v. Redisi*, 309

---

[3] *See also Walker v. Life Ins.*, 2012 WL 12886198, at *2 (C.D. Cal. May 4, 2012) (California Supreme Court precedent "unquestionably establishes that 'actual value' means 'market value'" in fraud cases); *Rhodeman v. Ocwen*, 2019 WL 2067227, at *5 (C.D. Cal. May 6, 2019) ("plaintiff properly alleges [an] above-market overcharge" by showing it paid more than "market prices of the service[s] rendered").

[4] T-Mobile refers to this breakup fee as a "kickback." Jt. Stip. 28-29. Yet, "breakup fees are a common feature of corporate mergers" and acquisitions. *In re Wisconsin & Milwaukee Hotel LLC*, 678 B.R. 183, 192-93 (Bankr. E.D. Wis. 2026). These fees "compensat[e] the [initial bidder] for its due-diligence costs on which later participants may free ride." *Id.* Given the presence of the Right of First Refusal ("ROFR") in all of T-Mobile's lease agreements, no reasonable bidder would be willing to conduct costly diligence without such protection.

F.3d 988, 996 (7th Cir. 2002) (reversible error to deny defendants discovery "relevant to their efforts to present an alternative and lower calculation of damages").

The cases T-Mobile cites merely stand for the proposition that a plaintiff need not prove that it "paid above-market prices" to show that it was overcharged. *Amazon.com v. WDC Holdings*, 155 F.4th 313, 327 (4th Cir. 2025).[5] None of these cases suggest that market values are irrelevant to whether a plaintiff paid an overcharge. *See Amazon.com*, 155 F.4th at 327 n.7 ("That's not to say that market value is irrelevant. In deciding whether Amazon overpaid, the jury may consider the absence of evidence concerning the market value of the properties.").[6]

T-Mobile also asserts that valuation methodology is "highly sensitive and competitive business information." Jt. Stip. 29. But T-Mobile does not "explain[] why the protective order entered in this case is insufficient to protect its interests," and its "conclusory arguments are insufficient to establish that the requested information includes highly confidential documents." *Bluprint Clothing v. Walmart*, 2025 WL 1090164, at *3 (C.D. Cal. Apr. 2, 2025).

## CONCLUSION

In sum, the Court should order T-Mobile to produce documents responsive to RFP Nos. 20-22, 24, 26-32, 37-39, and 43-45 concerning all 2.5 GHz licenses. Further, the Court has directed WCO not to serve or pursue third-party discovery concerning these issues "absent further order of the Court." ECF No. 263. WCO requests that the Court issue such "further order" permitting the discovery to proceed.

---

[5] *See* ECF No. 117 at 7 (no requirement that plaintiff "alleges . . . what an objective 'market' price for the licenses would be"); *Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 931 (N.D. Cal. 2013) ("The Court declines to hold as a matter of law that a consumer lacks UCL [or RICO] standing as long as he or she is only being overcharged within the market range.").

[6] T-Mobile devotes several pages to WCO's alleged fraud, which is irrelevant to T-Mobile's obligation to produce discovery concerning WCO's damages theory.

DATED: August 28, 2026

Respectfully submitted,

/s/ *Brandon Baum-Zepeda*
**EDELSON PC**
Brandon Baum-Zepeda* (SBN 352698)
1255 Union St NE, Suite 850
Washington, DC 20002
Tel: 202-270-4777
Email: bbaum-zepeda@edelson.com
*Barred only in California. Practice limited to matters authorized by D.C. Rule 49(c)(3).

Natasha Fernández-Silber (*pro hac vice*)
200 South 1st Street
Ann Arbor, MI 48104
Tel: 312-589-6370
Email: nfernandezsilber@edelson.com

**BERGER MONTAGUE PC**
Patrick F. Madden (*pro hac vice*)
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3035
Email: pmadden@bergermontague.com

**MITTS LAW, LLC**
Maurice R. Mitts (*pro hac vice*)
1822 Spruce Street
Philadelphia, PA 19103
Tel: 215-866-0112
Email: mmitts@mittslaw.com

*Counsel for WCO Spectrum LLC*